

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GREGORY THOMAS BERRY,<br>SUMMER DARBONNE,<br>RICKEY MILLEN,<br>SHAMOON SAEED,<br>ARTHUR B. HERNANDEZ,<br>ERIKA A. GODFREY, and<br>TIMOTHY OTTEN,<br>on behalf of themselves and<br>all others similarly situated,<br><br>                Plaintiffs,<br>    vs.<br><br>LEXISNEXIS RISK & INFORMATION<br>ANALYTICS GROUP, INC.,<br>SEISINT, INC.,<br>and<br>REED ELSEVIER, INC.,<br><br>              Defendants. | Civil Action No. 3:11CV754<br><br>CLASS ACTION<br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

### I. PRELIMINARY STATEMENT

1.    This is a consumer class action based upon Defendants' widespread violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 – 1681x ("FCRA"). Defendants (collectively "LexisNexis"), operating as a single business, regularly sell a product called an "Accurint" report or search (herein "report"), which provides the buyer with substantial and detailed personal and credit information about an individual consumer. LexisNexis sells these reports for, among other things, the purpose of assisting debt collectors with the collection of delinquent credit obligations. LexisNexis furnishes these reports without any permissible purpose to do so and without the certification of a lawful purpose required by the FCRA. In fact, these reports were

obtained and then used by parties who *expressly disclaimed* having any lawful purpose to use these reports. Despite the fact that other companies which sell similar types of reports do not question the fact that they are regulated by the FCRA, LexisNexis deliberately ignores the FCRA. As a result, LexisNexis deprives consumers of the rights afforded to them by the FCRA, including (but not limited to) consumers' rights to be protected from the unlawful and impermissible sale of their reports to third parties, their rights to obtain a full copy of the reports that LexisNexis sells about them and the right to dispute (and have corrected) inaccurate information in those reports.

## II. JURISDICTION AND VENUE

2.     The Court has jurisdiction under the FCRA, 15 U.S.C. §§ 1681n and 1681p, as well as 28 U.S.C. § 1331.

3.     Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) as LexisNexis regularly does business in this District and Division.

## III. PARTIES

4.     Plaintiff Gregory T. Berry is an adult individual and citizen of the Commonwealth of Virginia who resides within the Eastern District of Virginia. Mr. Berry is a "consumer" as protected and governed by the FCRA.

5.     Plaintiff Summer Darbonne is an adult individual and citizen of the Commonwealth of Virginia who resides within the Eastern District of Virginia. Ms. Darbonne is a "consumer" as protected and governed by the FCRA.

6.     Plaintiff Rickey J. Millen is an adult individual and citizen of the Commonwealth of Virginia who resides within the Eastern District of Virginia. Mr. Millen is a "consumer" as protected and governed by the FCRA.

7.     Plaintiff Shamoon Saeed is an adult individual and citizen of the Commonwealth of Virginia who resides within the Eastern District of Virginia. Mr. Saeed is a "consumer" as protected and governed by the FCRA.

8.     Plaintiff Arthur B. Hernandez is an active reserve member of the United States Navy who resides within the Eastern District of Virginia. Mr. Hernandez is a "consumer" as protected and governed by the FCRA.

9.     Plaintiff Erika B. Godfrey is an adult individual who at all times relevant hereto resided within the Eastern District of Virginia, and is currently stationed in Louisiana due to her husband's active duty service in the United States Navy. Ms. Godfrey is a "consumer" as protected and governed by the FCRA.

10.     Plaintiff Timothy Otten is an adult individual who is currently stationed in Arizona because of his active duty service in the United States Marine Corps. Mr. Otten is a "consumer" as protected and governed by the FCRA.

11.     Defendant LexisNexis Risk & Information Analytics Group, Inc. ("LNRIAG") is a business entity and/or consumer reporting agency that is a member and division of Defendant Reed Elsevier, Inc., which provides background and employment screening services, risk-management services and products, information management products and services, and decisions-making intelligence. LNRIAG acquired Defendant Seisint Inc. in or around September of 2004, and controls and operates that company. Lexis regularly conducts business in this District and Division.

12.     LNRIAG is a "consumer reporting agency" as defined in 15 U.S.C. §1681(f). LNRIAG is regularly engaged in the business of assembling, evaluating, and disbursing

information concerning consumers for the purpose of furnishing consumer reports to third parties.

13.     Defendant Reed Elsevier, Inc. ("Reed") is a business entity and/or a consumer reporting agency, of which LNRIAG is a division.  Reed has three divisions, one of which is its Legal Risk and Management division, which is operated through and by Defendants LNRIAG and Seisint.  Defendant Reed regularly conducts business in this District and Division.

14.     Reed is a "consumer reporting agency" as defined in 15 U.S.C. § 1681(f). It is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

15.     Defendant Seisint, Inc. ("Seisint") is a business entity and/or consumer reporting agency that provides information management products and services.  Defendant Seisint sold the Accurint report at issue in this case exclusively until it was acquired by LNRIAG in 2004.  Now all Defendants act in concert with one another regarding the sale of Accurint reports.  Defendant Seisint maintains and operates a principal place of business at P.O. Box 61004, Boca Raton, FL 33481.

16.     Seisint is a "consumer reporting agency" as defined in 15 U.S.C. §1681(f). Seisint is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

17.     LNRIAG, Reed, and Seisint operate collectively as a single business unit under the brand LexisNexis.  They collectively operate as a "nationwide consumer reporting agency" as defined and governed by the FCRA.

## IV. FACTUAL ALLEGATIONS

A.    **Defendants' Practices As Consumer Reporting Agencies**

18.    Before Reed Elsevier and LNRIAG purchased Seisint, the latter entity was a smaller business operating in Florida. It gathered public-records data on consumers and sold it under two brands: Accurint and Securint. There was no material difference between the two products but for the market to which each was targeted. While Accurint was marketed for a wide range of uses, Securint was sold exclusively for FCRA "employment" purposes.

19.    After Reed and LNRIAG purchased Seisint in 2004, and then after litigation and regulatory enforcement unrelated to the present case, LexisNexis restructured its operations to place ownership of Accurint within Seisint, and ownership of Securint (now named "Express Screen") in LNRIAG.

20.    Upon information and belief, the Plaintiffs allege that the sole purpose for such restructuring was to attempt to separate, on paper, the production and sale of Accurint reports from Securint reports. LexisNexis acknowledged that its Securint reports were governed by the FCRA, while attempting to prevent governance of its Accurint products by the same statute.

21.    Plaintiffs allege on information and belief that despite the technical restructuring, both Accurint and Securint reports are still built on and contain public records information obtained from judgments, liens, bankruptcies, criminal records, licensing histories, and other personal information. LexisNexis makes a single effort to compile the public-record information it uses to generate all of the reports it sells into one database. It then creates two separate, identical output files from this single database and uses one output file to publish its FCRA-disclosed Securint reports and the other to publish its Accurint reports.

22. From these files, Defendants sell nationally, among other things, Accurint-branded reports to debt collectors, credit insurers and entities involved in the debt collection industry generally, to assist with the collection of delinquent credit accounts, and the location of debtors and debtors' assets. Defendants also sell reports to employers for pre-employment and residential screening.

23. An Accurint report contains vast amounts of information about an individual consumer that Defendants have assembled and compiled, including information about where the consumer resides, the consumer's age, social security number, date of birth, employer and employment history, economic profile data regarding the consumer's home and neighboring properties, whether the consumer has filed for bankruptcy, has any liens or judgments, public records, UCC filings, professional licenses, accident history, recreational permits, and general information about the consumer's assets and property.

24. As represented by Defendants, Accurint reports are an extremely useful tool for debt collectors in terms of increasing collection recovery rates and the Defendants aggressively market them to debt collectors. Some of the data that Defendants sell through Accurint reports derives from data that Defendants have purchased from other consumer reporting agencies and which it resells through an Accurint report.

25. By regularly selling such reports for a fee with the anticipated or expected use of such reports by the entities referenced above, Defendants operate as "consumer reporting agencies" ("CRAs"), consumer reporting agencies "that compile[s] and maintain[s] files on consumers on a nationwide basis," and national specialty consumer reporting agencies ("NSCRAs") as defined by 15 U.S.C. §§ 1681a(f), a(p) and a(w), respectively.

26.     Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer report information by CRAs and NSCRAs.

27.     Despite the fact that Defendants assemble and compile consumer information for sale in the form of Accurint reports to debt collectors, employers, and credit insurers on a nationwide basis, Defendants will not provide consumers with a disclosure of all of the information in their files that pertain to them or the sources of the information they report, do not provide consumers with summaries of their rights under the FCRA, do not maintain any toll-free telephone numbers available to consumers for these purposes, do not investigate any consumer disputes, and do not observe any reasonable standard of accuracy regarding the information contained within the Accurint reports.

28.     Further, when selling Accurint reports, LexisNexis also *never* obtains the "will use only for FCRA purpose" certification required by the FCRA, and in fact every sale of an Accurint report is made with a certification that the report's user will not use the product for a permissible purpose under the FCRA.

29.     When selling the Accurint reports, and despite its solicitation of disclaimers and promises from its Accurint customers, LexisNexis knows that many and even most of its customers will use the report for a purpose governed (though not necessarily permitted) by the FCRA.

30.     As a matter of policy, LexisNexis deprives consumers of access to the information it sells about them. While LexisNexis will provide certain information to consumers upon written request, LexisNexis admittedly will not provide consumers with all of the information that the FCRA requires, including but not limited to, the identities of persons or entities who used or procured Accurint data from LexisNexis and the end-users of those reports

(often referred to as consumer report "inquiries"). LexisNexis' failure to provide inquiry-related data is neither accidental nor an oversight. LexisNexis records and maintains inquiry-related data, including but not limited to the name of the requesting person or entity, the date and time of the request and the type of report sold, but simply refuses to provide this information to a requesting consumer.

31.     Moreover, in response to a consumer's request for a copy of his or her Accurint file, LexisNexis will send the consumer a form letter which states, among other things, that LexisNexis does not examine or verify its data, and that it is not possible for it to correct or change data that is incorrect or inaccurate. These statements are wholly and deliberately false as LexisNexis knows that it has the capacity to delete information contained within an Accurint report, and sometimes does.

32.     LexisNexis also never provides consumers with a statement of their rights under the FCRA, including the right to dispute inaccurate information.   Between concealing the consumer's rights, and affirmatively misrepresenting that it cannot and will not process any disputes or correct any inaccuracies, LexisNexis prophylactically denies consumers their FCRA-mandated right to dispute inaccuracies in their LexisNexis Accurint files.

33.     LexisNexis willfully violates the FCRA by misrepresenting to consumers who contacts it, that it does not sell consumer reports and, therefore, is not governed or regulated by the FCRA as consumer reporting agencies or in any other respect.

34.     In short, because LexisNexis ignores the fact that its sale of Accurint reports is governed by the FCRA, it violates the statute at almost every turn.

35.     LexisNexis's practices not only violate the FCRA as a matter of law, it exacts serious consequences on consumers and interstate commerce.

36.     LexisNexis has been sued regarding its sale of Accurint reports and failure to follow the FCRA's strictures in doing so. *See e.g. Adams, et al. v. LexisNexis Risk & Information Analytics Group, Inc., et al.*, No. 1:08-cv-04708-RMB-KMW, United States District Court for the District of New Jersey.

37.     In its May 12, 2010 opinion denying in part LexisNexis's Rule 12(c) Motion for Judgment on the Pleadings, the *Adams* court rejected LexisNexis's arguments and held (1) that proof of plaintiff's allegations in that case would subject LexisNexis to liability as a CRA under the FCRA based upon its sale of Accurint reports, and (2) that Accurint reports were consumer reports. LexisNexis's failure to modify its practices and/or conform them to the FCRA post *Adams* is the results of a deliberate corporate decision to disregard the findings of federal courts.

38.     Likewise, the *Adams* court rejected LexisNexis's argument that it could not have willfully violated the FCRA because it did not view Accurint reports as being governed by the FCRA. The court concluded that the plaintiff could prove a willful violation (assuming that the plaintiff also proves that the FCRA applies to LexisNexis) by proving "that Lexis either knowingly or recklessly adopted policies that contravened the FCRA."

39.     The *Adams* case settled in August of 2010, after the court's opinion on the Rule 12(c) motion issued.

**B.      The Experiences of the Representative Plaintiffs**

40.     Although they often contain public-record information that overlaps among reports, LexisNexis sells these reports, among many others, under the product names "SmartJury Report," "Bankruptcy Search Report," "Foreclosure Search Report," "Liens/Judgments Search Report," "Property Deeds Search Report," "Summary Report," "Asset Report," "Pre-Litigation Report," "Contact Card Report," "Finder Report," and "Comprehensive Report."

41.     Plaintiffs Berry, Darbonne, Millen, Hernandez, Godfrey, and Saeed, as representatives of a Class of all individuals on whom Accurint sold reports, were each the subject of one of these reports, sold by LexisNexis as an Accurint product to a third-party debt-collector, within five years of the filing of this action.

42.     LexisNexis steadfastly claims that the FCRA does not apply to any Accurint product, despite the fact that the reports contain public-record information that bears on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living.

43.     By way of example, a "Comprehensive Report"—which LexisNexis sold in Virginia regarding Plaintiffs Hernandez and Godfrey—contains at a minimum one or more of the following output fields and types of information:   Personal identity information including residences, the time period during which the consumer lived at that residence, the identities of the family members and/or associates that the consumer resided with during such time periods, the consumer's full name, and social security number; the consumer's age and date of birth; whether the consumer filed for bankruptcy protection or was subject to a civil judgment, lien or UCC filing (including the details of those public records); the criminal history of the consumer; the consumer's employer and employment history; assets and property owned by the consumer; driving, boating, pilot or professional licenses held by the consumer; identities of other neighbors, friends and relatives that did not co-habitate with the consumer and the consumer's voter registration and political party information.

44.     Similarly, a "People at Work" report contains at a minimum the following output fields and types of information: Personal identity information including full name, social security

number, employer, title of position at each employer, dates of employment, and phone information for each employer.

45. A "Deep Skip" report contains the following output fields and types of information: full name, date of birth, current address, previous address, the amount of time that the Plaintiff lived at each one of the current and previous addresses, including the specific dates that Plaintiff moved in or out, indicators as to whether or not Plaintiff owned property or not, indicators as to whether Plaintiff owned a vehicle or not, and information related to Plaintiff's current and former places of employment.

46. Likewise, a "Person Search" report contains at a minimum the following output fields and types of information: Personal identity information including current and previous addresses, full name, social security number; the consumer's age and date of birth; and the amount of time that the Plaintiff lived at each one of the current and previous addresses, including the specific dates that Plaintiff moved in or out of each address.

47. A "Bankruptcy Search" report contains, at a minimum, the following output fields and types of information: Personal identity information including full name, social security number, current address, the bankruptcy case number, the names of additional debtors in the same bankruptcy case, the location of the court, the date that the bankruptcy case was filed, and the filing status.

48. All of these reports were generated from a LexisNexis database that was collected in whole or in part for use as a FCRA consumer report.

49. At the time LexisNexis sold these reports, it did not obtain from its debt collector customers—the report users—the required certification that the report would only be used for

FCRA-permissible purposes.   To the contrary, it elicited and required the debt collector's certification that the reports would *not* be used for a legally permissible FCRA purpose.

50.     Indeed, notwithstanding these certifications of non-FCRA use, LexisNexis knew and intended that its reports be used mostly, if not exclusively, for the collection of a consumer debt—a purpose explicitly governed by the FCRA.   It markets these products directly to debt collectors, even purchasing space at various debt collector conventions and trade shows to showcase the various "skip tracing" features that debt collectors might use to locate consumers.

51.     Within two years of the filing of this action, Plaintiffs Berry, Darbonne, Millen, and Saeed all requested from LexisNexis a copy of their full consumer file and a full list of inquiries made of that file.

52.     Notwithstanding these requests, LexisNexis refused to provide each Plaintiff with a full and complete copy of his or her Accurint file or report and a list of users who had requested and received their information.   Instead, LexisNexis ignored these requests and provided only copies of non-Accurint report types.

53.     Plaintiff Otten learned that other CRAs were misreporting criminal-history information that he had expunged.   He ordered an Accurint report, and this same information was included.   When Mr. Otten contacted LexisNexis about the inaccuracies and asked that LexisNexis correct them, LexisNexis did not do so.   Instead, LexisNexis called Mr. Otten and asked him to produce documentation supporting the expungements.

54.     Simply checking the records of the website in the court in which these charges appeared would have shown LexisNexis that its report on Mr. Otten was inaccurate, but LexisNexis chose not to take this step.

## V. CLASS ACTION ALLEGATIONS

**A.    The "Impermissible Use" Class**

55.    Plaintiffs Berry, Darbonne, Millen, Hernandez, Godfrey, and Saeed bring this action on behalf of the following Class, of which they all are members—

> All persons residing in the United States of America and its Territories who were the subject of an Accurint report of any kind that Defendants furnished to a private (non-governmental) party, for the period beginning five years before the filing of this action.

56.    Plaintiffs Berry, Darbonne, Millen, Godfrey, and Saeed also bring this action on behalf of the following "Post-Adams" Sub-class:

> All persons residing in the United States of America and its Territories who were the subject of an Accurint report of any kind that Defendants furnished to a private (non-governmental) party, for the period beginning May 12, 2010 and continuing through the date of the resolution of this case.

57.    Plaintiffs Berry, Darbonne, Hernandez, and Millen also bring this action on behalf of the following "Fourth Circuit" Sub-class:

> All persons residing in the United State of America within the States of Virginia, Maryland, West Virginia, North Carolina or South Carolina who were the subject of an Accurint report of any kind that Defendants furnished to a private (non-governmental) party, for the period beginning five years before the filing of this action.

58.    **Numerosity.** FED. R. CIV. P. 23(a)(1). Upon information and belief, Plaintiffs allege that the members of the Class and Sub-classes are so numerous that joinder of all is impractical. The names and addresses of members of the Class and Sub-classes are identifiable through documents maintained by LexisNexis, and members of the Class may be notified of the pendency of this action by published and/or mailed notice.

59.    **Predominance.** FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class and Sub-classes. These questions predominate over the

questions affecting only individual members. They include, without limitation: whether the Accurint products furnished are consumer reports as defined by the FCRA; whether LexisNexis's violations of the FCRA were willful; and what amount of statutory and punitive damages is appropriate for this alleged violation of the FCRA.

60.     **Typicality.** FED. R. CIV. P. 23(a)(3). Plaintiffs' claims are typical of the claims of each Class and Sub-class Member. They are entitled to relief under the same causes of action as the other members of the Class and Sub-classes. Without limitation, the procedures of LexisNexis were uniform and systemic. The reports obtained and used regarding each Plaintiff and the circumstances for which such reports were furnished was uniform and typical of the facts for each member of the Class and Sub-classes. Plaintiffs collectively represent a full cross-section of the types of products sold by LexisNexis during the class period.

61.     **Adequacy.** FED. R. CIV. P. 23(a)(4). Plaintiffs are adequate representatives of the Class and Sub-classes because their interests coincide with, and are not antagonistic to, the interests of the members of the Class and Sub-classes they seek to represent, they have retained counsel competent and experienced in such litigation, and each intends to prosecute this action vigorously. The interests of members of both the Class and Sub-classes will be fairly and adequately protected by Plaintiffs and their Counsel.

62.     **Superiority.** FED. R. CIV. P. 23(b)(3). Questions of law and fact common to the Class and Sub-classes predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by LexisNexis's conduct. It would be virtually impossible for the members of the Class or Sub-

classes individually to redress effectively the wrongs done to them. In fact, because of the manner in which LexisNexis has refused disclosure of Accurint information and inquiries to consumers, very few Class Members—and almost none who are unrepresented by counsel—will ever know that they have been subject to an Accurint report. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by LexisNexis's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

**B.      The "File Request" Class**

63.    Plaintiffs Berry, Darbonne, Millen, and Saeed bring this action on behalf of the following Class, of which they all are members—

> All persons residing in the United State of America and its Territories who at any time within two years of the filing of this action have requested from Defendants a copy of their consumer file and to whom Defendants did fail to provide a complete copy of their Accurint report file including all inquiries within the previous year.

64.    Plaintiffs Berry, Darbonne, Millen, and Saeed also bring this action on behalf of the following "Post-Adams" Sub-class:

> All persons residing in the United State of America and its Territories who at any time during the period beginning on May 12, 2010 and continuing through the date of the resolution of this case have requested from Defendants a copy of their consumer file and to whom Defendants did fail to provide a complete copy of their Accurint report file including all inquiries within the previous year.

65.   **Numerosity.** FED. R. CIV. P. 23(a)(1).  Upon information and belief, Plaintiffs allege that the members of the Class and Sub-class are so numerous that joinder of all is impractical.  The names and addresses of members of the Class and Sub-class are identifiable through documents maintained by LexisNexis, and members of the Class may be notified of the pendency of this action by published and/or mailed notice.

66.   **Predominance.** FED. R. CIV. P. 23(a)(2).  Common questions of law and fact exist as to all members of the Class and Sub-class. These questions predominate over the questions affecting only individual members.  They include, without limitation: whether the Accurint products furnished are consumer reports as defined by the FCRA; whether LexisNexis's violations of the FCRA were willful; and what amount of statutory and punitive damages is appropriate for this alleged violation of the FCRA.

67.   **Typicality.** FED. R. CIV. P. 23(a)(3).  Plaintiffs' claims are typical of the claims of each Class and Sub-class Member.  They are entitled to relief under the same causes of action as the other members of the Class and Sub-class.  Without limitation, the procedures of LexisNexis were uniform and systemic. The reports obtained and used regarding each Plaintiff and the circumstances for which such reports were furnished was uniform and typical of the facts for each member of the Class and Sub-class.  Plaintiffs collectively represent a full cross-section of the types of products sold by LexisNexis during the class period.

68.   **Adequacy.** FED. R. CIV. P. 23(a)(4).  Plaintiffs are adequate representatives of the Class and Sub-class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class and Sub-class they seek to represent, they have retained counsel competent and experienced in such litigation, and each intends to prosecute this action

vigorously. The interests of members of both the Class and Sub-class will be fairly and adequately protected by Plaintiffs and their Counsel.

69.     **Superiority.** FED. R. CIV. P. 23(b)(3).  Questions of law and fact common to the Class and Sub-class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by LexisNexis's conduct.  It would be virtually impossible for the members of the Class or Sub-Class individually to redress effectively the wrongs done to them. In fact, because of the manner in which LexisNexis has refused disclosure of Accurint information and inquiries to consumers, very few Class Members—and almost none who are unrepresented by counsel—will ever know that they have been subject to an Accurint report.   Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by LexisNexis's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

C.     **The "Dispute" Class**

70.     Plaintiff Otten brings this action on behalf of the following Class, of which he is a member—

> All persons residing in the United State of America and its Territories who at any time within two years of the filing of this action have contacted Defendants in writing to dispute information in their Accurint file or report.

71.    Plaintiff Otten also brings this action on behalf of the following "Post-Adams" Sub-class:

> All persons residing in the United State of America and its Territories who at any time during the period beginning on May 12, 2010 and continuing through the date of the resolution of this case have contacted Defendants in writing to dispute information in their Accurint file or report.

72.    **Numerosity.** FED. R. CIV. P. 23(a)(1). Upon information and belief, Plaintiffs allege that the members of the Class and Sub-class are so numerous that joinder of all is impractical.  The names and addresses of members of the Class and Sub-class are identifiable through documents maintained by LexisNexis, and members of the Class may be notified of the pendency of this action by published and/or mailed notice.

73.    **Predominance.** FED. R. CIV. P. 23(a)(2).  Common questions of law and fact exist as to all members of the Class and Sub-class. These questions predominate over the questions affecting only individual members.  They include, without limitation: whether the Accurint products furnished are consumer reports as defined by the FCRA; whether LexisNexis's violations of the FCRA were willful; and what amount of statutory and punitive damages is appropriate for this alleged violation of the FCRA.

74.    **Typicality.** FED. R. CIV. P. 23(a)(3).  Plaintiffs' claims are typical of the claims of each Class and Sub-class Member.  They are entitled to relief under the same causes of action as the other members of the Class and Sub-class.  Without limitation, the procedures of LexisNexis were uniform and systemic. The reports obtained and used regarding each Plaintiff and the circumstances for which such reports were furnished was uniform and typical of the facts for each member of the Class and Sub-class.  Plaintiffs collectively represent a full cross-section of the types of products sold by LexisNexis during the class period.

75. **Adequacy.** FED. R. CIV. P. 23(a)(4). Plaintiffs are adequate representatives of the Class and Sub-class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class and Sub-class they seek to represent, they have retained counsel competent and experienced in such litigation, and each intends to prosecute this action vigorously. The interests of members of both the Class and Sub-class will be fairly and adequately protected by Plaintiffs and their Counsel.

76. **Superiority.** FED. R. CIV. P. 23(b)(3). Questions of law and fact common to the Class and Sub-class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by LexisNexis's conduct. It would be virtually impossible for the members of the Class or Sub-Class individually to redress effectively the wrongs done to them. In fact, because of the manner in which LexisNexis has refused disclosure of Accurint information and inquiries to consumers, very few Class Members—and almost none who are unrepresented by counsel—will ever know that they have been subject to an Accurint report. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by LexisNexis's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

## VI.  CAUSES OF ACTION

### COUNT ONE:  FAIR CREDIT REPORTING ACT
**CLASS ACTION CLAIM:  Plaintiffs Berry, Darbonne, Millen,
Hernandez, Godfrey, and Saeed
15 U.S.C. §1681e(a)**

77.     Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

78.     Defendants violated the FCRA as to the Named Plaintiffs and each "Impermissible Use" Class Member by their failure to have in place a procedure for ensuring that Accurint reports are only used for permissible purposes and to obtain the certification required by 15 U.S.C. § 1681e(a).

79.     The conduct, action, and inaction of Defendants were willful, rendering them liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

80.     Plaintiffs and other members of the putative class are entitled to recover costs and attorneys' fees as well as appropriate other relief from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

### COUNT TWO:  FAIR CREDIT REPORTING ACT
**CLASS ACTION CLAIM:  Plaintiffs Berry, Darbonne, Millen, and Saeed
15 U.S.C. §§ 1681g, 1681h, 1681i, and 1681j**

81.     Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

82.     Defendants violated the FCRA, 15 U.S.C. § 1681g(a)(1) as to the Named Plaintiffs and each "File Request" class member by their failure to provide Plaintiffs and Class

Members "all information in their file" including all Accurint data when a file request was received by LexisNexis.

83.    Defendants violated the FCRA, 15 U.S.C. § 1681g(a)(2) as to the Named Plaintiffs and each "File Request" Class Member by their refusal to provide Plaintiffs and Class Members the sources of the Accurint information in their files when a file request was received by LexisNexis.

84.    Defendants violated the FCRA, 15 U.S.C. § 1681g(a)(3) as to the Named Plaintiffs and each "File Request" Class Member by their refusal to provide Plaintiffs and Class Members the identity of each person or entity who procured their Accurint report in the year preceding the date on which a file request was received by LexisNexis.

85.    Defendants violated the FCRA, 15 U.S.C. § 1681g(c) as to the Named Plaintiffs and each "File Request" Class Member by their refusal to provide Plaintiffs and Class Members the Summary of Rights required by this section and as established by the Federal Trade Commission when a file request was received by LexisNexis.

86.    Defendants violated the FCRA, 15 U.S.C. § 1681h(c) as to the Named Plaintiffs and each "File Request" Class Member by their refusal to make available to Plaintiffs and Class Members trained personnel to explain to consumers any information furnished pursuant 15 U.S.C. § 1681g when a file request was received by LexisNexis.

87.    Defendants violated the FCRA, 15 U.S.C. § 1681j(a) as to the Named Plaintiffs and each "File Request" Class Member by their refusal to provide Plaintiffs and Class Members a full copy of their Accurint file once annually and without charging Plaintiffs and the Class Members for copies of their Accurint reports.

88.    The conduct, action, and inaction of Defendants were negligent and willful, rendering them liable for actual damages in the amount of all money charged to Class Members for their reports pursuant to 15 U.S.C. §1681o, and/or for statutory damages between $100 and $1,000 per Class Member and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

89.    Plaintiffs and other members of the putative class are entitled to recover costs and attorneys' fees as well as appropriate other relief from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681o and 1681n.

**COUNT THREE:  FAIR CREDIT REPORTING ACT**
**CLASS ACTION CLAIM:  Plaintiff Otten**
**15 U.S.C. § 1681i**

90.    Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

91.    Defendants violated the FCRA, 15 U.S.C. § 1681i as to the Named Plaintiffs and each "Dispute" Class Member by their failure to accept consumer disputes of information in their Accurint file or report or to commence a reinvestigation of such dispute.

92.    The conduct, action, and inaction of Defendants were willful, rendering them liable for statutory damages between $100 and $1,000 per Class Member and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

93.    Plaintiffs and other members of the putative class are entitled to recover costs and attorneys' fees as well as appropriate other relief from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**VII.  JURY TRIAL DEMAND**

94.    Plaintiffs demand a trial by jury on all issues so triable.

22

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek judgment in favor of themselves and the Classes and Sub-classes for the following:

A.      A determination that this action may proceed and be maintained as a class action;

B.      Statutory damages of $100 – $1,000 per Class Member for willful violations of the FCRA;

C.      Actual damages in the form of all amounts paid by consumers to Defendants for an Accurint report and/or Comprehensive Report which should have been free;

D.      Punitive damages as the Court may allow; and

E.      Costs and reasonable attorneys' fees pursuant to sections 1681n and/or 1681o of the FCRA.

> Respectfully submitted,
> **PLAINTIFFS GREGORY THOMAS BERRY,**
> **SUMMER DARBONNE,**
> **RICKEY MILLEN,**
> **SHAMOON SAEED,**
> **ARTHUR B. HERNANDEZ,**
> **ERIKA A. GODFREY AND**
> **TIMOTHY OTTEN**

BY: _____

Dale W. Pittman, VSB #15673
**THE LAW OFFICE OF DALE W. PITTMAN, P.C.**
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803-3212
Telephone: (804) 861-6000
Facsimile: (804) 861-3368
dale@pittmanlawoffice.com

Leonard A. Bennett, VSB #37523
Matthew Erausquin, VSB #65434
**CONSUMER LITIGATION ASSOCIATES P.C.**
12515 Warwick Boulevard, Suite 100
Newport News, VA 23606
Telephone:  (757) 930-3660
Facsimile:  (757) 930-3662

Michael A. Caddell
Cynthia B. Chapman
Craig C. Marchiando
**CADDELL & CHAPMAN**
1331 Lamar, Suite 1070
Houston, TX  77010
Telephone:  (713) 751-0400
Facsimile:  (713) 751-0906
(*pro hac vice forthcoming*)

James A. Francis
Mark D. Mailman
John Soumilas
**FRANCIS & MAILMAN**
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Telephone: (215) 735-8600
(*pro hac vice forthcoming*)

**Attorneys for Plaintiffs and the Classes**