**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

GREGORY THOMAS BERRY, et al.  :  CASE NO.3:11CV754

   Plaintiffs,    :  (Judge James R. Spencer)

v.          :

LEXISNEXIS RISK & INFORMATION :
ANALYTICS GROUP, INC., et al.

          :

   Defendants.

---

**SETTLEMENT AGREEMENT AND RELEASE**

## TABLE OF CONTENTS

Page

1. RECITALS .................................................................................................. 1

2. DEFINITIONS ............................................................................................ 5

3. MOTION FOR PRELIMINARY APPROVAL ........................................ 14

4. RULE 23(B)(2) SETTLEMENT ............................................................... 15

    4.1    Certification of Rule 23(b)(2) Settlement Class .................................. 15

    4.2    Rule 23(b)(2) Notice Plan .................................................................. 16

    4.3    Injunctive Relief ................................................................................. 22

    4.4    Rule 23(b)(2) Settlement Class Attorneys' Fees, Costs, and Other Expenses ............................................................................................. 32

    4.5    Rule 23(b)(2) Settlement Class Release ............................................ 33

5. RULE 23(B)(3) SETTLEMENT ............................................................... 37

    5.1    Certification of Rule 23(b)(3) Settlement Class .................................. 37

    5.2    Rule 23(b)(3) Notice Plan .................................................................. 38

    5.3    Settlement Fund ................................................................................. 42

    5.4    Settlement Fund Tax Status ............................................................... 42

    5.5    Rule 23(b)(3) Settlement Class Attorneys' Fees, Costs, and Other Expenses ............................................................................................. 44

    5.6    Service Award to the Named Plaintiffs ............................................. 45

    5.7    Payment Schedule .............................................................................. 45

    5.8    Rule 23(b)(3) Settlement Class Release ............................................ 47

6. ENTRY OF FINAL JUDGMENT AND ORDER .................................... 49

7. TERMINATION ........................................................................................ 50

8. MISCELLANEOUS PROVISIONS ......................................................... 53

i

8.1     Best Efforts to Obtain Court Approval ................................................53

8.2     No Admission ................................................................................54

8.3     Process for Resolution of Disputes Regarding Compliance with Settlement
        Agreement ..................................................................................55

8.4     Court's Jurisdiction .......................................................................56

8.5     Settlement Notices ........................................................................57

8.6     Administrative Costs ......................................................................58

8.7     Taxes .........................................................................................58

8.8     Defendants' Communication with Customers, Business Contacts, and
        Members of the Public ...................................................................59

8.9     Confidentiality of Discovery Materials and Information ......................59

8.10    Complete Agreement .....................................................................59

8.11    Headings for Convenience Only .......................................................59

8.12    Severability .................................................................................59

8.13    No Party Is the Drafter ..................................................................60

8.14    Binding Effect ..............................................................................60

8.15    Authorization to Enter Settlement Agreement ...................................60

8.16    Execution in Counterparts ..............................................................61

This Settlement Agreement and Release ("Settlement Agreement") is made and entered into by the Parties and their counsel as of March 15, 2013, in the case captioned <u>Berry, et al. v. LexisNexis Risk & Information Analytics Group, Inc., et al.</u> Case No. 3:11CV754, and is submitted to the Court for approval pursuant to Fed. R. Civ. P. 23.

## 1. RECITALS

WHEREAS, on November 14, 2011, Named Plaintiffs brought a proposed class action in the United States District Court for the Eastern District of Virginia, alleging that Defendants willfully violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 – 1681x ("FCRA") by selling data under the Accurint brand, which Named Plaintiffs asserted met the FCRA's definition of "consumer report"; and

WHEREAS, the complaint alleges claims on behalf of three putative classes: (1) an "Impermissible Use" class alleging "fail[ure] to have in place a proper procedure for ensuring that Accurint Reports are only used for permissible purposes and [by failing] to obtain the certification required by 15 U.S.C. §1681e(a)"; (2) a "File Request" class alleging failure to provide class members "all information" in their Accurint Report file upon request under 15 U.S.C. §§ 1681(g)-(j); and (3) a "Dispute" class alleging "fail[ure] to accept consumer disputes" of the information in their Accurint Report under 15 U.S.C. § 1681i (Compl. ¶¶ 77-93);

WHEREAS, Defendants deny each and every one of Named Plaintiffs' allegations of wrongful conduct and damages, and Defendants have asserted numerous defenses to Named Plaintiffs' claims and disclaim any wrongdoing or liability whatsoever, and Defendants further deny that this matter satisfies the requirements to be tried as a class action under Fed. R. Civ. P. 23; and

WHEREAS, this Settlement Agreement and Release ("Settlement Agreement") has been reached after the Parties exchanged discovery and a substantial amount of documents and information relevant to the Named Plaintiffs' claims, and is a product of sustained, arm's length settlement negotiations over the course of several years and numerous mediation sessions including multiple sessions conducted by an experienced, independent mediator; and

WHEREAS, during the course of the Litigation and during the mediation process and negotiations, the Named Plaintiffs determined that any alleged violations of the FCRA asserted by the Impermissible Use class would be largely procedural in nature, and so any claim for statutory damages was incidental to compelling changes in data practices as to the Receivable Management Market; and

WHEREAS, during the course of the mediation process and the negotiations to resolve this matter, the Parties determined that, due to standard practices in the Receivable Management Market, members of the putative classes are likely to be the subjects of Accurint Reports in the future, and, therefore, such class members are likely to raise the same issues and concerns regarding those products in the future, whether yet resolved in law or not, unless substantial changes to those products are implemented in the Settlement Agreement; and

WHEREAS, in light of the substantial likelihood that the putative class members will be the subject of Accurint Reports in the future, the most effective way to afford the class members full and final relief in a negotiated resolution of their claims is to implement a program of injunctive relief; and

2

WHEREAS, during the course of discussing the nature and scope of such program of injunctive relief, it became apparent that a settlement would need to provide injunctive relief consistently across the country because the Defendants operate on a nationwide basis; and

WHEREAS, the injunctive relief detailed in this Settlement Agreement represents a substantial paradigm shift from current accepted industry practices for the provision and use of consumer information by the Receivable Management Market; and the Named Plaintiffs and Defendants further believe that the injunctive relief provides reasonable practices for obtaining, using, and disclosing information to the Receivable Management Market; and

WHEREAS, during the course of the Litigation and during the mediation process and negotiations, the Named Plaintiffs determined that the alleged violations of the FCRA asserted by the members of the putative "File Request" and "Dispute" classes raise the possibility of pecuniary harm since these individuals were affected enough to contact the Defendants and therefore should be afforded monetary relief – in addition to the program of injunctive relief – for the resolution of their claims; and

WHEREAS, the Named Plaintiffs and Defendants recognize that the outcome of this matter is uncertain, and that a final resolution through the litigation process would require several more years of protracted adversarial litigation and appeals; substantial risk and expense; the distraction and diversion of the Defendants' personnel and resources and the expense of any possible future litigation raising similar or duplicative claims; and the Named Plaintiffs, Defendants, and their counsel have agreed to resolve this matter as a settlement class action according to the terms of this Settlement Agreement; and

3

WHEREAS, the Parties believe that this Settlement Agreement is fair, reasonable, and adequate in its resolution of the claims brought by the putative "Impermissible Use" class because it: (1) provides for certification of a Fed. R. Civ. 23(b)(2) Settlement Class, even though the Court has not yet determined whether this action could properly be brought as a class action, and Defendants maintain that certification of any class for trial purposes would not be proper under Fed. R. Civ. P. 23; (2) provides comprehensive current and prospective, industry-changing injunctive relief to the Fed. R. Civ. P. 23(b)(2) Settlement Class; (3) preserves the right of the Fed. R. Civ. P. 23(b)(2) Settlement Class Members to bring an individual lawsuit under 15 U.S.C. §1681o for claims of any actual damages they claim to have sustained; and (4) releases only the remedies available for willful violations under 15 U.S.C. §1681n and waives further use of the class action procedural device; and

WHEREAS, the Parties believe that this Settlement Agreement is fair, reasonable, and adequate in its resolution of the claims brought by the putative "File Request" and "Dispute" classes because it: (1) provides for certification of a Fed. R. Civ. P. 23(b)(3) Settlement Class, even though the Court has not yet determined whether this action could properly be brought as a class action, and Defendants maintain that certification of any class for trial purposes would not be proper under Fed. R. Civ. P. 23; and (2) provides a substantial monetary payment to the Fed. R. Civ. P. 23(b)(3) Settlement Class in exchange for their release of all claims under the FCRA against the Defendants.

NOW, THEREFORE, without (a) any admission or concession on the part of Named Plaintiffs of the lack of merit of the Litigation whatsoever, or (b) any admission or concession of liability or wrongdoing or the lack of merit of any defense whatsoever by Defendants, it is hereby stipulated and agreed by the undersigned, on behalf of the Named Plaintiffs, the Fed. R.

4

Civ. P. 23(b)(2) and (b)(3) Settlement Classes, and the Defendants, that this matter and all claims of the Fed. R. Civ. P. 23(b)(2) and (b)(3) Settlement Classes be settled, compromised, and dismissed on the merits and with prejudice as to Defendants, subject to Court approval as required by Fed. R. Civ. P. 23, on the terms and conditions set forth herein.

The recitals stated above are true and accurate and are hereby made a part of this Settlement Agreement.

## 2.    DEFINITIONS

For the purposes of this Settlement Agreement, including the recitals stated above, the following terms will have the following meanings:

**2.1**    "Accurint Database" means those databases maintained by Defendants, and the sources that provide data for such databases, that, as of the date of the Settlement Agreement, are used to produce products and services that are intended by Defendants not to constitute "consumer reports" under the FCRA, which include without limitation Accurint Reports.

**2.2**    "Accurint Reports" means various suites of products and services offered by Defendants using information from the Accurint Database.  Accurint Reports are used by law enforcement, government, package delivery, banking, insurance, health care, legal, and receivable management subscribers to locate people, prevent fraud, comply with the law, authenticate identities, perform administrative functions, and aid in online security credentialing with data derived from the Accurint Database.  Defendants have offered Accurint Reports as non-FCRA regulated products and services and continue to take the

5

position that Accurint Reports do not constitute "consumer reports" as that term is defined by the FCRA. Accurint Reports do not include products and services that the Released Parties have treated as "consumer reports."

2.3    "CAFA Notice" means notice (in a form substantially similar to that attached as Exhibit E and approved by the Court) of this settlement to the appropriate federal and state officials, as provided by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and as further described in Sections 4.2.9 and 5.2.5.

2.4    "Claim" and "Claims" mean all claims, counterclaims, demands (including, without limitation, demands for arbitration), actions, suits, causes of action, allegations of wrongdoing, and liabilities.

2.5    "Class Counsel" means the attorneys and law firms listed on the signature pages of this Settlement Agreement representing the Named Plaintiffs and the Rule 23(b)(2) and (b)(3) Settlement Classes.

2.6    "Class List" means the list generated by Defendants of the Rule 23(b)(3) Settlement Class Members, as further described in Section 5.2.1.

2.7    "Collections Decisioning" means the new suite of products or services created by one or more of the Defendants for customers in the Receivable Management Market  that will provide "consumer reports" as that term is defined by the FCRA and as described in Section 4.3.1.1.

2.8    "Consumer Access Program" means the rights afforded to the Rule 23(b)(2) Settlement Class with regard to the Contact & Locate suite of products and

services as further described in Section 4.3.1.4.

2.9 "Contact & Locate" means the new suite of products and services that will be created by one or more of the Defendants to assist Receivable Management Market customers in the location of debtors and the location of assets securing the debt for the purpose of repossession that the Parties agree will not be "consumer reports" as that term is defined by the FCRA or FCRA State Equivalents, as further described in Section 4.3.1.2.

2.10 "Court" means the United States District Court for the Eastern District of Virginia where this Litigation is pending.

2.11 "Covered Conduct" means any and all conduct or activity of the Defendants challenged by Named Plaintiffs in the Litigation relating to the characterization of any Accurint Reports as a "consumer report" as defined in the FCRA and any related alleged violations of the FCRA. Covered Conduct does not include activity of the Defendants that may relate to products or services that Released Parties have marketed or sold as "consumer reports."

2.12 "Defendants" means Defendants LNRSF, LNRDMI, and Reed Elsevier.

2.13 "Effective Date" means the date on which all appellate rights with respect to the Final Judgment and Order have expired or have been exhausted in such a manner as to affirm the Final Judgment and Order, and when no further appeals are possible, including review by the United States Supreme Court.

2.14 "Escrow Account" means an interest-bearing account at a financial institution

7

to be identified by Class Counsel and approved by Defendants.

**2.15**   "Escrow Agent" means an agent identified by Class Counsel and who has been

approved by Defendants whose responsibility it is to manage the Escrow

Account.

**2.16**   "FCRA" means the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681-

1681x.

**2.17**   "FCRA State Equivalents" means any statute or regulation of any State, the

District of Columbia, or Puerto Rico, that has the purpose or effect of

regulating the obtainment, use, or disclosure of the same or similar information

that meets the definition of "consumer report" under the FCRA.

**2.18**   "Final Judgment" or "Final Judgment and Order" means a final judgment and

order of dismissal entered by the Court in this Litigation granting final

approval of this Settlement Agreement (including Class Counsel's request for

attorneys' fees, costs, and other expenses and Named Plaintiffs' requests for

Service Awards), and entering a judgment according to the terms set forth in

this Settlement Agreement.

**2.19**   "Injunctive Relief" means the injunctive relief programs to which the

Defendants have agreed and which benefits the Rule 23(b)(2) Settlement Class,

as further described in Section 4.3.

**2.20**   "Injunctive Relief Order" means the consent order attached as Exhibit A to this

Settlement Agreement and proposed by the Parties for entry by the Court

intended to require and accomplish the Injunctive Relief that in no way imposes any obligation, duty or responsibility on the Defendants or creates a right on behalf of the Rule 23(b)(2) Settlement Class beyond what is described in the Injunctive Relief.

2.21   "Litigation" means the civil action captioned <u>Gregory Berry, et al. v. LexisNexis Risk & Information Analytics Group, Inc., et al.</u>, Case No. 3:11cv754, pending in the United States District Court for the Eastern District of Virginia.

2.22   "LNRDMI" means Defendant Seisint Inc., now known as LexisNexis Risk Data Management, Inc.

2.23   "LNRSF" means Defendant LexisNexis Risk & Information Analytics Group Inc., now known as LexisNexis Risk Solutions FL Inc.

2.24   "Mail Notice" means the notice (in a form substantially similar to that attached as Exhibit D and approved by the Court) that will be mailed to the Rule 23(b)(3) Settlement Class pursuant to the Rule 23(b)(3) Notice Plan, further described in Section 5.2.

2.25   "Named Plaintiffs" means Gregory Berry, Summer Darbonne, Rickey Millen, Shamoon Saeed, Arthur Hernandez, Erika Godfrey, and Timothy Otten, or any of them.

2.26   "Party" and "Parties" mean the Named Plaintiffs, the Rule 23(b)(2) and (b)(3) Settlement Classes, and the Defendants.

9

**2.27**   "Post Settlement Products" means the suite of Accurint Reports related to the

Covered Conduct and which will be offered after the Effective Date for law

enforcement, government, legal services, legal compliance, portfolio analysis,

customer relationship management, online security credentialing, direct to

consumer offering, insurance (for purposes other than eligibility and

establishing a price for insurance), and financial services (for purposes other

than determining credit eligibility), fraud investigation and prevention, claim

investigation, and identity verification purposes and the new Contact & Locate

product and services.  Post Settlement Products do not include Collections

Decisioning products or services.

**2.28**   "Preliminary Approval" and "Preliminary Approval Order" mean the Court's

order certifying the tentative Rule 23(b)(2) and (b)(3) Settlement Classes,

preliminarily approving the proposed settlement, approving and directing the

Rule 23(b)(2) and (b)(3) Notice Plans, appointing a Settlement Administrator,

and appointing Class Counsel.

**2.29**   "Receivable Management Market" means credit originators (such as financial

services organizations) and any individual, partnership, corporation,

organization or other legal entity engaged in the collection or attempted

collection of an outstanding or past due consumer credit obligation which (a)

used or had access to Accurint for Collections prior to the Effective Date or (b)

becomes a customer or user after the Effective Date and but for the Injunctive

Relief would have been marketed, sold or given access to Accurint for

Collections.

**2.30**   "Reed Elsevier" means Defendant Reed Elsevier Inc.

**2.31**   "Released Parties" means the Defendants and their predecessors, successors,

and assigns; the present and former, direct and indirect, parents, subsidiaries,

sister corporations, divisions, corporate affiliates, or associates of any of the

above; and the present and former members, principals, partners, officers,

directors, control persons, employees, insurers, customers, vendors,

contractors, data suppliers, agents, attorneys, shareholders, advisors, assigns,

and any person involved in any respect with regard to the Covered Conduct,

and representatives of any of the above.

**2.32**   "Rule 23(b)(2) Class Settlement Website" means the Internet website to be

established by the Settlement Administrator, as part of the Rule 23(b)(2)

Notice Plan as set forth in Section 4.2.4.

**2.33**   "Rule 23(b)(2) Internet Notice" means the longer form of notice (in a form

substantially similar to that attached as Exhibit C and approved by the Court)

to the Rule 23(b)(2) Settlement Class under the Rule 23(b)(2) Notice Plan that

will be posted on the Rule 23(b)(2) Class Settlement Website, as further

described in Section 4.2.4.

**2.34**   "Rule 23(b)(2) Notice Plan" means the plan for providing notice of this

settlement to the Rule 23(b)(2) Settlement Class under Fed. R. Civ. P.

23(c)(2)(A) and (e)(1), as set forth in Section 4.2.

**2.35**   "Rule 23(b)(2) Publication Notice" means the shorter form of notice (in a form

11

substantially similar to that attached as Exhibit B and approved by the Court)

to the Rule 23(b)(2) Settlement Class under the Rule 23(b)(2) Notice Plan that

will be published in various national newspapers and periodicals, as further

described in Section 4.2.8.

**2.36**   "Rule 23(b)(2) Settlement Class" or "Rule 23(b)(2) Settlement Class

Members" means all persons residing in the United States of America

(including its territories and Puerto Rico) about whom information exists in the

Accurint Database from November 14, 2006 to the date when the Court enters

its Preliminary Approval Order.  Excluded from the Rule 23(b)(2) Settlement

Class are counsel of record (and their respective law firms) for any of the

Parties; and the presiding judge in the action and his staff, and all members of

their immediate family.

**2.37**   "Rule 23(b)(2) Settlement Class Released Claims" means those Claims that the

Rule 23(b)(2) Class Members are releasing, as set forth in Section 4.5.

**2.38**   "Rule 23(b)(3) Class Settlement Website" means the Internet website to be

established by the Settlement Administrator, as part of the Rule 23(b)(3)

Notice Plan as set forth in Section 5.2.4.

**2.39**   "Rule 23(b)(3) Notice Plan" means the plan for providing notice of this

settlement to the Rule 23(b)(3) Settlement Class under Fed. R. Civ. P.

23(c)(2)(B) and (e)(1), as set forth in Section 5.2.

**2.40**   "Rule 23(b)(3) Settlement Class" or "Rule 23(b)(3) Settlement Class

Members" means all persons residing in the United States of America (including its territories and Puerto Rico) who, from October 1, 2006 through the date when the Court enters its Preliminary Approval Order, requested a copy of an Accurint Report about themselves or initiated or submitted a dispute or other inquiry regarding any Accurint Report to any of the Defendants or any of their predecessors or affiliates. Excluded from the Rule 23(b)(3) Settlement Class are counsel of record (and their respective law firms) for any of the Parties; and the presiding judge in the action and his staff, and all members of their immediate family.

**2.41**   "Rule 23(b)(3) Settlement Class Released Claims" means those Claims that the Rule 23(b)(3) Class Members are releasing, as set forth in Section 5.8.

**2.42**   "Service Award" means the one-time payment to each of the Named Plaintiffs, for the time and resources each has put into representing the Rule 23(b)(2) and (b)(3) Settlement Classes, as set forth in Section 5.6.

**2.43**   "Settlement Administrator" means, subject to Court approval, either Kinsella Media, LLC, located at 2120 L Street NW, Suite 860, Washington, DC 20037, for the Rule 23(b)(2) Settlement Class, or Rust Consulting, located at 625 Marquette Avenue, Suite 880, Minneapolis, MN 55402, for the Rule 23(b)(3) Settlement Class, or both. "Settlement Agreement" means this Settlement Agreement and Release, including its Exhibits.

**2.44**   "Settlement Fund" means the monetary relief to which the various Defendants have agreed to provide for the benefit of the Rule 23(b)(3) Settlement Class

Members, as further described in Section 5.3.

**2.45**   "Willful Noncompliance Remedies" means any and all claims, counterclaims, demands (including, without limitation, demands for arbitration), actions, suits, causes of action, allegations of wrongdoing, and liabilities arising out of or related to 15 U.S.C. §1681n for willful violation of the FCRA, including any related claim under any FCRA State Equivalent, regardless of whether such FCRA State Equivalent utilizes the term "willful." Willful Noncompliance Remedies does not include claims for actual damages available pursuant to 15 U.S.C. §1681o and any FCRA State Equivalent.

## 3.   MOTION FOR PRELIMINARY APPROVAL

As soon as reasonably practicable after the signing of this Settlement Agreement, the Named Plaintiffs shall file with the Court a Motion for Preliminary Approval of the Proposed Settlement, Conditional Certification of the Rule 23(b)(2) and (b)(3) Settlement Classes, Appointment of Class Counsel, Approval and Direction of the Rule 23(b)(2) and (b)(3) Notice Plans, and Appointment of the Settlement Administrator that seeks entry of an order that would, for settlement purposes only:

    a)   preliminarily approve this Settlement Agreement;

    b)   certify a conditional settlement class under Fed. R. Civ. P. 23(b)(2) composed of the Rule 23(b)(2) Settlement Class Members;

    c)   certify a conditional settlement class under Fed. R. Civ. P. 23(b)(3) composed of the Rule 23(b)(3) Settlement Class Members;

    d)   appoint Class Counsel;

e) approve the proposed Rule 23(b)(2) and (b)(3) Notice Plans, including the

forms of notice substantially similarly to those attached as Exhibits B-E; and

f) appoint the Settlement Administrator.

## 4.   RULE 23(B)(2) SETTLEMENT

### 4.1   Certification of Rule 23(b)(2) Settlement Class

#### 4.1.1   Class Definition

For purposes of settlement only, and upon the express terms and conditions set forth in

this Settlement Agreement, Named Plaintiffs and Defendants agree to seek certification of a

mandatory, nationwide Rule 23(b)(2) Settlement Class in the Litigation pursuant to Fed. R. Civ.

P. 23(b)(2) as follows:

> All persons residing in the United States of America (including its
> territories and Puerto Rico) about whom information resided in the
> Accurint Database from November 14, 2006 to the date when the
> Court enters its Preliminary Approval Order.  Excluded from the
> settlement class are counsel of record (and their respective law
> firms) for any of the parties and the presiding judge in the action
> and his staff, and all members of their immediate family.

#### 4.1.2   No Right to Opt Out

Because the Rule 23(b)(2) Settlement Class is being certified as a mandatory class under

Fed. R. Civ. P. 23(b)(2), Rule 23(b)(2), Settlement Class Members shall not be permitted to opt

out of the Rule (b)(2) Settlement Class.

#### 4.1.3   Class Certified for Settlement Purposes Only

The Defendants contend that this Litigation could not be certified as a class action under

Fed. R. Civ. P. 23 for trial purposes.  Nothing in this Settlement Agreement shall be construed as

an admission by Defendants that this Litigation or any similar case is amenable to class

certification for trial purposes.  Furthermore, nothing in this Settlement Agreement shall prevent

Defendants from opposing class certification or seeking de-certification of the conditionally certified tentative Rule 23(b)(2) Settlement Class if final approval of this Settlement Agreement is not obtained, or not upheld on appeal, including review by the United States Supreme Court, for any reason, or if any of the conditions exist that permit Defendants to terminate this Settlement Agreement in accordance with Section 7.

### 4.2     Rule 23(b)(2) Notice Plan

#### 4.2.1    Rule 23(b)(2) Settlement Class Notice

Under Fed. R. Civ. P. 23, individual notice is not required for a class certified under Fed. R. Civ. P. 23(b)(2), and, thus, such will not be sent to the Rule 23(b)(2) Settlement Class. Named Plaintiffs, Defendants, and the Settlement Administrator have developed an appropriate and reasonable Rule 23(b)(2) Notice Plan to reach Rule 23(b)(2) Settlement Class Members. The Parties will recommend to the Court this Rule 23(b)(2) Notice Plan, which will be administered by the experienced and highly qualified Settlement Administrator, and which will employ at least five different methods for circulating information about the settlement to Rule 23(b)(2) Settlement Class Members:

a) a Rule 23(b)(2) Class Settlement Website will be established that contains the Preliminary Approval Order, the Rule 23(b)(2) Internet Notice, the Settlement Agreement, and other relevant information regarding the Court-approval process;

b) a toll-free telephone number will be established that will provide Rule 23(b)(2) Settlement Class Members with access to recorded information

regarding the settlement and live operators who will be able to respond to inquiries regarding the settlement;

c) banner advertisements will be placed on selected Internet websites that will allow Rule 23(b)(2) Settlement Class Members who select one of the advertisements to click on a link that directs them to the Rule 23(b)(2) Class Settlement Website;

d) keyword and phrase sponsorship related to the Litigation will be purchased on popular Internet search engines so that Rule 23(b)(2) Settlement Class Members who use those search terms will be directed to the Rule 23(b)(2) Class Settlement Website; and

e) Rule 23(b)(2) Publication Notice will be published in various national newspaper supplements and consumer magazines.

As soon as reasonably practicable after Preliminary Approval, the Defendants and the Settlement Administrator shall implement the Rule 23(b)(2) Notice Plan and other actions described in this Section.

### 4.2.2    Court Appointment and Retention of Settlement Administrator

At the Preliminary Approval hearing, the Parties will propose that the Court appoint Kinsella Media, LLC as Settlement Administrator.  The Settlement Administrator will facilitate the notice process by assisting the Parties and providing professional guidance in the implementation of the Rule 23(b)(2) Notice Plan.

### 4.2.3    Rule 23(b)(2) Internet Notice

The Parties and the Settlement Administrator have agreed that they will jointly recommend the Rule 23(b)(2) Internet Notice, substantially in the form attached as Exhibit C, to

the Court for approval.  The Rule 23(b)(2) Internet Notice is designed to provide comprehensive and reasonable notice of the terms of the Settlement Agreement.  The Rule 23(b)(2) Internet Notice shall be posted on the Rule 23(b)(2) Class Settlement Website.

### 4.2.4   Rule 23(b)(2) Class Settlement Website

The Settlement Administrator will create and maintain the Rule 23(b)(2) Class Settlement Website to be activated as soon as practicable following Preliminary Approval.  The Settlement Administrator's responsibilities will also include securing an appropriate URL, such as http://www.collectiondatabasesettlement.com.

The Settlement Administrator will create and maintain the Rule 23(b)(2) Class Settlement Website.  The Rule 23(b)(2) Class Settlement Website will post important settlement documents, such as the Settlement Agreement, the Rule 23(b)(2) Internet Notice (in both English and Spanish), and the Preliminary Approval Order.  In addition, the Rule 23(b)(2) Class Settlement Website will include a description of the Injunctive Relief along with a copy of the Injunctive Relief Order, a section for frequently-asked questions, and procedural information regarding the status of the Court-approval process, such as an announcement when the final approval hearing is scheduled, when the Final Judgment and Order has been entered, and when the Effective Date is expected or has been reached.

The Settlement Administrator will terminate the Rule 23(b)(2) Class Settlement Website at a time to be determined after consultation with counsel for Plaintiffs and Defendants; however under no circumstances shall the Rule 23(b)(2) Class Settlement Website be active one hundred and eighty after either (1) the Effective Date, or (2) the date on which the settlement is

terminated or otherwise not approved by a court.  The Settlement Administrator will then transfer ownership of the URL to the Defendants.

### 4.2.5   Search Terms

The Settlement Administrator will take steps to attract Rule 23(b)(2) Settlement Class Members to the Rule 23(b)(2) Class Settlement Website by obtaining sponsorship of keywords and phrases, from popular search engines, such as Google, that will provide a link to the Rule 23(b)(2) Class Settlement Website.

### 4.2.6   Banner Advertisements

The Settlement Administrator will take steps to attract Rule 23(b)(2) Settlement Class Members to the Rule 23(b)(2) Class Settlement Website by purchasing banner advertisements on appropriate websites that will take Rule 23(b)(2) Settlement Class Members who select the link in the advertisement to the Rule 23(b)(2) Class Settlement Website.

### 4.2.7   Toll-Free Telephone Number

The Settlement Administrator will create and maintain a toll-free telephone number to be activated as soon as practicable following Preliminary Approval.  The toll-free number will provide Rule 23(b)(2) Settlement Class Members with access to live responders and to recorded information (in both English and Spanish) that includes answers to frequently-asked questions and directs them to the Rule 23(b)(2) Class Settlement Website.

### 4.2.8   Rule 23(b)(2) Publication Notice

The Parties and the Settlement Administrator have agreed that they will jointly recommend the Rule 23(b)(2) Publication Notice, substantially in the form attached as Exhibit B, to the Court for approval.  The Rule 23(b)(2) Publication Notice is designed to provide the Rule

19

23(b)(2) Settlement Class Members information about the class-action settlement and direct

them to the Rule 23(b)(2) Internet Notice posted on the Rule 23(b)(2) Class Settlement Website.

The Settlement Administrator will publish the Rule 23(b)(2) Publication Notice in full

and half-page advertisements in various national newspaper supplements and consumer

magazines.  The chart below identifies the specific print publications (including the circulation of

the specific publications) that the Parties currently expect to recommend to the Court for the

print publication program:

| Newspapers, Newspaper Supplements, and Periodicals | Circulation | Advertisement Size | Frequency |
| --- | --- | --- | --- |
| Better Homes & Gardens | 7,600,000 | Half Page (3.5" x 10") | 1 |
| National Geographic | 4,100,000 | Full Page (5.75" x 9") | 1 |
| Parents | 2,200,000 | Half Page (3.5" x 10") | 1 |
| People | 3,450,000 | Half Page (3.375" x 10") | 2 |
| People en Espanol | 540,000 | Half Page (3.375" x 10") | 1 |
| El Nuevo Dia | 250,000 | 10.87" x 6" | 1 |
| El Vocero | 140,000 | 6.5" x 9" | 1 |
| Pacific Daily News (Guam) | 30,000 | 5.83" x 10" | 1 |
| Primera Hora | 140,869 | 10.87" x 6" | 1 |
| Puerto Rico Daily Sun | 30,000 | 4.896" x. 12" | 1 |

| Newspapers, Newspaper Supplements, and Periodicals | Circulation | Advertisement Size | Frequency |
|---|---|---|---|
| Saipan Tribune | 2,500 | 7.25" x10.25" | 1 |
| Samoa News | 4,000 | 6" x 10" | 1 |
| St. Croix Avis | 14,000 | 6" x 10" | 1 |
| St. Johns Trade Winds | 2,000 | 10.25" x 6" | 1 |
| Virgin Islands Daily News | 13,000 | 6.08" x 9" | 1 |
| Parade | 33,000,000 | 2/5 Page (5.25" x 6.75") | 1 |

### 4.2.9   CAFA Notice

The Parties agree that Defendants shall serve notice of the settlement that meets the requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, on the appropriate federal and state officials not later than ten days after the filing of this Settlement Agreement with the Court.  A proposed form of CAFA Notice, without the accompanying attachments, is attached as Exhibit E.

The Defendants shall file with the Court a certification of the date upon which the CAFA Notice was served.

### 4.2.10   Costs

The Defendants shall be responsible for the costs associated with the Rule 23(b)(2) Notice Plan except as otherwise provided for in this Settlement Agreement.

### 4.3     Injunctive Relief

#### 4.3.1     Agreed Injunctive Relief

Subject to the terms and conditions of this Settlement Agreement, the Named Plaintiffs and Defendants have agreed to move jointly for the Court to enter an injunction applicable to Defendants by consent, which will contain only the terms of the Injunctive Relief as described in Sections 4.3.1 to 4.3.4, as set forth in the Injunctive Relief Order.  Plaintiffs pursued this Litigation to address certain practices relating to the use of Accurint Reports by the Receivable Management Market.  In arguing that the FCRA applied, Plaintiffs asserted that Accurint Reports fall within the "consumer report" definition primarily because Accurint Reports allegedly contain "seven characteristic" information and are sold to the Receivable Management Market.  (Comp. ¶¶ 1, 50).   To resolve this dispute, Defendants will overhaul their currently existing *Accurint for Collections* suite of products for the Receivable Management Market ("AFC"), which they currently do not treat as "consumer reports" as defined in the FCRA, and split AFC into two newly developed suites of products and services, each containing different sets of information for different uses, where one suite of products and services ("Collections Decisioning") will be treated and recognized by Defendants as falling within the FCRA's "consumer report" definition and the other suite of products and services ("Contact & Locate") will not be treated as falling within the FCRA's "consumer report" definition .  Both suites of products and services are detailed in Sections 4.3.1.1 - 4.3.1.2 below.  As to the Contact & Locate suite of products and services, to the extent applicable, Defendants also agree to implement a Consumer Access Program as detailed in Section 4.3.1.4.

The Court will adopt the Injunctive Relief Order attached as Exhibit A to this Settlement Agreement, which enjoins the Defendants as follows:

22

**4.3.1.1**   **New Collections Decisioning Suite of Products and Services**

**4.3.1.1.1**   A new Collections Decisioning suite of products and services will be created for the Receivables Management Market.

**4.3.1.1.2**   Customers who have completed the credentialing process and are granted access to the Collections Decisioning product and services will be permitted to use the information only for a permissible purpose under 15 U.S.C. § 1681b, including, but not limited to, for the extension of credit as a result of an application from a consumer, review or collection of a consumer's account, or to review a consumer's credit account to determine whether the consumer continues to meet the terms of the account.  To the extent a Defendant offers or markets a Collection Decisioning product or service to the Receivable Management Market, the Defendant will have a compliance program designed to provide reasonable procedures to assure that Collections Decisioning products and services are used for permissible purposes under 15 U.S.C. § 1681b, and for obtaining from the report recipient a certification of permissible use and that the information will be used for only purposes permitted by the FCRA.

**4.3.1.1.3**   When a user enters into the Collections Decisioning suite of products or services for the first time in each user session, a message will be displayed to the user with text substantially similar to the following:

> *"You are entering the LexisNexis Collections Decisioning*
> *FCRA offerings provided by LexisNexis Risk Bureau LLC, a*
> *consumer reporting agency. The LexisNexis Collections*

23

*Decisioning offerings are designed to be compliant with the Fair Credit Reporting Act, 15 U.S.C. Sec. 1681, et seq. ("FCRA"), and may only be accessed for permissible purposes in compliance with the FCRA and in accordance with your agreement and certifications."*

**4.3.1.1.4**   When a user enters into the Collections Decisioning suite of products or services for the first time in each user session, the user will be required to certify a permissible purpose under 15 U.S.C. § 1681b, and that the information will be used only for purposes permitted by the FCRA.

**4.3.1.1.5**   Defendants will acknowledge Collections Decisioning products and services as meeting the FCRA's definition of a "consumer report."

**4.3.1.1.6**   To the extent applicable, the Defendant will put customers through the credentialing process consistent with § 1681e(a) to determine whether the customer may be granted access to the Collections Decisioning product or service.

**4.3.1.1.7**   Customers' contractual commitments and certifications will be consistent with the regulatory framework governing the Collections Decisioning product or service.

**4.3.1.2**   <u>**New Contact & Locate Suite of Products and Services**</u>

**4.3.1.2.1**   A new Contact & Locate suite of products and services will be created for the purpose of assisting the Receivable Management Market to locate debtors and to locate assets securing the debt for the purpose of repossession.  The Parties agree that the Contact & Locate suite of

products and services will not involve the provision of "consumer reports" as that term is defined under the FCRA and FCRA State Equivalents and so have agreed on the following with regard to what data will be displayed in such reports and what uses of that data will be permitted.

**4.3.1.2.2**  Available Data: The Contact & Locate suite of products and services shall include only:

a) information that does not contain "seven characteristic" information; or

b) information that does not bear on any eligibility determination for credit, insurance, employment or any other purpose in connection with which a consumer report may be used under the FCRA; or

c) information, the use of which bears a reasonable relationship to the location of a debtor or to the location of assets securing the debt for purpose of repossession, even if such information may arguably bear on an eligibility determination under the FCRA; or

d) information that includes any combination of the above.

**4.3.1.2.3**  Limitation on Use: The Contact & Locate suite of products and services is intended to be used by the Receivables Management Market for the limited purpose of finding and locating debtors or locating assets securing the debt for the purpose of repossession.

**4.3.1.2.4**   When a user enters into the Contact & Locate suite of products and services for the first time in each user session, a message will be displayed to the user with text substantially similar to the following:

> *"Accurint Contact & Locate is provided by LexisNexis Risk Solutions FL Inc. Accurint Contact & Locate is not provided by 'consumer reporting agencies,' as that term is defined in the Fair Credit Reporting Act (15 U.S.C. § 1681, et seq.) ("FCRA") and does not constitute a "consumer report," as that term is defined in the FCRA. Accurint Contact & Locate may not be used in whole or in part as a factor in determining eligibility for credit, insurance, or employment or for any other eligibility purpose that would qualify it as a consumer report under the FCRA."*

**4.3.1.2.5**   Customers' contractual commitments and certifications will be consistent with non-FCRA characterization and treatment of the Contact & Locate suite of products and services.

**4.3.1.3**   <u>Design and Layout of the New Products and Services</u>

**4.3.1.3.1**   To assist the Parties in understanding the scope of the above limitations on data and use, the Parties have reviewed certain details regarding the contemplated design of the Contact & Locate and Collection Decisioning suite of products and services, and agree that the present design meets the limitations on data and use defined above.

**4.3.1.3.2**   The Parties acknowledge that the specific design and content of the Contact & Locate and Collection Decisioning suite of products and services may change over time to respond to the then current requirements of customers and the market. The contemplated design and the current list of reports and searches are included for exemplary purposes only and are

intended only as a guide to assist the Court and the Parties when interpreting the limitations on data and use defined above.

**4.3.1.4**    **Consumer Access Program for the Contact & Locate**

**4.3.1.4.1**    The Parties agree that the Contact & Locate suite of products and services do not constitute "consumer reports" as that term is defined under the FCRA and so will not be subject to the FCRA's requirements relating to disputes, access, accuracy or otherwise. Nonetheless, a Consumer Access Program for the Contact & Locate suite of products and services detailed below in this section will be created.

**4.3.1.4.2**    The Consumer Access Program will include procedures that permit an individual to obtain a free copy of a Contact & Locate Comprehensive Report regarding the individual once a year.  The procedures may include a process requiring the individual to furnish proper identification that is sufficient to verify the individual's identity and assure that the individual making the request is the same individual identified in the requested Contact & Locate Comprehensive Report. Defendants will publish information regarding how consumers can contact them to obtain their free report.  In addition, in  the cover letter transmitting to consumers information responsive to a request made under 15 U.S.C. 1681g(a), Defendants shall include the following language: "An affiliate of [Consumer Reporting Agency] provides  debt collectors with 'contact and locate' information about consumers.  That information

27

is not a 'consumer report' under the FCRA and is not enclosed in this
mailing.  For more information about this 'contact and locate' information,
or to request a copy of such report about you, please visit [website] or call
[number]."

**4.3.1.4.3**   The Consumer Access Program will include procedures that
permit an individual to submit a statement of up to 100 words regarding
any phone number or address displayed in the Contact & Locate suite of
products and services and that is being used to contact the individual
related to a consumer credit obligation subject to collection.  The
procedures may include a process requiring the individual to furnish
proper identification that is sufficient to verify the individual's identity, to
prevent fraud or other abuse.

**4.3.1.4.4**   All such comments will be made available via a link on the
main page and search forms where the phone number or address may be
displayed in the Contact & Locate suite of products and services.  The link
will be to a web page that enables the user to search on the phone number
or address and to locate and view comments related to the phone number
or address searched.

> a)      Such comments will only relate to the accuracy of
> the phone number or address.  Accuracy includes not only
> whether the number or address relates to the consumer but
> also whether the telephone number or address belongs to a

28

person who has some relationship to the debt being

collected.  Defendants shall not be obligated to publish

consumer statements that do not bear on accuracy of the

phone number or address, such as statements criticizing the

Defendant or its customers, or the validity of the debt.

b)      To the extent applicable, the Defendant will publish

information regarding how consumers can contact

Defendant to submit a statement.

**4.3.1.5**      The Parties agree to use the resolution process detailed in Section 8.3 if a

material dispute arises as to the implementation or performance of any obligation

detailed in the Injunctive Relief of this Settlement Agreement.

### 4.3.1.6      Customer Education Regarding New Products and Services for Receivable Management Market

To the extent a Defendant offers or markets Collections Decisioning and Contact

& Locate suite of products or services to the Receivable Management Market,

educational seminars and materials will be provided, free of charge, to customers

regarding their use of and responsibilities relating to Collections Decisioning and Contact

& Locate.

### 4.3.1.7      Employee Training Regarding New Products and Services for Receivable Management Market

To the extent a Defendant offers or markets Collections Decisioning and Contact

& Locate suite of products or services to the Receivable Management Market, employees

who work on or with Collections Decisioning or Contact & Locate will be required to participate in training regarding the requirements of the Injunctive Relief.

### 4.3.2   Timetable for Implementation of Injunctive Relief

**4.3.2.1**   To the extent a Defendant offers or markets products or services to the Receivable Management Market, the Defendant shall make reasonable and good faith efforts to implement the Injunctive Relief contemplated herein within the timeframe detailed below and referred to herein as the "Implementation Period":

> **4.3.2.1.1**   Release of the initial versions of Collections Decisioning and Contact & Locate online by December 31, 2013.  Nothing in the Settlement Agreement shall be interpreted to prohibit or otherwise restrict Defendants right to modify the initial versions of Collections Decisioning and Contact & Locate online or to develop new products that otherwise meet the requirements of the Injunctive Relief.

> **4.3.2.1.2**   To the extent applicable, the Defendant will market Collections Decisioning and Contact & Locate to all new online Receivable Management Market customers with compatible use cases and employ reasonable procedures to provide new online Receivable Management Market customers access to Collections Decisioning and Contact & Locate as of December 31, 2013.

> **4.3.2.1.3**   To the extent applicable, the Defendant will initiate the migration of existing online Receivable Management Market customers to Collections Decisioning and Contact & Locate beginning on or before

30

December 31, 2013.  The Defendant will use reasonable and good faith efforts to migrate existing online customers as soon as practicable, but will complete the migration by December 31, 2014.

**4.3.2.1.4**   To the extent applicable, the Defendant will initiate the migration of all other Receivable Management Market customers to Collections Decisioning and Contact & Locate beginning on or before December 31, 2013.  The Defendant will use reasonable and good faith efforts to migrate all other existing Receivable Management Market customers as soon as practicable, but will complete the migration by June 30, 2015.

**4.3.2.1.5**   The Consumer Access Program will be implemented by December 31, 2013.

**4.3.2.2**   Notwithstanding this provision, if a Defendant is unable to comply with any of these deadlines, the Defendant shall receive a reasonable extension of time sufficient to permit completion of the task upon submission of an application to the Court showing good cause for the extension.

**4.3.2.3**   During the Implementation Period, Defendants may continue to permit access to the full suite of Accurint Reports to a Receivable Management Market customer that has not yet migrated to Collections Decisioning and Contact & Locate. Notwithstanding any of the above, the Parties agree that the terms described in Section 4.5.4 relating to Defendants' Ongoing Operations apply during the Implementation Period through the Sunset Date.

31

### 4.3.3   <u>Sunset Provision</u>

The obligations of Sections 4.3.1.1 to 4.3.1.7 of the Injunctive Relief will expire the

earlier of seven years from the Effective Date or June 30, 2020 ("Sunset Date").

### 4.3.4   <u>Limitations on Injunctive Relief</u>

Any action by Defendants determined in good faith to be reasonably necessary to comply

with any federal, state, or local law, enactment, regulation, or judicial ruling shall not constitute a

breach of this Settlement Agreement.  In the event that any obligation that Defendants have

agreed to undertake in the Injunctive Relief becomes inconsistent with any future federal, state,

or local law, enactment, regulation, or judicial ruling or if the Rule 23(b)(2) Settlement Class (or

any subset) agree to impose less stringent requirements on any competitor of Defendants, then

Defendants shall be released from performing such obligation after notice to the Court and Class

Counsel.  Any objection to such change in procedure shall be made to the Court by Class

Counsel within ten (10) days of such notice.

### 4.4   <u>Rule 23(b)(2) Settlement Class Attorneys' Fees, Costs, and Other Expenses</u>

### 4.4.1   <u>Amount</u>

Within ten (10) business days of the Final Approval Hearing, Class Counsel shall make

an application to the Court for an award of attorneys' fees, costs, and other expenses, for up to

$5.5 million for their representation of the Rule 23(b)(2) Settlement Class, to be paid by the

Defendants.  Class Counsel's application shall also request that the Court specifically approve all

of the terms of this Section.  Defendants agree to support the application by Class Counsel for

attorneys' fees, costs, and other expenses in an amount up to $5.5 million, in the aggregate.  The

$5.5 million award shall include all fees, costs, and other expenses for all attorneys (and their

employees, consultants, experts, and other agents) who performed work in connection with the

Litigation of the claims on behalf of the Rule 23(b)(2) Settlement Class Members.  Regardless of the number of attorneys sharing in the Court's award of attorneys' fees, costs, and other expenses, the Defendants shall not be required to pay any award that exceeds, in the aggregate, $5.5 million in connection with the Rule 23(b)(2) Settlement Class.

This agreement with respect to attorneys' fees, costs, and other expenses was not negotiated until after the substantive terms of the settlement, including the Injunctive Relief to the Rule 23(b)(2) Settlement Class, had been negotiated and agreed upon during the mediation.

### 4.4.2   Payment Schedule

Within the later of either (a) thirty days after the Effective Date or (b) fourteen days after Defendants' receipt of wiring instructions from Class Counsel, Defendants will make payment of the amount of attorneys' fees, costs, and other expenses approved by the Court up to and not more than $5.5 million, in the aggregate, by wire transfer to the agent identified by Class Counsel.

### 4.5   Rule 23(b)(2) Settlement Class Release

### 4.5.1   Scope of Release

Upon the Effective Date, the Rule 23(b)(2) Class shall be deemed to have waived any Willful Noncompliance Remedies and the Released Parties shall be fully, finally, and forever released and discharged from any and all Willful Noncompliance Remedies, known or unknown, arising on or before the Effective Date that Named Plaintiffs and the Rule 23(b)(2) Settlement Class had based on any Covered Conduct.

After entering into this Settlement Agreement, Named Plaintiffs or the Rule 23(b)(2) Settlement Class may discover facts other than, different from, or in addition to, those that they

know or believe to be true with respect to the Released Claims.  Named Plaintiffs and the

Settlement Class Members expressly waive and fully, finally, and forever settle and release any

known or unknown, suspected or unsuspected, contingent or non-contingent Willful

Noncompliance Remedies with respect to the Released Parties based on any Covered Conduct,

whether or not concealed or hidden, and without regard to the subsequent discovery or existence

of such other, different, or additional facts.

Named Plaintiffs and the Rule 23(b)(2) Settlement Class do not release and discharge, but

instead preserve, the right of a Rule 23(b)(2) Settlement Class Member to file an individual

lawsuit under 15 U.S.C. § 1681o or FCRA State Equivalents for actual damages sustained before

the Effective Date, subject to the waiver of the class action procedural device described in

Section 4.5.2.

### 4.5.2   <u>Waiver of Class Action Procedural Device</u>

The Named Plaintiffs and Rule 23(b)(2) Settlement Class Members waive their

right to pursue, in the future, any Claims based on Covered Conduct against the Released Parties

that were or could have been brought in the Litigation, (and that are not otherwise released and

discharged by the Settlement Agreement), using the class action procedural device or as a mass

action.  This waiver includes any Claims for actual damages under 15 U.S.C. §1681o, any FCRA

State Equivalents, or otherwise.  The Named Plaintiffs and the Rule 23(b)(2) Settlement Class

Members recognize that as part of this Settlement Agreement, Defendants are agreeing to the

certification of a tentative Rule 23(b)(2) Settlement Class, even though Defendants expressly

deny that this Litigation could be certified as a class action for trial purposes.  The Named

Plaintiffs and Rule 23(b)(2) Settlement Class Members further recognize that they have already

availed themselves of the class action procedural device once in this Litigation, and they agree

that they shall not be allowed to avail themselves of the class action procedural device a second time in the future against the Released Parties for Claims that were or could have been brought in the Litigation.

### 4.5.3   Waiver of California Civil Code §1542

Rule 23(b)(2) Settlement Class Members acknowledge that they are aware that they may hereafter discover facts in addition to or different from those that they or Class Counsel now know or believe to be true with respect to the subject matter of this Litigation and the Rule 23(b)(2) Settlement Class Released Claims, but it is their intention to, and they do upon the Effective Date of this Settlement Agreement, fully, finally, and forever settle and release any and all Rule 23(b)(2) Settlement Class Released Claims, without regard to the subsequent discovery or existence of such different additional facts.  Rule 23(b)(2) Settlement Class Members waive any and all rights and benefits afforded by California Civil Code § 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR.

Rule 23(b)(2) Settlement Class Members and Class Counsel understand and acknowledge the significance of this waiver of California Civil Code Section 1542 and/or of any other applicable federal or state law relating to limitations on releases.

### 4.5.4   Defendants' Ongoing Operations

Defendants believe that the practices challenged in the Complaint with regard to the Accurint Database do not cause the communications from those databases to meet the definition

of "consumer report" under the FCRA. Defendants are offering the comprehensive and

substantial modifications to their existing practices and procedures to resolve this matter and

eliminate any dispute among the parties as to whether communications from the Accurint

Database are "consumer reports" within the meaning of the FCRA.

The Parties acknowledge that Defendants have used and will continue in the future to use

"collect once, use twice" data acquisition practices where data may be acquired or obtained once

from [or provided by] a source, processed and then supplied to Released Parties for inclusion

both (a) in databases used to produce communications that constitute "consumer reports" under

the FCRA and (b) in databases used to produce communications not intended to constitute

"consumer reports". In consideration for the heightened protections that will be accomplished

through the Injunctive Relief, the Named Plaintiffs, Class Counsel, and the Rule 23(b)(2)

Settlement Class for purposes of this Settlement contractually agree that from the Effective Date

until the Sunset Date the "collect once, use twice" data acquisition practice alone shall not cause

communications from all databases to which "collect once, use twice" data is added to be

characterized as "consumer reports" or the provider of same to be characterized as a "consumer

reporting agency" within the meaning of the FCRA merely because of the presence in any

database of such "collect once, use twice" data.

The Parties also acknowledge that Defendants will, following the Effective Date, sell

Post Settlement Products. In consideration for the heightened protections that will be

accomplished through the Injunctive Relief, the Named Plaintiffs, Class Counsel, and the Rule

23(b)(2) Settlement Class agree that from the Effective Date until the Sunset Date that Post

Settlement Products shall not be "consumer reports" within the meaning of the FCRA so long as

the Post Settlement Products are not used in whole or in part as a factor in determining eligibility

for credit, insurance, or employment or for any other eligibility purpose that would qualify it as a consumer report under the FCRA.

Nothing in this Agreement shall waive any other basis that may be available for Defendants to assert that a practice or procedure does not cause data or a product to be characterized as a "consumer report" within the meaning of the FCRA.

### 4.5.5 Binding Release

Upon the Effective Date, no default by any person in the performance of any covenant or obligation under this Settlement Agreement or any order entered in connection therewith shall affect the dismissal of the Litigation, the res judicata effect of the Final Judgment and Order, the foregoing releases, or any other provision of the Final Judgment and Order; provided, however, that all other legal and equitable remedies for violation of a court order or breach of this Settlement Agreement shall remain available to all Parties.

## 5.    RULE 23(B)(3) SETTLEMENT

### 5.1    Certification of Rule 23(b)(3) Settlement Class

#### 5.1.1    Class Definition

For purposes of settlement only, and upon the express terms and conditions set forth in this Settlement Agreement, Named Plaintiffs and Defendants agree to seek certification of a Rule 23(b)(3) Settlement Class in the Litigation pursuant to Fed. R. Civ. P. 23(b)(3) as follows:

> All persons residing in the United States of America (including its territories and Puerto Rico) who, from October 1, 2006 through the date when the Court enters its Preliminary Approval Order, requested a copy of an Accurint Reports containing information about themselves or initiated or submitted a dispute or other inquiry regarding an Accurint Report to any of the Defendants or any of their predecessors or affiliates.  Excluded from the Rule

23(b)(3) Settlement Class are counsel of record (and their
respective law firms) for any of the Parties; and the presiding judge
in the action and his staff, and all members of their immediate
family.

### 5.1.2   Class Certified for Settlement Purposes Only

The Defendants contend that this Litigation could not be certified as a class action under

Fed. R. Civ. P. 23 for trial purposes.  Nothing in this Settlement Agreement shall be construed as

an admission by Defendants that this Litigation or any similar case is amenable to class

certification for trial purposes.  Furthermore, nothing in this Settlement Agreement shall prevent

Defendants from opposing class certification or seeking de-certification of the conditionally

certified tentative Rule 23(b)(3) Settlement Class if final approval of this Settlement Agreement

is not obtained, or not upheld on appeal, including review by the United States Supreme Court,

for any reason, or if any of the conditions exist that permit Defendants to terminate this

Settlement Agreement in accordance with Section 7.

### 5.2   Rule 23(b)(3) Notice Plan

### 5.2.1   Preparation and Production of Class List of Identified Rule 23(b)(3) Settlement Class Members from Defendants' Archive Files

The Defendants will provide the Settlement Administrator with a Class List (in an

electronically accessible format) of identified Rule 23(b)(3) Settlement Class Members prepared

pursuant to the procedures set forth in this Section.  In generating the Class List, Defendants will

use commercially reasonable procedures to search a selection of their archive logs to identify

each person who, based on the information appearing in those archive files, from October 1,

2006 through the date when the Court enters its Preliminary Approval Order appears to satisfy

one of the following conditions:

a) requested a copy of an Accurint Report containing information about themselves; or

b) initiated or submitted a dispute or other inquiry regarding the content of an Accurint Report to the Defendants or any of their predecessors or affiliates.

The Defendants will use commercially reasonable methods to remove from the Class List any repetitious or duplicative listing of any particular person. The Defendants shall also exclude from the Class List any person who has released any claims against the Defendants as a result of prior litigation or otherwise.

With respect to each Rule 23(b)(3) Settlement Class Member, the Class List shall include the following information:

a) the Rule 23(b)(3) Settlement Class Member's name;

b) the Rule 23(b)(3) Settlement Class Member's best address and social security number (to the extent such information is reasonably available in Defendants' databases); and

c) the date that the Rule 23(b)(3) Settlement Class Member (i) requested his or her Accurint Report, and/or (ii) initiated a dispute or made some other inquiry regarding information in his or her Accurint Report to one of the Defendants or any of their predecessors or affiliates.

### 5.2.2 <u>Class Size</u>

The Defendants have represented that there are approximately 31,000 Rule 23(b)(3) Settlement Class Members. This estimate is a material term of this settlement.

### 5.2.3   Court Appointment and Retention of Settlement Administrator

At the Preliminary Approval hearing, the Parties will propose that the Court appoint Rust Consulting as Settlement Administrator. The Settlement Administrator will facilitate the notice process by assisting the Parties and providing professional guidance in the implementation of the Rule 23(b)(3) Notice Plan.

### 5.2.4   Rule 23(b)(3) Settlement Class Notice

Named Plaintiffs, Defendants, and the Settlement Administrator have agreed that they will jointly recommend the Mail Notice, substantially in the form attached as Exhibit D, to the Court for approval. After the Court enters Preliminary Approval, the Settlement Administrator will send the Mail Notice via U.S. mail, postage prepaid requesting either forwarding service or change service to each Rule 23(b)(3) Settlement Class Member identified on the Class List. The Mail Notice will be sent to the last known address reflected in the Class List. For up to forty-five days following the mailing of the Mail Notice, the Settlement Administrator will re-mail the Mail Notice via standard U.S. Mail, postage prepaid, to updated addresses of Rule 23(b)(3) Settlement Class Members to the extent that it received address change notifications from the U.S. Postal Service. No later than seven days before the final fairness hearing in this Litigation, the Settlement Administrator will file proof of the mailing of the Mail Notice with the Court. Neither the Parties nor the Settlement Administrator will have any further obligation to send notice of the Settlement to the Rule 23(b)(3) Settlement Class Members.

The Mail Notice will explain to the Rule 23(b)(3) Settlement Class Member that he or she has the option of opting out of the Rule 23(b)(3) Settlement Class, and if that he or she does not effectively opt out within sixty days of receiving the Mail Notice, then he or she can expect

to receive their portion of the Settlement Fund after the Effective Date. The Mail Notice will also provide the Rule 23(b)(3) Settlement Class Member with notice of the Settlement Agreement, and direct them to the Rule 23(b)(3) Class Settlement Website for further information.

The Settlement Administrator also will create and maintain the Rule 23(b)(3) Class Settlement Website to be activated no later than five days prior to the mailing of the Mail Notice described above. The Settlement Administrator's responsibilities will also include securing an appropriate URL, such as http://www.receivablemanagementdatabasesettlement.com. The Rule 23(b)(3) Class Settlement Website will post important settlement documents, such as the Settlement Agreement, the Mail Notice, and the Preliminary Approval Order. In addition, the Rule 23(b)(3) Class Settlement Website will include a description of the Settlement Fund, a section for frequently-asked questions, and procedural information regarding the status of the Court-approval process, such as an announcement when the final approval hearing is scheduled, when the Final Judgment and Order has been entered, when the Effective Date is expected or has been reached, and when payment will likely be mailed.

The Settlement Administrator will terminate the Rule 23(b)(3) Class Settlement Website one hundred and eighty after either (1) the Effective Date, or (2) the date on which the settlement is terminated or otherwise not approved by a court. The Settlement Administrator will then transfer ownership of the URL to the Defendants.

### 5.2.5   CAFA Notice

The Parties agree that Defendants shall serve notice of the settlement that meets the requirements of CAFA, 28 U.S.C. § 1715, on the appropriate federal and state officials not later

41

than ten days after the filing of this Settlement Agreement with the Court.  A proposed form of CAFA Notice, for both the Rule 23(b)(3) Settlement Class, without the accompanying attachments, is attached as Exhibit D.

The Defendants shall file with the Court a certification of the date upon which the CAFA Notice was served.

### 5.2.6   Costs

The Defendants shall be responsible for the costs associated with the Rule 23(b)(3) Notice Plan except as otherwise provided for in this Settlement Agreement.

### 5.3   Settlement Fund

Within thirty days after the Effective Date, Defendants shall deposit the Settlement Fund into the Escrow Account.  The Settlement Fund will be the amount awarded by the Court as the total consideration to the Rule 23(b)(3) Settlement Class, inclusive of any payment of attorneys' fees, costs, and any other expenses described below, in the amount of and no more than $13.5 million, in the aggregate.  The Escrow Account will be managed by the Escrow Agent.

### 5.4   Settlement Fund Tax Status

**5.4.1**   The Parties agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  In addition, the Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provisions of this Subsection, including the "relation back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures

42

and requirements contained in such regulations.  It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

**5.4.2**   For the purpose of Treasury Regulation § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)). Such returns (as well as the election described in Subsection 5.4.1 above) shall be consistent with this Subsection and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Subsection 5.4.3.

**5.4.3**   All (a) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and (b) expenses and costs incurred in connection with the operation and implementation of this Subsection (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns

43

described in Subsection 5.4.2 ("Tax Expenses"), shall be paid out of the Settlement Fund; in no event shall the Released Parties have any responsibility for or liability with respect to the Taxes or the Tax Expenses. The Settlement Administrator shall indemnify and hold the Released Parties harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)); the Released Parties are not responsible therefore nor shall they have any liability with respect thereto. The Parties hereto agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section.

**5.5** **Rule 23(b)(3) Settlement Class Attorneys' Fees, Costs, and Other Expenses**

On or before ten (10) days prior to the Final Approval Hearing, Class Counsel shall make an application to the Court for an award of attorneys' fees, costs, and other expenses, for their representation of the Rule 23(b)(3) Settlement Class, to be paid from and up to thirty percent (30%) of the Settlement Fund. Class Counsel's application shall also request that the Court specifically approve all of the terms of this Section. Defendants shall not oppose or object to the application by Class Counsel for attorneys' fees, costs, and other expenses in an amount to be

paid exclusively from the Settlement Fund.  The award shall include all fees, costs, and other

expenses for all attorneys (and their employees, consultants, experts, and other agents) who

performed work in connection with the Litigation of the claims on behalf of the Rule 23(b)(3)

Settlement Class Members.  Regardless of the number of attorneys sharing in the Court's award

of attorneys' fees, costs, and other expenses, the Defendants shall not be required to pay any

award that exceeds, in the aggregate, the amount of the Settlement Fund in connection with the

Rule 23(b)(3) Settlement Class.  Under no circumstances shall Defendants be required to pay or

contribute more than $13.5 million to the Settlement Fund.

This agreement with respect to attorneys' fees, costs, and other expenses was not

negotiated until after the amount of the Settlement Fund to the Rule 23(b)(3) Settlement Class

had been negotiated and agreed upon during the mediation.

### 5.6     Service Award to the Named Plaintiffs

In advance of the Court's deadline for submission of objections, Named Plaintiffs shall

make an application to the Court for the Court's approval of a Service Award of $5,000 for each

Named Plaintiff.  Defendants will not oppose a Service Award of $5,000 for each Named

Plaintiff.  The Parties' negotiation of, and agreement to, the foregoing Service Award did not

occur until after the substantive terms of the settlement had been negotiated and agreed upon

during the mediation.  These Service Awards shall constitute the sole consideration for such

individuals being Named Plaintiffs, and shall be made separately from any attorneys' fees.

### 5.7     Payment Schedule

If Class Counsel's request for an award of attorneys' fees, costs, and other expenses has

been finally approved by the Court and upheld on any appeal, then, after funding of the Escrow

45

Account, the Escrow Agent shall disburse the amount of such award from the Escrow Account to Class Counsel within forty-five (45) days after the Effective Date. The Service Awards, subject to Court approval, shall be paid in the amount approved by the Court within the later of: (1) forty-five (45) days after the Effective Date; or (2) fourteen (14) days after receipt by the Escrow Agent of each Named Plaintiff's completed W-9 form.

The amount remaining in the Escrow Account after the payments detailed above to Class Counsel and the Service Awards shall be distributed to the Rule 23(b)(3) Settlement Class by the Escrow Agent with each member of the Rule 23(b)(3) Settlement Class receiving an equal share of the remaining Escrow Account, but in no case shall any member of the Rule 23(b)(3) Settlement Class receive more than $400. The Escrow Agent shall make one attempt to deliver any payments returned as undeliverable within 45 days of the initial mailing. Any checks not cashed within 90 days of delivery (or any checks that were undeliverable) shall revert to the Escrow Account. The Escrow Agent shall provide an accounting of the Escrow Account 150 days after the Effective Date. Within 14 days following this accounting, any remaining funds shall be used to reimburse the Defendants for the monies paid by Defendants for the Rule 23(b)(2) and Rule 23(b)(3) Notice Plans. If any money remains in the Escrow Account after reimbursing Defendants for the Rule 23(b)(2) and Rule 23(b)(3) Notice Plans, the remaining funds shall be paid to a non-profit entity or entities submitted jointly by the Parties and approved by the Court as a *cy pres* award for the purpose of supporting research activities relating to the privacy or security of personal information; provided, however, that such grants must stipulate that the grant amounts may not be used in furtherance of litigation.

### 5.8    Rule 23(b)(3) Settlement Class Release

#### 5.8.1   Release of All Claims

Upon the Effective Date, each member of the Rule 23(b)(3) Settlement Class who has not excluded him or herself and his or her respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors, assigns, and all those acting or purporting to act on their behalf acknowledge full satisfaction of, and shall be conclusively deemed to have fully, finally, and forever settled, released, and discharged (a) all the Released Parties, except for customers, of and from all Claims arising before the Effective Date whether known or unknown, matured or unmatured, foreseen or unforeseen, suspected or unsuspected, accrued or unaccrued which the Rule 23(b)(3) Settlement Class Members ever had or now has, including but not limited to, all claims resulting from, arising out of, or in any way connected to the Litigation or its underlying subject matter and (b) all customers of and from all Claims, known or unknown, matured or unmatured, foreseen or unforeseen, suspected or unsuspected, accrued or unaccrued arising on or before the Effective Date based on all claims resulting from, arising out of, or in any way connected to Covered Conduct.

Subject to the Court's approval, the Rule 23(b)(3) Settlement Class Members shall be bound by this Settlement Agreement and all of their Rule 23(b)(3) Settlement Class Released Claims shall be dismissed with prejudice and released as against the Released Parties, even if they never received actual notice of the settlement prior to the hearing for final approval of the settlement in this Litigation.

### 5.8.2   Waiver of California Civil Code §1542

Rule 23(b)(3) Settlement Class Members acknowledge that they are aware that they may hereafter discover facts in addition to or different from those that they or Class Counsel now know or believe to be true with respect to the subject matter of this Litigation and the Rule 23(b)(3) Settlement Class Released Claims, but it is their intention to, and they do upon the Effective Date of this Settlement Agreement, fully, finally, and forever settle and release any and all Rule 23(b)(3) Settlement Class Released Claims, without regard to the subsequent discovery or existence of such different additional facts.  Rule 23(b)(3) Settlement Class Members waive any and all rights and benefits afforded by California Civil Code § 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT  KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Rule 23(b)(3) Settlement Class Members and Class Counsel understand and acknowledge the significance of this waiver of California Civil Code Section 1542 and/or of any other applicable federal or state law relating to limitations on releases.

### 5.8.3   Binding Release

Upon the Effective Date, no default by any person in the performance of any covenant or obligation under this Settlement Agreement or any order entered in connection with such shall affect the dismissal of the Litigation, the res judicata effect of the Final Judgment and Order, the foregoing releases, or any other provision of the Final Judgment and Order; provided, however,

that all other legal and equitable remedies for violation of a court order or breach of this Settlement Agreement shall remain available to all Parties.

### 5.8.4 <u>Representation of Opt-Outs</u>

Class Counsel agree that this Settlement Agreement is fair, reasonable, and in the best interest of the Rule 23(b)(3) Settlement Class Members. Based upon unique circumstances here, Class Counsel agree that class members who seek to opt-out should be represented by counsel who do not agree that the Settlement Agreement is fair, reasonable, and in the best interest of the Rule 23(b)(3) Settlement Class Members. Accordingly, Class Counsel shall, if contacted, refer any such opt-outs to the applicable state bar association or other referral organization for appropriate counsel in any subsequent litigation of the claims addressed in this Settlement against Defendants.

### 6.    ENTRY OF FINAL JUDGMENT AND ORDER

The Parties shall jointly seek entry by the Court of a Final Judgment and Order that includes provisions:

a) granting final approval of this Settlement Agreement, and directing its implementation pursuant to its terms and conditions;

b)  ruling on Class Counsel's applications for attorneys' fees, costs, and other expenses;

c) enjoining Defendants according to the specific terms applicable to them in Section 4.3.1;

d) discharging and releasing the Released Parties, and each of them, from the Rule 23(b)(2) Settlement Class Released Claims and Rule 23(b)(3) Settlement Class Released Claims as provided in Sections 4.5 and 5.8, respectively;

e) permanently barring and enjoining all Rule 23(b)(2) Settlement Class Members from

   instituting, maintaining, or prosecuting, either directly or indirectly, any lawsuit that

   asserts Rule 23(b)(2) Settlement Class Released Claims;

f) permanently barring and enjoining all Rule 23(b)(2) Settlement Class Members from

   seeking to use the class action procedural device in any future lawsuit against any

   Released Party that asserts Claims that were or could have been brought in the Litigation

   and that are not otherwise released and discharged by the Settlement Agreement;

g) permanently barring and enjoining all Rule 23(b)(3) Settlement Class Members from

   instituting, maintaining, or prosecuting, either directly or indirectly, any lawsuit that

   asserts Rule 23(b)(3) Released Claims;

h) directing that the Litigation be dismissed with prejudice and without costs;

i) stating pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and

   directing that the Final Judgment and Order is a final, appealable order; and

j) reserving to the Court continuing and exclusive jurisdiction over the Parties with respect

   to the Settlement Agreement and the Final Judgment and Order as provided in Section

   8.4.

## 7.    TERMINATION

Defendants' willingness to settle this Litigation on a class-action basis and to agree to the

accompanying certification of tentative Rule 23(b)(2) and (b)(3) Settlement Classes is dependent

upon achieving finality in this Litigation and the desire to avoid the expense of this and other

litigation, except to the extent certain individual lawsuits are expressly preserved in

Section 4.5.1. Consequently, Defendants have the right to terminate this Settlement Agreement,

declare it null and void, and have no further obligations under this Settlement Agreement to the

Named Plaintiffs or to the Rule 23(b)(2) or (b)(3) Settlement Class Members, if any of the following conditions subsequent occurs:

a) the Parties fail to obtain and maintain preliminary approval of the proposed settlement of the Rule 23(b)(2) Settlement Class Claims;

b) the Parties fail to obtain and maintain preliminary approval of the proposed settlement of the Rule 23(b)(3) Settlement Class Claims;

c) any court requires a notice program in addition to or in any form other than as specifically set forth in Sections 4.2 and 5.2 and attached Exhibits B-E;

d) any court requires Defendants, or any of them, to comply with obligations or requirements that are greater than or materially different from the Injunctive Relief;

e) any court orders the Defendants to pay, in the aggregate, attorneys' fees, costs, and other expenses in connection with the Litigation, in excess of $5.5 million in connection with the settlement of the Rule 23(b)(2) Settlement Class;

f) any court orders the Defendants to pay, in the aggregate and inclusive of attorneys' fees, costs, and other expenses, in connection with the Litigation, in excess of $13.5 million in connection with the settlement of the Rule 23(b)(3) Settlement Class;

g) two percent (2%) or more of the members of the Rule 23(b)(3) Settlement Class opts out of the proposed settlement;

h) the Court fails to enter a Final Judgment and Order consistent with the provisions in Section 6;

i) the Court fails to enter the Injunctive Relief Order in the form attached as Exhibit A to this Settlement Agreement;

j) the settlement of the Rule 23(b)(2) Settlement Class Claims is not upheld on appeal, including review by the United States Supreme Court;

k) the settlement of the Rule 23(b)(3) Settlement Class Claims is not upheld on appeal, including review by the United States Supreme Court;

l) the Effective Date does not occur for any reason, including but not limited to the entry of an order by any court that would require either material modification or termination of the Settlement Agreement; or

m) the Defendants' insurer or insurers refuse to or otherwise fail to fund in full the Rule 23(b)(2) Settlement Class Attorneys' Fees, Settlement Fund or the costs for the Notice Plans as provided in Section 4.4 and Sections 5.3 - 5.7, subject to the exhaustion of the self insured retention, if the Defendants give notice of the termination of this Settlement Agreement within ten (10) days after the deadline for funding.

In addition, the Named Plaintiffs, Rule 23(b)(3) Settlement Class, or Class Counsel may cancel or terminate this Settlement Agreement as to the Rule 23(b)(3) Settlement Class in the event that the total number of Rule 23(b)(3) Settlement Class Members exceeds 34,000 unless the Defendant then agrees to proportionately increase the amount of the Rule 23(b)(3) Settlement Class Settlement Fund. In the event that the above right to cancel or terminate is exercised, then Defendants shall have no further obligations under this Settlement Agreement to the Rule 23(b)(3) Settlement Class Members and shall have the right to terminate the entire Settlement Agreement, declare it null and void, and additionally shall have no further obligations under this Settlement Agreement to the Named Plaintiffs or to the Rule 23(b)(2) Settlement Class Members.

The failure of the Court or any appellate court to approve in full the request by Class Counsel for attorneys' fees, costs, and other expenses shall not be grounds for the Named Plaintiffs, the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes, or Class Counsel to cancel or terminate this Settlement Agreement.  The failure of the Court or any appellate court to approve in full the request of any Named Plaintiff for his or her Service Award shall not be grounds for the Named Plaintiffs, the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes, or Class Counsel to cancel or terminate this Settlement Agreement.

If the Settlement Agreement is not finally approved, is not upheld on appeal, or is otherwise terminated for any reason before the Effective Date, then the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes shall be decertified; the Settlement Agreement and all negotiations, proceedings, and documents prepared, and statements made in connection therewith, shall be without prejudice to any Party and shall not be deemed or construed to be an admission or confession by any Party of any fact, matter, or proposition of law; and all Parties shall stand in the same procedural position as if the Settlement Agreement had not been negotiated, made, or filed with the Court.

## 8.    MISCELLANEOUS PROVISIONS

### 8.1    <u>Best Efforts to Obtain Court Approval</u>

Named Plaintiffs and Defendants, and the Parties' counsel, agree to use their best efforts to obtain Court approval of this Settlement Agreement, subject, however, to Defendants' rights to terminate the Settlement Agreement, as provided herein.

**8.2**     **No Admission**

This Settlement Agreement, whether or not it shall become final, and any and all negotiations, communications, and discussions associated with it, shall not be:

a)  offered or received by or against any Party as evidence of, or be construed as or deemed to be evidence of, any presumption, concession, or admission by a Party of the truth of any fact alleged by Named Plaintiffs or defense asserted by Defendants, of the validity of any Claim that has been or could have been asserted in the Litigation, or the deficiency of any defense that has been or could have been asserted in the Litigation, or of any liability, negligence, fault, or wrongdoing on the part of Named Plaintiffs or Defendants;

b)  offered or received by or against Named Plaintiffs or Defendants as a presumption, concession, admission, or evidence of any violation of the FCRA or FCRA State Equivalents, or any state or federal statute, law, rule, or regulation or of any liability or wrongdoing by Defendants, or of the truth of any of the Claims, and evidence thereof shall not be directly or indirectly, in any way, (whether in the Litigation or in any other action or proceeding), except for purposes of enforcing this Settlement Agreement and the Final Judgment and Order including, without limitation, asserting as a defense the release and waivers provided herein;

c)  offered or received by or against Named Plaintiffs or Defendants as evidence of a presumption, concession, or admission with respect to a decision by any court regarding the certification of a class, or for purposes of proving any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against Defendants, in any other civil, criminal, or administrative action or

54

proceeding, other than such proceedings as may be necessary to effectuate the

provisions of this Settlement Agreement; provided, however, that if this Settlement

Agreement is approved by the Court, then Named Plaintiffs or Defendants may refer

to it to enforce their rights hereunder; or

d)  construed as an admission or concession by Named Plaintiffs, the Rule 23(b)(2) or

(b)(3) Settlement Classes, or Defendants that the consideration to be given hereunder

represents the relief that could or would have been obtained through trial in the

Litigation.

These prohibitions on the use of this Settlement Agreement shall extend to, but are not

limited to, any individual lawsuit preserved from release in Section 4.5.1 above.

**8.3**    **Process for Resolution of Disputes Regarding Compliance with Settlement
Agreement**

If any Rule 23(b)(2) or (b)(3) Class Member has a claim or dispute regarding any

Defendant's compliance with this Settlement Agreement, including but not limited to the

Injunctive Relief, then such Class Member first must submit, *pro se* or through counsel, his or

her dispute directly to the Defendants before taking any other action.  Upon receipt of such a

dispute, the relevant Defendant will investigate the dispute and respond to the Class Member

within thirty days.  The Defendant's response must state the results of the Defendant's

investigation of the allegation of non-compliance with the Settlement Agreement and any action

taken or to be taken to address the Class Member's dispute; or, if additional information is

required for the Defendant to complete its investigation, the Defendant's response must identify

the specific additional information that is required.  Upon the Class Member's submission of all

of the additional information required (as set forth in the Defendant's response), the Defendant

will have thirty days to complete its investigation of the Class Member's dispute regarding the allegation of non-compliance with the Settlement Agreement and to provide a response containing the results of its investigation and any action taken or to be taken to address the dispute.

If, after the dispute resolution process described above has been completed, the Class Member wants to seek additional remedies, then he or she may submit his or her dispute regarding the allegation of non-compliance with the Settlement Agreement to the Court (pursuant to the Court's retention of exclusive jurisdiction under Section 8.4) under the caption for this Litigation. The Class Member's submission to the Court must include copies of all correspondence between the Class Member and the Defendant regarding the dispute prior to the submission. The Court shall have exclusive and sole jurisdiction to resolve the dispute.

This section is not intended to govern or apply to allegations of a violation of state or federal law, such as the FCRA, except as might otherwise relate to Defendant's compliance with this Settlement Agreement.

### 8.4 **Court's Jurisdiction**

The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement. The Court also shall retain exclusive jurisdiction over any subsequent claim against any Defendant subject to the dispute process described in Section 8.3 or whether any subsequent suit is released by the Settlement Agreement. Any such subsequent suit against any Defendant necessarily raises the threshold issue of whether the plaintiff in such suit is a member of the Rule 23(b)(2) or (b)(3) Settlement Class in this Litigation such that his or her subsequent suit is prohibited under the terms of this Settlement Agreement.

**8.5**     **Settlement Notices**

Except for the Rule 23(b)(2) and (b)(3) Notice Plans, as provided for in Sections 4.2 and 5.2 above, all other notices or formal communications under this Settlement Agreement shall be in writing and shall be given (i) by hand delivery; (ii) by registered or certified mail, return receipt requested, postage pre-paid; or (iii) by overnight courier to counsel for the Party to whom notice is directed at the following addresses:

For the Named Plaintiffs and Rule 23(b)(2) and (b)(3) Settlement Classes:

> Leonard Anthony Bennett
> Consumer Litigation Associates, P.C.
> 763 J Clyde Morris Boulevard
> Suite 1A
> Newport News, VA  23601

> Dale Wood Pittman
> The Law Office of Dale W. Pittman, P.C.
> 112-A W. Tabb St.
> Petersburg, VA  23803-3212

> Michael Allen Caddell
> Caddell & Chapman
> 1331 Lamar St.
> Suite 1070
> Houston, TX  77010

> James Arthur Francis
> Francis & Mailman PC
> Land Title Building
> 100 S. Broad Street, 19th Floor
> Philadelphia, PA  19110

For Defendants:

      David Neal Anthony
      Troutman Sanders LLP
      Troutman Sanders Bldg.
      1001 Haxall Point
      P.O. Box 1122
      Richmond, VA  23219

      James Francis McCabe
      Morrison & Foerster LLP
      425 Market Street
      San Francisco, CA  94105-2482

      Ronald I. Raether, Jr.
      Faruki Ireland & Cox P.L.L.
      500 Courthouse Plaza, S.W.
      10 N. Ludlow St.
      Dayton, OH  45402

Counsel may designate a change of the person to receive notice or a change of address, from time to time, by giving notice to all Parties in the manner described in this Section.

### 8.6    <u>Administrative Costs</u>

Except as provided in Sections 4.2 and 5.2 above regarding the Rule 23(b)(2) and (b)(3) Notice Plans, Section 5.6 above regarding Service Awards to Named Plaintiffs, and Sections 4.4 and 5.5 above regarding attorneys' fees, costs, and other expenses as to both the Rule 23(b)(2) and (b)(3) Settlement Classes, each of the Named Plaintiffs and the Defendants shall be solely responsible for his, her, or its own costs and expenses.

### 8.7    <u>Taxes</u>

Named Plaintiffs and Class Counsel shall be responsible for paying any and all federal, state, and local taxes due on any payments made to them pursuant to the Settlement Agreement.

### 8.8    Defendants' Communication with Customers, Business Contacts, and Members of the Public

Defendants reserve the right to communicate with their customers, business contacts, and members of the public in the ordinary course of business.

### 8.9    Confidentiality of Discovery Materials and Information

The Parties, their counsel, and any experts in this Litigation, agree that they remain subject to the Court's August 13, 2012, Stipulated Protective Order.

### 8.10    Complete Agreement

This Settlement Agreement is the entire, complete agreement of each and every term agreed to by and among Named Plaintiffs, the Rule 23(b)(2) and (b)(3) Settlement Classes, Defendants, and their counsel.  In entering into this Settlement Agreement, no Party has made or relied on any warranty or representation not specifically set forth herein.  This Settlement Agreement shall not be modified except by a writing executed by all the Parties.

### 8.11    Headings for Convenience Only

The headings in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

### 8.12    Severability

In the event that any provision hereof becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable, or void, this Agreement shall continue in full force and effect without said provision to the extent Defendants do not exercise their right to terminate under Section 7.

### 8.13    No Party Is the Drafter

None of the Parties to this Settlement Agreement shall be considered to be the primary drafter of this Settlement Agreement or any provision hereof for the purpose of any rule of interpretation or construction that might cause any provision to be construed against the drafter.

### 8.14    Binding Effect

This Settlement Agreement shall be binding according to its terms upon, and inure to the benefit of, the Named Plaintiffs, the Rule 23(b)(2) or (b)(3) Settlement Classes, the Defendants, the Released Parties, and their respective successors and assigns.

### 8.15    Authorization to Enter Settlement Agreement

The individuals signing this Settlement Agreement on behalf of the Defendants represent that they are fully authorized by the Defendants to enter into, and to execute, this Settlement Agreement on their behalf. Class Counsel represent that they are fully authorized to conduct settlement negotiations with counsel for Defendants on behalf of Named Plaintiffs, and to enter into, and to execute, this Settlement Agreement on behalf of the Rule 23(b)(2) and (b)(3) Settlement Classes, subject to Court approval pursuant to Fed. R. Civ. P. 23(e). Each Named Plaintiff enters into and executes this Settlement Agreement on behalf of himself or herself, and as a representative of and on behalf of the Rule 23(b)(2) and (b)(3) Settlement Classes, subject to Court approval pursuant to Fed. R. Civ. P. 23(e).

**8.16**   <u>Execution in Counterparts</u>

Named Plaintiffs, Class Counsel, Defendants, and Defendants' counsel may execute this Settlement Agreement in counterparts, and the execution of counterparts shall have the same effect as if all Parties had signed the same instrument.  Facsimile and scanned signatures shall be considered as valid signatures as of the date signed, although the original signature pages shall thereafter be appended to the Settlement Agreement.  This Settlement Agreement shall not be deemed executed until signed by all Named Plaintiffs, by all Class Counsel, and by counsel for and representatives of Defendants.

**Named Plaintiffs:**

_____

Gregory Thomas Berry

_____

Summer Darbonne

_____

Rickey Millen

_____

Shamoon Saeed

_____

Arthur B. Hernandez

_____

Erika A. Godfrey

_____

Timothy Otten

**Counsel for Named Plaintiffs and
Settlement Classes:**

Leonard Anthony Bennett
Matthew James Erausquin
Consumer Litigation Associates, P.C.
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA  23601

James Arthur Francis
Francis & Mailman PC
Land Title Building
100 S. Broad Street, 19th Floor
Philadelphia, PA  19110

Dale Wood Pittman
The Law Office of Dale W. Pittman, P.C.
112-A W. Tabb St.
Petersburg, VA  23803-3212

Michael Allen Caddell
Caddell & Chapman
1331 Lamar St.
Suite 1070
Houston, TX  77010

**Counsel for Named Plaintiffs and
Settlement Classes:**

Leonard Anthony Bennett
Matthew James Erausquin
Consumer Litigation Associates, P.C.
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA  23601

James Arthur Francis
Francis & Mailman PC
Land Title Building
100 S. Broad Street, 19th Floor
Philadelphia, PA  19110

Dale Wood Pittman
The Law Office of Dale W. Pittman, P.C.
112-A W. Tabb St.
Petersburg, VA  23803-3212

Michael Allen Caddell
Caddell & Chapman
1331 Lamar St.
Suite 1070
Houston, TX  77010

**Counsel for Named Plaintiffs and
Settlement Classes:**

Leonard Anthony Bennett
Matthew James Erausquin
Consumer Litigation Associates, P.C.
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA  23601

James Arthur Francis
Francis & Mailman PC
Land Title Building
100 S. Broad Street, 19th Floor
Philadelphia, PA  19110

Dale Wood Pittman
The Law Office of Dale W. Pittman, P.C.
112-A W. Tabb St.
Petersburg, VA  23803-3212

Michael Allen Caddell
Caddell & Chapman
1331 Lamar St.
Suite 1070
Houston, TX  77010

**Counsel for Named Plaintiffs and
Settlement Classes:**

Leonard Anthony Bennett
Matthew James Erausquin
Consumer Litigation Associates, P.C.
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601

James Arthur Francis
Francis & Mailman PC
Land Title Building
100 S. Broad Street, 19th Floor
Philadelphia, PA 19110

*Michael Caddell*

Michael Allen Caddell
Caddell & Chapman
1331 Lamar St.
Suite 1070
Houston, TX 77010

Dale Wood Pittman
The Law Office of Dale W. Pittman, P.C.
112-A W. Tabb St.
Petersburg, VA 23803-3212

63

**Defendants**

_Meredith Sidwater_
LexisNexis Risk Solutions FL Inc.

Name: _____

Title: _____

_Meredith Sidewater_
LexisNexis Risk Data Management, Inc.

Name: _____

Title: _____


_____
Reed Elsevier Inc.:

Name: _____

Title: _____

64

**Defendants**

_____

LexisNexis Risk Solutions FL Inc.

Name: _____

Title: _____


_____

LexisNexis Risk Data Management, Inc.

Name: _____

Title: _____


*Kenneth Thompson, II* _____

Reed Elsevier Inc.:

Name: _KENNETH R. THOMPSON II_

Title: _SENIOR VICE PRESIDENT_

**Counsel for Defendants LexisNexis Risk
Solutions FL Inc., LexisNexis Risk Data
Management, Inc., and Reed Elsevier Inc.:**

_____

David Neal Anthony
Troutman Sanders LLP
Troutman Sanders Bldg.
1001 Haxall Point
P.O. Box 1122
Richmond, VA  23219




_____

James Francis McCabe
Morrison & Foerster LLP
425 Market Street
San Francisco, CA  94105-2482




_____

Ronald I. Raether, Jr.
Faruki Ireland & Cox P.L.L.
500 Courthouse Plaza, S.W.
10 N. Ludlow St.
Dayton, OH  45402

65

**Counsel for Defendants LexisNexis Risk
Solutions FL Inc., LexisNexis Risk Data
Management, Inc., and Reed Elsevier Inc.:**


David Neal Anthony
Troutman Sanders LLP
Troutman Sanders Bldg.
1001 Haxall Point
P.O. Box 1122
Richmond, VA  23219


James Francis McCabe
Morrison & Foerster LLP
425 Market Street
San Francisco, CA  94105-2482


Ronald I. Raether, Jr.
Faruki Ireland & Cox P.L.L.
500 Courthouse Plaza, S.W.
10 N. Ludlow St.
Dayton, OH  45402

**Counsel for Defendants LexisNexis Risk
Solutions FL Inc., LexisNexis Risk Data
Management, Inc., and Reed Elsevier Inc.:**


David Neal Anthony
Troutman Sanders LLP
Troutman Sanders Bldg.
1001 Haxall Point
P.O. Box 1122
Richmond, VA  23219


James Francis McCabe
Morrison & Foerster LLP
425 Market Street
San Francisco, CA  94105-2482


Ronald I. Raether, Jr.
Faruki Ireland & Cox P.L.L.
500 Courthouse Plaza, S.W.
10 N. Ludlow St.
Dayton, OH  45402

65

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

GREGORY THOMAS BERRY, et al.　　　　　:　CASE NO. 3:11CV754

　　　　　　Plaintiffs,　　　　　　　　　:　(Judge James R. Spencer)

v.　　　　　　　　　　　　　　　　　　:

LEXISNEXIS RISK & INFORMATION　　　　:
ANALYTICS GROUP, INC., et al.

　　　　　　　　　　　　　　　　　　　:

　　　　　　Defendants.　　　　　　　　:

## INJUNCTIVE RELIEF ORDER

On [_____], 2013, the Court entered its Order granting the Motion for Final

Approval of Class Action Settlement and Entry of Final Judgment and Order (Docket No. [__]).

Pursuant to that Order and Section [4.3.1] of the Settlement Agreement and Release, dated

March [__], 2013 (the "Settlement Agreement"), the Court enters this Injunctive Relief Order

and hereby orders that Defendants comply with the following:

1.　　　For purposes of this Injunctive Relief Order, the Court adopts and incorporates

the definitions and meanings of the defined terms set forth in the Settlement Agreement.  The

terms of this Injunctive Relief Order are intended to reflect the Injunctive Relief provisions in the

Settlement Agreement and shall not be construed to impose any obligations or requirements in

addition to those set forth in the Settlement Agreement.

2.      CREATION OF TWO NEW SUITES OF PRODUCTS AND SERVICES FOR RECEIVABLE MANAGEMENT MARKET

2.1      Defendants will overhaul their currently existing Accurint® for Collections suites of products and services for the Receivable Management Market and split Accurint® for Collections into two newly developed suites of products and services, each containing different sets of information for different uses, where one suite of products and services ("Collections Decisioning") will be treated by Defendants as falling within the FCRA's "consumer report" definition and the other suite of products and services ("Contact & Locate") will not be treated as falling within the FCRA's "consumer report" definition. To the extent a Defendant offers or markets products or services to the Receivable Management Market, the Defendant will market Collections Decisioning and Contact & Locate to the Receivable Management Market and endeavor to provide the Receivable Management Market access to "consumer report" suite of products and Contact & Locate in accordance with the timeframe outlined in the Implementation Period, as defined in Section 5.

2.2      New Collections Decisioning Suite of Products and Services

2.2.1      A new Collections Decisioning suite of products and services will be created for the Receivable Management Market.

2.2.2      Customers who have completed the credentialing process and are granted access to the Collections Decisioning product and services will be permitted to use the information only for a permissible purpose under 15 U.S.C. § 1681b, including, but not limited to, for the extension of credit as a result of an application from a consumer, review or collection of a consumer's account, or to review a consumer's credit account to determine whether the

2

consumer continues to meet the terms of the account.  To the extent a Defendant offers or markets a Collection Decisioning product or service to the Receivable Management Market, the Defendant will have a compliance program designed to provide reasonable procedures to assure that Collections Decisioning products and services are used for permissible purposes under 15 U.S.C. § 1681b, and for obtaining from the report recipient a certification of permissible use and that the information will be used for only purposes permitted by the FCRA.

2.2.3    When a user enters into the Collections Decisioning suite of products or services for the first time in each user session, a message will be displayed to the user with text substantially similar to the following:

> *"You are entering the LexisNexis Collections Decisioning FCRA offerings provided by LexisNexis Risk Bureau LLC, a consumer reporting agency. The LexisNexis Collections Decisioning offerings are designed to be compliant with the Fair Credit Reporting Act, 15 U.S.C. Sec. 1681, et seq. ("FCRA"), and may only be accessed for permissible purposes in compliance with the FCRA and in accordance with your agreement and certifications."*

2.2.4    When a user enters into the Collections Decisioning suite of products or services for the first time in each user session, any Defendant that offers or markets products or services to the Receivable Management Market will require the user to certify a permissible purpose under 15 U.S.C. § 1681b, and that the information will be used only for purposes permitted by the FCRA.

3

2.2.5   The Defendants will acknowledge Collections Decisioning products and services as meeting the FCRA's definition of a "consumer report."

2.2.6   To the extent applicable, the Defendant will put customers through a credentialing process consistent with § 1681e(a) to determine whether the customer may be granted access to the Collections Decisioning product or service.

2.2.7   Customers' contractual commitments and certifications will be consistent with the regulatory framework governing the Collections Decisioning product or service.

2.3     New Contact & Locate Suite of Products and Services

2.3.1   A new Contact & Locate suite of products and services will be created for the purpose of assisting the Receivable Management Market to locate debtors and to locate assets securing the debt for the purpose of repossession.  From the date of this Order until the Sunset Date, the Contact & Locate suite of products and services will not involve the provision of "consumer reports" as that term is defined under the FCRA and FCRA State Equivalents.  Defendants may only display data in the Contact & Locate suite of products and services as defined herein and for the uses identified herein.

2.3.2   Available Data: The Contact & Locate suite of products and services shall include only:

a)     information that does not contain "seven characteristic" information; or

4

b)      information that does not bear on any eligibility determination for credit, insurance, employment or any other purpose in connection with which a consumer report may be used under the FCRA; or

c)      information, the use of which bears a reasonable relationship to the location of a debtor or to the location of assets securing the debt for purpose of repossession, even if such information may arguably bear on an eligibility determination under the FCRA; or

d)      information that includes any combination of the above.

2.3.3    Limitation on Use: The Contact & Locate suite of products and services is intended to be used by the Receivable Management Market for the limited purpose of finding and locating debtors or locating assets securing the debt for the purpose of repossession.

2.3.4    When a user enters into the Contact & Locate suite of products and services for the first time in each user session, a message will be displayed to the user with text substantially similar to the following:

*"Accurint® Contact & Locate is provided by LexisNexis Risk Solutions FL Inc. Accurint® Contact & Locate is not provided by 'consumer reporting agencies,' as that term is defined in the Fair Credit Reporting Act (15 U.S.C. § 1681, et seq.) ("FCRA") and does not constitute a "consumer report," as that term is defined in the FCRA. Accurint® Contact & Locate may not be used in whole or in part as a factor in determining eligibility for credit, insurance, or employment or for any*

5

*other eligibility purpose  that would qualify it as a consumer report under the FCRA."*

2.3.5   Customers' contractual commitments and certifications will be consistent with non-FCRA characterization and treatment of the Contact & Locate suite of products and services.

2.4   Consumer Access Program for the Contact & Locate

2.4.1   The Parties agree that the Contact & Locate suite of products and services do not constitute "consumer reports" as that term is defined under the FCRA and so will not be subject to the FCRA's requirements relating to disputes, access, accuracy or otherwise. Nonetheless, a Consumer Access Program for the Contact & Locate suite of products and services detailed below in this section will be created.

2.4.2   The Consumer Access Program will include procedures that permit an individual to obtain a free copy of a Contact & Locate Comprehensive Report regarding the individual once a year.  The procedures may include a process requiring the individual to furnish proper identification to the Defendant that is sufficient to verify the individual's identity and assure that the individual making the request is the same individual identified in the requested Contact & Locate Comprehensive Report. The Defendant will publish information regarding how consumers can contact the Defendant to obtain their free report.  In addition, in  its cover letter transmitting to consumers information responsive to a request made under 15 U.S.C. 1681g(a),  the Defendant shall include the following language: "An affiliate of [Consumer Reporting Agency] provides  debt collectors with 'contact and locate' information about consumers.  That information is not a 'consumer report' under the FCRA and is not enclosed in

6

this mailing.  For more information about this 'contact and locate' information, or to request a copy of such report about you, please visit [website] or call [number]."

2.4.3   The Consumer Access Program will include procedures that permit an individual to submit a statement of up to 100 words regarding any phone number or address displayed in the Contact & Locate suite of products and services and that is being used to contact the individual related to a consumer credit obligation subject to collection.  The procedures may include a process requiring the individual to furnish proper identification to the Defendant that is sufficient to verify the individual's identity, to prevent fraud or other abuse.

2.4.4   To the extent a Defendant offers or markets products or services to the Receivable Management Market, the Defendant will make all comments available via a link on the main page and search forms where the phone number or address may be displayed in the Contact & Locate suite of products and services.  The link will be to a web page that enables the user to search on the phone number or address and to locate and view comments related to the phone number or address searched.

a)   The Defendant will only be required to report statements that relate to the accuracy of the phone number or address.  Accuracy includes not only whether the number or address relates to the consumer but also whether the telephone number or address belongs to a person who has some relationship to the debt being collected.  The Defendant shall not be obligated to publish consumer statements that do not bear on accuracy of the phone number or address, such as statements criticizing the Defendant or its customers, or the validity of the debt.

7

b)      To the extent applicable, the Defendant will publish information

regarding how consumers can contact Defendant to submit a statement.

3.      CUSTOMER EDUCATION REGARDING NEW PRODUCTS AND
        SERVICES FOR RECEIVABLE MANAGEMENT MARKET

3.1      To the extent a Defendant offers or markets Collections Decisioning and

Contact & Locate suite of products or services to the Receivable Management Market, the

Defendant will provide, free of charge, educational seminars and materials to customers

regarding their use of and responsibilities relating to Collections Decisioning and Contact &

Locate.

4.      EMPLOYEE TRAINING REGARDING NEW PRODUCTS AND SERVICES
        FOR RECEIVABLE MANAGEMENT MARKET

4.1      To the extent a Defendant offers or markets Collections Decisioning and

Contact & Locate suite of products or services to the Receivable Management Market, the

Defendant will require its employees who work on or with Collections Decisioning or Contact &

Locate to participate in training regarding the requirements of the Injunctive Relief.

5.      TIMETABLE FOR IMPLEMENTATION OF INJUNCTIVE RELIEF

5.1      To the extent a Defendant offers or markets products or services to the

Receivable Management Market, the Defendant shall make reasonable and good faith efforts to

implement the Injunctive Relief contemplated herein within the timeframe detailed below and

referred to herein as the "Implementation Period":

5.1.1      Release of the initial versions of Collections Decisioning and

Contact & Locate online by December 31, 2013.  Nothing in the Injunctive Relief Order shall be

8

interpreted to prohibit or otherwise restrict Defendants' right to modify the initial versions of

Collections Decisioning and Contact & Locate online or to develop new products that otherwise

meet the requirements of this Injunctive Relief Order.

       5.1.2   To the extent applicable, the Defendant will market Collections

Decisioning and Contact & Locate to all new online Receivable Management Market customers

with compatible use cases and employ reasonable procedures to provide new online Receivable

Management Market customers access to Collections Decisioning and Contact & Locate as of

December 31, 2013.

       5.1.3   To the extent applicable, the Defendant will initiate the migration

of existing online Receivable Management Market customers to Collections Decisioning and

Contact & Locate beginning on or before December 31, 2013.  The Defendant will use

reasonable and good faith efforts to migrate existing online customers as soon as practicable, but

will complete the migration by December 31, 2014.

       5.1.4   To the extent applicable, the Defendant will initiate the migration

of all other Receivable Management Market customers to Collections Decisioning and Contact &

Locate beginning on or before December 31, 2013.  The Defendant will use reasonable and good

faith efforts to migrate all other existing Receivable Management Market customers as soon as

practicable, but will complete the migration by June 30, 2015.

       5.1.5   The Consumer Access Program will be implemented by December

31, 2013.

5.2     Notwithstanding this provision, if a Defendant is unable to comply with any of these deadlines, the Defendant shall receive a reasonable extension of time sufficient to permit completion of the task upon submission of an application to the Court showing good cause for the extension.

5.3     During the Implementation Period, Defendants may continue to permit access to the full suite of Accurint® Reports to a Receivable Management Market customer that has not yet migrated to Collections Decisioning and Contact & Locate.

6.     <u>SUNSET PROVISION</u>

The obligations of Sections 2-4 of this Injunctive Relief Order will expire the earlier of seven years from the Effective Date or June 30, 2020 ("Sunset Date").

7.     <u>DISPUTE RESOLUTION PROCESS</u>

7.1     If any Rule 23(b)(2) or (b)(3) Class Member has a claim or dispute regarding any Defendant's compliance with this Injunctive Relief Order, then such Class Member first must submit, *pro se* or through counsel, his or her dispute directly to the Defendants before taking any other action.  Upon receipt of such a dispute, the relevant Defendant will investigate the dispute and respond to the Class Member within thirty days.  The Defendant's response must state the results of the Defendant's investigation of the allegation of non-compliance with the Injunctive Relief Order and any action taken or to be taken to address the Class Member's dispute; or, if additional information is required for the Defendant to complete its investigation, the Defendant's response must identify the specific additional information that is required.  Upon the Class Member's submission of all of the additional information required (as set forth in the Defendant's response), the Defendant will have thirty

10

days to complete its investigation of the Class Member's dispute regarding the allegation of non-compliance with the Settlement Agreement and to provide a response containing the results of its investigation and any action taken or to be taken to address the dispute.

7.2     If, after the dispute resolution process described above has been completed, the Class Member wants to seek additional remedies, then he or she may submit his or her dispute regarding the allegation of non-compliance with the Injunctive Relief Order to the Court (pursuant to the Court's retention of exclusive jurisdiction under Section 10) under the caption for this Litigation. The Class Member's submission to the Court must include copies of all correspondence between the Class Member and the Defendant regarding the dispute prior to the submission. The Court shall have exclusive and sole jurisdiction to resolve the dispute.

8.     Any action by Defendants determined in good faith to be reasonably necessary to comply with any federal, state, or local law, enactment, regulation, or judicial ruling shall not constitute a violation of this Injunctive Relief Order. In the event that any obligation that Defendants have agreed to undertake in this Injunctive Relief Order becomes inconsistent with any future federal, state, or local law, enactment, regulation, or judicial ruling or if the Rule 23(b)(2) Settlement Class (or any subset) agree to impose less stringent requirements on any competitor of Defendants, then Defendants shall be released from performing such obligation after notice to the Court and Class Counsel. Any objection to such change in procedure shall be made to the Court within ten (10) days of such notice.

9.     Nothing in this Injunctive Relief Order shall waive any basis that may be available for Defendants to assert that a practice or procedure does not cause data or a product to

11

meet the definition of a "consumer report" within the meaning of the FCRA or any FCRA State Equivalent.

10.    The Court reserves continuing and exclusive jurisdiction over the parties with respect to all matters relating to this Injunctive Relief Order, including its administration, interpretation, effectuation, and enforcement of its provisions pursuant to the dispute resolution process in Section 8.3 of the Settlement Agreement.  None of the parties, including any Rule 23(b)(2) Settlement Class Member, shall be entitled to the recovery of attorney's fees, costs or other expenses in connection with any efforts to monitor compliance with this Injunctive Relief Order.

**IT IS SO ORDERED.**

DATED:  [_____], 2013

_____
HONORABLE JAMES R. SPENCER
UNITED STATES DISTRICT JUDGE

691531.1

12

# EXHIBIT B

Legal Notice

# Adults 18 years and Older

## *Could Be Affected by a Class Action Settlement Involving Consumer Reporting*

A Settlement has been reached in a class action lawsuit involving certain reports sold by LexisNexis. If you are 18 years or older, you are probably included in the Settlement because there is likely information about you in the LexisNexis databases.

### What's this Case About?

The lawsuit claims that LexisNexis prepared and sold Accurint® searches and reports that were "consumer reports" under the Fair Credit Reporting Act ("FCRA"). The lawsuit claims that LexisNexis failed to follow certain FCRA requirements that apply only to "consumer reports." LexisNexis disagrees that Accurint® reports are "consumer reports." Both sides have agreed to the Settlement to resolve the case and provide benefits to consumers.

### Who's Included?

If the databases used to prepare Accurint® brand products at any time between November 14, 2006 and Month 00, 2013 contained information about you, you are in the Class. The databases contain names and addresses of all U.S. residents who have a credit history, as well as information from many public records such as telephone directories, voter registration records, motor vehicle registrations, and mortgage records.

### What does the Settlement provide?

LexisNexis has agreed to design, implement, and maintain specific, substantial procedures that address the concerns raised in the lawsuit regarding the preparation and sale of Accurint® searches and reports to debt collectors. No money will be paid to Class Members.

### Your Options

If the Court approves the proposed Settlement, then you will be bound by the Court's decisions – you cannot exclude yourself from the class. You will not be able to sue, or continue to sue, LexisNexis for the limited remedies being resolved by this Settlement. However, you will be able to file a lawsuit on your own to pursue any claims for actual money damages. If you do not like the proposed Settlement, you must object by **Month 00, 2013**, as discussed further at www.DebtCollectReportsLawsuit.com.

The Court will hold a hearing on **Month 00, 2013** to consider any objections, whether to approve the Settlement, and to award attorneys' fees and expenses up to $5.5 million. You can appear at the hearing, but you don't have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing. You must let the Court know by **Month 00, 2013**, if you intend to do so.

---

**For more information: 1-800-000-0000**
**CollectionReportLawsuit.com**

# EXHIBIT C

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

# Adults 18 years and Older
## *You Could Be Affected by a*
## *Class Action Settlement involving Consumer Reporting*

*A federal court authorized this notice.  This is not a solicitation from a lawyer.  You are not being sued.*

- There is a proposed Settlement in a class action lawsuit against LexisNexis involving certain reports sold by LexisNexis.  LexisNexis maintains that it has not done anything wrong.

- You are included in the proposed Settlement if information about you was in the databases used to prepare Accurint® brand products at any time between November 14, 2006 and **Month 00, 2013**.  These databases contain the names and addresses of all U.S. residents who have opened a credit account, as well as information from many public records such as telephone directories, voter registration records, motor vehicle registrations, and mortgage records.  If you are 18 years or older, there is probably information about you in these databases.

- **Your legal rights are affected by the proposed Settlement even if you do nothing.**

- **Your rights and options – and the deadlines to exercise them – are explained in this notice. Please read this entire notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS PROPOSED SETTLEMENT | | |
|---|---|---|
| **Object to the Settlement** | Write to the Court about why you do not like the proposed Settlement (see Question 14). | Your objection must be postmarked on or before _____ ___, 2013 |
| **Go to a Hearing** | Write to ask to speak in Court about the fairness of the proposed Settlement (*see* Questions 15-17) | Your request to appear at the hearing must be postmarked on or before _____ ___, 2013 |
| **Do Nothing** | You do not have to do anything to benefit from the proposed Settlement.  If the Settlement is finally approved, you will not be able to sue the Defendants for the remedies resolved by this Settlement (*see* Questions 8-10). | None |

**Questions?  Call toll-free 1-800-222-0000 or visit CollectionReportLawsuit.com.**
*Para una notificacion en Espanol, llamar o visitar nuestro sitio web*

## WHAT THIS NOTICE CONTAINS

Page

**BASIC INFORMATION** ...................................................................................................... 3

   1.  Does this Notice apply to me? ................................................................................... 3

   2.  What is this lawsuit about? ......................................................................................... 3

   3.  Why is this a class action? ......................................................................................... 3

   4.  Why is there a proposed Settlement? ........................................................................ 4


**WHO IS IN THE PROPOSED SETTLEMENT?** ............................................................... 4

   5.  How do I know if I am part of the proposed Settlement? .......................................... 4

   6.  Are there exceptions to being included? .................................................................... 4

   7.  What if I am not sure whether I am included in the Class? ....................................... 4


**THE PROPOSED SETTLEMENT BENEFITS** ................................................................. 4

   8.  What benefits does the proposed Settlement provide? .............................................. 4

   9.  When will the proposed Settlement go into effect? ................................................... 6

   10.  How does the proposed Settlement affect my rights? ............................................... 6

   11.  Can I choose not to be in the proposed Settlement? ................................................. 6


**THE LAWYERS REPRESENTING YOU** ......................................................................... 7

   12.  Do I have a lawyer in this case? ................................................................................ 7

   13.  How will the lawyers be paid?  What will the Class Representatives receive? .......... 7


**OBJECTING TO THE PROPOSED SETTLEMENT** ....................................................... 7

   14.  How do I tell the Court if I do not agree with the proposed Settlement? .................. 7


**THE COURT'S FINAL APPROVAL HEARING** ............................................................. 8

   15.  When and where will the Court decide whether to finally approve the proposed Settlement? ................. 8

   16.  Do I have to come to the hearing? ............................................................................. 9

   17.  May I speak at the hearing? ....................................................................................... 9


**IF YOU DO NOTHING** ..................................................................................................... 9

   18.  What happens if I do nothing at all? .......................................................................... 9


**GETTING MORE INFORMATION** ................................................................................. 10

   19.  How do I get more information? ................................................................................. 10

**Questions?  Call toll-free 1-800-222-0000 or visit CollectionReportLawsuit.com.**

*Para una notificacion en Espanol, llamar o visitar nuestro sitio web*

# BASIC INFORMATION

| 1. | Does this Notice apply to me? |
|---|---|

You are a member of the Class if information about you was in databases that were used to prepare Accurint® brand products at any time between November 14, 2006 and Month 00, 2013. This information may have been collected about you - with or without your knowledge - as a result of a variety of actions that you may have taken. For example, if you have a driver's license or other government-issued identification card, then there is public record information about your license or I.D. card that exists in a database maintained by one of the defendants. These databases contain the names and addresses of all U.S. residents who have opened a credit account, as well as information from many public records, such as telephone directories, voter registration records, motor vehicle registrations, and mortgage records. If you are 18 or older, there is probably information about you in these databases.

A Court authorized this notice to inform you about the proposed Settlement and your rights. Before any final judgment is entered, the Court will have a hearing to decide whether to approve the Settlement. This notice is only a summary of the proposed Settlement. More details about the proposed Settlement, the date when appeals are no longer allowed and the Settlement is final, deadlines for certain actions, and your options are available in a longer document called the Settlement Agreement. You can get a copy of the Settlement Agreement by visiting CollectionReportLawsuit.com.

The lawsuit is known as *Berry v. LexisNexis Risk & Information Analytics Group, Inc.*, Case No. 3:11-cv-00754-JRS. Judge James R. Spencer of the United States District Court for the Eastern District of Virginia, is overseeing the case. The people who sued are called "Plaintiffs;" the companies that they sued are called "Defendants." The Defendants are LexisNexis Risk & Information Analytics Group, Inc, now LexisNexis Risk Solutions FL Inc., Seisint, Inc., now LexisNexis Risk Data Management, Inc., and Reed Elsevier Inc.

| 2. | What is this lawsuit about? |
|---|---|

The lawsuit claims that the Defendants prepared and sold Accurint® searches and reports, that these reports were (1) "consumer reports" under the FCRA, and that (2) Defendants failed to follow certain FCRA requirements that apply to consumer reports, including handling disputes about the reports' contents and providing consumers with full copies of reports about them.

The Court did not decide whether the reports were consumer reports, or that either side was right or wrong. Instead, both sides agreed to the Settlement to resolve the case and provide benefits to consumers.

| 3. | Why is this a class action? |
|---|---|

Class actions try to bring similar claims in one case and in one court. In a class action, the plaintiffs who bring the case are called "Class Representatives" or "Named Plaintiffs." They have their names listed in the title of the case. They sue on behalf of people who have similar claims – called the Class or Class Members – which in this case likely includes you. The Class Representatives filed this case as a proposed class action. When the parties reached this proposed Settlement, the Court had not decided whether the case could be a class action.

**Questions? Call toll-free 1-800-222-0000 or CollectionReportLawsuit.com.**

*Para una notificacion en Espanol, llamar o visitar nuestro sitio web*

**4.     Why is there a proposed Settlement?**

The Court has not decided which side is right or wrong in this case.  Instead, both sides agreed to a settlement to avoid the costs and risks of a lengthy trial and appeals process.

To settle the matter, the Plaintiffs and Defendants participated in something called mediation.  This is a formal way parties get together to see if they can resolve disputes with the help of a court-approved professional, called a mediator.  From May 2012 to October 2012, an experienced mediator conducted lengthy sessions with the parties.  The negotiations were difficult and contentious.  The Class Representatives and the lawyers representing the Class think the proposed Settlement is best for all Class Members.

## WHO IS IN THE PROPOSED SETTLEMENT?

**5.     How do I know if I am part of the proposed Settlement?**

You are included in the Settlement if any information about you was in the databases used to prepare Accurint® brand products at any time between November 14, 2006 and Month 00, 2013.  The Court has decided that everyone who fits the following description is a Class Member:

> All persons residing in the United States of America (including its territories and Puerto Rico) about whom information resided in the Accurint® database from November 14, 2006 to Month 00, 2013.

The Accurint® databases contain the names and addresses of all U.S. residents who have opened a credit account, as well as information from many public records, such as telephone directories, voter registration records, motor vehicle registrations, and mortgage records.  If you are 18 or older, there is probably information about you in these databases.

**6.     Are there exceptions to being included?**

Plaintiffs' and Defendants' attorneys are excluded from the Class.  The presiding judge in the action and his staff, and all members of their immediate families are also excluded from the Class.

**7.     What if I am not sure whether I am included in the Class?**

If you are still not sure whether you are included in the Class, then you can call toll-free 1-800-222-0000 or visit CollectionReportLawsuit.com for more information.

## THE PROPOSED SETTLEMENT BENEFITS

**8.     What benefits does the proposed Settlement provide?**

**Questions?  Call toll-free 1-800-222-0000 or CollectionReportLawsuit.com.**
*Para una notificacion en Espanol, llamar o visitar nuestro sitio web*

4

The benefits for Class Members fall under the category of injunctive relief. An injunction occurs when a court orders a person to do or not to do something – in this case changes in LexisNexis' business practices. The Settlement t requires the Defendants, at their expense, to design, implement, and maintain specific, substantial procedures that address the lawsuit's concerns about the preparation and sale of Accurint® searches and reports to debt collectors. All Class Members will receive the benefit from these changes in business practices.

Specifically, the changes in business practices will require the Defendants to:

- Modify the existing Accurint® for Collections suite of products and services to offer one suite of products that will provide reports within the FCRA's "consumer report" definition and another suite of products for the limited purposes of assisting debt collectors in locating debtors and locating assets securing the debt for the purpose of repossession;

- Implement a process to allow consumers to:

  o Get a free report of information provided to debt collectors on their location and contact information (this information is provided to debt collectors to locate debtors), and

  o Allow consumers to submit a written statement regarding the accuracy of any phone numbers or addresses displayed in those products;

- Provide enhanced training of the LexisNexis employees who work on or with the Accurint® for Collections suite of products and services; and

- Provide educational seminars and materials for customers regarding their responsibilities relating to the enhanced features and offerings of the Accurint® for Collections suite of products and services.

Because these procedures are being accomplished through a Court injunction, Judge Spencer will retain ongoing supervision and enforcement of these changes. The specific terms of these changes are included in the Settlement Agreement, a copy of which is available at CollectionReportLawsuit.com.

There will be no payments to these Class Members.

Defendants have agreed to pay all costs associated with: publishing this notice, implementing the procedures described in the Court's injunction, administering the Settlement, and paying Plaintiffs' lawyers for their attorneys' fees (up to a $5.5 million).

**Class Members do not have to pay or buy anything to benefit from the changes in business practices provided by the Settlement Agreement.**

**Questions?  Call toll-free 1-800-222-0000 or CollectionReportLawsuit.com.**

*Para una notificacion en Espanol, llamar o visitar nuestro sitio web*

5

## 9.      When will the proposed Settlement go into effect?

The Court will hold a fairness hearing on _____ __, 2013, to decide whether to approve the proposed Settlement. Even if the Court approves the proposed Settlement, there could be appeals to the Court's decision. The time for an appeal varies, and could take more than a year.

The date when all appeals are completed, and the proposed Settlement becomes final is called the Effective Date. You can visit the Settlement website at CollectionReportLawsuit.com after _____ __, 2013 to check on the progress of the Court-approval process.

The change in business practices will remain in effect for seven years from the Effective Date or until June 30, 2020, whichever is earlier. During that time, the Court will continue to oversee the injunctive relief and will have the power to enforce the terms of the Settlement Agreement.

## 10.      How does the proposed Settlement affect my rights?

If the proposed Settlement is finally approved by the Court, then you will be giving up the right to file a lawsuit against any of the Defendants or their related companies for certain money damages relating to any violation of the FCRA or any similar state law about the claims covered by this Settlement. This is called "releasing" your claims. This means you cannot seek, or continue to seek, limited statutory remedies based on any of the Defendants' alleged violation of the FCRA, including: 1) using your information without your permission, 2) responding inadequately to your request for a copy of an Accurint® report about you, or 3) inadequately responding to a dispute you initiated or submitted to one of the Defendants regarding Accurint®. You will be giving up all such claims, whether or not you know about them.

However, you will still have the right to file an *individual* lawsuit against any of the Defendants for actual money damages that you claim resulted from any of the Defendants using your information without your permission. Defendants will have the right to deny they are liable for damages.

**The precise terms of the release are explained in the Settlement Agreement, which you can view on the Settlement website, CollectionReportLawsuit.com.**

The Court's decisions in this case will apply to you even if you object to the Settlement or have any other claim, lawsuit, or proceeding pending against any of the Defendants relating to the same claims. If you have any questions about the release, then you should visit the Settlement website for more information or consult with a lawyer. See Question 12 below for more information about seeking legal advice about the Settlement.

## 11.      Can I choose not to be in the proposed Settlement?

No. The proposed Settlement requires the Defendants to create new products, limit the usage of existing products, and implement procedures to ensure they change their business practices to benefit all Class Members equally. As explained in Question 8, this type of benefit is injunctive. Therefore, under this type of class action, you cannot exclude yourself from the Class or this proposed Settlement.

**Questions? Call toll-free 1-800-222-0000 or CollectionReportLawsuit.com.**
*Para una notificacion en Espanol, llamar o visitar nuestro sitio web*

However, as explained in Question 10, you still have the right to file an individual lawsuit against any of the Defendants for actual money damages and have your case and the Defendants' defenses heard in court.

## THE LAWYERS REPRESENTING YOU

| 12. | Do I have a lawyer in this case? |
|-----|----------------------------------|

Yes.  The Court approved the following lawyers as "Class Counsel" to represent you and other Class Members:

- Leonard Bennett, of Consumer Litigation Associates, P.C., in Newport News, Virginia;

- Dale Pittman, of the Law Office of Dale W. Pittman, P.C., in Petersburg, Virginia;

- Michael Caddell of Caddell & Chapman, in Houston, Texas; and

- James Francis of Francis & Mailman PC, in Philadelphia, Pennsylvania.

You will not be charged for these lawyers.  You may hire your own attorney, if you so choose, but you will be responsible for paying your attorney's fees and expenses.

| 13. | How will the lawyers be paid?  What will the Class Representatives receive? |
|-----|----------------------------------------------------------------------------|

Class Counsel will ask the Court to approve attorneys' fees and expenses of up to $5.5 million, for the time and effort they have spent on this case.  Class Counsel will also request that a total of $30,000 be paid to the Class Representatives, who helped the lawyers on behalf of the whole Class.

Defendants will pay the approved amount of attorneys' fees and expenses, and no Class Member will owe or pay anything for the attorneys' fees and expenses of Class Counsel.

## OBJECTING TO THE PROPOSED SETTLEMENT

| 14. | How do I tell the Court if I do not agree with the proposed Settlement? |
|-----|------------------------------------------------------------------------|

If you are a Class Member, then you can object to the proposed Settlement if you do not like any part of it.  You can give reasons why you think the Court should not approve it.  The Court will consider your views.

To object, you must mail your objection letter to "LexisNexis Settlement Objections, Notice Administrator, P.O. Box 0000, City, ST 00000.  Your letter must be postmarked no later than **Month 00, 2013**.

**Questions?  Call toll-free 1-800-222-0000 or CollectionReportLawsuit.com.**
*Para una notificacion en Espanol, llamar o visitar nuestro sitio web*

Your objection letter must include all of the following:

- The name of the case: *Gregory Thomas Berry, et al. v. LexisNexis Risk & Information Analytics Group, Inc.*, No. 3:11CV754 (E.D. Va.);

- Your name, address, and telephone number;

- A statement of your objection and a summary of the reasons for your objection;

- Copies of any documents on which you base your objection; and

- A statement of whether you or your lawyer will ask to appear at the final approval hearing to talk about your objections.

If you or your lawyer asks to appear at the final approval hearing, then in addition to providing the information above, you must also:

- Identify the points you wish to speak about at the hearing;

- Enclose copies of any documents you intend to rely on at the hearing;

- State the amount of time you request for speaking at the hearing; and

- State whether you intend to have a lawyer speak on your behalf.

If you intend to have a lawyer present, then your lawyer must enter a written notice of appearance of counsel with the Court no later than **Month 00, 2013**.

For more information about the final approval hearing, see Questions 15-17 below.

If you do not follow the process outlined above, you will not be allowed to object, appear at the final approval hearing, or appeal the final approval of the proposed Settlement, the dismissal of the case, or the Court's award of attorneys' fees and expenses to Class Counsel.

## THE COURT'S FINAL APPROVAL HEARING

| 15. | When and where will the Court decide whether to finally approve the proposed Settlement? |
| --- | --- |

The Court will hold a final approval hearing to decide whether to approve the proposed Settlement. You may attend and you may ask to speak, but you do not have to because Class Counsel will appear at the hearing on your and the Class' behalf.

The hearing will be on **Month 00, 2013**, at _____ _.m., before Judge Spencer, in the United States District Court for the Eastern District of Virginia, Richmond Division, in Courtroom __.

**Questions?  Call toll-free 1-800-222-0000 or CollectionReportLawsuit.com.**
*Para una notificacion en Espanol, llamar o visitar nuestro sitio web*

At this hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate. The Court will consider all timely and proper objections. The Court will listen to people who have asked for permission to speak at the hearing (as explained in Question 14).

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them and will listen to people who have asked to speak at the hearing.

The Court may also decide how much to award Class Counsel and the Class Representatives. After the hearing, the Court will decide whether to finally approve the proposed Settlement. There may be appeals after that. We do not know how long these decisions will take.

The Court may change the date of the final approval hearing without further notice to the Class. You should check the website, CollectionReportLawsuit.com to check on the hearing date, the court-approval process, and the Effective Date.

| 16. | Do I have to come to the hearing? |
| --- | --- |

No. Class Counsel will answer any questions the Court may have. However, you are welcome to come at your own expense. You may also pay your own lawyer to attend, but it is not necessary. If you want to have a lawyer appear on your behalf at the final approval hearing, then your lawyer must enter a written notice of appearance with the Court no later than **Month 00, 2013**, and must follow the process outlined in Question 14.

If you send an objection, then you do not have to come to Court to talk about it. As long as you mailed your written objection on time and complied with the other requirements for a proper objection, the Court will consider it.

| 17. | May I speak at the hearing? |
| --- | --- |

You or your lawyer may ask the Court for permission to speak at the final approval hearing. To do so, you must tell the Court in your objection letter that you or your lawyer would like to speak at the hearing. You must also follow the process outlined in Question 14.

You cannot speak at the hearing if you do not follow this procedure.

# IF YOU DO NOTHING

| 18. | What happens if I do nothing at all? |
| --- | --- |

You are not required to do anything to get the benefits of the Settlement. If the Court approves the proposed Settlement, then you will be bound by the Court's final judgment and the release of claims explained in the Settlement Agreement.

**Questions?  Call toll-free 1-800-222-0000 or CollectionReportLawsuit.com.**

*Para una notificacion en Espanol, llamar o visitar nuestro sitio web*

# GETTING MORE INFORMATION

| 19. | How do I get more information? |
|-----|-------------------------------|

This notice is only a summary of the proposed Settlement.  More details about the proposed Settlement, the date when appeals are no longer allowed and when the Settlement is final, deadlines for certain actions, and your options are available in a longer document called the Settlement Agreement.

You can get a copy of the Settlement Agreement by visiting CollectionReportLawsuit.com.  The website also provides answers to commonly asked questions, plus other information to help you determine whether you are a Class Member.  In addition, some of the key documents in the case will be posted on the website.

Certain highly confidential and proprietary information submitted to aid the Court's consideration in connection with the Settlement may be reviewed by Class Members only with the assistance of Class Counsel.  An explanation of the procedures that must be followed to review such documents is posted on the website, as well as a copy of the Court's order that established those procedures.

**Do not write or call the judge or any court personnel concerning this lawsuit or notice.**

_____

James R. Spencer
United States District Judge Eastern District of Virginia

Date: _____ __, 2013

**Questions?  Call toll-free 1-800-222-0000 or CollectionReportLawsuit.com.**
*Para una notificacion en Espanol, llamar o visitar nuestro sitio web*

10

# EXHIBIT D

## You Could Receive Benefits from a Class Action Settlement Involving Consumer Reporting

A Settlement has been reached in a class action lawsuit involving certain reports sold by LexisNexis.  You could receive benefits from a $13.5 million Settlement.

**What's this Case About?**  LexisNexis did not treat Accurint® reports as "consumer reports" under a federal law, the Fair Credit Reporting Act ("FCRA").  The case concerns whether LexisNexis should have treated those reports as "consumer reports."  Plaintiffs claim LexisNexis should have, but LexisNexis disagrees.  Both sides agreed to the Settlement.

**Who's Included?** Based on LexisNexis records, you have been identified as a Class Member because (1) you requested a copy of an Accurint® report about you and/or (2) you initiated or submitted a dispute or other inquiry about information in an Accurint® report about you.

**What Does the Settlement Provide?**  The Settlement establishes a $13.5 million Settlement Fund for payments to Class Members and for attorneys' fees and costs.  The amount of the award received by Settlement Class Members will depend on the number of individuals that remain in the Class.  The parties estimate that the award to individual Class Members will be about $300.  The proposed Settlement also establishes substantial and comprehensive changes to the searches and reports offered by LexisNexis that will benefit Class Members.

**How to Get a Payment?** You do not have to do anything to request a payment.  If the Court approves the Settlement, you will automatically receive a payment.  If your addresses changes please call 1-800-000-0000 to provide us your updated address.

**Your Other Rights.** If you do nothing, your rights will be affected. If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement. The deadline to exclude yourself is **Month 00, 2013**. If you do not exclude yourself you will not be able to sue LexisNexis for any claim relating to the lawsuit. If you stay in the Settlement, you may object to it by **Month 00, 2013**. The Court will hold a hearing on **Month 00, 2013** to consider whether to approve the Settlement and a request for attorneys' fees up to $_____ of the Settlement Fund.  You can appear at the hearing, but you don't have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing.  You must let the Court know by **Month 00, 2013** if you intend to do so.

| | | |
|---|---|---|
| **For more information:** | **1-800-000-0000** | **www.FileDisputeReportClass.com** |

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Rust Consulting, Inc.

*Court-Ordered Legal Notice*
**SETTLEMENT ADMINISTRATOR**
**PO BOX 0000**
**MINNEAPOLIS, MN 00000-0000**

**Important Notice About Credit Report Settlement**

*Para una notificacion en Espanol, llamar o visitar nuestro sitio web*

NAME
ADDRESS
CITY STATE ZIP CODE

# EXHIBIT E

**[INSERT DATE]**

**Via Overnight Delivery**

The United States Attorney General and All
State Attorneys General Identified on the
Attached Service List

> Re:   Notice Pursuant to the Class Action Fairness Act of 2005 in
> connection with *Berry, et al. v. LexisNexis Risk & Information
> Analytics Group, Inc., et al.*, Case No. 3:11CV754 (E.D. Va.)

Dear Sir or Madam:

On behalf of LexisNexis Risk & Information Analytics Group, Inc. (now
LexisNexis Risk Solutions FL Inc.), Seisint, Inc. (now LexisNexis Risk Data
Management, Inc.), and Reed Elsevier Inc. (collectively, "Defendants"), and in
accordance with the requirements of the Class Action Fairness Act of 2005, *see* 28 U.S.C.
§ 1715(b), this letter provides notice of a proposed settlement of the putative class action
captioned, *Berry, et al. v. LexisNexis Risk & Information Analytics Group, Inc., et al.*,
Case No. 3:11CV754 (E.D. Va.).

Section 1715 requires defendants participating in a proposed class action
settlement to serve upon appropriate federal and state officials a notice containing
information responsive to eight items enumerated in the statute. Defendants' responses
to each of these items are below. Also enclosed is a CD containing documents relating to
the settlement, as required by Section 1715. If you have any difficulty accessing any of
the documents on the enclosed CD, please contact the undersigned.

***Item 1:***      *A copy of the complaint, any materials filed with the complaint, and any
amended complaints. 28 U.S.C. § 1715(b)(1).*

Mr. Gregory Berry and six other named Plaintiffs filed the Class Action
Complaint on November 14, 2011, a copy of which is included on the enclosed CD.
Plaintiffs did not attach any materials to the Class Action Complaint and have not filed
any amendment to the Class Action Complaint.

[INSERT DATE]
Page 2

**Item 2:**      *Notice of any scheduled judicial hearing in the class action. 28 U.S.C. §
1715(b)(2).*

On [_____], 2013, the Court scheduled a hearing on the Joint Motion for
Preliminary Approval of Settlement for [_____], 2013, at [_____] a.m.

**Items 3 and 4:**      *Any proposed or final notification to the class members. 28 U.S.C. §
1715(b)(3); any proposed or final class action settlement. 28 U.S.C. §
1715(b)(4).*

The parties have executed a Settlement Agreement and Release, which constitutes
the proposed class action settlement. A copy of the agreement is enclosed with this letter
as Exhibit A. On [_____], 2013, the parties filed the Joint Motion for Preliminary
Approval of Proposed Settlement (the "Joint Motion"). The Joint Motion explains the
history of the litigation and summarizes the terms of the settlement. A copy of the Joint
Motion is enclosed as Exhibit B. The Exhibits to the Joint Motion include notice plans
for two classes. The Joint Motion and all of its Exhibits are included on the enclosed CD.

The Parties' motion seeks approval of two settlement classes. Separate notice
plans are proposed for the two classes. The notice plan for the Rule 23(b)(2) Settlement
Class provides for notice to class members through a combination of a class settlement
website, a toll-free telephone number, publication notice, and banner advertisements.
The proposed publication notice is attached to this letter as Exhibit C. The notice plan
for the Rule 23(b)(3) Settlement Class provides for individual, direct mailed notice and a
class settlement website. The proposed direct mail notice is attached to this letter as
Exhibit D.

**Item 5:**      *Any settlement or other agreement contemporaneously made between class
counsel and counsel for the defendant. 28 U.S.C. § 1715(b)(5).*

No settlement or other agreement was contemporaneously made between counsel
for Defendants, on the one hand, and class counsel or counsel to the Plaintiffs.

**Item 6:**      *Any final judgment or notice of dismissal. 28 U.S.C. § 1715(b)(6).*

No final judgment or notice of dismissal has yet been entered.

[INSERT DATE]
Page 3

**Item 7:**     *Either (i) the names of class members who reside in each State and estimated proportionate share of such members to the entire settlement; or, (ii) if not feasible, a reasonable estimate of the number of class members residing in each State and estimated proportionate share of such members to the entire settlement. 28 U.S.C. § 1715(a)(7)(A)-(B).*

It is not feasible at this time to provide the names of all class members who reside in each state. The parties estimate that there are as many as 150 million Rule 23(b)(2) Settlement Class members and approximately 31,000 Rule 23(b)(3) Settlement Class members, and that their distribution across states likely mirrors the distribution of the total U.S. population among states.

**Item 8:**     *Any written judicial opinions relating to subparagraphs (3) through (6) under § 1715. 28 U.S.C. § 1715(b)(8).*

The Court has not entered an order or opinion relating to the Joint Motion or any of the matters referenced in Items 3 through 6 above.

*          *          *

The table below provides an index of the materials that we have included on the enclosed CD.

|    | Description |
|----|-------------|
| 1. | Class Action Complaint filed November 14, 2011 |
| 2. | Joint Motion for Preliminary Approval of Proposed Settlement |
| 3. | Exhibit [A] to the Joint Motion -- Settlement Agreement and Release |
| 4. | Exhibit [B] to the Joint Motion – Notice Plan for the Rule 23(b)(2) Settlement and proposed Forms of Notice to the Rule 23(b)(2) Settlement Class |
| 5. | Exhibit [C] to the Joint Motion – Notice Plan for the Rule 23(b)(3) Settlement and proposed Forms of Notice to the Rule 23(b)(3) Settlement Class |
| 6. | Exhibit [D] to the Joint Motion – Declaration of S. Wheatman of Kinsella Media In Support of the Notice Plan for the Rule 23(b)(2) Settlement Class |
| 7. | Exhibit [E] to the Joint Motion – Declaration of [_____] of Rust Consulting In Support of the Notice Plan for the Rule 23(b)(3) Settlement Class |

[INSERT DATE]
Page 4

| 8. | Exhibit [F] to the Joint Motion – Declaration of T. Sizer In Support of the Joint Motion (filed under Seal) |
|---|---|
| 9. | Exhibit [G] to the Joint Motion – Declaration of N. Richards In Support of the Joint Motion and Exhibit [_] (filed under Seal) |
| 10. | Exhibit [H] to the Joint Motion – Proposed Preliminary Approval Order |

Sincerely,


[Name]
[Title]
Rust Consulting Inc.
Providing Notification as *Berry* Settlement
Administrator On Behalf of Defendants
LexisNexis Risk Solutions FL Inc., LexisNexis
Risk Data Management, Inc., and Reed Elsevier
Inc.

Enclosures (CD)


cc:        Dale W. Pittman, Esq.
           Leonard A. Bennett, Esq.
           Matthew Erausquin, Esq.
           Michael A. Caddell, Esq.
           Cynthia B. Chapman, Esq.
           Craig C. Marchiando, Esq.
           James A. Francis, Esq.
           Mark D. Mailman, Esq.
           John Soumilas, Esq.
           David A. Searles, Esq.
           Erin A. Novak, Esq.
           David N. Anthony, Esq.

[INSERT DATE]
Page 5

Ronald I. Raether, Jr., Esq.
James F. McCabe, Esq.

[INSERT DATE]
Page 6

# EXHIBIT A TO CAFA NOTICE OF [INSERT DATE]

## [List TBA]

686886.2