UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**GREGORY THOMAS BERRY, et al.**
**on behalf of themselves and all others**
**similarly situated**

      **Plaintiffs,**

**v.**                                                                  **Case No. 3:11cv754**

**LEXISNEXIS RISK &**
**INFORMATION ANALYTICS**
**GROUP, INC., et al.,**

      **Defendants.**

## MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

Plaintiffs Gregory Thomas Berry, Summer Darbonne, Rickey Millen, Shamoon Saeed, Arthur B. Hernandez, Erika A. Godfrey and Timothy Otten, individually and on behalf of all others similarly situated, ("Plaintiffs") and Defendants LexisNexis Risk & Analytics Group, Inc., Seisint, Inc., and Reed Elsevier Inc. ("Defendants") respectfully submit this memorandum of law in support of their Joint Motion for Preliminary Approval of Proposed Settlement, in which they request this Court to enter an Order (1) granting preliminary approval of the proposed settlement; (2) conditionally certifying two classes for settlement purposes only pursuant to Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3); (3) appointing Class Counsel for the settlement classes; (4) approving the proposed notice plans for the settlement classes; (5) appointing Kinsella Media and Rust Consulting, Inc. as the Settlement Administrators for the Rule 23(b)(2) and Rule 23(b)(3) settlement classes, respectively; and (6) scheduling the Court's final fairness hearing for the proposed settlement.

## I.     INTRODUCTION

On November 14, 2011, Plaintiffs filed this present proposed class-action lawsuit for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.* Plaintiffs' counsel have developed, pursued and litigated the cause presented in this case since 2008, through a series of successive actions and nine mediation conferences in Richmond, Newport News, New York, Philadelphia, Houston, Oakland and Fort Lauderdale.  The Parties and this case have benefited from the efforts of three mediators, United States Magistrate Judge Lauck, the Honorable Dennis Dohnal (Ret.) and Randall Wulff.  There are few mysteries between the two sides as to the facts and law in the case.   Through this two-tract process of litigation and mediation, the Parties have now reached a substantial settlement (the "Settlement Agreement") that provides groundbreaking changes and adds consumer protections to the debt collection industries leading information product and substantial cash recovery for those consumers who would by the settlement release actual damage claims. A true and correct copy of the executed Settlement Agreement is attached as Exhibit 1.[1]

The Parties now move this Court to certify two nationwide settlement classes, one pursuant to Fed. R. Civ. P. 23(b)(2) and the other pursuant to Fed. R. Civ. P. 23(b)(3).  The Rule 23(b)(2) Settlement Class is composed of all persons about whom information resided in the Accurint® Database from November 14, 2006 to the present.  The Rule 23(b)(2) Settlement, if approved, would require Defendants to dramatically overhaul their existing Accurint® for Collections suite of products and implement two new suites of products – called "Collections Decisioning" and "Contact & Locate" – that will represent a significant shift from current accepted industry practices for the provision and use of consumer information by debt collectors.

---

[1] Capitalized Words in this memorandum refer to defined terms in the Settlement Agreement.

The Rule 23(b)(3) Settlement Class is composed of all persons who, from October 1, 2006 through present, requested a copy of an Accurint® Report containing information about themselves or initiated or submitted a dispute or other inquiry regarding an Accurint® Report. It creates a common fund of $13.5 million from which a cash payment will be made to every one of the approximately 31,000 individuals in the Rule 23(b)(3) Settlement Class.

The Parties believe that the settlement represents not only a fair, reasonable, and adequate resolution of the claims brought in this action, but sets a new industry-leading standard for the treatment of consumer information in the debt collection industry. The settlement therefore confers a continuing benefit to the settlement classes that they would not have been able to achieve by litigating their claims through trial. The settlement classes meet all of the requirements for certification under Rule 23(b)(2) and Rule 23(b)(3) and the proposed Notice Plans for the classes satisfy the requirements of Rule 23(e)(1)(B). For all these reasons, the Parties request that the Court enter the Proposed Order Granting Preliminary Approval of Proposed Settlement (attached as Exhibit 2).

## II.     HISTORY OF THE LITIGATION AND THE MEDIATION

### A.     Nature of the Case

Plaintiffs filed the present action in this Court in November 2011, alleging that Defendants violated the FCRA by selling certain "Accurint®" brand reports to debt collectors without treating those reports as "consumer reports" within the meaning of the FCRA. The FCRA imposes restrictions on the dissemination of "consumer reports" and affords consumers a number of rights of access to information in the preparer's files, as well as rights relating to the accuracy of consumer reports, and the correction of inaccuracies. Defendants have consistently and explicitly taken the position that Accurint® reports are not "consumer reports" within the

meaning of the FCRA.  As a result, they have not attempted to afford consumers rights with respect to Accurint® reports that the FCRA requires with respect to "consumer reports."

As currently constituted, Accurint® for Collections is marketed as "a powerful suite of skip tracing tools to help [debt collectors] locate both individuals and businesses, thereby improving debt collections and enhancing operational efficiency."[2] More than "400,000 public and private organizations of all sizes rely on powerful, industry leading Accurint® solutions to support their business goals."[3] Accurint® provides "a direct connection to over 34 billion current public records"[4] "on more than 200 million individuals."[5]  Defendants "collect and aggregate information about millions of consumers and businesses from public and nonpublic sources, including motor vehicle records and consumer identification information from credit reporting agencies, and maintain and store the information in computer databases."[6]  While the content of a specific report may vary by fields requested or data available on a particular consumer, Accurint® reports contain a wealth and near limitless trove of information.  Nearly every category of public record is available from judgments, liens and bankruptcy information to criminal records.  Other information includes licensing details, from driving to flying an aircraft, real and personal property ownership and a complete list of addresses and telephone numbers. Accurint® though is not a fringe product.  It is the dominant information product in the collection industry, described by LexisNexis as "a market leading online tool used by Collections businesses to efficiently and quickly locate and contact debtors to recover debt."[7]

---

[2] http://www.lexisnexis.com/risk/solutions/contact-locate/skip-tracing-accurint-collections.aspx.
[3] http://www.accurint.com/.
[4] *Id.*
[5] http://www.lexisnexis.com/risk/solutions/contact-locate/skip-tracing-accurint-collections.aspx.
[6] http://www.ftc.gov/os/caselist/0523094/080327complaint.pdf
[7] http://www.insidearm.com/daily/debt-collection-news/debt-collection/lexisnexis-risk-information-analytics-group-announces-enhanced-accurint-for-collections-industry/.

Defendants have consistently and explicitly taken the position that Accurint® reports are not "consumer reports" within the meaning of the FCRA. For example, in subscriber contracts and online log-in forms, Accurint customers must disclaim their use of Accurint reports for purposes governed by the FCRA. In marketing materials are statements like the following:

> Accurint for Collections does not constitute a "consumer report" as that term is defined in the federal Fair Credit Reporting Act, 15 USC 1681 et seq. (FCRA). Accordingly, Accurint for Collections may not be used in whole or in part as a factor in determining eligibility for credit, insurance, employment or another permissible purpose under the FCRA. Due to the nature of the origin of public record information, the public records and commercially available data sources used in reports may contain errors. Source data is sometimes reported or entered inaccurately, processed poorly or incorrectly, and is generally not free from defect. This product or service aggregates and reports data, as provided by the public records and commercially available data sources, and is not the source of the data, nor is it a comprehensive compilation of the data. Before relying on any data, it should be independently verified.

http://www.lexisnexis.com/risk/downloads/literature/accurint-collections.pdf. Plaintiffs contend that Accurint® as created, packaged and sold meets the FCRA's definition of "consumer report." Defendants deny that the definition is met. This dispute is the core of this litigation.

In this case, Plaintiffs are individual consumers who were allegedly the subjects of Accurint® reports sold to debt collectors. Compl. ¶ 41. Plaintiffs contend that Accurint® reports are "consumer reports" under the FCRA and, since Defendants did not treat them as such, they violated the FCRA in three different ways. First, they allege on behalf of an "Impermissible Use" class that Defendants violated the FCRA by selling Accurint® reports without first obtaining a certification from the user that it has a purpose for which the FCRA permits "consumer reports" to be used. Compl. ¶ 28. Second, Plaintiffs allege on behalf of a "File Request" class that when they requested copies of their "files" from Defendants, Defendants did not provide them with all of the information required to be disclosed when a consumer requests a "full file disclosure" from a "consumer reporting agency." Compl. ¶ 30. Finally, Plaintiff Otten

alleges on behalf of a "Dispute" class that he contacted Defendants regarding the accuracy of information contained in an Accurint® report about him, and that Defendants failed to take the actions required of "consumer reporting agencies" when such disputes are raised with respect to "consumer reports." Compl. ¶¶ 53-54.

Plaintiffs sought statutory damages under 15 U.S.C. §1681n, which provides remedies for only willful violation of the FCRA, punitive damages, and attorneys' fees and expenses on the claims of all the Classes.   Defendants denied Plaintiffs' allegations of wrongful conduct and damages, and have disclaimed any wrongdoing or liability.

**B.     The Classes**

The Complaint requests certification of the three putative Impermissible Use, File Request and Dispute Classes described above.  The Impermissible Use Class consists of all persons with respect to whom Defendants sold an Accurint® report to a non-governmental user in the five years preceding the filing of the action.  Compl. ¶ 55.  Defendants estimate that more than 100 million persons fall within Plaintiffs' definition of the Impermissible Use Class.  The File Request Class consists of all persons who within two years preceding the filing of the action requested a copy of their consumer file and were not provided with a document disclosing who had made Accurint® inquiries about them in the preceding year.  Compl. ¶ 63.  The Dispute Class consists of all persons who within the two years prior to the filing of the Complaint contacted the Defendants in writing to dispute information about them contained in an Accurint® file or report.  Approximately 31,000 persons fall within Plaintiffs' File Request Class and Dispute Class definitions.

The Complaint also requests certification of a "Post-*Adams*" subclass within each of the Impermissible Use, File Request and Dispute classes, for which the class period began on May 12, 2010, arguing that the entry of an order in *Adams v. LexisNexis Risk & Information Analytics*

6

*Group Inc. et al.*, No. 08-4708 (RMB/KW), 2010 WL 1931135, at *1 (D.N.J. May 12, 2010), on

that date changed the FCRA "willfulness" analysis with respect to the claims made here.

The Court has not yet made any determination as to class certification. As described

more fully below, the Parties have agreed to the certification of two classes for purposes of

settlement. They request certification of one class, corresponding to the Impermissible Use

class, pursuant to Fed. R. Civ. P. 23(b)(2), and certification of a second class, which corresponds

to a combination of the File Request and Dispute classes, pursuant to Fed. R. Civ. P. 23(b)(3).

**C.      Litigation: *Berry*, *Adams* and *Graham***

This is the third putative class action that Plaintiffs' counsel have filed contending that

Accurint® reports should be treated as "consumer reports" under the FCRA. The two prior

lawsuits are *Adams, et al. v. LexisNexis Risk & Information Analytics Group, Inc., et al.*, Case

No. 08-4708 (D. N.J.) and *Graham, et al. v. LexisNexis Risk & Information Analytics Group,*

*Inc., et al.*, C.A. 3:09-00655 (E.D. Va.). Although *Adams* and *Graham* involved issues similar to

the issues raised in this action, neither *Adams* nor *Graham* conclusively decided as a matter of

law any of the significant issues between the Parties in this action. Plaintiffs' counsel conducted

discovery – informal and/or formal in all three cases. They have deposed witnesses, served and

responded to written discovery and reviewed a substantial information and documents in

litigation of the case.

**1.      *Adams et al. v. LexisNexis Risk & Information Analytics Group, Inc., et al.***

On September 18, 2008, Francis & Mailman filed a putative class action in the District of

New Jersey alleging that since Accurint® reports are sold to debt collectors and contain

information "bearing on" certain consumer characteristics, they are "consumer reports" under the

FCRA. *Adams, et al. v. LexisNexis Risk & Information Analytics Group, Inc., et al.*, Case No.

08-4708 (D.N.J.) [Dkt. No. 1]. The complaint alleged two different classes, one consisting of consumers as to whom Defendants had sold Accurint® reports, and another consisting of persons who had paid a fee to Defendants to obtain a copy of their Accurint® report. *Id.*

Defendants moved for judgment on the pleadings in *Adams* directed at two issues: (i) the characterization of Accurint® as a consumer report, and (ii) whether plaintiff could prove a willful violation of the FCRA. [Dkt. No. 53]. Defendants argued that the "consumer report" definition requires that a report be prepared for purposes of determining a consumer's "eligibility" for something the consumer desires, and that the definition could not be read to include reports prepared for debt collection. On willfulness, citing *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 69-70 (2007), Defendants asserted that, even if Accurint® were found to meet the definition of a "consumer report," their conduct could not be "willful" because the outcome of that issue was not "clearly established" under the law. To the contrary, the little guidance available to Defendants, which included a statement from the FTC held that Accurint® does not constitute a credit report, supported the objective reasonableness of Defendants' position.

In denying the Rule 12 motion, the court held that the complaint alleged sufficient facts at the pleadings stage that Accurint® might be found to meet the definition of a "consumer report." [Dkt. No. 72]. As to willfulness, the court similarly held that it was "premature" at the pleadings stage to hold that plaintiff could produce no evidence showing a willful violation of the FCRA. Defendants moved for reconsideration of the court's decision on the willfulness issue based on the court's reliance on a vacated case, *Whitfield v. Radian Guaranty, Inc.*, 501 F.3d 262 (3rd Cir. 2007), which applied a standard inconsistent with the Supreme Court's *Safeco* decision. [Dkt. No. 75].

At a hearing on Defendants' motion for reconsideration, the court explained that there had been some "misinterpretation of what my [motion for judgment on the pleadings] ruling was." *Adams*, Transcript of June 29, 2010 Hearing before Hon. Renee M. Bumb. Judge Bumb acknowledged that the willfulness determination is a question of law to be made by the court based on the "clearly established" law, but explained that she denied the motion for judgment on the pleadings because she was uncertain about what discovery might reveal. She specifically addressed the FTC statement, which Defendants attached to their motion, that Accurint® reports were not "consumer reports": "What if discovery shows that the FTC, I forgot what it was called, statement, let's just call it a statement that the defendants relied upon, let's just pretend that FTC statement was overruled by the FTC a month later. I don't know. And the Court's not in a position at the judgment on the pleadings stage to question the averment." She further stated that "[a]t the end of the day if . . . there is no other contrary authority [to the FTC statement], then it seems to me summary judgment will be entered in defendant's favor." *Id.* Plaintiff thereafter amended her complaint to eliminate the first class [Dkt. No. 86], and the case settled shortly thereafter on an individual basis.

### 2. *Graham, et al. v. LexisNexis Risk & Information Analytics Management Group, Inc., et al.*

On October 19, 2009, Consumer Litigation Associates, Caddell & Chapman, and the Law Offices of Dale Pittman filed in this Court a putative class action alleging that since Accurint® reports are sold to debt collectors and contain information "bearing on" certain consumer characteristics, they are "consumer reports" under the FCRA. *Graham, et al. v. LexisNexis Risk & Information Analytics Management Group, Inc., et al.*, Case No. 3:09-cv-00655-JRS (E.D. Va.) [Dkt. No. 1]. Graham also alleged that because some of the data used to prepare Accurint® reports is purchased once by Defendants and is thereafter used in both Accurint® reports and

9

other reports that clearly are "consumer reports," Accurint® reports must also be "consumer reports." *Id.* The complaint named several debt collector defendants in addition to defendants associated with LexisNexis.

The LexisNexis defendants moved to dismiss the case for lack of standing, arguing that the complaint did not allege that the Accurint® report was about him, just that information related to him was contained in a report on another person named Graham who lived in the same city. [Dkt. No. 88]. Plaintiff did not file an opposition to the standing motion. Plaintiff settled claims against the non-LexisNexis defendants and dismissed the claims against LexisNexis. [Dkt. No. 92].

### 3. *Berry, et al. v. LexisNexis Risk & Information Analytics Management Group, Inc., et al.*

The present case was filed in 2011. The allegations in this case expressly incorporated the events and discovered information from *Adams* and *Graham*. However, to get to such posture, Plaintiffs' counsel expanded their work as a team and after review of hundreds of potential consumer clients, were retained by the six individuals to serve as representatives in this case across a range of Defendants' product lines and FCRA fact patterns.

### D.   Negotiations Leading to the Settlement Agreement

Through this long course of continuous litigation spanning three federal case dockets, Plaintiffs' counsel and Defendants and/or their counsel have met in person for the sole purpose of mediation at least nine times. The first such mediation attempt took place in 2009, when the Defendant's General Counsel and chief litigation deputy travelled to Newport News for an in person discussion and PowerPoint presentation of the arguments that were thereafter litigated in *Adams*, *Graham* and *Berry*.

Thereafter, additional meetings were held in Philadelphia (between counsel) and New York (between counsel and Defendants' executive team). Each of these meetings was limited to the subject of injunctive relief. Counsel did not discuss a monetary settlement. Plaintiffs' counsel instead provided a detailed analysis of the changes they believed necessary to settle this set of claims. The matter did not then resolve and Plaintiffs filed the present action.

After an initial telephonic conference with Judge Lauck and at least one other in person settlement meeting (in Houston), the Parties agreed to retain mediator Randall Wulff of Wulff, Quinby & Sochynsky in Oakland, California. The Parties selected Mr. Wulff as mediator because of his expertise and deep experience with complex business litigation, including FCRA cases.[8] Mr. Wulff conducted a full-day mediation in Oakland, California on May 10, 2012. Both sides set out their positions in substantive presentations to Mr. Wulff and, though no settlement was reached, the Parties reserved three additional mediation dates. The Parties also retained Judge Dohnal to assist in the mediation efforts.

Again conferring by telephone many times in the interim, the Parties began to fashion the parameters of a settlement on behalf of consumers who were and likely will be the subjects of Accurint® reports sold to debt collectors. In a July 18 letter, LexisNexis proposed a settlement that would modify the existing Accurint® for Collections and thus change the way LexisNexis does business with debt collectors going forward, in part by providing certain rights and information to consumers like those only available with respect to "consumer reports."

---

[8] Among the high profile cases handled by Mr. Wulff are mediation of the $1.1 billion class action settlement of the *Microsoft* antitrust claims in California and his appointment by the Chief Judge in the Southern District of New York to lead the panel that heard and decided the property damage claims arising from the September 11th World Trade Center tragedy.

Using this proposed business change as a beginning point, the Parties participated in mediation sessions with Mr. Wulff in Oakland on July 30, and August 21 and August 22.  At this final session, again after substantive presentations and with the exchange of documents further outlining LexisNexis' positions should the litigation have continued, the Parties agreed to the general outlines of the settlement they present here for the Court's consideration.  In addition, the Parties have again met twice—in Houston on September 18 and in Fort Lauderdale on October 5—to further define the proposed settlement and discuss the changes necessary for LexisNexis to implement the injunctive-relief aspect.  During this process, the Parties continued to litigate and conduct discovery.  They did not cease such two-tract work until the late August mediations neared an agreement.

During this effort with the private mediators, the settlement process was also directly supervised by Judge Lauck, who conducted multiple telephonic conferences to determine status and keep the case on track.  After the final Oakland mediation, the Parties reported in detail to Judge Lauck, who then set up a process for the presentation and vetting of the settlement before the Magistrate Judge.  The Parties provided Judge Lauck a substantial record of the litigation, the claims and the settlement process to date.  That record filled multiple binders.  Judge Lauck's supervision culminated in a January 14, 2013 settlement conference in which the Parties made a detailed, long and formal presentation of the settlement.  At the end of the formal presentation, Judge Lauck concluded,

> I feel as if I've heard and read about you and talked to you enough times that it's actually good to put faces to the names, and I appreciate your taking the opportunity to come here because I like it better.  I t think it's a more interesting process, and I can tell you personally that I think you all have worked something out that is very difficult.  I do think it is a sea change and a good one and a thoughtfully conducted one.  On behalf of the sets of individuals involved, this does strike me both as a set of circumstances where you all have worked hard to see what's fair, to give up something you may not wish to have given up on.  But

then also sort of seeing the horizon, the commonsensible approach that's going to have to come at one point or another, and it would not be exactly what everybody wants. And I think you have worked very hard and its evident in what you are presenting to me[.]

Settlement Conference, January 14, 2013, at 138:5-21.

There is just no doubt that the Settlement presented here for the Court's consideration is the result of these hard-fought, arm's-length negotiations among the Parties.

## III.   THE TERMS OF THE PROPOSED SETTLEMENT

During the mediation process and negotiations leading to the Settlement, the Parties worked to address and permanently resolve in the Settlement Agreement the allegations of each of the three putative classes alleged in the Complaint.

The proposed settlement encompasses two classes. The first, the Rule 23(b)(2) class, is the most substantial and far-reaching component of the settlement. It does not release actual damages and would benefit nearly every consumer in the nation. The second, the Rule 23(b)(3) class, does release FCRA and related claims for the roughly 31,000 consumers in the proposed monetary relief class in exchange for a pro rata share of the $13.5 million gross common fund (approximately a $435.00 gross payment before attorneys fees).

### A.    Rule 23(b)(2) Class Settlement

The Parties determined that the violations alleged by the Impermissible Use class are largely procedural in nature, and so any claim for statutory damages brought by the Impermissible Use was incidental to its interest in compelling changes in the Defendants' data practices. The Parties further recognized that such changes would inure to the benefit of class members because, due to standard practices in the debt collection industry, individuals whom are the subject of Accurint® reports are very likely to be the subjects of such reports in the future. Thus, to prevent the same issues and concerns regarding Accurint® from arising in the future,

13

whether supportable in law or not, Defendants would need to agree to substantial changes to those products. Accordingly, the Parties have agreed to certification of a Rule 23(b)(2) Settlement Class, as described more fully below and in the Settlement Agreement, for which Defendants will implement a substantial, nationwide program of Injunctive Relief that addresses the issues raised by the Impermissible Use Class in the Complaint. The Injunctive Relief is a significant shift from current accepted industry practices for the provision and use of consumer information by the debt collection industry. Consequently, implementation of the Injunctive Relief will cause Defendants to become the industry leader among data aggregation companies in the protection of consumer information provided to debt collectors. Declaration of N. Richards ("Richards Declaration"), ¶¶ 32, 35.

The Rule 23(b)(2) Settlement Class is defined as:

> All persons residing in the United States of America (including its territories and Puerto Rico) about whom information resided in the Accurint® Database from November 14, 2006 to the date when the Court enters its Preliminary Approval Order. Excluded from the settlement class are counsel of record (and their respective law firms) for any of the parties and the presiding judge in the action and his staff, and all members of their immediate family.

Subject to the terms and conditions of the Settlement Agreement, Plaintiffs and Defendants have agreed to move jointly for the Court to enter, as part of the Final Judgment and Order, an Injunctive Relief Order attached as Exhibit A to the Settlement Agreement. Plaintiffs pursued this Litigation to address certain practices relating to the use of Accurint® Reports by debt collectors, which is a large part of the Receivable Management Market. In arguing that the FCRA applied, Plaintiffs asserted that Accurint® Reports fall within the "consumer report" definition primarily because Accurint® Reports allegedly contain "seven characteristic" information and are sold for the purpose of debt collection. Compl. ¶¶ 1, 50. 15 U.S.C. §

1681a(d) (These characteristics include a *"consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living*[.]")

As a result of the settlement injunction, Defendants will be required to separate their sale of Accurint® for Collections data based on content and use.  In sum, Defendants will overhaul their currently existing Accurint® for Collections suite of products for the Receivable Management Market, which they currently do not treat as "consumer reports" as defined in the FCRA, and split what is now Accurint® for Collections into two newly developed suites of products and services, each containing different sets of information for different uses, where one suite of products and services ("Collections Decisioning") will be treated and recognized by Defendants as falling within the FCRA's "consumer report" definition.  Customers who are granted access to the Collections Decisioning product and services will now be permitted to use the information only if they are able to certify a permissible purpose under 15 U.S.C. § 1681b. Consumers will be able to request and review their consumer files, which will display inquiries and omit certain prohibited information. Consumers will be able to make a dispute and Defendants will be required to follow reasonable procedures to help assure accuracy.

A separate suite of products and services ("Contact & Locate") will not be treated as falling within the FCRA's "consumer report" definition and will be limited to only certain categories of data and uses of that data.  The information in this product will be stripped of consumer data that does not bear on the location of a debtor (such as job title, length of employment, property or loan values, judgment histories, and the like).  It will be limited to information more analogous to a phone book than a credit report.[9]

---

[9] The agreed current design of the new Contact & Locate and Collections Decisioning suite of products and services meets the limitations on data and use defined above.  Declaration of T. Sizer ("Sizer Declaration"), Ex. 1; Richards Declaration, ¶¶ 39-42.

(footnote cont'd...)

However, even as to this Contact & Locate suite of products and services, the injunction will require Defendants to provide certain consumer rights for the judgment's duration, which would not otherwise be available if not a "consumer report."   Declaration of Tom Sizer, ¶ 11 and Ex. 1.  The Consumer Access Program will include procedures that permit an individual to obtain a free copy of a Contact & Locate Comprehensive Report regarding the individual once a year. Individuals will be permitted to submit a statement of up to 100 words, comparable to the FCRA right provided at 15 U.S.C. § 1681i(b), regarding any phone number or address displayed in the Contact & Locate suite of products and services and that is being used to contact the individual related to a consumer credit obligation subject to collection.  Defendants will publish information regarding how consumers can contact them to obtain their free report and how to submit the dispute statement.

The settlement injunction will also require Defendants to provide educational seminars and materials, free of charge, to customers regarding their use of and responsibilities relating to Collections Decisioning and Contact & Locate and to retrain employees who work on or with Collections Decisioning or Contact & Locate regarding the requirements of the Injunctive Relief.

### B.   Rule 23(b)(3) Class Settlement

The Rule 23(b)(3) settlement is more conventional and combines the putative File Request and Dispute classes into a single class – the Rule 23(b)(3) Settlement Class.[10]  During the mediation process and negotiations leading to the Settlement, the Named Plaintiffs determined that the alleged violations of the FCRA asserted by the members of the putative File

(...cont'd)

[10] All Rule 23(b)(3) Settlement Class members are also members of the Rule 23(b)(2) Settlement Class and therefore will receive the benefits of the Injunctive Relief.

Request and Dispute classes raise the possibility of pecuniary harm since these individuals were affected enough to contact the Defendants and request or dispute their consumer file. The Rule 23(b)(3) Settlement Class comprises, essentially, all United States consumers who over approximately six years contacted LexisNexis seeking specific, FCRA-like protections from LexisNexis for Accurint® reports. This Rule 23(b)(3) Settlement Class is defined as:

> All persons residing in the United States of America (including its territories and Puerto Rico) who, from October 1, 2006 through the date when the Court enters its Preliminary Approval Order, requested a copy of an Accurint® Report containing information about themselves or initiated or submitted a dispute or other inquiry regarding an Accurint® Report to any of the Defendants or any of their predecessors or affiliates. Excluded from the Rule 23(b)(3) Settlement Class are counsel of record (and their respective law firms) for any of the Parties; and the presiding judge in the action and his staff, and all members of their immediate family.

There are approximately 31,000 consumers in this class.

The Settlement Agreement will require Defendants to create a $13.5 million common fund. It will not revert back to Defendants. It will not require class members to prove or even file a claim. After any attorneys fees awarded, the Settlement Fund will divided pro rata amongst each Rule 23(b)(3) class member. For example, if the Court awards the full attorneys fees and costs permitted for Plaintiffs' counsel, each of the 31,000 Class Members would receive $ 300.00.

In addition to making the $13.5 million common fund, LexisNexis will bear the costs of notice and administration of the settlement.

If any money remains in the Escrow Account after reimbursing Defendants for the Rule 23(b)(2) and Rule 23(b)(3) Notice Plans, the remaining funds will be paid to a non-profit entity or entities submitted jointly by the Parties and approved by the Court as a *cy pres* award for the

purpose of supporting research activities relating to the privacy or security of personal information.

### C.     The Releases are Tailored to the Relief

The scope of the release to which each class member would be bound was a substantial point of negotiation.  The Settlement Agreement would narrowly tailor the release to be provided by Class Members so that it is limited to the claims and issues in this case.

Rule 23(b)(3) class members, each of whom will receive a cash payment will release Defendants and related persons from all claims resulting from, arising out of, or in any way connected to "Covered Conduct."[11]  In contrast, Rule 23(b)(2) class members do not release their underlying claims.  Instead, any Rule 23(b)(2) class member may pursue individual claims for actual damages.  The Rule 23(b)(3) Settlement Class has agreed to a broader release than the Rule 23(b)(2) Settlement Class because the cash payments that its class members will receive under the Settlement Agreement are intended to compensate them for any possible harm that they might have alleged in this case had it proceeded to trial.  Rule 23(b)(2) class members forgo only their right to bring such claims in a class action and waive any separate remedy for a willful violation of the FCRA (punitive and statutory damages) or State Equivalent as to "Covered Conduct."

The Settlement does not permit a member of the proposed settlement classes to file a new class action based on the same claims asserted here and resolved by the proposed settlement, regardless of the type of damages that would be sought in such a lawsuit.  This waiver of the

---

[11] The Settlement Agreement defines "Covered Conduct" to mean any and all conduct or activity of the Defendants challenged by Named Plaintiffs in the Litigation relating to the characterization of any Accurint® Reports as a "consumer report" as defined in the FCRA and any related alleged violations of the FCRA.  Covered Conduct does not include activity of the Defendants that may relate to products or services that Released Parties have marketed or sold as "consumer reports." Settlement Agreement (Ex. 1), § 2.11.

class action procedural device is reasonable in light of the industry-changing Injunctive Relief that class members have achieved through the use of that device in this lawsuit.[12]

### D.    Class Administration and Notice to the Class

#### 1.    Class Administrators

The Parties request that the Court approve Rust Consulting, located at 625 Marquette Avenue, Suite 880, Minneapolis, MN 55402, as the Settlement Administrator for the Rule 23(b)(3) Notice Plan, and Kinsella Media, LLC, located at 2120 L Street NW, Suite 860, Washington, DC 20037, as the Settlement Administrator for the Rule 23(b)(2) Notice Plan. Rust Consulting has substantial experience in the design and implementation of notice programs for nationwide class-action settlements, including as a settlement administrator in numerous monetary fund settlements. Rust Consulting will manage the direct mail and other forms of notice for the Rule 23(b)(3) Notice Plan, as well as the opt-out process for class members who do not wish to be included in the settlement.

As explained in more detail by the material attached at Exhibit 3, Kinsella Media has extensive experience as a settlement administrator in class actions. Kinsella Media will provide professional guidance in the implementation of the notice plan, including CAFA Notice and other aspects of the settlement administration.

---

[12] Class-action waivers, like a waiver of other procedural rights, are commonly used in the resolution of statutory claims. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503, (4th Cir. 2002) (upholding validity of provision waiving right to pursue class action and noting that "simply because judicial remedies are part of a law does not mean that Congress meant to preclude parties from bargaining around their availability") (quoting *Johnson v. W. Suburban Bank*, 225 F.3d 366, 377 (3d Cir. 2000)); *Fresco v. Auto. Directions, Inc.*, No. 03-CIV-61063, 2009 U.S. Dist. LEXIS 125233, 22 (S.D. Fla. Jan. 16, 2009) (approving class action settlement including waiver of right to pursue further class actions under the Drivers Privacy Protection Act).

### 2.     Rule 23(b)(3) Notice

The Parties have agreed to a notice program designed to reach as many Class Members as possible.  The Settlement Administrator will send Direct Mail Notice via postcard through the U.S. mail requesting either forwarding service or change service to each Rule 23(b)(3) Settlement Class Member identified on the Class List.  Declaration of S. Wheatman ("Wheatman Declaration"), ¶¶ 13-14, 29.  Defendants will create the Class List by reviewing spreadsheets maintained by Accurint® customer service employees during the class period to keep track of their communications with consumers.  Per the class definition, Defendants will include on the Class List anyone who, from October 1, 2006 through the date of preliminary approval, requested a copy of an Accurint® Report containing information about themselves or initiated or submitted a dispute or other inquiry regarding an Accurint® Report to any of the Defendants or any of their predecessors or affiliates.  The Mail Notice will be sent to the last known address reflected in the Class List.  For up to forty-five days following the mailing of the Mail Notice, the Settlement Administrator will re-mail the Mail Notice via standard U.S. Mail, postage prepaid, to updated addresses of Rule 23(b)(3) Settlement Class Members to the extent that it received address change notifications from the U.S. Postal Service.  No later than seven days before the final fairness hearing in this Litigation, the Settlement Administrator will file proof of the mailing of the Mail Notice with the Court.

The Settlement Administrator will also create and maintain the Rule 23(b)(3) Class Settlement Website to be activated no later than five days prior to the mailing of the Mail Notice described above.  The Rule 23(b)(3) Class Settlement Website will post important settlement documents, such as the Settlement Agreement, the Mail Notice, and the Preliminary Approval Order.  In addition, the Rule 23(b)(3) Class Settlement Website will include a description of the Settlement Fund, a section for frequently-asked questions, and procedural information regarding

the status of the Court-approval process, such as an announcement when the final approval

hearing is scheduled, when the Final Judgment and Order has been entered, when the Effective

Date is expected or has been reached, and when payments will likely be mailed.

> **3.**     A toll-free telephone number will be established that will provide Rule 23(b)(3) Settlement Class Members with access to recorded information regarding the settlement and live operators who will be able to respond to inquiries regarding the settlement.**Rule 23(b)(2) Notice**

While Rule 23(b)(2) class notice may not be mandatory, the notice negotiated in this

class settlement is extensive and substantial.  The proposed Rule 23(b)(2) Notice Plan will be

administered by the experienced and highly qualified Kinsella Media as Settlement

Administrator and employ the following five methods to circulate information about the

settlement to Rule 23(b)(2) Settlement Class Members.  The Rule 23(b)(2) Publication Notice

(attached as Exhibit 5 to the Wheatman Declaration) will be published in various national

newspaper supplements and consumer magazines.  It will direct Rule 23(b)(2) Class Members to

the class settlement website and contain the following information:  (1) a brief description of the

parties and the claims asserted in the Litigation, (2) a summary of the settlement terms, (3)

disclosures regarding Class Counsel and their right to seek separate representation, (4) a

summary of Rule 23(b)(2) Class Members' rights and options with respect to the Settlement, and

(5) the date, time and location of the hearing on final approval.

In addition, the Settlement Administrator will create and maintain a Rule 23(b)(2) Class

Settlement Website to be activated as soon as practicable following Preliminary Approval. The

Rule 23(b)(2) Class Settlement Website will post important settlement documents, such as the

Settlement Agreement, the Rule 23(b)(2) Internet Notice (in both English and Spanish), and the

Preliminary Approval Order.  In addition, the Rule 23(b)(2) Class Settlement Website will

include a description of the Injunctive Relief and a copy of the Injunctive Relief Order, a section

for frequently-asked questions, and procedural information regarding the status of the Court-approval process, such as an announcement of when the final approval hearing is scheduled, when the Final Judgment and Order has been entered, and when the Effective Date is expected or has been reached.  Banner advertisements will be placed on selected Internet websites that will allow Rule 23(b)(2) Settlement Class Members who select one of the advertisements to click on a link that directs them to the Rule 23(b)(2) Class Settlement Website.   Keyword and phrase sponsorship related to the Litigation will be purchased on popular Internet search engines so that Rule 23(b)(2) Settlement Class Members who use those search terms will be directed to the Rule 23(b)(2) Class Settlement Website.

A toll-free telephone number will be established that will provide Rule 23(b)(2) Settlement Class Members with access to recorded information regarding the settlement and live operators who will be able to respond to inquiries regarding the settlement.

### E.   CAFA Notice

Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Defendants will send via Federal Express a notice of settlement to the appropriate federal and state officials under 28 U.S.C. § 1715(b), no later than ten days after this filing.  Specifically, Defendants will send notices to the Attorney General of the United States and the Attorney General of each state.  Defendants will file with the Court a proof of service after the notice pursuant to CAFA has been completed.  The proposed form of CAFA Notice, which meets the requirements of 28 U.S.C. § 1715, is attached to the Settlement Agreement as Exhibit E.  The Court is requested to approve the CAFA Notice and the method of delivery (via Federal Express) in its preliminary approval order.

**F.     Attorneys Fees and Service Awards**

Plaintiffs and their counsel will ask the Court to approve the attorneys' fees and Class

representative service awards negotiated by the Parties and permitted in the Settlement

Agreement.  Both of these subjects – fees and service awards – were addressed in mediation only

after the Parties had reached an agreement as to the recovery for each class.

Plaintiffs' counsel seek an award of attorneys' fees and expenses for their representation

of the Rule 23(b)(2) Settlement Class in obtaining this relief, based in large part on the value of

the relief to consumers and the dynamic shift that it represents in the industry.  As previously

explained, the change in business practices negotiated by Plaintiffs and their counsel is

substantial.  The injunction affords far better substantive relief than the Court or a jury could

compel following a complete victory on all of Plaintiffs' claims. The relief represents a sea

change in the practices of LexisNexis, and those practice changes will provide genuine relief to

millions of American consumers.  After an agreement was achieved on the substance of the

injunctive relief, the Parties then began to negotiate reasonable attorneys' fees as compensation

for that portion of the settlement.  Those negotiations resulted in an agreement that an award for

attorneys' fees, costs and other expenses in an amount up to $5.5 million in the aggregate is

reasonable for the relief obtained, subject to Court approval.  This amount is paid entirely by

LexisNexis.  It represents the attorneys' fee amount that Defendants agree to pay without contest.

In exchange, Plaintiffs' counsel have agreed not to seek a greater amount as to the Rule 23(b)(2)

class settlement.

The attorneys fee negotiated as to the separate Rule 23(b)(3) class is a conventional

percentage of the common fund fee structure.  The Settlement Agreement would permit

Plaintiffs' counsel to ask for as much as a 30% fee.  However, they have represented to Judge

Lauck that they will seek a fee of only 25%.

The Parties have also agreed that the named Plaintiffs may ask the Court for an award of for their service as class representatives in the amount of $ 5,000.00.

## IV.   THE PROPOSED CLASSES SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Both of the proposed settlement classes must meet the requirements for certification under Fed. R. Civ. P. 23(a) and one of the subsections of 23(b). *Gunnel v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003). "The policy in the Fourth Circuit is 'to give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application [that] will in the particular case best serve the ends of justice for affected Parties and promote judicial efficiency.'" *Morris v. Wachovia Sec., Inc.*, 223 F.R.D. 284, 291 (E.D. Va. 2004) (citations omitted); *see also In re A.H. Robins, Co., Inc.*, 880 F.2d 709, 740 (4th Cir. 1989) (holding that it was proper in determining certification to consider whether certification would "foster the settlement of the case with advantage to the Parties and with great savings in judicial time and services")). Further, when considering "a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Defendants maintain that the classes alleged in the Complaint could not be certified under Fed. R. Civ. P. 23 for trial purposes. The Parties agree, however, that the issues that Defendants believe would preclude certification for trial purposes do not preclude certification of the Classes defined in the Settlement Agreement for settlement purposes only.

### A.   The Proposed Settlement Classes Meet Rule 23(a)'s Requirements

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions.

In considering a settlement at the preliminary approval stage, the first question for the Court is whether a settlement class satisfies the requirements set forth in Rule 23, and thus may be conditionally certified for settlement purposes. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23).

Under Rule 23(a), one or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

### 1.    Numerosity

"There is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied." *Kelly v. Norfolk & W. Ry. Co.*, 584 F.2d 34, 35 (4th Cir. 1978).   In applying this rule, courts have consistently held that joinder is impracticable and numerosity is thus satisfied where the class is composed of hundreds of potential claimants; indeed, numerosity has been deemed sufficient as to class with fewer than 100 members. *See, e.g., Cypress v. Newport News Gen. and Non-Sectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (stating that a class of 18 members met numerosity requirement); *Pitt v. City of Portsmouth*, 221 F.R.D. 438, 444 (E.D. Va. 2004) (numerosity requirement met by "several hundred" class members); *Jeffreys v. Communic'n Workers of Am.*, 212 F.R.D. 320, 322 (E.D. Va. 2003) (granting class certification to class having "at least 60 members" and stating that "where the class numbers twenty-five or more, joinder is generally presumed to be impracticable").

There is no question that the class meets the numerosity requirement. There are approximately 31,000 Rule 23(b)(3) Settlement Class Members and an estimated 100 million people for the Rule 23(b)(2) Settlement Class. These numbers are certainly sufficient to establish that joinder is impracticable.

### 2.     Commonality

The commonality requirement is "not usually a contentious one: the requirement is generally satisfied by the existence of a single issue of law or fact that is common across all class members and thus is easily met in most cases." Conte, 1 NEWBERG ON CLASS ACTIONS 5th § 3:18. Indeed, this requirement is easily met here. Although the contents of Accurint® searches and reports differ by individual, the Settlement Agreement treats all Impermissible Use Class Members alike in granting them the substantial benefits of the Injunctive Relief program. Two of the key issues in this case, whether the FCRA applies to Accurint® and, if so, whether a willful violation of the FCRA has occurred under *Safeco*, are common to all members of the settlement classes.

### 3.     Typicality

In order for Rule 23's typicality requirement to be met, a named plaintiff "may proceed to represent the class only if the plaintiff establishes that his claims or defenses are 'typical of the claims or defenses of the class.'" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) ("The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'"). Typicality is satisfied as long as the plaintiff's claim is not "so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim. That is not to say that typicality requires that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned." *Id.* at 466-67.

Here, there is a sufficient link between the claims of the Named Plaintiffs and those of the absent class members because the Named Plaintiffs allege that Defendants violated the FCRA by willfully failing to employ practices and procedures that treated Accurint® products and services as "consumer reports" within the meaning of the FCRA. The Named Plaintiffs' success on essential elements of their claims, such as whether Defendants treated Accurint® products as "consumer reports" and whether their conduct constituted a "willful" violation of the FCRA, would advance the claims of the members of the proposed class. Accordingly, the typicality requirement is met.

### 4.      Adequacy of Representation

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class.   That protection involves two factors: (a) the representative plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the Class. *See, e.g., Mitchell-Tracey v. United Gen. Title Ins.*, 237 F.R.D. 551, 558 (D. Md. 2006) (citing *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 499 (D. Md. 1998)).

Named Plaintiffs are further qualified to "fairly and adequately" represent the settlement classes because their counsel are nationally recognized class-action practitioners, with particular expertise in FCRA litigation.   Plaintiffs' counsel have pursued consumer's rights in multiple cases in this District, and have litigated the very issues in this case against LexisNexis previously.   There are no counsel with more relevant background and experience to represent the interests of Plaintiffs and these Classes.[3]

---

[3] Class Counsel has extensive experience in both FCRA and class action litigation, having been involved in now numerous large FCRA class actions.   *See e.g. Soutter v. Equifax Info. Services, LLC*, 3:10CV107, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011) ("[T]he Court finds that Soutter's counsel is qualified, experienced, and able to (footnote cont'd...)

Moreover, Plaintiffs have no interests that are antagonistic to the interests of the Settlement Class, and are unaware of any actual or apparent conflicts of interest between them and the Settlement Class.

Moreover, the Settlement preserves the right of individual Rule 23(b)(2) Settlement Class Members to bring an individual suit for actual damages if they so choose; just as Rule 23(b)(3) Settlement Class Members will receive notice and have the right to opt out if they wish to pursue a claim for actual damages.

Having satisfied the requirements as to numerosity, commonality, typicality, and adequacy, the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes are each appropriate for certification under Rule 23(a).

### B.    The Proposed Settlement Classes Meet Rule 23(b)'s Requirements

If the Rule 23(a) requirements are met, the proposed class must then fall into one of the categories set out in Rule 23(b) to warrant certification. *Tootle v. ARINC, Inc.*, 222 F.R.D. 88, 91 (D. Md. 2004). As discussed above, the Settlement comprises two classes, a class addressing the Impermissible Use allegations in the Complaint and a class addressing the File Request and Dispute allegations. The Impermissible Use class is an injunctive-relief-only settlement class pursuant to Rule 23(b)(2), which applies where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The File Request and Dispute Class provides for the payment of a monetary settlement to its members and therefore must meet the requirements of Rule 23(b)(3): that questions of law or

---

(...cont'd)

conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases.").

fact common to the members of the Class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Eisen v. Carlisle Jacquelin*, 417 U.S. 156 (1974).

### 1.    The Impermissible Use Class Satisfies Rule 23(b)(2)'s Requirements

Parties seeking class certification under Rule 23(b)(2) must show that the defendants have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief . . . with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2); *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 329 (4th Cir. 2006) (alterations in original). More simply stated, Rule 23(b)(2) certification is proper "if members of the proposed class would benefit from the injunctive relief." *Cuming v. S.C. Lottery Comm'n*, No. 3:05-cv-03608-MBS, 2008 WL 906705, at *6 (D.S.C. March 31, 2008) (citing *Thorn*, 445 F.3d at 331). In addition, any request for monetary relief by the class must be "incidental" to the injunctive relief before certification under Rule 23(b)(2) is appropriate. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998); *Thorn*, 445 F.3d at 329 ("Rule 23(b)(2) does not 'cover cases where the primary claim is for damages, but is only applicable where the relief sought is . . . predominantly injunctive or declaratory.'") The Rule 23(b)(2) Settlement Class in this case satisfies both of these requirements.

Plaintiffs allege on behalf of the Impermissible Use class that Defendants sold Accurint® for Collections searches and reports to the Receivable Management Market without first obtaining the certification required under Section 604 of the FCRA, 15 U.S.C. §1681b, that the searches and reports will be used only for FCRA permissible purposes. Here, the Settlement Agreement treats all Impermissible Use class members alike in granting them the substantial benefits of the Injunctive Relief program. Protecting Plaintiffs' interests in the proper obtainment, use, and disclosure of their information as proscribed by the Injunctive Relief is

analogous to the classic Rule 23(b)(2) cases in which "various actions in the civil-rights field" dealing with discrimination were certified as Rule 23(b)(2) class actions, so that class-wide discrimination could be remedied with a class-wide program of relief. *See* Fed. R. Civ. P. 23 advisory committee's note.  Such Injunctive Relief is a powerful, efficient, and effective way of protecting broad interests like privacy, or the proper treatment of information, when out-of-pocket monetary losses are sometimes difficult to prove based on the violation of such interests. While Defendants maintain that they have always acted in compliance with the law, the fact that the Settlement modifies Defendants' conduct as to the Impermissible Use class as a whole makes it appropriate for certification under Rule 23(b)(2). *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011) ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'") (citation omitted). The Injunctive Relief will provide a direct benefit to the Rule 23(b)(2) Settlement Class Members going forward because, due to standard practices in the debt collection industry, consumers who are the subject of an Accurint® for Collections report are likely to be the subject of additional reports in the future.

The Impermissible Use class meets Rule 23(b)(2)'s second requirement – that any request for monetary relief be merely "incidental" to the injunctive relief provided in the settlement. Plaintiffs seek only statutory damages on behalf of the Impermissible Use class.  Plaintiffs do not seek actual damages because Defendants are alleged to have committed only technical violations of the FCRA.  Plaintiffs allege that the "collection of an account" is an FCRA permissible purpose.  They then allege that it is the very purpose for which the Receivable Management Market purchased Accurint® for Collections searches and reports that resulted in these products

meeting the FCRA's "consumer report" definition. Thus, the alleged violation occurred when

Defendants failed to obtain from these same users a certification that Accurint® for Collections

would be used only for FCRA permissible purposes. Defendants' alleged failure to obtain the

required certification is thus only a technical violation because it would not have changed how

Accurint® for Collections was used or how it affected any class member.

Statutory damages therefore would not compensate the Impermissible Use class members

for any alleged harm since there may have been none for this technical violation. Statutory

damages were thus sought to induce certain conduct by Defendants. Specifically, Plaintiffs

sought to cause Defendants to modify the Accurint® for Collections products sold to the

Receivable Management Market. The settlement provides this relief through the phasing out of

Accurint® for Collections and its replacement with a narrowly focused, non-FCRA Contact &

Locate product and an FCRA Collections Decisioning product. In sum, the Impermissible Use

Class is properly certified pursuant to Rule 23(b)(2) because the predominating interests of the

class are addressed by injunctive relief and Plaintiffs' demand for statutory damages was merely

a means to that end.

> **2.      The File Request and Dispute Class Satisfies the Rule 23(b)(3)
>          Requirements**

In addition to meeting the requirements of Rule 23(a), a money-damages class must

satisfy the requisites of Rule 23(b)(3), namely, that (1) "the questions of law or fact common to

the members of the class predominate over any questions affecting only individual members,"

and (2) "a class action is superior to other available methods for the fair and efficient

adjudication of the controversy." FED. R. CIV. P. 23(b)(3). The proposed Rule 23(b)(3)

Settlement Class (made up of the members of the alleged File Request and Dispute classes)

meets these requirements.

### a)      Common Questions of Law and Fact Predominate Over Individual Ones

Resolution of the common issues of fact and law in this case will not only promote the efficient adjudication of these matters, it will dispose of them entirely. Plaintiffs allege on behalf of the File Request and Dispute classes that Defendants failed to comply with the FCRA in processing (1) requests for copies of Accurint® for Collections reports and (2) disputes regarding the contents of those reports. The internal policies and procedures that Defendants followed in responding to such requests and disputes – factual issues central to Plaintiffs' claims – are generally common to all members of the File Request and Dispute classes. In addition, Plaintiffs allege on behalf of all classes that the FCRA applies to Accurint® for Collections and that Defendants' alleged failure to comply with the FCRA was "willful," i.e., that there is no objectively reasonable interpretation of the FCRA, as a matter of law, that supports Defendants' view that the FCRA does not apply to Accurint® for Collections. The possible complications that Plaintiffs might encounter at trial and how the procedures were applied to individual class members is not at issue since the class is being certified for settlement purposes and not for trial. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

### b)      A Class Action Settlement is the Superior Method for Resolving the Class Members' Claims

As to superiority, class settlement is the most efficient means of adjudicating the disputes raised here. Separately litigating the common issues that bind the classes would be a practical impossibility, even assuming consumers had notice of their claims and it were economically feasible to pursue these claims on their own. Simply put, "there is a strong presumption in favor of a finding of superiority" where, as here, "the alternative to a class action is likely to be no

action at all for the majority of class members." *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 396 (N.D. Ill. 2006). Furthermore, even if just a small fraction of the class were to bring individual suits, the resolution of common issues in a single proceeding here would be infinitely more efficient than would be the separate adjudication of individual claims in potentially millions of separate lawsuits across the country.

## V.      THE SETTLEMENT IS FAIR AND ADEQUATE

"There is an overriding public interest in favor of settlement, particularly in class action suits." *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 U.S. Dist. LEXIS 89136 at *27 (E.D. Va. June 23, 2009) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005) (noting that "[c]omplex litigation . . . can occupy a court's docket for years on end, depleting the resources of the Parties and the taxpayers while rendering meaningful relief increasingly elusive"). When reviewing a proposed settlement, the Court "must take into account 'the clear policy in favor of encouraging settlements . . . particularly in an area where voluntary compliance by the Parties over an extended period will contribute significantly toward ultimate achievement of statutory goals.'" *Lipuma*, 406 F. Supp. 2d at 1314 (quoting *Patterson v. Newspaper & Mail Deliverers' Union*, 514 F.2d 767, 771 (2d Cir. 1975)).

Federal Rule of Civil Procedure 23 requires Court review of the resolution of a class action such as this one. Specifically, the Rule provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." FED. R. CIV. P. 23(e). Court approval is required to ensure that the parties gave adequate consideration to the rights of absent class members during the settlement negotiations. *Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 492 (S.D. W. Va. 2002) (citing *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)). The Court may approve a settlement only after a

hearing and on finding that it is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.* (quoting *S. Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991)).

The primary concern for the Court in reviewing a proposed class settlement is to ensure that the rights of class members have received sufficient consideration in settlement negotiations. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir.1991). At the preliminary approval stage, the Court must make a determination as to the fairness, reasonableness, and adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2). *See Manual for Complex Litigation (Fourth)* ("MCL"), § 21.632 (4th ed. 2004). The Fourth Circuit has bifurcated this analysis into consideration of the fairness of settlement negotiations and the adequacy of the consideration to the class. *Jiffy Lube, supra* at 158-59. However, at the preliminary approval stage, the Court need only find that the settlement is within "the range of possible approval." *Horton v. Merrill Lynch, Pierce, Fenner & Smith,* 855 F. Supp. 825, 827 (E.D.N.C. 1994), citing *In Re Mid-A tlantic Toyota Antitrust Litigation,* 564 F. Supp. 1379, 1384 (D. Md. 1983).

### A.   The Settlement Is Fair

The Fourth Circuit has set forth the factors to be used in analyzing a class settlement for fairness:  (1) the posture of the case at the time the proposed settlement was reached, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the settlement negotiations, and (4) counsel's experience in the type of case at issue. *Jiffy Lube*, 927 F.2d at 158-59.

The Settlement reached in this case was the result of a fair process. The history of this litigation between the Parties involving the alleged application of the FCRA to Accurint® has extended over four years and three putative class action cases. The Parties mediated the issues in this case during numerous sessions, had many telephone and in-person settlement discussions across the country, worked under the supervision of three mediators and vetted the settlement formally in an "in Court" settlement conference with Judge Lauck. Courts have found that, where a settlement is the result of genuine arm's-length negotiations, there is a presumption that it is fair. *See, e.g., City P'ship Co. v. Atlantic Acquisition Ltd. P'Ship*, 100 F.3d 1041, 1043 (1st Cir. 1996); *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass 2000).

Plaintiffs also obtained substantial discovery in this and prior cases sufficient to support their position that the Settlement is the best and most appropriate means for resolving this case. The Parties litigated many, if not most of the same issues in their prior cases. While *Adams* and *Graham* did not yield the class-wide relief that the Settlement here proposes, they still allowed the Parties to present their respective positions regarding substantive issues that are also raised here. The extensive discovery and motion practice in these prior cases provided each side with the additional insight to evaluate the merits, and laid the groundwork for the arm's-length, contentious negotiations that resulted in the Settlement.

Finally, counsel is highly experienced in consumer class action litigation and endorse the settlement as fair and adequate under the circumstances. Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See, e.g., In re MicroStrategy Inc. Sec. Litig.*, 148 F. Supp.2d 654, 665 (E.D. Va. 2001); *Stewart v. Rubin*, 948 F. Supp. 1077, 1087 (D.D.C. 1996); *Rolland*, 191 F.R.D. at 6.

### B.    The Settlement Terms Are Adequate and Reasonable

In an analysis of the adequacy of a proposed settlement, the relevant factors to be considered may include: (1) the relative strength of the case on the merits, (2) any difficulties of proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial, (3) the expected duration and expense of additional litigation, (4) the solvency of the defendants and the probability of recovery on a litigated judgment, and (5) the degree of opposition to the proposed settlement,  (6) the posture of the case at the time settlement was proposed, (7) the extent of discovery that had been conducted, (8) the circumstances surrounding the negotiations, and (9) the experience of counsel in the substantive area and class action litigation. *See In re Jiffy Lube*, 927 F.2d at 159; *Clark v. Experian Information Solutions, Inc.*, 2004 WL 256433 (D.S.C. 2004).

### 1.    Plaintiffs' claims are heavily disputed and would encounter substantial defenses

Defendants have disputed Plaintiffs' claims since the inception of this case.  Because the Class claims are dependent upon recovery of statutory and punitive damages, any recovery for the Class must be predicated on a finding that Defendants willfully violated the FCRA. *See* 15 U.S.C. § 1681n(a). Although a reckless violation of the FCRA satisfies the willfulness prerequisite for statutory and punitive damages, *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007), Class members here are still faced with the burden of proving Defendants' conduct was indeed reckless. The final resolution of that issue, regardless of which party prevails at the trial level, would require several more years of protracted adversarial litigation and appeals at substantial risk and expense.

In addition, if Plaintiffs chose to litigate their claims, they would be faced with the more difficult task of certifying their alleged classes for trial purposes.  If the classes prove

unmanageable for trial purposes, this case may end up as did *Adams* and *Graham*, with claims dismissed without the class-wide resolution Plaintiffs seek and to which the Parties have agreed here. The reality that LexisNexis has already prevailed against similar class-wide claims in *Adams* and *Graham* shows the significant risks that Plaintiffs face in continuing to litigate. These factors support the adequacy of the settlement. *See Temp. Servs.*, 2012 WL 4061537, at *12 (finding that risks associated with continued litigation supported adequacy of settlement amount).

      **2.    Continuing this litigation will result in significant additional and unjustifiable burdens on the class, Defendant and the Court**

Aside from the potential that either side will lose at trial, the Parties anticipate incurring substantial additional costs in pursuing this litigation further. The level of additional costs would significantly increase as Plaintiffs began their preparations for the certification argument and if successful an inevitable interlocutory appeal attempt. Thus, the likelihood of substantial future costs favors approving the Proposed Settlement. *Horton*, 855 F. Supp. at 833.

      **3.    Class Member reaction to the Settlement is not available at this time**

Because Class Members have yet to receive notice of the Proposed Settlement, their reaction cannot yet be gauged. However, despite the size of the primary class to date no consumer has filed or is pursuing his or her own individual claim for the claims resolved here.

      **4.    The case was at a proper posture for Settlement**

The Parties had litigated had negotiated these claims for years. The Plaintiffs had a complete understanding from formal and informal discovery as to what process and procedures were used and what defenses as to liability and as to class certification would be faced. As argued above, each of the remaining elements of "adequacy" under *Jiffy Lube* are more than met. The negotiations were self-evidently arms length, with settlement made possible only through

the considerable efforts of three experienced mediators.   Finally, Plaintiffs' counsel is as experienced and accomplished in this field as likely any team in the nation.   Declaration of Leonard A. Bennett (attached as Exhibit 6), ¶¶ 5-12.

Given this analysis and the possibility that Plaintiff and class members ultimately will not prevail on their claims at trial or on appeal, the *Jiffy Lube* factors weigh heavily in favor of the adequacy and reasonableness of the settlement.

## VI.   THE PROPOSED NOTICE PLANS MEET RULE 23's REQUIREMENTS

Once preliminary approval of a settlement class is granted, Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." FED. R. CIV. P. 23(e)(1)(B).  "The court has complete discretion in determining what constitutes a reasonable notice scheme, both in terms of how notice is given and what it contains." 7B Charles Alan Wright *et al.*, FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2006).  The manner of the settlement notice need only comply with due-process "reasonableness" requirements, which will vary based on the circumstances of the case.  *See Fowler v. Birmingham News Co.*, 608 F.2d 1055, 1059 (5th Cir. 1979).

The Parties have retained and consulted with Kinsella Media and Rust Consulting, both highly regarded and experienced class-action notice companies regarding the most reasonable and appropriate means to provide notice to the Rule 23(b)(2) Settlement Class and the Rule 23(b)(3) Settlement Class.  As a result, the Parties have agreed to a proposed notice plan for the Rule 23(b)(2) Class, as described above, that employs a combination of the latest high tech as well as more traditional media methods for publicly circulating information about a settlement to class members. (See Notice Plan, attached as Exhibit 2 to the Wheatman Declaration.)  For the Rule 23(b)(3) Settlement Class, the notice plan provides for direct notice to each class member

by mail – which courts have universally accepted as an appropriate form of notice for class-action settlements involving a monetary fund.

## A.     The Rule 23(b)(2) Notice Program Satisfies Rule 23 and Due Process

Neither Rule 23 nor the case law requires individualized, mailed notice for a Rule 23(b)(2) settlement class (with as many as 100 million class members receiving injunctive relief), where class members do not have the opportunity to opt out of the settlement and are not required to take any affirmative action to receive the benefits of the settlement.  Federal Rule of Civil Procedure 23(c)(2)(A) is explicit that even a litigated Rule 23(b)(2) class does not require any notice.  FED. R. CIV. P. 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or (2), the court *may* direct appropriate notice to the class.") (emphasis added); *see also* ANNOTATED MANUAL FOR COMPLEX LITIGATION § 21.311 (4th ed. 2004) (stating that notice in Rule 23(b)(2) actions is "within the district judge's discretion" and that "[i]f notice is appropriate, it need not be individual notice because, unlike a Rule 23(b)(3) class, there is no right to request exclusion from Rule 23(b)(1) and (b)(2) classes").  Unlike class actions certified under Rule 23(b)(3), which require individual notice to class members and the opportunity to opt out of the settlement, class actions certified under Rule 23(b)(2) ordinarily do not require individual notice to class members because there is greater cohesion of interests in a (b)(2) class, as individual damage claims are not at stake.  *See Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("Notice (and exclusion opportunity) is not required in Rule 23(b)(2) actions."); 7B Charles Alan Wright *et al.*, FEDERAL PRACTICE AND PROCEDURE § 1793 (3d ed. 2006) (stating that while Rule 23(b)(3) classes require mandatory notice, notice is not as important for Rule 23(b)(2) classes "because the class typically will be more cohesive"); FED. R. CIV. P. 23 advisory committee's note (2003 Amendments) (explaining that "[t]he authority to direct notice

39

to class members in a (b)(1) or (b)(2) class should be exercised with care" because there is no right to request exclusion and because of the potentially "crippl[ing]" cost of providing notice).

Here, anticipating that notice is appropriate in this case, the Parties have developed a comprehensive publication notice program to notify the Impermissible Use class of the proposed settlement. Wheatman Declaration, ¶¶ 15-28. Use of a combination of traditional print and online media, as does the Parties' proposed program, meets the reasonable notice requirement of Rule 23(e) when providing notice to a numerous, nationwide Rule 23(b)(2) class. *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 532 (S.D.N.Y. 1996) ("Notice under Rule 23(b)(2) is flexible, and may consist entirely of published notice in appropriate circumstances."). Indeed, courts have held that comprehensive publication is the preferred method of providing notice where the costs of individual notice would create an unreasonable burden – whether the class is certified under Rule 23(b)(2) or (b)(3). *Fresco v. Auto Data Direct, Inc.*, 2007 U.S. Dist. LEXIS 37863, 23 (S.D. Fla. May 11, 2007) (approving publication notice program where Rule 23(b)(2) class included more than 200 million individuals and the costs to identify and provide individual notice was unreasonable); *Thomas v. NCO Fin. Sys.*, 2004 U.S. Dist. LEXIS 5405, 14, 2004 WL 727071 (E.D. Pa. Mar. 31, 2004) (grossly disproportionate cost of providing notice to Rule 23(b)(2) class not justified where "pervasive notice" achieved through publication notice program met due process requirements).

In consultation with Kinsella Media, LLC, the proposed Settlement Administrator described below, the parties developed a publication notice program that will reach approximately 75% of the Impermissible Use class members. Wheatman Declaration, ¶¶ 22, 36. Because the notice program will utilize a combination of newspapers and magazines with national readerships and free global social networking websites like Facebook, the parties

estimate that the Impermissible Use Class members will be exposed to notice of the settlement at least two times during the notice period. *Id* This reach and frequency easily meets the requirement that the class receive reasonable notice under Rule 23(e).

**B.      Direct Mail Rule 23(b)(3) Notice Satisfies Rule 23 and Due Process**

To meet the due process requirements that apply when settling a claim for monetary damages, a more rigorous – but still flexible – standard applies when directing notice to a Rule 23(b)(3) class. Rule Advisory Committee Notes to FED. R. CIV. P. 23, 39 Federal Rules Decisions pp. 69, 107 (mandatory notice pursuant to subdivision (c)(2) "is designed to fulfill requirements of due process to which the class action procedure is of course subject"). Specifically, the court must direct "the best notice that is practicable under the circumstances" to a Rule 23(b)(3) class, which includes "individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). Thus, where the names and addresses of individual class members are available or can be found without imposing an excessive burden or cost, due process requires that those class members receive direct notice.

The content of the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.*

Here, the notice plan for the Rule 23(b)(3) Settlement Class combines individual, direct mail notice to all class members whose address can be identified with a class settlement website. Wheatman Declaration, ¶¶ 14, 26. Courts in the Fourth Circuit have held that similar notice plans meet all of the requirements of Rule 23 and due process for class action settlements

involving a monetary fund. *See, e.g., Brunson v. Louisiana-Pacific Corp.*, 81 F. Supp. 2d 922, 925–26 (D.S.C. 2011) (mailed and published notice were the "best notice practicable under the circumstances," satisfying both state and federal class-action rules of procedure and constitutions); *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 669-70 (E.D. Va. 2001) (mail and publication notice program was "tailored to reach as many members of the class as practicable and therefore meets the due process requirements of Rule 23").

### C.     Request for Approval of Notice Plan

The Notice Plans for the Rule 23(b)(2) Settlement Class and Rule 23(b)(3) Settlement Class described above amply satisfy the Rule 23(e)(1)(B) requirement that notice be directed in a "reasonable manner." Consequently, it is respectfully submitted that the Court, after reviewing each of the forms of proposed notices and the specific terms of the Notice Plans, should find that they are sufficient and provide the reasonable notice that Fed. R. Civ. P. 23(e) requires. The Court, in its preliminary approval order, is requested to establish the procedures and deadlines set forth in the proposed Notice Plans for (i) objecting to the settlement or, in the case of the Rule 23(b)(3) Settlement, opting out of the settlement, and (ii) entering a written notice of appearance if a class member intends to appear at the final approval hearing.

## VII.   CONCLUSION

The Settlement presents an excellent result for consumers and genuine relief to class members in the form of new rights and protections in an industry where there were previously none. The Settlement also provides a cash award to the approximately 31,000 consumers who previously sought FCRA-like rights with respect to Accurint®. In return, the Rule 23(b)(2) Settlement Class releases any and all remedies for a willful violation of the FCRA, including any related claims under any FCRA State Equivalent, and waives their right to pursue future claims using the class action procedural device. Rule 23(b)(2) Settlement Class Members will still be

able to pursue individual actions for actual damages and attorneys' fees and expenses.  The Rule 23(b)(3) Settlement Class, in exchange for its cash award, will release any and all claims for actual damages and related attorneys' fees and expenses, in addition to any statutory or liquidated damages claims.

Each of the proposed settlement classes satisfies the requirements of Rule 23(a) and (b), and the notice plan for each class provides the "reasonable notice" required under Rule 23(e).

Accordingly, the Parties respectfully move for an Order (1) granting preliminary approval of the proposed settlement, (2) conditionally certifying the Rule 23(b)(2) Settlement Class and Rule 23(b)(3) Settlement Class, (3) appointing Class Counsel, (4) approving the Notice Plan for each of the certified classes, (5) appointing Kinsella Media and Rust Consulting as the Settlement Administrators, and (6) scheduling the Court's final approval hearing.


Respectfully submitted,


   /s/                                                                                          /s/

| | |
|---|---|
| Leonard Anthony Bennett | David N. Anthony (Bar No. 31696) |
| Consumer Litigation Associates, P.C. | TROUTMAN & SANDERS LLP |
| 763 J Clyde Morris Boulevard | 1001 Haxall Point |
| Suite 1A | Richmond, Virginia 23219 |
| Newport News, VA  23601 | Telephone:  804.697.5410 |
| | Facsimile:  804.698.5118 |
| Michael Allen Caddell | Email:  david.anthony@troutmansanders.com |
| Caddell & Chapman | |
| 1331 Lamar St. | Ronald I. Raether, Jr. (Pro Hac Vice) |
| Suite 1070 | FARUKI IRELAND & COX. P.L.L. |
| Houston, TX  77010 | 500 Courthouse Plaza, S.W. |
| | 10 North Ludlow Street |
| James Arthur Francis | Dayton, OH  45402 |
| Francis & Mailman PC | Telephone:  937.227.3733 |
| Land Title Building | Telecopier:  937.227.3717 |
| 100 S. Broad Street, 19th Floor | Email:  rraether@ficlaw.com |
| Philadelphia, PA  19110 | |

Dale Wood Pittman
The Law Office of Dale W. Pittman, P.C.
112-A W. Tabb St.
Petersburg, VA  23803-3212

Attorneys for Plaintiffs Gregory Thomas
Berry, Summer Darbonne, Rickey Millen,
Shamoon Saeed, Arthur B. Hernandez, Erika
A. Godfrey and Timothy Otten

James F. McCabe (Pro Hac Vice)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105
Telephone:  415.268.7000
Facsimile:  415.268.7522
Email:  jmccabe@mofo.com

Attorneys for Defendant Reed Elsevier Inc.,
LexisNexis Risk Solutions FL Inc. and
LexisNexis Risk Data Management, Inc.

## CERTIFICATE OF SERVICE

I certify that on the 15th day of March, 2013, I electronically filed the foregoing Memorandum in

Support of Joint Motion for Preliminary Approval of Proposed Settlement with the Clerk of

Courts using the CM/ECF system, which will send notification of such filing to CM/ECF

participants, and I hereby certify that I have mailed by United States Postal Service the document

to the non-CM/ECF participants:

Dale W. Pittman
The Law Office of Dale W. Pittman, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA  23803-3212

Leonard A. Bennett
Matthew Erausquin
Susan M. Rotkis
Janelle E. Mason
Consumer Litigation Associates P.C.
12515 Warwick Boulevard, Suite 100
Newport News, VA  23606

Michael A. Caddell
Cynthia B. Chapman
Craig C. Marchiando
Caddell & Chapman
1331 Lamar, Suite 1070
Houston, TX  77010

James A. Francis
Mark D. Mailman
John Soumilas
David A. Searles
Erin A. Novak
Francis & Mailman
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA  19110

Attorneys for Plaintiffs                          /s/ _____
                                                 David N. Anthony