

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GREGORY THOMAS BERRY, et al.<br>Plaintiffs,<br><br>v.<br><br>LEXISNEXIS RISK & INFORMATION ANALYTICS GROUP, INC., et al.<br>Defendants. | Case No: 3:11-cv-00754 JRS<br><br>Judge James R. Spencer |

## OBJECTION OF ADAM SCHULMAN TO (B)(2) CLASS SETTLEMENT

Adam E. Schulman
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW #236
Washington, DC 20036
Phone: (610) 457-0856
Email: shuyande24@gmail.com

*Pro Se*

TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................i

TABLE OF AUTHORITIES.............................................................................................ii

INTRODUCTION .............................................................................................................1

I.  I am a (b)(2) settlement class member and intend to appear at the fairness hearing.....2

II.  The class cannot be certified as a mandatory 23(b)(2) class............................................4

    A.  Monetary claims cannot be discharged in a mandatory 23(b)(2) class. ...............6

    B.  This class cannot be certified under (b)(2) because of the monetary components at stake...................................................................................................9

        1.  Monetary claims predominate from the perspective of the cause of action. ..............................................................................................................11

        2.  Monetary claims predominate from the perspective of the complaint........15

        3.  Class counsel's subjective preferences are not relevant to the (b)(2) inquiry; class counsel cannot circumvent (b)(2)'s prerequisites By settling for injunctive relief....................................................................................18

        4.  Monetary claims predominate from the perspective of the release.............20

    C.  A class action waiver of monetary claims cannot be included as part of a mandatory (b)(2) class release. ...........................................................................23

III.  The settlement's expansion of the class definition undermines 23(a)(4) and (g)(4) adequacy of representation. ............................................................................................26

IV.  Even if certifiable, this settlement is not fair. ...............................................................30

    A.  The ensemble of attorneys' fees and incentive award provisions signal a self-dealing settlement. ...........................................................................................31

    B.  The settlement includes an impermissible waiver of claims that accrue after the effective date............................................................................................37

    C.  Due process requires individual notice of settlement when class members are identifiable through the defendants' records. ....................................................39

CONCLUSION ................................................................................................................44

## TABLE OF AUTHORITIES

### Cases

*Adkins v. Labor Ready, Inc.,* 303 F.3d 496 (4th Cir. 2002)..............................................25

*Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir. 1998) ......................................8

*Amchem Prods. Inc. v. Windsor,* 521 U.S. 591 (1997). ......................................5, 6, 29, 42

*AT&T Mobility v. Concepcion,* 131 S. Ct. 1740 (2011)........................................................25

*Avis Rent A Car Sys. v. Aguilar,* 529 U.S. 1138 (2000) ....................................................24

*Bacon v. Honda of Am. Mfg., Inc.,* 205 F.R.D. 466 (S.D. Ohio 2001), *aff'd* 370 F.3d 565 (6th Cir. 2004) ................................................................................................................19

*Betts v. Va. Empl Comm'n,* No. 3:06-cv-753, 2007 U.S. Dist. LEXIS 10109 (E.D. Va. Feb. 2, 2007). ................................................................................................................1, 12, 13

*Bleynat v. Trans Union, LLC,* No. 1:11-cv-218, 2012 U.S. Dist. LEXIS 92016 (W.D.N.C. July 2, 2012)..........................................................................................................................12

*Bolin v. Sears, Roebuck & Co.,* 231 F.3d 970 (5th Cir. 2000) ..............................14, 19. 20

*Broussard v. Meineke Disc. Muffler Shopes,* 155 F.3d 331 (4th Cir. 1998) ...............6, 28-29, 35, 37

*Bulmash v. Travelers Indem. Co.,* 257 F.R.D. 84 (D. Md. 2009) ......................................17

*Campos v. ChoicePoint, Inc.,* 237 F.R.D. 478 (N.D. Ga. 2006) .........................................12

*Christ v. Beneficial Corp.,* 547 F.3d 1292 (11th Cir. 2008) ......................................11, 15

*Clarke v. Advanced Private Networks, Inc.,* 173 F.R.D. 521 (D. Nev. 1997) ....................21

*Compaq Computer Corp. v. Lapray,* 135 S.W.3d 657 (Tex. 2004) .....................................8

*Crawford v. Equifax Payment Servs.,* 201 F.3d 877 (7th Cir. 2000)............................*passim*

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC,* 662 F.3d 913 (7th Cir. 2011)...........36-37

*Domonoske v. Bank of Am., N.A.,* 2010 U.S. Dist. LEXIS 7242, 2010 WL 329961 (W.D. Va. Jan. 27, 2010) ..............................................................................................................13, 31

*Domonoske v. Bank of Am., N.A.,* 705 F. Supp. 2d. 515 (W.D. Va. 2010) ...........1, 12, 13, 20, 39

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974)..................................................41, 42

*Ellis v. Costco Wholesale Corp.,* 657 F.3d 970 (9th Cir. 2011).........................................19

*Felix v. Northstar Location Servs.,* No. 11-cv-00166(JJM), 2013 U.S. Dist. LEXIS 74717

(W.D.N.Y. May 28, 2013) ........................................................................... 14, 23, 43

*Fieldcrest Cannon v. NLRB,* 97 F.3d 65 (4th Cir. 1996) ................................................ 13

*Freeman v. Equifax, Inc.,* No. 6:12-cv-845-HMH, 2012 U.S. Dist LEXIS 89477 (D.S.C. Jun. 28, 2012) .................................................................................................................. 12

*Fresco v. Auto. Directions, Inc.,* No. 03-CIV-61063, 2009 U.S. Dist LEXIS 125233 (S.D. Fla. Jan. 16, 2009) .................................................................................................... 26

*Galloway v. Kan. City Landsmen,* No. 4:11-1020-CV-W-DGK, 2012 U.S. Dist. LEXIS 147148 (W.D. Mo. Oct. 12, 2012) .......................................................................... 33-34

*Gunnells v. Healthplan Servs.,* 348 F.3d 417 (4th Cir. 2003) ..................................... 5-6

*Hecht v. United Collection Bureau, Inc.,* 691 F.3d 218 (2d Cir. 2012) .............. 10, 15, 18, 20, 40

*Hesse v. Sprint Corp.,* 598 F.3d 581(9th Cir. 2010) .................................................... 37

*Hinton v. Trans Union, LLC,* 654 F. Supp. 2d. 440 (E.D. Va. 2009) ............................ 28

*In re A.H. Robins Co., Inc.,* 880 F.2d 709 (4th Cir. 1989) ............................................. 6

*In re Am. Express Fin. Advisors Secs. Litig.,* 672 F.3d 113 (2d Cir. 2011) .................... 38

*In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935 (9th Cir. 2011) ............ 9, 16, 31, 32, 34, 36

*In re Classmates.com Consol. Litig.,* No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012) ............................................................................................ 3

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg Litig.,* 418 F.3d 277 (3d Cir. 2005) ............................................................................................... 34

*In re Dry Max Pampers Litig.,* No. 11-4156, --F.3d--, 2013 U.S. App. LEXIS 15930, 2013 WL 3957060 (6th Cir. Aug. 2, 2013) ................................................................. *passim*

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768 (3d Cir. 1995)...9

*In re Jiffy Lube Sec. Litig.,* 927 F.2d 155 (4th Cir. 1991) ............................................. 30

*In re Katrina Canal Breaches Litig.,* 628 F.3d 185 (5th Cir. 2010) ............................... 32

*In re Literary Works in Electronic Databases Copyright Litig.,* 654 F.3d 242 (2d Cir. 2011)............29

*In re LivingSocial Mktg. & Sales Practices Litig.,* MDL No. 2254, __ F. Supp. 2d.__, 2013 WL 1181489, 2013 U.S. Dist. LEXIS 40059 (D.D.C. Mar. 22, 2013)............................ 33

*In re Microsoft Corp. Antitrust Litig.,* 214 F.R.D. 371 (D. Md. 2003).............................. 27

*In re Mills Corp. Sec. Litig.,* 265 F.R.D. 246 (E.D. Va. 2009) ...................................... 32

*In re Monumental Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004)............................................................19

*In re Motor Fuel Temperature Sales Practices Litig.*, 279 F.R.D. 598 (D. Kan. 2012) ......................42

*In re Oracle Secs. Litig.*, 132 F.R.D. 538 (N.D. Cal. 1990)..............................................................33

*In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315 (3d Cir. 2001)..................................41

*In re Real Estate Title & Settlement Servs. Antitrust Litig.*, 869 F.2d 760 (3d Cir. 1989) ...............41

*In re Telectronics Pacing Sys. Inc.*, 221 F.3d 870 (6th Cir. 2000)......................................................19

*In re Trans Union Corp. Privacy Litig.*,  211 F.R.D. 328 (N.D. Ill. 2002) .......................................12

*Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894 (7th Cir. 1999) ..........................................................8

*Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d. 455 (S.D. W.Va. 2010) ......................................31

*Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 313 (5th Cir. 2007) .........................................38

*Larson v. AT&T Mobility LLC*, 687 F.3d 109 (3d Cir. 2012) ..........................................................42

*Levell v. Monsanto Research Corp.*, 191 F.R.D. 543 (S.D. Ohio. 2000)...........................................33

*Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594 (4th Cir. 1976)...................................... 9, 15

*Manchouck v. Mondelez Int'l Inc.*,  No. C 13-02148 WHA, 2013 U.S. Dist. LEXIS 80132 (N.D.

    Cal. Jun. 3, 2013) .........................................................................................................27

*Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832 (9th Cir. 1976) .........................................42

*McClintic v. Lithia Motors, Inc.*, No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846 (W.D. Wash.

    Jan. 12, 2012) ..............................................................................................................33

*Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781 (7th Cir. 2004) .......................................................5

*Monreal v. Potter*, 367 F.3d 1224 (10th Cir. 2004) ........................................................................15

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)......................................... 40, 42

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) ........................................................35

*NAACP v. Button*, 371 U.S. 415 (1963). ......................................................................................24

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ..................................................... 7, 23, 25, 28, 29

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985) ......................................................6, 23, 26, 41

*Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013) ...........................................35-36

*Reeb v. Ohio Dep't of Rehab & Corr.*, 435 F.3d 639 (6th Cir. 2006)..................................... 8, 10, 15

*Reich v. Walter W. King Plumbing & Heating Contractor, Inc.*, 98 F.3d 147 (4th Cir. 1996) ...........33

*Richards v. Delta Air Lines, Inc.*, 453 F.3d 525 (D.C. Cir. 2006) .................................................15-16

*Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001) .....................................18

*Rouse v. Caruso*, No. 2:06-CV-10961, 2013 U.S. Dist. LEXIS 19946

    (E.D. Mich. Jan. 7, 2013) ................................................................................22

*Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d. 561 (E.D. Pa. 2001).................38

*Shelton v. Pargo, Inc.*, 582 F.2d 1298 (4th Cir. 1978)........................................................ 5, 30-31, 35

*Silber v. Mahon*, 957 F.2d 697 (9th Cir. 1992) ..............................................................5

*Smith v. Levine Leichtman Capital*, No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672 (N.D.

    Cal. Nov. 15, 2012).................................................................................27

*Snowden v. CheckPoint Check Cashing*, 291 F.3d 631 (4th Cir. 2002) ...............................................25

*Sobel v. Hertz.*, No. 3:06-cv-00545, 2011 U.S. Dist. LEXIS 68984 (D. Nev. Jun. 27, 2011)....34

*Soutter v. Equifax Info. Servs.*, 498 Fed. Appx. 260 (4th Cir. 2012)................................................17

*Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003) ........................................................... 33, 36

*Stillmock v. Weis Mkts., Inc.*, 385 Fed. Appx. 267(4th Cir. 2010) ..................................................17

*Thomas v. Collins*, 323 U.S. 516 (1945) .................................................................24

*Thorn v Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311 (4th Cir. 2006) ................................................5

*Ticor Title Ins. Co. v. Brown*, 511 U.S. 117 (1994).............................................................. 7

*Wal-Mart Stores Inc. v. Dukes*, 131 S. Ct. 2541 (2011)......................................7, 8, 9, 10, 15, 18, 41

*Walker v. Trans-Union LLC.*, No. 1:11-cv-1110, 2013 U.S. Dist. LEXIS 24348 (M.D.N.C.

    Feb. 22, 2013)................................................................................. 12, 13

*Wantz v. Experian Info. Solutions*, 386 F.3d 829 (7th Cir. 2004)...................................................28

*Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263 (5th Cir. 2000)....................................11-12, 28

*Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991) ..............................................34

*Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983) .......................................................41-42

*Worrell v. Uniforms to You & Co.*, 673 F. Supp. 1461 (N.D. Cal. 1987)........................................14

## Rules and Statutes

15 U.S.C §§ 1681 *et seq.* .............................................................................*passim*

15 U.S.C §§ 1692 *et seq.* .............................................................................14

28 U.S.C § 1332(d)(11)(B) .............................................................................24

Fed. R. Civ. P. 11 ............................................................................................16

Fed. R. Civ. P. 23(a)(4) .........................................................................26-30, 36

Fed. R. Civ. P. 23(b)(2) ....................................................................*passim*

Fed. R. Civ. P. 23(b)(3) ...........................................................6, 7, 29, 40

Fed. R. Civ. P. 23(e) ...........................................................................................6

Fed. R. Civ. P. 23(e)(1) .....................................................................................40

Fed. R. Civ. P. 23(g)(4) ..........................................................................26-30, 36

## Other Authorities

AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05(C) ....30

Brunet, Edward, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U.
    CHI. LEGAL F. 403 (2003) ...................................................................................4

Burch, Elizabeth Chamblee, *Optimal Lead Plaintiffs*, 64 VAND. L. REV. 1109 (2011) ...............20

Dasteel, Jeffrey H. & Ronda McKaig, *What's Money Got to Do With It?: How Subjective, Ad Hoc
    Standards for Permitting Money Damages in Rule 23(b)(2) Injunctive Relief Classes Undermine Rule
    23's Analytical Framework*, 80 TUL. L. REV. 1881 (2006) ...........................................8

Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION § 21.27 (4th ed. 2004) ............29

Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION § 21.612 (4th ed. 2004) ...... 9-10

Fitzpatrick, Brian T., *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) .................4

Frankel, Richard, *The Disappearing Opt-Out Right in Punitive-Damages Class Actions*, 2011 WISC.
    L. REV. 563 (2011)  ......................................................................................22

Grimmelmann, James, *Future Conduct and the Limits of Class Action Settlements*, 91 N.C. L. REV.
    387 (2013) .................................................................................................37-39

Issacharoff, Samuel, *Preclusion, Due Process, and the Right to Opt Out of Class Actions*, 77 NOTRE
    DAME L. REV. 1057 (2002) ..............................................................................20, 21

Karlsgodt, Paul & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat
    to Approval*, BNA: CLASS ACTION LITIG. REPORT (Aug. 12, 2011) .........................................4

Lahav, Alexandra, *Fundamental Principles for Class Action Governance*,
    37 IND. L. REV. 65 (2003) ...............................................................................39

Macey, Jonathan R., & Geoffrey P. Miller, *Judicial Review of Class Action Settlements*, 1 J. OF
LEGAL ANALYSIS 167 (2009) ........................................................................................27

Mullenix, Linda S., *No Exit: Mandatory Class Actions in the New Millennium and the Blurring of
Categorical Imperatives*, 2003 U. CHI. LEGAL F. 177 (2003) ....................................17, 19, 20, 29

Newberg on Class Actions § 8:18 (4th ed. 2002) ........................................................40

Newberg on Class Actions §12:15 (4th ed. 2002) ........................................................38

Wolfman, Brian & Alan B. Morrison, *What the Shutts Opt-Out Right Is and What It Ought to Be*,
74 UMKC L. REV. 729 (2006) .....................................................................................19-20

Zabcik, Brian, *Conscientious Objector*, AM. LAWYER (May 1, 2013), *available at*
http://www.americanlawyer-
digital.com/americanlawyer/lit2013spring/?lm=1367275927000&pg=11#pg11 ...............3

# INTRODUCTION

Class counsel must hope that the third time's a charm. At least twice before Mr. Bennett has attempted to transform the Fair Credit Reporting Act ("FCRA") into his injunctive relief hobby horse. *See Domonoske v. Bank of Am., N.A.*, 705 F. Supp. 2d. 515 (W.D. Va. 2010) (rejecting FCRA (b)(2) settlement); *Betts v. Va. Empl. Comm'n*, No. 3:06-cv-753, 2007 U.S. Dist. LEXIS 10109 (E.D. Va. Feb. 2, 2007) (recommending dismissal of FCRA injunctive relief claims). And like those earlier courts, this Court should rebuke those efforts in no uncertain terms.

This settlement must be rejected: the class is overbroad, rife with intraclass conflicts and not amenable to certification; the notice is insufficient; the settlement includes an unprecedented nonconsensual sweeping waiver of the class action device. Moreover, the settlement appears to produce more value for Lexis, class counsel and the named representatives than for absent class members who may have valid FCRA claims on the basis of impermissible issuances of consumer data. Independently, each of these reasons is sufficient grounds to reject the settlement. Combined, they amount to a rare situation where being an absent class member is worse than being a non-class member.

A common thread unites most of the shortcomings of this settlement: a failure to respect the autonomy and interests of absent class members. This vice manifests itself in attempting to certify the class as under (b)(2); in drastically expanding the class's scope at settlement; in implementing a shoddy notice plan despite possessing the contact information for class members; and in coercing absent class members into waiving now dormant future-

conduct claims as well as their right to use the class action device. It would be reversible error to approve the settlement.

## I.   I am a (b)(2) settlement class member and intend to appear at the fairness hearing.

Upon information and belief, I am a member of the putative (b)(2) settlement class, conditionally certified as those United States residents about whom information existed in the Accurint database from November 14, 2006 to April 19, 2013. Lexis' Accurint databases contains public records on over 200 million individuals. Mem. in Support of Preliminary Approval ("MPA") (Dkt. 63) at 4. "The Accurint databases contain the names and addresses of all U.S. residents who have opened a credit account, as well as information from many other public records, such as telephone directories, voter registration records, motor vehicle registrations, and mortgage records. If you are 18 or older, there is probably information about you in these databases."
http://www.collectionreportlawsuit.com/MainPage/FREQUENTLYASKEDQUESTION S.aspx.

I am a U.S. resident over the age of 18 who opened multiple credit accounts during the class period and was registered to vote in Pennsylvania throughout the class period. I am therefore a member of the relevant class and have standing to object to the proposed (b)(2) settlement and certification.

My mailing address is 1718 M Street NW, #236, Washington DC, 20036. My telephone number is (610) 457-0856. I am an attorney with the public interest law firm Center for Class Action Fairness ("CCAF"), although I appear here *pro se*. I intend to appear

at the Fairness Hearing on October 4, to speak about the points raised in this Objection and
to address any responses that the settling parties may make. I do not plan to call any
witnesses but reserve the right to cross-examine any witnesses who testify in support of the
certification or settlement.

CCAF, founded in 2009, represents class members *pro bono* in class actions where
class counsel employs unfair class action procedures to benefit themselves at the expense of
the class. *See e.g., In re Dry Max Pampers Litig.* ("*Pampers*"), No. 11-4156, --F.3d--, 2013 U.S.
App. LEXIS 15930, 2013 WL 3957060, at *2 (6th Cir. Aug. 2, 2013) (CCAF's client's
objections " were numerous, detailed, and substantive.") (reversing settlement approval).

CCAF has won millions of dollars for class members. *See, e.g.,* Brian Zabcik,
*Conscientious Objector,* AM. LAWYER (May 1, 2013), *available at* http://www.americanlawyer-
digital.com/americanlawyer/lit2013spring/?lm=1367275927000&pg=11#pg11; *In re
Classmates.com Consol. Litig.,* No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480, at *29 (W.D.
Wash. Jun. 15, 2012) (noting that CCAF's client "was relentless in his identification of the
numerous ways in which the proposed settlements would have rewarded class counsel ... at
the expense of class members" and "significantly influenced the court's decision to reject the
first settlement and to insist on improvements to the second").

Because it has been CCAF's experience that class action attorneys often employ *ad
hominem* attacks in attempt to discredit objections, it is perhaps relevant to distinguish
CCAF's mission from the agenda of those who are often styled "professional objectors." A
"professional objector" is a specific legal term referring to for-profit attorneys who attempt
or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of

the attorneys' fees; thus, some courts presume that the objector's legal arguments are not made in good faith. Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 437 n.150 (2003). This is not the Center's business model. *See* Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: CLASS ACTION LITIG. REPORT (Aug. 12, 2011) (distinguishing the Center from professional objectors). The Center refuses to engage in *quid pro quo* settlements and does not extort attorneys; and has never withdrawn an objection in exchange for payment. Instead, it is funded entirely through charitable donations and court-awarded attorneys' fees.

Nonetheless, to preempt any possibility of a false and unjustifiable accusation of objecting in bad faith and seeking to extort class counsel, I am willing to stipulate to an injunction prohibiting myself from accepting compensation in exchange for the settlement of this objection. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (suggesting inalienability of objections as solution to objector blackmail problem).

I bring this objection through CCAF in good faith to protect the interests of the class.

## II.     The class cannot be certified as a mandatory 23(b)(2) class.

"Class-action settlements are different from other settlements." *Pampers*, 2013 WL 3957060, at *1. "[I]n class-action settlements the district court cannot rely on the adversarial process to protect the interests of the persons most affected by the litigation—namely, the class. Instead, the law relies upon the fiduciary obligations of the class representatives and,

especially, class counsel, to protect those interests. And that means the courts must carefully scrutinize whether those fiduciary obligations have been met." *Id.* at *3 (internal quotation omitted). "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004); *accord Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1305-06 (4th Cir. 1978). "Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mahon*, 957 F.2d 697, 701 (9th Cir. 1992).

The judicial duty "to protect … the rights of the absent plaintiffs" extends to the decision to grant class certification, wherein "district courts must conduct a rigorous analysis to ensure compliance with Rule 23, paying careful attention to the requirements of that Rule." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 318 (4th Cir. 2006) (internal quotations and citations omitted). "It is well-settled in this jurisdiction that the proponent of class certification has the burden of establishing the right to such certification under Rule 23." *Id.* at 321 (quoting *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 65 n.6 (4th Cir. 1977) (*en banc*)).

It is no different because the Court is confronted with a settlement-only class certification. In fact, the specifications of rules Rule 23(a) and (b)(2) are "designed to protect absentees by blocking unwarranted or overbroad class definition" and "demand undiluted, even heightened, attention in the settlement context." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Pampers*, 2013 WL 3957060, at *7 (same). Put another way, "it is not the

mission of Rule 23(e) to supply the cohesion that legitimizes a settlement-only class action." *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 451 (4th Cir. 2003) (Niemeyer, J., concurring in part and dissenting in part).

Fed. R. Civ. P. 23(b)(2) allows a class action to be maintained if 23(a)(1)-(4) are satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Rule 23(b)(2) in particular lacks two paramount procedural protections that are afforded to absent class members in a (b)(3) class: the statutory right to exclude oneself and the statutory right to the "best notice practicable." Given this state of affairs, courts should be even more vigilant in their enforcement of the prerequisites of (b)(2). *See Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998) (intra-class conflicts are "of particular concern" in mandatory classes).

## A.  Monetary claims cannot be discharged in a mandatory 23(b)(2) class.

Within the past twenty years the Supreme Court, with increasing frequency, has suggested that 23(b)(2) class actions cannot accommodate any claims for monetary relief. In 1985, when *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985) declared that absent class members have a due process right to opt-out from class actions involving predominantly money damages, the Court conspicuously left undecided the question of whether due process compelled the right of opt out in actions which did not seek primarily money damages. *Id.* at 811-12 n.3. Soon after, the Fourth Circuit noted, but did not opine upon this lingering question. *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 744-45 (4th Cir. 1989), *abrogated*

*on other grounds by Amchem*, 521 U.S. 591.

Since that time, all indications from the Supreme Court point to the conclusion that due process demands the right of opt out in any action containing any claim, even a non-predominant one, for monetary relief. Notably, in *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117 (1994), in dismissing certiorari as improvidently granted, the Court declared that there is "at least a substantial possibility" that "in actions seeking [any] monetary damages, classes can only be certified under 23(b)(3), which permits opt out." *Id.* at 121. Five years later, the Court warned again that certifying a mandatory class that includes money damages potentially compromises the Seventh Amendment and due process rights of absent class members. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845-46 (1999).

Most significantly and most recently, the Court determined in *Wal-Mart Stores Inc. v. Dukes*, 131 S. Ct. 2541 (2011) that the "serious possibility that [the inclusion of monetary claims without a right to opt out would violate due process] provides an additional reason not to read Rule 23(b)(2) to include the monetary claims here." *Id.* at 2559. In so concluding, the Court reasoned that

> The mere "predominance" of a proper (b)(2) injunctive claim does nothing to justify elimination of Rule 23(b)(3)'s procedural protections: It neither establishes the superiority of *class* adjudication over *individual* adjudication nor cures the notice and opt-out problems. We fail to see why the Rule should be read to nullify these protections whenever a plaintiff class, at its option, combines its monetary claims with a request—even a "predominating request"—for an injunction. [*Id.*]

Both *Wal-Mart* and *Ortiz* were decisions driven by the canon of constitutional avoidance. As a result, any time a class action seeks monetary relief on the basis of individualized

aggregated claims, as opposed to a unitary group claim, it Rule 23 must be read to demand a 23(b)(3) certification. According to the Sixth Circuit, "such individual claims for money damages will always predominate over requested injunctive or declaratory relief." *Reeb v. Ohio Dep't of Rehab & Corr.*, 435 F.3d 639, 641 (6th Cir. 2006). This standard, much like the renowned "incidental damages"[1] standard of *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998), effectively harmonizes the Supreme Court's recurrent constitutional concerns with the idea that (b)(2) certifications should go forward when money damages do not "predominate." *See Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 667-68 (Tex. 2004); *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 897-99 (7th Cir. 1999); Jeffrey H. Dasteel & Ronda McKaig, *What's Money Got to Do With It?: How Subjective, Ad Hoc Standards for Permitting Money Damages in Rule 23(b)(2) Injunctive Relief Classes Undermine Rule 23's Analytical Framework*, 80 TUL. L. REV. 1881, 1898-99 (2006) (presenting the constitutional problem with certifying damage claims without opt out rights).

*Wal-Mart,* the Supreme Court's most forceful proclamation to date, strongly implies that whenever monetary claims are at stake, class members must be permitted the opportunity to opt-out and proceed on their own. And this Court should so hold. But, "at a minimum," it affirmatively commands courts to avoid certifying "claims for individualized relief" within mandatory (b)(2) classes. *Wal-Mart*, 131 S. Ct. at 2557.

---

[1] Incidental damages can be defined as those "that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief." *Wal-Mart*, 131 S. Ct. at 2560 (quoting *Allison*, 151 F.3d at 415).

**B.    This class cannot be certified under (b)(2) because of the monetary components at stake.**

Although *Wal-Mart* disclaimed the significance of "predominating" injunctive claims, even if the opinion is read most narrowly to permit non-individualized or incidental monetary relief within a constitutionally-viable (b)(2) class, this settlement cannot meet that standard. Not only is monetary relief *predominating*,  it is the **exclusive** relief available under the class' causes of action, it is the **exclusive** relief sought in the complaint, and it is the **exclusive** relief waived in the settlement's release.

Similarly, the Fourth Circuit has long held that "[w]ith regard to Rule 23(b)(2), the law is clear that this subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 595 n.5 (4th Cir. 1976) (internal quotation omitted). Thus, it makes sense to evaluate the nature of the money damages claims at stake in this settlement under the minimum threshold test of *Wal-Mart*. Do the monetary claims accrue to the class as a whole (i.e. are incidental) or do they accrue to individual class members (i.e. are predominating)?

The predominance inquiry is made less tractable by the fact that the plaintiffs and defendants seek certification of a settlement-only class. Delaying certification until settlement poses various problems, *see In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786-800 (3d Cir. 1995), and calls for heightened judicial scrutiny of the certification. *Id.* at 807; *accord Pampers*, 2013 WL 3957060, at *7 *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (citing cases from the Second, Third, Seventh and Ninth Circuits); Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION §

21.612 (4th ed. 2004).

In the context of a 23(b)(2) settlement, however, the analytical problems are all the more pronounced, because the court should determine whether monetary relief is incidental. If this class was being certified for trial, the (b)(2) analysis would be a comparatively easy matter of two steps: (1) look to the complaint and determine whether any monetary relief sought is incidental and thus non-predominant; and (2) ensure that the class as defined has the requisite cohesiveness and "homogeneity of interests."[2] Alternatively, this second inquiry can be conceived of as asking whether the injunctive relief is predominant from the perspective of the class and whether "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[3] But because this is a settlement class, two new factors complicate the equation: (3) the actual relief obtained in the settlement; and (4) the claims released in the settlement.[4] A court should not certify the class if any of the above criteria counsel against (b)(2) certification.

From the perspective of due process, however, it is the release that is the vehicle for deprivation of an absent class member's right to sue. Thus, it stands to reason that when certifying a (b)(2) settlement class, a court should ensure that the release does not include or burden non-incidental monetary claims.

---

[2] *Reeb*, 435 F.3d at 649; *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012).

[3] Fed. R. Civ. P. 23(b)(2); *see also Wal-Mart*, 131 S. Ct. at 2560 ("[T]he validity of a (b)(2) class depends on whether "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.") (quoting Fed. R. Civ. P. 23(b)(2)).

[4] *See Hecht*, 691 F.3d at 223 ("We need only review the … complaint, Stipulation of Settlement, and Settlement Order to conclude that the claim for damages predominated over the claim for injunctive relief under this standard.")

---

Regardless of how the Court chooses to view the predominance inquiry in a settlement context, the inescapable conclusion here is that monetary claims predominate. Not only do they predominate, monetary relief is the *exclusive* relief available under the class' causes of action, it is the *exclusive* relief sought in the complaint, and it is the *exclusive* relief waived in the settlement's release.

### 1.    Monetary claims predominate from the perspective of the cause of action.

As is necessary with a class of nationwide consumers, this case has been prosecuted entirely under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA"). *See* Complaint (Dkt. 1). All three counts of the Complaint allege FCRA claims. Complaint at 20-22. This is equally true of the "Impermissible Use" class that has since transmuted into the (b)(2) settlement class. Complaint at 20; MPA at 7 (declaring that the original "Impermissible Use" class "correspond[s]" to the (b)(2) class).

Crucially, the FCRA itself does not permit private litigants to seek injunctive relief. *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 268 (5th Cir. 2000). Consequently any attempted (b)(2) certification is doomed *ab initio*. When final injunctive relief is not appropriate with respect to any class members, it certainly cannot be appropriate with respect to the class as a whole. "Of course, the unavailability of injunctive relief under a statute would automatically make (b)(2) certification an abuse of discretion." *Bolin v. Sears Roebuck & Co.*, 231 F.3d 970, 977 n.39 (5th Cir. 2000); *accord Christ v. Beneficial Corp.*, 547 F.3d 1292, 1298 (11th Cir. 2008).

*Washington* is directly apposite. There the district court certified an FCRA action

under Rule 23(b)(2) "primarily because the consumers [were] pursuing injunctive relief." 199

F.3d at 268. After thoroughly surveying the FCRA's statutory text and decisional law

interpreting it, however, the Fifth Circuit concluded that through its statutory scheme

"Congress vested the power to obtain injunctive relief solely with the FTC." *Id.* Because the

FCRA does not permit plaintiffs to seek injunctive relief, 23(b)(2) certification is untenable

notwithstanding whether "reporting agencies acted in a way which made injunctive relief or

corresponding declaratory relief appropriate." *Id.* at 269; *accord In re Trans Union Corp. Privacy

Litig.*, 211 F.R.D. 328, 347 (N.D. Ill. 2002) ("Because the court has held that injunctive and

declaratory relief is unavailable to plaintiffs as a class, certification under Rule 23(b)(2)…is

also unavailable"); *Campos v. ChoicePoint, Inc.*, 237 F.R.D. 478, 481 n.8 (N.D. Ga. 2006)

(noting that "Plaintiffs abandon[ed] their request for certification under Rule 23(b)(2)"

because "[t]here is no private right of action for injunctive relief under the FCRA.").

     Courts of the Fourth Circuit have unequivocally followed the holding of *Washington*.

"*Washington* has been widely followed by the federal district courts, in [the Western District

of North Carolina] as well as elsewhere in the Fourth Circuit." *Bleynat v. Trans Union, LLC*,

No. 1:11-cv-218, 2012 U.S. Dist. LEXIS 92016 (W.D.N.C. July 2, 2012). *See e.g.*, *Domonoske*;

*Betts*; *Freeman v. Equifax, Inc.*, No. 6:12-cv-845-HMH, 2012 U.S. Dist. LEXIS 89477, at *8-*9

(D.S.C. Jun. 28, 2012) (finding these authorities "persuasive"); *Walker v. Trans-Union LLC*,

No. 1:11-cv-1110, 2013 U.S. Dist. LEXIS 24348, at *5-*7 (M.D.N.C. Feb. 22, 2013)

(following *Washington* line and dismissing FCRA claims for injunctive and declaratory relief).

"The Fourth Circuit has not specifically addressed this issue, but in general terms the Fourth

Circuit has set out the possible forms of relief for an individual under FCRA, including

damages but not injunctive or declaratory relief." *Walker*, 2013 U.S. Dist. LEXIS 24348, at

*6 (M.D.N.C. Feb. 22, 2013) (quoting *Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235, 239-

40 (4th Cir. 2009)).[5]

    Class counsel is no stranger to the *Washington* line of authority but conspicuously

failed to cite it in the preliminary approval papers. *See* MPA at 29-31 (arguing for (b)(2)

certification). Mr. Bennett was counsel of record in *Domonoske v. Bank of Am., N.A.*, 705 F.

Supp. 2d. 515 (W.D. Va. 2010), where the parties attempted a similar injunctive relief (b)(2)

settlement. The court denied approval on the ground that injunctive relief was not available

under the FCRA. *Id.* at 518-19 (citing *Washington, inter alia*); *see also Domonoske v. Bank of Am.,*

*N.A.*, 2010 U.S. Dist. LEXIS 7242, 2010 WL 329961 (W.D. Va. Jan. 27, 2010) (magistrate

judge's report recommending denial of approval and criticizing class counsel's distended fee

request).

    Likewise, Mr. Bennett was counsel of record in *Betts v. Va. Empl. Comm'n*, No. 3:06-

cv-753, 2007 U.S. Dist. LEXIS 10109 (E.D. Va. Feb. 2, 2007). Magistrate Judge Donhal this

time, recommended that Mr. Bennett's client's claim for injunctive relief be dismissed

because "it is clear that [an injunctive remedy is unavailable for FCRA actions brought by

private, non-governmental plaintiffs." *Id.* at *16 (citing *Washington* and *Bumgardner v. Lite*

*Cellular, Inc.*, 996 F. Supp. 525, 526-27 (E.D. Va. 1998)). Given Mr. Bennett's extensive

---

[5] Even if the underlying question were ambiguous, "[a] circuit split should not be created
without strong cause." *Fieldcrest Cannon v. NLRB*, 97 F.3d 65, 84 (4th Cir. 1996) (Luttig, J.,
dissenting) (internal quotation omitted).

experience with the FCRA,[6] the fundamental error in attempting to certify an injunctive class gives rise to a "strong inference" of an "improper purpose." *Worrell v. Uniforms to You & Co.*, 673 F. Supp. 1461, 1465 (N.D. Cal. 1987). The Court would be well-within bounds to order counsel to show cause why he should not be sanctioned under Rule 11 for submitting this settlement. *See Felix v. Northstar Location Servs.*, No. 11-cv-00166(JJM), 2013 U.S. Dist. LEXIS 74717, at *35-*36 (W.D.N.Y. May 28, 2013) (noting class counsel's experience as an aggravating circumstance in their omission of dispositive authority).

The parallel Fair Debt Collection Practices Act ("FDCPA") provides further evidence that a (b)(2) settlement is unavailable. It works in an manner parallel to the FCRA by leaving injunctive remedies to the FTC. *See* 15 U.S.C. §§ 1692 *et seq.* This led Judge Easterbrook, writing for a unanimous Seventh Circuit panel, to decertify a (b)(2) class settlement of FDCPA claims on the ground that "all private actions under the Fair Debt Collection Practices Act are for damages." *Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 882 (7th Cir. 2000). *Cf. also Bolin*, 231 F.3d at 977 n.39 ("[C]ourts uniformly hold that the FDCPA does not authorize equitable relief…which would automatically make (b)(2) certification an abuse of discretion.").

*Crawford* held that the certification was an abuse of discretion despite the fact that the settlement obtained injunctive relief and the release preserved all class members' individual damages claims. Such a release is far more circumscribed than the release here which not only improperly impinges on class members' ability to bring a future class action, but also

---

[6] *See generally* Declaration of Leonard A. Bennett (Dkt. 63-8).

impinges on their right to assert monetary "Willful Noncompliance Remedies"[7] in an individual capacity. By contrast the settlement in *Crawford* only released class members' future use of the class action device. *Crawford* 201 F.3d at 880. That alone is improper (see *infra* § II.C) of course, but it is not nearly as improper as releasing class members' individual monetary claims.

As with the FDCPA, FCRA claims are always for damages. In *Wal-Mart*, part of the reason (b)(2) certification was improper was that "about half the members of the class approved by the Ninth Circuit [had] no claim for injunctive or declaratory relief at all." *Wal-Mart*, 131 S. Ct. at 2560. *Wal-Mart* pales by comparison to the class here: because of the FCRA's structure, no class members have claims for injunctive or declaratory relief. 23(b)(2) certification is improper.

### 2.    Monetary claims predominate from the perspective of the complaint.

In determining whether injunctive relief predominates for (b)(2) purposes, assessing the complaint is customary procedure in courts across the nation. *E.g., Lukenas*, 538 F.2d 594, 596 (4th Cir. 1976) ("It is a monetary judgment that the plaintiffs seek and that is obvious from the phrasing of their prayer."); *Reeb*, 435 F.3d at 642; *Christ*, 547 F.3d 1292 (11th Cir. 2008); *Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004). "If recovery of damages is at the heart of the complaint, individual class members must have a chance to opt out of the class and go it alone—or not at all." *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525,

---

7 "Willful Noncompliance Remedies" encompasses monetary claims for statutory damages claims under 15 U.S.C. § 1681n(a)(1), punitive damages under § 1681n(a)(2), attorneys' fees under § 1681n(a)(3), and every form of relief other than actual damages under state statutes)

530 (D.C. Cir. 2006).

Even where the court is dealing with a settlement-only class certification, looking to the complaint is still advisable. *See Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 223 (2d Cir. 2012) ("The…complaint requested "the maximum statutory damages" under the FDCPA but failed even to mention injunctive relief"); *Crawford*, 201 F.3d at 881 ("Crawford's pleadings sought certification under Rule 23(b)(3), and the switch to Rule 23(b)(2) was a last-minute change.").*Cf. also. In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 945 n.8 (9th Cir. 2011) (comparing the injunctive relief obtained in settlement to the economic damages relief sought in the complaint).

Likely because the plaintiffs' were acutely aware of the proscription on injunctive relief claims under the FCRA, they correctly omitted such claims from each count of their complaint and from their Prayer for Relief. *See* Complaint at 23, Prayer for Relief (B)-(E) (seeking statutory damages, actual damages, punitive damages, costs and attorneys' fees, but not injunctive relief); *see also* Complaint ¶¶ 79-80 (describing "Impermissible Use" Class' entitlement to statutory and punitive damages as well as costs and attorneys' fees). Moreover, the complaint made no allegation that the "Impermissible Use" Class was certifiable under Rule 23(b)(2). Rather, it purported only that the class could satisfy the predominance and superiority prerequisites for certification under Rule 23(b)(3). Complaint at 14-15.

Even if we imagine a counterfactual complaint—one where the plaintiffs had violated Fed. R. Civ. P. 11 and included a claim for final injunctive relief—the requests for statutory, actual and punitive damages plus fees and costs would not have been incidental to the

request for injunctive relief.[8] They are non-incidental in the *Wal-Mart* sense of the word because they are individualized, under the FCRA they accrue based on willful noncompliance of the defendant "with respect to that [particular] consumer [whose information was mishandled by the defendant]" FCRA § 1681n(a). The Fourth Circuit has been clear on this point. *See Stillmock v. Weis Mkts., Inc.,* 385 Fed. Appx. 267, 277 (4th Cir. 2010) (Wilkinson, J., concurring specially) ("[T]he court notes (correctly, in my view) that statutory damages are available on a per-consumer rather than a per-receipt basis ... The per-consumer perspective places the focus on the characteristics of individual class members, rather than on the defendant's conduct that is common to the entire class.") (interpreting equivalent FACTA language). It is no different in the FCRA context, where "statutory damages...typically require an individualized inquiry." *Soutter v. Equifax Info. Servs., LLC,* 498 Fed. Appx. 260, 265 (4th Cir. 2012). In such cases, "[t]he injuries were suffered not collectively but individually, and individual hearings may be required to determine the amount of damages," "certification under Rule 23(b)(2) is inappropriate." *Bulmash v. Travelers*

---

[8]  Such a complaint would be wholly improper given the FCRA. *See* Linda S. Mullenix, *No Exit: Mandatory Class Actions in the New Millennium and the Blurring of Categorical Imperatives,* 2003 U. CHI. LEGAL F. 177, 221 (2003) ("[I]t is not uncommon to see class complaints in which the legal liability theory is simply asserted as, or converted into, a request for declaratory judgment or injunctive relief. Thus, class counsel may take a breach of contract claim and recast the class complaint as a request for a declaration from the court that the defendants have breached the contract. There are endless variations on this theme over an array of legal theories sounding in tort, contract, and statutory claims. As my colleague Professor Redish rightly suggests, the class action rule, as a procedural form or mechanism, was never intended to alter substantive law. The class action rule cannot possibly be used to modify the concepts underlying the appropriate use of the declaratory judgment action or injunctive relief.").

---

*Indem. Co.*, 257 F.R.D. 84, 90 (D. Md. 2009).

The parties' baldly assert that "the violations alleged by the Impermissible Use class are largely procedural in nature and so any claim for statutory damages…was incidental to its interest in compelling changes in the Defendants' data practices." MPA at 13. This assertion is contrary to law. Basically it is a rehash of the subjective *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001) test that has been decisively abrogated by *Wal-Mart*'s "replac[ment] of the predominance standard with the non-incidental standard discussed above." *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 223 (2d Cir. 2012). Statutory damages are non-incidental because they accrue to each individual consumer, regardless of whether the violation which undergirds them is "procedural in nature" or not. *Hecht* is right on point; surely the FDCPA statutory damages claims in that case were "procedural in nature" as well. Nevertheless, the Second Circuit concluded that the complaint's claim for monetary damages predominated over the injunctive relief sought in the complaint and obtained in the settlement. *Id.* at 224.

The monetary claims of the complaint are non-incidental; the right of opt-out must be preserved.

### 3. Class counsel's subjective preferences are not relevant to the (b)(2) inquiry; class counsel cannot circumvent (b)(2)'s prerequisites By settling for injunctive relief.

The parties now maintain that the plaintiffs all along harbored a secret intention to obtain *de facto* injunctive relief by inducing the defendants to alter their conduct. *See* MPA at 31 ("Plaintiffs' demand for statutory damages was merely a means to that end [of achieving injunctive relief]"). As detailed above in § II.B.1, this theory is at diametric odds with the

statutory scheme of the FCRA. As detailed immediately above in § II.B.2, it is also

incongruous with the theory of the complaint as written. But more than that, "Rule 23(b)(2)

certainly cannot be read as requiring the court to accept the plaintiffs' ranking in importance

of the various forms of relief they seek in the action." *Bacon v. Honda of Am. Mfg., Inc.*, 205

F.R.D. 466, 485 (S.D. Ohio 2001), *aff'd* 370 F.3d 565 (6th Cir. 2004); *Ellis v. Costco Wholesale

Corp.*, 657 F.3d 970, 986-87 (9th Cir. 2011) (citing *Wal-Mart*). Nor can the rule be read to

allow the class representatives' subjective intentions to govern the predominance inquiry. *In

re Monumental Life Ins. Co.*, 365 F.3d 408, 415 (5th Cir. 2004).

As professor Linda Mullenix has explained, despite "all the high-minded rhetoric

plaintiffs' and defense attorneys may attach to the virtues of opt-outs, all such principles will

be abandoned when plaintiffs' and defense interests converge on the utility of the mandatory

classes." *No Exit: Mandatory Class Actions in the New Millennium and the Blurring of Categorical

Imperatives*, 2003 U. Chi. Legal. F. 177, 241 (2003). That convergence occurs at settlement,

when the defendants seek to expand the global peace they will attain through a release, and

the plaintiffs would prefer not to have to overcome the (b)(3) hurdles of predominance and

superiority. Mullenix is not alone in this observation. *See In re Telectronics Pacing Sys. Inc.*, 221

F.3d 870, 880 (6th Cir. 2000) ("The bootstrapping of a Rule 23(b)(3) class into a

[mandatory] class is impermissible and highlights the problem with defining and certifying

class actions by reference to a proposed settlement."); *Bolin*, 231 F.3d at 976 (evincing

concern that "plaintiffs may attempt to shoehorn damages actions into the Rule 23(b)(2)

framework, depriving class members of notice and opt-out protections"); Brian Wolfman &

Alan B. Morrison, *What the Shutts Opt-Out Right Is and What It Ought to Be*, 74 UMKC L. REV.

729, 740 (2006); Elizabeth Chamblee Burch, *Optimal Lead Plaintiffs*, 64 VAND. L. REV. 1109, 1119 (2011).

The case at bar exemplifies Mullenix's and others' concern. Indeed, if there was any secret intention that the plaintiffs (and the defendants for that matter) harbored it was to arrive at a "favorable" settlement: a generous allotment of attorneys' fees for class counsel, incentive awards for the named plaintiffs, and an expansive release for the defendant. But (b)(2) certification is not just good for avoiding the superiority and predominance hurdles, it also led the parties here to believe (mistakenly, see *infra* § IV.C.2 ) that they didn't need to give individual notice of the settlement to all 200 million class members, even though the defendants possessed contact information for all class members. Notice and opt-out rights get in the way of settlement; they get in the way of global peace.

Although it is a necessary precondition to a (b)(2) settlement certification that the class receives injunctive relief, it is not a sufficient one. As shown by *Hecht, Crawford, Bolin*, etc, this Court must also consider the claims alleged and the claims waived.

### 4.    Monetary claims predominate from the perspective of the release.

Next, a thorough (b)(2) analysis entails examining the preclusive effects that the settling parties intend to foist upon absent class members. Samuel Isaacharoff, *Preclusion, Due Process, and the Right to Opt Out of Class Actions*, 77 NOTRE DAME L. REV. 1057, 1068-73 (2002). Determining the preclusive effects is easier in the settlement context where the agreement and notice should detail the scope of the precluded/released claims. Here, § 4.5 of the Settlement Agreement (Dkt. 61-1) delineates the contours of the (b)(2) release. The crux of the release is a waiver of all "Willful Noncompliance Remedies" other than actual

damages remedies under the FCRA or state equivalent statutes. Settlement § 4.5.1; *see also* §
2.45 (defining "Willful Noncompliance Remedies"). Again, under the FCRA, this includes
statutory and punitive damages as well as attorneys fees. *See* FCRA §1681n(a)(1)-(3);
*Domonoske v. Bank of Am., N.A.*, 705 F. Supp. 2d 515, 516 n.1 (W.D. Va. 2010) ("In the case
of willful noncompliance, the Act allows for statutory damages between $100.00 and
$1,000,00, as well as punitive damages."). Once again, because none of the FCRA's willful
noncompliance remedies are injunctive, the release consist solely of waiving monetary claims
and can in no sense be considered "incidental."

What we have is the inverse of a legitimate (b)(2) settlement release, which would
confine itself to future claims for injunctive relief without encroaching on absent class
members' rights to bring claims for non-incidental (*i.e.*, individualized) monetary relief.
Mandatory settlements that purport to release claims for monetary relief are, as a matter of
law, not fair, reasonable or adequate. *Clarke v. Advanced Private Networks, Inc.*, 173 F.R.D. 521,
522 (D. Nev. 1997); *see also* Isaacharoff, *supra*, at 1081 ("If the parties, particularly in the
settlement context, try to cheat by compromising the ability to opt out and by short-
circuiting the more exacting Rule 23(b)(3) certification standards, then they should be limited
in their claim to have achieved finality.").

The settling parties' one overture toward the importance of retaining absent class
members' right to sue for monetary relief—the carve out of individual actual damages
claims—is insufficient to comport with constitutional certification of a mandatory class.

Preservation of actual damages claims are far less potent when they cannot be
accompanied by claims for statutory damages, punitive damages and attorneys' fees, each of

which are non-incidental monetary claims accruing to individual consumers. FCRA statutory damages alone can yield $1,000 per class member, ten times more than the average monetary claim in *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985), where the Supreme Court announced that due process demanded an opt-out right.

Similarly, the waiver of punitive damages claims occasions an opt- out right. *See* Richard Frankel, *The Disappearing Opt-Out Right in Punitive-Damages Class Actions,* 2011 WISC. L. REV. 563, 623-24 (concluding that mandatory punitive damages classes "provide a telling example of how class counsel and class defendants have manipulated class action procedures to restrict class members' opt-out rights" and recommending that courts not certify such classes). "Nothing in either Rule 23 or the Due Process Clause provides that punitive-damages claims are somehow exempt from the general right to opt-out claims for money damages." *Id.* at 597 (recognizing that *Ortiz* involved both compensatory and punitive damage claims yet did not distinguish between the two for purposes of the opt-out right).

Class counsel and the named plaintiffs are attempting to extinguish several types of non-incidental monetary claims, in exchange for nothing more than injunctive relief.[9] "[A] putative class representative, by crafting an injunctive relief class for his own tactical reasons, should not be permitted to place class members' ability to pursue individualized claims for monetary relief in question." *Rouse v. Caruso,* No. 2:06-CV-10961, 2013 U.S. Dist. LEXIS 19946, at *14 (E.D. Mich. Jan. 7, 2013) (quoting *Cholakyan v. Mercedes-Benz USA, LLC,* 281 F.R.D. 534, 559 (C.D. Cal. 2012)). Consistent with (b)(2) and the Constitution, these

---

[9] On the side, of course, class counsel entitled themselves to a $5.5 million fee and the named plaintiffs to $5,000 each. *See infra* § IV.A-B.

monetary claims cannot be released.

## C. A class action waiver of monetary claims cannot be included as part of a mandatory (b)(2) class release.

Perhaps the most unique aspect of the settlement is the broad waiver of the right of absent class members to "pursue" claims against the defendants "using the class action procedural device or as a mass action." Settlement § 4.5.2. This non-consensual imposition of a class-action waiver is unacceptable for multiple reasons.

First and foremost, § 4.5.2 waives this right in all suits, including those seeking individualized monetary relief. Neither Rule 23(b)(2) nor the constitutional rule of *Shutts* permit the waiver of a class member's ability to use the class action device when there is no right to opt out. *See Crawford*, 201 F.3d at 880, 882 (disapproving of a near-identical waiver because class members "gain nothing, yet lose the right to the benefit of aggregation in a class."). The settling parties have implemented what amounts to a limited carve-out scheme for certain claims, when brought in an individual capacity. This scheme that does not comport with the unabridged *Shutts* right of exclusion. *Cf. Ortiz*, 527 U.S. at 847 n.23 (limited opt-out mechanism doesn't satisfy *Shutts*).

Most recently, a class action waiver was discredited in the identical context of a mandatory (b)(2) settlement by the court in *Felix v. Northstar Location Servs.*, No. 11-CV-00166(JJM), 2013 U.S. Dist. LEXIS 74717, at *33-*34 (W.D.N.Y. May 28, 2013). In doing so, the court rejected plaintiffs' counter-argument that "the other Settlement Class members are not releasing any *individual* claims against Northstar." *Id.* *34. *Cf. also Pampers*, 2013 WL 3957060, at *2, *7 (noting the class action waiver but not reaching the question and instead

overturning the settlement on fairness and adequacy grounds).

Furthermore, the prohibition here is unreasonably vague. By its terms it precludes class members from "pursu[ing]…any Claims…using the class action procedural device or as a mass action." Nowhere is it explained whether this proscription applies only to instituting a class action as a named plaintiff, or whether it also prohibits filing a claim as an absent class member in any future class action brought against the released parties, or even whether it prohibits encouraging others from bringing a class action suit. Nor is there explanation of what it means to "pursue" claims as a "mass action"[10] either.

A ban covering solicitation of class actions and association with other prospective plaintiffs implicates the First Amendment prior restraint doctrine. *Avis Rent A Car Sys. v. Aguilar*, 529 U.S. 1138, 1142 (2000) (Thomas, J., dissenting from denial of certiorari) ("We have, since *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 75 L. Ed. 1357, 51 S. Ct. 625 (1931), evaluated injunctions against speech as prior restraints, which entails the strictest scrutiny known to our First Amendment jurisprudence."); *NAACP v. Button*, 371 U.S. 415, 429-31 (1963) (litigational associations protected under the First Amendment). A prior restraint on First Amendment activity can only be justified by "public danger, actual or impending. Only the gravest abuses, endangering paramount interests, give occasion for permissible limitation." *Thomas v. Collins*, 323 U.S. 516, 530 (1945). Although reaching a fair settlement is a laudable goal, failure to do so does not rise to the level of a public danger, and does not

---

[10] "Mass Action" is a term of art under the Class Action Fairness Act. It means "any civil action…in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involves common questions of law or fact…" 28 U.S.C 1332(d)(11)(B).

justify an infringement on absent class members' rights.

Even if one construes the class action/mass action bar as narrowly as possible (only prohibiting filing an action designated as a class or mass action), it is still impermissible. Certainly, freedom of contract permits a class-action waiver: freely bargaining parties can choose to accept benefits in exchange for waiving rights, notwithstanding unconscionability doctrine. *See, e.g., AT&T Mobility v. Concepcion*, 131 S. Ct. 1740 (2011); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638-39 (4th Cir. 2002). For this reason, the parties citation[11] to *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002) is facially inapt; that case involved a freely-entered arbitration agreement not a mandatorily-imposed settlement. But a mandatory settlement is more bereft of a lack of "a meaningful choice" than any so-called "contract of adhesion." No choice exists, because class members cannot opt out.

The settling parties attempt to justify this provision by pointing out that this is only a commonplace waiver of "procedural rights." MPA at 19 n.12. First, this is incompatible with *Ortiz*, which indicates that the right of opt-out must be plenary. 527 U.S. at 847 n.23 (describing settlement's back-end litigation option). Second, this argument proves too much. The right for a class member to hire an attorney, or to file a suit in a convenient venue, or conduct discovery on claims are all "procedural" rights, but surely these rights could not be waived in a Rule 23(b)(2) class if the underlying substantive claim could not be waived in the same class.

---

[11] MPA at 19 n.12.

The sole case[12] that the parties cite actually supporting this kind of waiver is unpersuasive and provides no reasoning for this Court to follow suit. *Fresco* did not mention, let alone attempt to distinguish the Seventh Circuit's contrary decision in *Crawford*. *Fresco*'s *ipse dixit* rejection of the objections without any analysis is not persuasive, and provides no reasoning for this Court to follow suit. The *Crawford* release only precluded absent class members from instituting class actions, yet that alone was enough to made (b)(2) certification unsound. In effect, the class action waiver "cut[s] [absent class members] off at the knees." 201 F.3d at 882.

The conclusion that a mandatory class action waiver of monetary claims is improper follows from precepts of 23(b)(2) and *Shutts*. What if, instead of eliminating the class action procedure, the provision eliminated the possibility of legal representation entirely and preserved monetary claims only if the class member litigated each claim *pro se*? Both procedural burdens are end-runs around the due process rule of *Shutts* and should not be countenanced.

## III. The settlement's expansion of the class definition undermines 23(a)(4) and (g)(4) adequacy of representation.

The defendants for their part in the mandatory class settlement, seek the broadest and widest peace possible. Thus, a tell-tale warning sign of a 23(b)(2) settlement sell-out is an unwarranted and arbitrary expansion of the class definition. Here, under the definition from the complaint, the "Impermissible Use" was estimated to include more than 100 million

---

[12] *Fresco v. Auto. Directions, Inc.*, No. 03-CIV-61063, 2009 U.S. Dist LEXIS 125233, at *23 (S.D. Fla. Jan. 16, 2009).

persons. MPA at 6. Bloated to begin with, the expanded settlement class[13] now encompasses more than 200 million individuals. MPA at 4.

"Such expansions will be viewed with suspicion. If an expansion is to occur it must come with an adequate plaintiff and one with standing to represent the add-on scope and with an amended complaint, not to mention due diligence as to the expanded scope. The settlement dollars must be sufficient to cover the old scope plus the new scope." *Manchouck v. Mondelez Int'l Inc.*, No. C 13-02148 WHA, 2013 U.S. Dist. LEXIS 80132, at *4 (N.D. Cal. Jun. 3, 2013); *accord Smith v. Levine Leichtman Capital*, No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672, at *5-*6 (N.D. Cal. Nov. 15, 2012) (rejecting class expansion at settlement); Jonathan R. Macey & Geoffrey P. Miller, *Judicial Review of Class Action Settlements*, 1 J. OF LEGAL ANALYSIS 167, 191-92 (2009) (expansion of class is a "most salient" "yellow flag"). Expansions may "convert[] [the class action] into a source of lawyer-driven, rather than client-driven, litigation." *In re Microsoft Corp. Antitrust Litig.*, 214 F.R.D. 371, 376 (D. Md. 2003).

Not only did the expansion in class scope here come with no additional adequate representative, no amended complaint and no new settlement dollars (other than the $5.5 million flowing to class counsel), the sheer arbitrariness of the expansion demonstrates that there was certainly no due diligence either. The additional 100 million individuals now included in the mandatory class are those who have had their data collected by Lexis'

---

[13] The expansion adds to the class those individuals whose information is in the LEXIS database, but whose information was never released to a third party.

Accurint database but whose data has not be disseminated to a third party via a consumer report.

It is wholly arbitrary to include them in the class because they are not even within the ambit of those that the FCRA intends to protect. *See Washington*, 199 F.3d at 267 ("In light of the purposes of the FCRA, we find the actionable harm the FCRA envisions is improper disclosure, not the mere risk of improper disclosure that arises when 'reasonable procedures' are not followed and disclosures are made. Accordingly, a plaintiff bringing a claim that a reporting agency violated the 'reasonable procedures' requirement of § 1681e must first show that the reporting agency released the report in violation of § 1681b. The Seventh Circuit agrees. *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ("There cannot be a consumer report without disclosure to a third party.") As does this Court. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 450 (E.D. Va. 2009) (following *Washington*). The initial "Impermissible Use" Class alleged a § 1681e "reasonable procedure" claim. Complaint ¶ 78. But whereas that initial class was properly delimited, including only those who had their information furnished to third-parties (Complaint ¶ 55), that limitation is entirely absent from the (b)(2) settlement class definition.

Thus the expansion of the class introduces a severe intra-class conflict between that half of the class with actionable FCRA §1681e(a) claims, and that half without. *See Ortiz v. Fibreboard*, 527 U.S. 815, 857-58 (holding that it violates the requirement of intraclass equity to intermingle claims of divergent legal value). "The problem of actual and potential conflicts is a matter of particular concern in a case such as this one because the [parties seek to]

certif[y] the class under Federal Rule of Civil Procedure 23(b)[(2)] which does not allow class members to opt out of the class action." *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998).

To eliminate intraclass conflicts, subclassing is required, with each subclass having "separate representation to eliminate conflicts interests of counsel." *Ortiz*, 527 U.S. at 856. That is, "reclassification with separate counsel," not merely separate named representatives. *Id.* at 857.[14] *See also In re Literary Works in Electronic Databases Copyright Litig.*, 654 F.3d 242, 245 (2d Cir. 2011) ("Only the creation of subclasses, ***and the advocacy of an attorney representing each subclass***, can ensure that the interests of that particular subgroup are in fact adequately represented.") (emphasis added); Federal Judicial Center, MANUAL ON COMPLEX LITIGATION § 21.27 (4th ed. 2004) ("If the certification decision includes the creation of subclasses reflecting divergent interests among class members, each subclass must have separate counsel to represent its interests."). None of these safeguards are in place to protect either the 100 million member expansion or the original 100 million member "Impermissible Use" class.

Class members have become the "sacrificial pawn" of the parties. *See* Mullenix, *No Exit*, 2003 U. Chi. Legal. F. 177, 241. The incentives are no longer present for any of the settling parties to protect the interests of unnamed parties. The Court is the last line of

---

[14] There also need be independent representation for the Impermissible Use (b)(2) class and the File Dispute Report (b)(3) class. The inherent conflict between the (b)(2) and (b)(3) classes is analogous to that discussed in *Amchem* and *Ortiz* between those exposure-only class members who were at risk of future illness (akin to the (b)(2) class here) and those class members who already manifested illness (akin to the (b)(3) class here). *See Amchem*, 521 U.S. at 626; *Ortiz*, 527 U.S. at 856.

---

defense and must conduct an independent evaluation of whether monetary relief predominates. It does not. But not only is 23(b)(2) settlement certification unacceptable, 23(a)(4) requires a complete decertification of the Impermissible Use Class as currently constituted.

## IV.   Even if certifiable, this settlement is not fair.

As discussed, *supra* §§ II-III, this Court should reject the settlement on the various grounds which demonstrate that the underlying class cannot be certified as requested. These arguments can bleed into the corollary 23(e)(2) question of whether the settlement is "fair, reasonable and adequate." For instance, if final injunctive relief is not appropriate respecting the class as a whole, any settlement that offers only injunctive relief will be *per se* inadequate. Nonetheless, there are several independent reasons that this Court should reject the settlement under 23(e) even if it accepts that the class certification itself is viable.

The burden of proving settlement fairness lies squarely with the proponents. *Pampers*, 2013 WL 3957060, at \*4 (compiling cases and authorities); *accord* American Law Institute's Principles of the Law of Aggregate Litigation ("*ALI Principles*") § 3.05(c) (2010) ("In reviewing a proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable."). "The primary concern addressed by Rule 23(e) is the protection of class members who rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). Appropriate review demands "careful inquiry…to insure that, under the guise of compromising the plaintiff's individual claim, the parties have not compromised the class claim to the pecuniary advantage of the plaintiff and/or his attorney." *Shelton v. Pargo, Inc.*,

582 F.2d 1298, 1315 (4th Cir. 1978).

### A. The ensemble of attorneys' fees and incentive award provisions signal a self-dealing settlement.

In accord with *Shelton's* directive to insure that settlements do not unreasonably inure to the "pecuniary advantage" of the plaintiff and/or his attorney, the Ninth Circuit recently identified three warning signs of a class action settlement that is inequitable as between class counsel and the class. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).[15]

The first signal is "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Id. Accord Pampers*, 2013 WL 3957060, at *3 ("preferential treatment" for class counsel renders settlements unfair). Here, the (b)(2) class receives solely injunctive relief while agreement permits class counsel to seek, unopposed, an award of fees and costs of $5.5 million. Settlement § 4.4.1. A proportionate award adheres to the 25% of the common fund benchmark.[16] Supposing putative class counsel seek the entire $5.5 million, to reach the

---

[15] It is not necessary to allege or demonstrate actual "collusion." "While the Rule 23(a) adequacy of representation inquiry is designed to foreclose class certification in the face of 'actual fraud, overreaching or collusion,' the Rule 23(e) reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the negotiations." *Bluetooth*, 654 F.3d at 948 (internal quotation omitted). Rather, due to the defendant's indifference as to the allocation of funds between the class, the named representatives and class, it is enough that the settlement evinces "subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *Pampers*, 2013 WL 3957060, at *3 (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)).

[16] *E.g., Domonoske v. Bank of Am., N.A.*, 2010 WL 329961, 2010 U.S. Dist. LEXIS 7242, at *63 (W.D. Va. Jan. 27, 2010) (citing Manual For Complex Litigation § 14.121 (4th ed. 2004))

appropriate ratio, the class benefit would have to be valued at $16.5 million. *See Pampers*, 2013 WL 3957060, at *5 (class relief must " be commensurate with [the] fee award).

It appears implausible that the injunctive relief that this settlement offers is worth $16.5 million. The potpourri of relief is described at Settlement §§ 4.3.1-4.3.4. There will be changes to Lexis' protocols, including the insertion a disclaimer. Defendants will acknowledge that their "Collection Decisioning" program and services meet the definition of a "consumer report" under the FCRA, while stipulating that the "Contact & Locate" services do not. Nonetheless, they will put in place a consumer access program for the "Contact & Locate" suite, as well as consumer education and employee training programs.

To date, as far as I am aware there has been no attempt to quantify the injunctive relief package. The burden of proving the quantum of benefit lies with the proponents of the settlement. *Pampers*, 2013 WL 3957060, at *4. They must demonstrably show that the settlement "secures some adequate advantage for the class." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 195 (5th Cir. 2010).

But at least there has been no disingenuous attempt to estimate the value of inestimable injunctions, which does nothing to serve the interest of the class and everything

---

("[A] typical benchmark employed in common fund cases is an award of attorney's fees of 25%."); *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 467 (S.D. W.Va. 2010) (citing survey that mean attorneys' fee award for mid-size class action settlements is 22.1% and median is 24.9%) (awarding 25%); *Bluetooth*, 654 F.3d at 942.

Percentage of recovery is the preferred method of calculating attorneys fees. *See In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009) ("[A] central advantage of the percentage of the fund method is that it looks to the results actually obtained by Lead Counsel rather than just the number of hours they expended, which should be an important point in awarding fees.") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

---

to serve the interest of class counsel. *See In re Oracle Secs. Litig.*, 132 F.R.D. 538, 544-45 (N.D. Cal. 1990) (Walker., J.) (referring to injunctive relief "expert valued at some fictitious figure" coupled with "arrangements to pay plaintiffs' lawyers their fees" to be the "classic manifestation" of the class-action agency problem); *In re LivingSocial Mktg. & Sales Practices Litig.*, MDL No. 2254, 2013 WL 1181489, 2013 U.S. Dist. LEXIS 40059, at *47 n.16 (D.D.C. Mar. 22, 2013) (repudiating a $54 million valuation of injunctive relief as "of marginal value" and noting that "the Court is unable to assess the reliability of the report."). "Precisely because the value of injunctive relief is difficult to quantify, its value is also easily manipulable by overreaching lawyers seeking to increase the value assigned to a common fund." *Staton v. Boeing*, 327 F.3d 938, 974 (9th Cir. 2003).

On its face, the injunctive relief here appears to amount to an injunction to comply with the law, which courts have described as "meaningless" and "valueless." *McClintic v. Lithia Motors, Inc.*, No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846, at *12 (W.D. Wash. Jan. 12, 2012); *see also Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 544-45 (S.D. Ohio 2000) ("[A] defendant's promise to do that which the law already requires is not a valuable benefit."); *Reich v. Walter W. King Plumbing & Heating Contractor, Inc.*, 98 F.3d 147, 151 (4th Cir. 1996) (defendant was the "prevailing party" under a settlement that merely obligated it to do that which the law already required). To the extent that the forward looking consent agreement of use is of value to anyone, it is to Lexis in order that they may forestall future lawsuits. *See infra* § IV.B. *See also Galloway v. Kan. City Landsmen*, No. 4:11-1020-CV-W-DGK, 2012 U.S. Dist. LEXIS 147148, at *18 (W.D. Mo. Oct. 12, 2012) (If defendant doesn't comply with the law "a new lawsuit could be filed and the plaintiff could easily prove a

willful violation.").

The injunctive relief simply does not justify $5.5 million in attorneys fees. *Bluetooth*'s first warning sign is apparent.

*Bluetooth*'s second and third indicia of an unfair settlement—the presence of a "clear-sailing" agreement (whereby defendant consents not to challenge the award of fees to plaintiffs' counsel) and a "kicker" (whereby any excess fees reduction by the court reverts back to the defendant rather than to the class)—are also present here. Not only did the plaintiffs negotiate for "clear sailing" in this case, they negotiated for the defendants' affirmative "agree[ment] to support the application." Settlement § 4.4.1. Affirmative support far exceeds even the silent "red-carpet treatment on fees" afforded under a clear sailing agreement. *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991). It is inappropriate because it indicates that the class attorneys have negotiated a provision to protect their fee award at the expense of potential class benefits.[17] This provision "by its very nature deprives the court of the advantages of the adversary process" and "suggests, strongly" that its associated fee request should go "under the microscope of judicial scrutiny." *Id.* at 525. At a minimum, these two clauses are a warning sign of a self-serving settlement that merits justification: why was this negotiated in such a manner to make the class worse off? *In re Bluetooth, supra.*

---

[17] Although class benefits and fees may have been negotiated separately, that does nothing to allay any conflict unless "fee negotiations [are] postponed until the settlement has been judicially approved." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Litig.*, 418 F.3d 277, 308 (3d Cir. 2005). Moreover, clear sailing undermines any benefits of separate negotiation. *Sobel v. Hertz*, No. 3:06-cv-00545, 2011 U.S. Dist. LEXIS 68984, at *45 (D. Nev. Jun. 27, 2011).

Apart from the attorneys' fees award, the settlement assures each of the seven named

plaintiffs an unchallenged application for an incentive award of $5,000. Settlement § 5.6.

"The fact that one class member receives $2,000 and the other 200,000+ nothing is quite

enough to demonstrate that the terms should not [be] approved under Rule 23(e)" *Crawford*,

201 F.3d at 882. This is because there is no "overlap" between the deals obtained by the

named representatives and the unnamed class members. *Pampers*, 2013 WL 3957060, at *7.

Rather the payment to named plaintiffs makes them alone more than whole and "provide[s]

a *disincentive* for the class members to care about the adequacy of relief afforded unnamed

class members." *Id* at *8.

In an FCRA case, the Seventh Circuit referred to this as "leverage[ing]" "the class

device…for one person's benefit"). *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th

Cir. 2006). In *Murray*, the incentive payment "of $3,000…[was] three times the statutory

maximum, while others don't get even the $100 that the Act specifies as the minimum." *Id.*

"Such a settlement is untenable." *Id. Accord Shelton*, 582 F.2d at 1305-06 (warning against use

of class actions for the "personal aggrandizement" of the class fiduciaries). Given the $5,000

for each representative, $5.5 million for the attorneys, and $0 for 200,000,000+ absent class

members, this settlement is even more unsupportable.

"The premise of a class action is litigation by representative parties adjudicates the

rights of all class members, so basic due process requires that named plaintiffs possess

undivided loyalties to absent class members." *Broussard*, 155 F.3d at 338. Just a few months

ago, in another FCRA case, the Ninth Circuit again disavowed these types of

disproportionate incentive awards. *See Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th

Cir. 2013). The Ninth Circuit determined that incentive awards conditioned upon endorsement of the settlement proposed were impermissible. But more than that, "the significant disparity between the incentive awards and the payments to the rest of the class members further exacerbated the conflict of interest caused by the conditional incentive awards." *Id.* at 1165. "There is a serious question whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 incentive awards." *Id.* As the disparity here is starker—$5,000 per representative, $0 per class member—the question becomes proportionally more serious. In such situations there is a well-founded fear that named representatives will be "more concerned with maximizing [their own gain] than with judging the adequacy of the settlement as it applies to class members at large." *Id.* (quoting *Staton,* 327 F.3d at 977).[18]

Here, we have a settlement where the class representatives will each get $5,000, the attorneys will get $5.5 million, but the class gets nothing aside from a prospective compromise agreement with the defendants. The main beneficiaries of this settlement are the attorneys; combined with the questionable clear-sailing and "kicker" provisions of the settlement with the questionable relief, *In re Bluetooth, supra,* there is a tremendous question of Rule 23(a)(4) adequacy: were the class representatives and counsel in this case acting in the best interests of the class, or in the best interests of class counsel? *See Pampers, supra.* If the latter, then the plaintiffs cannot satisfy the 23(a)(4) and (g)(4) adequacy inquiries. *See Creative*

---

[18] *Staton* had also repudiated disproportionate incentive awards.

*Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011) (counsel must

show the district court that "they would prosecute the case in the interest of the class . . .

rather than just in their interests as lawyers who if successful will obtain a share of any

judgment or settlement as compensation for their efforts."). The class must be decertified if

there is anything less than "undivided loyalties." *Broussard*, 155 F.3d at 338.

**B.     The settlement includes an impermissible waiver of claims that accrue after the effective date.**

Not only is there an absent of evidence that the injunctive relief benefits class

members, the release of future claims effectively puts class members in a worse place than

non-class members. The settlement purports to bind (b)(2) class members to a prospective

release of FCRA liability *after* the effective date (when the time for appealing final approval

has expired) until the Sunset date (June 30, 2020). *See* Settlement § 4.5.4 (effectuating a

release from FCRA liability for both "collect once, use twice" data acquisition practices and

other "Post Settlement Products.")

"The presence of a future-conduct release is, at the very least, a major warning sign

that this is not a run-of-the-mill settlement. Courts should, nay must, look on future conduct

settlements with more than their usual skepticism." James Grimmelmann, *Future Conduct and

the Limits of Class Action Settlements*, 91 N.C. L. REV. 387, 430 (2013).

Courts do not permit settlement releases to extend beyond the "factual predicate" of

the complaint. *See, e.g., Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010). Because the

settling parties are attempting to waive liability for acts that have not yet occurred, those acts

by definition cannot share a factual predicate with the acts alleged in the complaint. *See*

Grimmelmann, 91 N.C. L. REV. at 443-44 (discussing the relationship between future conduct releases and the "identical factual predicate" jurisprudence). When the parties agreed-upon release exceed its permissible scope, both the defendants and class counsel get a benefit at the expense of absent class members. An expanded release makes the terms more valuable to the defendant while simultaneously inducing the defendants to grant an even more sizable award of fees to class counsel. As such, the terms of the release need to be closely policed.

Allowing the defendants to insulate their future conduct with respect to post-settlement products and services—which haven't even been developed yet—cannot be permitted. Class counsel and the named representatives are not authorized to trade these claims away. *See e.g. Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 577 (E.D. Pa. 2001) ("The release is also too broad because it bar later claims based on future conduct."); Newberg on Class Actions (4th ed. 2002) § 12:15 ("As a matter of settlement strategy, the defendants may negotiate a release of all claims *up to the date of settlement*, though this date naturally falls after the date the complaint was filed.") (emphasis added). *Cf. also In re Am. Express Fin. Advisors Secs. Litig.*, 672 F.3d 113, 138 (2d Cir. 2011) ("[T]here can be no question that the [class members'] claims, to the extent that they involve conduct occurring after the Class Period, cannot be Released Claims."); *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 313 (5th Cir. 2007) ("[A] release does not ordinarily preclude claims based on subsequent conduct."). "[F]uture-conduct releases are a monstrous hybrid between private and public planning, the worst of both worlds. They impose on people who have never heard of or consented to them—but they are negotiated by self-interested private

parties rater than elected representatives. Courts are planners of last resort: their job is to sort out the consequences of past plans gone awry, not to make new plans." Grimmelmann, 91 N.C. L. REV. AT 473 (internal quotation omitted).

And again, this isn't the first time class counsel has attempted to broker such a prospective arrangement for an FCRA class defendant. In *Domonoske*, class counsel and Bank of America entered into an injunctive settlement with respect to the bank's data collection practices. They urged the court to approve a settlement that effectively waived FCRA liability for future conduct: "to the extent that Bank of America engages in conduct in conformity with this Order, such conduct shall be deemed to be in compliance with the FCRA, and Bank of America shall not be subject to further liability for such conduct." 705 F. Supp. 2d 515, 517. Neither the magistrate judge, nor the district judge acquiesced, with the district court noting "from a due process perspective, the provision would not be worth the paper it would be written on and cannot bear the court's imprimatur." *Id.* at 518-19.

Although the prospective release here doesn't appear as boundless as the release in *Domonoske*, the fact that it shelters conduct that arises only after the effective date is enough to render it impermissible.

## C.   Due process requires individual notice of settlement when class members are identifiable through the defendants' records.

The principle of disclosure through notice has been referred to as the "first and perhaps most important principle for class action governance." Alexandra Lahav, *Fundamental Principles for Class Action Governance*, 37 IND. L. REV. 65, 118 (2003). Lexis maintains contact information for every class member; after all, that information is what this

entire case is about. Yet unlike (b)(3) class members, (b)(2) class members are not afforded direct notice of settlement. Instead, the class is limited to publication notice. Settlement § 4.2.1.

The settling parties stress the erroneous idea that because this is a 23(b)(2) class, members are not entitled to individual notice. MPA at 39-40. While the "best notice practicable" is not statutorily required under 23(e)(1), notice of settlement is still subject to the constitutional constraints elucidated in *Mullane*. The *Mullane* constitutional imperative is that the settlement notice be "reasonably calculated, under all the circumstances, to appraise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).[19] And as *Mullane* held, "[w]here the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." *Id.* at 318.

As chronicled above, we deal here not with the mere certification of an ordinary (b)(2) class, but a (b)(2) settlement class that is alleging and waiving significant individual monetary claims. *See supra* §§ II.B(1)-(4). In this situation an attempted "certification of a class under (b)(2) does not excuse the due process requirement that unnamed class members in a class action predominantly for money damages receive the "best practicable" notice. *Hecht*, 691 F.3d 218, 225 (citing *Shutts*, 472 U.S. at 812). Judge Easterbrook agrees: "[C]lass

---

[19] *See also* Newberg on Class Actions §8:18 (4th ed. 2002) ("The court's formulation of an adequate notice procedure under Rule 23(e) is limited only by constitutional due process considerations.").

members ordinarily are entitled to person notice and an opportunity to opt out of representative actions for money damages—which the Crawford case is, even though most of the money went to Crawford's lawyer." *Crawford*, 201 F.3d at 881.

But the rule of individual notice doesn't depend on monetary relief predominating over injunctive relief. *Wal-Mart*, 131 S. Ct. at 2559 ("We fail to see why [Rule 23] should be read to nullify these protections [of notice and opt-out] whenever a plaintiff class combines its monetary claims with a request—even a predominating request—for an injunction."). "A cause of action for damages is a property right, and thus cannot be taken without due process." *In re Real Estate Title & Settlement Servs. Antitrust Litig.*, 869 F.2d 760, 768 (3d Cir. 1989) (Becker, J.) (holding that notice and opt-out protections are necessary in a (b)(2) suit that released damage claims). In other words, at the very least whenever any monetary claims are released as part of a (b)(2) class, the stringent due process standards of *Mullane* and *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)[20] apply.

Even if this were a proper purely injunctive (b)(2) settlement, there is sound support for the idea that full due process notice rights apply. *Shutts* left the question unanswered. 472 U.S. at 811-12 n.3. But at least the Third Circuit believes that "*Ortiz* seems to imply (although it specifically declined to rule) that the level of notice for a [mandatory settlement] is the same as is required in a Rule 23(b)(3) [opt-out] action: the best notice practicable." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 327 n.11 (3d Cir. 2001); *see also Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983) (requiring that (b)(2) settlement class members

---

[20] *Eisen* held that "publication notice could not satisfy due process where the names and address of the beneficiaries were known" regardless of the costs of notification.

"receive the 'best notice practical under the circumstances, including individual notice to all members who can be identified through reasonable effort.'") (quoting *Mullane*). And that makes perfect sense because otherwise class members' right of objection is meaningless. *Mullane*, 339 U.S. at 314 ("[T]his right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest."). Notice serves purposes beyond just enabling the right of opt-out.

Once it is established that the full rigors of due process notice apply, there can be no dispute that the publication only notice here is unacceptable when the contact information is housed within the defendants' records. *See, e.g., Larson v. AT&T Mobility LLC*, 687 F.3d 109, 122-31 (3d Cir. 2012) (reversing notice plan that did not require defendants to search through their record for the purpose of providing individual notice). "Plaintiffs' pocketbooks are not a factor—the mandatory notice requirement may not be relaxed based on the high cost of providing notice." *In re Motor Fuel Temperature Sales Practices Litig.*, 279 F.R.D. 598, 617 (D. Kan. 2012) (citing *Amchem* and *Eisen*) "To comply with the spirit of [Rule 23 notice provisions], it is necessary that the notice be given in a form and manner that does not systematically leave an identifiable group without notice." *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 835 (9th Cir. 1976).

Personal notice is all the more necessary here given that "very few Class Members— and almost none who are unrepresented by counsel—will ever know that they have been subject to an Accurint report." Complaint at 15. If they don't know they are subject to an Accurint report, they also can't know that they are class members. For the settling parties,

meager notice means less resistance, and even more importantly, less cost to settlement. But for class members, it means an abridgment of statutory and constitutional rights.

This Court should consider the wisdom of the Western District of New York in a recent decision. "If plaintiffs and their attorneys are acting like they have something to hide from the absent class members, perhaps it's because they do." *Felix v. Northstar Location Servs.*, 11-CV-00166 (JJM), 2013 U.S. Dist. LEXIS 74717, at *31 (W.D.N.Y. May 28, 2013).

## CONCLUSION

The foregoing objection is one of the longest that the Center for Class Action Fairness has ever filed, for which there is good reason. Simply put, the settlement as proposed is riddled with defects. It presupposes a certification that, consistent with Rule 23 and the Constitution, must not be granted. The form of the class notice is remarkably deficient. The settlement itself offers virtually nothing to the class while class representatives and class counsel will be paid $5.5 million dollars. Lexis, as well, must be elated with the broad and prospective release it has obtained, one which imposes on absent class members the virtually unprecedented non-consensual waiver of the ability to use class action mechanisms. This is a rare kind of settlement in which absent class members would be unequivocally better off were they not class members at all. Approval would be a miscarriage of justice.

Dated:  August 13, 2013

Respectfully submitted,

_Adam E. Schulman (DC Bar No. 1001606)_
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (610) 457-0856
Email: shuyande24@gmail.com

*Pro se*

## CERTIFICATE OF SERVICE

I certify that pursuant to the preliminary approval of the settlement I have sent via first class mail a copy of the objection to the following address:

LexisNexis Settlement Objections
P.O. Box 2983
Faribault, MN 55021-2983

In addition, I caused to be sent also through first-class mail, a copy of the objection to the Clerk of Court at the following address:

Clerk of Court
U.S. District Court for the Eastern District of Virginia
701 East Broad Street
Richmond, VA 23219

And a courtesy copy to the Court at the following address:

Honorable James R. Spencer
U.S. District Court for the Eastern District of Virginia
701 East Broad Street
Richmond, VA 23219

And a courtesy copy to the following email addresses for the counsel of record for plaintiffs and defendant:
lenbennett@cox.net
dale@pittmanlawoffice.com
jfrancis@consumerlawfirm.com
mac@caddellchapman.com
david.anthony@troutmansanders.com
jmccabe@mofo.com
rraether@ficlaw.com

I declare under penalty of perjury that the foregoing is true and correct.

_____
Adam E. Schulman

Dated: August 13, 2013