**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| GREGORY THOMAS BERRY, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 3:11-cv-754 |
| | ) | |
| v. | ) | Judge James R. Spencer |
| | ) | |
| LEXISNEXIS RISK & INFORMATION | ) | |
| ANALYTICS GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OBJECTIONS TO PROPOSED RULE 23(b)(2) SETTLEMENT
BY MEGAN CHRISTINA AARON, *et al.***

**(Together with supporting exhibits, including Exhibit A: Objectors, the unredacted version
of which is filed under seal pursuant to Fed. R. Civ. P. 5.2 and Local Civil Rule 7(c))**

Samuel Issacharoff
40 Washington Square South, 411J
New York, NY 10012
(212) 998-6580 (phone)
(212) 995-4590 (fax)
samuel.issacharoff@nyu.edu

Charles B. Molster, III
Va. Bar No. 23613
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 20006
(202) 282-5000 (phone)
(202) 282-5100 (fax)
cmolster@winston.com

Ryan Thompson
WATTS GUERRA LLP
5250 Prue Road, Suite 525
San Antonio, Texas 78240
(210) 448-0500 (phone)
(210) 448-0501 (fax)
rthompson@wattsguerra.com

Kimball R. Anderson
William P. Ferranti
Karl A. Leonard
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600 (phone)
(312) 558-5700 (fax)
bferranti@winston.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION AND STATEMENT OF OBJECTIONS ......................................................1

STATEMENT WITH RESPECT TO OBJECTORS AND
    APPEARANCE AT FAIRNESS HEARING ....................................................5

BACKGROUND .............................................................................................5

OBJECTIONS...............................................................................................10

I.    Certification Under Rule 23(b)(2) Is Improper..............................................10

    A.    Rule 23(b)(2) may not be used where monetary relief is sought—and
        certainly not where such relief is more than incidental. .......................................10

    B.    Here, the principal (indeed, the *only*) relief available under the FCRA or
        sought in the Complaint is monetary relief.............................................................13

    C.    As a matter of due process, claims for monetary relief may not be
        extinguished without notice and an opportunity to opt out...................................17

II.    Even If The Proposed Class Could Be Certified Under Rule 23(b)(2) (Which It
    Cannot), The Proposed Settlement Is Not "Fair, Reasonable, And Adequate," As
    Required By Rule 23(e)(2)..........................................................................19

    A.    The settlement is not fair, reasonable, or adequate. ...............................................20

        1.    Defendants would receive essentially complete peace.............................20

        2.    Class Counsel receive all the cash and no one has a fair chance to
            object to their fee request. ......................................................20

        3.    Named Plaintiffs get paid via the (b)(3) settlement, which is
            contingent on approval of the (b)(2) settlement. ......................................21

        4.    Absent class members lose any meaningful chance to receive any
            monetary redress in return for Defendants' promise to stop
            violating the law. .....................................................................22

    B.    The inadequacy of the (b)(2) settlement is confirmed by the (b)(3)
        settlement—which resolves materially identical claims on *much* more
        favorable terms......................................................................................26

III.    The Absent Class Members Are Not Adequately Represented. ..........................................28

    A.    Multiple intra-class conflicts preclude certification and settlement in gross.........29

    B.    The Settlement Agreement creates disincentives that prevent class representatives from adequately representing absent class members. ..................31

    C.    Class Counsel is inadequate. ...............................................................................32

        1.    Class Counsel's conduct in this case demonstrates inadequacy. ..............33

        2.    Class Counsel's conduct in prior cases demonstrates inadequacy. ..........33

        3.    Class Counsel have objected to materially identical provisions in other settlements. ....................................................................................35

IV.    Half The Class Does Not Even Arguably Have A Claim And This Court May Not Issue An Advisory Opinion On Harms That Have Not Occurred. ...................................37

    A.    This Court cannot certify the Rule 23(b)(2) class and approve releases from class members who have suffered no injury. ................................................38

    B.    This Court may not issue advisory opinions regarding the new "Contact and Locate" report or future uses of "Collect Once, Use Twice" data acquisition practices. ..............................................................................................39

CONCLUSION ....................................................................................................................41

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acosta v. Trans Union, LLC,*
    243 F.R.D. 377 (C.D. Cal. 2007) ................................................................... passim

*Adams v. LexisNexis Risk & Info. Analytics Group, Inc.,*
    No. 08-4708, 2010 WL 1931135 (D.N.J. May 12, 2010) ............................... passim

*Aetna Life Ins. Co. v. Haworth,*
    300 U.S. 227 (1937) ........................................................................................... 40

*Allison v. Citgo Petroleum Corp.,*
    151 F.3d 402 (5th Cir. 1998) ............................................................................. 12

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ........................................................................... 11, 28, 29, 41

*Angelastro v. Prudential-Bache Sec., Inc.,*
    113 F.R.D. 579 (D.N.J. 1986) ............................................................................ 16

*Beaudry v. TeleCheck Servs., Inc.,*
    579 F.3d 702 (6th Cir. 2009) ............................................................................. 39

*Bolin v. Sears, Roebuck & Co.,*
    231 F.3d 970 (5th Cir. 2000) ........................................................................... 2, 14

*Broussard v. Meineke Discount Muffler Shops, Inc.,*
    155 F.3d 331 (4th Cir. 1998) ......................................................................... 28, 29

*Brown v. Ticor Title Ins. Co.,*
    982 F.2d 386 (9th Cir. 1992) ............................................................... 2, 17, 18, 19

*Bumgardner v. Lite Cellular, Inc.,*
    996 F. Supp. 525 (E.D. Va. 1998) ..................................................................... 14

*Calderon v. Ashmus,*
    523 U.S. 740 (1998) ........................................................................................... 41

*Chafin v. Chafin,*
    133 S. Ct. 1017 (2013) ....................................................................................... 39

*Clapper v. Amnesty Int'l USA,*
    133 S. Ct. 1138 (2013) ................................................................................... 37, 39

*Coffman v. Breeze Corp.,*
    323 U.S. 316 (1945) ....................................................................................... 40, 41

*Crawford v. Equifax Payment Servs., Inc.*,
    201 F.3d 877 (7th Cir. 2000) ...................................................................................... passim

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)................................................................................................37

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) ..................................................................................32

*Dewey v. Volkswagen Aktiengesellschaft*,
    681 F.3d 170 (3d Cir. 2012)....................................................................................30

*Domonoske v. Bank of America, N.A.*,
    705 F. Supp. 2d 515 (W.D. Va. 2010) ....................................................................22

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)................................................................................................14

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ..................................................................................13

*Felix v. Northstar Location Servs., LLC*,
    290 F.R.D. 397 (W.D.N.Y. May 28, 2013) .......................................................25, 30

*Fisher v. Virginia Elec. & Power Co.*,
    217 F.R.D. 201 (E.D. Va. 2003) .............................................................................11

*Gasner v. Bd. of Sup'rs of the Cty of Dinwiddie, Va.*,
    103 F.3d 351 (4th Cir. 1996) ..................................................................................39

*Hansberry v. Lee*,
    311 U.S. 32 (1940)..................................................................................................14

*Hecht v. United Collection Bureau, Inc.*,
    691 F.3d 218 (2d Cir. 2012)..............................................................................15, 18

*Hinton v. Trans Union, LLC*,
    654 F. Supp. 2d 440 (E.D. Va. 2009) .....................................................................38

*Hintz v. Experian Info. Solutions, Inc.*
    No. 10-CV-535, 2010 WL 4025061 (E.D. Va. Oct. 13, 2010)................................14

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .............................................................................11, 21

*In re Dry Max Pampers Litig.*,
    No. 11-4156, 2013 WL 3957060 (6th Cir. Aug. 2, 2013) ............................... passim

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) ............................................................21

*In re Pet Food Prods. Liab. Litig.*,
629 F.3d 333 (3d Cir. 2010)...............................................................25

*Jefferson v. Ingersoll Int'l Inc.*,
195 F.3d 894 (7th Cir. 1999) .............................................................12

*Johnson v. General Motors Corp.*,
598 F.2d 432 (5th Cir. 1979) .............................................................18

*Katz v. Pershing, LLC*,
672 F.3d 64 (1st Cir. 2012)................................................................39

*Lewis v. Cont'l Bank Corp.*,
494 U.S. 472 (1990)...........................................................................39

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...........................................................................38

*Lukenas v. Bryce's Mountain Resort, Inc.*,
538 F.2d 594 (4th Cir. 1976) .............................................................15

*Mirfasihi v. Fleet Mortg. Corp.*,
356 F.3d 781 (7th Cir. 2004) .........................................................25, 6

*Mulder v. PCS Health Sys., Inc.*,
216 F.R.D. 307 (D.N.J. 2003)............................................................15

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950)...........................................................................14

*Murray v. Auslander*,
244 F.3d 807 (11th Cir. 2001) ...........................................................12

*Murray v. GMAC Mortgage Corp.*,
434 F.3d 948 (7th Cir. 2006) ..............................................22, 23, 31

*Newsome v. Up-To-Date Laundry, Inc.*,
219 F.R.D. 356 (D. Md. 2004)...........................................................19

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999)......................................................................29, 30

*Papadakis v. Northwestern Mut. Life Ins. Co.*,
No. B214789 (Cal. App. Ct. 2009) ....................................................37

*Payton v. Cty of Kane*,
   No. 99-C-8514, 2005 WL 1500884 (N.D. Ill. June 10, 2005)................................................19

*Petrolito v. Arrow Fin. Svcs., LLC*,
   221 F.R.D. 303 (D. Conn. 2004).......................................................................................16

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)...............................................................................2, 12, 14, 17

*Radcliffe v. Experian Info. Solutions Inc.*,
   715 F.3d 1157 (9th Cir. 2013) ............................................................................... passim

*Reeb v. Ohio Dep't of Rehab. & Corr.*,
   435 F.3d 639 (6th Cir. 2006) ............................................................................................12

*Reynolds Beneficial Nat. Bank*,
   288 F.3d 277 (7th Cir. 2002) ...........................................................................................21

*Richards v. Delta Air Lines, Inc.*,
   453 F.3d 525 (D.C. Cir. 2006) ........................................................................................15

*Richards v. Jefferson Cty*,
   517 U.S. 793 (1996)........................................................................................................14

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007)..........................................................................................................39

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
   445 F.3d 311 (4th Cir. 2006) .............................................................................2, 12, 13, 16

*Ticor Title Ins. Co. v. Brown*,
   511 U.S. 117 (1994)........................................................................................................12

*Tiro v. Public House Investments, LLC*,
   No. 11-7679, 2013 WL 2254551 (S.D.N.Y. May 22, 2013) ...................................................10

*Uhl v. Thoroughbred Tech. & Telecomm., Inc.*,
   309 F.3d 978 (7th Cir. 2002) ...........................................................................................11

*Vassale v. Midland Funding LLC*,
   708 F.3d 747 (6th Cir. 2013) .....................................................................................32, 33

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)............................................................................................ passim

*Wantz v. Experian Info. Solutions*,
   386 F.3d 829 (7th Cir. 2004) ...........................................................................................39

*Ward v. Dixie Nat'l Life Ins. Co.*,
    595 F.3d 164 (4th Cir. 2010) ...................................................................................28

*Washington v. CSC Credit Servs. Inc.*,
    199 F.3d 263 (5th Cir. 2000) ....................................................................2, 14, 38

## STATUTES

Cal. Civ. Code § 1542 ...................................................................................................9

Fair Credit Reporting Act ................................................................................... passim

Fair Debt Collection Practices Act ...........................................................2, 14, 23, 24

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(a) .............................................................................5, 10, 28, 29, 32

Fed. R. Civ. P. 23(b)(2)........................................................................................ passim

Fed. R. Civ. P. 23(b)(3).................................................................................6, 12, 13, 16

Fed. R. Civ. P. 23(c) ............................................................................................19, 29, 36

Fed. R. Civ. P. 23(e) ........................................................................................11, 19, 22, 32

Fed. R. Civ. P. 23(g) ..........................................................................................28, 32, 33

Fed. R. Civ. P. 23(h) ................................................................................................21

Fed. R. Civ. P. 82 .....................................................................................................41

David F. Herr, *Annotated Manual for Complex Litig.*, § 21.6 (4th ed. 2013) ..............10

Adam Liptak, "When Lawyers Cut Their Clients Out of the Deal," *New York Times* A12
    (Aug. 12, 2013).....................................................................................................4

Managing Class Action Litigation: A Pocket Guide for Judges...................................25

## INTRODUCTION AND STATEMENT OF OBJECTIONS

The Court neither can nor should give final approval to the proposed Rule 23(b)(2) settlement, the terms of which are unfair and inappropriate.  On behalf of the 20,206 absent class members listed in Exhibit A (the "Aaron Objectors"), we object.

The centerpiece of the (b)(2) settlement proposed by Class Counsel, Named Plaintiffs, and Defendants (the "Parties") is a release requiring essentially every adult in America to waive: (1) statutory money damages and punitive damages claims for Defendants' sale of consumer reports in violation of the Fair Credit Reporting Act (the "FCRA"); (2) the right to assert actual damages claims for such conduct via a class or mass action (which is tantamount to a waiver of the claims themselves, given the relatively small size and high difficulty of proving such damages); (3) all claims under state law equivalents to the FCRA; and (4) any future claims against Defendants for their new "contact and locate" report and use of "collect once, use twice" data-acquisition practices.  And all of this, without individual notice or an option to opt out.  In return for being freed from literally ***tens of billions of dollars*** in potential FCRA liability, not to mention immunizing their business from suit for the foreseeable future, Defendants offer two things: they will stop selling Accurint reports in violation of the law and they will pay up to $5.5 million to Class Counsel.  Absent class members will receive $0.

This is unacceptable.  Indeed, to appreciate the value of the claims released by the (b)(2) settlement, the Court need look no further than the (b)(3) companion settlement:  The (b)(3) settlement will pay each class member ***$435*** (before attorneys' fees) to resolve claims that Defendants willfully violated the FCRA by ignoring consumers who requested a copy of, or a change to, their Accurint report (the so-called "File Request" and "Dispute" claims).  The (b)(2) settlement will pay each class member ***$0*** to resolve claims that Defendants willfully violated the FCRA by selling Accurint reports to third-parties (the "Impermissible Use" claim).  ***But all three claims***

***turn on the same, single issue***:  Whether the Accurint report is a "consumer report."  If it is, Defendants are no less liable to the Impermissible Use claimants than to the File Request and Dispute claimants.  The Parties have not even tried to justify this wildly disparate treatment of claims that are equally strong.[1]

And even if the settlement could be approved (which it cannot), the proposed (b)(2) class should not be certified.  As a matter of law, it is doubtful that Rule 23(b)(2) may *ever* be used to resolve (or, here, completely waive) claims for monetary relief—and, *at a minimum*, Rule 23(b)(2) may not be so used unless such monetary claims are merely incidental to a claim for injunctive relief.  *Wal-Mart Stores, Inc. v. Dukes*,131 S. Ct. 2541, 2557 (2011); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 331-32 (4th Cir. 2006); *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992).

In seeking preliminary approval, the Parties told the Court that this "merely 'incidental'" standard is met—but it is not.  The Parties failed to advise the Court that ***the FCRA does not provide for injunctive relief at all***.  Rather, the FCRA provides for—and the Complaint seeks—monetary relief *only*.  Even setting aside the unreasonableness of trading such monetary relief for the proposed injunctive relief, the nature of the ***claims*** is such that the Rule 23(b)(2) standard is not and cannot be met as a matter of law.  *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 270 (5th Cir. 2000) (because private consumers may not obtain injunctive relief under the FCRA, "the consumers cannot maintain a class action under Rule 23(b)(2)"); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000) (same, the FDCPA); *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 977 n.39 (5th Cir. 2000) ("Of course, the unavailability of injunctive relief under a statute would automatically make (b)(2) certification an abuse of discretion.").

---

[1] It is no answer that the (b)(2) class members receive injunctive relief, because all (b)(3) class members are also in the (b)(2) class, and the injunction is addressed to all three claims.  *Infra* at 27.

The unfairness of the settlement is not surprising because absent class members are inadequately represented.  *First*, multiple intra-class conflicts preclude certification and settlement of this proposed class.  In seeking preliminary approval, the Parties advised the Court that they were unaware of any "actual or apparent conflicts" within the classes.  But the (b)(2) class includes not only those with a current claim (the 100 million individuals whose reports have been sold) but also those who have only a potential future claim (another 100 million individuals in Defendants' database but whose reports were not sold).  In other words, **half of the class has at least one claim under the FCRA and the other half does not**, yet the settlement treats both exactly the same.  Including both groups in the same class—represented by the same counsel and same named plaintiffs—is a bold and unfathomable error.

Moreover, the (b)(2) class includes individuals whose reports were sold both before and after another federal court denied Defendants' motion for judgment on the pleadings, rejecting Defendants' arguments against willfulness and for treating Accurint reports as something other than a "consumer report" governed by the FCRA.  *See Adams v. LexisNexis Risk & Info. Analytics Group, Inc.*, No. 08-4708, 2010 WL 1931135 (D.N.J. May 12, 2010) (Bumb, J.).  Again, the proposed settlement treats both groups the same, even though the post-*Adams* group is, plainly, in a better position to establish Defendants' willfulness—as the Complaint itself reflects in seeking a separate "Post-*Adams* Sub-class."  The Parties' motion for preliminary relief failed to advise the Court of either of these conflicts.

*Second*, the class representatives are conflicted and inadequate.  Each of the Named Plaintiffs is in the (b)(3) class, which means that they—unlike the 200 million people they ostensibly represent in the (b)(2) class—will receive a cash payment.  And exacerbating the conflict, each Named Plaintiff stands to receive a "service award" of up to $5,000.  That is, in return for

waiving the damages claim for the 200 million people who get $0, these Named Plaintiffs may receive as much as ***five times*** the maximum statutory damages per FCRA violation, on top of their $435 payment as (b)(3) class members.  Although the Parties put these cash payments under the (b)(3) settlement, that makes no difference because the two settlements are a package deal: Defendants have the right to terminate the Settlement Agreement if, among other things, ***either*** settlement fails to receive approval (or is not upheld on appeal).  In other words, Named Plaintiffs (and Class Counsel) will get paid only if both settlements are finally approved.

This creates a fatal conflict between Named Plaintiffs and absent (b)(2) class members—which Class Counsel Caddell in particular should have known and reported to the Court.  *See Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1167 (9th Cir. 2013) (reversing approval of settlement for which Mr. Caddell acted as class counsel because "conditional-incentive-awards" of $5,000 "divorced the interests of the class representatives from those of the absent class members" who would receive $150-750); *id.* at 1169 (Haddon, J., concurring) (criticizing class counsel's "actions in orchestrating and advocating the disparate incentive award scenario without any concern for, or even recognition of, the obvious conflicts presented").

*Third*, Class Counsel is inadequate for having negotiated and submitted for approval this unfair and inappropriate settlement.  Indeed, several Class Counsel have objected to materially identical provisions in other settlements—and this case continues a pattern of problematic representations by Class Counsel who have proven too willing to sell the claims of absent class members cheap.  *See also* Dkt. No. 71 at 13-14 (highlighting problems revealed by Class Counsel Bennett's past representations).  This is the kind of arrangement—where everyone profits on the backs of absent class members—that brings criticism upon the class action bar.  *See* Adam Liptak, "When Lawyers Cut Their Clients Out of the Deal," *New York Times* A12 (Aug. 12, 2013).

Finally, the Court may not approve releases from the (b)(2) class members whose Accurint report Defendants have not sold.  These class members have suffered no injury-in-fact, and, therefore there is no case or controversy for the Court to resolve.  In addition, the Court lacks jurisdiction to issue an advisory opinion that the new "contact and locate" report (which has not been created, much less sold) is not a consumer report or that Defendants' "collect once, use twice" data-acquisition practice is FCRA compliant as it may be used in the future, within Defendants' proposed, yet-to-be-implemented business model.

For all these reasons, final approval of the proposed settlement should be denied.

## STATEMENT WITH RESPECT TO OBJECTORS AND APPEARANCE AT FAIRNESS HEARING

As required by the Court's preliminary approval order, the Aaron Objectors provide their names, addresses, and telephone numbers in the attached Exhibit A (the publicly filed version of which is redacted consistent with the District's rules on personal information), and further state that they wish to appear at the final approval hearing through undersigned counsel.  *See also* Notice of Appearance of Counsel, filed herewith.  Counsel ask the Court to allow at least 60 minutes for them to present each of the objections summarized below (including the attached exhibits), and to rebut any points the Parties may make in defense of their settlement.  The Aaron Objectors do not plan to call any witnesses, but reserve the right to cross-examine any witnesses called by the Parties and to call rebuttal witnesses, if necessary.

## BACKGROUND

The Complaint filed in this matter asserted claims on behalf of three separate, but overlapping, "classes" of plaintiffs:  the "impermissible use" class, the "file request" class, and the "dispute" class—each of which was proposed for certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3).  *See* Dkt. 1 ("Compl.") at 13-19.  As the Complaint alleges:

> [LexisNexis] … regularly sell[s] a product called an "Accurint" report or search
> (herein "report"), which provides the buyer with substantial and detailed personal
> and credit information about an individual consumer.  LexisNexis sells these re-
> ports for, among other things, the purpose of assisting debt collectors with the col-
> lection of delinquent credit obligations.  LexisNexis furnishes these reports with-
> out any permissible purpose to do so and without the certification of a lawful pur-
> pose required by the FCRA.

*Id.* at 1.  Lexis also allegedly will not allow consumers to review or dispute information in these reports.  *Id.* at 2.  The claims of all three pleaded classes thus hinge on whether the Accurint report is a "consumer report" governed by the FCRA.  *See id.* at 2, 14, 16, 18; *see also* Dkt. 63 ("Approval Memo") at 5 ("Plaintiffs contend that Accurint® as created, packaged and sold meets the FCRA's definition of 'consumer report.'  Defendants deny that the definition is met.  This dispute is the core of this litigation.").

In a prior case challenging Lexis's decision not to comply with the FCRA in its sale of Accurint reports, Lexis sought judgment on the pleadings, but Judge Bumb of the District of New Jersey "rejected LexisNexis's argument that it could not have willfully violated the FCRA because it did not view Accurint reports as being governed by the FCRA," and further "held (1) that proof of plaintiff's allegations in that case would subject LexisNexis to liability as a [con-sumer reporting agency] under the FCRA based upon its sale of Accurint reports, and (2) that Accurint reports were consumer reports."  Compl. at 9 (describing *Adams*, 2010 WL 1931135).

The Complaint does not propose any class for certification pursuant to Rule 23(b)(2).  In-deed, neither (b)(2) nor injunctive relief is mentioned anywhere in the Complaint.

And yet, and in place of the 100-million member (b)(3) Improper Use class identified in the Complaint, the Parties have proposed and obtained preliminary approval for the following 200-million member (b)(2) class:

> All persons residing in the United States of America (including its territories and
> Puerto Rico) about whom information exists in the Accurint® database from No-
> vember 14, 2006 to April 19, 2013, the date on which the Court entered its Pre-

liminary Approval Order.[2]

*See* Dkt. 67 ("Prelim. Approval Order") at 2.  In other words, the Complaint proposed a 100-million member class of people whose Accurint report was unlawfully sold by Defendants to third-parties—but the proposed settlement would add 100 million members more, individuals in Defendants' database whose reports have *not* been sold.  The Parties do not propose subclasses, or any other kind of separate representation for these two groups, even though one of the groups has live claims for FCRA statutory damages of $100-1,000 per FCRA violation and the other group does not.

To settle the past ***and future*** statutory damages claims of this 200-million member mono-lith, the Parties propose injunctive relief and no cash payment whatsoever (except to Class Counsel and Named Plaintiffs).  The proposed injunctive relief consists of the following:

- Defendants will "overhaul" their "Accurint for Collections" product by dividing it into a "Collections Decisioning" product subject to the FCRA's requirements and a "Contact & Locate" product with respect to which Lexis will not comply with the FCRA (Settlement Agmt. ¶¶ 4.3.1);

- Defendants will display language related to the FCRA's requirements on the "Collections Decisioning" website; require customers to certify a permissible use under the FCRA; and purport to require customers to, in fact, use the information provided for FCRA-permissible uses only (*id.* ¶¶ 4.3.1.1, *et seq.*);

- For the new "Contact & Locate" product, Defendants will display information on their website explaining and purporting to limit how their customers may use that information (*id.* ¶¶ 4.3.1.2, *et seq.*);

---

[2] Excluding "[c]ounsel of record (and their respective law firms) for any of the Parties, along with the presiding judge in this action and his staff, and all members of their immediate families."  *Id.*

- Defendants will provide free "educational seminars" regarding their new products (*id*. ¶ 4.3.1.6) (that is, Defendants seem to be promising to advertise that class members' personal information is collected and available for purchase);

- Defendants will educate their own employees about their own products (*id*. ¶ 4.3.1.7); and

- Defendants will allow consumers limited access to certain information in the "Contact & Locate" product and a limited ability to provide comments on such information (*id*. ¶ 4.3.1.4, *et seq*.).

In exchange for this so-called "relief," members of the Rule 23(b)(2) class agree to:

- "[W]aive and fully, finally, and forever settle and release any known or unknown, suspected or unsuspected, contingent or non-contingent willful Non-compliance Remedies with respect to the Released Parties based on any Covered Conduct, whether or not concealed or hidden, and without regard to the subsequent discovery or existence of such other, different, or additional facts" (*id*. ¶ 4.5.1);

- Waive the right to bring claims for actual damages in any class or mass action (*id*. ¶ 4.5.2);

- Waive any challenge to Defendants' "collect once, use twice" data practices and to certain ill-defined "Post Settlement Products"[3] (*id*. ¶ 4.5.4);

- Exempt the new "Contact & Locate" product from any judicial review for

---

[3] In fact, the definition of the "Post Settlement Products" is such that class members are compelled to waive any challenge to the very product that forms the basis of this action, namely the "suite of Accurint Reports related to the Covered Conduct" as "offered" for a host of undefined and vague uses, including "customer relationship management," "direct to consumer offering," "claim investigation," "legal services," and "portfolio analysis." Settlement Agmt. ¶ 2.27.

compliance with the FCRA or its "state equivalents" (*id*. ¶ 4.3.1.2);

- Waive their rights under California Civil Code § 1542, which would otherwise prohibit the Settlement Agreement from applying to claims the class member "does not know or suspect to exist in his or her favor" (*id*. ¶ 4.5.3); and

- Compel absent class members to submit to a dispute resolution process outlined in the Settlement Agreement (*id*. ¶¶ 4.3.1.5, 8.3).

Absent class members—even those with current statutory damage claims of $100-1,000 per violation—receive $0. In marked contrast, Named Plaintiffs receive $435 each (less attorneys' fees), as well as a "service award" of up to $5,000. *Id*. ¶ 5.6. Notably, although Named Plaintiffs technically receive these cash payments through the (b)(3) settlement, ***Named Plaintiffs (and Class Counsel) will only get paid if both settlements are finally approved***. *See id*. ¶ 7 (Defendants have the right to terminate the agreement if, among other things, ***either*** the (b)(2) or (b)(3) settlement fails to receive approval or is not upheld on appeal).

In exchange for orchestrating this expansive and uncompensated waiver of 200 million unnamed class members' rights, Class Counsel will receive $5.5 million in fees. *Id*. ¶ 4.4.1. They also stand to receive up to $4.05 million through the dependent, companion (b)(3) settlement. *Id*. ¶¶ 5.5, 5.3.

For a multitude of reasons, the proposed certification and settlement of this Rule 23(b)(2) class is inappropriate and unfair. As discussed below, this class is twice as large as that proposed in the Complaint, forces unnamed class members to give up key rights in exchange for nothing meaningful, encompasses litigants with no cognizable injury, proposes injunctive relief that is unavailable by statute, and results in the issuance of an advisory opinion. Moreover, the proposed relief to be granted to this class under the Preliminary Approval Order is directly contrary

to the relevant case law regarding Rule 23(b)(2).  The proposed settlement therefore should not be given final approval.[4]

## OBJECTIONS

### I.   Certification Under Rule 23(b)(2) Is Improper.

#### A.   Rule 23(b)(2) may not be used where monetary relief is sought—and certainly not where such relief is more than incidental.

Rule 23(b)(2) provides:  "A class action may be maintained if Rule 23(a) is satisfied and if … the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

That this case is before the Court in the posture of a proposed Settlement Agreement does nothing to lessen the requirements of Rule 23.  In fact, with one exception, it *heightens* those requirements.  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.  But other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted,

---

[4] The Court's preliminary approval of the settlement does establish any presumption regarding the outcome of the Fairness Hearing.  *See, e.g., Tiro v. Public House Investments, LLC*, No. 11-7679, 2013 WL 2254551, at *1 (S.D.N.Y. May 22, 2013) ("Preliminary approval of a settlement agreement requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. …  To grant preliminary approval, the court need only find that there is probable cause to submit the [settlement] to class members and hold a full-scale hearing as to its fairness.") (internal quotation marks and citation omitted); David F. Herr, *Annotated Manual for Complex Litig.*, § 21.6 (4th ed. 2013) ("Despite the frequent use by the courts of the two-step 'preliminary approval' process … 'preliminary approval' is a flawed and potentially misleading label in that it suggests a decision that places a burden on challenges to approval that should not have to be carried….  Ultimately, the finding of 'probable cause' at the preliminary stage should not have any evidentiary value at time of the fairness hearing, and should not create a presumption that a party opposing settlement approval must meet."); *see also* Approval Memo at 34 ("at the preliminary approval stage, the Court need only find that the settlement is within 'the range of possible approval'") (citations omitted).

even heightened, attention in the settlement context." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement.  Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."); *Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 222 (E.D. Va. 2003) ("'In some ways, the Rule 23 requirements may be even more important for settlement classes, for which (as this court has put it), the district court must act almost as a fiduciary of the class when approving settlements.") (quoting *Uhl* v. *Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978, 981 (7th Cir. 2002)).

By its terms, Rule 23(b)(2) does not apply to class actions seeking monetary relief—nor, as a matter of due process, may a mandatory (no opt-out) class be certified for such claims.  In the unanimous portion of the Supreme Court's opinion in *Dukes*, the Court flagged that "[o]ne possible reading of [Rule 23(b)(2)] is that it applies *only* to requests for … injunctive or declaratory relief and does not authorize the class certification of monetary claims at all."  131 S. Ct. at 2557.  And, because "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class," the Supreme Court ultimately held that claims for monetary relief may *not* be certified under Rule 23(b)(2) "*at least* where (as here) the monetary relief is not incidental to the injunctive or declaratory relief."  *Id.* (emphasis added).

The Supreme Court identified two reasons why money-damage claims are not appropriate in the Rule 23(b)(2) context:  (1) the structure of Rule 23 itself and (2) constitutional due process.  First, the structure of Rule 23 makes clear that money-damage claims should not be certified under Rule 23(b)(2).  "[I]ndividualized monetary claims belong in Rule 23(b)(3).  The pro-

11

cedural protections attending the (b)(3) class—predominance, superiority, mandatory notice, and the right to opt out—are missing from (b)(2) not because the Rule considers them unnecessary, but because it considers them unnecessary *to a (b)(2) class*." *Id.* at 2558 (emphasis in original). Second, a Rule 23(b)(2) class is *mandatory*—and "[i]n the context of a class action predominantly for money damages … absence of notice and opt-out violates due process." *Id.* at 2559 (citing *Shutts*, 472 U.S. at 812).

Although the Supreme Court has never squarely decided whether a class action involving money-damage claims that "do not predominate" can be certified under Rule 23(b)(2), it has noted "the serious possibility" that such certification would violate the Due Process Clause. *Dukes*, 131 S. Ct. at 2559; *accord Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994) (dismissing certiorari as improvidently granted, but noting "substantial possibility" that actions seeking monetary damages may *only* be certified under Rule 23(b)(3) because that section "permits opt-out").

Before *Dukes*, five circuits—including the Fourth—followed the rule that (b)(2) certification may be proper where money-damages claims are only "incidental" to a class-wide claim for declaratory relief. *See Thorn*, 445 F.3d at 329; *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998); *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 646-51 (6th Cir. 2006); *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898-99 (7th Cir. 1999); *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001). In *Dukes*, the Supreme Court found it unnecessary to decide "whether there are any forms of 'incidental' monetary relief that are consistent with the interpretation of Rule 23(b)(2) we have announced and that comply with the Due Process Clause." *Dukes*, 131 S. Ct. at 2560.

But the Court sounded a warning:

> The mere "predominance" of a proper (b)(2) injunctive claim does nothing to justify elimination of Rule 23(b)(3)'s procedural protections: It neither es-

tablishes the superiority of *class* adjudication over *individual* adjudication nor cures the notice and opt-out problems. We fail to see why the Rule should be read to nullify these protections whenever a plaintiff class, at its option, combines its monetary claims with a request—even a "predominating request"—for an injunction.

*Id.* at 2559; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) ("Although we have previously held that in Rule 23(b)(2) cases, monetary damage requests are generally allowable only if they are merely incidental to the litigation … this standard has been called into doubt by the Supreme Court" in *Dukes*) (quotation and citation omitted).[5]

**B.     Here, the principal (indeed, the *only*) relief available under the FCRA or sought in the Complaint is monetary relief.**

Even if money-damage claims may *ever* be certified under Rule 23(b)(2) (a dubious proposition), a Rule 23(b)(2) class dealing with money damages is only allowable insofar as the monetary relief to be awarded to the class is incidental to injunctive or declaratory relief. As a matter of law, that is not the case here.

***First***, the FCRA provides ***only*** for monetary relief. It does not afford injunctive relief to individual litigants. "While the FCRA does not expressly prohibit injunctive relief, Congress's failure to include injunctive relief as a potential remedy, combined with Congress's express delegation of enforcement of the FCRA to the FTC, clearly indicates that Congress did not intend injunctive relief as a remedy." *Bumgardner v. Lite Cellular, Inc.*, 996 F. Supp. 525, 527 (E.D. Va. 1998); *see also Hintz v. Experian Info. Solutions, Inc.* No. 10-CV-535, 2010 WL 4025061, at

---

[5] In *Thorn*, the Fourth Circuit explained prior to *Dukes* that "Rule 23(b)(2) does not cover cases where the primary claim is for damages, but is only applicable where the relief sought is … predominantly injunctive or declaratory." 445 F.3d at 329 (internal quotation marks and citation omitted). Although *Thorn* added, "we do not hold, nor have we ever held, that monetary relief is fundamentally incompatible with Rule 23(b)(2)," it also said that, "in the Title VII context, awards of backpay do not predominate over the injunctive remedies available …." *Id.* at 331. This is *squarely* contrary to *Dukes* (which was a Title VII case involving class claims for injunctive relief and backpay) and shows that *Thorn* is no longer good law.

*6 (E.D. Va. Oct. 13, 2010) ("Although district courts are split as to whether the FCRA affords private litigants injunctive relief … this Court finds *Bumgardner* to be a well-reasoned analysis of the issue and agrees that injunctive relief is not available to plaintiffs under the FCRA."); *Washington*, 199 F.3d at 268 ("We hold that the affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC.").[6]

"Of course, the unavailability of injunctive relief under a statute would automatically make (b)(2) certification an abuse of discretion." *Bolin*, 231 F.3d at 977 n.39.  For that reason, courts refuse to certify Rule 23(b)(2) classes seeking relief under the FCRA. *E.g.*, *Washington*, 199 F.3d at 270 ("the consumers cannot maintain a class action under Rule 23(b)(2)"); *see also Crawford*, 201 F.3d at 882 (same, FDCPA case) ("[A]ll private actions under the Fair Debt Collection Practices Act are for damages….  Recognition that notice and an opportunity to opt out are vital to most representative actions for damages is of long standing.") (citing *Richards v. Jefferson Cty*, 517 U.S. 793, 799-802 (1996); *Shutts*, 472 U.S. at 811-12; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950); *Hansberry v. Lee*, 311 U.S. 32, 42-45 (1940)).

Surprisingly, the Parties have neither disclosed these adverse authorities nor asked the Court to adopt a different construction of the FCRA.  Instead, they moved for, and were granted, preliminary approval on the pretense that the absent class members' statutory damage claims are "merely 'incidental'."  Approval Memo at 30.  But this cannot be.  Because injunctions are not

---

[6] Indeed, Class Counsel's failure to include a count for injunctive relief establishes that either (1) they agree that the FCRA does not provide for injunctive relief, or (2) they are inadequate for failing to seek what they now say is important relief.

available to private litigants under the FCRA, class members do not have a claim for injunctive relief—period—much less a claim that "predominates" in this litigation.  Accordingly, (b)(2) certification is unavailable as a matter of law.

Put another way, there is a structural disconnect between Rule 23(b)(2) and the FCRA that renders them incompatible:  Rule 23(b)(2) is designed to provide "*injunctive relief … respecting the class as a whole*" and cannot be used in cases involving "claims for monetary relief …. at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief."  *Dukes*, 131 S. Ct. at 2557.  The FCRA, on the other hand, provides *only* for monetary relief.  Because all private actions under the FCRA are, by definition, for money damages and *not* injunctive relief, money damages simply cannot be "incidental" to the unavailable injunctive relief.  This means absent class members *must* be given notice and an opportunity to opt out.  *Id.* at 2559 ("In the context of a class action predominantly for money damages … absence of notice and opt-out violates due process.").

*Second*, courts look to the plaintiffs' complaint in order to determine whether monetary relief is the predominant form of relief sought.  *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 596 (4th Cir. 1976) ("It is a monetary judgment that the plaintiffs seek and that is obvious from the phrasing of their prayer."); *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 223 (2d Cir. 2012) ("We need only review the … complaint, Stipulation of Settlement, and Settlement Order to conclude that the claim for damages predominated over the claim for injunctive relief …."); *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530 (D.C. Cir. 2006) ("If recovery of damages is at the heart *of the complaint*, individual class members must have a chance to opt out of the class and go it alone—or not at all—without being bound by the class judgment.") (emphasis added); *Mulder v. PCS Health Sys., Inc.*, 216 F.R.D. 307, 319 (D.N.J. 2003) ("Exam-

ining the Complaint, the Court finds that the requested damages are incidental to the injunctive relief sought."); *Petrolito v. Arrow Fin. Svcs., LLC*, 221 F.R.D. 303, 315 (D. Conn. 2004) ("the complaint includes injunctive relief only as a discretionary afterthought"); *Angelastro v. Prudential-Bache Sec., Inc.*, 113 F.R.D. 579, 583 (D.N.J. 1986) ("Based on the court's review of the complaint in this matter, we cannot conclude that the relief sought is exclusively or predominantly injunctive in nature.") (internal quotation remarks omitted); *see also Thorn*, 445 F.3d at 329 ("we have held that Rule 23(b)(2) does not cover cases where the primary *claim* is for damages ….") (quotation and citation omitted) (emphasis added).

In the Complaint here, Class Counsel seek *only* money damages.  And it is axiomatic that if Class Counsel seek *only* money damages, such damages cannot be incidental or anything other than the predominant form of relief sought.  Hence a Rule 23(b)(2) class cannot be certified.

The Parties say that the class "is properly certified pursuant to Rule 23(b)(2) because the predominating interests of the class are addressed by injunctive relief and Plaintiffs' demand for statutory damages was merely a means to that end."  Approval Memo at 31.  That is neither credible nor relevant:  the 20,206 Aaron Objectors hereby advise the Court that their predominant interest is monetary relief, not injunctive relief.  As explained below, the settlement is a betrayal of the interests of absent class members.  *Infra* at 19-28.  But that aside, this "means to an end" assertion is directly at odds with *Dukes* in which the Supreme Court "fail[ed] to see why the Rule should be read to nullify [Rule 23(b)(3)'s] protections whenever a plaintiff class, at its option, combines its monetary claims with a request—even a 'predominating request'—for an injunction.  131 S. Ct. at 2559.  Moreover, because this action was brought under FCRA and the Com-

16

plaint sought only damages, the notion that Named Plaintiffs actually cared nothing for money damages and had a secret objective of securing only injunctive relief is not credible.[7]

### C.   As a matter of due process, claims for monetary relief may not be extinguished without notice and an opportunity to opt out.

Where a class settlement would extinguish individual or classwide claims for monetary relief, a right to opt out is constitutionally required.  As the Supreme Court has explained:  In order for a judgment to "bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection.  The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel.  The notice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections….  Additionally, … due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class …." *Shutts*, 472 U.S. at 811-12 (footnote and quotation omitted).

*Shutts* so held in a case involving an attempt to bind unknown plaintiffs concerning claims wholly or predominately for money judgments; it did not expressly reach class actions seeking injunctive relief.  *See id*. at 811 n.3.  The lower courts have recognized, however, that the core principles of due process recognized in *Shutts* preclude extinguishing a claim for money damages without notice and a right to opt out.

In *Brown*, for example, the Ninth Circuit applied *Shutts* to a situation involving the "foreclosure of substantial damage claims," holding that because an absent plaintiff "had no oppor-

---

[7] The alternative is even more problematic:  Class Counsel would be wholly inadequate in representing a class that "predominantly" sought injunctive relief if they brought the action under a statute that they believed offers injunctive relief but failed to include a prayer for such relief in the Complaint.

tunity to opt out" of the prior litigation, "there would be a violation of minimal due process if [his] damage claims were held barred by *res judicata.*"   982 F.2d at 392.   The absent plaintiff "will be bound by the injunctive relief provided by the settlement," the court explained, "but *res judicata* will not bar [his] claims for monetary damages." *Id.*; *see also Johnson v. General Motors Corp.*, 598 F.2d 432, 438 (5th Cir. 1979) ("Before an absent class member may be forever barred from pursuing an individual damage claim … due process requires that he receive some form of notice that the class action is pending and that his damage claims may be adjudicated as part of it."); *Hecht*, 691 F.3d at 222 ("[T]he right to notice and an opportunity to opt out under Rule 23 … applies not only when a class action is predominantly for money damages, but also when a claim for money damages is more than 'incidental.'").

*Dukes* confirms this reasoning.  There, the Supreme Court criticized a rule whereby "individual class members' compensatory-damages claims would be *precluded* by litigation they had no power to hold themselves apart from."  131 S. Ct. at 2559.  And the Supreme Court further explained that the possibility that such claims would be precluded "underscores the need for plaintiffs with individual monetary claims to decide *for themselves* whether to tie their fates to the class representatives' or go it alone—a choice Rule 23(b)(2) does not ensure that they have." *Id.*  "In the context of a class action predominantly for money damages … absence of notice and opt-out violates due process." *Id.*

Here, although the proposed settlement would "preserve [ ] the right of a Rule 23(b)(2) Settlement Class Member to file an individual lawsuit … for actual damages sustained before [but not after] the Effective Date" of the Settlement Agreement  (Settlement Agmt. ¶ 4.5.1), it would bar the use of class action or "mass action" mechanisms—the only realistic mechanisms—for obtaining such monetary relief (*id*. ¶ 4.5.2).  The settlement also would foreclose the

recovery by absent class members of statutory and punitive damages.  But the rights of absent class members to bring claims for such monetary relief may not be extinguished without notice and the right to opt out.  Even if approved by the Court, the Parties' proposal would not be binding on absent class members in any future suit.  *Brown*, 982 F.2d at 392.

Finally, "the Court has discretion to order that notice and opt-out rights be given to a (b)(2) class to ensure that judgment is final as to those class members who do not opt-out and to give class members the opportunity to appear through their own counsel or remove themselves from the action entirely."  *Newsome v. Up-To-Date Laundry, Inc.*, 219 F.R.D. 356, 364 (D. Md. 2004); *see also Payton v. Cty of Kane*, No. 99-C-8514, 2005 WL 1500884, at *3 (N.D. Ill. June 10, 2005) ("Due process and Rule 23(c)(1)(b) require that notice of a judgment must be given to a Rule 23(b)(2) class if the rights of absent class members to bring individual claims for monetary relief are to be extinguished.").  The Aaron Objectors respectfully submit that the class proposed here simply may not be certified consistent with Rule 23(b)(2) and due process.  But if the Court nonetheless determines that the Parties' proposal can be squared with the terms of that Rule, as interpreted by *Dukes*, still the strictures of due process demand (and Rule 23 provides enough discretion for the Court to so order) that absent class members, like the Aaron Objectors, be given the right to opt out.

## II. Even If The Proposed Class Could Be Certified Under Rule 23(b)(2) (Which It Cannot), The Proposed Settlement Is Not "Fair, Reasonable, And Adequate," As Required By Rule 23(e)(2).

Quite apart from whether the proposed (b)(2) class may be certified, the proposed (b)(2) settlement should not be approved.  Far from being "fair, reasonable, and adequate" as required by Rule 23(e)(2), this settlement is an extraordinarily bad deal.  Indeed, absent class members could hardly do worse—particularly the half of the class whose reports were in fact sold by Defendants to third-parties.  For these "Impermissible Use" claimants, their privacy rights have

been violated and the proposal on the table is that they give up statutory damage claims for $100-1,000 per FCRA violation in return for ***nothing*** except Defendants' promise not to do it again.

No properly represented person would settle for this—which is why the Aaron Objectors have retained counsel to object to Class Counsel's sale of releases and ask the Court to reject this deal or, at a minimum, enforce class members' constitutional right to opt out of it.  The Aaron Objectors would much prefer to litigate and at least have a chance of some meaningful redress—and we suspect that most absent class members, given adequate notice, would feel the same way.

### A.     The settlement is not fair, reasonable, or adequate.

#### 1.     Defendants would receive essentially complete peace.

Defendants would receive a release of *all* past claims (except for actual damages claims that are difficult to prove, and generally too small to bring via individual actions).  Defendants would also receive a judgment and set of advisory opinions that would purport to preclude any class member (*i.e.*, any adult in America) from suing Defendants for the next seven years for a new business model that is—to say the least—not obviously FCRA-compliant.  To obtain this release from literally *billions of dollars* in potential liability—including ***three years*** of operations ***after*** the *Adams* decision put Defendants on notice that their Accurint reports may be "consumer reports" subject to the FCRA—Defendants offer only $5.5 million (all paid to Class Counsel) and a promise to "overhaul" their Accurint product so that it (purportedly) complies with the law and turns Lexis into the "industry leader."  Approval Memo at 14-15.  All of this is fabulous, an excellent result—for Defendants.

#### 2.     Class Counsel receive all the cash and no one has a fair chance to object to their fee request.

Class Counsel also do quite well in the proposed settlement.  They would receive millions of dollars—up to $5.5 million for the (b)(2) settlement, and, for both settlements, as much

as $9.55 million of the total $19 million that Defendants have put on the table. *See* Settlement Agmt. ¶¶ 4.4.1, 5.5, 5.3. Right away, this should cause the Court to question the Parties' proposal. *E.g.*, *Bluetooth*, 654 F.3d at 947 (one "sign" that "class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations" is "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded") (citation omitted); *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 282 (7th Cir. 2002) ("defendants are happy to pay generous attorneys' fees since all they care about is the bottom line—the sum of the settlement and the attorneys' fees—and not the allocation of money between the two categories of expense").

There are two further problems with the proposed settlement's fee provisions: *First*, Class Counsel will only make their fee request after the deadline for objections. This is unlawful. Fed. R. Civ. P. 23(h); *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010) ("The plain text of [Rule 23(h)] requires a district court to set the deadline for objections to counsel's fee request on a date after the motion and documents supporting it have been filed."). *Second*, class members have only three days to respond—and Defendants have already agreed to a clear sailing provision for Class Counsel's fee request, which is another bad "sign" that class members have not been properly protected. *Bluetooth*, 654 F.3d at 947.

### 3. Named Plaintiffs get paid via the (b)(3) settlement, which is contingent on approval of the (b)(2) settlement.

Named Plaintiffs would get $435 each (less attorney's fees) and up to $5,000 each as an incentive payment. The Parties put these dollars in the (b)(3) settlement, but the same individuals purport to represent both classes and each settlement is contingent on the other being approved and surviving appeal. Settlement Agmt. ¶ 7. Thus, in return for obtaining $0 for other class members, Named Plaintiffs end up with many times the maximum statutory damages. This

should preclude approval. *Crawford*, 201 F.3d at 882 ("the fact that one class member receives $2,000 and the other 200,000+ nothing is quite enough to demonstrate that the terms should not have been approved under Rule 23(e)"); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) (rejecting as "untenable" a FCRA settlement in which class representatives received three times the statutory maximum, while class members did not receive even the statutory minimum); *see also In re Dry Max Pampers Litig.*, No. 11-4156, 2013 WL 3957060, *8 (6th Cir. Aug. 2, 2013) (recognizing the adequacy problem revealed by "incentive payments when they make the class representatives whole, or (as here) even more than whole"); *Radcliffe*, 715 F.3d at 1163-67 (same).

### 4. Absent class members lose any meaningful chance to receive any monetary redress in return for Defendants' promise to stop violating the law.

For the 100 million individuals whose reports have not been sold, the Parties themselves apparently believe the settlement has little value. *See* Approval Memo at 30-31. These individuals are included in the class because Defendants are seizing the opportunity to immunize themselves and their new business model from future challenge. This is improper. *Domonoske v. Bank of America, N.A.*, 705 F. Supp. 2d 515, 518-19 (W.D. Va. 2010).

As for the other 100 million individuals who presently have at least one claim for statutory damages of $100 to $1,000 per FCRA violation—the Impermissible Use claimants, on whose behalf this suit was originally filed—they receive $0. To be clear about the liability being released here: Focusing only on completed violations and ignoring future claims given up by class members, on the most conservative assumptions (*i.e.*, using the low end of the statutory damages range and assuming that each class member was the victim of only one FCRA violation), the settlement releases ***$10 billion*** in existing potential liability. And it does so for $0—or, more precisely, for a payment of $5.5 million to Class Counsel.

In theory, absent class members retain the right to sue for actual damages, but this is illusory: The settlement waives the right to bring a class action or mass action—and aggregation is all but essential for claims of this size. *Crawford*, 201 F.3d at 880 (FDCPA) ("Because these are small-stakes cases, a class suit is the best, and perhaps the only, way to proceed."). Moreover, the reason the FCRA provides for statutory damages in the first place is that actual damages are so difficult to prove. *Murray*, 434 F.3d at 953 ("That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury.").

In return for $0, the loss of statutory and punitive damages, and the loss of any meaningful ability to recover actual damages, the class receives what? Nothing more than a promise by Defendants to stop violating the law. This is of no value. As another court said when faced with a similarly flawed FCRA settlement—indeed, a settlement to which Class Counsel Caddell himself objected: "The ability of the Settlement's injunctive relief to redeem an unsatisfactory settlement is even further crippled by the possibility that these changes to [defendants'] reporting procedures are inevitable. To the extent [defendants'] reporting procedures may actually violate the FCRA, these injunctive relief provisions are of no value." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 395-96 (C.D. Cal. 2007) (citing cases). That is the case here.[8]

Moreover, according to the Parties, those who have been subject to debt collector reports in the past are likely to be so subjected again in the future. Approval Memo at 30 ("The Injunctive Relief will provide a direct benefit to the Rule 23(b)(2) Settlement Class Members going forward because, due to standard practices in the debt collection industry, consumers who are the

---

[8] The Parties also tout that the settlement will make Lexis the "industry leader." *See* Approval Memo at 14. But why should class members care? This move from FCRA-violator to "industry leader" does nothing to vindicate the settlement as far as absent class members are concerned. *Compare Pampers*, 2013 WL 3957060, *5-7.

subject of an Accurint® for Collections report are likely to be the subject of additional reports in the future."). *At best* then, maybe half of the class gets some benefit—and even that much is speculative and depends on an assumption that most class members would likely reject, *i.e.*, that they are going to have financial problems such that a debt collector purchases their report from Lexis again in the future.

In *Crawford*, the Seventh Circuit recognized the insufficiency of a very similar settlement—one in which "[named plaintiff] and his attorney were paid handsomely to go away" while "the other class members received nothing … and lost the right to pursue class relief." *Crawford*, 201 F.3d at 882. More precisely, the "nothing" received by class members in *Crawford* was the defendant's promise to stop using a certain kind of form letter that allegedly violated the Fair Debt Collection Practices Act. The court found the settlement "substantively troubling" and rejected it for two reasons, both of which apply here: *First*, "[g]iven the litigation risk, [defendant] is not apt to employ [the challenged letters] again no matter what the settlement provides." *Id. Second*, the defendant's promise had value to class members only to the extent those individuals had a similar financial problem again in the future: "*For persons who stay out of financial trouble, only damages matter*, yet all the settlement does for (to?) them is cut them off at the knees. They gain nothing, yet lose the right to the benefits of aggregation in a class." *Id.* (emphasis added).

The proposed settlement here has the same problems that quite rightly sunk the *Crawford* settlement—an injunction that (1) obliges Defendants to stop doing something they very well should and will stop doing regardless, and (2) gives nothing to class members who "stay out of financial trouble" for whom "only damages matter."

In fact, the proposed settlement here is even worse:  The *Crawford* settlement, at least, preserved individual claims—including actual damages plus a statutory "penalty" up to $1,000. *See* 201 F.3d at 880 ("[class members] receive nothing in this case but are free to file their own suits, *provided*, however, that no other suit may proceed as a class action").  So too did the *Pampers* settlement, recently struck down by the Sixth Circuit, in which "[u]nnamed plaintiffs [were] … 'permanently barred and enjoined from seeking to use the class action procedural device in any future lawsuit ….' [but] in theory, at least, … retain[ed] the right to file individual lawsuits for … 'actual damages.'"  *See* 2013 WL 3957060, at *2; *see also Felix v. Northstar Location Servs., LLC*, 290 F.R.D. 397, 408 (W.D.N.Y. May 28, 2013) (rejecting a settlement providing for injunctive relief in the form of a promise to comply with the law in the future, in return for which absent class members released "all *class* claims for damages or injunctive relief," even though they retained individual claims because "the fact remains that the *class* claims which they are releasing must have some value—for why else would [the defendant] agree to the settlement?").

The proposed settlement at bar, by contrast, releases statutory damages claims—and yet fails to provide *any* financial consideration.  This is untenable.  *See Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) (rejecting FCRA settlement where class members received no payment);  *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 355 (3d Cir. 2010) ("'in cases primarily seeking monetary relief,' district courts should compare 'the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing ... with the amount of the proposed settlement'") (citation omitted); Managing Class Action Litigation: A Pocket Guide for Judges (condemning instances where "parties have attempted to release a damages remedy without making any correlative payment to class members"); *Acosta*, 243 F.R.D. at 388 (rejecting settlement where "over two-thirds of the Settlement

Class, and up to 10 million class members, will be completely ineligible for any economic relief under the Settlement").

**B.    The inadequacy of the (b)(2) settlement is confirmed by the (b)(3) settlement—which resolves materially identical claims on *much* more favorable terms.**

The insufficiency of the consideration offered here is further shown by comparison to the proposed (b)(3) settlement.  The Complaint challenged three things: (1) Defendants' sale of Accurint reports to third-parties (the "Impermissible Use" claim); (2) Defendants' decision to ignore consumers who requested a copy of their report (the "File Request" claim); and (3) Defendants' decision to ignore consumers who disputed information in their report (the "Dispute" claim).  Compl. at 13-19.  The proposed settlements value the Impermissible Use claim at *$0* (via the (b)(2) settlement) and value the File Request and Dispute claims at *$435* per consumer (before attorney's fees) (via the (b)(3) settlement).  *See* Approval Memo at 13.  ***But all three claims turn on the same issue***:  Whether the Accurint report is a "consumer report" for purposes of the FCRA.  If it is, then Defendants are liable to all three groups (the first, no less than the second and third); otherwise, Defendants have no liability.  *See* Approval Memo at 5.

In other words, the Parties have taken claims that have the same degree of merit and settled them for wildly different amounts.  This not only underscores the adequacy problems of having the same Named Plaintiffs representing both the (b)(3) and (b)(2) classes, with Named Plaintiffs receiving cash for Dispute and/or File Request claims *and* a substantial "service" payment via the (b)(3) settlement, while the (b)(2) class members receive nothing.  *Infra* at 31-32.  But it also confirms that a $0 settlement of the Impermissible Use claims is unfair, unreasonable, and inadequate.   *E.g.*, *Mirfasihi*, 356 F.3d at 785-86 (rejecting settlement providing no relief to entire subclass having valid legal claims); *Acosta*, 243 F.R.D. at 386-88 (rejecting settlement where division of class into two groups was "fundamentally flawed, as it is both arbitrarily drawn and

would compromise the claims of a majority of the class"; observing, "[t]he Court is aware of no case in which a settlement was allowed that partitioned a class so as to provide relief to one segment and to deny it completely to another").

It is no answer that the (b)(2) class members receive injunctive relief:  All (b)(3) class members are also in the (b)(2) class, and the injunction directly addresses the File Request and Dispute claims.  *See* Approval Memo at 16 (proposed (b)(2) settlement includes Defendants' promise to provide consumers with both a free copy of a report once per year and a process for submitting a dispute statement).[9]  In other words, (b)(3) class members receive *both* injunctive relief and the cash payment.

Nor can the extraordinary size of the (b)(2) class vindicate this proposed settlement.  It was neither necessary nor proper for the Parties to double the class size by including every individual in Defendants' database, regardless of whether his or her report was sold to a third-party. To the contrary, doing so creates fatal Article III and adequacy problems for the (b)(2) settlement.  *Infra* at 28-39.  Extracting a blanket release from essentially every adult in America (and its territories) is obviously a good thing for Defendants, who thereby achieve FCRA immunity for their business for at least the next seven years.  But it is a mystery why Class Counsel would attempt to throw in 100 million people who do not even have a live claim.  *Cf. Crawford*, 201 F.3d at 882 ("By agreeing to a class definition so broad that it included anyone who was sent a letter 'similar' to the one he had received, Crawford consented to a class of approximately 214,000 members, which ensured that none could recover much …").

And if the sheer number of Impermissible Use claimants made Defendants unable or unwilling to offer more than $0, then that just means this case should not settle.  (Lest there be any

---

[9] Also, while the File Request claim is pleaded as a "negligent and willful" violation, the Dispute claim is "willful" only.  Compl. at 22.

misplaced sympathy for Defendants' predicament, we note that the number of claimants is the product of one and only one thing:  the extent of Defendants' misconduct.  The decision to violate the privacy rights of 100 million people was theirs alone.)  If Defendants can defend themselves, litigating this case to judgment is an option.  What is *not* an option, however, is judicial approval of a settlement that releases billions of dollars in claims for $0—particularly not when the claims in question have proven strong enough to survive a motion to dismiss.  *See Adams*, 2010 WL 1931135.

**III.    The Absent Class Members Are Not Adequately Represented.**

Rule 23 requires that absent class members be adequately represented in two ways:  (1) by the named plaintiffs and (2) by class counsel.  Fed. R. Civ. P. 23(a)(4), 23(g); *Pampers*, 2013 WL 3957060, at *7.  The absent class members here, including the Aaron Objectors, have not been adequately represented in either manner.

"Under the adequacy requirement of Rule 23(a)(4), a district court may certify a class only if the class representative 'will fairly and adequately protect the interests of the class.'" *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 179-80 (4th Cir. 2010) (quoting Fed. R. Civ. P. 23(a)(4)).  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625.  "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  *Id*. at 625-26 (citation omitted).  This is so because, "[t]he premise of a class action is that litigation by representative parties adjudicates the rights of all class members, so basic due process requires that named plaintiffs possess undivided loyalties to absent class members.  *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998).  "The problem of actual and potential conflicts is a matter of particular concern in a case such as this one because the [district court certified the class under Federal Rule of Civil Proce-

28

dure 23(b)] which does not allow class members to opt out of the class action." *Id.* (citation omitted). "These requirements are scrutinized more closely, not less, in cases involving a settlement class." *Pampers*, 2013 WL 3957060, at *7.

**A.     Multiple intra-class conflicts preclude certification and settlement in gross.**

In this case, the "Impermissible Use" class defined by the Complaint consists of approximately 100 million individuals whose reports were improperly sold by Defendants. Compl. at 13. The class defined for settlement, however, contains those 100 million individuals *and* 100 million more whose credit reports were *not* sold, but who possess a potential future claim by virtue of the fact that their data exists in Defendants' database. Approval Memo at 4.

This combination of past and future claimants violates well-established rules of adequacy. Indeed, "it is obvious after *Amchem* that a class divided between holders of present and future claims … requires division into homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999); *see Amchem*, 521 U.S. at 626 ("[F]or the currently injured, the critical goal is generous immediate payments. That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future."). Accordingly, "[t]he first obstacle to class treatment of this suit is a conflict of interest between different groups of [class members] with respect to the appropriate relief. The Supreme Court and [the Fourth Circuit] have long interpreted the adequate representation requirement of Rule 23(a)(4) to preclude class certification in these circumstances." *Broussard*, 155 F.3d at 337-38.

Making bad matters worse, at least 6 of the 7 Named Plaintiffs are part of the pleaded Impermissible Use class. (Plaintiff Otten's status is unclear.) There is no meaningful representation for the 100 million database-only individuals dragged into this case only at the settlement stage. *See Pampers*, 2013 WL 3957060, at *7 ("the linchpin of the adequacy requirement is the

alignment of interests and incentives between the representative plaintiffs and the rest of the class") (quoting *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012)); *Felix*, 390 F.R.D. at 408-09 ("[S]ettling class members generally cannot validly release other class members' claims that they themselves do not possess, for no consideration.") (citation omitted).

The *timing* of Defendants' sale of the individual class member's reports creates an additional significant intra-class conflict. According to the Complaint, the United States District Court for the District of New Jersey "held (1) that proof of plaintiff's allegations in that case would subject LexisNexis to liability … under the FCRA … and (2) that Accurint reports were consumer reports." Compl. at 9 (discussing *Adams*, 2010 WL 1931135). "LexisNexis's failure to modify its practices and/or conform them to the FCRA post *Adams* is the result of a deliberate corporate decision to disregard the findings of federal courts." *Id*. It was for precisely this reason that the Complaint sought certification of a "Post-*Adams* Sub-class" (*id*. at 13) and damages for willful violations of the FCRA (*id*. at 20). The Parties' Approval Motion acknowledged as much. Approval Memo at 6-7 ("The Complaint also requests certification of a 'Post-*Adams*' subclass … arguing that the entry of an order in *Adams* … changed the FCRA 'willfulness' analysis with respect to the claims made here."). And yet the Approval Motion avers that Named Plaintiffs are "unaware of any actual or apparent conflicts of interest between them and the Settlement Class." *Id*. at 28. That representation strains credibility.

In fact, the pre- and post-*Adams* subclasses have qualitatively different claims (that is, the post-*Adams* subclass has a stronger case for willfulness damages). For this reason, the subclasses should be separately represented. *Ortiz*, 527 U.S. at 857 ("Pre-1959 claimants accordingly had more valuable claims than post-1959 claimants … the consequence being a second instance of disparate interests within the certified class."). Named Plaintiffs cannot provide ade-

quate representation—not even if they tried, which clearly (as shown by the failure to confront the issue) they have not.

### B. The Settlement Agreement creates disincentives that prevent class representatives from adequately representing absent class members.

Given the complete lack of monetary redress provided to absent (b)(2) class members, there is a further adequacy problem created by the substantial rewards Named Plaintiffs receive via the (b)(3) class settlement. First, unlike the 200 million absent class members they supposedly represent in the (b)(2) class, *all* of the Named Plaintiffs will receive a cash payment. Second, the Settlement Agreement rewards each named plaintiff with up to $5,000 in additional cash. This is *five times* the maximum amount of damages available per violation under the FCRA and is in addition to the amount they will receive as (b)(3) class members.

In other words, in exchange for waiving the damages claim for 200 million absent class members who will receive $0, Named Plaintiffs are handsomely rewarded. This means that Named Plaintiffs have no incentive to hold out for a settlement that also provides monetary relief to the (b)(2) class. Indeed, because the settlements are contingent on each other, their incentive is quite the opposite: Named Plaintiffs do not get any payment via the (b)(3) class unless Defendants' demands for the (b)(2) class are met and accepted by the Court.

These payments create a situation in which Named Plaintiffs' interests are directly contrary to the interests of the absent class members. *Crawford*, 201 F.3d at 882 ("the fact that one class member receives $2,000 and the other 200,000+ nothing is quite enough to demonstrate that the terms should not have been approved under Rule 23(e)"); *Murray*, 434 F.3d at 952 (rejecting as "untenable" a FCRA settlement in which class representatives received three times the statutory maximum, while class members do not even get the statutory minimum); *see also Pampers*, 2013 WL 3957060, at *8 ("we should be most dubious of incentive payments when

they make the class representatives whole, or (as here) even more than whole; for in that case the class representatives have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief"); *Radcliffe*, 715 F.3d at 1161 (to same effect).

Named Plaintiffs have no reason to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Quite the contrary. As a result, final approval should be denied.

### C. Class Counsel is inadequate.

Under Rule 23(g), the Court must ensure that class counsel is adequate. In so doing, the Court should consider, among other things, "the work counsel has done in identifying or investigating potential claims in the action" and "counsel's knowledge of the applicable law." Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* at (g)(1)(B). Class counsel has a duty to "fairly and adequately represent the interests of the class." *Id.* at (g)(4). The circumstances of this case demonstrate that Class Counsel is inadequate, especially when considered in light of Class Counsel's activities in previous cases.

As courts have noted, "settlement classes create especially lucrative opportunities for putative class attorneys to generate fees for themselves without any effective monitoring by class members who have not yet been apprised of the pendency of the action." *Pampers*, 2013 WL 3957060, at *3 (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013)). "Hence the 'courts must be particularly vigilant' for 'subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.'" *Id.* (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)).

In circumstances like those present in this case—where a "settlement benefits class counsel vastly more than it does" class members—the "conclusion is unavoidable" that the "settlement gives 'preferential treatment' to class counsel 'while only perfunctory relief to unnamed

class members.'" *Id*. at *7 (quoting *Vassalle*, 708 F.3d at 755). "Class counsel has a fiduciary duty to the class as a whole and it includes reporting potential conflict issues to the district court." *Radcliffe*, 715 F.3d at 1167 (quotation omitted).

### 1. Class Counsel's conduct in this case demonstrates inadequacy.

Class Counsel's inadequacy is demonstrated in at least two ways. As an initial matter, and as noted above, this case was brought under the FCRA, which does not afford a private litigant the ability to seek an injunction—and yet Class Counsel claims that the case "is properly certified pursuant to Rule 23(b)(2) because the predominating interests of the class are addressed by injunctive relief." Approval Memo at 31. Counsel's assertion that this case is "predominantly" about injunctive relief is either an untenable position taken to secure certification under (b)(2) and bind absent class members without due process, or indicative of a fundamental misunderstanding of the law governing this action. Either way, it shows that Class Counsel is inadequately representing the interests of the class.

Second, the proposed settlement's failure to provide any monetary relief to the (b)(2) class, coupled with its termination of any realistic means by which absent class members could ever secure monetary relief for their actual damages, proves that Class Counsel have not carried out their duty to "fairly and adequately represent the interests of the class" under Rule 23(g)(4) and have not adequately worked to "identify[] or investigat[e] potential claims in the action." Fed. R. Civ. P. 23(g)(1)(A)(i).

### 2. Class Counsel's conduct in prior cases demonstrates inadequacy.

This is not the first time Class Counsel Michael Caddell has inadequately represented unnamed plaintiffs in a class action. Indeed, it is not the first time Mr. Caddell has inadequately represented many of the Aaron Objectors. In a recent class action against Trans Union in Chicago, Mr. Caddell led a similarly massive nationwide class into a settlement that left individual

class members with no cash in hand for Trans Union's unlawful sale of their credit information. *In re Trans Union Corp. Privacy Litig.*, No. 00-cv-4729 (N.D. Ill.).  Class members retained the ability to fend for themselves by hiring new counsel to bring individual claims.  But when many of the Aaron Objectors (and many others) did exactly that, Mr. Caddell and his colleagues tried to enjoin those actions—and when that failed, they devoted themselves to trying to get a second fee award (which also failed).  Many of the Aaron Objectors ultimately obtained $443 each, despite Mr. Caddell.  The FCRA violations by Defendants here warrant similar recompense—and certainly more than $0.

In addition, in *Radcliffe*, the Ninth Circuit specifically found Mr. Caddell's actions to be inadequate.  "Counsel told a plaintiff below that he would 'not be entitled to anything' and that he would 'jeopardize the $5,000 [he] would receive [under the settlement]' if he did not support the settlement."  *Radcliffe*, 715 F.3d at 1164.  As a consequence of these statements and the fact that the "conditional-incentive-awards … divorced the interests of the class representatives from those of the absent class members," the court found that "class counsel was simultaneously representing clients with conflicting interests."  *Id*. at 1167.  "Class counsel thus was not adequate and could not settle the case on behalf of the absent class members."  *Id*.

Judge Haddon went so far as to issue a separate concurring opinion in *Radcliffe*, specifically to lament class counsel's (including Mr. Caddell's) "actions in orchestrating and advocating the disparate incentive award scenario without any concern for, or even recognition of, the obvious conflicts presented …."  *Id*. at 1169.  "[C]lass counsel were singularly committed to doing whatever was expedient to hold together an offer of settlement that might yield, as it did, an allowance of over $16 million in lawyers' fees."  *Id*.  "Such adherence to self-interest, coupled with the obvious fundamental disregard of responsibilities to all class members—members who

had little or no real voice or influence in the process—should not find favor or be rewarded at any level." *Id.*

For similar reasons, the actions of Class Counsel here are indicative of inadequate representation and suggestive of a motivation to receive millions of dollars in attorneys' fees in exchange for sacrificing the rights of absent class members, most of whom are unaware that these proceedings are even occurring.

### 3. Class Counsel have objected to materially identical provisions in other settlements.

The inadequacy of Class Counsel's representation here is made all the more striking when contrasted with vociferous objections made by Class Counsel Caddell, Chapman, Bennett, and Erausquin to other class settlements based on the very same infirmities that exist in this case.

For example, in *Acosta*, the district court rejected a class settlement that called for the "wholesale sacrifice" of certain class members' ability to collect damages (243 F.R.D. at 388), contained an opt out right that was "particularly farcical where, as here, a considerable number of class members are likely unaware, through no fault of their own, that they even have viable claims" (*id.* at 388-89), and "economic relief [was] available to only a select group of class members" (*id.* at 389), while, "[u]nlike the class members, Plaintiffs' counsel [and defendants] would be generously compensated under the Settlement" because counsel stood to receive $5,485,000 in fees and defendants "also would receive handsome compensation under the Settlement by way of its release provisions" (*id.* at 393-94).

These are the very same problems with the instant settlement agreement. Although Class Counsel now urge the Court to accept these provisions in this case, Ms. Chapman and Messrs. Caddell, Bennett, and Erausquin were part of a group of objector counsel that adamantly opposed such provisions in *Acosta*. They objected that the settlement released "the claims of great swaths

of the class who are not even eligible under the Settlement to receive benefits, and who are to be provided the least effective notice." Ex. B hereto (Dkt. 42 in *Acosta v. Trans Union*, No. 06-cv-5060 (C.D. Cal.)) at 1. According to these four Class Counsel, that settlement agreement "stripp[ed] class members of their existing statutory rights" and "arbitrarily denie[d] all economic relief to the substantial majority of the class." *Id*. These provisions made clear that "the Settlement was designed to ensure that the actual monetary relief delivered will be miniscule and go but to a spec[k] of the class." *Id*. at 2. In fact, according to these four Class Counsel, under the settlement agreement in that case, "the large majority" of class members were "giving up their rights to pursue class-wide relief" and therefore "giving up any prospect of relief at all." *Id*. at 53. They were particularly troubled by the fact that the proposed settlement denied "any compensation whatever to approximately 70% of all class members" and instead provided class members with "meaningless" and "illusory" injunctive relief. *Id*. at 16-18. They said that the "proposition that class members must opt out of a settlement that gives them nothing in order to preserve their legal rights is outrageous on its face." *Id*. at 29. They added, for "millions" of class members, the "inevitable result will be that the overwhelming majority of individuals who will receive nothing from this Settlement will end up losing their right to pursue their individual damages claims without ever having known they had an opportunity to preserve them. The failure of the Settlement to give these individuals notice that is reasonably calculated to reach them is a blatant violation of their due process rights and the requirements of Fed. R. Civ. P. 23(c)(2)." *Id*. These four Class Counsel also explained that an injunction which merely requires the defendant to comply with the law is "not a valuable benefit." *Id*. at 42.

All of this added up to a settlement agreement that "represent[ed] a blatant abuse of the class action mechanism, designed to avoid liability for the defendants and to enrich counsel for

plaintiffs, all at the expense of the class." *Id.* at 2.  "Such a transparently fee-driven settlement falls far outside the range of possible approval." *Id.* at 56.  According to these four Class Counsel, "negotiation of a deal that sells [class members] down the river at the same time that it pays [class counsel] a handsome fee award" represents a "lopsided deal" that "establishes [class counsel's] inadequacy" and proves them to be "unsuitable to represent these classes." *Id.* at 66.

Mr. Caddell also objected personally to class settlement terms similar to those at issue here in *Papadakis v. Northwestern Mut. Life Ins. Co.*, No. B214789 (Cal. App. Ct. 2009).  He challenged the defendant's "desire to carry through with the settlement … [which] can only be explained by the breadth of the release which extends far beyond the claims that were actually explored and litigated."  Ex. C hereto (Appellant Michael A. Caddell's Opening Br.) at 30.  Mr. Caddell likewise complained of the parties' "effort to broaden the complaint retrospect[ively.]"  Ex. D hereto (Appellant Michael A. Caddell's Reply Br.) at 12.  Mr. Caddell's advocacy of the unfair settlement proposed here is directly at odds with his previous opposition to this type of settlement and strongly suggests inadequate representation of the class.

## IV.  Half The Class Does Not Even Arguably Have A Claim And This Court May Not Issue An Advisory Opinion On Harms That Have Not Occurred.

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).  Here, the Parties attempt to have this Court disregard this rule by certifying a class with over 200 million individuals, *half* of whom are not alleged to have suffered any harm, and *none* of whom have a present controversy with Defendants as to the future practices that the Court is called upon to bless in advisory opinions.

**A.     This Court cannot certify the Rule 23(b)(2) class and approve releases from class members who have suffered no injury.**

Fully half of the proposed Rule 23(b)(2) Settlement Class—*over 100 million individuals*—is not even alleged to have suffered any injury-in-fact, as Article III requires.  *E.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  The proposed (b)(2) class consists of "more than 200 million individuals" on whom Defendants have more than "34 billion current public records."  Approval Memo at 4.    The Parties admit, however, that only 100 million individuals in this class had their records sold to a private (non-governmental) party.  *Id*. at 6.

Recognizing the necessity of a report being sold, the Complaint proposed the following "Impermissible Use" class:

> All persons residing in the United States of America and its Territories who were the subject of an Accurint report of any kind that Defendants furnished to a private (non-governmental) party, for the period beginning five years before the filing of this action.

Compl. at 13.  That class consists of an estimated 100 million individuals who also make up part of the Settlement Class.  Approval Memo at 6.  Reports for the remaining 100 million individuals in the Settlement Class were not sold—nor is there any allegation of any other tangible harm suffered by these individuals.  Yet, they are asked, among other things, to give up their future rights to: (1) bring a class action against Defendants for FCRA violations; (2) waive their rights to statutory damages; and (3) waive their right to punitive damages.   Settlement Agmt. ¶ 4.5, *et seq*.  This should not be done.

These class members are strangers to this case as their information was not furnished to *anyone* by Defendants.  Instead, their information was simply compiled in the Accurint Database.  The Complaint does not allege that this violated the FCRA, nor could it have so alleged.  *See Washington*, 199 F.3d at 267 ("the actionable harm the FCRA envisions is improper disclosure, not the mere risk of improper disclosure"); *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d

440, 450 (E.D. Va. 2009) (following *Washington*); *Wantz v. Experian Info. Solutions*, 386 F.3d

829, 834 (7th Cir. 2004) ("there cannot be a consumer report without disclosure to a third par-

ty"), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007).   And

Article III is not satisfied by the mere *possibility* that reports for these class members could be

sold by Lexis in the future—not even if such possibility rose as high as an "objectively reasona-

ble *likelihood*."   *Clapper*, 133 S. Ct. at 1147 (emphasis added).   Rather, the Supreme Court has

"repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in

fact,' and that '[a]llegations of *possible* future injury' are not sufficient."   *Id*. (citation omitted).[10]

Accordingly, these individuals should not be included in the class, and the Court should

not give final approval to the proposed (b)(2) settlement.

### B.   This Court may not issue advisory opinions regarding the new "Contact and Locate" report or future uses of "Collect Once, Use Twice" data acquisition practices.

"Federal courts may not … give opinion[s] advising what the law would be upon a hypo-

thetical state of facts."   *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (quotation omitted); *Lew-

is v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).   And no controversy exists when a declarato-

ry judgment plaintiff attempts to obtain a premature ruling on potential defenses that would typi-

---

[10] *See also, e.g.*, *Gasner v. Bd. of Sup'rs of the Cty of Dinwiddie, Va.*, 103 F.3d 351, 361 (4th Cir. 1996) ("An allegation of a possible future injury does not satisfy the requirements of Article III of the Constitution.") (dismissing statutory claim for failure to register certain bonds, where the theory was that if interest on the bonds was later determined to be taxable, the statute would have been violated); *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 707 (6th Cir. 2009) (for purposes of Article III and the FCRA, a plaintiff who suffered no actual damages "must be 'among the injured,' in the sense that she alleges that defendants violated her statutory rights"); *Katz v. Pershing, LLC*, 672 F.3d 64, 79 (1st Cir. 2012) (no Article III injury-in-fact where defendant failed to give legally required notice of security breaches) ("Critically, the complaint does not contain an allegation that the plaintiff's nonpublic personal information has actually been accessed by any unauthorized user. To achieve standing, plaintiffs 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (citations omitted).

cally be adjudicated in a later actual controversy.  *Coffman v. Breeze Corp.*, 323 U.S. 316, 324 (1945) ("The declaratory judgment procedure … may not be made the medium for securing an advisory opinion in a controversy which has not arisen.").  Here, the Parties seek a declaratory judgment for precisely that purpose regarding the "Contact and Locate" report.  Thus, this Court should refuse to grant this relief because there is no Article III case or controversy over this portion of the settlement.  *Id.*

Article III of the Constitution limits the judicial power to the adjudication of cases or controversies.  Art. III, § 2.  In the context of requests for declaratory relief, the Supreme Court has provided a uniform framework for assessing whether an Article III case or controversy exists.  A "controversy" is "distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot."  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937).  "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests"—"a real and substantial controversy … as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Id.* at 240-41.

Ignoring Article III and the long line of Supreme Court precedent regarding the same, the Parties are attempting to do exactly that—obtain a premature ruling on a potential defense that should be adjudicated in a later actual controversy.  More specifically, the Parties seek to have this Court issue a declaratory judgment that the "Contact and Locate" report is not a consumer report under the FCRA.  The 200 million currently unnamed class members would then be bound in the future from contending that the "Contact and Locate" report is a consumer report.  Settlement Agmt. ¶ 4.5, *et seq*.  This is improper.  So too is the Parties' request for an advisory opinion that the "Collect Once, Use Twice" data-acquisition practice, as it would be used with the Defendants' restructured business, falls outside of the FCRA.

This Court should not give an advisory opinion on this hypothetical product (the "Contact and Locate" report) or potential future disputes regarding the product.  *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998) (dismissing a suit pursuant to Article III that "attempt[ed] to gain a litigation advantage by obtaining an advanced ruling on an affirmative defense"); *Coffman*, 323 U.S. at 324 (relying on Article III and rejecting use of declaratory judgment as a "medium for securing an advisory opinion in a controversy which has not arisen").  This product does not even exist and has never been sold, so there is no existing case or controversy as to whether it is a consumer report—or whether the use of "Collect Once, Use Twice" with that product is permissible.

These are battles for another day.  It is improper for Defendants to seek future immunity from this Court for conduct that has not yet occurred.  And, moreover, Article III prevents this Court from deciding these issues as part of this settlement.  *Calderon*, 523 U.S. at 747; *Coffman*, 323 U.S. at 324; *see also Amchem*, 521 U.S. at 612-13 (declining to reach Article III jurisdiction issue because resolution of class certification issue was "logically antecedent to the existence of any Article III issues," but cautioning that "Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right") (quoting 28 U.S.C. § 2072(b) and citing Fed. R. Civ. P. 82 ("rules shall not be construed to extend ... the [subject-matter] jurisdiction of the United States district courts")).

## CONCLUSION

For all these reasons, the Aaron Objectors respectfully submit that final approval of the proposed settlement should be denied.

Respectfully submitted,

Dated: August 30, 2013

_____/s/_____
Charles B. Molster, III
Va. Bar No. 23613
Attorney for Megan Christina Aaron, *et al.*
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC  20006
(202) 282-5000 (phone)
(202) 282-5100 (fax)
cmolster@winston.com

OF COUNSEL:

Kimball R. Anderson
William P. Ferranti
Karl A. Leonard
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
(312) 558-5600 (phone)
(312) 558-5700 (fax)
bferranti@winston.com

Ryan Thompson
WATTS GUERRA LLP
5250 Prue Road, Suite 525
San Antonio, Texas  78240
(210) 448-0500 (phone)
(210) 448-0501 (fax)
rthompson@wattsguerra.com

Samuel Issacharoff
40 Washington Square South, 411J
New York, NY  10012
(212) 998-6580 (phone)
(212) 995-4590 (fax)
samuel.issacharoff@nyu.edu

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 30th day of August, 2013, pursuant to the Preliminary Approval Order in this matter, I have caused a copy of the foregoing Objections and accompanying exhibits (including the unredacted version of Exhibit A) to be sent via first class mail to the following address:

> LexisNexis Settlement Objections
> P.O. Box 2983
> Faribault, MN 55021-2983

I further certify that I have this day caused the foregoing Objections and accompanying exhibits (including the redacted version of Exhibit A) to be electronically filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to CM/ECF participants; that I have caused the unredacted version of Exhibit A to be sent to the Clerk of the Court by Federal Express, next business day, for filing under seal pursuant to Fed. R. Civ. P. 5.2 and Local Civil Rule 7(c); and that I have caused foregoing Objections and accompanying exhibits (including the redacted version of Exhibit A) to be sent by first class mail and the Objections (without exhibits) by email to the following non-CM/ECF participants:

Dale Wood Pittman
THE LAW OFFICE OF DALE W.
PITTMAN, P.C.
112-A W Tabb St
Petersburg, VA 23803-3212
(804) 861-6000
dale@pittmanlawoffice.com

Leonard Anthony Bennett
Susan Mary Rotkis
CONSUMER LITIGATION ASSOCIATES
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
(757) 930-3660
lenbennett@clalegal.com
srotkis@clalegal.com

David A Searles
Erin Amanda Novak
James Arthur Francis
John Soumilas
FRANCIS & MAILMAN PC
Land Title Building
100 S Broad Street 19th Floor
Philadelphia, PA 19110
(215) 735-8600
dsearles@consumerlawfirm.com
enovak@consumerlawfirm.com
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com

Craig Carley Marchiando
Cynthia Bodendieck Chapman
Michael Allen Caddell
CADDELL & CHAPMAN
1331 Lamar St., Suite 1070
Houston, TX 77010
(713) 751-0400
ccm@caddellchapman.com
cbc@caddellchapman.com
mac@caddellchapman.com

Janelle Mason Mikac
Matthew James Erausquin
CONSUMER LITIGATION ASSOCIATES
1800 Diagonal Rd., Suite 600
Alexandria, VA 22314
(703) 273-7770
janelle@clalegal.com
matt@clalegal.com

David Neal Anthony
TROUTMAN SANDERS LLP
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23219
(804) 697-5410
david.anthony@troutmansanders.com

James Francis McCabe
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7011
jmccabe@mofo.com

Ronald Irvin Raether , Jr.
FARUKI IRELAND & COX PLL
500 Courthouse Plaza SW
10 N Ludlow Street
Dayton, OH 45402
(937) 227-3733
rraether@ficlaw.com

 

_____/s/_____
Charles B. Molster, III
Va. Bar No. 23613
Attorney for Megan Christina Aaron, *et al.*
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC  20006
(202) 282-5000 (phone)
(202) 282-5100 (fax)
cmolster@winston.com