IN THE UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| GREGORY THOMAS BERRY, *et al.*, | : |
| Plaintiffs, | : |
| v. | :  Civil Action No.: 3:11CV754 |
| LEXISNEXIS RISK & INFORMATION ANALYTICS GROUP, INC., *et al.*, | : |
| Defendants. | : |
| | : |
| | : |

**MEMORANDUM IN SUPPORT OF JOINT MOTION TO CORRECT MISREPRESENTATIONS OF THE WATTS GUERRA, L.L.P. OBJECTOR GROUP**

Plaintiffs Gregory Thomas Berry, Summer Darbonne, Rickey Millen, Shamoon Saeed, Arthur B. Hernandez, Erika A. Godfrey and Timothy Otten, individually and on behalf of all others similarly situated, ("Plaintiffs"), and Defendants Reed Elsevier Inc., LexisNexis Risk Solutions FL Inc., and LexisNexis Risk Data Management, Inc. ("Defendants") (collectively, "the Parties") respectfully submit this memorandum of law in support of their Joint Motion to Correct Misrepresentations of Attorney Ryan Thompson ("Thompson") and his law firm, Watts Guerra, L.L.P. (collectively "Watts Guerra").

**I.  INTRODUCTION**

The Parties propose a national class action settlement that is complex and substantial. In accordance with Rule 23(e), the Parties have submitted the proposed Settlement to the Court, first to Magistrate Judge Lauck and then to the District Court, for preliminary approval. The Court has approved and ordered a national notice program that was designed to reach the greatest

number of Class Members. The notice — provided online and by publication — was neutral, meaningful, and truthful. (Doc. No. 63-5 at 47–72.)

However, with tens or even hundreds of millions of possible class members, it was inevitable that professional objectors would appear. Watts Guerra, the lead firm behind the Aaron Objectors (Doc. No. 72), has appeared in television commercials and has created and published a website that provides objectively false and misleading information regarding the preliminarily approved Settlement Agreement. Through the website, television commercials, and on-line videos ("Marketing Campaign"), Thompson has improperly solicited Class Members to retain his firm by, in some instances, concealing the existence of a settlement altogether, or when he discloses the pendency of a settlement, by creating false and/or misleading impressions regarding settlement consideration to the Rule 23(b)(2) class. The Watts Guerra Marketing Campaign has caused confusion that has hindered the settlement process and has undermined the notice process mandated by the Court — indeed, the Watts Guerra Marketing Campaign purposefully avoids any substantive discussion of, or convenient or conspicuous reference to, the Court-approved settlement websites and the Court-approved notice describing the settlement. The Parties respectfully request that the Court order Thompson and Watts Guerra to cease further misrepresentations and order Thompson and his firm to take corrective measures, as detailed below.

## II. FACTUAL BACKGROUND

### A. THE COURT HAS APPROVED AND ORDERED AN ACCURATE CLASS NOTICE

On November 14, 2011, Plaintiffs sued Defendants alleging violations of the Fair Credit Reporting Act ("FCRA"). After extensive litigation, mediation, settlement discussions, and additional discussions, the Parties reached an agreement to settle this case (the "Settlement

Agreement"). The Parties submitted the Settlement Agreement to the Court and moved for its preliminary approval on March 15, 2013. (Doc. No. 61.)

On April 29, 2013, this Court preliminarily approved the Settlement Agreement. (Doc. No. 67.) In that Order, the Court delineated the proper form and substance of the notice the Parties would provide to absent Class Members. (*Id.* at 7.) Specifically, the "Court approve[d] the form and substance of the Notice Plan proposed in the Settlement Agreement and the notices of class action settlement . . ." and stated that the "proposed notices *concisely and clearly state, in plain, easily understood language*, the nature of the action; the definition of the classes certified; the class claims, issues, and defenses; that a class member may enter an appearance through counsel if the member so desires; and the binding effect of a class judgment on class members." (*Id.*, emphasis added.) A copy of the approved form of class notice is attached as Exhibit A. The Court also ordered that "the following attorneys are designated class counsel under Rule 23(g)(l): Leonard Bennett and Matthew Erausquin of Consumer Litigation Associates, P.C., James A. Francis, David A. Searles, John Soumilas, and Erin A. Novak, of Francis & Mailman PC, Michael A. Caddell, Cynthia B. Chapman, and Craig C. Marchiando, of Caddell & Chapman, and Dale W. Pittman, of The Law Office of Dale W. Pittman, P.C." (*Id.* at 6.)

### B. THE WATTS GUERRA GROUP'S COMPETING NOTICE IS MATERIALLY FALSE

After Watts Guerra entered an appearance on behalf of the Aaron objectors, counsel for the parties became aware of advertising regarding the settlement from Watts Guerra[1] in television commercials, on a website, **www.BringaClaim.com** ("the Website"), and in on-line

---

[1] The Website is registered to attorney Ryan Thompson of Watts Guerra.

[2] As discussed below, Watts Guerra's e-mail solicitation list is likely derived from its questionable "work" in a

3

videos. Screen prints from the website are attached hereto as Exhibit B. This Marketing Campaign continues to make false and misleading representations, expressly and by omission, regarding the preliminarily approved Settlement Agreement in this case. For example:

- The Marketing Campaign is squarely directed at members of the class provisionally certified for settlement purposes. **The Marketing Campaign does not advise class members that this Court has already appointed Class Counsel to represent them, and it does not disclose the identity of the Class's lawyers**.

- The Marketing Campaign's **television commercials and videos make no mention of the settlement websites or the forms of notice approved by the Court**.

- The Marketing Campaign's **Website avoids any direct mention of, or convenient or conspicuous reference to, the Court-approved settlement websites and the Court-mandated notice**. A Website sub-page, titled "The Berry Settlement," provides a biased and incomplete description of the settlement and misleading information about the FCRA. (Ex. B at. 1–4.)

- The Marketing Campaign's **website is registered as www.BringaClaim.com, falsely suggesting that consumers responding to Watts Guerra can make a monetary claim in this settlement**[2]. The **television commercial exhorts absent class members to "Call to File Your Claim Now!"**

- The **Marketing Campaign suggests that Rule 23(b)(2) class members receive no benefits from the settlement**. (Ex. B at 1.) For example, Watts Guerra offers **no mention of** the benefits of the **actual structure** of the Rule 23(b)(2) class settlement **or** class member **retained rights to seek actual damages, or the monetary benefits of receiving free annual reports**.

- The Marketing Campaign **makes misleading promises** of future success without required disclaimers: "Ultimately if we're able to successfully object on your behalf and then bring a claim against LexisNexis and prove violations of the Fair Credit Reporting Act, **we'll send you a check in the mail**." (Ex. C.)

---

[2] As discussed below, Watts Guerra's e-mail solicitation list is likely derived from its questionable "work" in a previous FCRA class settlement, *In Re TransUnion Privacy* in which the pool of responding "objectors" in this case actually were submitting a settlement claim for money.

4

- The **Marketing Campaign does not describe, objectively or otherwise, the consideration provided** for in the settlement. It completely fails to describe Defendant's agreement to fundamentally restructure the products that are the focus of this action to address the very concerns that motivated the suit.

- The Marketing Campaign does not disclose the risks of continuing to litigate, including the risk of losing the case and of losing the agreed-upon injunctive relief, the potential liability for non-prevailing party costs assessed pursuant to Fed. R. Civ. P. 54(d), and the potential liability for the Defendant's attorneys' fees pursuant to 15 U.S.C. §1681o(b). Instead, this **advertisement directed at residents of all 50 states explicitly promises that continued litigation is "risk free."**[3]

- The **Marketing Campaign notably fails to disclose that the Watts Guerra retainer agreement entitles Watts Guerra to recover from client members of the Rule 23(b)(3) class 45% of the amounts to which such class members are already and automatically entitled, without reduction for attorneys' fees, under the Settlement Agreement. The Watts Guerra retention agreement referred to in the Marketing Campaign thus effectively awards Watts Guerra attorneys' fees, without Court approval, for a settlement Watts Guerra played no role in producing**.

Attached as Exhibit D is a chart that provides a more complete description of the misrepresentations and omissions that form the heart of the Marketing Campaign, including information that Thompson and Watts Guerra have displayed, and continue to display,[4] on the Website, (Ex. B), and in two videos, one of which is embedded on the Website homepage (collectively "the Videos") (Ex. C).[5]

---

[3] Watts Guerra's communications may also fail to comply with applicable state bar advertising rules, including Virginia's Rule of Professional Conduct 7.3(c) (which at a minimum would govern Watts Guerra's solicitation and relationship with Virginia consumers) requiring a disclosure at the beginning and ending of a recorded or electronic communication that it is "Advertising Material," as well Thompson's own Texas Disciplinary of Rules of Professional Conduct Rule 7.04(h). As the Parties have not reviewed all such communications – and have access only to those publically available online – they cannot and do not now make such formal allegation.

[4] Last visited October 17, 2013.

[5] The other video is available at http://www.ispot.tv/ad/72lV/watts-guerra-consumer-report .

5

## C. THE WATTS GUERRA GROUP BUSINESS MODEL

As one federal judge eloquently put it, "'[t]he remoras are loose again.'" *In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1107, 1108 (D. Minn. 2009); *see also Graco, Inc. v. Techtronic Indus. N. Am., Inc.*, No. 09-cv-1757, 2010 WL 915213, at *4 n.6 (D. Minn. Mar. 9, 2010). This is not the first time Thompson and his firm, Watts Guerra, LLP ("Watts Guerra"), have made misstatements to drum up profits for their firm to the detriment of a class in order to insert their own attorneys' fee claim into an existing class settlement. Watts Guerra has created a business focused on soliciting and collecting "clients" who are already class members on the brink of receiving class settlement benefits and then filing objections to the settlement or pursuing individual actions in order to profit off of the already established class settlement.

In fact, this is exactly what Watts Guerra accomplished in the class action *In re Trans Union Corporation Privacy Litigation* ("*In re Trans Union*"), Civil No. 1:00cv4729 (N.D. Ill.). *In re Trans Union* was a multi-district litigation originally filed in 2000 that consolidated claims of consumers from cases dating back to 1998. The *In re Trans Union* plaintiffs first filed a motion for class certification on October 15, 2004 (Doc. No. 159). Notice of the *In re Trans Union* class action was sent to class members during the summer of 2008,[6] and the Court gave final approval of the settlement on September 17, 2008.[7] The settlement consisted of a $75 million settlement fund in which Class members' registrations to be included in the settlement were due in 2008.[8] However, the settlement also gave every class member who did not want to participate in the benefits under the settlement until September 17, 2010 to pursue an

---

[6] *In re Trans Union Corp. Privacy Litig.*, Civil No. 1:00cv4729 (N.D. Ill. Aug. 25, 2010), Doc. No. 781, at 1.

[7] *In re Trans Union Corp. Privacy Litig.*, Civil No. 1:00cv4729 (N.D. Ill. Sept. 17, 2008), Doc. No. 515.

[8] *In re Trans Union Corp. Privacy Litig.*, Civil No. 1:00cv4729 (N.D. Ill. Aug. 25, 2010), Doc. No. 781, at 1.

individual lawsuit.[9] After over a decade of litigation, Mr. Thompson and Mikal Watts, another partner of Watts Guerra, first entered their appearances in *In re Trans Union* in April of 2010.[10]

In an effort to cash in on the *In re Trans Union* settlement fund, Watts Guerra embarked on a large-scale campaign to collect as many consumers as possible as "clients" in order to collect attorneys' fees and a portion of the settlement fund in that case. Watts Guerra ran informational ads on national television networks, including ESPN, Fox News, and the NFL Network, informing consumers of the lawsuit and that a deadline existed to assert a claim.[11] A consumer could then retain Watts Guerra to assert a claim in *In re Trans Union* on his or her behalf by merely completing a questionnaire on the Watts Guerra website and then submitting an electronic agreement. (Copies of this questionnaire and agreement, attached as Exhibit E, reflect a similar approach taken by Watts Guerra in this case (*see* Exhibit F) even though there is no claim process here.) Many, most or maybe even all of the Watts Guerra "clients" solicited from *In re TransUnion* claimants[12] through the present (and misnamed) Watts Guerra "www.BringAClaim.com" website believe they have now submitted a "claim" for settlement money (as in *In re TransUnion*) rather than "objecting" to this settlement.

In the *In re Trans Union* litigation, Watts Guerra used its mass solicitation "infomercial" pitch to obtain approximately 65,000 "client" claimants in a class litigated and settled by other Plaintiffs and attorneys. Its fee agreement with these "clients" permitted it to obtain 45 to 50% of a settlement of these claims, without any proof of the identity of these

---

[9] *Id*.

[10] Watts Guerra was represented on its appeal in the *In re Trans Union* matter by its current co-counsel, Winston & Strawn LLP. *In re Trans Union Corp. Privacy Litig.*, 664 F.3d 1081, 1082 (7th Cir. 2011).

[11] *In re Trans Union Corp. Privacy Litig.*, Civil No. 1:00cv4729 (N.D. Ill. Aug. 13, 2010), Doc. No. 775, at 4.

[12] Watts Guerra Group's extensive e-mail list from *In Re Trans Union* was likely its path to the smaller subset of names it claims as clients in this case.


supposed individuals or that they even existed. For example, no safeguards existed to ensure that one could not submit multiple "click through" identities. The *In re Trans Union* District Court described this disruption of its supervised class settlement:

> Much to the surprise of those parties and the court, several groups of lawyers advertised heavily on the internet that there was free money to be had as a result of this settlement. Included among the lawyers' solicitations are the following excerpts from a law firm in Texas:
>
> The **Trans Union Class Action Settlement Lawyers** at the renowned litigation firm of **Watts** Guerra Craft LLP are currently handling thousands of claims against United States credit reporting giant **TransUnion.** The claims and related lawsuits against **TransUnion** focus on issues arising from a 2008 **class action settlement** with the credit reporting Agency.
>
> While the initial phase of the **settlement** described above has since expired, there is still a right to make a direct claim against the $75 million **settlement** fund as a result of a unique provision placed in the **TransUnion class action settlement** agreement. That provision allowed for persons to make "post-settlement" claims. Fill out our form today to see if you qualify to make a post **settlement** claim. If you had at least one form of credit, or a loan of any type between 1987 and 2000, you will likely qualify. Sign up today to make your claim against **TransUnion** for a portion of the $75 million **settlement** fund!

*In re Trans Union Corp. Privacy Litig.*, 00 C 4729, 2011 WL 918396, at *3 (N.D. Ill. Mar. 14, 2011) (emphasis in original). The District Court explained that the Watts Guerra Group's internet campaign statements (as is also true in this matter), were misleading on multiple fronts:

> The statements were inaccurate in a number of ways. Most egregiously, the law firm of Watts Guerra Craft LLP ("Watts Guerra") is most definitely not "The Trans Union Class Action Settlement Lawyers." That honor goes to the lawyers appointed by the court to represent the class. Even the website's URL is misleading; it suggests an official site. Moreover, the claims being solicited are not made "against the $75 million settlement fund," a term also (improperly) employed by the Heenan Law Firm in Montana. They were to be made against Trans Union, which then would receive reimbursement from the fund, subject to objections by class counsel.

8

*Id*. at *3 n.6.[13]  Anecdotal accounts of Watts Guerra "client" confusion followed.[14]

This is not the only time that Watts Guerra has been accused of such conduct. Mr. Watts attempted to file "emergency" claims for an alleged 26,000 clients in the multi-district litigation regarding the BP oil spill in 2010, *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* Civil No. 2:10md2179 (E.D. La.) [hereafter "*In re Oil Spill*"].[15]  However, the legitimacy of Mr. Watts' "client" list was questioned, and it was later discovered that some of these alleged clients had never heard of or spoken to Watts Guerra.[16]  A portion of Watts Guerra's client list claimed never to have hired Watts Guerra.[17]  One such person, Tim Nguyen, attempted to file a claim with the Gulf Coast Claims Facility, an office tasked with administering BP's $20 billion fund, only to be told that he could not file a claim because Mikal Watts had already filed one on his behalf.[18]  However, according to Mr. Nguyen, "I never signed up with anybody."[19]  Furthermore, Mr. Watts had listed Mr. Nguyen as a Louisiana shrimper rather than his true occupation as a Mississippi shipyard worker.[20]  Similarly, Felix Cao, a law student at Loyola University in New Orleans at the time, received a letter from Watts Guerra, as part of a mailing campaign to a nearby population of Vietnamese decent,

---

[13] On appeal of the District Court decision resolving a collateral matter regarding Watts Guerra's fee grab, Judge Posner was similarly critical of Watts Guerra's strategic conduct. *In re Trans Union Corp. Privacy Litig.*, 664 F.3d 1081, 1083 (7th Cir. 2011) ("Watts Guerra Craft, the law firm that represented the individual claimants, though it did nothing to create the fund out of which the settlements of its clients' claims will be paid, stands to receive from $10 to $15 million in attorneys' fees, and that money too will come out of the class settlement fund.").

[14] *See, e.g.*, http://www.sueeasy.com/class_action_detail.php?case_id=627 (last visited October 17, 2013); http://www.fatwallet.com/forums/finance/1105834/?start=40 (last visited October 17, 2013).

[15] *See* Campbell Robertson & John Schwartz, *Many Hit by Spill Now Feel Caught in Claim Process*, N.Y. Times, Apr. 18, 2011.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

directing him to send financial records to Watts Guerra and further instructing, "Do not sign anything from BP or anyone else except Watts Guerra Craft."[21] Further, according to Cao: "I was shown a retainer I supposedly signed, but I never signed it."[22] Mr. Cao went on to claim, "I looked at it, and it definitely wasn't me."[23]

In fact, Mr. Watts is currently under investigation by the federal government for allegations that he claimed to represent potential class members in the *In re Oil Spill* litigation who had never so much as even contacted, let alone hired, his firm. Ultimately, in February of this year, Secret Service agents raided Mr. Watts's San Antonio, Texas offices seeking evidence related to these claims.[24] Mr. Watts is now under investigation by the federal government relating to these allegations of a falsified client list in the *In re Oil Spill* litigation.[25] Mr. Watts quickly tendered his resignation from litigation of that case to the court in March in the wake of these allegations.[26]

---

[21] *Id*.

[22] Guillermo Contreras, *S.A. Democratic Stalwart Eyed*, http://www.mysanantonio.com/news/local_news/article/S-A-Democratic-stalwart-eyed-4311412.php; Guillermo Contreras, *Feds Raid Offices of BP Plaintiff Attorney*, HOUSTON CHRONICLE, Feb. 27, 2013.

[23] *Id*.

[24] *See* Guillermo Contreras, *S.A. Democratic Stalwart Eyed*, http://www.mysanantonio.com/news/local_news/article/S-A-Democratic-stalwart-eyed-4311412.php; Guillermo Contreras, *Feds Raid Offices of BP Plaintiff Attorney*, HOUSTON CHRONICLE, Feb. 27, 2013; *see also* Greg Ryan, *Criminal Probe Drives Deepwater Atty From Plaintiffs Team*, LAW360, Mar. 14, 2013.

[25] *See* Marilyn, Tennissen, *Watts Investigated for Falsifying Client List to Get on BP Plaintiffs Steering Committee*, Southeast Texas Record, Mar. 5, 2013; Guillermo Contreras, *S.A. Democratic Stalwart Eyed*, http://www.mysanantonio.com/news/local_news/article/S-A-Democratic-stalwart-eyed-4311412.php; Greg Ryan, *Criminal Probe Drives Deepwater Atty From Plaintiffs Team*, LAW360, Mar. 14, 2013.

[26] *In re Oil Spill*, Civil No. 2:10md2179 (E.D. La. Mar. 13, 2013) (Doc. No. 8894); *see also* Greg Ryan, *Criminal Probe Drives Deepwater Atty From Plaintiffs Team*, LAW360, Mar. 14, 2013.

## III. LEGAL ARGUMENT

### THE COURT SHOULD ISSUE A TAKE DOWN ORDER REQUIRING WATTS GUERRA TO IMMEDIATELY STOP THE CONTINUED DISSEMINATION OF MISINFORMATION.

Any communications with class members must be objective, neutral and truthful. *See Erhardt v. Prudential Grp., Inc.*, 629 F. 2d 843, 846 (2d Cir. 1980) (explaining that communications with class members that are "factually or legally incomplete, lack objectivity and neutrality or contain untruths" are misleading and confusing and thus improper); *Law Offices of Leonard I. Desser v. Shamrock Commc'ns, Inc.*, No. JKB-12-2600, 2013 U.S. Dist. LEXIS 81302, at *4 (D. Md. June 10, 2013) ("If putative plaintiffs are to be contacted regarding this lawsuit, then it is important to a fair resolution of the case that communications with them are neutral, balanced, and complete.").

This is especially true where, as here, any misleading information threatens to influence Class Members' choices by leading them to object to a valuable settlement and to retain counsel other than Class Counsel approved by the Court (at an additional fee of 45% of any recoveries):

> Objectors to a class settlement or their attorneys may not communicate misleading or inaccurate statements to class members about the terms of a settlement to induce them to file objections or to opt out. If improper communications occur, curative action might be necessary, such as extending deadlines for opting out . . . or voiding improperly solicited opt outs and providing a new opportunity to opt out.

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.33 (2008). *See also* 2 MCLAUGHLIN ON CLASS ACTIONS § 11:1 (9th ed. 2012); *Hinds County v. Wachovia Bank, N.A.*, 790 F. Supp. 2d 125, 134 (S.D.N.Y. 2011); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 442 (S.D. Tex. 1999); *Georgine v. Amchem Prods. Inc.*, 160 F.R.D. 478, 498 (E.D. Pa. 1995).

This Court has the authority to cure the adverse effects of the Marketing Campaign on the class. The All Writs Act, 28 U.S.C. § 1651(a), authorizes courts to enter curative orders in the

context of class action settlement to prevent frustration of the settlement. *See Scardelletti v. Rinckwitz*, 68 Fed. App'x 472, 478 (4th Cir. 2003) (affirming injunction issued by district court under the All Writs Act to protect class action settlement); *In re Visa Check/Mastermoney Antitrust Litig.*, No. CV-96-5238 (JG), 2006 U.S. Dist. LEXIS 19755, at *10-11 (E.D.N.Y. Mar. 31, 2006) ("[The district court] may issue orders necessary to protect the settlement from threats by both parties and non-parties."); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-md-01720 (E.D.N.Y. March 29, 2013), Proposed Order Granting Relief Requested in Letter Brief Date March 29, 2013, at 2, Doc. No. 1963-3 ("If, as Class Counsel contend, misleading or erroneous information is being disseminated to class members about the proposed settlement, I have the authority (and, in appropriate circumstances, the obligation) to require that the information be corrected.") The curative orders may extend to anyone "in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977). In addition, under the Act, courts may "prohibit communications with the class members entirely, [and] compel communications correcting misleading statements." *Visa Check*, 2006 U.S. Dist. LEXIS 19755, at *14.

Rule 23(d) of the Federal Rules of Civil Procedure also gives district courts authority to regulate communications by parties and their counsel with class members, including during a period when class members decide whether to object to the settlement. As the Supreme Court has explained, "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *Georgine*, 160 F.R.D. at 496, 489–90. Practices that have been considered sufficient to warrant a protective order under Rule 23(d) include "communications that coerce prospective class

members into excluding themselves from the litigation; communications that contain false, misleading or confusing statements; and communications that undermine cooperation with or confidence in class counsel." *Paulino v. Dollar Gen. Corp.*, No. 3:12-CV-752013, 2013 U.S. Dist. LEXIS 59371, at *24 (N.D. W. Va. Apr. 25, 2013).

Courts have required corrective remedies under Rule 23(d) when unauthorized communications to class members contain misleading information that could affect their decisions regarding the case. *See, e.g., Tedesco v. Mishkin*, 629 F. Supp. 1474, 1482-85 (S.D.N.Y. 1986) ("Unless preventive and punitive action is taken, Mishkin is likely to continue his unlawful attempts to subvert the conduct of this class action by false, misleading and coercive communications to class members. Because of this potential for abuse, the court 'has both the duty and the broad authority to . . . enter appropriate orders governing the conduct of counsel and parties.'") (citations omitted); *Georgine*, 160 F.R.D. at 496, 501–02, 518-19 (ordering new opt-out phase where objectors sent communications to class members that "contain[ed] one-sided attacks on the proposed settlement without any mention of its benefits" that "likely confused and misled class members, caused a high number of opt-outs, and therefore, had an adverse effect on the administration of justice"); *In re Payment Card Interchange Fee Antitrust Litigation*, *supra*, at 2 (ordering corrective banners on websites and other curative communications); *In re Lupron Mktg. & Sales Practices Litig.*, MDL No. 1430 Civ. A. 01-10861-RGS, 2005 WL 613492, at *1 (D. Mass. Mar. 16, 2005) (court sanctioned intervenors for sending unauthorized and misleading communications to class members). As if addressing this very case, the California Northern District Court stated:

> The court is particularly troubled by the distribution of a "notice" not authorized by the court and by the assembly-line pre-authorization of class "opt outs." Moreover, the solicitations inadequately disclosed the risks inherent in pursuing a remedy as an individual, rather than as a

> class member, including the possibility of higher attorneys' fees and being subject to discovery. There is no identification of lead counsel or information about the court's supervision of a class action, particularly, its control of the certification process and payment of fees to counsel.
>
> In light of these findings, the court believes it is necessary both (1) to remedy any misleading statements that have already been made; and (2) to prevent any repetition of such conduct.
>
> Turning to the remedy for what has already happened, the court believes that it is necessary to provide curative notice to solicited class members, so that they are not confused about the nature of the notice that they received from the soliciting attorneys.

*In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1244–46 (N.D. Cal. 2000). Without question, at a minimum, the corrective action outlined in *In re McKesson* should be implemented here.

Class Members have a right to receive accurate and impartial information about the case and proposed Settlement, their options with respect to that proposed Settlement, and the consequences of their options to inform their decisions. Watts Guerra's unauthorized and misleading communications pose a real threat of confusing Class Members, fomenting opposition to the settlement through use of false pretenses, and undermining the Court-approved Notice processes. To remedy these problems and avoid future ones, the Parties request entry of a proposed Order (the "Take Down Order") (attached hereto as Exhibit G). The Take Down Order is required to immediately stop the continued dissemination of the misinformation complained of above. This proposed order requires the Watts Guerra firm to immediately take down any website, video, TV commercials or other advertising or communications with Class Members or cancel any future orders or plans for the same.

## IV. <u>CONCLUSION</u>

Watts Guerra has engaged in a Marketing Campaign of misinformation through statements and omissions which undermines the Court-approved Notice processes, foments

14

opposition to the settlement through use of false pretenses, and circumvents the Court's authority in approving attorneys' fees awards in connection with class action settlements. In order to protect the Class, corrective measures and Court supervision are required to mitigate the confusion caused by past communications — such corrective measures should include a prohibition against further misrepresentations.

Immediate attention is required to stop the proliferation of inaccurate and misleading information. Accordingly, the Parties request that the Court enter the Take Down Order as soon as practicable. The Parties intend to discuss further the contents of an Order with Watts Guerra to determine if an agreed order can be presented for the Court's consideration to correct the misinformation already communicated by Watts Guerra. If an agreement cannot be reached after Plaintiffs meet and confer with Watts Guerra, the Parties will ask the Court to enter an Order correcting such misinformation.

WHEREFORE, the Parties, by counsel, respectfully requests that the Court enter an Order: (1) granting their Joint Motion to Correct Misrepresentations of the Watts Guerra, L.L.P. Objector Group; (2) entering the proposed Order Granting Emergency Relief attached as Exhibit F to their Joint Memorandum in Support; (3) awarding the Parties their costs and expenses incurred herein; and (4) granting the Parties such further relief as the Court deems appropriate.

| | |
|---|---|
| **GREGORY THOMAS BERRY, SUMMER DARBONNE, RICKEY MILLEN, SHAMOON SAEED, ARTHUR B. HERNANDEZ, ERIKA A. GODFREY, AND TIMOTHY OTTEN, individually and on behalf of all others similarly situated** | **LEXISNEXIS RISK SOLUTIONS FL, INC., LEXISNEXIS RISK DATA MANAGEMENT, INC., AND REED ELSEVIER, INC.** |
| By:/s/Leonard A. Bennett | By:/s/David N. Anthony |
| Leonard A. Bennett<br>Virginia State Bar No. 37523<br>CONSUMER LITIGATION ASSOCIATES, P.C.<br>763 J. Clyde Morris Boulevard, Suite 1A<br>Newport News, Virginia 23601<br>Telephone: 757-930-3660<br>Facsimile: 757-930-3662<br>Email: lenbennett@clalegal.com | David Neal Anthony<br>Virginia State Bar No. 31696<br>TROUTMAN SANDERS LLP<br>Troutman Sanders Bldg<br>1001 Haxall Point<br>Richmond, VA 23219<br>Telephone: 804-697-5410<br>Fax: 804-698-5118<br>Email: david.anthony@troutmansanders.com |
| Michael A. Caddell<br>Cynthia B. Chapman<br>Craig C. Marchinado<br>CADDELL & CHAPMAN<br>1331 Lamar St., Suite 1070<br>Houston, TX 77010<br>Telephone: 713-751-0400<br>Facsimile: 713-751-0906<br>Email: mac@caddellchapman.com<br>Email: cbc@caddellchapman.com<br>Email: ccm@caddellchapman.com | Ronald Irvin Raether, Jr.<br>FARUKI IRELAND & COX PLL<br>500 Courthouse Plaza SW<br>10 N Ludlow St.<br>Dayton, OH 45402<br>Telephone: 937-227-3733<br>Facsimile: 937-227-3717<br>Email: rraether@ficlaw.com |
| James Arthur Francis<br>FRANCIS & MAILMAN PC<br>Land Title Building<br>100 S Broad Street 19th Floor<br>Philadelphia, PA 19110<br>Telephone: 215-735-8600<br>Facsimile: 215-940-8000<br>Email: jfrancis@consumerlawfirm.com | James Francis McCabe<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA 94105-2482<br>Telephone: 415-268-7011<br>Facsimile: 415-268-7522<br>Email: jmccabe@mofo.com<br><br>*Counsel for Defendants* |

Dale Wood Pittman
Virginia State Bar No. 15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A W Tabb St.
Petersburg, VA 23803-3212
Telephone: 804-861-6000
Facsimile: 804-861-3368
Email: dale@pittmanlawoffice.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on the 21st day of October, 2013, I electronically filed the foregoing Memorandum in Support of Joint Motion to Enjoin and Correct Misrepresentations of Attorney Ryan Thompson and Watts Guerra, L.L.P. with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to CM/ECF participants, and I hereby certify that I have mailed by United States Postal Service the document to any non-CM/ECF participants.

/s/Leonard A. Bennett
Leonard A. Bennett
Virginia State Bar No. 37523
*Counsel for Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1A
Newport News, Virginia 23601
Telephone: 757-930-3660
Facsimile: 757-930-3662
Email: lenbennett@clalegal.com