DATE: _____

## WATTS GUERRA CRAFT LLP
### Trans Union Litigation – Confidential Client Questionnaire

**CLIENT CONTACT INFORMATION**

First: _____ Middle: _____ Last: _____
Suffix: _____ Prior / Maiden: _____ Preferred name: _____
SSN: _____ DOB: _____ Sex: Male ○ Female ○
Mailing Address: _____
City: _____ State: _____ Zip Code: _____ County: _____
Phone 1: (___)_____ H○ W○ C○   Phone 2: (___)_____ H○ W○ C○
Phone 3: (___)_____ H○ W○ C○   (Select Home, Work, or Cell for each)
Email: _____
Employer: _____ Position: _____
Are you married?  Yes○ No○    Spouse's Name? _____
Do you speak English? Yes○ No○   Primary language? _____

**CLAIM RELATED INFORMATION** (Fill out to the best of your recollection)

1. Did you have a credit card between 1987 and 2000?   Yes ○   No ○
   a. If Yes, what bank(s) issued the card(s)? _____
   b. What year(s) did you have a credit card between 1987 and 2000? _____

2. Did you have a retail credit line (Sears card, etc.) between 1987 and 2000?   Yes ○   No ○
   a. If Yes, what store(s) issued the card(s)? _____
   b. What year(s) did you have retail credit between 1987 and 2000? _____

3. Did you have an automobile loan between 1987 and 2000?   Yes ○   No ○
   a. What year(s) did you have an automobile loan between 1987 and 2000? _____

4. Did you have a home loan between 1987 and 2000?   Yes ○   No ○
   a. What year(s) did you have a home loan between 1987 and 2000? _____

5. Did you have a student loan between 1987 and 2000?   Yes ○   No ○
   a. What year(s) did you have a student loan between 1987 and 2000? _____

6. Did you have any other consumer loans between 1987 and 2000?   Yes ○   No ○
   a. If Yes, what other kind(s) of loan(s) did you have? _____
   b. What year(s) did you have other consumer loans between 1987 and 2000? _____

7. Were you born a United States citizen?   Yes ○   No ○
   a. If No, when did you become a naturalized United States citizen? _____

8. Have you ever filed bankruptcy?   Yes ○   No ○
   If yes, please provide the year, court and case number: _____


EXHIBIT E

## I ACCEPT TRANS UNION'S OFFER

This is my formal election to **accept** Trans Union LLC's ("Trans Union's") cash offer to me in connection with the Compromise Settlement Agreement (the "CSA") dated May 27, 2011 between Trans Union LLC ("Trans Union") and my lead law firm Watts Guerra Craft LLP ("Watts" and my "Election," respectively).

Please ask **Trans Union to place my Election in line for payment** subject to the terms and conditions of the CSA.

SIGNED AND EFFECTIVE ON THIS THE ___ Jun 17, 2011

_Jennifer Bailey_ _____     __333593_____
Client Signature                                   Case Number

_jenniferbailey11@hotmail.com_____
Email Address

Your settlement check will be sent to your address on file with our Firm. If you would like to confirm, update, or change your address please provide the address where you want your settlement check sent in the space below.

Mailing Address: __1015 N. Avenue 51_____

City: __Los Angeles_____  State: __CA_____  Zip Code: __90042__

### FORMAL ELECTION

#### RECITALS:

WHEREAS, in 2010, I signed a Legal Representation and Consent to Counsel's Fee-Sharing Agreement [1] (my "Fee Agreement") engaging Watts and other law firms (collectively, "Counsel") to jointly represent me in the prosecution of certain claims against Trans Union in connection with its sale of certain target-marketing and firm-offer lists, which claims are the subject of an individual civil action filed on my behalf by Watts in the Texas Justice of the Peace Court, Precinct 5, Place 1, Nueces County, Texas, (the "JP Court") to prosecute my claims (such claims to be termed "Trans Union Claims" and such action to be termed a "Trans Union Action");

---

[1] Defined terms reflected in this Election shall be given their meaning set forth in the Fee Agreement or CSA, as the case may be, unless such terms are separately defined in this Election; in which case, the definition set forth in this Election shall control.

Page 1 – I Accept Trans Union's Offer

WHEREAS, I understand that Counsel negotiated the CSA on my behalf so that I would have an alternative to litigating my Trans Union Claims and Action, and I may accept or reject Trans Union's cash offer to me in my sole and absolute discretion;

WHEREAS, Counsel have presented to me the CSA for my review;

WHEREAS, in connection with the CSA, Trans Union has offered to pay me $443 in cash to settle my Trans Union Claims and Action, as a combination of (i) $412 in cash plus (ii) $31 in cash, as reimbursement for the filing fee paid by Counsel on my behalf and to the JP Court in connection with filing my Trans Union Action ("Trans Union's Offer");

WHEREAS, Counsel have advised me that they represent approximately 68,832 clients who, like me, are prosecuting Trans Union Claims and Actions;

WHEREAS, Counsel have advised me that they have been in mediation with Trans Union since November 2010, and the mediation has been led by a Federal magistrate judge located in Chicago acting on the order of the United States District Court, Northern District of Illinois, Chicago Division (the "Chicago District Court");

WHEREAS, Counsel have advised me that as a result of the mediation, Trans Union has determined to make Trans Union's Offer to me;

WHEREAS, Counsel have advised me that Trans Union is only making offers to those of Counsel's clients who qualify for an offer, based upon certain criteria established by Trans Union, and Trans Union reports that I meet its criteria;

WHEREAS, Counsel have advised me that **TRANS UNION'S OFFER TO EACH OF COUNSEL'S QUALIFIED CLIENTS, INCLUDING ME, IS THE SAME ($443); TRANS UNION HAS NOT OFFERED TO PAY ANY OF COUNSEL'S QUALIFIED CLIENTS MORE OR LESS THAN ME**; and, further, Trans Union has refused to offer anything to Counsel's unqualified clients;

WHEREAS, Counsel have advised me that Trans Union has split Counsel's qualified clients into two groups; and, Trans Union intends to pay the first group without making Trans Union's payment conditioned upon the Chicago District Court's approval of Trans Union's offers to such clients ("Group 1"), and Trans Union intends to pay the second group only upon the Chicago District Court's approval of Trans Union's offers to such clients ("Group 2");

WHEREAS, Counsel have advised me that the Chicago District Court may approve or reject Trans Union's Offer to me, if I am in Group 2;

WHEREAS, Counsel have advised me that Trans Union has determined that Group 1 will be made up of **THE FIRST 13,250 OF COUNSEL'S CLIENTS WHO ACCEPT TRANS UNION'S OFFER AND SIGN AND SUBMIT THIS ELECTION TO COUNSEL, AS**

Page 2 – I Accept Trans Union's Offer

Document Integrity Verified      EchoSign Transaction Number: 2UNC8JK4C56C3N

**SPECIFIED IN THE CSA**; and, Trans Union has determined that Group 2 will be made up of the balance of Counsel's clients who accept Trans Union's offer;

WHEREAS, <u>**COUNSEL HAVE ADVISED ME THAT THE ONLY WAY I CAN ACCEPT TRANS UNION'S OFFER IS TO SIGN AND SUBMIT THIS ELECTION TO COUNSEL**</u>;

WHEREAS, Counsel have encouraged me to promptly determine whether I want to accept or reject Trans Union's Offer and sign and submit my election accepting or rejecting same;

WHEREAS, Counsel have advised me that I may accept or reject Trans Union's Offer in my sole and absolute discretion;

WHEREAS, Counsel have advised me that they recommend I accept Trans Union's Offer;

WHEREAS, I have taken the opportunity to consult everyone from whom I would like advice in connection with whether to accept or reject Trans Union's Offer; and, Counsel have encouraged me to consult everyone from whom I would like advice in connection with whether to accept or reject Trans Union's Offer;

WHEREAS, I have determined to accept Trans Union's Offer even though I have no assurance that Trans Union will assign me to Group 1; and, indeed, if I am assigned to Group 2, I nevertheless accept Trans Union's Offer; and

WHEREAS, per my Fee Agreement with Counsel, I agreed (1) to pay Counsel Fees in the amount of 45% of my $443 and (2) to reimburse Counsel for their Case Costs, which consist of (a) the $31 filing fee Counsel paid on my behalf to the JP Court when filing my Trans Union Action and (b) Counsel's additional Case Costs, which include, without limitation, the cost of using the EchoSign technology (set at $20 in my Fee Agreement);

NOW, THEREFORE, in consideration of the foregoing facts and circumstances and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, I agree as follows:

1. I accept Trans Union's Offer;

2. Further, I instruct Watts to provide to Trans Union a true and accurate copy of my Election, so Trans Union may place my Election in line for payment subject to the terms and conditions of the CSA.

3. Further, upon Trans Union's payment to Counsel on my behalf of the $443, Trans Union's authorization that Counsel may distribute such $443 (vs. return it to Trans Union) and if the CSA is then in effect as to me, I:

Page 3 -- I Accept Trans Union's Offer

Document Integrity Verified    EchoSign Transaction Number: 2UNC8JK4C56C3N

      a.      Instruct Watts to promptly dismiss with prejudice my Trans Union Action;

      b.      Instruct Watts to promptly (1) deduct its Fees and Case Costs from my $443 recovery and distribute same to Counsel, (2) send me a check in the remaining amount ("My Net"), subject to the understanding that My Net will be at least $200 (meaning that the total amount of Fees and Case Costs deducted from the $443 will not exceed $243), and (3) include with my check a final statement showing how Watts determined My Net;

      c.      Fully, finally and forever release, relinquish and discharge my Trans Union Claims against Trans Union and Acxiom Corporation ("Acxiom"), as well as their respective past or present officers, directors, partners, agents, employees, shareholders, attorneys, accountants or auditors, consultants, legal representatives, predecessors, successors, assigns, parents, subsidiaries, divisions, joint ventures, affiliated entities and any entities that control Trans Union or Acxiom; and

      d.      Represent and warrant to Trans Union and Counsel that (a) when Counsel dismisses with prejudice my Trans Union Action, it shall extinguish my Trans Union Claims against Trans Union and Acxiom forever, (b) if I fully and finally release my Trans Union Claims, it shall extinguish my Trans Union Claims against Trans Union and Acxiom forever, (c) I have not assigned any or all of my Trans Union Claims to anyone (except in the ordinary course in connection with my Fee Agreement), (d) I am not now nor have I ever been (i) an officer, director or employee of Trans Union or Acxiom Corporation, (ii) a named plaintiff in (1) *In re TRANS UNION CORP. PRIVACY LITIGATION*, MDL No 1350, pending in the United States District Court, Northern District of Illinois, Chicago Division, (2) *Frey v. Trans Union*, Case No. 798893, pending in the Superior Court of California, County of Orange, California, or (3) *Andrews v. Trans Union LLC*, Case No. 02-18553, pending in the Civil District Court, Parish of Orleans, Louisiana, (iii) a lawyer for any of the named parties in the foregoing three actions, (iv) a judge or justice assigned to hear any matter in of the foregoing three actions, and (v) a staff member, spouse or child of any such judge or justice, (e) I have not released any or all of my Trans Union Claims, (f) my Trans Union Action is pending, and absent Trans Union's Offer, my acceptance of same and Trans Union's timely payment to Counsel on my behalf of the $443, I intend to prosecute my Trans Union Claims and my Trans Union Action to final judgment, (g) I have taken the opportunity to review the CSA and this Election and consider both to my complete and total satisfaction, (h) I have taken the opportunity to consult everyone from whom I would like advice in connection with the CSA and this Election to my complete and total satisfaction, and (i) I am under no pressure whatsoever from any person, entity or circumstance in my decision to accept or reject Trans Union's offer.

# TransUnion Election LLC Offer Accept



EchoSign Document History      June 17, 2011

| | |
|---|---|
| Created: | June 17, 2011 |
| By: | Ryan L. Thompson (transunion@wgclawfirm.com) |
| Status: | SIGNED |
| Transaction ID: | 2UNC8JK4C56C3N |

## "TransUnion Election LLC Offer Accept" History

- Widget created by Ryan L. Thompson (transunion@wgclawfirm.com)
  June 16, 2011 - 4:45 PM CDT

- Widget filled in by Jennifer Bailey (jenniferbailey11@hotmail.com)
  June 17, 2011 - 4:00 PM CDT - 67.127.255.57

- E-Signature verified by Jennifer Bailey (jenniferbailey11@hotmail.com)
  June 17, 2011 - 4:03 PM CDT - 67.127.255.57

- Signed document emailed to Ryan L. Thompson (transunion@wgclawfirm.com) and Jennifer Bailey (jenniferbailey11@hotmail.com)
  June 17, 2011 - 4:03 PM CDT

W|G|C EchoSign Document Exchange      Seriously Secured

## LEGAL REPRESENTATION AGREEMENT AND CONSENT TO FEE-SHARING AGREEMENT – TRANS UNION LITIGATION
### [EFFECTIVE ONLY ONCE SIGNED BY BOTH CLIENT AND WATTS]

I, _____, hereby employ the law firms of WATTS GUERRA CRAFT LLP ("Watts"), JLW LAW GROUP, LLP ("Weinstein"), D.J. POWERS ("Powers") and JOHN R. W. CRACKEN, P.C. ("Cracken," and together with Watts Weinstein and Powers, "Counsel") to represent me in claims and matters arising out of and resulting from Trans Union LLC's (and other related companies') violations of the Fair Credit Reporting Act after 1987 in connection with the sale of target marketing lists (which claims and matters, in combination with Counsel's other related clients' claims and matters, shall be termed the "TU Litigation").

In consideration of such legal services, I hereby assign and grant unto Counsel, as attorneys' fees ("Fees"), forty-five percent (45%) of any monies, interests or properties recovered by me prior to any party filing an appeal in connection with my case. In the event that any party files an appeal in connection with any ruling or judgment entered in my case, then I hereby assign and grant unto Counsel as Fees fifty percent (50%) of any monies, interests or properties recovered thereafter by me. **I UNDERSTAND THAT I DO NOT OWE COUNSEL ANY FEES UNLESS I MAKE A RECOVERY; AND THEN, ONLY TO THE EXTENT OF MY RECOVERY.**

Further, I understand and agree that Counsel shall represent thousands of clients in the TU Litigation and that the following aspects of joint representation have been disclosed to me: (1) that I may gain or lose some advantages if represented by separate counsel; (2) that Counsel cannot serve as an advocate for one client in the TU Litigation against any of their other clients, but instead must assist all of their clients in pursuing their common purposes, as a consequence of which I must be willing to make independent decisions without Counsel's advice concerning some matters; (3) that Counsel must deal impartially with each of their clients; (4) that information received by Counsel from or on behalf of any jointly represented client concerning the TU Litigation may not be confidential or privileged as between their other clients; (5) that Counsel shall be required to disclose information concerning the TU Litigation to any jointly represented client if Counsel knows that the information would likely materially affect the position of that client, even if requested by another jointly represented client (for example, me) not to do so, except to the extent all clients consent to Counsel keeping mutually agreed upon specified information confidential (and there is no such agreement among Counsel's clients at this time); (6) that Counsel shall be required to correct any false or misleading statement or omission concerning the TU Litigation made by or on behalf of any jointly represented client, if Counsel knows failure to do so would likely materially affect the position of any client, even if requested by another jointly represented client (for example, me) not to do so; (7) that one or all of Counsel may not be able to continue representing any of their clients if required to withdraw from their representation; and (8) that the representation of all clients by Counsel shall not necessarily expedite handling of the TU Litigation or reduce my Fees and Case Costs, as defined below.

Further, I understand and agree that Counsel shall incur and pay all costs and expenses they deem reasonable and necessary in the prosecution of my claims or case and the TU

Page 1
Privileged, Confidential and Proprietary

Litigation (all such costs and expenses to be termed herein "Case Costs"). I understand and agree that Case Costs include, but are not limited to, office costs and expenses attributable to Counsel's representation of me, other than general overhead costs and expenses, and such reimbursable office costs and expenses include, but are not limited to, costs and expenses in connection with document imaging (at $0.25 per page), photograph, video and computer image production, ground mileage, air mileage, other travel costs and expenses, over time, long-distance telephone calls, fax transmissions, U.S. mail and electronic mail. Further, I understand and agree that Case Costs, include, but are not limited to, costs and expenses in connection with goods or services provided by persons or entities unaffiliated with Counsel, including, but not limited to, consulting and/or testifying experts, jury consultants, specialized legal counsel for bankruptcy proceedings, interpreters, investigators, court reporters, videographers and document production and imaging companies. Further, I understand and agree that Case Costs include, but are not limited to, a one-time processing and handling fee of $20.00, so that I may sign and submit to Counsel documents on-line, which documents may include, but are not limited to, this Agreement, one or more affidavits, one or more written discovery documents that applicable law compel me to sign, a compromise settlement agreement and related full and final release, if and when I make an eventual recovery in connection with my Claims, and similar TU Litigation documents; I understand and agree that use of on-line signature technologies (e.g., EchoSign) facilitate my communication with Counsel, aide Counsel in their prosecution of my Claims and enable Counsel to avoid (and me to save) Case Costs in the form of document imaging and postage that Counsel would otherwise incur, if Counsel had to ship documents to me for signature, and I had to sign and return same to Counsel. **I UNDERSTAND THAT I DO NOT OWE COUNSEL REIMBURSEMENT FOR ANY CASE COSTS UNLESS I MAKE A RECOVERY; AND THEN, ONLY TO THE EXTENT OF MY RECOVERY.**

Further, I understand and agree that Counsel shall not prosecute my claims, if any, against TU for actual damages and, instead, shall only prosecute my claims against TU for statutory and punitive damages, attorneys' fees and case costs. Therefore, I understand and agree if Counsel files a case on my behalf, they will omit any claim for actual damages, and by doing so, I will after September 17, 2010, effectively waive forever my claims, if any, for actual damages.

Further, I understand and agree that Counsel shall be representing thousands of clients in the TU Litigation and, therefore, many of Counsel's Case Costs shall be incurred for the benefit of multiple clients, including, but not limited to, Case Costs in connection with experts, jury consultants, specialized legal counsel for bankruptcy proceedings, interpreters, investigators, court reporters, videographers and document production and imaging companies. I understand and agree that if I make a recovery, I shall reimburse Counsel for the Case Costs (1) specific to my case plus (2) my share of Case Costs common to my case and one or more other cases ("Common Case Costs"); and, further, that Counsel shall determine how their clients, including me, shall reasonably share such Common Case Costs; and, I agree to whatever method Counsel determines to implement, so long as it is reasonable in any context.

**FURTHER, I UNDERSTAND AND AGREE THAT COUNSEL'S FEES SHALL BE CALCULATED BASED ON MY GROSS RECOVERY; THAT IS, BEFORE I REIMBURSE COUNSEL FOR SPECIFIC OR COMMON CASE COSTS.**

Page 2
Privileged, Confidential and Proprietary

Further, I understand and agree that this Agreement is binding upon me and my successors, representatives and assignees. Further, if at any time one or more of Counsel determines to discontinue the prosecution of my claims or case, I understand and agree such Counsel may withdraw from my representation. With respect to such withdrawal, and if all Counsel withdraw, then Counsel shall give me sufficient notice, so that I may have a reasonable time, not to exceed thirty (30) days, to obtain substitute counsel in the event that I wish to continue the prosecution of my case. And, if I wish to obtain substitute counsel, I shall promptly secure such substitute counsel who shall promptly enter an appearance in my case and substitute for Counsel as my attorney of record in my case.

Further, I understand Counsel shall not compromise or settle my claims or case without my consent.

Further, I agree to keep Counsel informed of my correct street address, work and mobile telephone number and email address; and, in the event Counsel are unable to locate me after a reasonable effort, I understand and agree that Counsel may without my consent take whatever actions they deem reasonable and necessary to withdraw from representing me, because it is my job (not Counsel's job) to ensure that Counsel can promptly contact me regarding any matter at any time.

Further, I understand and agree that all Fees and Case Costs shall be determined and then first taken from any taxable sums recovered in the prosecution of my claims and case and second from any non-taxable sums recovered in the prosecution of my claims and case, such that I exhaust the taxable sums before reaching and exhausting the non-taxable sums.

Further, by entering into this Agreement, I represent and warrant to Counsel and all others to whom it may concern that (1) I was not solicited by one or more of Counsel or anyone on their behalf to enter into this Agreement, (2) I entered into this Agreement exclusively of my own free will after ample opportunity to both (a) consult legal counsel independent of Counsel regarding any issues of interest to me and (b) consider engaging such other legal counsel in lieu of Counsel and (3) none of Counsel have in any way, shape or form promised me anything in connection with Counsel's prosecution of my claims or case, except as set forth in this Agreement; indeed, I acknowledge the outcome of any litigation is uncertain and, therefore, I may make no recovery whatsoever from my claims or case.

Further, I understand and agree that Counsel shall be jointly responsible for representing me, and Watts shall serve as lead counsel responsible day in and day out for leading the prosecution of my claims and case, and Weinstein, Powers and Cracken shall serve as associate counsel providing lead counsel material assistance, when and as lead counsel reasonably requests same; further, I understand and agree that none of associate counsel shall appear on the pleadings in my case, except to the extent they later agree to do so; such associate counsel have already made a material contribution to their representation of me through their efforts culminating in their selection of Watts as lead counsel for the TU Litigation, their preparation of Counsel's demand upon Trans Union LLC dated March 15, 2010, and their participation in all matters culminating in the filing of a case on my behalf to preserve my claims. Further, I understand and agree that Counsel shall share the Fees based upon the following formula: (1) If I or Counsel enter into settlement agreement with TU in connection with one or more of my claims or case, or, in the alterative, if I make a recovery in connection with one or more of my claims or case,

Page 3
Privileged, Confidential and Proprietary

before December 31, 2010, then 50.0% of the Fees shall be paid to Watts, 16.67% of the Fees shall be paid to Weinstein, 16.67% of the Fees shall be paid to Powers and 16.66% of the Fees shall be paid to Cracken; or, (2) in all other outcomes, then 65.0% of the Fees shall be paid to Watts, 11.67% of the Fees shall be paid to Weinstein, 11.67% of the Fees shall be paid to Powers and 11.66% of the Fees shall be paid to Cracken. **I UNDERSTAND THAT THIS FEE-SHARING AGREEMENT BETWEEN COUNSEL SHALL NOT INCREASE THE FEES OWED BY ME TO COUNSEL.**

Further, I hereby approve in advance and ratify Counsel's determination regarding when, whether and how to: (1) engage contract counsel and local counsel to assist Counsel and the terms and conditions of each such engagement (so long as the costs and expenses in connection with such counsel do not increase my obligation to pay Counsel Fees or reimburse Counsel for Case Costs); (2)(a) represent thousands of clients, including me, in the TU Litigation and (b) select which persons to accept as clients and include in the TU Litigation (I understand that Counsel may select one or more clients whose claims or case are later discounted or altogether dismissed, and such discount or dismissal may have a material adverse affect on me; nevertheless, I approve in advance and ratify Counsel's selection of all such clients); (3) bring my case under any state or federal law; (4) bring my case in any state or federal court; (5) plead for statutory and punitive damages and for recovery of some or all of my Fees and/or Counsel's Case Costs, if recoverable; (5) exclude any plea for actual damages (because I understand and agree that Counsel shall not prosecute a claim on my behalf for actual damages); (6) prosecute to conclusion one or more cases on behalf of one or more of Counsel's clients (including or excluding me; to be determined by Counsel), including, but not limited to, a strategy pursuant to which Counsel would file all of Counsel's clients' cases, including mine, but then seek to stay all but a handful of cases (including or excluding mine; to be determined by Counsel), which cases Counsel would then litigate to conclusion as "Bellwether" cases before agreeing to lift the stay pending in one or more other cases.

Further, I understand and agree that if conflicts arise between me and one or more of Counsel's other clients, then my only remedies shall be to either waive such conflicts or terminate Counsel's representation of me; and that I agree not to seek disqualification of Counsel in any way, shape or form from their continued representation of any of their other clients in connection with the TU Litigation (including those with whom I have a conflict), and I hereby agree to expressly and irrevocably waive such right to seek Counsel's disqualification as condition for Counsel's willingness to represent me in the TU Litigation.

Further, I agree to use my best efforts at all times to assist Counsel in their representation of me. For example, I agree to use my best efforts at all times to preserve any and all privilege and confidentiality in connection with data shared by Counsel with me.

Further, I understand and agree that Counsel may maintain a TU Litigation website and provide me access to same; and, if so, I shall use that website as my principal means of collecting data in connection with the TU Litigation, as Counsel posts new data to the website to keep me reasonably informed regarding the progress of my case. I understand and agree that Counsel cannot both represent thousands of clients and provide a personal (or one-on-one) update to each; that is impractical; so, given the circumstances of the TU Litigation, I agree to look to Counsel's TU Litigation website for updates.

Page 4
Privileged, Confidential and Proprietary

Further, I understand and agree that the statute of limitations in connection with my claims expires on September 17, 2010; and, **I UNDERSTAND AND AGREE THAT IF I HAVE NOT RECEIVED (BY EMAIL OR OTHERWISE) A COPY OF THIS AGREEMENT SIGNED BY WATTS BY AUGUST 17, 2010, THEN COUNSEL HAVE DETERMINED NOT TO REPRESENT ME, AND ALONE I SHALL BE RESPONSIBLE FOR FILING MY CASE BEFORE EXPIRATION OF THE STATUTE OF LIMITATIONS ON SEPTEMBER 17, 2010, OR I WILL BE FOREVER BARRED FROM PROSECUTING MY CLAIMS AND CASE.**

Further, I understand and Counsel and I mutually agree (1) that this Agreement shall be governed by and construed in accordance with the applicable laws of the State of Texas (other than its choice of law principles), (2) that this Agreement is performable in the State of Texas, (3) that the exclusive jurisdiction and venue for any dispute in connection with this Agreement shall be one of the Texas State District Courts located in San Antonio, Bexar County, Texas (collectively, the "Specified Courts"), (4) to submit to the jurisdiction and venue of any of the Specified Courts, (5) to expressly and irrevocably waive any objection which we may now have or hereafter have to the laying of venue of any dispute in connection with this Agreement in any of the Specified Courts, including, without limitation, that such venue is an inconvenient forum for such dispute or otherwise, and (6) to accept service of process from any Specified Court by certified mail, return receipt requested, postage prepaid; further, I understand and Counsel and I mutually agree that we shall not elect a trial by jury of any issue that could be tried by a jury, and we expressly and irrevocably waive any right to trial by jury to the extent that any such right shall now or hereafter exist with regard to any issue in connection with this Agreement or otherwise with the TU Litigation; this waiver of right to trial by jury is given, like all things in this Agreement, knowingly and voluntarily by us and is intended to encompass each instance in which, and each issue for which, we could otherwise elect a trial by jury.

**FURTHER, I UNDERSTAND AND AGREE THAT I CAN, ANYTIME IN THE FIRST 60 DAYS AFTER THE DATE I SIGNED THIS AGREEMENT, (1) TERMINATE THIS AGREEMENT WITHOUT RECOURSE TO ME BY COUNSEL OR (2) OPT OUT OF THE PRECEDING PARAGRAPH; PROVIDED THAT I MUST DO SO IN WRITING BEFORE EXPIRATION OF SUCH 60-DAY PERIOD; AND, PROVIDED FURTHER THAT I MUST SERVE SUCH WRITING ON WATTS (AT THE ADDRESS SET FORTH IN WATTS' SIGNATURE BLOCK BELOW) BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, POSTAGE PREPAID; AND, THE ORIGINAL RETURN RECEIPT SHALL SERVE AS PROOF OF MY DELIVERY OF SUCH NOTICE ON WATTS AND THE DATE OF SUCH DELIVERY.**

Further, I understand and agree that I can discharge Counsel at anytime; provided that if I do so more than 60 days after I receive my copy of this Agreement signed by Watts, then I shall remain obligated to Counsel to pay their Fees and reimburse their Case Costs, all as set forth in, and pursuant to, this Agreement and to the maximum extent permitted by law.

Further, I understand and agree if any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected. Each waiver in this Agreement

Page 5
Privileged, Confidential and Proprietary

is subject to the overriding and controlling rule that it shall be effective only if and to the extent that (1) it is not prohibited by applicable law and (2) applicable law neither provides for nor allows any material sanctions to be imposed against a party for having bargained for and obtained it.

Further, this Agreement embodies the entire agreement and understanding between the parties with respect to its subject matter and supersedes and cancels all prior agreements and understandings. I understand and agree that there is no oral agreement between Counsel and me that has not been incorporated in this Agreement.

Further, I understand that Texas law provides that "a client need not prove actual damages in order to obtain forfeiture of an attorney's fee for the attorney's breach of fiduciary duty to the client." I agree to amend my right to obtain forfeiture of Counsel's Fees. In any claim by me against Counsel alleging breach of fiduciary duty, breach of loyalty, conflict of interest or similar claim (but not including a claim for malpractice) that seeks recoupment of Fees paid to Counsel or a forfeiture of Counsel's Fees, my recovery and Counsel's forfeiture of Counsel's Fees shall be limited to the greater of (1) my proven economic loss as a result of the wrongful acts or (2) $10.00. This provision does not limit or in any way apply to the remedies available to me or the liability of Counsel to me in a claim for legal malpractice.

Further, I have been advised that the State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with an attorney involves professional misconduct, the State Bar Office of the General Counsel shall provide me with information about how to file a complaint. For more information, I know I can call 1-800-932-1900, which is a toll-free telephone call.

SIGNED this _____ day of _____ 2010.

Signature:

Email:

Client Signature

**APPROVED AND ACCEPTED BY WATTS GUERRA CRAFT LLP**

FOR ITSELF, FOR JLW LAW GROUP, LLP,
FOR D.J. POWERS AND FOR JOHN R. W. CRACKEN, P.C.

Signature:

Email: transunion@wgclawfirm.com

Ryan L. Thompson, Attorney at Law
Watts Guerra Craft LLP, Partner
2506 N. Port Ave.
Corpus Christi, TX 78401
1-877-713-2166
transunion@wgclawfirm.com

Page 6
Privileged, Confidential and Proprietary