**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

GREGORY THOMAS BERRY, et al.,          )
                                       )
                Plaintiffs,            )
                                       )          Case No. 3:11-cv-754-JRS
                                       )
v.                                     )
                                       )
LEXISNEXIS RISK & INFORMATION          )
ANALYTICS GROUP, INC., et. al.,        )
                                       )
                Defendants.            )

**MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION AND
EXPEDITED BRIEFING AND HEARING**

Watts Guerra respectfully requests that this Honorable Court reconsider and vacate its

Order of October 22, 2013, which granted the Parties' Motion to Correct so-called "misrepresen-

tations" allegedly made by attorney Thompson and his firm, Watts Guerra LLP (together, "Watts

Guerra").  *See* Doc. 84 ("Take-Down Order"); Docs. 82-83 ("Parties' Motion").  This Order was

entered only 36 hours after the Parties' Motion was filed, and before Watts Guerra was given any

opportunity to respond to the Parties' sudden attack.

Watts Guerra has complied with the Court's Order (having done so immediately upon re-

ceiving the Take-Down Order, including by taking down the www.bringaclaim.com website),

but under protest.  Among other problems outlined below, the Court's sweeping Order—a prior

restraint that requires Watts Guerra to "cease any and all advertising campaigns or other commu-

nications concerning … the Proposed Settlement" without the blessing of both Class Counsel

and the Court—was based on a website postings from August 2013 that have since been

changed.[1]  Even more fundamentally, however, the Court made no specific findings as to what, in its view, was misleading about these website postings.  Absent such a finding, the First Amendment protects Watts Guerra's speech—including speech to its own preexisting clients.

Watts Guerra also respectfully submits that the Order violates binding precedent holding that, in the Rule 23 context, "an order limiting communications between parties and potential class members *should be based on a clear record and specific findings that reflect a weighing* of the need for a limitation and the potential interference with the rights of the parties."  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 & n.15 (1981) (emphasis added) (so ruling without reaching the First Amendment).  And even assuming, *arguendo*, that regulating Watts Guerra's advertising and communications to its own clients somehow served a "substantial interest," the First Amendment requires that any restriction on that advertising be "'narrowly drawn'" to furthering that interest—that it be carefully tailored to speech that is misleading or concerns unlawful activity.  *Florida Bar v. Went for It, Inc.*, 515 U.S. 618, 624 (1995).  Thus, for these reasons and other reasons stated below, Watts Guerra now requests that this Court reconsider and vacate its Order.

In addition, Watts Guerra requests expedited briefing and hearing on this motion.  Specifically, Watts Guerra requests that the Parties be required to respond to this Motion within four (4) days (by October 30, 2013), with Watts Guerra's Reply due two (2) days thereafter (by November 1, 2013), and—subject to the Court's availability —a hearing held during the week of November 4 or 11, 2013.  In addition, if the Court decides to deny reconsideration, Watts Guerra intends to move for a stay pending an interlocutory appeal.

---

[1] Apparently the Parties took screen shots of the website from August 2013—but then did *nothing* for several months, only now seeking the mandatory injunction that was granted yesterday.  Moreover, while Parties submitted the August 2013 version of the website as their Exhibit B, their Exhibit F is a more recent, modified version of the fee agreement.  Exhibit A hereto ("Watts Ex. A") is the August version of the fee agreement, *i.e.*, the version actually executed by the Aaron Objectors.

## INTRODUCTION

**Efforts To Disparage.**   As a threshold matter, the Parties' efforts to disparage Watts Guerra is unfair and inaccurate.   Among other things, the Parties castigate Watts Guerra and its co-counsel as "professional objectors" (Doc. 83 at 2) when, in fact, ***not a single one of undersigned counsel****—nor, so far as we are aware, **anyone** at our firms—has **ever** before objected to a class action settlement*.   And while the Parties focus their attacks on Watts Guerra, that firm's partners are in the business of making recoveries for their clients—not just collecting fees for themselves.   Indeed, they are some of the top trial lawyers in the country, and they have won more than $1.1 billion in verdicts and collected more than $2.6 billion in settlements for their clients.   Unlike Class Counsel in this case, who still get paid millions of dollars if the (b)(2) class members recover $0, if Watts Guerra's clients, the Aaron Objectors, receive $0 at the end of the day, so too does Watts Guerra.   Watts Guerra has real clients here, more than 20,000 of them; it is not a professional objector that can be paid to go away.   In any event, the Parties' aspersions are not only baseless; they are legally irrelevant.   They serve only to confirm that the picture painted by the Parties' Motion was highly misleading.

**Supposed "Misleading" Communications.**   The Parties' Motion misstates the communications and public statements made by Thompson and Watts Guerra, and includes numerous statements that are plainly wrong.   For example, the Parties assert that the "Marketing Campaign's Website avoids any direct mention of … the Court-approved settlement websites."   Doc. 83 at 4. ***This is demonstrably false.***   The www.bringaclaim.com homepage contains a link, in all capital letters, that reads "THE BERRY SETTLEMENT," that opens a "Berry Settlement" page containing *a direct link to the official settlement site* in bold red letters.   Further, the bringaclaim homepage contains a large, red "LEARN MORE" button that opens an "About Us" page that, again, contains *a direct link to the official settlement site* in eye-catching red letters that read

"Berry Class Action".  Doc. 83-2 (Parties' Ex. B) at 1, 4 and 6.  Further contradicting the asser-

tions in the Parties' Motion, the "Berry Settlement" page also provides **direct links to the official**

**settlement documents** in the form of conspicuous red click "here" links that open PDFs of (1) the

"detailed notice about the proposed settlement," (2) "the settlement agreement itself," and (3)

"the Order Granting Preliminary Approval."  *Id.* at 1 and 2.

Moreover, on that same page, just before the link to the official settlement site that the

Parties somehow overlooked, Watts Guerra **admonished viewers to "click on th[at] link" and to**

**"fully review"** those documents **"so you understand your rights"**:

> Below we have provided excerpts or our interpretation and commentary on a few note-
> worthy provisions from the Settlement Website regarding the Rule 23(b)(2) 'LexisNexis
> Report' Class.  We encourage you to read these provisions, **and preferably, click on the**
> **link below** so that you can read the entire body of information and related documents
> provided on this website.  Doing so will allow you to fully review each and all of the rele-
> vant provisions so you understand your rights.
>
> **http://www.collectionreportlawsuit.com**

*Id.* at 1 (first emphasis added).  It is difficult to understand why the Parties fail to acknowledge

these aspects of the website in their Motion.[2]

**Prior Restraints and the First Amendment.**  Even if the Watts Guerra communications

could be faulted in some respect—which they cannot—the Parties' request for relief completely

ignored the First Amendment and the dangers of prior restraints.  *E.g.*, *Bates v. State Bar of Ari-*

*zona*, 433 U.S. 350 (1977) (lawyer advertising is commercial speech entitled to protection under

the First Amendment).  The fault lies with the Parties' inaccurate presentation, but we respectful-

---

[2] Importantly, the pages on the www.bringaclaim.com website were modified in certain respects
after the objection deadline.  As explained below, any order restricting Watts Guerra's communica-
tions must be narrowly tailored and based on specific findings of fact.  Such findings should be
based on the website as it existed as of the Court's entry of the Take-Down Order (it has since been
taken down in compliance with the Court's order).  Following the Parties' lead, however, Watts
Guerra and the Aaron Objectors have framed their arguments around the prior that the Aaron Ob-
jectors would have reviewed before retaining Watts Guerra and its co-counsel.

ly submit that the issue is not close:  The Take-Down Order plainly includes prior restraints, and "[a]ny prior restraint on expression comes … with a heavy presumption' against its constitutional validity."  *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 558 (1976) (quotations omitted; citing, among other cases, *New York Times Co. v. United States*, 403 U.S. 713 (1971), where "every member of the Court, tacitly or explicitly, accepted the … condemnation of prior restraint as presumptively unconstitutional").  Indeed, the Supreme Court has held in many cases "that prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights."  *Stuart*, 427 U.S. at 559.

Moreover, the Order here plainly does *not* include the findings necessary to support the relief awarded the Parties.  It does not identify which statements are false or misleading, nor tailor the Order to such speech—as required by binding Supreme Court precedent.  *Florida Bar*, 515 U.S. at 624 (restrictions on lawyer advertising must be "narrowly drawn" to serve a "substantial" governmental interest).  The Parties cite various cases involving courts policing communications with absent class members.  In most of those cases, however, the concern is confusion with respect to the exercise of opt out rights.  In this case, by contrast, the (b)(2) class members represented by Watts Guerra have no right to opt out (and in fact obtaining opt out rights is part of the relief that Watts Guerra and its co-counsel seek for their clients).

Accordingly, even if the information provided by Watts Guerra was "objectively false and misleading" (Doc. 83 at 2) (and it most certainly was not), speech may not be barred—much less subjected to a sweeping prior restraint—without establishing a threat of harm that is impossible to manage in any other way.  *E.g.*, *Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466, 472 (1988).  The Parties made no such showing, nor can they.

Further, the communications in question were made by Watts Guerra principally **to their own clients**.  While the communications were publicly available, the intended audience of the www.bringaclaim.com website was Watts Guerra's clients from the *Trans Union* matter.  Watts Guerra only ran television ads to the general public, and only accepted new clients *after the window for objections closed*; each and every one of the Aaron Objectors signed a retention agreement certifying that he or she had been a Watts Guerra client on the *Trans Union* matter and was satisfied with the services provided by Watts Guerra with respect to same.  Watts Ex. A at 3.  The scales are past tipping; this topples them in favor of Watts Guerra's First Amendment rights.

For all of these reasons, and as detailed below, the Take-Down Order should be vacated.[3]

## ARGUMENT

### I.      Watts Guerra is entitled to be heard.

The Court granted the Parties' Motion almost immediately—and well before the eleven-day period provided by E.D. Va. Local Civil Rule 7(F)(1) for an opposing party to file a responsive brief.  But Watts Guerra also has a due-process right to be heard.  Accordingly, although the matter is now before the Court via a motion for reconsideration, the Court should revisit the relief requested by the Parties' Motion *de novo*.  *See, e.g., Girardi v. Heep*, 203 F.3d 820 (Table), 2000 WL 1287, at *4 (4th Cir. 1999) ("A fundamental aspect of our judicial system is that a

---

[3] In view of the truncated time to file these papers and as a matter of due process, Watts Guerra, its co-counsel, and the Aaron Objectors reserve the right to supplement this filing.  The Parties and undersigned counsel had actually scheduled a meet-and-confer regarding briefing and hearing on the Parties' Motion.  An hour or so beforehand, however, the Court entered the Take-Down Order.  The Parties response to that Order was to immediately demand Watts Guerra's agreement to a highly problematic follow-up order involving a purported "corrective disclosure" to Watts' Guerra's clients.  Although reconsideration by the Court would moot that request, delaying the submission of this motion risked the Parties again seeking and receiving relief before Watts Guerra could be heard.  If the Parties proceed to move for entry of their proposed order regarding "corrective disclosure" or something similar (as undersigned counsel expect), Watts Guerra hereby notes its objection to such a motion and respectfully requests the opportunity to file an opposition and be heard.

judge deciding a dispute between two parties will hear both sides before a judgment is entered.");
*Richards v. Angelone*, No. 00-CV-601, 2001 WL 34807578 at *1 (E.D. Va. July 25, 2001) ("The court GRANTS the motion to reconsider and examines *de novo* petitioner's objections to the Magistrate Judge's Report and Recommendations.").

Indeed, courts in this District grant motions for reconsideration in circumstances in which a ruling was entered on a subject without the benefit of a party's briefing. *E.g.*, *Cadet v. United States*, No. 12-CV-472, 2012 WL 4854381, at *2 (E.D. Va. Oct. 11, 2012) (granting motion for reconsideration where prisoner plaintiff's brief had not been considered "[i]n order to prevent manifest injustice").[4]  And reconsideration also "is appropriate where the Court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension ... [or] a controlling or significant change in the law or facts since the submission of the issue to the Court [has occurred].'"  *Stoney Glen, LLC v. Southern Bank and Trust Co.*, No. 13-cv-8, 2013 WL 4539736, at *2  (E.D. Va. Aug. 27, 2013) (quoting *Above the Belt. Inc. v. Mel Bohannan Roofing. Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)).  Here, the Court has clearly "made a decision outside the adversarial issues presented to the Court," because Watts Guerra never had the opportunity to present *any* issues to the Court.[5]

---

[4] Courts in other districts, too, similarly revisit earlier rulings when they are subsequently given the benefit of relevant briefing.  *E.g.*, *Vander Luitgaren v. Sun Life Assur. Co. of Canada*, No. 09-11410, 2012 WL 5875526, at *8 n.4 (D. Mass. Nov. 19, 2012) (granting motion for reconsideration of decision "made early in the proceeding, without the benefit of additional briefing in this case"); *Watkins v. Bureau of Alcohol, Tobacco and Firearms*, No. Civ.A. 04-800, 2005 WL 2334277, at *1 (D.D.C. Sept. 01, 2005) (granting reconsideration where, although court had previously considered issue raised in motion for reconsideration, it did so "without the benefit of Defendant's briefing of the legislative history").

[5] When courts in this District reject motions for reconsideration, they often do so based on the fact that the party moving for reconsideration could have presented the salient issues in its briefing.  *E.g. McAfee v. Boczar*, No. 11-cv-646, 2012 WL 2505263, at *3 (E.D. Va. June 28, 2012)

Likewise, motions to reconsider "may be appropriate if 'the prior decision was clearly erroneous and would work manifest injustice.'" *Id.* (quoting Sejman v. Warner-Lambert Co., Inc., 845 F.2d 66, 69 (4th Cir. 1988)).  Because Watts Guerra did not have the opportunity to be heard, and in view of the prior restraint as to free speech, the Court's decision would work a manifest injustice and should be reconsidered.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (internal quotation marks omitted).

In short, Watts Guerra respectfully submits that it is appropriate for this Court to consider the arguments made herein by Watts Guerra and to vacate its Take-Down Order.

## II. Watts Guerra did not provide "objectively false and misleading information," as the Parties inaccurately allege.

The Parties argue, "Watts Guerra, the lead firm behind the Aaron Objectors (Doc. No. 72), has appeared in television commercials and has created and published a website that provides objectively false and misleading information regarding the preliminarily approved Settlement Agreement."  Doc. 83 at 2.  As demonstrated below, this allegation is itself inaccurate.

Before presenting the details, it bears emphasizing that numerous assertions made by the Parties are undeniably incorrect.  One example is the assertion that the bringaclaim site included no direct link to the official settlement website.  Doc. 83 at 4; Doc. 83-4 at 1.  False.  *See* Ex. B at 1.  Two more examples:  Several of the Parties' accusations are premised on the erroneous claims that the Aaron Objectors are random members of the public, and that their ranks include members of the (b)(3) class.  In fact, the fee agreement executed by each Aaron Objector evinces

---

("Regardless, because McAfee could have presented evidence of the prior subpoena in her brief in opposition to the motion to quash but failed to do so, the Court declines to reconsider its decision.").  But Watts Guerra had no opportunity to present *any* briefing or argument, so denial of a motion to reconsider on such basis would be inappropriate.

that Watts Guerra attempted to screen out (b)(3) class members (so as to represent as objectors only members of the (b)(2) class), and further sought to only accept as objectors individuals with whom Watts Guerra had a prior attorney-client relationship (from the *Trans Union* case).  *See* Watts Ex. A.

### A.    TV

The Parties did not file scripts for the TV ads, so they cannot and did not make any specific allegations in connection with those ads (none of which is presently running in any event).

### B.    Videos

As for the videos by Mr. Thompson (which appeared in sequence on the www.bringaclaim.com home page), the scripts were submitted to the Court as Exhibit C to the Parties' Motion (Doc. 83-3).  The Parties principally contend that the videos are misleading by omission.  *E.g.*, Doc. 83 at 4 (complaining that the videos do not mention the settlement website).  But these are 2-3 minute videos, embedded in a website with a wealth of information about the settlement, including excerpts from and direct links to both the official settlement site and the settlement documents themselves.  They are not, and cannot be deemed, false or misleading.

### C.    The www.bringaclaim.com website

Regarding the www.bringaclaim.com website (which has now been taken down, per the Court's Order), the home page had two prominent links routing viewers to a landing page for "The Berry Settlement"—a page replete with details regarding the settlement, many of which are direct excerpts from various *Berry* settlement docs.

For example, at the top of that page:

The Berry Settlement Berry v. LexisNexis Risk & Information Analytics Group, Inc., Case No. 3:11-cv-00754-JRS., In the United States District Court for the Eastern District of Virginia.

> *Below we have provided excerpts or our interpretation and commentary on a few note-worthy provisions from the Settlement Website regarding the Rule 23(b)(2) 'LexisNexis Report' Class. We encourage you to read these provisions, **and preferably, click on the link below so that you can read the entire body of information and related documents provided on this website. Doing so will allow you to fully review each and all of the relevant provisions so you understand your rights**.*
>
> **http://www.collectionreportlawsuit.com**

Ex. B at 1 (emphasis added).  Further down this same page, viewers were provided "click here" links to PDFs of the settlement documents, including the "detailed notice about the proposed settlement," "the settlement agreement itself," and "the Order Granting Preliminary Approval." *Id.* at 1-2.

The Parties inaccurately asserted to the Court in their Motion that the www.bringaclaim.com website "avoids any direct mention of, or convenient or conspicuous reference to, the Court-approved settlement websites and the Court-mandated notice," and that the "Berry Settlement" page in particular provides only "a biased and incomplete description of the settlement and misleading information about the FCRA."  Doc. 83 at 4.  That is inaccurate, as demonstrated above (and in the Parties' own exhibits).  Most obviously, there was, in fact, a "direct mention of" both the official settlement website and the Court-mandated notice.  A cursory review of Ex. B at 1-2 also refutes the assertions of inconvenient or inconspicuous placement, bias, or the presence of incomplete or misleading information..

> In addition, on the "About Us" page, viewers are advised:
>
> This website is rich with data about the Berry Class Action, the Fair Credit Reporting Act and issues relevant to your potential claims, *and we encourage you to read all of this information and explore the related links at your convenience. Learn as much as you can before you make any decisions regarding this matter*."

*Id.* at 6 (italicized emphasis added)

* * * *

Watts Guerra respectfully submits that this evidence conclusively demonstrates that the Parties' Motion should not have been granted, and that the Take-Down Order should be vacated, because Watts Guerra's communications were not misleading, either affirmatively or by omission. For the avoidance of doubt, below are additional responses to the Parties' Exhibit D (Doc. 83-4), which purports to itemize shortcomings in Watts Guerra's content.

*1.* **Allegation:** "The Watts Guerra clients include members of the Rule 23(b)(3) class, and the advertisements were broadcast and available to all members of the Rule 23(b)(3) class." Ex. D at 6. **Truth:** This is belied by the questionnaire and fee agreement available to and executed by the Aaron Objectors in August 2013, which demonstrate that ***Watts Guerra did everything possible to screen out members of the (b)(3) class.*** To qualify to be represented by Watts Guerra, each of the Aaron Objectors was required to represent that he or she had never requested a copy of his or her Accurint report or disputed any data in same. *See* Watts Ex. A at 1, ¶¶ 1-2. Watts Guerra rejected every would-be objector who answered "yes" to ¶1 or ¶2 in assembling the group for whom it formally objected. (After filing Objections for the Aaron Objectors, Watts Guerra removed this limitation, but any clients who may be in the (b)(3) class have not opted out; if the settlements are finally approved, they will be paid automatically. Furthermore, the Parties' concern that Watts Guerra will collect a piece of any payments to its clients from the (b)(3) settlement is unfounded; Watts will do no such thing.)

*2.* **Allegation:** "The Marketing Materials falsely imply that Watts Guerra had a prior relationship with the viewer, that Watts Guerra represents the public as a whole, and attempts to create in the viewer a false sense of trust and loyalty with the firm." Ex. D at 7. **Truth:** Again, Watts Ex. A belies this contention, showing that ***Watts Guerra did have a prior attorney/client relationship with each of the Aaron Objectors***. The Parties have thoroughly confused

matters by submitting the August version of the website (their Exhibit B) with the October version of the fee agreement (their Exhibit F). The fee agreement executed by the Aaron Objectors provides that, by its execution, "Client represents to Counsel that (1) Counsel represented Client in connection with the Trans Union Litigation, and Client was and remains pleased in every material respect with Counsel and such representation…." Watts Ex. A at 3.

3.    **Allegation:**    "Video Two is even more outrageous. It exhorts viewers to retain the Watts Guerra firm in connection with the pending litigation, but fails to even mention that there is a Proposed Settlement, let along the substantial benefits that that Proposed Settlement provides to all Class Members." Ex. D at 1. **Truth:** Video 2 appears on the home page of www.bringaclaim.com, and that home page routes viewers to the official settlement links and content on the "Berry Settlement" page, as detailed above. Further, the fee agreement that each would-be client was directed to review, and executed, clearly spells out the sequence of events that begins with an objection to the *Berry* settlement and only advances to a lawsuit if the settlement is rejected or Plaintiffs are given the opportunity to opt out. *See* Watts Ex. A at 2.

4.    **Allegation:**    "The Website nowhere clearly discloses that it is not the Court-Approved Website." Ex. D at 3. **Truth:** The website's masthead reads, "Watts Guerra LLP" and the home page is focused on making a claim for cash compensation. No reasonable person could mistake the www.bringaclaim.com home page for an official website promoting a class settlement.

5.    **Allegation:**    "The Website does not even include a link to the Court-Approved Website. A Website sub-page, titled 'The Berry Settlement' is a link to a biased and incomplete description of the settlement." Ex. D at 1. **Truth:** As already discussed, this assertion by the Parties is flat wrong:  the "sub-page" provided a clickable URL to the official Berry settlement

website in bold red letters.  *See* Ex. B at 1.  And that same page further provided a "click here" links to open the Settlement itself, as well as the Court's Preliminary Approval Order and the class notice.  *Id.* at 1-2.

6. ***Allegation:***  "The Marketing Campaign does not disclose that the Court appointed Class Counsel to represent the interests of absent class members, and nowhere provides absent class members with information as to how to contact the Court-approved Class Counsel." Ex. D at 3. ***Truth:***  The website provides the URL to the official settlement website, and further provides:  "What are some other useful links and documents I should look at?  To read and learn more about the proposed Rule 23(b)(2) class settlement, click here," and when a person clicks on that link they were taken to official Berry settlement documents hosted on the official Berry settlement website.

7. ***Allegation:***  "The television commercial prominently exhorts absent class members to 'Call to File Your Claim Now!' See http://www.ispot.tv/ad/72IV/watts-guerra-consumer-report. The Website itself is titled www.bringaclaim.com.  In fact, there is no claims process provided for in the Proposed Settlement, nor would there be if the Proposed Settlement is rejected and the contested litigation continues."  Ex. D at 1. ***Truth:***  Watts Guerra's statements did not refer to a "claim process," but rather to filing a claim (a lawsuit).  Further, as already noted, anyone retaining Watts Guerra necessarily was presented with, and agreed to, the fee agreement, which accurately describes in detail the sequence of events necessary to proceed from the present state of affairs ($0 for (b)(2) class members) to a potential cash recovery.  Watts Ex. A at 2.

8. ***Allegation:***  "In addition, if Plaintiffs chose to litigate their claims, they would be faced with the more difficult task of certifying their alleged classes for trial purposes."  Ex. D at 2. ***Truth:***  Objectors have no intention of seeking class certification.

**9.**    ***Allegation:***   "In Video One, Attorney Thompson states 'Ultimately if we're able to successfully object on your behalf and then bring a claim against LexisNexis and prove violations of the Fair Credit Reporting Act, we'll send you a check in the mail.' Ex. C to the Memorandum. The statement is unaccompanied by any cautionary language regarding future results not being guaranteed." Ex. D at 3.   ***Truth:***   The statement plainly says only "if" and only "then"; it is clear there is no guarantee of recovery.   Moreover, Video 1 appeared on the home page of WG's [www.bringaclaim.com](www.bringaclaim.com), and the website provides "Prior results do not guarantee a similar outcome and depend on the facts of each matter."   *See* Ex. B at 10.   Further, the fee agreement provides that, by its execution, "Client represents to Counsel that," among other things, "Counsel has not promised or guaranteed Client any outcome or thing of value in connection with this Agreement, except as set forth in this Agreement"—and the agreement spells out in careful detail the steps necessary to get from the status quo to any monetary recovery for the Client. Ex. F at 2.

**10.**    ***Allegation:***   "The Website flatly asserts that, 'We don't get paid until you get paid and we will advance all costs and expenses out of our pocket, not yours.   You risk nothing by being a part of this action.' (Ex. B to the Memorandum, p. 1).   In fact, absent class members would face substantial risks of getting nothing in the absence of the Proposed Settlement…." Ex. D at 2. ***Truth***:  This statement is actually in a video, not on the website, as the Parties mistakenly state.   More importantly, the (b)(2) class members get nothing in the proposed settlement—and, therefore, risk nothing in objecting to same.   Indeed, the only difference between the "benefits" of the settlement and litigating and losing is that the latter would not immunize defendants for all past and future violations of the law.   And, to the extent there may be members of the class content with the injunctive relief, the Aaron Objectors are not.   They would rather

opt out than forgo their statutory damages, punitive damages, and attorneys' fees claims for $0, as the (b)(2) settlement provides.

### III.   Even if the Court could properly find fault with Watts Guerra's communications, the Take-Down Order violates the First Amendment.

The assertion that Watts Guerra can be enjoined from "foment[ing] opposition to the settlement" through the statements (and supposed omissions) discussed above (Doc. 83 at 14) is entirely untenable.  "Commercial speech that is not false or deceptive and does not concern unlawful activities ... may be restricted only in the service of a substantial governmental interest, and only through means that directly advance that interest."  *E.g.*, *Shapero*, 486 U.S., at 472. And "[h]owever pernicious an opinion may seem, we depend for its correction not on the conscience of judges … but on the competition of other ideas."  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974) (citation omitted).

Further, even if the speech in question could reasonably be deemed misleading (and it cannot), where the "Government could achieve its interests in a manner that does not restrict speech, or that restricts less speech, the Government must do so"; and restrictions on commercial speech must be "necessary as opposed to merely convenient."  *Thompson v. Western States Med. Ctr.*, 535 U.S. 357, 371, 373 (2002); ; *Florida Bar*, 518 U.S. at 624 (restrictions on attorney advertising must be "narrowly drawn" to a "substantial" governmental interest).  The Take-Down Order does not meet these requirements.  In fact, it imposes a prior restraint on future protected speech (*see* Doc. 84 ¶ 2), and thus is presumptively unconstitutional.  *See, e.g., Stuart*, 427 U.S. at 528-29; *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558-59 (1975).  "[A] free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them … beforehand."  *Conrad*, 420 U.S. at 558-59.

## A.      The Take-Down Order is not narrowly tailored.

The Take-Down Order is sweeping.  It requires Watts Guerra to "cease any and all adver-

tising campaigns or other communications concerning, related to, or describing the Proposed Set-

tlement whether on television, the radio, or other media" without the blessing of both Class

Counsel and the Court.  Doc. 84 at 1-2.  Further, it requires, *before* communications concerning

the Proposed Settlement, that Watts Guerra not only "meet and confer with Class Counsel," but

also obtain "further guidance [from the Court] prior to use or disclosure of … new materials"

that "Class Counsel believes … continue[] to contain misrepresentations and omissions" that

"Thompson or Watts Guerra refuses to correct."  *Id*. at 2.  In other words, without having made

specific findings concerning what statements are allegedly misleading, the Court has subjected

Watts Guerra's speech to the prior approval of not only the Court, but also private parties (Class

Counsel) having adverse interests.

Respectfully, however, if the government could not restrict the New York Times from

publishing the Pentagon Papers—based on far weightier interests, including national security—

the prior restraint imposed by the Court's order here cannot overcome its presumptive invalidity.

*New York Times v. United States*, 403 U.S. 713 (1971) (per curiam).  Moreover, even setting

aside the fact that the Take-Down Order imposes a prior restraint, parties seeking to restrict

commercial speech (by imposing after-the-fact remedies) bear the burden of "affirmatively es-

tablish[ing]" that the restrictions they seek are "narrowly tailored" to prohibiting misleading

statements.  *See City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 416-18 (1993).

Here, the Take-Down Order makes no findings as to what portions of Watts Guerra's communi-

cations are misleading.  In fact, neither the Parties' Motion nor the Take-Down Order makes any

mention of the First Amendment at all, or any attempt to make the requisite showing that the re-

quested relief is narrowly tailored to specific misstatements or the most limited restriction feasi-

ble.  For this reason too, the Order should be vacated.  *Id.*; *see also, e.g.*, *Central Hudson*, 447 U.S. at 564 ("if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive"); *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 646 (1985) ("the free flow of commercial information is valuable enough to justify imposing on would-be regulators the costs of distinguishing the truthful from the false, the helpful from the misleading, and the harmless from the harmful").

Indeed, apart from any First Amendment concerns, vacating the Order is required by Rule 23 itself.  In *Gulf Oil Co.*, the Supreme Court held that "an order limiting communications between parties and potential class members *should be based on a clear record and specific findings that reflect a weighing* of the need for a limitation and the potential interference with the rights of the parties."  452 U.S. at 101-102 & n.15 (emphasis added).  Without even "reach[ing] the question of what requirements the First Amendment may impose in th[e Rule 23] context," the Court there explained that "the district court must find that the showing provides a satisfactory basis for relief and that the relief sought would be consistent with the policies of Rule 23 giving explicit consideration to the narrowest possible relief which would protect the respective parties."  *Id.* at 102 (citation omitted).  Watts Guerra respectfully submits that such findings are not present regarding the Take Down Order at issue here.

**B.      Because Watts Guerra's speech threatens no harm, it may not be restricted.**

More fundamentally, no restraint (tailored or otherwise) is sustainable because there is no threat of harm here.  "[T]o the extent that the district court is empowered ... to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power without a specific record showing by the moving party of *the particular abuses* by which it is threatened."  *Gulf Oil*, 452 U.S. at 102 (emphasis added) (citation omitted).  Here, even if the communications *were* inaccurate in some respect—and they were not—restricting Watts

Guerra's speech is unconstitutional because such restrictions are not "reasonably necessary" to prevent *any* "perceived evil." *See Shapero*, 486 U.S. at 472 ("Since state regulation of commercial speech 'may extend only as far as the interest it serves,' state rules that are designed to prevent the 'potential for deception and confusion ... may be no broader than reasonably necessary to prevent the' perceived evil.") (internal citation omitted).

*First*, the majority of the Parties' allegations involve an alleged failure to disclose the details of the settlement. At the same time, the Parties claim (and the Court has already ruled) that the official notice was adequate and reached class members. If class members were adequately informed of the settlement terms by other means, there can be no harm in Watts Guerra allegedly failing to disclose that same information a second time. And this is to say nothing of the numerous website links, not acknowledged by the Parties, providing the very information they say was omitted.

*Second*, the Parties assert, "The Watts Guerra Marketing Campaign has caused confusion that has hindered the settlement process." But how? The settlement will either be approved or disapproved. If it is approved, *no one* in the 200 million-member (b)(2) class may opt out—not the Aaron Objectors, nor any other Watts Guerra clients, nor anyone else. The cases on which the Parties rely, however, are principally about protecting the opt-out process.

For example, the Parties quote the MCL, which states: "If improper communications occur, curative action might be necessary, such as extending deadlines for opting out . . . or voiding improperly solicited opt outs and providing a new opportunity to opt out." Doc. 83 at 11 (citation omitted). But the (b)(2) settlement does not allow opt-outs and the deadline for (b)(3) opt outs passed. It is impossible for Watts Guerra to mislead anyone into exercising a right they do not have. Similarly, payments to (b)(3) class members under the proposed settlement are *auto-*

*matic*, so it is impossible for the Watts Group to mislead anyone into making—or not making—a settlement fund claim.

**Third**, the Parties make the odd accusation that Watts Guerra's communications "circumvent[] the Court's authority in approving attorneys' fees awards in connection with class action settlements." Doc. 83 at 15. But Watts Guerra is not seeking class counsel fees. Each of its objector clients has executed a private fee agreement. What is more, those agreements go into effect **only** if the settlement is disapproved and Watts Guerra ultimately collects money for the clients.

**Fourth**, the Parties assert that "any misleading information threatens to influence Class Members' choices by leading them to object to a valuable settlement and to retain counsel other than Class Counsel approved by the Court." Doc. 83 at 11. But whether the settlement is "valuable" is not a matter of objective fact. Watts Guerra has a right to express its view that the settlement is *not* valuable, and to advise class members (including preexisting clients) that—*after* learning all that they can about it from the official settlement documents and website—the class members should retain Watts Guerra as counsel and object. Moreover, the settlement notice approved by the Court expressly advised class members of their right to hire their own counsel. Doc. 83-1 (Parties' Ex. A) at 7 ("You may hire your own attorney, if you so choose.…").

**Fifth**, the Parties argue that this Court can and should regulate all communications with the absent class members—but Watts Guerra was communicating principally with its own clients from the *Trans Union* case. Because of an explicit and mandatory certification required in the retention agreement that confirmed the existence of a prior attorney-client relationship (and satisfaction with same), it is Watts Guerra's understanding and belief that each and every one of the Aaron Objectors had already been a Watts Guerra client. The Parties acknowledged in their Mo-

tion that this could be the case (Doc. 83 at 7 n.12), but they provided no authority for the propo-

sition that this Court may regulate an attorney's communications with its own clients.

Nor is it clear what interest the Court has in regulating communications between Watts

Guerra and ***anyone*** regarding the proposed settlement at this point, given that the objection date

has come and gone.  That is, anyone who now sees the website and signs up with Watts Guerra

(or has done so since August 30) is precluded by the Preliminary Approval Order from asserting

an objection.

### IV.    The Parties' attacks on Watts Guerra and its co-counsel are inappropriate and un-founded.

The Parties' opening shot is that "it was inevitable that professional objectors would ap-

pear."  Doc. 83 at 2.  That, however, is not an accurate description of Watts Guerra or its co-

counsel.  None of the undersigned attorneys has ***ever*** before objected to a class action settlement.

In fact, so far as we are aware, no attorney at Watts Guerra or Winston & Strawn LLP has previ-

ously done so.  In addition, Watts Guerra partners together have recovered more than ***$3.7 billion***

for their plaintiffs.  It is a firm of top-notch trial lawyers—with a substantial record of success.

To characterize and dismiss them as "professional objectors" is inaccurate and misleading.[6]

It is also inaccurate and misleading to assert, as the Parties do, that "Watts Guerra has

---

[6] On the other hand, on information and belief, Caddell, Chapman, and Fein have objected to class settlements at least 11 times, including in:  *In re: Allstate Insurance Underwriting & Rating*, No. 1457, U.S.D.C. Mid Dist. Tennessee, Nashville Division;  *In re: Progressive Corporation Insurance Underwriting & Rating*, No. 1519 U.S. Dist. North Dist. FL, Gainesville, MDL; *Platte vs. First Colony*. 2007-NMCA-158, 143 N.M. 158, 173 P.3rd 765; *Consolidated vs. Consolidated*, No. 1:03cv01519 MP AK; *Li Pauma vs. American Express*, No. 04-20314-CIVALTOGA/Bandstra; *Clark, et al vs. Experian*, No. 8:00-1217-24, U.S.D.C. South Carolina; *Clark, et al vs. Transunion*, No. 8:00-1219-24, U.S.D.C. South Carolina; *Clark, et al vs. Equifax Information Solutions*, No. 8:00-1218-24, U.S.D.C. South Carolina; *Shields vs. Bridgestone/Firestone*, No. B-170, 462 172nd Dist. Ct., Jefferson County, Texas; *Bundick vs. Hyundai Motors*, No. B-168,410; 60th Jud. Dist. Ct of Jefferson County, Texas; *Papadakis v. The Northwestern Mutual Life Ins. Co.*, Second Appellate District, Division 8, California Court of, Appeal, No. 8214789.

created a business focused on soliciting and collecting 'clients' who are already class members on the brink of receiving class settlement benefits and then filing objections to the settlement or pursuing individual actions in order to profit off of the already established class settlement." *Id.* at 6. In fact, Watts Guerra has appeared exactly ***once*** before when "class members [were] on the brink of receiving class settlement benefits"—in the *Trans Union* case. And in that case, Watts Guerra did not object to the class settlement; rather, it filed individual actions asserting "post-settlement claims," as expressly contemplated by the class settlement. In other words, the Parties' statement is again completely inaccurate.

The Parties' account of the *Trans Union* matter itself is also materially incomplete and misleading. The bottom-line on that matter is as follows: Watts Guerra won a ***complete*** victory for its clients (and itself) in both the Northern District of Illinois and the Seventh Circuit. Its clients settled for ***substantially*** more than they would have otherwise received ($443 as opposed to $0). The district court affirmed that everything Watts Guerra did for its clients was within the scope of the approved settlement agreement. And the Seventh Circuit affirmed. Order, *In re: Trans Union Corp. Privacy Litig.,* Nos. 11-3030, 11-3163 (May 22, 2012) (unpublished).

While the Parties are correct that the district court did criticize two aspects of Watts Guerra's advertising, one was specific to an unusual provision in the settlement agreement (with no analog in this case), and the other was how Watts Guerra characterized itself vis-à-vis Class Counsel—an error that was not repeated here. *See* Doc 83 at 8 (quoting order from *Trans Union* case). Moreover, the Parties neglect to mention that, in the very same order from which they quote (2011 WL 918396), the district court ruled that policing attorney advertising was a matter

for state regulators. *Id.* at \*5.[7]

What is more, the Parties' account omits that the district court judge in that case ***repeatedly*** rejected Class Counsel's arguments that Watts Guerra's service of its clients violated the settlement agreement.  The Parties also omit that the district court's rejection of attempts to bar Watts Guerra from serving its clients was affirmed by the Seventh Circuit.  The Parties further omit that Watts Guerra's clients—who were on course to receive $0 before hiring Watts Guerra—ultimately settled for $443 each in a settlement obtained by Watts Guerra and approved by the district court.

Finally, the Parties attempt to exploit an April 2011 news article that repeated allegations regarding a number of attorneys in the BP oil spill case, including Watts Guerra partner Mikal Watts, and further state that the federal government is investigating those allegations.  Doc. 83 at 9-10.  Because of his concern that the investigation not detract from the BP case, Mr. Watts resigned from the BP Plaintiffs' Steering Committee, to which he had been appointed by the Court.  In light of the investigation, Watts Guerra will not respond to the allegations here, except to note that Mr. Watts has not appeared in this matter and, in any event, these allegations are completely irrelevant to the Parties' Motion.

## CONCLUSION

WHEREFORE, for the reasons set for above, Watts Guerra respectfully submits that this Court should grant reconsideration and vacate the Take-Down Order, establish an expedited

---

[7] Note also the Parties' footnote 3 in their Memorandum (Doc. 83 at 5 n.3) that impliedly threatens the Watts Guerra firm with the presentation of disciplinary charges.  The Parties appear to ignore the Local Rules of United States District Court for the Eastern District of Virginia, FRDE RULE IV, which commands attorneys practicing before the court to comply with the Virginia state Rules of Professional Conduct.  The Virginia Rules, in turn, prohibit a lawyer from presenting or threatening to present criminal or disciplinary charges solely to obtain an advantage in a civil matter.  *See* Rule 3.4(i), Virginia Rules of Professional Conduct.

briefing schedule as set forth above, and schedule a hearing on this Motion for the week of November 4 or November 11, 2013.


Dated: October 24, 2013                                    Respectfully Submitted,


                                                           _____/s/_____
                                                           Charles B. Molster, III
                                                           Va. Bar No. 23613
                                                           Attorney for Megan Christina Aaron, *et al.*
                                                           WINSTON & STRAWN LLP
                                                           1700 K Street, N.W.
                                                           Washington, DC  20006
                                                           (202) 282-5000 (phone)
                                                           (202) 282-5100 (fax)
                                                           cmolster@winston.com

OF COUNSEL:

Kimball R. Anderson
William P. Ferranti
Karl A. Leonard
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
(312) 558-5600 (phone)
(312) 558-5700 (fax)
bferranti@winston.com

Ryan Thompson
WATTS GUERRA LLP
5250 Prue Road, Suite 525
San Antonio, Texas  78240
(210) 448-0500 (phone)
(210) 448-0501 (fax)
rthompson@wattsguerra.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of October, 2013, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to CM/ECF participants, and that I caused the foregoing document to be sent by first class mail to the following non-CM/ECF participants:

Adam E. Schulman                            David Brown
Center for Class Action Fairness            1717 Market Street
1718 M. Street NW #236                      Tacoma, WA 98402
Washington, DC 20036

Jeanne Giles
260 Gooseberry Drive
Reno, NV 89523


                                        /s/
                              Charles B. Molster, III
                              Va. Bar No. 23613
                              Attorney for Megan Christina Aaron, *et al.*
                              WINSTON & STRAWN LLP
                              1700 K Street, N.W.
                              Washington, DC  20006
                              (202) 282-5000 (phone)
                              (202) 282-5100 (fax)
                              cmolster@winston.com