**EXHIBIT A**

Aug 19, 2013

# WATTS GUERRA LLP
**LexisNexis Litigation – Confidential Client Questionnaire**

## CLIENT CONTACT INFORMATION

First: ███████      Middle: ████      Last: ████████

Suffix (e.g., Jr., II, etc.): _____      Prior / Maiden: _____

SSN (Last four): ████      DOB (MM/DD/YYYY): ████████      Sex: ██ Male   ██ Female

Mailing Address: ██████████

City: ████████      State: ██████      Zip Code: ██████

Preferred Phone Number: ██████████   ● Home   ○ Cell   ○ Work   ○ Other

Alternate Phone Number: ██████████   ○ Home   ● Cell   ○ Work   ○ Other

Preferred Email: ██████████   ● Personal   ○ Work   ○ Other

Alternate Email: ██████████   ○ Personal   ● Work   ○ Other

## CLAIM RELATED INFORMATION (Fill out to the best of your recollection)

1. Have you ever requested a copy of your Accurint® report from LexisNexis?  ○ Yes  ● No

   (if "yes," then you're ineligible for our representation)

2. Have you ever disputed any of the information contained in your Accurint® report?  ○ Yes  ● No

   (if "yes," then you're ineligible for our representation)

3. Did you receive a call, email, or letter from a debt collector between 2008-13?  ○ Yes  ● No

   a. If "yes," in what year(s) (approximate year(s) if exact year(s) unknown)?

   _____

   b. If "yes," from how many different debt collectors (approximately)?

   _____

4. Have you ever filed bankruptcy?  ██ Yes  ██ No

   a. If "yes," please provide the year, court, and case number, if known:

   _____

   b. If "yes," is your bankruptcy case complete and dismissed or, in the alternative, is it still pending?

   ○ Dismissed   ○ Still Pending   ○ I do not know   Explain:

This is an attorney/client communication.  If we do not represent you as your attorneys and if this is not your completed questionnaire, then you should not be viewing this questionnaire.  The contents of this questionnaire are confidential and privileged.  Misuse of this confidential and privileged communication may be a violation of state and federal law.

Document Integrity Verified      EchoSign Transaction Number: WRRY7C822Y4SX4

## LEXISNEXIS LITIGATION
### Confidential and Privileged Legal Representation Agreement

This Legal Representation Agreement (this "Agreement") is by and between ███████████ ("Client"), Watts Guerra LLP ("Thompson"), and The Cracken Law Firm PC ("Cracken," and together with Thompson, "Counsel"; and, Counsel together with Client, the "Parties").

**SCOPE OF LEGAL REPRESENTATION.** Client may possess one or more Fair Credit Reporting Act ("FCRA") claims against one or more of Reed Elsevier plc, LexisNexis Risk & Information Analytics Group, Inc., and Seisint, Inc. (collectively, "LexisNexis"), which claims are the subject of a proposed class settlement in *Gregory Thomas Berry, et al. vs. LexisNexis Risk & Information Analytics Group, Inc. et al.*, C.A. No. 3:11-cv-754, United States District Court, Eastern District of Virginia, Richmond Division (Client's "Claims," the "*Berry* Settlement," and "*Berry*," respectively).[1]  Client desires to (1) object to the *Berry* Settlement ("Client's Objection"), (2) if given the opportunity to do so (which opportunity does not presently exist), opt out of the *Berry* Settlement ("Client's Opt Out"), (3) if given the opportunity to do so (which opportunity does not presently exist), settle Client's Claims as set forth in this Agreement, whether in connection with or separate and apart from the *Berry* Settlement, and (4) if Client's Claims are not released in connection with the *Berry* Settlement,[2] file an action and prosecute Client's Claims (collectively, Client's "Four Objectives").  By this Agreement, Client hires Counsel to represent Client in connection with each of Client's Four Objectives.

**COUNSEL'S FEES.**  Client will pay to Counsel legal fees in the amount of 45% of Client's gross recovery[3], if any, in connection with Client's Claims (Counsel's "Fees").  Further, Counsel will jointly represent Client and share the foregoing 45% as follows:  22.5% to Thompson; and, 22.5% to Cracken.[4]  Further, Client grants Counsel a lien in any and all judgments and/or settlement proceeds in connection with Client's Claims to the full extent of the Fees; such lien will secure Client's obligations to Counsel as set forth in this Agreement.

**COUNSEL'S COSTS AND EXPENSES.**  Counsel will advance all costs and expenses in connection with Counsel's representation of Client, including, without limitation, Counsel's costs and expenses in connection with (1) document, photograph, video, computer-generated- imaging, and demonstrative -evidence production, (2) database development, maintenance, and repair, (3) travel, including reasonable air travel, lodging, and meals, (4) communications, e.g., telephone, fax, U.S. mail, FedEx, UPS, EchoSign, air cargo, etc., (5) consulting and/or testifying experts, (6) jury consultants, (7) court reporters, videographers, translators, and interpreters, and (8) court costs, e.g., filing fees etc. (collectively, "Case Costs").  Further,

---

1. To determine whether Client, in fact, possesses one or more FCRA claims against LexisNexis, Client must discover whether LexisNexis sold one or more consumer reports in connection with Client in a manner that violated the FCRA. Client and Counsel agree that Counsel will undertake such discovery if and when Counsel files an action and prosecutes Client's Claims.
2. Which outcome will not be known until the final disposition of the *Berry* Settlement, as proposed today or as modified and proposed in the future.
3. Client's "gross recovery" may include, without limitation, compensation for Client's statutory damages, punitive damages, attorneys' fees, and court costs, as recoverable under the FCRA.
4. If one (but not both) of Counsel withdraw from Client's representation in connection with this Agreement or if one (but not both) of Counsel forfeit their interest in the Fees, then Client instructs Counsel that 100% of the Fees will be paid to the non-withdrawing or non-forfeiting law firm; provided, such non-withdrawing or non-forfeiting law firm may share the Fees with Additional Legal Counsel, if any, as set forth in this Agreement.

---

Privileged, Confidential, and Proprietary

Client will from Client's gross recovery, if any, before reduction for the Fees, reimburse Counsel for their Case Costs.  Further, Client's Case Costs will include a combination of Case Costs incurred for the sole benefit of Client and Case Costs incurred for the benefit of two or more of Counsel's clients, including Client; Client agrees that Counsel may allocate the latter among its clients, including Client, on any reasonable basis, and Counsel will determine, in their sole discretion, such basis.

**ADDITIONAL LEGAL COUNSEL.**  Client authorizes Counsel to select and hire additional legal counsel to represent Client and assist Counsel in their representation of Client ("Additional Legal Counsel"); provided Counsel will pay all costs and expenses in connection with Additional Legal Counsel, if any, and Client will have no obligation to reimburse Counsel for such costs and expenses.  Further, Counsel may select and hire Additional Legal Counsel, if any, on any reasonable basis, and Counsel will determine, in their sole discretion, such basis; provided that Client authorizes Counsel to hire, among others, Samuel Issacharoff, Martin Phipps PLLC, Paul McInnes LLP, Napoli Bern Ripka Shkolnik LLP, Charles M. Silver, and/or Winston & Strawn LLP ("W&S") to represent Client and assist Counsel in their representation of Client.  Further, Client authorizes Counsel to pay Additional Legal Counsel, if any, up to 50% of the Fees.

**COUNSEL'S JOINT REPRESENTATION.**   Client understands that Counsel intend to represent thousands of clients in connection with the *Berry* Settlement and such clients' related FCRA claims (Counsel's "Other Clients").  Further, Client understands that there are important benefits and detriments in connection with participating in a "joint representation" in which legal counsel, as here, represents thousands of clients in connection with the same matter (here, the *Berry* Settlement and such clients' related FCRA claims);  and, Client agrees to such joint representation and acknowledges that Counsel would not enter into this Agreement absent such agreement;  Client understands that the benefits of joint representation may include, without limitation, economies of scale, increased bargaining power, and a larger gross recovery, if any, and the detriments may include, without limitation, conflicts among clients, delays in the resolution of claims, and a lower gross recovery, if any.

**CLIENT'S REPRESENTATIONS TO COUNSEL.**   Client represents to Counsel that (1) Counsel represented Client in connection with the Trans Union Litigation, and Client was and remains pleased in every material respect with Counsel and such representation, (2) Counsel has not promised or guaranteed Client any outcome or thing of value in connection with this Agreement, except as set forth in this Agreement, (3) Client has the authority to enter into this Agreement and bind Client and Client's spouse, if any, to same, and (4) Client has to Client's complete and total satisfaction had the opportunity to consult legal counsel independent of Counsel to review this Agreement.

**SETTLEMENT.**  Client instructs Counsel to accept on Client's behalf a cash offer from LexisNexis in the amount of $443 in exchange for a full and final release from Client of LexisNexis on the terms and conditions of the release proposed in the *Berry* Settlement, if LexisNexis presents such offer to Counsel on behalf of Client before Counsel files an action on behalf of Client against one or more of LexisNexis in connection with Client's Claims and if LexisNexis funds such offer to Counsel within 30 days of making such offer.  Further, Client instructs Counsel to accept on Client's behalf a cash offer from LexisNexis in the amount of $843 in exchange for a full and final release from Client of LexisNexis on the terms and conditions of the release proposed in the *Berry* Settlement, if LexisNexis presents such offer to Counsel on behalf of Client after Counsel files an action on behalf of Client against one or more of LexisNexis in connection with Client's Claims but before LexisNexis appears in such action other than to seek an extension of time to file an answer and if LexisNexis funds such offer to Counsel within 30 days of making such offer.  In all other instances, Counsel will present LexisNexis' offers, if any, to Client, and Client will determine, in Client's sole discretion, whether to accept or reject same.  Further, if LexisNexis timely makes either of the two foregoing offers to Client and timely funds to Counsel the related $443 or $843, as applicable, Client

Document Integrity Verified                                        EchoSign Transaction Number: WRRY7C622Y4SX4

instructs Counsel to promptly enter into a consent judgment with LexisNexis in any court of competent jurisdiction to dismiss with prejudice Client's Claims, if (but only if) LexisNexis demands same as a condition of its offer. Further, until such time as LexisNexis timely makes either of the two foregoing offers <u>and</u> timely funds to Counsel the related $443 or $843, as applicable, Client may withdraw these settlement instructions to Counsel, and such withdrawal will be effective if (but only if) in writing and upon Counsel's actual receipt of same.

**OTHER IMPORTANT TERMS.**  This Agreement is binding upon Client, Client's spouse, if any, and their successors and assigns.

One or more of Counsel may, in their respective sole discretion, withdraw from Client's representation; provided that Counsel will give Client not less than 30 days written notice of Counsel's intent to withdraw before Counsel withdraws.

If conflicts arise between Client and one or more other clients of Counsel, then Client's only remedies will be either to (1) waive such conflicts or (2) terminate Counsel's representation of Client. Client agrees not to seek disqualification of Counsel in any way, shape, or form from their continued representation of any other clients. Client irrevocably waives the right to seek such disqualification, as a condition for Counsel's willingness to represent Client in connection with this Agreement.

W&S is a large law firm, and it will in the future represent persons and entities (collectively, "Other W&S Clients") in matters in which Other W&S Clients may have a conflict with Client ("Other W&S Client Matters"). W&S cannot represent you in connection with this Agreement, if that representation could be used to disqualify W&S from representing Other W&S Clients in connection with Other W&S Clients Matters. Therefore, as a condition to W&S undertaking to represent Client in connection with this Agreement, Client (1) waives any objection to W&S representing Other W&S Clients in Other W&S Client Matters, (2) consents to W&S' representation of Other W&S Clients, and (3) will not seek to use W&S' representation of Client in connection with this Agreement as the basis for any attempt to disqualify W&S in any Other W&S Client Matter, unless such matter is the same as or substantially related to this Agreement. Client further understands and acknowledges that W&S' engagement will be limited to presenting objections to the pending proposed *Berry* settlement and to an appeal, if necessary, of any settlement approved by the *Berry* court.

Client will use Client's best efforts to assist Counsel in their representation of Client. Client will preserve any and all privileges and confidentiality in connection with data shared by Counsel with Client. Further, Client will keep Counsel informed of Client's correct street address, telephone number, and email address; and, in the event Counsel are unable to locate Client after a reasonable effort, Client understands and agrees that Counsel may without Client's consent take whatever actions Counsel determine, in their sole discretion, are necessary to promptly withdraw from representing Client, because it is Client's job (not Counsel's job) to ensure that Counsel can promptly contact Client at any time.

Client may, in its sole discretion, discharge Counsel (on behalf of itself) at any time; provided, if Client does so, Client will nonetheless remain obligated to Counsel to pay their Fees in connection with this Agreement.

This Agreement will be construed without regard to any presumption or rule requiring construction or interpretation against the Party drafting same. If any provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future laws, then such provision will be modified to conform to such laws, and the balance of this Agreement will remain in full force and effect.

Each waiver in this Agreement is subject to the overriding and governing rule that it will be effective only if

and to the extent that (1) it is not prohibited by applicable law and (2) applicable law neither provides for nor allows any material sanctions to be imposed against a party for having bargained for and obtained it.

The Parties may by mutual agreement amend or supplement this Agreement at any time and from time to time; provided that that they must do so in writing, and such writing must be signed by the Parties.

The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against an attorney or dispute with an attorney involves professional misconduct, the State Bar Office of the General Counsel will provide Client with information about how to file a complaint if Client desires same.  For more information, Client can call 1-800-932-1900, which is a toll-free telephone call.

Texas law provides that a client need not prove actual damages in order to obtain forfeiture of an attorney's fee for the attorney's breach of his or her fiduciary duty to the client.  Nonetheless, Client agrees to amend its right to obtain such forfeiture; in any claim by Client against Counsel (other than a claim for legal negligence), Client's recoupment and Counsel's forfeiture of Counsel's attorneys' fees will be limited to the greater of (1) Client's actual damages as a result of the wrongful act or (2) $50.

**ANY DISPUTE, LARGE OR SMALL, AT LAW OR IN EQUITY, BETWEEN ANY OF CLIENT AND COUNSEL ARISING OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, A DISPUTE IN CONNECTION WITH THE APPLICATION, CONSTRUCTION, OR ENFORCEMENT OF THIS PROVISION, WILL BE CONTROLLED BY TEXAS LAW (EXCLUDING ITS CHOICE-OF-LAW RULE) AND RESOLVED AS FOLLOWS:  UPON A DEMAND BY ANY PARTY TO THE DISPUTE, THE DISPUTE WILL BE RESOLVED BY INDIVIDUAL, BINDING ARBITRATION ("ARBITRATION");**  if any Party to the dispute fails to submit to Arbitration following a lawful demand for same, the Party failing to do so will bear all reasonable costs and expenses, including attorneys' fees, paid by the other to compel Arbitration;  any Party to a dispute may demand and submit same to Arbitration at any time, regardless of whether an action or other legal proceeding has been commenced in connection with the dispute;  this ADR provision will survive the amendment or termination of this Agreement;  the Parties waive the right to a trial in a public court before a judge or jury;  no Party to a dispute will be entitled to (1) include in such Party's Arbitration disputes by, between, or against others, (2) include in such Party's Arbitration any dispute in which such Party serves as a representative for a class of others or a member of a class including others, or (3) act in such Party's Arbitration in the interest of the general public or in a private attorney-general capacity; and, consistent with the three foregoing prohibitions, the Arbitrator is likewise prohibited from ordering or allowing a Party to violate any or all of the three forgoing prohibitions;  each Arbitration will be administered by one arbitrator (the "Arbitrator"); the Parties to the dispute may by mutual agreement appoint the Arbitrator; or, if they cannot agree within 30 days after receipt of a demand for Arbitration, then the arbitration administrator, the American Arbitration Association or its successor or assignee (collectively, "AAA"), will appoint the Arbitrator; if appointed by AAA, such Arbitrator will be an active member of the State Bar of Texas, Board Certified in Civil Trial or Consumer and Commercial Law, and have no past or present substantive relationship with any of the Parties to the dispute; the Arbitrator will resolve all matters in connection with the arbitration; each arbitration will be administered by the Arbitrator and AAA according to AAA's June 1, 2009 Commercial Arbitration Rules and Mediation Procedures, as modified by (and only by) AAA's Expedited Procedures (the "AAA Rules");  to the extent there is any variance between the AAA Rules and the terms and conditions of this ADR provision, this ADR provision will control; each arbitration proceeding will occur in Dallas, Texas; each participant in an arbitration will bear its own costs and expenses in connection with same and its pro rata share of the costs and expenses of the Arbitrator and AAA; the prevailing Party to any dispute, if any, will recover from the non-prevailing

Document Integrity Verified                    EchoSign Transaction Number: WRRY7C622Y4SX4

**EXHIBIT A**

Party to the dispute, if any, its costs and expense, including reasonable attorneys' fees, incurred in connection with participating in the Arbitration, up to a cap of $5,000; except as required by law, all matters in connection with an Arbitration, including, without limitation, the Parties to the dispute, the claims and defenses at issue in the dispute, and outcome of the dispute, will be strictly confidential; no Party will in any way or at any time disclose same, except to his or her spouse, partners, legal advisors, and consulting and testifying experts, if any, each of whom must first agree to be bound by this confidentiality provision; the Parties are participating in transactions involving interstate commerce; further, this ADR provision and any resulting arbitration proceedings will be governed by the Federal Arbitration Act (Title 9 of the United States Code (the "Act")), and, to the extent any provision of the Act is inapplicable, unenforceable, or invalid, then the laws of the State of Texas will govern the disposition of the Arbitration and all issues in connection with same; all statutes of limitations applicable to any dispute will apply to any Arbitration in connection with such dispute.

This Agreement embodies the entire agreement and understanding between the Parties in connection with the subject matter of this Agreement and supersedes and cancels all prior agreements and understandings in connection with the subject matter of this Agreement.

**AGREED AND ACCEPTED:**

**CLIENT**

Signature: ████████████████████████

Email: ████████████████

**WATTS GUERRA LLP**

Signature: ████████████████████████

Email: ████████████████

By:   Ryan L. Thompson, Partner
      5250 Prue Road, Suite 525
      San Antonio, Texas 78240
      Phone: 1-800-990-1379
      Email: lexis@wattsguerra.com
      Websites: www.wattsguerra.com and www.bringaclaim.com

ON BEHALF OF ITSELF, THE CRACKEN LAW FIRM PC, AND ADDITIONAL LEGAL COUNSEL, IF ANY, AS SUCH LAW FIRMS' DESIGNATED REPRESENTATIVE FOR PURPOSES OF SIGNING THIS AGREEMENT AND BINDING SUCH LAW FIRMS TO ITS TERMS AND CONDITIONS

Document Integrity Verified                                EchoSign Transaction Number: WRRY7C622Y4SX4

# LexisNexis Contract & Questionnaire

EchoSign Document History                                       August 25, 2013

| | |
|---|---|
| Created: | August 19, 2013 |
| By: | Ryan Thompson (lexis@wattsguerra.com) |
| Status: | SIGNED |
| Transaction ID: | WRRY7C622Y4SX4 |

## "LexisNexis Contract & Questionnaire" History

Widget created by Ryan Thompson (lexis@wattsguerra.com)
August 16, 2013 - 2:45 PM CDT

Widget filled in by ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
August 19, 2013 - 10:49 AM CDT - ▇▇▇▇▇▇▇▇

E-Signature verified by ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
August 19, 2013 - 10:52 AM CDT - ▇▇▇▇

Document emailed to Ryan Thompson (lexis@wattsguerra.com) for signature
August 19, 2013 - 10:52 AM CDT

Document esigned by Ryan Thompson (lexis@wattsguerra.com)
Signature Date: August 25, 2013 - 6:05 PM CDT - Time Source: server - IP address: 72.191.51.55

Signed document emailed to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and Ryan Thompson
(lexis@wattsguerra.com)
August 25, 2013 - 6:05 PM CDT

W | G   Powered by
Adobe EchoSign