**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

GREGORY THOMAS BERRY, et al.,    )
    )
    Plaintiffs,    )
    )    Case No. 3:11-cv-754-JRS
    )
v.    )
    )
LEXISNEXIS RISK & INFORMATION    )
ANALYTICS GROUP, INC., et. al.,    )
    )
    Defendants.    )

**REPLY IN FURTHER SUPPORT OF WATTS GUERRA'S**
**MOTION FOR RECONSIDERATION**

First, Watts Guerra and its co-counsel appreciate this Court's expedited consideration of this matter.  Second, we respectfully submit that the Parties' Opposition (Doc. 89) ("Opp.") has confirmed that the Take-Down Order should be vacated at this time, even before the November 14, 2013 hearing, and that the Court's concerns, if any, can be addressed at that hearing.  Third, once the Take-Down Order has been vacated (by consent or otherwise), Watts Guerra stands ready to negotiate in good faith with respect to future settlement-related communications.

**INTRODUCTION**

In their Motion to Correct (Doc. 83), the Parties provided inaccurate information to the Court.  In their Opposition, despite the explication of errors provided by Watts Guerra's Motion for Reconsideration (Doc. 86), the Parties do so again.

For example, the Parties ignore that Watts Guerra's communications changed materially after the August 30, 2013 deadline for objections.  As Watts' Motion explained, the Parties submitted out-of-date screen shots of the www.bringaclaim.com website as it existed in *August*— not as it existed in *October*, at the time the Parties filed their Motion.  *See* Doc. 86 at 4 n.2, 11-

12.  Nonetheless, the Parties now rely on that August version of the website to argue that Watts misled class members in October into thinking that objections could still be filed.  *E.g.*, *id.* at 13.  The fact is, when the objection deadline arrived, Watts revised its communications to avoid this very problem.  This is a significant mistake that runs throughout the Parties' Opposition.

The Parties have also put themselves firmly on the wrong side of the First Amendment.  They argue that Watts Guerra's speech is "false" simply because the Parties disagree with the views expressed by Watts Guerra.  In the Parties' view, the proposed injunctive relief provides "value" by "*ensur[ing] Class Members are not subject to the precise treatment of which they complained when they originally filed this suit* in 2011."  Opp. at 16.  But plainly Watts is entitled to have a different opinion on the matter—and to express that opinion.  Indeed, the Parties' own statement is inaccurate:  The (b)(2) settlement class includes 100 million members who were ***not*** part of the putative class on whose behalf suit was filed.  More importantly, for all they give up, class members receive no "value" from Defendants' promise not to break the law in the "*precise*" same way again.  *Id.*

The immediate issue, however, is not the shortcomings of the proposed settlement.  It is the Parties' contention that Watts Guerra's criticisms may be squashed as "false" and "misleading" speech that is actually ***unprotected*** by the First Amendment.  *E.g.*, Opp. at 9, 23.  This is an untenable proposition—that Watts Guerra has literally no First Amendment right to publicize its professional assessment of the settlement in this case—and it is wrong.  In addition, prior restraints are presumptively unconstitutional, and injunctions against speech must be both narrowly tailored and supported by specific findings.  For these reasons, and the other reasons detailed below, Watts respectfully submits that the Take-Down Order must be vacated now.

The Parties also miss the mark with their arguments regarding Watts Guerra's supposed

refusal to negotiate.  First, the Parties ignore their own conduct in this matter:  They filed their Motion to Correct without any warning or attempt to meet-and-confer, and based that Motion on screen shots that had been taken *more than a month prior*, that were not representative of the website existing at the time that the Motion was filed.  Second, in a purported "meet and confer" immediately after the Take-Down Order was entered, the Parties would only address a false and derogatory "corrective" notice that they wanted to send to Watts Guerra's clients, which they also threatened to submit to the Court for immediate approval.

The Parties now propose that Watts should be ordered to negotiate the content of its web-site and settlement-related speech with the Parties  and/or a Special Master.  Opp. at 2.  In light of that softening of the Parties' position, Watts Guerra has reached out to the Parties and ex-pressed its willingness to mediate—but only if the Take-Down Order is first vacated.  That is for two reasons:  First, as a practical matter, if the Order is not vacated, Watts Guerra must either bring an immediate appeal or risk losing the opportunity for review.  *See generally* Fed. R. App. P. 4.  Second, Watts' communications have been, in every respect, fair and non-misleading.  And even if some communication somehow fell short, the Parties' proposal to quash speech first and ask questions later is anathema to the First Amendment.

## TIMELINE AND BACKGROUND

In **August 2013**, Watts Guerra began communicating with its *Trans Union* clients about the proposed class settlement in this case via its www.bringaclaim.com website and videos, which provided information and an invitation to retain Watts to object to the proposed (b)(2) set-tlement.  The website was publicly available, but traffic was driven by emails and voicemails sent by Watts directly to its *Trans Union* clients.  In addition, the fee agreement electronically presented by the website was designed to screen out anyone who was not already a satisfied Watts Guerra client.  *See* Doc. 86-1 (Watts Ex. A) at 3.  That fee agreement also screened out

members of the (b)(3) class.  *Id.* at 1.[1]

On **August 30, 2013**, Watts Guerra and its co-counsel filed objections on behalf of 20,206 members of the (b)(2) class (the "Aaron Objectors").  Central to these objections is the fact that the settlement provides class members with no opt out right, and forces them to release statutory damage claims ($100-1,000 per violation) in return for nothing more than Defendants' promise to stop violating the law.  *See* Doc. 72 at 1-5 (summarizing objections).

In addition, on the morning of August 30, reflecting the close of the objection window, *Watts Guerra revised the website by disabling its ability to accept new clients*.  This is reflected in part in the Parties' Exhibit B (Doc. 83-3), which shows a screenshot of a page that Watts post-ed advising as follows:  "Thank you for your interest in pursuing a claim against LexisNexis. We are no longer accepting clients seeking our help in objecting to the proposed class action set-tlement; however, please check back soon as we will be accepting new clients who wish to assert claims in the near future.  Thank you."  *Id.* at 3.

**Sometime prior to September 18, 2013**, the Parties took screen shots of the website (*see* Doc. 83-2, Ex. B)—but no one contacted Watts Guerra with concerns or to meet-and-confer.

On  **September 18, 2013**, Watts Guerra restored the website's functionality for retaining clients, after having made revisions to the website's content and fee agreement to reflect the passing of the deadline for objections.  For example, Watts revised the fee agreement to make clear that Watts no longer could file objections on behalf of absent class members, and could be

---

[1] The Parties assert that the www.bringaclaim.com website was previously used "to make mislead-ing solicitations in another case."  *See* Opp. at 4-5 & n.3.  Like the aspersions against Watts Guerra in the Parties' original motion—which Watts refuted (Doc 86 at 21-22)—this allegation is un-founded.  The Parties' Opposition cites only a press release from the West Virginia Attorney Gen-eral regarding a news-seeking complaint filed in his opponent's county mere days before an elec-tion.  The matter was dismissed shortly thereafter because Murray LLP (the law firm involved) represented no one in West Virginia and had no plans to do so.

retained at that point only to press a claim in the event the proposed settlement was denied final approval.  *Compare* Doc. 86-1 (Watts Ex. A) at 1, *with* Doc. 83-6 (Parties' Ex. F) at 1.

The Parties' Opposition neglects these revisions—even though Watts' Motion explained that the Parties' Exhibit B included out-of-date screen shots, and that the Parties had  erroneously paired the pre-objection version of the website (their Exhibit B) with the post-objection version of the fee agreement (their Exhibit F).  *See* Doc. 86 at 11-12.

Late on the evening of **October 21, 2013** (at 11:48 pm EDT)—without warning—the Parties filed a motion asking the Court to order that all web content be taken down, all advertising cease, and any future speech by Watts Guerra regarding this case be subjected to pre-clearance by Class Counsel and, failing Class Counsel's agreement, the Court.  Docs 82-83.

Approximately 36 hours later, just before noon EDT on **October 23, 2013**, the Court issued the Take-Down Order .  Doc. 84.  Later that same day, Watts Guerra's co-counsel, Kimball Anderson, joined the Parties for a previously scheduled meet-and-confer.  However, the Parties—represented by at least five attorneys—proceeded to berate Mr. Anderson (Winston & Strawn senior partner and counsel for the Aaron Objectors) about the Watts communications, and sought  to "meet and confer" about a draft "corrective" order that the Parties threatened to submit to the Court.  The Parties' draft "corrective" order directed that Watts Guerra's clients be sent a so-called "corrective" communication consisting of false and derogatory statements, including the inaccurate assertion that the Watts firm had misled its potential clients.  Although Winston & Strawn does not represent co-counsel in a lawsuit, Mr. Anderson agreed to speak with Watts Guerra to determine whether it had any interest in negotiating the proposed "corrective" order.  Not surprisingly, Watts could not agree to the threatened "corrective" order because of its false and derogatory statements.  *See* attached Ex. A (Parties' proposed "corrective" order).

The next day, **October 24**, **2013,** Watts Guerra filed its Motion for Reconsideration (Docs. 85-86), and rejected the Parties' demand to send the proposed "corrective notice."

**November 4, 2013:**  After reviewing the Parties' Opposition, wherein the Parties suggest mediation before a neutral, Mr. Anderson called Class Counsel Len Bennett and offered to mediate the content of any future advertising by the Watts Guerra firm related to this matter, *provided* that the Parties first agree to vacate the Take-Down Order.  Mr. Bennett rejected this proposal.

## ARGUMENT

**I.      Watts Guerra's communications were not misleading.**

The Parties assert that Watts defended itself "by suggesting that some of it was not 100% inaccurate" or not "misleading on its own."  Opp. at 12.  That, however, is not an appropriate characterization of Watts' Motion, which squarely addressed and defeated the specific allegations made by the Parties.  *See* Doc. 86 at 8-15 (discussing generally the accuracy  of Watts Guerra's communications, and then directly refuting ten specific, exemplar allegations).[2]

For example, responding to the Parties' false representation that the Watts "Website does not even include a link to the Court-Approved Website," Watts established that the www.bringaclaim.com website *did* have a direct link to the official Berry settlement website. *See* Doc. 86 at 12-13.  In other words, Watts Guerra did *not* merely argue that its communication "[w]ould not be practically misleading because class members could also find and read the Court's actual notice," as the Parties now claim.  Opp. at 12.  Instead, Watts established that the Parties had obtained the Take-Down Order by making completely inaccurate assertions.

---

[2] The Parties also assert that "Watts Guerra does not deny the strong majority of the accusations leveled as to its http://www.BringAClaim.com website, its 'we will send you a check' promise or the overshadowing of the Class Notice by the aggressive marketing and sales pitch."  Opp. at 12. But if Watts failed to address any material allegation, it was due only to the exigent circumstances under which Watts was forced to file its Motion.  Lest there be any doubt:  Watts denies unequivocally the accusation that any of its communications was misleading in any way, shape, or form.

Now, the Parties try to simply *tell* the Court that Watts Guerra's communications were "misleading." Because a review of the communications themselves establishes otherwise, only a few assertions from the Parties' Opposition warrant any additional response.[3]

1. The Parties assert that, to reach the "Berry Settlement" page on the www.bringaclaim.com website, "the viewer must ignore … the 'LEARN MORE' button" and scroll to a small link all the way at the bottom of the page. Opp. at 19. This is incorrect. First, the link to which the Parties refer is not "small"; it is in all capital letters and in normal size type. *See* Ex. B at 4. Moreover, as carefully explained in Watts Guerra's Motion, there are multiple ways in the August version of the website (and even more in the October version) by which a viewer of the website homepage could be routed to the "Berry Settlement" page—and one of those, in fact, is via the homepage "LEARN MORE" button, which opens an "About Us" page that contains a direct link to the official settlement site in eye-catching red letters that read, "Berry Class Action". *See* Doc. 86 at 3-4 (citing Ex. B at 1, 4 and 6).

2. The Parties' Opposition offers a string of inaccurate adjectives and characterizations, including, for example, assertions that the links to the official website and settlement documents were "deeply buried," and that certain information required viewers to "dig deeper," and attend to "miniscule links," etc. Opp. at 18-23. Watts respectfully submits that this is inaccurate attorney hyperbole. The Parties are obviously in favor of their settlement and, therefore, do *not* like the www.bringaclaim.com website. But that does not make the website misleading—much less "intentionally" so, as the Parties' assert. Doc. 89 at 23.

Similarly, the Parties argue that Watts Guerra's "campaign" is problematic "[e]ven ac-

_____

[3] With respect to its videos, Watts Guerra does not respond to the Parties' invocation of bar-imposed attorney advertising rules. Opp. at 5. As the Parties themselves advised the Court (Doc. 83 at 5 n.3), they are in no position to make such charges. Further, the charges are unfounded. Watts posted the videos to a website that had an entire "DISCLAIMER" page. Ex. B at 11.

cepting that **some of Watts Guerra's recent webpages** included a link to the actual settlement notice and website." Opp. at 12-13.  In point of fact, *every* iteration of the website has included such links.  The Parties have no basis to argue or represent otherwise to this Court.

Watts Guerra encourages the Court to review for itself Exhibit B to the Motion filed by the Parties (Doc. 83-2) (keeping in mind that, except for page 3 which was added on August 30, this was the version of the website available in August 2013—before the deadline for objections had passed), together with Watts Ex. A (Doc. 86-1) (the fee agreement from this same time period, which the Parties failed to include with their filing, and tellingly fail to acknowledge now). Upon such review, the Court will find that the website is simple and accurate, and that viewers are even encouraged as follows:

> *Below we have provided excerpts **or our interpretation and commentary** on a few note-worthy provisions from the Settlement Website regarding the Rule 23(b)(2) 'LexisNexis Report' Class. We encourage you to read these provisions, **and preferably, click on the link below so that you can read the entire body of information and related documents provided on this website. Doing so will allow you to fully review each and all of the relevant provisions so you understand your rights**.*
>
> <span style="color:red">**http://www.collectionreportlawsuit.com**</span>

Ex. B at 1 (emphasis added).  The Parties contend that the website had a "high pressure sales" feel designed "to encourage viewers to sign quickly a retainer agreement with its firm without fully considering all information necessary to make an informed decision."  Opp. at 16, 5.  But the admonishment above (among other things) proves otherwise.

3.     The Parties assert that  "[s]ince no 'claims' are either permitted or required to obtain benefits in this case, use of 'bringaclaim.com' for this purpose was inherently misleading." *See* Opp. at 5, 9.  The Parties interpret "claim" as referring to a settlement claims process, but that is neither the only, nor the most appropriate, interpretation of the word "claim."  Rather, Watts Guerra invited class members to consider hiring the firm to handle any "claim" they may

have—as in, any right to bring a lawsuit or litigate—against the Defendants.  And Watts' communications were at all times clear that such "claim" could be brought only if the settlement is ultimately disapproved.  *See* Doc. 86-1 (Watts Ex. A) at 1; Doc. 83-6 (Parties' Ex. F) at 1.

      4.     The Parties complain that Watts Guerra failed to advise absent class members "that they already had appointed counsel."  Opp. at 9.  But the core contentions of Watts Guerra and the Aaron Objectors include that fact that the settlement brings named plaintiffs into conflict with absent class members and that ***Class Counsel are inadequate***.  Doc. 72 at 9, 31-37.  Thus, we respectfully submit, it would have been inaccurate for Watts to suggest that class members could or should rely on Class Counsel.  In addition, as detailed in Watts Guerra's Motion (Doc. 86 at 3-4, 9-13, 18), Watts Guerra provided absent class members with information regarding, and links to, the official settlement documents (including the official notice).  Furthermore, the Parties' argument flies in the face of their own assertions regarding the supposed propriety and efficacy of the court-ordered notice—*i.e.*, that it was effective in reaching and advising class members of their rights.  *See id.* at 18.  The Parties do not even attempt to respond to this point in their Opposition.

      5.     The Parties assert that the Watts Guerra communications "falsely implied that there was an action the viewer could take in the *Berry* case for which a lawyer's services would be useful" after the objection deadline.  *See* Opp. at 9, 13 (citing Ex. B at 1, 8).  There is, however, a fundamental problem with this argument:  Exhibit B to the Parties' Motion (Doc. 83-2) is comprised of screen shots of the website as it stood *before* the objection deadline—and the Parties refuse to acknowledge that the Watts Guerra's communications changed significantly after August 30, 2013 to reflect the fact that objections could no longer be filed.

      The Parties also assert that, "[s]ince [absent class members] have no choices to make, and

no actions to take unless and until a court denies settlement approval, they have no current use for additional legal counsel." Opp. at 12. But why should Watts Guerra, or class members, be required to wait, rather than using the time now to prepare for the possibility that the settlement is not approved? As Watts Guerra's communications make abundantly clear (*e.g.*, Watts Ex. A at 1; Parties' Ex. F at 1), the firm cannot assist absent class members if the settlement is finally approved. Conversely, if the settlement is *not* approved, either at the trial court level or on appeal, then Watts Guerra *can* help its clients—by filing, litigating, and/or settling individual claims against the Defendants. The Parties tacitly concede the point. *See* Opp. at 12 (asserting class members have no use for counsel "*unless and until*" a court denies approval) (emphasis added). Further, each fee agreement makes patently clear what events are required to occur in order for Watts Guerra to obtain financial recompense for its clients. *See* Doc. 83-6 (Parties' Ex. F) at 2; Doc. 86-1 (Watts Ex. A) at 2.[4]

6.     The Parties complain that Watts Guerra "omits any reference to the substantial benefits the injunctive relief will provide the Rule 23(b)(2) class," and that Watts' statements suggest that class members will receive no value from the settlement. Opp. at 13, 15-16. But that is the truth: the injunctive relief is nothing more than a promise not to violate the law, which provides class members no cash value, nor any other meaningful relief, in return for which class members must surrender (among other things) any and all rights to statutory damages.[5]

---

[4] The Parties also object to the enthusiastic tone of Watts Guerra's television ad, and the fact that viewers are exhorted to "Call to File Your Claim NOW!" without being immediately told that Watts Guerra will not file a claim with a court unless and until the settlement is disapproved. *See* Opp. at 14 & n.5. But Watts Guerra's intake process explains the situation clearly; no one can actually retain the firm without being directed to review and acknowledge the hurdles that lie between his or her retention of Watts Guerra and the actual receipt of a check.

[5] The Parties present the injunction as if it would provide various affirmative "benefits" to class members, for example, a right to dispute inaccurate information. *See* Opp. at 3. But such "benefits" are no more—indeed, they are less—than the FCRA already requires.

Watts has no obligation to disseminate the Party Line—and every right to publicize its own professional assessment and opinion regarding the significant shortcomings of the proposed settlement. The Parties may disagree, but that is no basis for censorship. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974) ("However pernicious an opinion may seem, we depend for its correction not on the conscience of judges … but on the competition of other ideas.").

7.     The Parties assert that Watts Guerra failed to address two points from the Parties' Exhibit D (Doc. 83-4). The first assertion is that the website made the release appear broader than it is, insofar as the settlement does not release *actual damages* claims. Opp. at 16. **But the excerpt quoted and emphasized by the Parties as misleading can also be found—word-for-word—on the official settlement website.** It is not misleading there, and it is not misleading on Watts' site either. *See* Doc. 84-4 (Parties' Ex. D) at 4 (quoting Ex. B at 1) (class members would release claims for "certain money damages" and be unable to seek "limited statutory remedies," etc.); http://collectionreportlawsuit.com/MainPage/FREQUENTLYASKEDQUESTIONS.aspx (under "How does the proposed settlement affect my rights?").

The second point highlighted by the Parties as having been overlooked is the allegation that the website "obscures" the difference between the (b)(2) and (b)(3) classes "by purporting to seek members of the Rule 23(b)(2) class as clients, but suggesting a cash payment is possible if the person hires Watts Guerra and successfully objects." Ex. D at 5 (internal citation to Exs. B and F omitted). But this "suggest[ion]" is not false: A (b)(2) class member who hires Watts may indeed receive a cash payment if the settlement fails, either at the trial court level or on appeal. Further, the Parties elected to juxtapose Exhibits B and F—that is, the *August* website, with the *September* fee agreement. But class members were presented with the September fee agreement only in the context of the revised website, which the Parties did not submit to the Court.

The Parties also complain that Watts Guerra suggested that (b)(2) class members would release claims unique to the (b)(3) class.  Ex. D at 4.  But even if the website could have been so misinterpreted, the Parties' concern again is based on a portion of the August website that has since been revised.  (As it appeared at the time the Parties filed their Motion to Correct, the website included additional information about the (b)(3) class.)  Moreover, in August, Watts Guerra's fee agreement was specifically designed to screen out (b)(3) class members, whom Watts declined to accept as clients for purposes of filing objections.  Doc. 86 at 8-9, 11.

8.      Finally, the Parties make several inaccurate and/or unsupported contentions regarding the nature and significance of Watts Guerra's prior relationship with the Aaron Objectors.  *See* Opp. at 3, 10-11, 15.  For example, although conceding that "Watts Guerra has an unrestricted right to communicate with those clients who have retained the firm" (Opp. at 3), the Parties characterize the Aaron Objectors as having been "former clients" and Watts Guerra as having had a "limited representation."  *See id.*  These assertions have no citation to any authority or evidence that would establish either their truth or relevance.

The Parties also assert that, if Watts Guerra truly were seeking to communicate "principally" with its *Trans Union* clients, "the tailored and by far most economical means by which to do so would have been to drop a letter in the mail."  Opp. at 10.  Not so.  In fact, Watts Guerra sent voicemail and email messages (no postage required) directing those clients to the www.bringaclaim.com website.  This approach combined an effective means of providing information, convenience for the target audience, and cost efficiency for the firm.  In addition, as Watts explained in its Motion (Doc. 86 at 3, 6), the online fee agreement at this time was expressly limited to satisfied, former clients from the Trans Union matter, *and* Watts did not run any television ads until after August 30, 2013.  Accordingly, not only is it highly improper for

the Parties to accuse Watts Guerra of lying to this Court regarding its plans and motives in set-ting up the website (Opp. at 10), but there can be no reasonable dispute that Watts' target audi-ence prior to the objection deadline truly was its own *Trans Union* clients.

In short, Watts Guerra's communications were not misleading.  The Parties' contrary ar-guments are based principally around (1) their own opinions regarding the settlement—opinions with which Watts is not obliged to agree; (2) outright errors and inaccurate representations to the Court; and (3) a fundamental confusion about the fact that Watts Guerra's communications changed materially after the objection period closed on August 30, 2013.

## II.     The Take-Down Order is unconstitutional.

As explained above, Watts Guerra's speech cannot be found to be misleading.  But even if the Parties were correct that some class members might be confused in some way, the Take-Down Order violates the core principles of First Amendment law.

### A.     The Order is a prior restraint, and presumptively unconstitutional as such.

The Parties do not dispute that prior restraints are presumptively unconstitutional.  In-stead they contend that the Take-Down Order cannot be so labeled.  Opp. at 11, 24-27.  But this is plainly incorrect.  In paragraph (1), the Order requires Watts Guerra to take down all webpages and videos related to the settlement, and to "cease any and all advertising campaigns or other communications concerning, related to, or describing the Proposed Settlement whether on televi-sion, the radio, or other media without first complying with the provisions required by the fol-lowing paragraph (2)."  Doc. 84 at ¶1.  Paragraph (2) then provides:

> Thompson and Watts Guerra shall meet and confer with Class Counsel ***prior to their dis-closure or use*** of any materials intended to replace the material described in foregoing paragraphs (1)(a) through (1)(c).  To the extent that Class Counsel believes such new ma-terial continues to contain misrepresentations or omissions and Thompson or Watts Guer-ra refuses to correct those misrepresentations or omissions, Class Counsel, Thompson, and Watts Guerra should report those disagreements to the Court for further guidance ***prior to use or disclosure*** of those new materials.

*Id.* at ¶ 2.

The Parties own arguments further confirm the point.  For example, they acknowledge that "**the Court required that Watts Guerra meet and confer with the Parties Counsel before posting information** to ensure that there is an actual dispute between the Parties and Watts Guerra.  **If the Parties do not object**, Watts Guerra will be free to post information as it pleases." *See* Opp. at 24 n.10 (emphasis added).  The Parties also propose that disputes over future communications could be submitted for resolution by "a Virginia State Bar or Special Master review."  *Id.* at 3, 24 n.10.  There is a name for a requirement that a party obtain prior approval or pre-clearance before speaking:  It is called a "prior restraint," and it is presumptively unconstitutional.  *E.g.*, *Fujishima v. Bd. of Ed.*, 460 F.2d 1355, 1357 (7th Cir. 1972).

The Parties' principal authority in this section is the curative notice required by the district court in *Amchem*.  *See* Opp. at 25-26.  But it is not clear why that should be persuasive here, given that the concern in *Amchem* was whether class members had been misled into opting out—while (b)(2) class members here have no right to opt out, and Watts Guerra did not seek to represent any (b)(3) class members as objectors.  *See* Doc. 86 at 11.  In addition, the *Amchem* settlement was ultimately rejected by the Supreme Court, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), which calls into question whether the *Amchem* district court's concerns were even well-founded.  Moreover, the Parties make no attempt to show that the *Amchem* settlement was similar to this one (nor was it), and most of the statements in that case, unlike Watts Guerra's here, included no mention of the court-approved notice.  *See* Opp. at 25-26.  Finally, and in any event, so far as the Parties' discussion shows, the district court in *Amchem* did not order a blanket restraint on ***future*** communications.  Accordingly, *Amchem* does not speak to the proper categorization or constitutional bona fides of a prior restraint like the one at issue here.

14

**B.    The Parties effectively concede that no threat of harm exists to support a "censor first, ask questions later" approach.**

Even if the Court has concerns about certain of Watts Guerra's prior statements, we respectfully submit that the Take-Down Order still must be vacated.

*First*, the Parties assert that the Court is just imposing "corrective action after the fact," and that the supposed misleading nature of Watts' past speech supports an "order preventing similar future speech."  Opp. at 26-27.  But that is wrong.  Future protected speech may ***not*** be regulated based merely on a finding of past unprotected speech.  *See Vance v. Univ. Amus. Co.*, 445 U.S. 308, 311, 316-17 (1980) (rejecting "prior restraints of indefinite duration" based on a theater's having shown obscene films in the past).  That is why proper findings (discussed below) are so critical:  Given findings specifying what has been held misleading and why, the enjoined party knows what it may or may not say going forward.

*Second*, the Parties argue that the Court should direct Watts Guerra to negotiate or submit to mediation, but such a course is permissible ***if and only if*** the Take-Down Order is first vacated.  It would be unconstitutional to require negotiation now, with the status quo having been completely flipped by the Take-Down Order.  *Cf. Freedman v. Maryland*, 380 U.S. 51, 59 (1965) (status quo must be maintained pending adjudication of a prior restraint's legitimacy).  As discussed below, Watts Guerra would be willing to discuss the Parties' concerns and consider compromise proposals ***after*** the Take-Down Order has been vacated.

*Third*, the Parties appear to concede that there is no "urgency" to quash Watts Guerra's speech, given that "the deadline to object and opt out has long passed."  *See* Opp. at 3.  Of course, Watts Guerra itself highlighted the expiration of the objection period as a reason why the Take-Down Order is unsustainable.  Doc. 86 at 18, 20.  The Parties respond that this means "there is no immediate need to ***permit***" Watts Guerra's speech.  Opp. at 3 (emphasis added).

That, however, turns the First Amendment on its head.  It is *quashing* speech, not permitting it, that requires justification.  *E.g.*, *Central Hudson*, 447 U.S. at 564.

This is a critical point:  The Parties have identified no legitimate basis for interfering with Watts Guerra's speech.  No one may formally object to the (b)(2) settlement at this time, or opt out from the (b)(3) settlement.  The Parties weakly state that, if the settlement is approved, then Watts Guerra's communications may somehow dissuade class members from obtaining and re-viewing their FCRA file.  Opp. at 3-4.  But this is too thin and speculative to support judicially enforced silence.  The Framers "did not exalt order at the cost of liberty"; "[i]f there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of educa-tion, the remedy to be applied is more speech, not enforced silence."  *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring).

> **C.**     **The Order should be vacated for lack of findings and tailoring.**

The Order makes no findings that any Watts Guerra communication was misleading, in what time period, or in what respect.  The Parties disagree, but the Order speaks for itself.  *See* Doc. 84.  Nor is that void filled by the Parties' submission, which did not even mention the First Amendment, engage in a tailoring analysis, propose any findings of fact, or submit to the Court the current versions of the www.bringaclaim.com website and videos.

> **1.**     **The Order does not make the findings necessary to restrict speech to absent class members.**

The Parties concede that the Order does not supply any factual basis for restricting Watts Guerra's speech, but they propose that "the Parties supplied several legitimate reasons in their Motion to Correct."  Doc. 89 at 11.  Even if that were so (it is not), that would not be sufficient under *Gulf Oil*, which held that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of

the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co. v. Bernard,*, 452 U.S. 89, 101-02 (1981) (quoted at Doc. 86 at 17).  "Though [*Gulf Oil*] did not declare all bans *per se* invalid, it did require that their imposition be *justified by a clear finding of need* and that they be *specifically confined to the narrowest limits required to meet the need.*" *Lewis v. Bloomsburg Mills, Inc.*, 773 F.2d 561, 563 n.4 (4th Cir. 1985) (emphasis added).

> **2.    The Parties did not carry their burden of affirmatively establishing that the Take-Down Order is narrowly tailored.**

Furthermore—and independently dispositive—the law is clear that proponents of a speech-restricting injunction bear the burden of "*affirmatively esablish[ing]*" that the restrictions they seek are "narrowly tailored" to prohibiting misleading statements. *See City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 416-18 (1993) (emphasis added) (quoted at Doc. 86 at 16).  The Parties did not even purport to provide a tailoring analysis in their original motion, nor do they fix this fatal problem in their most recent submission.

*First*, their Opposition is centered around a supposed disconnect between the position of class members presently, and the website as it existed in August (not the version actually enjoined by the Take-Down Order).  For this reason alone, the Parties failed to carry their burden.

*Second*, faulting Watts Guerra for its supposed failure to meet-and-confer, the Parties claim that Watts "cannot now complain of the purported overbreadth or scope of the current Order as they have had every opportunity to suggest an alternative (and a truthful one) to the broad and inaccurate advertising previously utilized."  Opp. at 11.  But this makes no sense; Watts' position was and is that its communications are not misleading in *any* respect.  In any event, the law is clear: as the proponents, the burden is on the Parties.  *E.g.*, *City of Cincinnati*, *supra*.

*Third*, the Parties concede that "[t]he Order required Watts Guerra to take down all websites and videos relating to the Proposed Settlement and cease any and all advertising campaigns

17

or other communications related to the Proposed Settlement whether on television, the radio, or other media." Opp. 28. That is not "adequately" tailored. In fact, it is not "tailored" at all.

* * * *

In sum, it is plain that the Parties do not like the participation of the Aaron Objectors in this matter—or the threat that the settlement could be derailed, with an attendant loss of the massive benefits that it provides to Class Counsel and the Defendants. But quashing opposing views and gagging Watts Guerra so that it cannot "foment[] opposition" (Doc. 83 at 14-15) is unconstitutional. This is not a Big Brother world, and the Parties are not permitted to promote themselves to the position of Big Brother.

## III. The Court should reject the Parties' attempts to drive a wedge between Watts Guerra and its co-counsel and clients.

### A. There is no conflict of interest or "standing" problem.

The Parties argue that Winston & Strawn lacks "standing" to press the Reconsideration Motion with and/or on behalf of its co-counsel. Opp. at 6-9. But no adversity exists between Watts Guerra and the clients that it jointly represents with Winston & Strawn. To the contrary, the interests of the Aaron Objectors and Watts Guerra are aligned: All seek to be heard on the issue that the proposed class settlement does not comply with the requirements of Rule 23 and is, put simply, a very bad deal for absent class members. The Take-Down Order is also adverse to the Aaron Objectors insofar as it short-circuits public dissent over this proposed settlement, and insofar as there are economies of scale that could benefit *all* of Watts Guerra's clients in the event that the settlement is disapproved. The Parties' transparent attempt to manufacture a conflict of interest for strategic purposes should not be countenanced. *See, e.g.*, *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436 (1985) (expressing "concerns about the tactical use of disqualification motions to harass opposing counsel"); *Bennett Silverstein Assoc. v. Furman*, 776 F.

18

Supp. 800, 802 (S.D.N.Y. 1991) (motions to disqualify opposing counsel viewed with disfavor because they are "often interposed for tactical reasons.").[6]

The Parties also complain that "Thompson and Watts Guerra have never properly entered an appearance before this Court." Opp. at 6. But the Preliminary Approval Order required appearances only for counsel seeking to appear and speak at the Final Approval hearing. *See* Doc. 67 at 11. Watts Guerra has every right to deal with this matter through its co-counsel.

### B.    There has been no improper failure to meet-and-confer.

For similar reasons, the Parties are off-base in their complaints about being unable to meet-and-confer with Mr. Thompson personally. Opp. at 8-9. Watts Guerra, Winston & Strawn, and Professor Samuel Issacharoff together represent the Aaron Objectors. They have every right to decide for themselves who will speak for their side on any given point. They selected Mr. Anderson for communicating with the Parties on this matter—a Fellow of the American College of Trial Lawyers, who regularly writes and speaks on professional responsibility issues, including conflicts of interest, and served for 15 years as Winston & Strawn's General Counsel.[7]

It is also inaccurate for the Parties to assert that Watts Guerra is engaging in a "game" to

---

[6] The only case cited by the Parties, *Sanford v. Commonwealth of Virginia*, 687 F. Supp. 2d 601-02 (E.D. Va. 2009), does not support the proposition that Winston & Strawn has a conflict of interest. The facts of that case are inapposite. More apposite are cases like: *H&H Acquisition Corp. v. Financial Intranet Holdings*, 2000 U.S. Dist. LEXIS 5463 (S.D.N.Y. April 27, 2000) (no conflict where law firms were sued along with client and law firms represented all defendants including itself); *Cooke v. AT&T Corp.*, 2006 U.S. Dist. LEXIS 2489 (S.D. Ohio May 23, 2006) (no conflict where husband, a lawyer, represented himself and his wife, both parties in the case); *In Re Allen*, 2003 LEXIS 4830 (Tex. App. June 5, 2003) (no conflicts where lawyers represented both the trustee and beneficiaries); and *Walton v. Diamond*, 2012 U.S. Dist. LEXIS 177805 (N.D. Ill. Dec. 14, 2012) (no conflict where attorney represented himself and other defendants).

[7] The Parties observe that Professor Issacharoff—a nationally known authority on class action law and chaired Professor of Law at New York University School of Law—co-signed the Aaron Objectors' Objections, but did not appear on Watts Guerra's Motion to Reconsider. Opp. at 7 n.4. This was simply because of the exigent circumstances surrounding that filing. Professor Issacharoff was out of the country and unable to review the Motion to Reconsider in draft form. His co-counsel concluded that they should not put his name on a Motion that he had not reviewed.

"hover just beyond the jurisdiction of the court."  Opp. at 6.  Watts has not raised a jurisdictional objection against the Take-Down Order; instead, it immediately complied with that Order and certified as much, as this Court required.  The Parties try to draw a parallel to Watts Guerra's *Trans Union* work.  *Id.*  There, however, the Honorable Robert Gettleman, *a federal judge in Chicago*, was asked to enjoin tens of thousands of individual lawsuits filed and pending in *Texas state court*.  Those state court lawsuits were "post-settlement claims" contemplated by a settlement previously approved by Judge Gettleman—and Judge Gettleman ***agreed*** with Watts about the limits of his jurisdiction.  *E.g.*, Doc. 814, No. 00-4729 (N.D. Ill. Nov. 8, 2010).

Furthermore, although the Parties now say that the "matter should have been resolvable between counsel" (Opp. at 2), the Parties' own Motion to Correct was filed without any prior notice or attempt to meet and confer—and this despite the fact that the Parties apparently had reviewed the website and taken the screen shots comprising their Exhibit B *more than a month prior to filing*.  In addition, as explained above (at 5), the improper conduct of counsel for the Parties during the "meet and confer" after the Court entered the Take-Down Order hardly suggested that further conferences would be fruitful.

However, in light of the Parties' newfound willingness to negotiate, Watts Guerra has reached out to the Parties to propose a resolution.  Specifically, Watts would agree to discuss any concerns that the Parties may have over any new advertising (or other communications with non-client class members) ahead of the Fairness Hearing, but only if the Take-Down Order is vacated.  Until the status quo ante is reset, Watts Guerra cannot slow or cease its efforts to defend its First Amendment rights.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Watts Guerra respectfully submits that this Court should vacate the Take-Down Order entered on October 23, 2013 (Doc. 84).

Dated: November 5, 2013                    Respectfully Submitted,

                                           _____/s/_____
                                           Charles B. Molster, III
                                           Va. Bar No. 23613
                                           Attorney for Megan Christina Aaron, *et al.*
                                           WINSTON & STRAWN LLP
                                           1700 K Street, N.W.
                                           Washington, DC  20006
                                           (202) 282-5988 (phone)
                                           (202) 282-5100 (fax)
                                           cmolster@winston.com

OF COUNSEL:

Kimball R. Anderson
William P. Ferranti
Karl A. Leonard
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
(312) 558-5600 (phone)
(312) 558-5700 (fax)
bferranti@winston.com

Ryan Thompson
WATTS GUERRA LLP
5250 Prue Road, Suite 525
San Antonio, Texas  78240
(210) 448-0500 (phone)
(210) 448-0501 (fax)
rthompson@wattsguerra.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of November, 2013, I caused the foregoing document

to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send

a notification of such filing to CM/ECF participants.  I further hereby certify that I will cause the

foregoing document to be sent by first class mail to the following non-CM/ECF participants:

Adam E. Schulman                                   David Brown
Center for Class Action Fairness                   1717 Market Street
1718 M. Street NW #236                             Tacoma, WA 98402
Washington, DC 20036

Jeanne Giles
260 Gooseberry Drive
Reno, NV 89523


                                                        /s/
                                                   Charles B. Molster, III
                                                   Va. Bar No. 23613
                                                   Attorney for Megan Christina Aaron, *et al.*
                                                   WINSTON & STRAWN LLP
                                                   1700 K Street, N.W.
                                                   Washington, DC  20006
                                                   (202) 282-5988 (phone)
                                                   (202) 282-5100 (fax)
                                                   cmolster@winston.com