# EXHIBIT 12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division


GREGORY THOMAS BERRY, et al.
on behalf of themselves and all others
similarly situated

     Plaintiffs,

                                     Case No. 3:11cv754


v.


LEXISNEXIS RISK &
INFORMATION ANALYTICS
GROUP, INC., et al.,

     Defendants


DECLARATION OF GEOFFREY P. MILLER


1

I, GEOFFREY P. MILLER, declare:

1.    I am over eighteen years of age, I am competent to make this declaration, and I have personal knowledge of the matters and facts recited herein.

### Scope of Retention

2.    I have been retained to review the facts and circumstances of this settlement with a view to analyzing the request for an award of attorneys' fees and expenses.

### Qualifications

3.    A copy of my resume is attached as Exhibit A.  I am the Stuyvesant P. Comfort Professor of Law at the New York University Law School.  I am a *magna cum laude* graduate of Princeton University and a 1978 graduate of the Columbia Law, where I was Editor-in-Chief of the Law Review.  I served as a law clerk to the Honorable Carl McGowan of the United States Court of Appeals for the District of Columbia Circuit and to the Honorable Byron R. White, Associate Justice of the United States Supreme Court.  I was an attorney-adviser at the Office of Legal Counsel in the United States Department of Justice from 1980-1982.  After practicing civil litigation with a Washington D.C. law firm, I joined the faculty of the University of Chicago Law School in 1983, where I served as Kirkland & Ellis Professor and Associate Dean.  I moved to New York University in 1995.

4.    I am a co-founder, former co-president, and board member of the Society for Empirical Legal Studies, an organization of researchers in the fields of law, economics, sociology, psychology, business, and political science whose work examines the statistical impact of legal rules.

5.    I am one of HeinOnline Law Journal Library's top-100 most cited authors all time.[1]

A recent empirical study of scholarly influence lists me as one of America's top-50 most relevant

law professors.[2]   In 2011 I was inducted as a Fellow in the American Academy of Arts and

Sciences.

6.    I have written extensively on class action and shareholders derivative cases.  In the

course of that research I have examined more than a thousand class action and shareholders

derivative settlements.   My articles on class action law have been cited by state and federal

courts across the United States.[3]

---

[1] See http://www.heinonline.org/HOL/MostCitedAuthors?collection=journals.

[2] John Yoo & James Cleith Phillips, The Cite Stuff: Inventing a Better Law Faculty Relevance Measure, UC Berkeley Public Law Research Paper No. 2140944 (September 3, 2012), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2140944.

[3] *Forsythe v. ESC Fund Management* Co. (U.S.), Inc., 2013 WL 458373 (Del. Ch. 2013); *In re Processed Egg Products Antitrust Litigation*, 2012 WL 2885924 (E.D.Pa. 2012); *Louisiana Municipal Police Employees' Retirement System v. Pyott*,--- A.3d ----, 2012 WL 2087205 (Del.Ch. 2012); *Forsythe v. ESC Fund Management Co.*, 2012 WL 1655538 ( Del.Ch. 2012); *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, (7th Cir. 2011); *In re Sauer-Danfoss Inc. Shareholders Litigation*, 2011 WL 2519210 (Del.Ch. 2011); *Thorogood v. Sears, Roebuck and Co.*, 627 F.3d 289 (7th Cir. 2010); *Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3rd Cir. 2010); *In re Revlon, Inc. Shareholders Litigation*, 990 A.2d 940 (Del.Ch. 2010); *Lubin v. Farmers Group, Inc.*, 2009 WL 3682602 (Tex.App. 2009); *Westgate Ford Truck Sales, Inc. v. Ford Motor Co.*, 2007 WL 2269471 (Ohio App. 2007); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D.Cal. 2007); *Amalgamated Bank v. Yost*, 2005 WL 226117 (E.D.Pa. 2005); *Official Committee of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3rd Cir. 2003); *Fruchter v. Florida Progress Corp.*, 2002 WL 1558220, (Fl. App. 2002); *In re Microstrategy, Inc.*, 172 F.Supp.2d 778 (E.D.Va. 2001); *In re Cendant Corp. Litigation*, 264 F.3d 201 (3rd Cir. 2001); *Scardelletti v. Debarr*, 265 F.3d 195 (4th Cir. 2001); *In re Auction Houses Antitrust Litigation*, 197 F.R.D. 71 (S.D.N.Y. 2000); *Lealao v. Beneficial California, Inc.*, 82 Cal.App.4th 19, 97 Cal.Rptr.2d 797 (2000); *AUSA Life Ins. Co. v. Ernst and Young*, 206 F.3d 202 (2nd Cir. 2000); *Davis v. Carl Cannon Chevrolet-Olds, Inc.*, 182 F.3d 792 (11th Cir. 1999); *In re Baan Co. Securities Litigation*, 186 F.R.D. 214 D.D.C. 1999); *In re Quantum Health Resources, Inc.*, 962 F.Supp. 1254 (C.D. Cal. 1999); *Strong v. BellSouth Telecommunications, Inc.*, 173 F.R.D. 167 (W.D.La. 1997); *Howard v. Globe Life Ins. Co.*, 973 F.Supp. 1412 (N.D.Fla. 1996); *Kamilewicz v. Bank of Boston Corp.*, 100 F.3d 1348 (7th Cir. 1996); *In re Asbestos Litigation*, 90 F.3d 963 (5th Cir. 1996); *General Motors Corp. v. Bloyed*, 916 S.W.2d 949 (Tex. 1996); *Brundidge v. Glendale Federal Bank, F.S.B.*, 168 Ill.2d 235, 659 N.E.2d 909, 213 Ill.Dec. 563 (1995); *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295 (1st Cir. 1995); *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768 (3rd Cir. 1995); *BTZ, Inc. v. Great Northern Nekoosa Corp.*, 47 F.3d 463 (1st. Cir. 1995); *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304 (3rd Cir. 1993); *In re Oracle Securities Litigation*, 829 F.Supp. 1176 (N.D. Ca. 1993); *Gottlieb v. Wiles*, 150 F.R.D. 174 (D.Colo. 1993); *Durr v. Intercounty Title Co. of Illinois*, 826 F.Supp. 259 (N.D.Ill. 1993); *qad. inc. v. ALN Associates, Inc.*, 807 F.Supp. 465 (N.D.Ill. 1992); *Wesley v. General Motors Acceptance Corp.*, 1992 WL 57948 (N.D.Ill. 1992); *In re Verifone Securities Litigation*, 784 F.Supp. 1471 (N.D.Cal. 1992); *Davis v. Coopers & Lybrand*, 1991 WL 154460 (N.D.Ill. 1991).

7.   A particular area of focus has been the empirical analysis of counsel fees in representative cases. My statistical studies on class action and shareholders derivative cases (co-authored with Professor Theodore Eisenberg of Cornell University) are a leading authority on that topic.[4]

---

[4] *See Richardson v. L'Oreal USA, Inc.*, --- F.Supp.2d ----, 2013 WL 5941486 (D.D.C.,2013); *Swift v. Direct Buy, Inc.*, 2013 WL 5770633 (N.D.Ind. 2013); *Singleton v. Domino's Pizza, LLC*, --- F.Supp.2d ----, 2013 WL 5506027 (D.Md. 2013); *In re Schering-Plough Corp. Enhance Securities Litigation*, 2013 WL 5505744 (D.N.J. 2013); *In re Vioxx Products Liability Litigation*, 2013 WL 5295707 (E.D.La. 2013); *Evans v. TIN, Inc.*, 2013 WL 4501061 (E.D.La. 2013) ("The data sets in the empirical study conducted by Professors Eisenberg and Miller are commonly used by district courts in this circuit"); *Silverman v. Motorola Solutions, Inc.*, --- Fed.Appx. ----, 2013 WL 4082893 (7th Cir. 2013); *City of Pontiac General Employees' Retirement System v. Lockheed Martin Corp.*, --- F.Supp.2d ---, 2013 WL 3796658 (S.D.N.Y. 2013); *Gortat v. Capala Bros.*, --- F.Supp.2d ----, 2013 WL 2566622 (E.D.N.Y. 2013); *In re Southeastern Milk Antitrust Litigation*, 2013 WL 2155387 (E.D.Tenn. 2013); *Strawn v. Farmers Ins. Co. of Oregon*, 353 Or. 210, 297 P.3d 439 (Or. 2013); *Heekin v. Anthem, Inc.*, 2012 WL 5878032 (S.D.Ind. 2012); *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 877 (7th Cir. 2012); *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 744 (7th Cir. 2011); *Allapattah Servs., Inc. v. Exxon Corp.*, 362 F.3d 739, 760 (11th Cir. 2004) (Judges Tjoflat and Birch, dissenting from denial of en banc review); *Strawn v. Farmers Ins. Co. of Oregon*, 353 Or. 210, 297 P.3d 439 (2013); *In re Amaranth Natural Gas Commodities Litig.*, No. 07-6377, 2012 U.S. Dist. LEXIS 82599, at *7 n.12 (S.D.N.Y. June 11, 2012); *Board of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, No. 09-686, 2012 U.S. Dist. LEXIS 79418, at *5 n.12 (S.D.N.Y. June 7, 2012); *Lane v. Page*, No. 06-1071, 2012 U.S. Dist. LEXIS 74273, at *161 (D.N.M. May 22, 2012); *Silverman v. Motorola, Inc.*, No. 07-4507, 2012 U.S. Dist. LEXIS 63477, at *15 (N.D. Ill. May 7, 2012); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, MDL No. 09-2046, 2012 U.S. Dist. LEXIS 37326, at *94, *116 (S.D. Tex. Mar. 20, 2012) ("The tables included in the [Eisenberg and Miller] study are good indicators of what the market would pay for class counsel's services because the tables show what attorneys have been paid in similar cases, and thus what class counsel could have expected when they decided to invest their resources in this case."); *Walsh v. Popular, Inc.*, No. 09-1552, 2012 U.S. Dist. LEXIS 32991, at *24 (D.P.R. Mar. 12, 2012); *Am. Int'l Group, Inc. v. Ace Ina Holdings, Inc.*, No. 07-2898, 2012 U.S. Dist. LEXIS 25265, at *59 (N.D. Ill. Feb. 28, 2012); *Ebbert v. Nassau County*, 05-5445, 2011 U.S. Dist. LEXIS 150080, at *41 (E.D.N.Y. Dec. 22, 2011); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1336 n.4 (S.D. Fla. 2011); *Latorraca v. Centennial Techs., Inc.*, No. 97-10304, 2011 U.S. Dist. LEXIS 135435, at *11 (D. Mass. Nov. 22, 2011); *In re Ky. Grilled Chicken Coupon Mktg. & Sales Litig.*, 2011 WL 5599129 (N.D. Ill. Nov. 16, 2011); *Pavlik v. FDIC*, No. 10-816, 2011 U.S. Dist. LEXIS 126016, at *11 (N.D. Ill. Nov. 1, 2011); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 461 (D.P.R. 2011); *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1033 (N.D. Ill. 2011); *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 652 (E.D. La. 2010); *Velez v. Novartis Pharms Corp.*, 04-09194, 2010 U.S. Dist. LEXIS 125945, at *60-61 (S.D.N.Y. Nov. 30, 2010); *Braud v. Transport Serv. Co. of Illinois*, No. 05-1898, 2010 U.S. Dist. LEXIS 93433, at *27-30 (E.D. La. Aug. 17, 2010); *In re Lawnmower Engine Horsepower Mktg. & Sales Prac. Litig.*, 733 F. Supp. 2d 997, 1013 (E.D. Wis. 2010); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 675 (N.D. Tex. 2010); *Fiala v. Metro. Life Ins. Co.*, 899 N.Y.S.2d 531, 541 (N.Y. Sup. Ct. 2010); *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 359 (E.D.N.Y. 2010); *In re Marsh Erisa Litig.*, 265 F.R.D. 128, 149 (S.D.N.Y. 2010); *Strawn v. Farmers Ins. Co.*, 226 P.3d 86, 99 (Or. Ct. App. 2010); *Hall v. Children's Place Retail Stores, Inc.*, 669 F. Supp. 2d 399, 403 n.35 (S.D.N.Y. 2009); *In re Trans Union Corp. Privacy Litig.*, No. 00-4729, 2009 U.S. Dist. LEXIS 116934, at *22-25, *39 (N.D. Ill. Dec. 9, 2009); *Loudermilk Serv., Inc. v. Marathon Petroleum Co. LLC*, 623 F. Supp. 2d 713, 724 (S.D. W.Va. 2009) ("Because the Eisenberg and Miller study was a far more comprehensive analysis of similar cases than this Court could hope to achieve in a reasonable time, the Court accepts their results as a benchmark on which to judge a reasonable fee in this case."); *Rodriguez v. West Publ'g Co.*, 563 F.3d 948, 958 (9th Cir. 2009); *In re OCA, Inc. Sec. and Deriv. Litig.*, No. 05-2165, 2009 U.S. Dist. LEXIS 19210, at *63-66 (E.D. La. Mar. 2, 2009); *In re Enron Corp. Secs., Deriv. & ERISA Litig.*, 586 F. Supp. 2d 732, 800 (S.D. Tex. 2008); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 755 n.2 (S.D. Ohio 2007); *In re Tyco Int'l., Ltd. Multidistrict Litig.*, 535 F.

8.    Based upon my education, experience and peer-reviewed writings, I believe I am qualified to opine on the comparability and reasonableness of Class Counsel's hours, billing rates, and overall fee request.

9.    I am being compensated for my services in this matter on an hourly basis at my usual billing rate.

## Materials Reviewed

10.    In developing my opinions in this matter I have discussed this case with Class Counsel and have reviewed the materials listed in Appendix B of this Declaration.

## Summary of Opinion

11.    My opinion is that Class Counsel's request for an award of attorneys' fees and expenses is within the range of reason when judged against results in similar cases.

## The Litigation

12.    The complaint in this lawsuit alleged that Defendants LexisNexis Risk & Analytics Group, Inc., Seisint, Inc., and Reed Elsevier Inc. ("Defendants") violate rights of putative class members protected under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§1681 *et seq.* Specifically, the complaint charged that Defendants violated the FCRA by selling certain reports to debt collectors without treating those reports as required for "consumer reports" under the statute. In this and two related cases, plaintiffs' counsel conducted informal and/or formal

---

Supp. 2d 249, 269 (D.N.H. 2007); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 388 (C.D. Cal. 2007); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 853, 862-64, 866, 870 (E.D. La. 2007) ("[T]he Court will look to Eisenberg and Miller's data sets to determine an average percentage for cases of similar magnitude"); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 n.6 (S.D.N.Y. 2007); *Fireside Bank v. Superior Court*, 155 P.3d 268, 281 n.7 (Cal. 2007); *In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 38, 42 (D.N.H. 2006); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1209, 1211 (S.D. Fla. 2006); *In re Educ. Testing Serv. Praxis Principles of Learning and Teaching Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 629-32 (E.D. La. 2006); *Hicks v. Morgan Stanley*, No. 01-10071, 2005 U.S. Dist. LEXIS 24890, at *25 (S.D.N.Y. Oct. 24, 2005); *In re Lupron Mktg. and Sales Prac. Litig.*, 01-10861, 2005 U.S. Dist. LEXIS 17456, at *18 (D. Mass. Aug. 17, 2005); *In re HPL Techs., Inc. Sec. Litig.*, 366 F.Supp.2d 912, 914 (N.D. Cal. 2005); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 80-81 (D. Mass. 2005); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 286 (D. Mass. 2004).

discovery, deposed witnesses, served or responded to written discovery demands, and reviewed thousands of pages of documents.  The cases had an unusually contentious and extended mediation history, extending back as far as 2009 and including nine in-person meetings between plaintiffs' counsel and Defendants or their counsel, held in numerous different cities.

13.  Once the general outlines of a settlement were hammered out, the parties again participated in several in-person meetings in order to further define the settlement and to outline a workable plan for injunctive relief.  The parties presented a detailed analysis of their settlement agreement to Judge Lauck at a settlement conference in January 2013.

14.  For purposes of my analysis, it is important to note that the parties did not discuss, much less resolve, the issue of attorneys' fees until after they reached agreement on all essential terms of the settlement.

### The Settlement

15.  The parties have structured this settlement in a helpful way by defining two settlement classes and two forms of relief:

(a)  The most far-reaching aspect of this settlement – and the feature that will have the greatest impact going forward if the settlement is approved – is structured as a (b)(2) injunctive relief class.  The injunctive relief called for in this settlement has been termed a "sea change" in practices in the debt collection industry.  As described in the declaration of Professor Neil M. Richards, on which I rely, the injunctive relief portions of this settlement could benefit any consumer in the United States whose credit transactions are affected by the changes in business practices agreed to by the Defendants.

(b)  The other aspect of the settlement is a (b)(3) monetary recovery class encompassing approximately 31,000 consumers who contacted LexisNexis seeking treatment for Accurint®

reports similar to the treatment accorded to credit reports under the FCRA. This settlement would create a fund of $13.5 million to be shared pro rata by class members with valid claims (after deduction of attorneys' fees and expenses). Defendants also agree to bear the costs of notice and settlement administration with respect to this part of the settlement.

(c) The proposed settlement also contains provisions regarding attorneys' fees and expenses and service awards to the named plaintiffs. As noted above, these provisions were negotiated only after the parties had agreed on all substantial aspects of the merits relief for both classes. As regards the injunctive class, Defendants agreed to pay the entire amount of fees and expenses – over and above the injunctive relief provided to the class – in an amount up to $5.5 million. As regards the class action settlement, the settlement agreement provides that Defendants will not object to a fee and expense request for up to 30% of the settlement fund. Plaintiffs' counsel, however, seeks only 25% of the fund.

## Opinion

16. I am aware that approval of a class action settlement is a matter reserved for the Court and that an expert's role is necessarily limited. I believe, however, that my knowledge of class action litigation equips me to provide a perspective that may be of assistance in the Court's deliberations.

## Preliminary Considerations

17. Several considerations help inform my conclusion that the fee requested by counsel in this action is within the range of reason.

18. First, the materials I have reviewed indicate that Class Counsel fought to achieve the maximum possible value for the class:

(a) This case has an extended and complex history, reflecting assiduous and unceasing efforts by counsel to obtain a beneficial settlement for the class. Two earlier cases filed by counsel raised similar issues to the present case and required counsel to investigate the facts and law pertinent to the case at hand. Some lawyers would have given up when neither of these cases resulted in a class-wide settlement. Class counsel, to their credit, persevered and filed the instant case, which has resulted in the comprehensive settlement now before this Court.

(b) The proposed settlement is the result of vigorous and adversarial negotiation. Class counsel did not jump on the first chance to settle the case, or even the second or the third; nine separate in-person settlement meetings – several of them facilitated by an expert mediator – were required to hammer out even the basics of this agreement, and several more were required to finalize the detailed text.

19. Although I am not here offering an opinion on the fairness and adequacy of the settlement, it is apparent that Class counsel has achieved a notable result for the class.

(a) The $13.5 million cash component of the settlement, available to about 31,000 class members, is obviously a substantial recovery. This is not a consumer settlement in which class members obtain relief worth only a few dollars. If all class members take advantage of the pecuniary benefit made available under this settlement, each class member will receive about $450 gross and something around $300 net. Moreover, because the settlement provides that class members will receive pro rata shares, if some class members do not claim their entitlement, others will receive even more. In no event will any of the $13.5 million revert back to Defendants.

(b) The injunctive features of this settlement are more extensive still – in fact far more extensive. The documents I have reviewed reveal that the bulk of counsel's efforts, both on the

8

plaintiff side and the defense side, were devoted to the injunctive component of this settlement, and for good reason. As described in Professor Richards' declaration, millions of consumers can benefit from Defendants' promises to comprehensively reform their business practices, in what is essentially a fundamental reform to an important part of the debt collection industry in the United States. While the value of the injunctive relief cannot readily be calculated, it is clearly substantial.

### The Injunctive Class

20.  I now consider the $5.5 million fee and expense award, including $5,333,188.21 in fees and $166,811.79 in expenses requested for the injunctive class.

21.  Initially, it should be noted that none of this $5.5 million will be paid by the class. If this settlement is approved, the full amount of the requested fees and expenses will be covered by the Defendants.  The requested attorneys' fee neither reduces the recovery available to the class if the requested fee is approved, nor would a reduction in the fee result in any increase in class recovery.

22.  Also noteworthy is the fact that the parties commendably observed the "best practice" of deferring negotiations over fees and expenses until after they had achieved an agreement on the material terms of the merits settlement.   This practice supports the reasonableness of the fee request for the following reasons:

(a)  The practice eliminated any possibility of a tradeoff of a lower merits settlement for a higher fee.  No such tradeoff was possible because the agreement on the merits preceded the discussion of fees and expenses.

(b)  The separation of fees and merits introduced the protections of the adversary system into the setting of the fee.  Given that the merits relief had already been determined, Defendants

had every reason to bargain aggressively in order to minimize the cost of its agreement to pay Class counsel's fees and expenses. The fact that the party whose money was on the line agreed to Class counsel's request for fees and expenses is powerful evidence as to the reasonableness of the amounts requested.

23. Turning now to the question of the appropriate fee, an initial question is the proper methodology to use in evaluating the reasonableness of Class Counsel's fee request. Courts in the United States employ either of two principal methodologies to calculate a reasonable fee in representative litigation:

(a) The percentage-of-recovery method calculates the fee as a reasonable fraction of the amount recovered in the action. The percentage-of-recovery method is commonly used when the value of the recovery can be estimated with reasonable confidence.

(b) The alternative lodestar method calculates the fee based on an evaluation of Class Counsel's reasonable hours and reasonable hourly rate; this amount (the "lodestar") is then adjusted by a "multiplier" which accounts for other factors, most importantly the risk incurred by counsel in bringing the case. The lodestar approach is commonly used when the value of the recovery cannot be estimated with sufficient confidence; it is also employed as a "cross-check" on the reasonableness of the fee calculated under the percentage method.

24. As noted above and more specifically in the Declaration of Neil Richards, the relief obtained by Class Counsel's efforts has significant value. It is difficult, however, to estimate that value with precision because of the fact that the relief obtained is injunctive rather than pecuniary in nature. In light of these uncertainties, it is more instructive to calculate the fee for the injunctive component of this settlement based on the lodestar analysis.[5]

---

[5] Objector Adam Schulman argues that the fee request for the injunctive component of this settlement is excessive because, in his view, the value of the relief obtained does not justify the fee. Schulman Objection p. 32. Mr.

**Lodestar Analysis**

25.   The lodestar analysis requires an assessment of (a) class counsel's reasonable hours; (b) class counsel's reasonable hourly rate; and (c) the reasonable multiplier to apply under the facts and circumstances of the case.

**Hours**

26.   I am informed that Class Counsel expended a total of 6,811.8 hours in conducting this litigation, including partner time, other attorneys' time, and law clerk, paralegal, senior analyst time, and other professional support staff time.  Class Counsel's lodestar for this work is $3,349,379.95.

27.   I have not attempted to audit the reasonableness of these hours.  Based on my review of more than a thousand class action settlements, however, I see no "yellow flags" that would give reason to question class counsel's calculation of their hours or their attestation in this Court as to the amount of time incurred.  This was a major piece of litigation, extending over several years of intensive litigation and settlement negotiations, and resulting in a substantial monetary recovery for a portion of the class and comprehensive injunctive reforms which will provide benefits in the future for a far larger group.  The 6,811.8 total hours incurred by counsel appears reasonable under the circumstances.

28.   However, in addition to evaluating the total hours incurred in this litigation as a whole, it is also necessary to estimate that portion of the hours which was devoted to the injunctive component of this litigation as opposed to the damages component.  Counsel, for obvious reasons, did not separately record hours for the different parts of the case.  The case was

---

Schulman's argument is misplaced.  Because the value of the injunctive relief cannot be quantified, it is not feasible to use a percentage-of-recovery methodology to determine the fee, as Mr. Schulman suggests the Court should do. The lodestar method is the appropriate methodology.  As discussed in this report, the requested fee is within the range of reason when evaluated under the lodestar approach.

11

litigated as a unified whole. Indeed, it only became clear that the case would settle in separate damages and injunctive classes once settlement negotiations were well underway. Without this source of information for separating out the hours, it is necessary to rely on other information. For the reasons set forth below, I estimate that 80% of counsel's time should be allocated to the injunctive portion of the case and 20% of counsel's time should be allocated to the damages portion. My reasons are as follows:

(a) Counsel, who are best situated to know how this case was litigated, estimate that approximately four-fifths of their efforts was devoted to pursuing the injunctive relief and one-fifth was devoted to the damages component.

(b) This estimate is consistent with my assessment of the magnitude of the relief obtained: as compared with the damages component, the injunctive relief, which represents a "sea change" in Defendant's business practices, is of much greater importance to class members in the aggregate, and of much greater concern to the Defendants.

(c) For obvious reasons, class counsels' demand for injunctive relief – involving as it did the restructuring of a firm's core business practices – was significantly more complicated to design and negotiate than damages relief which required only that the parties address limited questions such as the total amount of damages and whether the damages would be allocated pro rata in order to allocate unclaimed funds.

(d) A review of litigation documents confirms that counsel for both parties treated the claim for injunctive relief as the "center of gravity" of this litigation. For example, Defendants' mediation statement dated July 18, 2012 focused nearly entirely on the injunctive component of a possible settlement; essentially no attention was given to the issue of pecuniary relief. Likewise, the settlement conference held before Magistrate Judge Lauck on January 14, 2013

focused principally on the challenges the parties were facing in designing and agreeing to the injunctive relief, with much less attention paid to the damages component.

### Hourly Rates

29.  I now turn to an evaluation of the appropriate hourly rates.  These are determined, under the lodestar analysis, by comparing counsel's rates with those of attorneys in the market who possess similar background, experience and qualifications.   Among other topics, my research in this area focuses on staffing and billing practices in representative litigation.[6]

30.  As is normal and expected, senior attorneys with substantial experience and track records of success in class action litigation billed at the highest rates.  Michael Caddell, lead counsel of Caddell & Chapman in Houston, Texas,  and with 34 years of experience in complex and class litigation, billed at $875 per hour, and his partner, Cynthia Chapman, billed at $675 per hour.  Co-lead counsel, Jim Francis of Francis and Mailman billed at $525 per hour, and Len Bennett of Consumer Litigation Assosciates, also co-lead counsel, billed at $575 per hour.  Less senior lawyers—who performed a significant amount of the work in this matter—billed at rates ranging from $325 to $450 per hour.

31.  A variety of sources of information are available to evaluate the reasonableness of these rates.  In federal bankruptcy litigation, rates for representation can sometimes be obtained from a review of public case filings.   The following table, compiled from publicly available sources, illustrates typical billing rates of defense-side firms as reported in bankruptcy cases:

---

[6] For a recent opinion relying on my research into staffing and billing practices in representative litigation, *see Stratton v. XTO Energy Inc.*, No. 02-10-00483-CV, 2012 Tex. App. LEXIS 1089, at *3-4, *14-15 (Tex. App. Feb. 9, 2012).

**Table 1: Bankruptcy Fees**

| Case Name | Defense Firm | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| *In re Houghton Mifflin Harcourt Publ'g Co., et al., Debtors*, No. 12-12171 (REG) | Paul, Weiss, Rifkind, Wharton & Garrison LLP | (Bankr. S.D.N.Y.) (May 2012) (Dkt. No. 55) | $425 - $760 | $895 - $1,120 |
| *In re Lightsquared Inc., Debtors*, No. 12-12080 (SCC) | Milbank, Tweed, Hadley & McCloy LLP | (Bankr. S.D.N.Y.) (July 2012) (Dkt. No. 206) | $470 - $750 | $950 - $1,140 |
| *In re Eastman Kodak Co., Debtors*, No. 12-10202 (ALG) | Milbank, Tweed, Hadley & McCloy LLP | (Bankr. S.D.N.Y.) (June 2012) (Dkt. No. 1492) | $470 - $795 | $825 - $1,140 |
| *In re 785 Partners LLC, Debtor*, No. 11-13702 (SMB) | Proskauer Rose LLP | (Bankr. S.D.N.Y.) (May 2012) (Dkt. No. 189) | $295 - $700 | $779 - $1,050 |
| *In re Dynegy Holdings, LLC, et al., Debtors*, No. 11-38111 (CGM) | Sidley Austin LLP | (Bank. S.D.N.Y.) (Apr. 2012) (Dkt. No. 578) | $340 - $950 | $625 - $1,050 |
| *In re Ambac Fin. Group, Inc., Debtor*, No. 10-15973 (SCC) | Wachtell, Lipton, Rosen & Katz | (Bankr. S.D.N.Y.) (Nov. 2011) (Dkt. No. 701) | $500 - $600 | $975 |
| *In re Great Atlantic & Pacific Tea Co., Inc., et al., Debtors*, No. 10-24549 (RDD) | Kirkland & Ellis LLP | (Bankr. S.D.N.Y.) (May 2011) (Dkt. No. 1566) | $340 - $995 | $580 - $995 |
| *In re CIT Group Inc. and CIT Group Funding Co. of Delaware LLC, Debtors*, No. 09-16565 (ALG) | Sullivan & Cromwell, LLP | (Bankr. S.D.N.Y.) (Jan. 2010) (Dkt. No. 229) | $305 - $950 | $850 - $965 |

32.   The results of these cases are confirmed by survey data.  According to a December 2009 report in *American Lawyer*,[7] the rates for senior bankruptcy lawyers had already topped $1,000 per hour four years ago, with median partner rates ranging between $810 and $980/hour:

---

[7]   Amy Kolz, Bankruptcy Rates Top $1,000 Mark In 2008-09, The Am. Law Daily (Dec. 12, 2009), *available at* http://www.law.com/jsp/law/LawArticleFriendly.jsp?id=1202436371636 (last visited Nov. 28, 2012).

**Table 2: Bankruptcy Fee Survey Data**

| FIRM | MEDIAN PARTNER RATE* | PARTNERS FILING |
|------|---------------------|-----------------|
| Simpson Thacher | $980 | 30 |
| Cleary Gottlieb | $960 | 47 |
| Shearman & Sterling | $950 | 17 |
| Davis Polk | $948 | 14 |
| Skadden | $945 | 38 |
| Paul Weiss | $925 | 24 |
| Cadwalader | $900 | 29 |
| Milbank | $900 | 55 |
| Gotshal | $843 | 142 |
| Gibson Dunn | $840 | 29 |
| Latham & Watkins | $830 | 57 |
| White & Case | $825 | 21 |
| Paul Hastings | $810 | 46 |

33. On the plaintiffs' side, comparable billing rates can be gleaned from a review of reported settlements. These data are shown in the following table:

## Table 3: Plaintiffs' Attorney Billing Rates

| Case Name | Plaintiff Firm | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| In re Bear Stearns Companies, Inc. Securities, Derivative and ERISA Litig., No. 08-cv-2793 (RWS) | Labaton Sucharow LLP | (S.D.N.Y.) (Aug. 2012) (Dkt. No. 302-5) | $275 - $700 | $725 - $975 |
| In re Wachovia Equity Securities Litigation, No. 08 Civ. 6171 (RJS) | Kirby McInerney LLP | (S.D.N.Y.) (Apr. 2012) (Dkt. No. 106-5) | $280 - $625 | $600 - $800 |
| In re Lehman Brothers Securities and Erisa Litigation, No. 1:08-cv-05523 (LAK)(GWG) | Bernstein Litowitz & Grossman LLP | (S.D.N.Y) (Mar. 2012) (Dkt. No. 343-12) | $310 - $675 | $650 - $975 |
| In re Lehman Brothers Securities and Erisa Litigation, No. 1:08-cv-05523 (LAK)(GWG) | Labaton Sucharow | (S.D.N.Y) (Mar. 2012) (Dkt. No. 343-17) | $275 - $650 | $750 - $975 |
| Rubin v. MF Global, Ltd., et al., No. 08 Civ. 2233 (VM) | Cohen Milstein Sellers & Toll PLLC | (S.D.N.Y.) (Nov. 2011) (Dkt. No. 198) | $230 - $615 | $700 - $795 |
| In re Wachovia Preferred Sec. and Bond/Notes Litigation, No. 09 Civ. 6351 (RJS) | Bernstein Litowitz Berger & Grossman LLP | (S.D.N.Y.) (Oct. 2011) (Dkt. No. 148-7) | $340 - $675 | $650 - $975 |
| In re Wachovia Preferred Sec. and Bond/Notes Litigation, No. 09 Civ. 6351 (RJS) | Robbins Geller Rudman & Dowd LLP | (S.D.N.Y.) (Oct. 2011) (Dkt. No. 148-9) | $265 - $640 | $565 - $775 |
| Cornwell et al. v. Credit Suisse Group et al., No. 08 Civ. 03758 (VM) | Robbins Geller Rudman & Dowd LLP | (S.D.N.Y.) (July 2011) (Dkt. No. 117) | $360 - $670 | $565 - $795 |
| Lapin v. Goldman Sachs & Co., No. 04 Civ. 2236 (RJS) | Kirby McInerney LLP | (S.D.N.Y.) (Nov. 2010) (Dkt No. 129) | $275 - $600 | $600 - $900 |
| In re MBIA, Inc., Sec. Litigation, No. 08 Civ. 0264 (KMK) | Bernstein Litowitz Berger & Grossman LLP | (S.D.N.Y.) (Dec. 2011) (Dkt. No. 92) | $375 - $675 | $700 - $975 |
| In re Refco, Inc. Securities Litigation, No. 05 Civ. 08626 (JSR) | Grant & Eisenhofer P.A. | (S.D.N.Y.) (Sept. 2010) (Dkt. No. 738-5) | $250 - $620 | $650 - $845 |

| Case Name | Plaintiff Firm | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Stumpf v. Garvey, et al. (In re Tycom Ltd. Sec. Litigation.), No. 03 Civ. 03540 (GEB) | Wolf Popper LLP | (D.N.J.) (Aug. 2010) (Dkt. No. 145) | $345 - $485 | $620 - $750 |
| In re Merrill Lynch & Co. Inc., Securities, Derivatives and ERISA Litigation, No. 07-cv-09633 (LBS)(AJP)(DFE) | Kaplan Fox & Kilsheimer LLP | (S.D.N.Y.) (Jun. 2009) (Dkt. No. 246-4) | $255 - $500 | $550 - $775 |
| In re Merrill Lynch & Co. Inc., Securities, Derivatives and ERISA Litigation, No. 07-cv-09633(LBS)(AJP)(DFE) | Berger & Montague, P.C. | (S.D.N.Y.) (Jun. 2009) (Dkt. No. 246-6) | $295 - $440 | $460 - $725 |
| In re Merrill Lynch & Co. Inc., Securities, Derivatives and ERISA Litigation, No. 07-cv-09633(LBS)(AJP)(DFE) | Pomerantz Haudek Grossman & Gross LLP | (S.D.N.Y.) (Jun. 2009) (Dkt. No. 246-7) | $385 - $550 | $525 - $830 |
| In re Merrill Lynch & Co. Inc., Securities, Derivatives and ERISA Litigation, No. 07-cv-09633(LBS)(AJP)(DFE) | Murray, Frank Sailer LLP | (S.D.N.Y.) (Jun. 2009) (Dkt. No. 246-8) | $350 - $550 | $675 - $750 |
| In re Telik, Inc. Securities Litigation, No. 07 Civ. 04819 (CM) | Bernstein Liebhard & Lifshitz, LLP | (S.D.N.Y.) (Aug. 2008) (Dkt. No. 72) | $350 - $550 | $700 - $750 |

34. In light of these data, it is my opinion that the rates contained in Class Counsel's lodestar calculation are appropriate and reasonable.

## Multiplier

35. I now turn to an evaluation of an appropriate multiplier. Class Counsel estimates their lodestar to be $3,349,379.95. Applying a 20% discount to remove the portion of counsel's

17

efforts that were devoted to the damages component of this settlement generates a lodestar for the injunctive component alone equal to $2,679,503.96. The multiplier associated with the fee request of $5,333,188.21 is 1.99 (this will undoubtedly decrease given the work that will be required to complete this matter, including appeals). The question is whether this multiplier is appropriate under the circumstances.

36. To begin with, it is obvious that a multiplier is required if counsel are to have adequate incentives to bring litigation of this sort. Otherwise the substantial risks associated with cases such as the present litigation would deter counsel from bringing lawsuits in the first place. Realistically, the question is not whether a multiplier should be awarded but rather what the multiplier should be.

37. A review of decided cases reveals that multipliers of 2 or greater are often awarded in representative litigation. The following table sets forth a list of cases where courts have awarded multipliers of 2 or greater:

**Table 4: Sample of Cases with Multipliers Greater than Two**

| Case | Multiplier |
|---|---|
| Steinver v. Am. Broadcasting Co., Inc., 248 F. App'x 780, 783 (9th Cir. 2007) | 6.85 |
| Craft v. County of San Bernardino, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) | 5.2 |
| Buccellato v. AT&T Operations, Inc., No. C10-00463-LHK, 2011 U.S. Dist. LEXIS 85699, at *3-5 (N.D. Cal. June 30, 2011) | 4.3 |
| Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) | 4.65 |
| In re Interpublic Secs., No. Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at | 3.96 |

| Case | Multiplier |
|---|---|
| *34 (S.D.N.Y. Oct. 26, 2004) | |
| In re Bisys Sec. Litig., No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) | 2.99 |
| In re Comverse Tech., Inc., Sec. Litig., 2010 WL 2653354, at *5 (E.D.N.Y. June 24 2010) | 2.8 |
| Cornwell v. Credit Suisse Group., No. 08 Civ. 03758 (VM), slip op. at 4 (S.D.N.Y. July 18, 2011) | 4.7 |
| Wal-Mart Stores, Inc. v. Visa USA, Inc., 396 F.3d 96, 123 (2d Cir. 2005) | 3.5 |
| Weiss v. Mercedes-Benz of N. Am., Inc., 899 F. Supp. 1297 (D.N.J. May 11, 1995), aff'd, 1995 U.S. App. LEXIS (3d Cir. 1995) | 9.3 |
| Perera v. Chiron Corp., Civ. No. 95-20725-SW (N.D. Cal. 1999) | 9.14 |
| Cosgrove v. Sullivan, 759 F. Supp. 166 (S.D.N.Y. 1991) | 8.84 |
| In re Buspirone Antitrust Litig., No. 01-md-1413 (JGK) (S.D.N.Y. Apr. 17, 2003) | 8.46 |
| Newman v. Carabiner Int'l, Inc., 99-cv-2271 (S.D.N.Y. Oct 19, 2001) | 7.7 |
| In re 3COM Sec. Litig., No. C-97-21083 (N.D. Cal. Mar. 9, 2001) | 6.67 |
| In re Triangle Indus. Sec. Litig., [1991-1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,528 (Del Ch. 1991) | 6.6 |
| In re RJR Nabisco, Inc. Sec. Litig., [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,984 at 94,267 (S.D.N.Y. 1992) | 6.0 |

| Case | Multiplier |
|------|------------|
| Roberts v. Texaco, 979 F. Supp. 185 (S.D.N.Y. 1997) | 5.5 |
| Lemmer v. Golden Books, 98 Civ. 5748 (S.D.N.Y. Oct. 12, 1999) | 5.38 |
| Feerer v. Amoco Prod. Co., Civ. No. 95-0012 JC/WWD, 1998 U.S. Dist. LEXIS 22248 (D.N.M. May 28, 1998) | 4-5 |
| Willson v. New York Life. Ins. Co., No. 94-127804, 1995 N.Y. Misc. LEXIS 652 (N.Y. Sup. Ct. Feb 1, 1996) | 4.6 |
| Rabin v. Concord Assets Group, Inc., No. 89 CIV 6130 (LBS), 1991 U.S. Dist. LEXIS 18273, [1991-92 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,471 (S.D.N.Y. 1991) | 4.4 |
| In re Rite-Aid Corp. Sec. Litig. ("Rite Aid II"), 269 F. Supp. 2d 603 (E.D. Pa. 2003) | 4.07 |
| In re NASDAQ Mkt.-Makers Antitrust Litig., 187 F.R.D. 465 (S.D.N.Y. 1998) | 3.97 |
| In re AremisSoft Corp. Sec. Litig., 210 F.R.D. 109 (D.N.J. 2002) | 4.3 |
| In re WorldCom, Inc. Sec. Litig., 388 F. Supp. 2d 319 (S.D.N.Y. 2005) | 4.0 |
| In re Enron Corp. Sec., Deriv., & ERISA Litig., 586 F. Supp. 2d 732 (S.D. Tex.. 2008) | 5.2 |

38. The foregoing cases reflect a more general recognition that multipliers greater than two are often appropriate. *See, e.g.*, *Dutchak v. Cent. States*, 932 F.2d 591, 596 (9th Cir. 1991) (multiplier of 2); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) ("multipliers of between 3 and 4.5 have become common"); *Schulte v. Fifth Third Bank*,

20

805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) (approving multiplier of greater than 2); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *56 n.7 (S.D.N.Y. 2007) ("multipliers of nearly 5 have been deemed 'common' by courts in this District"); *In re Telik, Inc., Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("multiples of over 4 are routinely awarded by courts, including this Court"); *In re Cenco Inc. Sec. Litig.*, 519 F. Supp. 322, 327 (N.D. Ill 1981) (approving multipliers of up to 4).

39.   Facts and circumstances of the present case supporting a lodestar multiplier of 2 or greater include the following:

(a) This case posed substantial risk, including risks of establishing that Defendants' reports were in fact subject to the FCRA and risks that a case this large and this far-reaching would not be certified. The risks assumed by counsel – who brought this case on a purely contingent basis – is evidenced by the two previous efforts to obtain class action relief for Defendants' allegedly illegal behavior: both of the earlier cases had to be resolved on an individual basis.

(b) As noted above, counsel expended substantial time and labor in litigating this action. While this factor contributes to the calculation of the basic lodestar figure, some courts view it, in addition, as a consideration that bears on the reasonableness of the requested lodestar multiplier.

(c) The size and complexity of the case counsels in favor of a substantial multiplier.  In terms of the number of class members, this case was potentially one of the largest class actions ever brought in the United States: at issue were more than 100 million reports containing consumer information which Defendants allegedly sold to debt collectors during the class period.

(d) Attorneys for the class are some of the most experienced FRCA class action lawyers in the United States.  My review of the case documents indicates that counsel litigated this case with an impressive level of skill, sophistication, and tenacity. I have reviewed the objection of Megan Christina Aaron, which challenges class counsel's adequacy based on a misreading of the Ninth

Circuit's opinion in *Radcliffe v. Experian Info. Solutions Inc.,* 715 F.3d 1157 (9th Cir. 2013).  I am familiar with that case because I provided an expert report in connection with the motion to appoint substitute lead counsel.  Class counsel there made an error in interpreting legal rules; but the error was not one which reflected adversely on counsel's ability to provide adequate representation to class members in other cases.  Indeed, I was prepared to testify in the *Radcliffe* action that counsel should be among the attorneys appointed to represent the class on remand from the Ninth Circuit.  Nothing in *Radcliffe* gives me cause for concern about counsel's ability to provide vigorous, diligent, and un-conflicted representation to all class members in the present litigation.

(e) Although the value of the injunctive relief obtained in this settlement cannot easily be quantified, the changes proposed for Defendants' business practices indicate that the requested fee is small in relation to the benefits conferred.  Although I have not been retained to estimate the value of the injunctive aspects of this settlement, I note that the Second Declaration of Professor Neil M. Richards highlights the substantial benefits which the business practice changes effected by this settlement could confer on class members and the public at large.

(f) The injunctive relief obtained in this settlement offers clear public policy benefits for millions of consumers whose personal information might be included in Defendants' reports going forward.

40.  For the reasons set forth above, therefore, it is my opinion that a multiplier of 1.99 is within the range of reason and appropriate under the circumstances of this case.

**The Damages Class**

41. I turn now to an evaluation of the fee requested for the damages class.  Counsel is here requesting 25% of the fund in fees and expenses combined.[8]  It is my opinion that this request is within the range of reason and in fact below the norm for comparable cases.

42. A fee award of 25% is consistent with the results of several studies that provide information about fee awards as percentages of the recovery in class action cases.

43. For example, a large-scale study on fees is found in the March-April 2003 edition of *Class Action Reports* (CAR), which contains data on cases extending back to 1974.  Table 5 reports the CAR data broken down by type of case:

---

[8] The settlement agreement contains a "clear sailing" agreement under which Defendants agree not to object to a request to up to 30% of the fund.  Although Defendants do not have a pecuniary interest in the common fund fee, the agreement is evidence of the parties' views as to what a reasonable fee would be.

23

**Table 5:  Fee-Award Percent Summary by Case Category**

| Category | Mean | Median | Std. Dev. | Number |
|---|---|---|---|---|
| Antitrust | 26.8 | 28.4 | 7.1 | 31 |
| Consumer | 24.3 | 25.0 | 8.5 | 48 |
| Civil rights | 23.5 | 25.5 | 11.0 | 4 |
| Derivative | 33.3 | 33.3 | — | 1 |
| Employment | 25.5 | 25.7 | 7.6 | 17 |
| Environmental | 30.5 | 30.5 | 7.8 | 2 |
| Government regulation | 29.7 | 29.7 | — | 1 |
| Labor/wage/pension | 22.9 | 26.4 | 10.6 | 30 |
| Mass tort | 17.6 | 17.0 | 6.9 | 8 |
| Securities | 27.9 | 30.0 | 7.4 | 483 |
| Taxpayer | 3.5 | 3.5 | — | 1 |
| Utilities | 20.3 | 20.3 | 1.7 | 2 |
| Social welfare/entitlements | 16.9 | 16.9 | 4.4 | 2 |
| Total | 27.0 | 30.0 | 7.9 | 630 |

**Sources: Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees in Class Action Settlements: An Empirical Study, 1 *Journal of Empirical Legal Studies* (2003), analyzing data from Stuart J. Logan, Jack Moshman & Beverly C. Moore, Jr., Attorney Fee Awards in Common Fund Class Actions, 24 *Class Action Rep.* 169 (2003).**

45. Table 5 discloses that the median fee across the range of cases in the study was 30.0%, and that the median fee award in consumer cases was 25%.  The requested percentage fee of 25% is clearly reasonable in light of this study.

45. More recent empirical studies confirm that attorney's fees have not decreased since the time the foregoing studies were conducted.  For example, in a study of fees in settled securities fraud litigation, Eisenberg, Miller and Perino found that the mean and median fees in securities cases decided across all circuits in the years prior to 2000 was 27.63% and 30%, while the mean and median award in the years 2000-2007 was 26.06% and 26.94% – results consistent

24

with the fee requested in the present case. *See* Theodore Eisenberg, Geoffrey Miller & Michael Perino, Empirical Research on Decision-Making in the Federal Courts: A New Look at Judicial Impact: Attorneys' Fees in Securities Class Actions After *Goldberger v. Integrated Resources, Inc.*, 29 Washington University Journal of Law & Policy 5-35 (2009).

46. The requested fee is also consistent with the results of Eisenberg and Miller's study of fees in all published class action settlements between 1993 and 2008.   Theodore Eisenberg and Geoffrey Miller, Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008, 7 Journal of Empirical Legal Studies 248 (2010).   These authors find that the average fee in consumer class actions across the entire data set was 25%.  The requested fee of 25% of the class recovery is entirely consistent with this data.

47. The reasonableness of the requested fee is confirmed by a recent study by Professor Brian Fitzpatrick of Vanderbilt University of all federal class action settlements in 2006-2007. Fitzpatrick finds that the mean attorneys' fee for consumer class action cases across the data set was 23.5% of the class recovery and the median fee was 24.6% of the recovery.   Brian Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 Journal of Empirical Legal Studies 811 (2010).  The requested award of 25% of the class recovery is clearly within the range of reason when judged against Fitzpatrick's study.

48. In short, the extensive empirical research on attorneys' fees on common fund cases overwhelmingly supports the reasonableness of the requested fee of 25% of the $13.5 million common fund.  That fact, together with other factors mentioned above – the  outstanding results achieved; the high levels of energy, diligence and skill displayed by counsel; the social utility of this litigation; the risk of the litigation, and other considerations – makes it abundantly clear that

25

the fee requested for the common fund component of this case is entirely reasonable and appropriate.

**Conclusion**

49.  For the reasons set forth above, it is my opinion that:

(a) The requested fee award of $ $5,333,188.21 in the (b)(2) settlement, to be paid by the defendant rather than the class, is within the range of reason when judged against awards in similar cases;

(b) The requested award of 25% of the $13.5 million common fund in the (b)(3) settlement for fees and expenses combined is within the range of reason when judged against awards in similar cases.

Dated this 22nd day of November, 2013:

Geoffrey P. Miller

26

## Appendix A: Resume

## GEOFFREY P. MILLER

New York University Law School
40 Washington Square South Suite 411G
New York, New York 10012
 (212) 998-6329 (office)
(212) 995-4659 (fax)
geoffrey.miller@nyu.edu

### Work Experience

New York University Law School (1995-present)
  Stuyvesant P. Comfort Professor of Law
  Director, NYU Center for the Study of Central Banks and Financial Institutions (1994-present)
  Co-Director, NYU Center for Law, Economics and Organization (2006-present)
  Co-Founder and Co-President, Society for Empirical Legal Studies (2006-2007)
  Chair, Academic Personnel Committee (1999-2000; 2004-2006)
  Chair, Promotions and Tenure Committee (2007-2009)

University of Chicago Law School (1983-1995)
  Kirkland & Ellis Professor (1989-1995)
  Editor, Journal of Legal Studies (1989-1995)
  Director, Program in Law and Economics (1994-1995)
  Director, Legal Theory Workshop (1989-1993)
  Associate Dean (1987-1989)
  Professor of Law (1987-1989)
  Assistant Professor of Law (1983-1987)

Distinguished Visiting Professor, Vanderbilt Law School 2014 (invited)
Visiting Professor, University of Frankfurt 2013 (invited)
Faculty Member, Study Center Gerzensee, Switzerland, Spring 2012
Visiting Lecturer, University of Genoa Department of Law, 2011
Visiting Lecturer, Collegio Carlo Alberto (Moncalieri Italy), 2011, 2013 (invited)
Visiting Scholar, European University Institute, Florence Italy, Fall/Winter 2010
Visiting Chair on Private Actors and Globalisation, Hague Institute for the
    Internationalisation of Law, Fall/Winter 2010
Robert B. and Candace J. Haas Visiting Professor of Law, Harvard Law School,
    Fall 2009
Max Schmidheiny Guest Professor, University of St. Gallen, Switzerland
    Summer 2009
Faculty Member, NYU-NUS in Singapore, 2009, 2011 (invited)

Fresco Endowed Professor of Law, University of Genoa, Italy, Summer 2008,
    Spring 2009, Summer 2010
Visiting Scholar, University of Minnesota Law School, Spring 2008
Visiting Lecturer, University of Bolzano, Italy, Summer 2007
Commerzbank Visiting Professor, Institute for Law & Finance, University of
    Frankfurt, Germany, Summer 2004, Summer 2005, Summer 2010
Visiting Professor, Columbia Law School, Fall 2001
Visiting Professor, University of Sydney, Australia, Summer 2002; Summer 2006;
    Spring 2009
Zaeslin Visiting Professor, University of Basel, Switzerland, Summer 2001, 2002, 2003,
    2004, 2005, 2007, 2008, 2009, 2010, 2011,  2012, 2013 (invited)
Visiting Scholar, CentER for Economic Research, Tilburg, Holland, Summer 1996
John M. Olin Visiting Scholar, Cornell University Law School, Summer 1992,
    Spring 1996; Winter 1997, Summer 2005, Spring 2008, Spring 2009, Spring 2010
Visiting Scholar, Bank of Japan, Spring 1995
Visiting Professor, New York University Law School, Fall 1994
Consultant, Federal Reserve Bank of Chicago, 1992-1994
Visiting Scholar, New York University Law School, Fall 1993
Simpson Grierson Butler White Visiting Professor, University of Aukland,
  New Zealand, Summer 1993

Associate, Ennis, Friedman, Bersoff & Ewing
Washington, D.C. (1982-83)

Attorney Adviser, Office of Legal Counsel
U.S. Department of Justice (1980-82)

Clerk, Hon. Byron R. White
Supreme Court of the United States (1979-80)

Clerk, Hon. Carl McGowan
U.S. Court of Appeals, District of Columbia (1978-79)

Corporate Service

Member of the Board of Directors, State Farm Bank (2010) – board and committee service for
nontraditional thrift institution with $15 billion in assets.

Education

Columbia Law School, J.D. (1978)
Editor-in-Chief, Columbia Law Review (1977-78)
Princeton University, A.B. *magna cum laude* (1973)

Publications

Books

The Law of Governance, Risk Management and Compliance (Wolters Kluwer Law and Business, forthcoming 2014)

The Governance of International Banking (co-authored with Fabrizio Cafaggi, with Tiago Andreotti, Maciej Borowicz, Agnieszka Janczuk, Eugenia Macchiavello and Paolo Saguato) (Edward Elgar 2013)

Ways of a King: Legal and Political Ideas in the Bible (Vandenhoeck & Ruprecht 2011)

Trust, Risk, and Moral Hazard in Financial Markets (Il Mulino 2011)

The Origins of the Necessary and Proper Clause (with Gary Lawson, Robert Natelson, and Guy Seidman) (Cambridge University Press 2010)

The Economics of Ancient Law (editor) (Edward Elgar 2010)

Bank Mergers and Acquisitions (editor, with Yakov Amihud) (Kluwer Academic Publishers 1998)

La Banca Central en América Latina: Aspectos Económicos y Juridicos [Central Banks in Latin America and Their New Legal Structure] (in Spanish) (editor, with Ernesto Aguirre and Roberto Junguito Bonnet) (Tercer Mundo: Bogotá 1997)

Costly Policies: State Regulation and Antitrust Exemption in Insurance Markets (AEI Press 1993) (with Jonathan R. Macey)

Banking Law and Regulation, Little, Brown & Co. 1992 (with Jonathan R. Macey); Second Edition, Aspen Law & Business 1997 (with Jonathan R. Macey), Third Edition, Aspen Law & Business 2001 (with Jonathan R. Macey and Richard Scott Carnell); Fourth Edition, Aspen Law & Business 2008 (with Richard Scott Carnell and Jonathan R. Macey), under title "The Law of Banking and Financial Institutions," Wolters Kluwer Law and Business (5th Edition 2013)

Banking Law and Regulation: Statutory and Case Supplement (Little, Brown & Co. 1992; Second Edition, Aspen Law & Business, 1997) (with Jonathan R. Macey), Third Edition, Aspen Law & Business, 2000) (with Jonathan R. Macey and Richard Scott Carnell); Fourth Edition, Aspen Law & Business 2008 (with Richard Scott Carnell and Jonathan Macey)

Banking Law and Regulation: Teacher's Manual (1992; Second Edition 1997; Third Edition 2001, Fourth Edition 2008) (with Jonathan R. Macey and Richard Scott Carnell)

Articles

Civil Procedure

A New Procedure for State Court Personal Jurisdiction (manuscript on file with the author)

An Information-Forcing Approach to the Motion to Dismiss, __ Journal of Legal Analysis __ (2014) (forthcoming) (with Samuel Issacharoff)

In Search of the Most Adequate Forum: State Court Personal Jurisdiction, __ Stanford Journal of Complex Litigation __ (forthcoming 2014)

Group Litigation in the Enforcement of Tort Law, in Jennifer Arlen, ed., The Economics of Torts (forthcoming 2011)

The Quasi-Class Action Method of Managing Multi-District Litigations: Problems and a Proposal, 63 Vanderbilt Law Review 107 (2010) (with Charles Silver)

Will Aggregate Litigation Come to Europe?, 62 Vanderbilt Law Review 177-210 (2009) (with Samuel Issacharoff)

Preliminary Judgments, 2010 University of Illinois Law Review 165 (2009)

A New Look at Judicial Impact:  Attorneys' Fees in Securities Class Actions after Goldberger v. Integrated Resources, Inc., 29 Washington University Journal of Law & Policy 5-35 (2009) (with Theodore Eisenberg and Michael Perino)

Punti cardine in tema di class action negli Stati Uniti e in Italia (Cutting-Edge Issues in U.S. and Italian Class Action Litigation), 2008 Analisi Giuridica dell'Economia 211-230 (2008)

Compensation and Deterrence in Consumer Class Actions in the United States, in Fabrizio Cafaggi and Hans W. Micklitz, eds., New Frontiers in Consumer Protection: The Interplay Between Private and Public Enforcement 263-282 (2009)

Pleading after *Tellabs*, 2009 Wisconsin Law Review 507-534 (2009)

Mandatory Arbitration for Customers But Not For Peers, 92 Judicature 118-123 (2009) (with Theodore Eisenberg and Emily Sherwin)

Arbitration's Summer Soldiers: An Empirical Study of Arbitration Clauses in Consumer and Non-Consumer Contracts, 41 University of Michigan Journal of Law Reform 871-96 (2008) (with Theodore Eisenberg and Emily Sherwin); reprinted in 7 ICFAI University Journal of Alternative Dispute Resolution (Hyderabad, India)

Reversal, Dissent, and Variability in State Supreme Courts: The Centrality of Jurisdictional Source, 89 Boston University Law Review 2009 (2009) (with Theodore Eisenberg)

All-or-Nothing Versus Proportionate Damages, 38 Journal of Legal Studies 345-382 (2009) (with Shmuel Leshem)

Judicial Review of Class Action Settlements, 1 Journal of Legal Analysis 167-205 (2008) (with Jonathan R. Macey)

Do Juries Add Value? Evidence From an Empirical Study of Jury Trial Waiver Clauses in Large Corporate Contracts, 4 Journal of Empirical Legal Studies 539 (2007) (with Theodore Eisenberg)

The Flight from Arbitration: An Empirical Study of *Ex Ante* Arbitration Clauses in Publicly-Held Companies' Contracts, 56 DePaul Law Review 335 (2007) (with Theodore Eisenberg), reprinted in 49 Corporate Practice Commentator323 (2007)

Rethinking Certification and Notice in Opt-Out Class Actions, 74 University of Missouri Kansas City Law Review 637 (2006)

Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA Law Review 1303 (2006) (with Theodore Eisenberg)

Review of the Merits in Class Action Certification, 33 Hofstra Law Review 51 (2004)

The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues, 57 Vanderbilt Law Review 1529 (2004) (with Theodore Eisenberg)

Competing Bids in Class Action Settlements, 31 Hofstra Law Review 633-650 (2003)

On the Costs of Civil Justice, 80 University of Texas Law Review 2115 (2002)

Class Actions in the Gulf States: Empirical Analysis of a Cultural Stereotype, 74 Tulane Law Review 681 (2000)

Full Faith and Credit to Settlements in Overlapping Class Actions: A Reply to Kahan and Silberman, 73 New York University Law Review 1167-1178 (1998)

Nonpecuniary Class Action Settlements, 60 Law and Contemporary Problems 97-155 (1997) (with Lori Singer)

Class Actions, in I New Palgrave Dictionary of Economics and the Law 257-262 (Peter Newman, ed., Macmillan Press 1998)

The Legal-Economic Analysis of Comparative Civil Procedure, 45 American Journal of Comparative Law 905-19 (1997)

Overlapping Class Actions, 71 New York University Law Review 514 (1996)

Settlement of Litigation: A Critical Retrospective, in Larry Kramer, ed., Reforming the Civil Justice System 13-37 (NYU Press 1996)

Expanding on the Fifty Percent Hypothesis: A Multimodal Approach to the Selection of Cases for Litigation, 25 Journal of Legal Studies 233 (1996) (with Daniel Kessler and Thomas Meites)

A Market Approach to Tort Reform Via Rule 23, 80 Cornell Law Review 909 (1995) (with Jonathan R. Macey)

Settlement Escrows, 24 Journal of Legal Studies 87 (1994) (with Robert Gertner)

Introduction: Economic Analysis of Civil Procedure, 23 Journal of Legal Studies 303 (1994)

Auctioning Class Action and Derivative Suits: A Rejoinder, 87 Northwestern Law Review 701 (1992) (with Jonathan R. Macey)

The Plaintiffs' Attorney's Role in Class Action and Derivative Litigation: Economic Analysis and Recommendations for Reform, 58 University of Chicago Law Review 1 (1991) (with Jonathan R. Macey), reprinted in Franklin A. Gevurtz, Corporate Law Anthology 186-194 (1997)

Some Thoughts on the Equilibrium Hypothesis, 69 Boston University Law Review 561 (1989)

Some Agency Problems in Settlement, 16 Journal of Legal Studies 189 (1987)

An Economic Analysis of Rule 68, 15 Journal of Legal Studies 93 (1986)

The Public Interest in Attorneys' Fees Awards for Public Interest Litigation, 47 Law and Contemporary Problems 233 (1984) (with Robert V. Percival), reprinted in University of Chicago Law School Record (1989)

Note, Aldinger v. Howard and Pendent Jurisdiction, 77 Columbia Law Review 127 (1977)

Legal Ethics/Legal Profession

The English vs. the American Rule on Attorneys Fees: An Empirical Study of Attorney Fee Clauses in Publicly-Held Companies' Contracts, 98 Cornell Law Review 327 (2013) (with Theodore Eisenberg)

Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008, 7 Journal of Empirical Legal Studies 248 (2010) (with Theodore Eisenberg)

Ethical Considerations in Class Action Practice, in Practising Law Institute, Class Action Litigation 2007: Prosecution & Defense Strategies (2007)

From Club to Market: The Evolving Role of Business Lawyers, 74 Fordham Law Review 1105 (2005)

Bad Judges, 83 Texas Law Review 431 (2004)

Attorneys' Fees in Class Action Settlements: An Empirical Study, 1 Journal of Empirical Legal Studies 27 (2004) (with Theodore Eisenberg)

Professional Independence and the Corporate Lawyer (with William T. Allen), in Jay W. Lorsch, Leslie Berlowitz, and Andy Zelleke, Restoring Trust in American Business 113-126 (American Academy of Arts and Sciences 2005)

Conflicts of Interest in Class Action Litigation: An Inquiry into the Appropriate Standard, 2003 University of Chicago Legal Forum 581-630 (2003)

Payment of Expenses in Securities Class Actions: Ethical Dilemmas, Class Counsel, and Congressional Intent, 22 Review of Litigation 557 (2003)

Ethical Considerations in Class Action Practice, in Practising Law Institute, Class Action Litigation: Prosecution & Defense Strategies (2003)

Conflicts of Interest in Negotiation: An After-word and a Reply, 84 Iowa Law Review 1133-1139 (1999) (with Jonathan R. Macey)

Second Opinions in Litigation, 84 Virginia Law Review 1411-1437 (1998)(with Michael Klausner and Richard Painter)

Kaye, Scholer as Original Sin: The Lawyer's Duty of Candor and the Bar's Temptations of Evasions and Apology, 23 Law & Social Inquiry 305-313 (1998)

An Economic Analysis of Conflict of Interest Regulation, 82 Iowa Law Review 965-1005 (1997) (with Jonathan R. Macey), republished in Foundations of the Law and Ethics of Lawyering, George Meredith Cohen and Susan P Koniak, editors. New York: Foundation Press (2004)

Reflections on Professional Responsibility in a Regulatory State, 63 George Washington Law Review 1105 (1995) (with Jonathan R. Macey)

Government Lawyers' Ethics in a System of Checks and Balances, 54 University of Chicago Law Review 1293 (1987)

Corporate, Contract and Securities Law

Damages versus Specific Performance: Lessons from Commercial Contracts, __ Journal of Empirical Legal Studies __ (forthcoming 2014) (with Theodore Eisenberg)

A Modest Proposal for Fixing Delaware's Broken Duty of Care, 2010 Columbia Business Law Review 319 (2010)

Un-manifested Harm in Business-to-Business Cases, 167 Journal of Theoretical and Institutional Economics 80-93 (2011)

A Modest Proposal for Securities Fraud Pleading After Tellabs, 75 Law & Contemporary Problems 93 (2012)

Process as Currency with the Courts: Judicial Scrutiny of Directors' Decisions, 1 International Journal of Corporate Governance 337-365 (2010) (with Jonathan R. Macey)

A Simple Theory of Takeover Regulation in the United States and Europe, 42 Cornell International Law Journal 301 (2009) (with Guido Ferrarini), reprinted in 55 Rivista Delle Società 680 (2010)

Bargains Bicoastal: New Light on Contract Theory, 31 Cardozo Law Review 1475 (2010)

Flight to New York: an Empirical Analysis of Choice of Law and Forum Selection Clauses in Large Commercial Contracts, 30 Cardozo Law Review 1475 (2009) (with Theodore Eisenberg)

The Market for Contracts, 30 Cardozo Law Review 2073 (2009) (with Theodore Eisenberg)

Ex Ante Choices of Law and Forum: An Empirical Analysis of Corporate Merger Agreements, 59 Vanderbilt Law Review 1975 (2006) (with Theodore Eisenberg)

Catastrophic Failures: Enron and Beyond, 89 Cornell Law Review 423-455 (2004)

Capital Markets on the Internet: An Introduction, 5 New York University Journal of Legislation and Public Policy 1 (2001-2002)

Das Kapital: Solvency Regulation of the American Business Enterprise, in Eric Posner, ed., Chicago Lectures in Law and Economics 65-81 (2000)

Takeovers: English and American, 6 European Financial Management 533-542 (2000)

Choice of Law as a Pre-Commitment Device, in F.H. Buckley, ed., The Fall and Rise of Freedom of Contract 357-69 (Duke University Press 1998)

On the Advantages of Defined Contribution Plans, in Samuel Estreicher, ed., Proceedings of the 50th Annual Conference on Labor (Kluwer Academic Press, forthcoming 1998)

Political Structure and Corporate Governance: Some Points of Contrast Between the U.S. and the U.K., 1998 Columbia Business Law Review 51-78 (1998), reprinted in Sloan Project on Corporate Governance at Columbia Law School, Corporate Governance Today 629-648 (1998)

Finance and the Firm, 152 Journal of Institutional and Theoretical Economics [Zeitschrift fur die Gesamte Staatswissenschaft] 89-107 (1996)

Corporate Governance and Commercial Banking: A Comparative Examination of Germany, Japan and the United States, 48 Stanford Law Review 73 (1995) (with Jonathan R. Macey)

Comment on "Brokerage, Market Fragmentation, and Securities Market Regulation," in Andrew W. Lo, ed., The Industrial Organization and Regulation of the Securities Industry, University of Chicago Press (1996)

Corporate Stakeholders: A Contractual Perspective, 43 University of Toronto Law Review 401 (1993) (with Jonathan R. Macey)

The Culture of Capital: Comments on Conley and O'Barr, 71 North Carolina Law Review 201 (1992)

The Economic Efficiency of Close Corporation Law: A Comment, 70 Washington University Law Quarterly 399 (1992)

Lessons from Financial Economics: Materiality, Reliance, and the Utility of Empirical Methodology in Extending the Reach of Basic v. Levinson, 77 Virginia Law Review 1015 (1991) (with Jonathan R. Macey, Jeffrey Netter, and Mark Mitchell)

The Fraud on the Market System Revisited, 77 Virginia Law Review 999 (1991) (with Jonathan R. Macey)

Politics, Bureaucracies, and Financial Markets: Bank Entry into Commercial Paper Underwriting in the United States and Japan, 139 University of Pennsylvania Law Review 369-453 (1990) (with David Litt, Jonathan R. Macey, and Edward L. Rubin)

Good Finance, Bad Economics: An Analysis of the Fraud on the Market Theory, 42 Stanford Law Review 1059 (1990) (with Jonathan R. Macey)

Trans-Union Reconsidered, 98 Yale Law Journal 127 (1988)(with Jonathan R. Macey)

Toward an Interest Group Theory of Delaware Corporate Law, 65 Texas Law Review 469 (1987) (with Jonathan R. Macey)

Constitutional Law

Confederacy, in The Encyclopedia of Political Thought (Wiley-Blackwell: forthcoming)

The President's Power of Interpretation: Implications of a Unified Theory of Constitutional Law, 56 Law and Contemporary Problems 35 (1993)

The Unitary Executive in a Unified Theory of Constitutional Law: The Problem of Interpretation, 15 Cardozo Law Review 201 (1993)

Liberty and Constitutional Architecture: The Rights-Structure Paradigm, 16 Harvard Journal of Law & Public Policy 87 (1993)

Rights and Structure in Constitutional Theory, 8 Social Philosophy & Policy 196 (1991), reprinted in E. Frankel Paul, ed., Reassessing Civil Rights (1991)

The Appropriations Power and the Necessary and Proper Clause, 68 Washington University Law Quarterly 640 (1990) (panel)

From Compromise to Confrontation: Separation of Powers in the Reagan Era, 57 George Washington Law Review 401 (1989)

Rediscovering Economic Liberties, 41 Rutgers Law Review 773 (1989) (panel)

War Powers and the Constitution: A Middle Ground, 43 University of Miami Law Review 35 (1988) (panel)

The Debate Over Independent Agencies in Light of the Empirical Evidence, 1988 Duke Law Journal 215 (1988)

Independent Agencies, 1986 Supreme Court Review 41 (1986)

Financial Institutions

Financial Private Regulation and Enforcement (manuscript, 2010)

Intellectual Hazard and the Design of Financial Stability Regulation, in University of St. Gallen Series in Law and Economics, Peter Nobel, ed. (Zurich: Schulthess, 2010) (with Gerald Rosenfeld)

Intellectual Hazard: How Conceptual Biases in Complex Organizations Contributed to the Crisis of 2008, 33 Harvard Journal of Law & Public Policy 807 (2010) (with Gerald Rosenfeld)

Helping Law Catch Up to Markets: Applying Broker-Dealer Law to Subprime Mortgages, 34 Journal of Corporation Law 789 (2009) (with Jonathan Macey, Maureen O'Hara and Gabriel D. Rosenberg)

The Basel Committee, Global Administrative Law, and the Developing World, in Benedict Kingsbury and Richard Stewart, eds, India, the South and the Shaping of Global Administrative Law  (forthcoming, Oxford University Press India 2008) (with Michael Barr)

Comment: Credit Risk Transfer, Hedge Funds, and the Supply of Liquidity, in Peter Nobel and Marina Gets, eds., Law and Economics of Risk in Finance, University of St. Gallen Series in Law and Economics 73 (2008)

Global Administrative Law – The View from Basel, 17 European Journal of International Law 15 (2006) (with Michael Barr)

Three Myths about Central Banks, Federal Reserve Bank of Cleveland Economic Commentary (November 2002)

Central Bank Independence in Ordinary and Extraordinary Times, in Jan Kleiniman, ed., Central Bank Independence: the Economic Foundations, the Constitutional Implications, and Democratic Accountability (Kluwer Academic Press 2000) 31-51 (with Rosa Lastra)

External Review of Central Bank Decisions, in 1 International Monetary Fund, Current Developments in Monetary and Financial Law 535-51 (1999)

Bank Mergers and American Bank Competitiveness, in Yakov Amihud & Geoffrey Miller, eds., Bank Mergers and Acquisitions 175-190 (Kluwer Academic Publishers, 1998) (with Jonathan R. Macey)

Introduction: Bank Mergers and Acquisitions, in Yakov Amihud & Geoffrey Miller, eds., Bank Mergers and Acquisitions vii-xiii (Kluwer Academic Publishers, 1998)

Deposit Insurance for Economies in Transition, in Kluwers Yearbook of International and Financial Law 103-138 (1997) and R. Lastra and H. Schiffman, eds., Bank Failures and Bank Insolvency Law in Economies in Transition 37-70 (Kluwers Academic Press 1998)

Central Bank Independence, Liberalization and Inflation in Transition Economies: An International Perspective, 49 Journal of Monetary Economics 237 (2002) (with Alex Cukierman and Bilin Neyapti)

An Interest-Group Theory of Central Bank Independence, 27 Journal of Legal Studies 433-453 (June 1998)

On the Obsolescence of Commercial Banking, 154 Journal of Institutional and Theoretical Economics [Zeitschrift fur die gesamte Staatswissenschaft] 61-73 (1998)

Banking Crises in Perspective: Two Causes and One Cure, in Gerard Caprio, Jr, William C. Hunter, George G. Kaufman, and Danny M. Leipziger, eds., Preventing Banking Crises: Lessons from Recent Global Bank Failures 279-287 (Federal Reserve Bank of Chicago, 1998)

Universal Banks are Not the Answer to America's Corporate Governance "Problem": A Look at Germany, Japan, and the U.S., 9 Journal of Applied Corporate Finance 57-73 (1997)(with Jonathan R. Macey), republished in The Revolution in Corporate Finance, Joel M Stern and David H. Chew, editors, Marlden, MA: Blackwell (2003)

Cooperation, Conflict, and Convergence in Japanese Finance: Evidence from the "Jusen" Problem, 29 Law and Policy in International Business 1-78 (1998)(pre-published as Washington University School of Law, Working Paper No. 97-3-1) (with Curtis Milhaupt)

Nihon no kin'yu ni okeru jusenmondai hoteki bunsekito keizaiteki bunseki [The Jusen Problem in Japanese Finance: A Legal and Economic Analysis], 1132 Jurisuto 140-49; 1134 Jurisuto 86-92; 1136 Jurisuto 83-89 (1998) (with Curtis Milhaupt) (in Japanese)

A Regulatory Cartel Model of Decisionmaking in Japanese Finance, 4 Zeitschrift fur Japanisches Recht 18-29 (1997)(with Curtis Milhaupt)

Banco de Fondos Mutuos Para América Latina? [Mutual Fund Banking for Latin America?], in La Banca Central en América Latina: Aspectos Económicos y Juridicos [Central Banks in Latin America and Their New Legal Structure], Ernesto Aguirre, Roberto Junguito Bonnet, and Geoffrey Miller, eds. 272-280 (1997) (in Spanish)

The Role of a Central Bank in A Bubble Economy, 18 Cardozo Law Review 1053 (1996)

Decisionmaking at the Bank of Japan, 28 Law and Policy in International Business 1 (1996)

Is Deposit Insurance Inevitable? Lessons From Argentina, 16 International Review of Law and Economics 211 (1996), reprinted in Jagdeep Bandhari and Alan Sykes, eds., Economic Dimensions in International Law: Comparative and Empirical Perspectives 392-404 (Cambridge University Press, 1998)

El Papel del Banco Central en una Economia Especulativa [The Role of a Central Bank in a Speculative Economy], in Miguel Mancera Aguayo, ed., El Banco de México en la Reconstrucción Económica Nacional 137 (Centro Cultural Manuel Gómez Morin, A.C., 1996)

Comments on Rajan and James, in A. Saunders & I. Walter, eds., Universal Banking: Financial System Design Reconsidered 330-333 (Irwin & Co. 1996)

Deposit Insurance, the Regulatory Contract, and the Mismatch in the Term Structure of Banks' Assets and Liabilities, 12 Yale Journal on Regulation 1-50 (1995)(with Jonathan R. Macey), reprinted as L'Assurance Des Depots, Le Contrat Reglementaire Implicite, et la Destruction des Eschances des Actifs et Passifs Bancaires, 6 Journal des Economistes et des Etudes Humaines 531 (1995)

Double Liability of Bank Shareholders: A Look at the New Data, 28 Wake Forest Law Review 933 (1993) (with Jonathan R. Macey)

Politics of Deposit Insurance Reform: The Case of Argentina, Federal Reserve Bank of Chicago, Proceedings of a Conference on Bank Structure and Competition 473 (1993) and 1 University of Chicago Law School Roundtable 129 (1994), republished as "Políticas de Reforma de Seguro de

38

Depósito. El Caso de la Argentina," in Revista de Derecho Bancario y de la Actividad Financiera, Año 4, Enero-diciembre 1994, No. 19/24, at 221-239 (1995) (Argentine journal)

Comment on Universal Banks and Financial Stability, 19 Brooklyn International Law Journal 197 (1993)

Kaye, Scholar, FIRREA and the Desirability of Early Closure: A View of the Kaye, Scholar Case from the Perspective of Bank Regulatory Policy, 66 University of Southern California Law Review 1115 (1993) (with Jonathan R. Macey)

Constitutional Moments, Pre-commitment, and Fundamental Reform: The Case of Argentina, 71 Washington University Law Quarterly 1061 (1993)

Legal Restrictions on Bank Consolidation: An Economic Analysis, 77 Iowa Law Review 1083 (1992)

The Community Reinvestment Act: An Economic Analysis, 79 Virginia Law Review 291 (1993) (with Jonathan R. Macey)

Drunken Sailors on a Sinking Ship? The Rehnquist Court and the Bank Failure Problem, 1993 Public Interest Law Review 83 (1993)

Comments on Calomiris, in M. Klausner & L. White, eds., Structural Change in Banking 212 (1993)

The McCarran-Ferguson Act: A Case Study of Regulatory Federalism, 68 New York University Law Review 13 (1993), republished in 7 National Insurance Law Review 521 (1995)(with Jonathan R. Macey)(study prepared originally under the auspices of the American Enterprise Institute's Project on Federalism)

Bank Failure: The Politicization of a Social Problem, 45 Stanford Law Review 289 (1992) (with Jonathan R. Macey)

Toward Enhanced Consumer Choice in Banking: Uninsured Depository Facilities as Financial Intermediaries for the 1990s, 1991 N.Y.U. Annual Survey of American Law 865 (1992) (with Jonathan R. Macey)

Nondeposit Deposits and the Future of Bank Regulation, 91 Michigan Law Review 237-273(1992) (with Jonathan R. Macey)

America's Banking System: The Origins and Future of the Current Crisis, 69 Washington University Law Quarterly 769 (1991) (with Jonathan R. Macey)

Bank Failures, Risk Monitoring, and the Market for Corporate Control (with Jonathan R. Macey), 88 Columbia Law Review 1153 (1988) (study conducted under the auspices of the Administrative Conference of the United States)

The Future of the Dual Banking System, 53 Brooklyn Law Review 1 (1987)

Public Policy Implications of Legislation Limiting the Growth of Interstate Banks, Federal Reserve Bank of Chicago, Proceedings of a Conference on Bank Structure and Competition 602 (1986)

Interstate Branching and the Constitution, 41 Business Lawyer 337 (1986)

Interstate Banking in the Court, 1985 Supreme Court Review 179 (1985)

<u>Legal History</u>

The Corporate Law Origins of the Necessary and Proper Clause, 79 George Washington University Law Review 1 (2010)

*Meinhard v. Salmon,* in Jonathan R. Macey, ed., Corporate Law Stories (2008)

The Industrial Organization of Political Production: A Case Study, 149 Journal of Institutional and Theoretical Economics [Zeitschrift fur die gesamte Staatswissenschaft] 769 (1993)

Comments on Priest, 36 Journal of Law and Economics 325 (1993)

Toward "Neutral Principles" in the Law: Selections from the Oral History of Herbert Wechsler, 93 Columbia Law Review 854 (1993) (with Norman Silber)

Double Liability of Bank Shareholders: History and Implications, 27 Wake Forest Law Review 31 (1992) (with Jonathan R. Macey)

Origin of the Blue Sky Laws, 70 Texas Law Review 347 (1991) (with Jonathan R. Macey), reprinted in 34 Corporate Practice Commentator 223 (1992)

Public Choice at the Dawn of the Special Interest State: The Story of Butter and Margarine, 77 California Law Review 83 (1989)

The True Story of Carolene Products, 1987 Supreme Court Review 397 (1987), reprinted in Michael J. Glennon, et al., eds., Constitutional Law Anthology (Anderson Publishing 1997), pp. 94-103; reprinted in J. Ely, Property Rights in American History: Reform and Regulation of Property Rights (Garland Publishing 1997), pp. 165-197.

Interviewer, Columbia University Oral History Collection, Life of Herbert Wechsler (1980-1982) (with Norman Silber)

## Jurisprudence

Law and Economics versus Economic Analysis of Law, 19 American Bankruptcy Institute Law Review 459 (2011)

The Case of the Speluncean Explorers: Contemporary Proceedings, 61 George Washington Law Review 1798 (1993)

The End of History and the New World Order: The Triumph of Capitalism and the Competition Between Liberalism and Democracy, 25 Cornell International Law Journal 277 (1992) (with Jonathan R. Macey)

The Canons of Statutory Construction and Judicial Preferences, 45 Vanderbilt Law Review 647 (1992) (with Jonathan R. Macey)

Pragmatics and the Maxims of Interpretation, 1990 Wisconsin Law Review 1179 (1990)

Economic Efficiency and the Lockean Proviso, 10 Harvard Journal of Law and Public Policy 401 (1987)

## Ancient Law

Taxation, in Oxford Encyclopedia of the Bible and Law (Oxford University Press: forthcoming)

Logos and Narrative, NYU School of Law, Public Law Research Paper No. 10-78 (2010)

Monarchy in the Hebrew Bible, NYU School of Law, Public Law Research Paper No. 10-76 (2010)

Nationhood and Law in the Hebrew Bible, NYU School of Law, Public Law Research Paper No. 10-57 (2010)

Revelation and Legitimacy in the Hebrew Bible, NYU School of Law, Public Law Research Paper No. 10-52 (2010)

The Book of Judges: The Hebrew Bible's Federalist Papers, NYU School of Law, Public Law Research Paper No. 10-66 (2010)

Consent of the Governed in the Hebrew Bible, NYU School of Law, Public Law Research Paper No. 10-56 (2010)

Nomadism, Dependency, Slavery and Nationhood: Comparative Politics in the Book of Exodus, NYU School of Law, Public Law Research Paper No. 10-49 (2010)

Economics of Ancient Law, in Geoffrey P. Miller, ed., The Economics of Ancient Law (Edward Elgar, forthcoming 2010)

41

Patriarchy: The Political Theory of Family Authority in the Book of Genesis (manuscript 2010)

The Dark Age:  How the Biblical Narratives Demonstrate the Necessity for Law and Government (NYU School of Law, Public Law Research Paper No. 10-18)

Origin of Obligation: Genesis 2:4b-3:24 (NYU School of Law, Public Law Research Paper No. 09-60)

Sovereignty and Conquest in the Hebrew Bible, NYU School of Law, Public Law Research Paper No. 10-61 (2010)

Golden Calves, Stone Tablets, and Fundamental Law: A Political Interpretation of Exodus 32 (NYU School of Law, Public Law Research Paper No. 10-02)

A Riposte Form in the Song of Deborah, in Tikva Frymer-Kensky, Bernard Levinson and Victor Matthews, eds., Gender and Law in the Hebrew Bible and the Ancient Near East  113-27 (1998)

Foreword: The Development of Ancient Near Eastern Law, 70 Chicago-Kent Law Review 1623 (1996)

Why Ancient Law?, 70 Chicago-Kent Law Review 1465 (1995)(with James Lindgrin and Laurent Mayali)

Foreword: Land Law in Ancient Times, 71 Chicago-Kent Law Review 233 (1996)

The Song of Deborah: A Legal-Economic Analysis, 144 University of Pennsylvania Law Review 2293 (1996)

The Legal-Economic Approach to Biblical Interpretation, 150 Journal of Institutional and Theoretical Economics [Zeitschrift fur die gesamte Staatswissenschaft] 755 (1994)

J as Constitutionalist: A Legal-Economic Interpretation of Exodus 17:8-16 and Related Texts, 70 Chicago-Kent Law Review 1829 (1995)

Verbal Feud in the Hebrew Bible: Judges 3:12-30 and 19-21, 55 Journal of Near Eastern Studies 105 (1995)

Contracts of Genesis, 22 Journal of Legal Studies 15-45 (1993)

Ritual and Regulation: A Legal-Economic Analysis of Selected Biblical Texts, 22 Journal of Legal Studies 477 (1993)

Law and Society

Parental Bonding and the Design of Child Support Obligations, in William S. Comanor, ed., The Law and Economics of Child Support Payments 210-240 (Edward Elgar 2004)

The Legal Function of Ritual, 80 Chicago-Kent Law Review 1181 (2005)

Handicapped Parking, 29 Hofstra Law Review 81 (2000) (with Lori S. Singer)

Custody and Couvade: The Importance of Paternal Bonding in the Law of Family Relations, 33 Indiana Law Review 691 (2000)

Norm Enforcement in the Public Sphere: The Case of Handicapped Parking, 71 George Washington Law Review 895-933 (2004)

Norms and Interests, 32 Hofstra Law Review 637 (2003)

Female Genital Mutilation: A Cultural-Legal Analysis (manuscript)

Circumcision: A Legal-Cultural Analysis, 9 Virginia Journal of Social Policy and the Law 498-585 (2002), pre-published as New York University Public Law and Legal Theory Working Paper Series, Working Paper 5 (2000)

Law, Pollution, and the Management of Social Anxiety, 7 Michigan Women's Law Journal 221-289 (2001)

Other:

Richard Posner, 61 N.Y.U. Annual Survey of American Law 13 (2004)

Introduction: The Law and Economics of Risk, 19 Journal of Legal Studies 531 (1990) (with Richard A. Epstein)

Law School Curriculum: A Reply to Kennedy, 14 Seton Hall Law Review 1077 (1984) (under pen name of Chris Langdell)

Book Reviews

Defusing the Banks' Financial Time Bomb, BusinessWeek (Mar. 11, 2010) (review of Robert Pozen, Too Big to Save?  How to Fix the U.S. Financial System

Love & Joy: Law, Language and Religion in Ancient Israel, by Yochanan Muffs, 58 Journal of Near Eastern Studies 144-45 (1999)

Jesus and the Jews: The Pharisaic Tradition in John; The Trial Of Jesus; Jesus And The Law, by Alan Watson, 1 Edinburgh Law Review 273 (1997)

No Contest: Corporate Lawyers and the Perversion of Justice in America, by Ralph Nader and Wesley J. Smith, Washington Post (October 13, 1996)

The Rise and Fall of the Classical Corporation: Hovenkamp's Enterprise and American Law: 1836-1937, 59 University of Chicago Law Review 1677 (1993)

Property Rights and the Constitution: A Review of James W. Ely, Jr.'s The Guardian of Every Other Right, 37 American Journal of Legal History 378 (1993)

Anatomy of A Disaster: Why Bank Regulation Failed, 86 Northwestern University Law Review 742 (1992)

The Glittering Eye of Law, 84 Michigan Law Review 1901 (1986)

A Rhetoric of Law, 52 University of Chicago Law Review 247 (1985)

## Major Lectures

Revelation as a Source of Legal Authority (Keynote Address, Conference on Religious Liberty, Touro Law School 2013)

Trust, Risk, and Moral Hazard in Financial Markets (University of Genoa, Fresco Chair Lectures in Law and Finance, June 2010)

A Simple Theory of Takeover Regulation in the United States and Europe; Intellectual Hazard (Commerzebank Lectures, University of Frankfurt, May 2010)

The European Union's Takeover Directive and Its Implementation in Italy (University of Rome III, 2008)

Catastrophic Financial Failures: Enron, HIH and More (Ross Parsons Lecture, Sydney, Australia, 2002)

Das Kapital: Solvency Regulation of the American Business Enterprise (Coase Lecture, University of Chicago Law School, 1993)

Banking in the Theory of Finance; The Simple Economics of Litigation and Settlement; The Economic Structure of Corporation Law (University of Auckland, New Zealand, 1993)

## Journal Referee Reports

American Law and Economics Review
Journal of Legal Studies
Journal of Law, Economics and Organization
Review of Law and Economics

Conferences Organized or Sponsored

Global Economic Policy Forum (New York 2013) (keynote speakers included Federal Reserve Bank of New York President William Dudley and former Governor of the Bank of England Baron King of Lothbury).

The Good Bank Debate (New York 2013) (co-sponsored with Mazars)

ETH-NYU Law and Banking Conference 2013 (Zurich, Switzerland)

ETH-NYU Law and Banking Conference 2012 (New York, New York)

ETH-NYU Law and Banking Conference 2011 (Florence, Italy)

NYU Global Economic Policy Forum 2012

NYU Global Economic Policy Forum 2010

Judicial Dialogue on Mass Litigation, Florence Italy, October 15-16, 2010 (co-organizer of conference co-sponsored by NYU Law School, the American Law Institute, and the European University Institute)

Finlawmetrics 2010: Central Banking, Regulation & Supervision after the Financial Crisis (co-sponsor and member of steering committee)

Finlawmetrics 2009: After The Big Bang: Reshaping Central Banking, Regulation and Supervision (Milan, Italy, Spring 2009) (co-sponsor and member of steering committee)

NYU Global Economic Policy Forum 2009: The Future of Regulation and Capital Markets (November 5, 2009) (co-organized with Professor Alan Rechtschaffen and with the NYU Law School Alumni Association)

Third Annual Conference on Empirical Legal Studies (Cornell University, Ithaca, New York, Fall 2008) (co-organizer)

NYU Global Economic Policy Forum (April 14, 2009). Major conference on economic policy. Keynote address by Jean Claude Trichet, President of the European Central Bank; presentations by Tevi Troy, Deputy Secretary of the Department of Health and Human Services; Kevin Warsh, Member of the Board of Governors of the Federal Reserve System; and Donald B. Marron, Jr., Senior Economic Advisor, President's Council of Economic Advisors. Co-organized with Professor Alan Rechtschaffen.

Second Annual Conference on Empirical Legal Studies (New York, New York, November 10-11, 2007). Major conference (425 participants) exploring all aspects of the empirical study of law. Co-organized with Jennifer Arlen, Bernard Black, Theodore Eisenberg and Michael Heise.

NYU Global Economic Policy Forum (April 11, 2007).  Major conference on economic policy. Keynote address by Ben S. Bernanke, Chairman of the Board of Governors of the Federal Reserve System; presentations by Stanley Druckenmiller, Founder of Dusquesne Capital, Tevi Troy, Domestic Policy Advisor for President George W. Bush, and Jeffrey Rosen, Vice Chair of Lazard.  Co-organized with Professor Alan Rechtschaffen.

First Annual Conference on Empirical Legal Studies (Austin, Texas, October 2006).  Major conference exploring all aspects of the empirical study of law.  Co-organized with Jennifer Arlen, Bernard Black, Theodore Eisenberg and Michael Heise.

Conference on Legal Aspects of the International Activities of Central Banks, Lima Peru, October 1997.  This conference, co-sponsored by the central bank of Peru, brought together leaders in the legal and economic issues facing central banks in the management of their external reserves.

Conference on the Governance of Institutional Investors (New York, New York, February 14, 1997). This conference, sponsored by the NYU Stern School of Business Salomon Center in association with the New York University Law School Center for the Study of Central Banks, brought together top executives, attorneys, scholars and others interested in the management and organization, both economic and legal, of the nation's large institutional investors, including its mutual fund industry.

Conference on Bank Mergers and Acquisitions (New York, New York, October 11, 1996).  This conference, sponsored by the NYU Stern School of Business Salomon Center in association with the New York University Law School's Center for the Study of Central Banks, brought together leading academics, lawyers, and investment bankers to discuss some of the broader implications of bank mergers and acquisitions.  Co-organizer of this conference was Professor Yakov Amihud of the Stern School's Finance Department.

Conference in Central Banks in Latin America (Bogota, Colombia, February, 1996).  This conference, co-sponsored by the central bank of Colombia with technical assistance from the Legal Affairs Department of the International Monetary Fund, brought together leaders of Latin American central banks, the international financial community, and scholars from a variety of disciplines, to discuss issues related to the independence of central banks and economic development.

Conference on Central Banks in Asia (Shanghai, China, October, 1995).  This conference, co-sponsored with KPMG-Peat Marwick, brought together leaders from commercial banks, investment banks, and industrial firms, as well as central bankers, to discuss Asian central banks to address issues such as the proposed law granting a degree of independence to the central bank of China.

Conference on Ancient Law (Berkeley, California, March 1995).  This conference, organized with Professors James Lindgren of Chicago-Kent Law School and Laurent Mayali of the

University of California at Berkeley Law School, brought together important figures from a variety of disciplines interested in Ancient Law.

Conference on Central Banks in Eastern Europe and the Newly Independent States (Chicago, Illinois, April 1994).  This conference brought together the Prime Minister of Estonia, three present or former Ministers of Finance of Eastern European states (including Boris Fyoderov, former Finance Minister of the Russian Republic), the heads of the central banks of eleven nations in Eastern Europe and the Newly Independent States, together with a wide variety of highly-placed officials from these countries and from the west, to discuss issues related to the independence of central banks and economic development.

## Professional Memberships and Positions

New York State Bar
District of Columbia Bar
American Bar Association
American Law Institute (1988-1996)
Member, Paolo Baffi Centre Scientific Advisory Board, Milan, Italy (2008- present)
Member, International Academic Council, University of St. Gallen,
     Switzerland (2004-present)
Chairman, Section on Business Associations, American Association of Law
     Schools (1995)
Member of the Board of Directors, American Law and Economics Association
     (1995-1998)
Member of the Foreign Advisory Committee, Latin American Law and
     Economics Association (1995-2000)
Member of the Foreign Advisory Board, Universitad Tocurato Di Tella School of Law,
     Buenos Aires, Argentina (1992-1999)
Member of the Editorial Board, Supreme Court Economic Review
Member of the Editorial Board, The Independent Review
Member of the Advisory Board, Yearbook of International Financial and
     Economic Law
Member of the Advisory Board, University of Hong Kong Faculty of Law Asian Institute
     of International Financial Law (2001-present)
Member of the Advisory Board, LSN Comparative Law Abstracts

## Courses

Legal Profession (1985-93; 1996-98; 2003-2007; 2013 (scheduled))
The Crisis of 2008 (2009, 2010)
Reading Class: Restructuring Finance (2009)
Property (1986-87)
Corporations (1985-88; 1991-93; 1997-2000; 2005; 2008; 2012)
Seminar on Separation of Powers (1985, 1987)
Civil Procedure (1983-84; 2004-2005; 2011; 2013)

Federal Regulation of Banking (1983, 1989-93; 1995-97; 2003, 2006-2010; 2012)
Law and Business of Banking (2012; with Gerald Rosenfeld)
Land Development (1984-85)
Securities Law (1990-91)
Workshop in Legal Theory (1989-91)
Seminar on Financial Institutions (1992-93 (with Merton Miller); 1996-97)
Ethics in Class Action Practice (Continuing Legal Education Seminar 2002-2005)
Law and Economics (University of Basel, Switzerland 2005, 2007, 2008; 2009; 2010; 2011; 2012)
Advanced Seminar on Law and Economics (University of Genoa, Italy 2008)
Banking and the Financial Crisis (University of Genoa, Italy 2009)
Trust, Risk, and Moral Hazard in Financial Markets (University of Genoa, Italy, 2010)
International Banking (University of Sydney, Australia, 2002, 2006)
Introduction to Banking Law (University of Basel, Switzerland 2001, 2002, 2003, 2004, 2009, 2010; 2011; 2012
Banking in the Theory of Finance (University of Frankfurt, Germany 2004, 2005)
Banking Regulation in Crisis (University of Frankfurt, Germany, 2010)
Banking: Law and Economics Issues after the Financial Crisis (Study Center Gerzensee, 2012)

Litigation and Alternative Dispute Resolution

Brief and Reply Brief for Plaintiff-Appellant, Glancy v. Taubman Centers, Inc. No. 03-1609 (6th Cir. 2003).

Amicus Brief for American Bankers Association, et al., In Re: Visa Check/Mastermoney Antitrust Litigation, 280 F.3d 124 (2d Cir. 2001) (of counsel)

Briefed and argued Moran v. Household Finance Corp. (the "Poison Pill" case) in the Supreme Court of Delaware (1985)

Briefed cases in the U.S. Supreme Court, U.S. Court of Appeals, U.S. District Courts, and state trial and appellate courts.  Conducted depositions and other pretrial discovery.  (1982-1983)

Briefed and argued Hodges v. Metts, 676 F.2d 1133 (6th Cir. 1982), on behalf of the United States.

Conducted trial of American Psychological Association v. Birch Tree Press, et al. (U.S. District Court, Washington, D.C. 1983).

Deposit Insurance for Thailand.  Prepared a draft deposit insurance law for Thailand, at the request of the International Monetary Fund (1999)

Schatz v. Blanchard.  Neutral arbitrator in a commercial arbitration (2000)

Expert Witness Testimony (past five years)

EM Ltd. and NML Capital, Ltd. v. The Republic of Argentina and Banco de La Nación Argentina, No. 08 Civ 7974 (TPG), United States District Court for the Southern District of New York (declaration and responsive declaration on whether a state-owned financial institution is an alter-ego of the government) (2009); second supplemental declaration (2010)

Tucker v. Scrushy, et al., Nos. CIV-02-5212, CV 03-3522, CV 03-2023, CV 03-2420, CV 98-6592, Circuit Court of Jefferson County, Alabama, 2008 (affidavit on fees) (2009)

In Re: 2007 Wildfire Class Litigation, Master Case No.  2008-00093086, Superior Court of California, County of San Diego (2009) (affidavit and deposition on certification)

In re: Columbia Hospital for Women Medical Center, Inc., Case No. 09-00010 (Teel, J.), United States Bankruptcy Court for the District of Columbia (declaration on fees) (2009)

In re Vioxx Products Liability Litigation, Civil Action No. 2:05-MD-01657-EEF-DEK, United States District Court, Eastern District of Louisiana (affidavit on fee-capping order) (2009)

State of Missouri v. SBC Communications, Inc., No. No. 044-02645, Circuit Court of the City of St. Louis, Missouri (2009) (affidavit on fees)

Alexander v. Nationwide Mutual Insurance Co., No. CV-2009-120-3, Circuit Court of Miller County, Arkansas (2009) (affidavit on fees)

Peterman v. North American Company for Life and Health Insurance, Case No. BC357194, Superior Court of the State of California, County of Los Angeles (2009) (declaration on fees)

Holman v. Student Loan Xpress, Inc., Case No. 8:08-cv-00305-SDM-MAP (Middle District of Florida, Tampa Division) (2009) (declaration on fees)

Board of Trustees of the AFTRA Retirement Fund v. JPMorgan Chase, No. 09-00686 (Southern District of New York) (2010) (declaration on class certification)

Polion v. Wal-Mart Stores, Inc., No. 01-03645 (Superior Court of Massachusetts, Commonwealth of Massachusetts) (2010) (declaration on fees; supplemental declaration on fees and motion to strike counsel)

In re MoneyGram International, Inc. Securities Litigation, No. 08-883 (DSD/JJG), United States District Court, District of Minnesota (2010) (declaration on fees)

Board of Trustees of the AFTRA Retirement Fund v. JPMorgan Chase Bank, N.A., No. 09-cv-00686 (SAS) (DF), United States District Court for the Southern District of New York (2010) (declaration and deposition on certification)

49

Coffey v. Freeport-McMoran Copper & Gold, Inc., No. CJ-2008-68, District Court of Kay County, State of Oklahoma (2010) (affidavit on certification)

In Re Puerto Rican Cabotage Antitrust Litigation MDL Docket No. 3:08-md-1960 (DRD), United States District Court for the District of Puerto Rico (2010) (declaration on fees)

In re XTO Energy Shareholder Class Action Litigation, No. 352-242403-09, District Court of Tarrant County, Texas, 352nd Judicial District (2010) (affidavit on fees)

The Board of Trustees of the Southern California IBEW-NECA Defined Contribution Plan v. Bank of New York Mellon, Civil Action No. 09-Cv-06273, Southern District of New York (2011) (declaration on certification)

Iorio v. Asset Marketing Systems, Inc., Case No.: 05-CV-0633-JLS (CAB), Southern District of California (2011) (declaration in fees)

Villaflor v. Equifax Information Services, LLC, Case No.: 3:09-cv-00329-MMC, Northern District of California (2011) (declaration on fees)

Feely v. Allstate Insurance Company, Case No. CV-2004-294-3A, Circuit Court of Miller County, Arkansas (2011) (affidavit on settlement and fees)

Keegan v. American Honda Motor Co., Inc., Case Number: 2:10-cv-09508-MMM-AJW, United States District Court for the Central District of California (2011) (declaration on certification)

Compusource Oklahoma v. BNY Mellon, N.A., Case No: CIV 08-469-KEW, United States District Court for the Eastern District of Oklahoma (2011) (declaration on certification)

ABN Amro Bank v. Dinallo, Index No.: 601846/09 (New York State Supreme Court) (declaration and deposition on corporate restructuring/administrative law issue)

In re Checking Account Overdraft Litigation, Case No.: 1:09-MD-02036-JLK, United States District Court for the Southern District of Florida (2012) (Bank of America case; declaration and supplemental declaration on fees)

In re Checking Account Overdraft Litigation, Case No.: 1:09-MD-02036-JLK, United States District Court for the Southern District of Florida (2012) (Bank of Oklahoma case; declaration on fairness of settlement and fees)

In re Cell Therapeutics Inc. Securities Litigation, Master Docket No. C10-414 MJP, United States District Court for the Western District of Washington (2012) (declaration on fees)

In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, MDL NO. 2179, Eastern District of Louisiana (2012) (declarations on economic and medical benefits class settlements)

Freudenberg v. eTrade Financial Corporation, Case No.: 07-CV-8538, United States District Court for the Southern District of New York (2012) (declaration on fees)

LaCour v. Whitney Bank, Case No. 8:11-cv-1896-VMC-MAP (United States District Court for the Middle District of Florida (2012) (declaration on settlement and fees)

In re Checking Account Overdraft Litigation, Case No.: 1:09-MD-02036-JLK, United States District Court for the Southern District of Florida (2012) (Union Bank case; declaration on fees)

Smith v. American Bankers Insurance Company of Florida, Case No.: 2:11-cv-02113-PKH, Western District of Arkansas (2012) (declaration on class certification)

Blankenship v. RBS Citizens, N.A., Case No. 1:10-cv-22942-JLK, Southern District of Florida (2012) (declaration on fees)

Mazzadra, et al. v. TD Bank, N.A., Case No. 1:10-cv-21870-JLK, Southern District of Florida (2012) (declaration on fees)

In re Citigroup Inc. Securities Litigation, Case No. 07-civ-9901-SHS, Southern District of New York (2013) (declaration on fees)

Rubery v. E*Trade Financial Corporation, Case No. 07-CV-8612 (JPO), Southern District of New York (2013) (declaration and supplemental declaration on fees)

Chieftain Royalty Co. v. QEP Energy Co., Case No. 11-cv-00212-R (Western District of Oklahoma 2013) (declaration on fairness of settlement and fees)

Drummond v. Range Resources Corp., Case No. CJ-2010-510, District Court of Grady County, Oklahoma (2013) (declaration on fairness of the settlement and fees)

Landman Partners Inc. v. Blackstone Group LP, Case No. 08 Civ. 3601 (HB)(FM), Southern District of New York (2013) (declaration on fees)

White v. Experian Information Solutions, Inc., Case No. 05-cv-1070 DOC, Central District of California (2013) (declaration on fees)

## Other Activities

Member, Board of Directors, American Law and Economics Association (1996-1999)

Member, Board of Advisors, The Independent Review (1996-present)

Member, Board of Advisors, Asian Institute of International Financial Law (2001-present)

Member, Editorial Advisory Board, Supreme Court Economic Review (1995-present)

Member, Editorial Advisory Board, The Brookings-Wharton Papers on Financial Policy (1997-present)

President, Section on Financial Institutions and Consumer Financial Services, American Association of Law Schools (1999)

President, Section on Business Associations, American Association of Law Schools (1995)

Member, Board of Contributors, American Bar Association Preview of Supreme Court Cases (1985-1993)

Consultant, Administrative Conference of the United States (1988-89; 1991-1992)

Board of Directors and Volunteer Listener, D.C. Hotline (1980-83)

## Awards

1992 Paul M. Bator Award for Excellence in Teaching, Scholarship and Public Service, from the Federalist Society for Law and Public Policy Studies

## Languages

Reading knowledge of Spanish, French, and Italian.

## Personal

Born October 17, 1950

Children Jason (b. 1986) and Forrest (b. 1987).

## Shorter Works

Defusing The Banks' Financial Time Bomb: Without Tough Reforms, Writes Robert Pozen, We'll Probably Face An Ugly Repeat of Recent History (Business Week, March 11, 2010)

Why Interstate Banking is in the National Interest, Testimony Before the Subcommittee on Financial Institutions Supervision, Regulation and Deposit Insurance of the House Committee on Banking, Housing and Urban Affairs (September 29, 1993)

Challenging the Concept of the Common Law as a Closed System, Columbia Law School Report, Autumn, 1993 (with Norman Silber)

The Insurance Industry's Antitrust Exemption: A Longstanding Tradition Faces its Greatest Challenge, 1992-93 ABA Preview of Supreme Court Cases 198 (1993)

Shootout at the Escheat Corral, 1992-93 ABA Preview of Supreme Court Cases (1993)

Choices and Chances for Consumers, Legal Times, Oct. 12, 1992, at 29-30.

Impeachment Procedures: An Unexplored Territory in the Separation of Powers, 1992-93 ABA Preview of Supreme Court Cases 39 (1992)

An (Ex)changing of the Guard, 21 Journal of Legal Studies iii (1992)

Revisiting the Contingency Factor in Fee-Shifting Awards, 1991-92 ABA Preview of Supreme Court Cases 327 (1992)

The Foreign Sovereign Immunities Act and the Market for Public International Debt, 1991-92 ABA Preview of Supreme Court Cases 307 (1992)

Return of the Tenth Amendment?: Federal Control and State Autonomy over Low Level Radioactive Wastes, 1991-92 ABA Preview of Supreme Court Cases 284 (1992)

What are the Limits on Congressional Power to Influence Pending Cases?, 1991-92 ABA Preview of Supreme Court Cases 158 (1991)

RICO Standing for Securities Fraud: Does the Purchaser-Seller Rule of Rule 10b-5 Apply?, 1991-92 ABA Preview of Supreme Court Cases 155 (1991)

Banking and Investment: Introduction to UPA Index and Microfiche Collection (University Publications of America 1991)

Source of Strength in the Court: Can Bank Holding Companies be Required to Support Failing Subsidiary Banks?, 1991-92 ABA Preview of Supreme Court Cases 42 (1991)

Source of Strength: A Source of Trouble, Legal Times, September 30, 1991 (Special Supplement, pp. 22-25)

The Once and Future American Banking Industry, The American Enterprise (with Jonathan R. Macey)(1991)

The Former Stockholder as Plaintiff in Short-Swing Trading Cases, 1990-91 ABA Preview of Supreme Court Cases (1991)

Disposing of Demand Excuse in Derivative Litigation, 1990-91 ABA Preview of Supreme Court Cases (1991)

Up in the Air: Can Congress Require States to Appoint Members of Congress to State Agencies?, 1990-91 ABA Preview of Supreme Court Cases 294 (1991)

The Statute of Limitations under Rule 10b-5, 1990-91 ABA Preview of Supreme Court Cases (1991)

Tort Claims Against Federal Banking Agencies: New Hope For Shareholders and Officers of Failed Depository Institutions?, 1990-91 ABA Preview of Supreme Court Cases 94 (1991)

Punitive Damages Redux: If the Eighth Amendment Doesn't Apply, What About the Due Process Clause?, 1990-91 ABA Preview of Supreme Court Cases 47 (1990)

Quandaries of Causation: Proxy Solicitation in Freeze-Out Mergers, 1990-91 ABA Preview of Supreme Court Cases 57 (1990)

Racial Statesmanship, Legal Times S31 (July 23, 1990)

Eurodollars, Sovereign Risk, and the Liability of U.S. Banks for Deposits in Foreign Branches, 1989-90 ABA Preview of Supreme Court Cases 281 (1990)

When is a Note a Note?, 1989-90 ABA Preview of Supreme Court Cases 18 (1990)

Interstate Banking and the Commerce Clause, 1989-90 ABA Preview of Supreme Court Cases 168 (1990)

Federal Courts, Municipalities, and the Contempt Power, 1989-90 ABA Preview of Supreme Court Cases 37 (1989)

Shoe Could Still Drop on Issue of Punitive Damages, National Law Journal (August 21, l989)

Punitive Damages and the Constitution, 1988-89 ABA Preview of Supreme Court Cases 391 (l989)

States, Bankruptcy and the Eleventh Amendment, 1988-89 ABA Preview of Supreme Court Cases 412 (1989)

Stockholders, Arbitration, and the Securities Act of 1933, 1988-89 ABA Preview of Supreme Court Cases 383 (1989)

Appropriations Riders, Nondisclosure Agreements, and the Separation of Powers, 1988-89 ABA Preview of Supreme Court Cases 375 (1989)

Judicial Appointments and the ABA: Business as Usual or Brand New World?,  1988-89 ABA Preview of Supreme Court Cases 379 (1989)

S & L Receiverships, State Law, and the Federal Courts, 1988-89 ABA Preview of Supreme Court Cases 255 (1989)

The Non-delegation Doctrine in Taxation: A Different Constitutional Calculus?, 1988-89 ABA Preview of Supreme Court Cases 261 (1989)

Bankruptcy, Tax Liens, and Post-Petition Interest, 1988-89 ABA Preview of Supreme Court Cases (1989)

Federal Courts, State Taxes: A Vexing Dilemma For the Enforcement of Civil Rights in a Federal System, 1989-90 ABA Preview of Supreme Court Cases 95 (1988)

Separation of Powers and the Sentencing Commission, 1988-89 ABA Preview of Supreme Court Cases 23 (1988)

Administering the Savings and Loan Crisis: New Problems for the FSLIC, 1988-89 ABA Preview of Supreme Court Cases (1988)

Federal Procurement and the Separation of Powers, 1988-89 ABA Preview of Supreme Court Cases 26 (1988)

Thinking About a Career in Law, 1988-89 Talbot's Student Planning Book 32 (1988)

Carl McGowan: A Great Judge Remembered, 56 George Washington Law Review 697 (1988)

Separation of Powers: The Independent Counsel Case Tests the Limits, 1987-88 ABA Preview of Supreme Court Cases 390 (1988)

Decisionmaking in Collegial Bodies, Judicature, April/May 1988

The FDIC, Bank Officers and the Due Process Clause, 1987-88 ABA Preview of Supreme Court Cases 326 (1988)

Farm Foreclosures in Bankruptcy, 1987-88 ABA Preview of Supreme Court Cases 199 (1988)

Equal Access to Justice and Government Litigation, 1987-88 ABA Preview of Supreme Court Cases 160 (1988)

The Time Value of Money in Bankruptcy Cases, 1987-88 ABA Preview of Supreme Court Cases 116 (1987)

Getting the Fee First?: Attorneys and the SSI Program 1987-88 ABA Preview of Supreme Court Cases 118 (1987)

The Farmer and the FDIC, 1987-88 ABA Preview of Supreme Court Cases 48 (1987)

Testing the Limits of Securities Fraud: Financial Gossip in the Court, 1987-88 ABA Preview of Supreme Court Cases 26 (1987)

Checks and Balances in the Twenty-First Century, 33 University of Chicago Law School Record 7 (1987)

Separation of Powers May Become Focus Over NSC, Legal Times, Dec. 15, 1986, at 15

If a Bank is a Broker, is a Brokerage a Branch? 1986-87 ABA Preview of Supreme Court Cases 65 (1986)

Attorney's Fees in the Supreme Court, American Bar Association Journal 40 (November, 1986)

The Contingency Factor in Attorney's Fees Reconsidered, 1986-87 ABA Preview of Supreme Court Cases 20 (1986)

Restitution and Bankruptcy in a Federal System, 1986-87 ABA Preview of Supreme Court Cases (1986)

Don't Limit Contingent Fees, Chicago Tribune, June 11, 1986

The Budget and the Separation of Powers: Gramm-Rudman in the Court, 1985-86 ABA Previews of Supreme Court Cases 359 (1986)

Keeping Attorneys Fees in Proportion, 1985-86 ABA Preview of Supreme Court Cases 325 (1986)

Must the Federal Government Pay Interest on Attorneys Fees Awards?, 1985-86 ABA Preview of Supreme Court Cases 241 (1986)

The Contingency Factor in Attorneys Fees Awards, 1985-86 ABA Preview of Supreme Court Cases 243 (1986)

The FCC as Cop: Forcing State Public Service Commissions to Obey Federal Agency Orders, 1985-86 ABA Preview of Supreme Court Cases 191 (1986)

Preemption, Public Utilities, and Power Over Telephone Rate-Setting, 1985-86 ABA Preview of Supreme Court Cases 187 (1986)

A Bank is a Bank is a Bank -- or is it?, 1985-86 ABA Preview of Supreme Court Cases 67 (1985)

Settlement Offers Conditioned on Waiver of Attorneys' Fees: A Legal and Ethical Dilemma Confronts the Court, 1985-86 ABA Preview of Supreme Court Cases 55 (1985)

Bankruptcy and the Environment: The Case of Hazardous Wastes, 1985-86 ABA Preview of Supreme Court Cases 25 (1985)

A Different Approach to Interstate Banking, American Banker (August 8, 1985)

56

The SEC as Censor: Is Banning an Investment Advice Newsletter a Prior Restraint of the Press?, 1984-85 ABA Preview of Supreme Court Cases 243 (1985)

Enforcing Federal Rights in State Courts, 1984-85 ABA Preview of Supreme Court Cases 277 (1985)

Interstate Banking and the Constitution, 1984-85 ABA Preview of Supreme Court Cases 364 (1985)

The "Sale of Business" Doctrine in the Supreme Court, 1984-85 ABA Preview of Supreme Court Cases 344 (1985)

Sale of Business Revisited: Does the Doctrine Apply to Partial Sales of Corporate Control, 1984-85 ABA Preview of Supreme Court Cases 347 (1985)

Six Cases Shape Business Law, American Bar Association Journal 124 (Jan. 1985)

Offers of Settlement in Civil Rights Cases Pose Attorneys' Fees Question, 1984-85 ABA Preview of Supreme Court Cases 105 (1984)

Using Bankruptcy to Avoid Liability for Cleaning up Toxic Wastes, 1984-85 ABA Preview of Supreme Court Cases 36 (1984)

A Judicial Footnote Cemented the New Deal, Wall Street Journal, September 13, 1984

May Bank Holding Companies Provide Discount Brokerage Savings?, 1984-85 ABA Preview of Supreme Court Cases 575 (1984)

Blum v. Stenson: Fundamental Questions About Attorneys' Fees Awards to Public Interest Lawyers, 1984-85 ABA Preview of Supreme Court Cases 301 (1984)

Myths on the Midway, 30 Chicago Law School Record 13 (1984)

Smith v. Robinson: Another Step Towards Solving the Attorneys' Fees Puzzle? 1983-84 ABA Preview of Supreme Court Cases 437 (1984)

Securities Industry Association v. Board of Governors: Can Banks Distribute Commercial Paper? 1983-84 ABA Preview of Supreme Court Cases 425 (1984)

The "7-Eleven" Case: Arbitration v. Litigation in a Federal System, 1983-84 ABA Preview of Supreme Court Cases 161 (1983)

The Bildisco Case: Reconciling Federal Bankruptcy and Labor Policies, 1983-84 ABA Preview of Supreme Court Cases 169 (1983)

The "Daily Income Fund" Case:  What Role Should a Mutual Fund's Board of Directors Play in Disputes over Investment Advisor Fees, 1983-84 ABA Preview of Supreme Court Cases 107 (1983)

Pulliam v. Allen:  Should State Judges who Act Unconstitutionally Pay the Plaintiff's Attorneys' Fees?, 1983-84 ABA Preview of Supreme Court Cases 115 (1983)

"Shortsighted" Bill Proposes D.C. Court Divestiture, Legal Time of Washington, August 16, 1982

The Tax Bill May Be Unconstitutional, Baltimore Sun, August 16, 1982 (with Donald N. Bersoff)

## Appendix B: Materials Reviewed

- Memorandum in Support of Joint Motion for Preliminary Approval of Proposed Settlement

- Document entitled "Chronology of Litigation"

- Defendants' Mediation Statement

- Defendants' letter to counsel dated July 18, 2012

- Document entitled "Presentation to Plaintiffs' Expert"

- Proceedings Heard Before the Honorable Magistrate Judge M. Hannah Lauck, Januar 14, 2013 (transcript of settlement conference)

- Class Counsel's Supplemental Filing in Support of Motion for Attorneys' Fees and Expenses, Ryals v. Hireright Solutions, Inc., No 2:09-cv-625 (E.D.Va. 2009)

- Plaintiffs' Memorandum of Law in Support of their Motion for Final Approval of Class Settlement, and An Award of Incentive payment, Attorneys Fees, Ryals v. Hireright Solutions, Inc., No 2:09-cv-625 (E.D.Va. 2009)

- Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Class Settlement, and an Award of Inventive Payment, Attorneys Fees, Henderson v. Verifications Incorporated, Civil Action No. 3:11cv514-REP (2013)

- Transcript of Fairness Hearing Before the Honorable Robert E. Payne, Henderson v. Verifications Incorporated, Civil Action No. 3:11cv514-REP (2013)

- Plaintiff's Memorandum of Law in Support of Motion for an Award of Incentive Payment and Attorneys Fees, Pitt v. K-Mart Corp., Case No. 3:11-cv—00697-JAG (2013)

- Second Declaration of Professor Neil M. Richards

- Objection of Adam Schulman to (B)(2) Class Settlement

- Objection to Proposed Rule 23(b)(2) Settlement by Megal Christina Aaron, et al.