# EXHIBIT 2

| | | |
|---|---|---|
| **GREGORY THOMAS BERRY, et al** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **C.A. No. 11-754** |
| **vs.** | ) | |
| | ) | |
| **LEXISNEXIS RISK & INFORMATION** | ) | |
| **ANALYTICS GROUP, INC., et al** | ) | |
| | ) | **CLASS ACTION** |
| **Defendants.** | ) | |
| | ) | |

### DECLARATION OF JAMES A. FRANCIS SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND UNREIMBURSED EXPENSES INCURRED ON BEHALF OF FRANCIS & MAILMAN, P.C.

I, James A. Francis, declare as follows:

1.      I am a founding shareholder of the firm of Francis & Mailman, P.C ("F&M"). I submit this declaration in support of the firm's application for an award of attorneys' fees in connection with services rendered in this case, as well as the reimbursement of expenses incurred by my firm in connection with this litigation.

2.      F&M concentrates its practice in consumer protection litigation. Two of the firm's primary practice concentrations are fair credit reporting litigation ("FCRA litigation") and consumer class actions, such as the instant matter. Within the firm, I concentrate my practice in those two areas almost exclusively.

3.      F&M has extensive experience in litigating national FCRA class actions. The firm was co-lead counsel in the third largest FCRA settlement in history, and is currently involved in the 2nd largest FCRA proposed class action settlement. *See Ryals et al. v. Hireright Solutions, Inc.,* C.A. No. 3:09cv625 (E.D. Va. Dec. 22, 2011)($28.3 million national settlement achieved for class of consumers subjected to employment background checks in case brought

under FCRA); *see also White v. Experian et al.*, C.A. No. 05-1070 (C.D.Cal.)(45 million dollar settlement reversed because of conflict unrelated to F&M). In addition to the instant case, F&M is currently co-lead or lead counsel in FCRA class actions in the United States District Courts for: the Eastern District of Pennsylvania, the Middle District of Pennsylvania, the District of New Jersey, the District of Rhode Island, the District of Massachusetts, the Northern District of Georgia, the District of Colorado, the Eastern District of Virginia, the Northern District of California, and the Central District of California.

4.     I and my firm have been found to be well-qualified to prosecute FCRA class actions and consumer class actions on numerous occasions, have been praised for excellence in our representation of class members, and have been certified to serve as class counsel in over 30 class actions. *See Barel v. Bank of America,* 255 F.R.D. 393 (E.D. Pa. 2009)("A number of courts in this district have found Class Counsel, David Searles, of Donovan Searles, LLC, and James A. Francis and Mark D. Mailman, of Francis & Mailman, PC, to be competent, experienced and well-qualified to prosecute class actions such as this one. *See Orloff,* 2004 WL 870691, at *1–2, 2004 U.S. Dist. LEXIS 7151, at *4 (holding Francis & Mailman P.C. and Donovan Searles LLC are "competent to prosecute class actions"); *see also Perry v. FleetBoston Fin. Corp.,* 229 F.R.D. 105, 112 (E.D.Pa.2005); *Saunders v. Berks Credit and Collections, Inc.,* No. 00–3477, 2002 WL 1497374, at *8 (E.D.Pa. July 11, 2002); *Oslan v. Collection Bureau of Hudson Valley,* 206 F.R.D. 109, 112 (E.D.Pa.2002) ("Francis & Mailman P.C. and Donovan Searles LLC, possess sufficient qualifications, skill, and experience in consumer law and class action *\*399* practice to prosecute this suit to its conclusion."). Moreover, *Class Counsel have done an excellent job in representing the class in the instant litigation.*"))(emphasis supplied); *see also Sapp v. Experian Information Solutions, Inc.,* C.A. No. 10-4312, 2013 WL 2130956

(May 15, 2013); *LaRocque v. TRS Recovery Services, Inc.,* 285 F.R.D. 139 (D. Me. 2012); *Ryals et al. v. Hireright Solutions, Inc.,* C.A. No. 3:09cv625 (E.D. Va. July 7, 2011); *Serrano v. Sterling Testing Systems, Inc.* 711 F. Supp. 2d 402 (E.D. Pa.2010); *Summerfield v. Equifax Information Services, LCC,* 2009 WL 3234191 (D. N.J. Sept. 30 2009); *Chakejian v. Equifax Information Services, LLC,* 256 F.R.D. 492, 2009 WL 764656 (E.D.Pa. 2009); *Jones v. Midland Funding, LLC,* C.A. No. 3:08cv802(RNC) (D. Conn. October 13, 2009); *Mann v. Verizon,* C.A. No. 06-5370 (E.D. Pa. Sept. 26, 2008); *Smith v. Grayling Corp.,* 2008 WL 3861286, C.A. No. 07-1905 (E.D. Pa. 2008); *Strausser v. ACB Receivables Management, Inc.,* 2008 WL 859224 (E.D. Pa. March 28, 2008); *Nienaber v. Citibank (South Dakota), N.A.,* 2007 WL 2003761 (D.S.D. July 5, 2007); *Jordan v. Commonwealth Financial Systems, Inc.,* 237 F.R.D. 132, (E.D. Pa. 2006); *Marino v. UDR,* 2006 WL 1687026, C.A. No. 05-2268 (E.D. Pa. June 14, 2006); *Seawell v. Universal Fidelity Corp,* 235 F.R.D. 64 (E.D. Pa. 2006); *Perry v. FleetBoston Financial Corp.,* 229 F.R.D.105 (E.D. Pa. 2005); *Beck v. Maximus, Inc.,* 2005 WL 589749 (E.D. Pa. 2005), *vacated on other grounds, Beck v. Maximus,* 457 F. 3d 291, 2006 WL 2193603 (3d. Cir. Aug. 4, 2006); *Stoner v. CBA Information Services,* 352 F. Supp. 2d 549 (E.D. Pa. 2005); *Bittner v. Trans Union, LLC,* C.A. No. 04-2562 (E.D. Pa. January 4, 2005); *Wisneski v. Nationwide Collections, Inc.,* 227 F.R.D. 259 (E.D. Pa. 2004); *Petrolito v. Arrow Financial Services, LLC,* 221 F.R.D. 303 (D. Conn. 2004); *Orloff v. Syndicated Office Systems, Inc.,* 2004 WL 870691 (E.D. Pa 2004); *Bonett v. Education Debt Services, Inc.,* 2003 WL 21658267 (E.D. Pa. 2003); *Gaumer v. The Bon-Ton Stores,* C.A. No. 02-8611 (E.D. Pa. Dec. 30, 2003); *Street v. Portfolio Recovery Associates,* C.A. No. 01-3684 (E.D. Pa. July 30, 2003); *Samuel-Bassett v. Kia Motors America, Inc.,* 212 F.R.D. 271 (E.D. Pa. 2000), *vacated on other grounds; Oslan v. Law Offices of Mitchell N. Kay,* 232 F. Supp. 2d 436 (E.D. Pa. 2002); *Oslan v. Collection Bureau of*

*Hudson Valley*, 206 F.R.D. 109 (E.D. Pa. 2002); *Saunders v. Berks Credit & Collections*, 2002 WL 1497374 (E.D. Pa. 2002); *Schilling v. Let's Talk Cellular and Wireless*, 2002 U.S. Dist. LEXIS 3352 (E.D. Pa. 2002); *Fry v. Hayt, Hayt and Landau*, 198 F.R.D. 461 (E.D. Pa. 2000); *Smith v. First Union Mortgage Corporation*, 1999 WL 509967 (E.D. Pa. 1999); *Miller v. Inovision*, December Term, 1999, No. 3504 (C.P. Phila. County).

5.    My firm has the level of experience and demonstrated commitment to protecting class interests necessary to serve as lead or co-lead counsel in this case. In a world where class cases often settle early in the litigation on terms that are often only favorable to the lawyers involved, our firm is in the small of minority of class action firms that has actual experience in the trial of a class action, and a demonstrated a commitment to take a class action case to trial. I have been involved in the trial three class actions to trial, two of which resulted in successful verdicts for the consumer classes tried over a period of weeks, and the third which resulted in a settlement that was easily approved by the district court. *See Samuel-Bassett v. Kia Motors America, Inc.,* 34 A.3d 1, 613 Pa. 371 (Pa. 2011) ($5.6 million verdict for class of Pennsylvania car purchasers, plus award of attorney's fees upheld by Pennsylvania Supreme Court); *Little v. Kia Motors America, Inc.,* 2003 WL 25568765 (N.J. Super. L. 2003) ($6 million (approximate) verdict for class of New Jersey car purchasers); and, *Chakejian v. Equifax Information Services, LLC,* 275 F.R.D. 201 (E.D. Pa. 2011).

6.    I and my firm have been at the forefront of many consequential FCRA decisions. I argued the seminal case of *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d. Cir. 2010) before the Third Circuit Court of Appeals, an FCRA case of first impression upholding a six figure verdict tried by our firm and addressing the FCRA's coverage of OFAC/terrorist alerts on credit reports. *Cortez* also outlined the liability, causation and damages standards for most FCRA cases against

4

credit reporting agencies in the Third Circuit. I and the attorneys of my firm have been responsible for numerous consequential opinions and decisions throughout the country, including, like the instant case, decisions that have addressed the scope and coverage of the FCRA. *See* firm bio, attached hereto as Exhibit A; *see Adams v. LexisNexis Risk and Information Analytics Group, Inc.,* C.A. No. 08-4708, 2010 WL 1931135 (D.N.J., May 12, 2010), discussed *infra*, paragraphs 11-12.

7.    As a result of the consequential work I and my firm have achieved in the area of FCRA litigation, FCRA class actions and consumer class actions, I have had the privilege of being ranked one of the Top 100 Superlawyers in the Commonwealth of Pennsylvania in 2012, 2008 and 2004 in *Philadelphia Magazine* and *Pennsylvania Super Lawyers* magazine. I have been ranked one of the Top 100 SuperLawyers in Philadelphia almost every year since 2004, and have been ranked a Pennsylvania SuperLawyer for 10 years in a row.

8.    I am regularly invited to lecture and speak for both consumer and defense industry groups for Continuing Litigation Programs (CLEs), and in the summer of 2013 was asked to co-chair the Fair Credit Reporting Litigation Conference sponsored by the National Association of Consumer Advocates. *See* Exhibit A. Earlier this month, on November 6, 2013, I was one of a handful of consumer protection lawyers invited to the recently created Consumer Financial Protection Bureau ("CFPB") to attend a face-to-face meeting with Director Richard Cordray and address fair credit reporting litigation and issues. By invitation and request, I have also authored several articles on FCRA litigation. *Id.* I have also been consulted and interviewed by news programs such as the national *Today Show*, to address FCRA issues. Id.

9.     My firm acted as Co-Lead Class Counsel in this action. I and other attorneys and paralegals at my firm were directly involved in virtually all aspects of this litigation from its inception through the current time.

10.     The time, efforts and and tasks necessary to bring this litigation to its conclusion spanned a period of 5 years, and include significant efforts our firm expended in the case of *Adams, et al. v. LexisNexis Risk & Information Analytics Group, Inc., et al.*, No. 08-4708 (D.N.J. 2008). Though *Adams* was eventually dismissed prior to certification, the aggressive prosecution of the litigation in that case led to developments and discovery that case were pivotal to achieving the settlement obtained in this action.

11.     From the outset, the pleadings in *Adams* litigation alleged that Accurint was a consumer report product and that Defendant LexisNexis ("LN") was required to comply with FCRA as it pertained to the sale of Accurint. At that point, no court or regulatory body had ever made such a finding, and Defendant LN expressly denied any FCRA liability as to Accurint. The parties engaged in significant discovery. Plaintiff's discovery requests resulted in a document production by LN of 1600 pages of internal materials and technical documents. F&M took 5 depositions in 3 different states (Georgia, Florida and Ohio) of various LN corporate representatives, and LN deposed the plaintiff. In addition, throughout the litigation and in discovery, F&M continued to gather and obtain research and evidence which helped support the contention that Accurint was an FCRA-regulated product.

12.     In addition to other non-consequential motions, in *Adams*, Defendant LN filed a Rule 12(c) Motion for Judgment on the Pleadings. Significant motion practice ensued. In that motion, LN argued-as it would here on contest-that Accurint reports were not subject to the FCRA. F&M expended considerable efforts and time to challenge and oppose the motion. Both

6

sides canvassed caselaw and FTC authority and advanced statutory interpretations of the FCRA that were completely at odds. The briefing was complex and detailed. Ultimately, the Plaintiff Ms. Adams and her counsel F&M prevailed, and the District of New Jersey issued the first decision of any court finding LN covered under the FCRA as it pertained to the sale of Accurint information. *See Adams, supra*. Defendant LN moved for a motion for reconsideration, and the Court granted oral argument. Following oral argument, the court denied Defendant's motion without prejudice, yet the *Adams* court harbored reservations about the plaintiff's ability to prove willfulness under the FCRA given the fact that the issue of the whether Accurint was an FCRA regulated product had never been addressed by a court or regulatory body such as the FTC. *See Adams*, 2010 WL 1931135, \*10 (Lexis argues that they did not view Accurint reports as qualifying as "consumer reports" under the FCRA. If Plaintiff can prove, however, that Lexis either knowingly or recklessly adopted policies that contravened the FCRA, assuming that she satisfies her burden of showing that the FCRA applies to Lexis, she could succeed in establishing a violation of the Act...Indeed, Plaintiff's burden is high, as she must establish that Lexis's reading of the statute was objectively unreasonable). The action was ultimately dismissed individually. To this day, *Adams* decision remains the only decision of a court addressing whether the FCRA applies to Accurint.

13.     Thereafter, Class Counsel began prosecuting the instant case. The case required our firm's attendance at many meetings in various cities (Philadelphia, Houston, Richmond, New York, Ft. Lauderdale), the exchange of discovery, noticing of depositions and ultimately numerous mediation sessions in Northern California as more specifically detailed in the Cadell Declaration. In connection with the many meetings, conferences and mediation days, I am comfortable estimating that at least 4/5$^{th}$s of the time expended to bring this matter to its

conclusion related to the negotiation of the compliance-related issues and practice changes that LN ultimately has agreed to.

14. The Schedule of Time Expended below is a summary indicating the amount of time, by specific work expended, spent by each attorney and paralegal who was involved in this litigation, and the lodestar fee calculation based on my firm's current billing rates. The Schedule was prepared from contemporaneous time records regularly prepared and maintained by my firm. As set forth below, the time expended in connection with these e-mails has been conservatively estimated and included as well. Time expended which has been considered duplicative or redundant has been eliminated from this lodestar. As each attorney contemporaneously records time according to his or her own activity descriptions and/or shorthand, there are some variations in the description of an activity and the parties involved in an activity (i.e. sometimes one attorney uses abbreviations for an activity such as "t/c" for telephone call and another does not). Time expended in preparing this application for fees and reimbursement of expenses has been included in this request. Additionally, anticipated time going forward has been estimated and included as well. Consistent with our firm's usual practice, tasks and assignments were apportioned to avoid the expenditure of duplicative time and redundant staffing.

15. In connection with preparing the Schedule below, I have excluded time and work related solely to the prosecution of the individual claim of Ms. Toni Adams in the *Adams* litigation.

16. The hourly rates charged by my firm included in the Schedule below are the same as the regular current rates that would be or have been charged to clients who retain the firm in connection with non-class matters.

17.     The hourly rates for the paralegals who are working on the case are referenced below.  The rates charged by the attorneys and paralegals of my firm are reasonable and within the range of the appropriate market rates charged by attorneys with comparable experience levels for litigation of a similar nature, given their experience level, practice concentration and background.  *See Chakejian v. Equifax Information Services, LLC*, 275 F.R.D. 201, 216-17 (E.D. Pa. 2011); *see also*, March 18, 2011 expert report of Abraham C. Reich, Esquire, Co-Chair and Partner for the law firm of Fox Rothschild, LLP, attached hereto as Exhibit B.

18.     F&M's fee requests have been approved by other courts, and the hourly rates petitioned for in this litigation are consistent with those which have been approved for the undersigned and for other attorneys in the firm by other Courts in the past.  *See Sapp, supra; Baker v. International Bank,* C.A. No. 08-5668 (D.N.J. Feb. 28, 2013) (Rodriguez, J.) (Docket. No. 110) (approving firm's fee petition in full); *Chakejian v. Equifax Information Services, LLC,* 275 F.R.D. at 216, n. 19 (adopting expert opinion testimony finding hourly rates of up to $525.00 reasonable for Mr. Francis and Mr. Mailman); *Reibstein v. Rite Aid Corporation,* 761 F.Supp.2d 241, 260 (E.D. Pa. 2011) (Robreno, J.) (approving hourly rate of $650 for Mr. Searles); *McCall v. Drive Financial*, January Term 2006, No. 0005 (C.P. Phila. July 20, 2010) (DiVito, J.) (approving hourly rate of $650 for Mr. Searles.

19.     The lodestar of the firm for work performed that was necessary to prosecute this litigation and achieve the settlement is as follows:

| Attorneys | Hourly Rate | Hours | Fees |
|---|---|---|---|
| James A. Francis | $525.00 | 706.25 | $ 370,781.25 |
| Mark D. Mailman | $525.00 | 191.70 | $ 100,642.50 |
| John Soumilas | $425.00 | 345.20 | $ 146,710.00 |
| Geoffrey Baskerville | $425.00 | 1.70 | $ 722.50 |
| Erin Novak | $325.00 | 18.60 | $ 6,045.00 |
| David A. Searles | $650.00 | 426.0 | $ 276,900.00 |
| Gregory Gorski | $350.00 | 149.4 | $ 52,290.00 |
| **Paralegals** | | | |
| Danielle Spang | $175.00 | 66.10 | $11,567.50 |
| Tina Massa/Alicia Bungy | $150.00 | 352.90 | $52,935.00 |
| Margie Schall | $175.00 | 0 | $ 0 |
| Christina Roth | $150.00 | 0 | $ 0 |
| Jill O'Connor | $150.00 | 0 | $ 0 |
| Ilijana Vukas | $150.00 | 0 | $ 0 |
| Flo Reich | $150.00 | 0 | $ 0 |
| Totals | | 2,257.85 | $1,018,593.70 |

20.     My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

21.     My firm has incurred a total of $41,446.20 in unreimbursed expenses in connection with the efforts required to prosecute the litigation and achieve the settlement obtained. With the exception of anticipated travel expenses that will be incurred in connection with attending the Final Approval Hearing, the expenses incurred in this action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records and other source materials and are an accurate recordation of the expenses. The above-referenced expenses were all reasonably and necessarily incurred in pursuing this litigation. The expenses were required in light of the scope and magnitude of the case and the results obtained, and are of the type that our firm would and has billed to paying clients.

I declare under the penalty of perjury that the foregoing is true and correct.

Signed this 22nd day of November, 2013.

/s/ *James A. Francis*
JAMES A. FRANCIS
Attorney for Plaintiffs

EXHIBIT A

# FRANCIS & MAILMAN

### A PROFESSIONAL CORPORATION

LAND TITLE BUILDING, 19TH FLOOR
100 SOUTH BROAD STREET
PHILADELPHIA, PA 19110
215-735-8600
FAX: 215-940-8000
WWW.CONSUMERLAWFIRM.COM
EMAIL: INFO@CONSUMERLAWFIRM.COM

**Francis & Mailman, P.C.** is a law firm located in center city Philadelphia, Pennsylvania that concentrates in consumer protection litigation. Founded in 1998, the firm's goal is to provide exceptional advocacy to consumers subjected to unfair business, industry and trade practices. The firm represents consumers in individual actions, as well as through class action lawsuits, in the areas of unlawful consumer credit reporting, employment background screening, fair debt collection, unfair and deceptive trade practices litigation, breach of warranty and other consumer matters. The firm's attorneys have significant litigation experience both in federal and state trial courts.

## The Firm's Attorneys

**JAMES A. FRANCIS** has been admitted to practice before the United States Court of Appeals for the Third Circuit, the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District of New Jersey, as well as the Pennsylvania and New Jersey state courts. He is a 1992 graduate of Muhlenberg College (B.A., *cum laude*) and a 1995 graduate of the Temple University Beasley School of Law. In law school, he won the 1995 Wapner, Newman & Wigrizer, P.C. award for excellence in civil trial advocacy, was awarded outstanding oral advocacy and served as President of the Student Bar Association. Following law school, Mr. Francis was associated with Kolsby, Gordon, Robin, Shore & Rothweiler in Philadelphia, and concentrated in catastrophic injury litigation. Since 1998, he has focused his practice in consumer protection litigation, with a particular concentration in fair credit reporting, fair debt collection practices and consumer class actions.

Mr. Francis was ranked one of the Top 100 Superlawyers in the Commonwealth of Pennsylvania in 2012, 2008 and 2004 in *Philadelphia Magazine* and *Pennsylvania Super Lawyers* magazine. He has been regularly ranked one of the Top 100 SuperLawyers in Philadelphia since 2004. He has appeared on various news programs including the *Today Show* to discuss consumer-related issues, and was featured in *The Philadelphia Inquirer*'s biographical "Question & Answer" segment in February of 2009.

## Class Counsel Certifications

Mr. Francis has been certified to serve as class counsel by numerous courts, including:

*Sapp v. Experian Information Solutions, Inc.,* C.A. No. 10-4312, 2013 WL 2130956 (May 15, 2013);

*Larocque v. TRS Recovery Services, Inc. and Telecheck Services, Inc.,* 2012 WL 2921191 (D. Me. July 17, 2012);

*Ryals et al. v. Hireright Solutions, Inc.,* C.A. No. 3:09cv625 (E.D. Va. July 7, 2011);

*Serrano v. Sterling Testing Systems, Inc.* 711 F. Supp. 2d 402 (E.D. Pa.2010)

*Summerfield v. Equifax Information Services, LCC,* 2009 WL 3234191 (D. N.J. Sept. 30 2009);

*Chakejian v. Equifax Information Services, LLC,* 256 F.R.D. 492, 2009 WL 764656 (E.D.Pa. 2009)

*Jones v. Midland Funding, LLC,* C.A. No. 3:08cv802(RNC)(October 13, 2009);

*Barel v. Bank of America,* 255 F.R.D. 393 (E.D. Pa. 2009);

*Mann v. Verizon,* C.A. No. 06-5370 (E.D. Pa. Sept. 26, 2008);

*Smith v. Grayling Corp.,* 2008 WL 3861286, C.A. No. 07-1905 (E.D. Pa. 2008)

*Strausser v. ACB Receivables Management, Inc.,* 2008 WL 859224 (E.D. Pa., March 28, 2008);

*Nienaber v. Citibank (South Dakota), N.A.,* 2007 WL 2003761 (D.S.D., July 5, 2007);

*Jordan v. Commonwealth Financial Systems, Inc.,* 237 F.R.D. 132, (E.D. Pa. 2006);

*Marino v. UDR,* 2006 WL 1687026, C.A. No. 05-2268 (E.D. Pa. June 14, 2006);

*Seawell v. Universal Fidelity Corp,* 235 F.R.D. 64 (E.D. Pa. 2006);

*Perry v. FleetBoston Financial Corp.,* 229 F.R.D.105 (E.D. Pa. 2005);

*Beck v. Maximus, Inc.,* 2005 WL 589749 (E.D. Pa. 2005), *vacated on other grounds, Beck v. Maximus,* 457 F. 3d 291, 2006 WL 2193603 (3d. Cir. Aug. 4, 2006)

*Stoner v. CBA Information Services,* 352 F. Supp. 2d 549 (E.D. Pa. 2005);

*Bittner v. Trans Union, LLC,* C.A. No. 04-2562 (E.D. Pa. January 4, 2005);

*Wisneski v. Nationwide Collections, Inc.,* 227 F.R.D. 259 (E.D. Pa. 2004);

*Petrolito v. Arrow Financial Services, LLC*, 221 F.R.D. 303 (D. Conn. 2004);

*Orloff v. Syndicated Office Systems, Inc.*, 2004 WL 870691 (E.D. Pa 2004);

*Bonett v. Education Debt Services, Inc.*, 2003 WL 21658267 (E.D. Pa. 2003);

*Gaumer v. The Bon-Ton Stores*, C.A. No. 02-8611 (E.D. Pa. Dec. 30, 2003);

*Street v. Portfolio Recovery Associates*, C.A. No. 01-3684 (E.D. Pa. July 30, 2003);

*Samuel-Bassett v. Kia Motors America, Inc.*, 212 F.R.D. 271 (E.D. Pa. 2000), *vacated on other grounds*;

*Oslan v. Law Offices of Mitchell N. Kay*, 232 F. Supp. 2d 436 (E.D. Pa. 2002);

*Oslan v. Collection Bureau of Hudson Valley*, 206 F.R.D. 109 (E.D. Pa. 2002);

*Saunders v. Berks Credit & Collections*, 2002 WL 1497374 (E.D. Pa. 2002);

*Schilling v. Let's Talk Cellular and Wireless*, 2002 U.S. Dist. LEXIS 3352 (E.D. Pa. 2002);

*Fry v. Hayt, Hayt and Landau*, 198 F.R.D. 461 (E.D. Pa. 2000);

*Smith v. First Union Mortgage Corporation*, 1999 WL 509967 (E.D. Pa. 1999);

*Miller v. Inovision*, C.P. Phila. County, December Term, 1999, No. 3504.

## Notable Cases

*Ryals et al. v. Hireright Solutions, Inc.*, C.A. No. 3:09cv625 (E.D. Va. Dec. 22, 2011)—$28.3 million national settlement achieved for class of consumers subjected to employment background checks in case brought under Fair Credit Reporting Act (FCRA); believed to be the 3rd largest FCRA settlement in history;

*Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d. Cir. 2010)—argued precedential case of first impression before the U.S. Court of Appeals for the Third Circuit which outlines the liability, causation and damages standards for FCRA cases against credit reporting agencies--$800,000 jury verdict against Trans Union in fair credit reporting case (remitted to $150,000);

*Little v. Kia Motors America, Inc.*, 2003 WL 25568765 (N.J. Super. L. 2003)--6 million dollar (approximate) verdict for class of New Jersey car purchasers;

*Samuel-Bassett v. Kia Motors America, Inc.,* __ A.3d __, 2011 WL 60559098 (Pa. 2011), C.P. Phila. County, January Term, 2001, No. 2199--5.6 million dollar verdict for class of Pennsylvania car purchasers, plus award of attorney's fees;

*Serrano v. Sterling Testing Systems, Inc.,* ---F.Supp.2d---, 2008 WL 2223007 (E.D. Pa. May 30, 2008)—federal court finding as a matter of first impression what defines a record of arrest under the FCRA;

*Ziegenfuse v. Apex Asset Management, LLC,* 239 F.R.D. 400 (E.D. Pa. 2006)--obtained court decision holding that offers of judgment under Rule 68 of the Federal Rules of Civil Procedure cannot be used in class actions;

*Stoner v. CBA Information Services,* 352 F. Supp. 2d 549 (E.D. Pa. 2005)--obtained $772,500 settlement for class of consumers who disputed errors in their credit reports;

*Richburg v. Palisades Collection, LLC,* 247 F.R.D. 457 (E.D. Pa. 2008)--federal court ruled that actions to collect delinquent credit card debt in Pennsylvania subject to 4 year statute of limitations (not 6 as the defendant collection agency had argued);

*Perry v. FleetBoston Financial Corp.,* 2004 WL 1508518 (E.D. Pa. 2004)--defeated motion to compel arbitration in class action brought under Fair Credit Reporting Act;

*Crane v. Trans Union, LLC,* 282 F. Supp. 2d 311 (E.D. Pa. 2003)--federal court held that credit reporting agencies that merely parrot information from credit furnishers and fail to forward dispute documentation face claims for punitive damages under the Fair Credit Reporting Act; violation of the Fair Credit Reporting Act presents a violation of Pennsylvania's Consumer Protection Law); *Lawrence v. Trans Union, LLC,* 296 F. Supp. 2d 582 (E.D. Pa. 2003)--same;

*Wisneski v. Nationwide Collections, Inc.,* 227 F.R.D. 259 (E.D. Pa. 2004)--obtained class certification in Fair Debt Collection Practices action in which a Pennsylvania federal court held for the first time that statutory net worth limitation is not limited to balance sheet net worth, and includes equity, capital stock and goodwill;

*Evantash v. G.E. Capital Mortgage Services, Inc.*, 2003 WL 22844198 (E.D. Pa. 2003)--federal court held that technical accuracy defense was not available to defendants under the Fair Credit Reporting Act;

*Sheffer v. Experian Information Solutions, Inc.*, 2003 WL 21710573 (E.D. Pa. 2003)--federal court held that Fair Credit Reporting Act permits as recoverable damage emotional distress in trying to correct errors in a consumer's credit file, even where no pecuniary or out-of-pocket losses;

*Sheffer v. Experian Information Solutions Inc.*, 249 F. Supp. 2d 560 (E.D. Pa. 2003)--federal court held that FCRA provides a private right of action against furnishers of information;

*Sullivan v. Equifax, Inc. et al.*, 2002 U.S. Dist. LEXIS 7884 (E.D. Pa. 2002)-- federal court held that reporting a debt to a credit reporting agency is a communication covered by the Fair Debt Collection Practices Act;

*Wenrich v. Cole*, 2000 U.S. Dist. LEXIS 18687 (E.D. Pa. 2000)-- federal court held that FDCPA provides protection for all persons, not just consumers;

*Jaramillo v. Experian Information Solutions, Inc.*, 155 F. Supp. 2d 356 (E.D. Pa. 2001); 2001 U.S. Dist. LEXIS 10221 (E.D. Pa. 2001)--federal court held that single publication rule does not apply to actions brought for violation of the Fair Credit Reporting Act;

## Lectures/Presentations By Invitation

Speaker, *Big Data: FCRA Opportunities and Pitfalls*; *FCRA Discovery Issues*; National Consumer Rights Litigation Conference, National Consumer Law Center, Washington, D.C., November 7-8, 2013;

Advisory Meeting with Richard Cordray, Director of Consumer Financial Protection Bureau (CFPB), National Consumer Law Center, November 6, 2013;

Co-Chair and Speaker, Fair Credit Reporting Conference, National Association of Consumer Advocates, Austin, Texas, May 2013;

Faculty, *FDCPA Class Actions: Latest Litigation Developments*, Strafford Webinars and Publications, November 8, 2012;

Speaker, *FCRA Developments*, Consumer Rights Litigation Conference, National Consumer Law Center, Seattle, Washington, October 2012;

Speaker, *11th Consumer Class Action Symposium*, National Consumer Law Center, Chicago, Illinois, November 6, 2011;

Speaker, *Tenant, Employment and Chexsystems Reports*, Consumer Rights Litigation Conference, National Consumer Law Center, Chicago, Illinois, November 3-6, 2011;

Speaker, *Specialty Consumer Reports and the FCRA*, FCRA Conference on Consumer Credit, National Association of Consumer Advocates, Memphis, Tennessee, May 20-22, 2011;

Panelist, *Taking on the Challenges Facing Workers with Criminal Records: Advancing the Legal and Policy Advocacy Agenda*, National Employment Law Project, Washington, D.C., April 5, 2011;

Faculty, 16th Annual Consumer Financial Services Litigation Institute (CLE-accredited), *Collection Issues Including The TCPA & Hot Topics*, Practising Law Institute, New York, NY and Chicago, IL, March 2011,

Speaker, *ABCs of Fair Credit Reporting*, *Tips on FCRA Depositions*, *Evolution of Credit Reporting Industries*, Consumer Rights Litigation Conference, National Consumer Law Center, Boston, Massachusetts, November 11-14, 2010;

Faculty, Banking and Consumer Financial Services Law Update, *Litigation and Arbitration Update*, Pennsylvania Bar Institute, April 14, 2010;

Faculty, *Deposit-Side Litigation Developments & Credit Card Developments*, 14th Annual Consumer Financial Services Litigation Institute, New York, NY and Chicago, IL, March and April 2009;

Faculty, 13th Annual Consumer Financial Services Litigation Institute (CLE-accredited), Practising Law Institute, New York, NY and Chicago, IL, January 2008, March 2008;

Speaker, *Fair Credit Reporting Act Conference*, National Association of Consumer Advocates, Chicago, IL May 8-10, 2009;

Faculty, 12th Annual Consumer Financial Services Litigation Institute (CLE-accredited), Practising Law Institute, New York, NY, March 2007;

Faculty, *Fair Credit Reporting Litigation*, Consumer Protection Law (CLE-accredited), Pennsylvania Bar Institute, Philadelphia, PA and Mechanicsburg, PA, December 2004, March 2007;

Speaker, *Litigating Accuracy Issues with Furnishers of Credit Data*, National Association of Consumer Advocates, New Orleans, LA, June 2-5, 2005;

Speaker, Philadelphia Housing Expo, Homeownership Counseling Association of the Delaware Valley, 2005 and 2006;

Speaker, *Understanding Credit Scoring*, Consumer Rights Litigation Conference, National Consumer Law Center, Boston, MA, November 7, 2004;

Speaker, *Litigating Accuracy Issues With Credit Reporting Agencies*, National Association of Consumer Advocates, Chicago, Ill., May 14-16, 2004;

Speaker, *Protecting Privacy, Ensuring Accuracy*, National Association of Consumer Advocates, Albuquerque, NM, June 1, 2002;

Faculty/Speaker, *Credit Reporting and Debt Collection Litigation*, Municipal Court Judicial Conference (CLE), Pennsylvania, PA, May 6, 1999;

Speaker, The People's Law School, Philadelphia Bar Association, Philadelphia, PA, October 2004;

Guest Lecturer, Consumer Protection Law course, Temple Law School, 2003-2012; and

Guest Lecturer, Consumer Protection Law course, Widener Law School, 2004-2009.

## Publications

*The FCRA: A Double-Edged Sword for Consumer Data Sellers*, GP SOLO Magazine, American Bar Association, Volume 29, Number 6, November/December 2012;

*Credit Rating Damage: Compensable, Yet Overlooked Damage in Tort Cases*, The Verdict, Philadelphia Trial Lawyers Association, Volume 2008-2009-Issue 6 (2009).

Mr. Francis has served on the Editorial Board of the Consumer Financial Services Law Report, the Philadelphia Bar Association's Lawyer Referral and Information Service Committee (LRIS)(where he served as chair or co-chair for 3 years), and has served on the Bar Association's Federal Court's Committee. He has served as an arbitrator for the Court of Common Pleas of Philadelphia County and is on the Judge Pro Tem panel. He is a member of the Philadelphia Bar Association, Pennsylvania Trial Lawyers Association, Philadelphia Trial Lawyers Association, and National Association of Consumer Advocates.

**MARK D. MAILMAN** is admitted to practice before the United States for the Eastern District of Pennsylvania and District of New Jersey as well as the state courts of Pennsylvania and New Jersey. He is a graduate of Muhlenberg College (B.A. *magna cum laude*, 1991) when he was also inducted into Phi Beta Kappa. Mr. Mailman received his law degree from the Temple University School of Law (J.D. 1995). While at Temple Law School, he achieved the highest grade in his Trial Advocacy clinic. Throughout law school, Mr. Mailman interned at the Philadelphia District Attorney's Office where he tried cases and argued motions in the areas of domestic violence and sexual assault. Following graduation from law school, Mr. Mailman was an attorney with the law firm of Hwang & Associates where his practice focused on Lemon Law litigation. In 1996, Mr. Mailman was associated with the law firm of Fellheimer, Eichen, Bravermen & Kaskey where his practice focused on complex commercial litigation including creditor's rights. He has been certified to serve as class counsel by state and federal courts in both contested and settlement class actions.

## Class Counsel Certifications

*Serrano v. Sterling Testing Systems, Inc.* 711 F. Supp. 2d 402 (E.D. Pa.2010)
*Summerfield v. Equifax Information Services, LCC,* 2009 WL 3234191 (D. N.J. Sept. 30 2009);

*Chakejian v. Equifax Information Services, LLC,* 256 F.R.D. 492, 2009 WL 764656 (E.D.Pa. 2009)

*Barel v. Bank of America,* __F.R.D.__, 2009 WL 122805 (E.D. Pa. 2009);
*Mann v. Verizon,* C.A. No. 06-5370 (E.D. Pa. Sept. 26, 2008);
*Smith v. Grayling Corp.,* 2008 WL 3861286, C.A. No. 07-1905 (E.D. Pa. 2008)
*Strausser v. ACB Receivables Management, Inc.,* 2008 WL 859224 (E.D. Pa., March 28, 2008);
*Nienaber v. Citibank (South Dakota), N.A.,* 2007 WL 2003761 (D.S.D., July 5, 2007);
*Jordan v. Commonwealth Financial Systems, Inc.,* 237 F.R.D. 132, 2006 WL 2294855 (E.D. Pa. 2006);
*Seawell v. Universal Fidelity Corp,* 235 F.R.D. 64 (E.D.Pa. 2006);
*Perry v. FleetBoston Financial Corp.,* 299 F.R.D. 105, 2005 WL 1527694 (E.D. Pa. 2005);
*Beck v. Maximus, Inc.,* 2005 WL 589749 (E.D. Pa. 2005); *vacated on other grounds, Beck v. Maximus,* 457 F. 3d 291, 2006 WL 2193603 (3d. Cir. Aug. 4, 2006)
*Stoner v. CBA Information Services,* 352 F. Supp. 2d 549 (E.D. Pa. 2005);
*Bittner v. Trans Union, LLC,* C.A. No. 04-2562 (E.D. Pa. January 4, 2005);
*Wisneski v. Nationwide Collections, Inc.,* 227 F.R.D. 259 (E.D. Pa. 2004);
*Petrolito v. Arrow Financial Services, LLC,* 221 F.R.D. 303 (D. Conn. 2004);
*Orloff v. Syndicated Office Systems, Inc.,* 2004 WL 870691 (E.D. Pa 2 004);
*Bonett v. Education Debt Services, Inc.,* 2003 WL 21658267 (E.D. Pa. 2003);
*Gaumer v. The Bon-Ton Stores,* C.A. No. 02-8611 (E.D. Pa. Dec. 30, 2003);
*Street v. Portfolio Recovery Associates,* C.A. No. 01-3684 (E.D. Pa. July 30, 2003);
*Samuel-Bassett v. Kia Motors America, Inc.,* 212 F.R.D. 271 (E.D. Pa. 2000), *vacated on other grounds;*

*Oslan v. Law Offices of Mitchell N. Kay,* 232 F. Supp. 2d 436 (E.D. Pa. 2002);

*Oslan v. Collection Bureau of Hudson Valley,* 206 F.R.D. 109 (E.D. Pa. 2002);

*Saunders v. Berks Credit & Collections,* 2002 WL 1497374 (E.D. Pa. 2002);

*Schilling v. Let's Talk Cellular and Wireless,* 2002 U.S. Dist. LEXIS 3352 (E.D. Pa. 2002);

*Fry v. Hayt, Hayt and Landau,* 198 F.R.D. 461 (E.D. Pa. 2000);

*Smith v. First Union Mortgage Corporation,* 1999 WL 509967 (E.D. Pa. 1999); and

*Miller v. Inovision,* C.P. Phila. County, December Term, 1999, No. 3504.

## Notable Cases

*Dixon-Rollins v. Trans Union, LLC,* Civil No. 09-646 (E.D. Pa., April 10, 2010) - $530,000 jury verdict against a credit reporting agency that falsely reported an old landlord collection claim for rent (*remitted* to $300,000);

*Cortez v. Trans Union, LLC,* Civil No. 05-5684 (E.D. Pa., April 26, 2007)--$800,000 jury verdict against Trans Union in fair credit reporting case (*remitted* to $150,000);

*Samuel-Bassett v. Kia Motors America, Inc.,* C.P. Phila. County, January Term, 2001, No. 2199--5.6 million dollar verdict for class of Pennsylvania car purchasers;

*Little v. Kia Motors America, Inc.,* 2003 WL 25568765 (N.J.Super.L. 2003)--6 million dollar (approximate) verdict for class of New Jersey car purchasers, damages later decertified;

*Serrano v. Sterling Testing Systems, Inc.,* ---F.Supp.2d---, 2008 WL 2223007 (E.D. Pa. May 30, 2008)—federal court finding as a matter of first impression what defines a record of arrest under the FCRA;

*Stoner v. CBA Information Services,* 352 F. Supp. 2d 549 (E.D. Pa. 2005)--obtained $772,500 settlement for class of consumers who disputed errors in their credit reports;

*Perry v. FleetBoston Financial Corp.*, 2004 WL 1508518 (E.D. Pa. 2004)--defeated motion to compel arbitration in class action brought under Fair Credit Reporting Act;

*Crane v. Trans Union, LLC*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)--federal court held that credit reporting agencies that merely parrot information from credit furnishers and fail to forward dispute documentation face claims for punitive damages under the Fair Credit Reporting Act; violation of the Fair Credit Reporting Act presents a violation of Pennsylvania's Consumer Protection Law); *Lawrence v. Trans Union, LLC*, 296 F. Supp. 2d 582 (E.D. Pa. 2003)--same;

*Wisneski v. Nationwide Collections, Inc.*, 227 F.R.D. 259 (E.D. Pa. 2004)—in fair debt class action, Pennsylvania federal court held for the first time that statutory net worth limitation is not limited to balance sheet net worth, and includes equity, capital stock and goodwill;

*Evantash v. G.E. Capital Mortgage Services, Inc.*, 2003 WL 22844198 (E.D. Pa. 2003)—in fair credit reporting case, court held that technical accuracy is not a defense;

*Sheffer v. Experian Information Solutions, Inc.*, 2003 WL 21710573 (E.D. Pa. 2003)--federal court held that Fair Credit Reporting Act permits as recoverable damage emotional distress in trying to correct errors in a consumer's credit file, even where no pecuniary or out-of-pocket losses;

*Sheffer v. Experian Information Solutions Inc.*, 249 F. Supp. 2d 560 (E.D. Pa. 2003)--federal court held that FCRA provides a private right of action against furnishers of information;

*Sullivan v. Equifax, Inc. et al.*, 2002 U.S. Dist. LEXIS 7884 (E.D. Pa. 2002)-- federal court held that reporting a debt to a credit reporting agency is a communication covered by the Fair Debt Collection Practices Act;

*Wenrich v. Cole*, 2000 U.S. Dist. LEXIS 18687 (E.D. Pa. 2000)--federal court held that FDCPA provides protection for all persons, not just consumers; and

*Jaramillo v. Experian Information Solutions, Inc.*, 155 F. Supp. 2d 356 (E.D. Pa. 2001); 2001 U.S. Dist. LEXIS 10221 (E.D. Pa. 2001)--federal court held

that single publication rule does not apply to actions brought for violation of the Fair Credit Reporting Act.

## Presentations/Lectures By Invitation

Speaker, *Fair Debt Collection Experienced Training Conference*, National Association of Consumer Advocates, New Orleans, LA, February 23-24, 2012.

Speaker, *Negotiating 101,* National Association of Consumer Advocates, Memphis, TN May 20-22, 2011

Speaker, *Fair Credit Reporting Act Conference*, National Association of Consumer Advocates, Chicago, IL May 8-10, 2009.

Speaker, *Fair Debt Collection Experienced Training Conference*, National Association of Consumer Advocates, Nashville, TN, March 27-29, 2008.

Speaker, *Litigation Trends: "Getting to Know the Other Team"*, 11th Annual DBA International World Championship of Debt Buying, Las Vegas, NV, February 5-7, 2008.

Speaker, *Protecting Vulnerable Consumers and Promoting Marketplace Justice,* Consumer Rights Litigation Conference, National Consumer Law Center, Miami, FL, November 10-13, 2006.

Speaker, *FCRA: Playing to Win,* National Association of Consumer Advocates, Las Vegas, NV, May 5-7, 2006.

Speaker, *Litigating Accuracy Issues With Furnishers of Credit Data*, National Association of Consumer Advocates, New Orleans, LA, June 2-5, 2005.

Speaker, *Understanding Credit Scoring*, Consumer Rights Litigation Conference, National Consumer Law Center, Boston, MA, November 7, 2004.

Speaker, *Litigating Accuracy Issues With Credit Reporting Agencies*, National Association of Consumer Advocates, Chicago, Ill., May 14-16, 2004.

Speaker, *FCRA/Building On Our Success*, National Association of Consumer Advocates, Orlando, FL, March 7-9, 2003.

Speaker, *Protecting Privacy, Ensuring Accuracy*, National Association of Consumer Advocates, Albuquerque, NM, June 1, 2002.

Faculty/Speaker, *Credit Reporting and Debt Collection Litigation*, Municipal Court Judicial Conference (CLE), Pennsylvania, PA, May 6, 1999.

Mr. Mailman has been consistently voted and named one of Pennsylvania's Super Lawyers by *Law and Politics* published by *Philadelphia Magazine* and *Pennsylvania Super* for the years 2004-2012. Mr. Mailman has lectured before judges, lawyers and various professional organizations on the topics of Fair Debt Collection and Fair Credit Reporting litigation. He has also appeared on various news programs to discuss consumer relevant issues.

Mr. Mailman has litigated cases on behalf of victimized consumers throughout Pennsylvania. He concentrates his practice in the areas of Fair Debt Collection, Fair Credit Reporting, Credit Repair Litigation and consumer class actions. He serves as a certified arbitration panelist with the Federal Arbitration Panel and serves on the Editorial Board of the Consumer Financial Services Law Report. Additionally, he is a member of the Pennsylvania Trial Lawyers Association, Philadelphia Trial Lawyers Association, Philadelphia Bar Association, and National Association of Consumer Advocates, and regularly serves on the Philadelphia Bar Association's Federal Courts Committee.

**DAVID A. SEARLES**, of counsel to the firm, is admitted to practice before the Supreme Court of the United States, the United States Courts of Appeals for the Third, Fourth and Sixth Circuits, and the United States District Court for the Eastern District of Pennsylvania, as well as the state courts of Pennsylvania. He is a graduate of the American University School of Law, Washington, D.C., where he served on law review. Following graduation from law school, Mr. Searles was an attorney for Community Legal Services of Philadelphia, where he specialized in consumer and bankruptcy law. In 1990, he successfully argued the first consumer reorganization bankruptcy case considered by the U.S. Supreme Court, *Pennsylvania v. Davenport*, 495 U.S. 552 (1990), and has served as lead counsel and presented argument in numerous consumer law cases before the United States Court of Appeals for the Third Circuit. From 1992 through 1997, Mr. Searles was

associated with the Philadelphia law firm of Drinker Biddle & Reath LLP, where his practice focused on Chapter 11 bankruptcy and creditors' rights. Thereafter, he was a member of Donovan Searles, LLC until 2011, specializing in consumer class action litigation.

In 2005, Mr. Searles was awarded the Equal Justice Award at the Community Legal Services Breakfast of Champions for his role in directing funding for legal assistance for low-income residents of Philadelphia.

Mr. Searles has served as the Pennsylvania contributor to SURVEY OF STATE CLASS ACTION LAW (ABA Section of Litigation – 2010), and as a contributing author of PENNSYLVANIA CONSUMER LAW (2010). He has taught advanced bankruptcy law at the Rutgers University School of Law – Camden, business law at Widener University and bankruptcy law at Pierce Junior College, Philadelphia. He is a past co-chairperson of the Education Committee of the Eastern District of Pennsylvania Bankruptcy Conference. Mr. Searles has been named a Pennsylvania Super Lawyer for many years.

Among other cases, Mr. Searles has been approved as class counsel in the following recent class actions: *Reibstein v. Rite Aid Corporation,* 2011 WL 192512 (E.D. Pa. Jan. 18, 2011); *McCall v. Drive Financial,* January Term 2006, No. 0005 (C.P. Phila. July 20, 2010); *Serrano v. Sterling Testing Systems, Inc.,* 711 F.Supp.2d 402 (E.D. Pa. 2010); *Summerfield v. Equifax Information Services, LLC,* 264 F.R.D. 133 (D.N.J. 2009); *Chakejian v. Equifax Information Services, LLC,* 256 F.R.D. 492 (E.D. Pa. 2009); *Barel v. Bank of America,* 255 F.R.D. 393 (E.D. Pa. 2009); *Markocki v. Old Republic National Title Ins. Co.,* 254 F.R.D. 242 (E.D. Pa. 2008); *Strausser v. ACB Receivables Management, Inc.,* 2008 WL 859224 (E.D. Pa. Mar. 28, 2008); *Allen v. Holiday Universal, Inc.,* 249 F.R.D. 166 (E.D. Pa. 2008); *Cohen v. Chicago Title Insurance Company,* 242 F.R.D. 295 (E.D. Pa. 2007); *Jordan v. Commonwealth Financial Systems, Inc.,* 237 F.R.D. 132 (E.D. Pa. 2006); *Braun v. Wal-Mart Stores, Inc.,* 2005 WL 3623389 (C.P. Phila. Dec. 27, 2005); *Perry v. FleetBoston Financial Corp.,* 229 F.R.D. 105 (E.D. Pa. 2005); *Beck v. Maximus, Inc.,* 2005 WL 589749 (E.D. Pa. March 11, 2005); *Stoner v. CBA Information Services,* 352 F.Supp.2d 549 (E.D. Pa. 2005); *Orloff v. Syndicated Office Systems, Inc.,* 2004 WL 870691 (E.D. Pa. April 22, 2004); *Petrolito v. Arrow Financial Services, LLC,* 221 F.R.D. 303 (D. Conn. 2004); *Piper v. Portnoff Law Associates, Ltd.,* 216 F.R.D. 325 (E.D. Pa. 2003); *Bonett v. Education Debt Services, Inc.,* 2003 WL 21658267 (E.D. Pa. 2003).

**JOHN SOUMILAS** is a consumer attorney with the law firm of Francis & Mailman, P.C. in center city Philadelphia. He concentrates his practice in the areas of consumer protection law, including fair credit reporting, fair debt collection, and consumer class actions. John litigates individual and class action cases primarily in federal court on behalf of victims of identity theft, persons defamed and otherwise harmed by credit errors, individuals harassed and deceived by debt collectors, and many others who are subjected to fraudulent or unfair trade practices. John also advocates on behalf of individuals in the areas of fair credit billing, electronic fund transfers, consumer privacy and consumer fraud.

John has been selected by Pennsylvania Super Lawyers and Philadelphia Magazine as a "Rising Star," a recognition for attorneys under age 40 received by only 2.5% of attorneys in Pennsylvania. He has been appointed by New Jersey State Bar Association to the Consumer Protection Law Committee. John is also a member of the National Association of Consumer Advocates.

*Recent Accomplishments*

John has recovered millions of dollars on behalf of victimized consumers and has forced debt collectors, banks, credit bureaus and other financial institutions to make significant pro-consumer changes to their records and practices. Among John's recent accomplishments are:

➢ $14,000,000 plus in credit monitoring, cash and other benefits for consumers in three states who were provided with misleading investigation results by Equifax following their disputes of bankruptcies, civil judgments and tax liens appearing on their credit reports;

➢ $800,000 jury verdict in a case where a consumer had an OFAC Alert wrongly placed on her Trans Union credit report, misidentifying her as a narcotics trafficker. (This is believed to be highest jury verdict in a fair credit case in the history of Pennsylvania; remitted to $150,000; $132,000 in attorney's fees and costs additionally awarded);

➢ $530,000 jury verdict against a credit reporting agency that falsely reported an old landlord collection claim for rent which had actually been paid by the consumer years earlier. (Remitted to $300,000; $110,000 in attorney's fees and costs additionally awarded);

➢ $975,000 settlement for class of consumers who had obsolete arrest records data reported about them on certain employment background reports prepared by Sterling Testing;

> $550,000 plus settlement for class of LA Fitness health club members who were not provided certain advance notice before dues and other charges were electronically debited from their checking accounts or debit cards;

> Several settlements in the range of $100,000 to $300,000 for individuals in consumer protection cases stemming from identify theft, mixed credit files, inaccurate credit reporting of bankruptcies, judgments and tax liens, and wrongful lawsuits and harassment by debt collectors.

(Results in individual cases vary and any future case may differ from any of the above matters; the figures listed above are inclusive of significant attorney's fees and costs).

## *Bar Admissions*

John is admitted to practice before the United States Court of Appeals for the Third Circuit, the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District of New Jersey, as well as the state courts of Pennsylvania and New Jersey. He has also successfully litigated cases on a *pro hac vice* basis throughout the country.

## *Lectures & Publications*

John is a regular lecturer on consumer matters, including for the Pennsylvania Bar Institute (Philadelphia and Mechanicsburg 2011), National Business Institute (Philadelphia 2009), National Consumer Law Center (Philadelphia 2009), Practicing Law Institute (San Francisco 2008), the National Association of Consumer Advocates (Denver 2007), the Philadelphia Housing Expo (2005-2009), the People's Law School (Philadelphia 2005), and the Bucks County Bar Association (Doylestown, Pennsylvania 2005). John has been interviewed and quoted concerning many legal issues affecting consumers by a wide range of media outlets, from the Wall Street Journal and Forbes Magazine to the Legal Intelligencer and Free Speech Radio. He has authored several articles, including: *Predatory Lending, the FCRA and the FDCPA* (NBI 2009); *How Can I Combat Identity Theft* (Philadelphia Magazine, Dec. 2008); and *Truth, Privacy and the Work Product Doctrine* (Temp. L. Rev. Vol. 74:1, 2000).

## *Education & Clerkship*

John is a 1994 *cum laude* graduate of Rutgers University, where he was inducted into Phi Beta Kappa. He also holds a master's degree in American

history from the State University of New York at Stony Brook. John received his law degree *cum laude* from the Temple University Beasley School of Law in 1999, where he was a member of the Jessup Moot Court and Temple Law Review. He began his legal career by clerking for Justice Russell M. Nigro of the Supreme Court of Pennsylvania.

**GEOFFREY H. BASKERVILLE** is admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District of New Jersey, as well as the Pennsylvania and New Jersey state courts. He is a 1982 graduate of Gettysburg College and a 1992 graduate of the Dickinson School of Law. During law school, Mr. Baskerville published an article entitled *Human Gene Therapy: Application, Ethics and Regulation* in the Dickinson Law Review, Vol. 96, No. 4. Since graduating from law school, Mr. Baskerville has worked for both plaintiff and defense litigation firms practicing in the areas of medical malpractice, architect's and engineer's malpractice, the Federal Employer's Liability Act, and trucking litigation. In 2007, Mr. Baskerville began to practice in the area of consumer protection litigation, including fair credit reporting and fair debt collection.

Mr. Baskerville is an active member of his community and volunteers his time by serving on his local Land Use Board and Historic Preservation Commission.

**GREGORY J. GORSKI** has spent the majority of his career as an attorney advocating for consumers, employees and the seriously injured to obtain justice through the legal system. After spending a number of years working as a research chemist in the biotech industry developing treatments for genetic diseases, Mr. Gorski chose to pursue a legal career to continue helping everyday people with their legal problems. Upon graduating from law school Mr. Gorski began his career practicing consumer fraud litigation at McCarter & English in Newark, New Jersey. Although Mr. Gorski enjoyed the challenges of defense litigation, Mr. Gorski knew his calling was to represent individuals who needed help seeking recourse for corporate wrongs. Mr. Gorski then joined the law firm of Davis, Saperstein & Salomon in Teaneck, New Jersey where his practice was focused on representing employees who were the victims of harassment and discrimination, individuals who were seriously injured and consumers who were misled by deceptive sales practices. Since returning to his hometown of Philadelphia and joining Francis & Mailman, P.C., Mr. Gorski's practice is now focused exclusive

on assisting consumers in asserting their rights under various consumer protection statutes including the Fair Credit Reporting Act and Fair Debt Collection Practices Act.

Mr. Gorski grew up locally in the Delaware Valley in Marlton, New Jersey. He graduated from Cherokee High School and stayed in the area to go college at the University of Delaware. Mr. Gorski received his undergraduate degree in Biochemistry with honors in 1997 and his law degree from Villanova University in 2003 where he also graduated with honors.

Mr. Gorski is admitted to practice law in both Pennsylvania and New Jersey. Mr. Gorski is also admitted to practice in the federal courts including the United States District Court for the Eastern District of Pennsylvania and the District of New Jersey.

**ERIN A. NOVAK** has dedicated her career to advocating for the rights of those injured by the wrongful acts of large corporations and negligent professionals. Ms. Novak joined Francis & Mailman, P.C. in 2010 and dedicates her practice to the protection of consumer's rights under the Fair Debt Collections Practices Act and the Fair Credit Reporting Act, in addition to various other consumer protection laws. Prior to joining Francis & Mailman, Ms. Novak represented the rights and needs of the seriously injured in medical malpractice and products liability cases across New Jersey and Pennsylvania.

Ms. Novak received her J.D. from Thomas M. Cooley Law School in 2005. While in law school, Erin was acknowledged as an Honors Scholar and received the Frank Turner Award for Excellence, due in no small part to her success in the Moot Court program where she was selected for two national Moot Court Competitions. Erin obtained her Bachelor of Arts degree from Michigan State University where she majored in philosophy.

Since 2006, Ms. Novak has also served as an arbitrator for the Better Business Bureau's alternative dispute resolution program, which specializes in providing access to the judicial system for consumers wronged by companies producing defective products or offering deficient services.

Erin is admitted to practice in United States District Court for the District of Eastern Pennsylvania and the United States District Court for the District of New Jersey and the state Courts of New Jersey and Pennsylvania.

## The Firm's Staff

The firm employs a highly qualified staff of paralegals, legal assistants and secretaries to advance its objectives.

# EXHIBIT B



**Fox Rothschild** LLP
ATTORNEYS AT LAW

2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Tel 215.299.2000 Fax 215.299.2150
www.foxrothschild.com

Abraham C. Reich
Direct Dial: (215) 299-2090
Email Address: areich@foxrothschild.com

March 18, 2011

James Francis, Esquire
Francis & Mailman, P.C.
Land Title Building
19th Floor
100 South Broad Street
Philadelphia, PA 19110

**RE:** **Billing Rates at Francis & Mailman, P.C.**

Dear Mr. Francis:

### I.  INTRODUCTION

You have asked for my expert opinion with regard to the proposed range of reasonable hourly billing rates for the lawyers at Francis & Mailman, P.C. ("Francis & Mailman") and, specifically, whether such rates are consistent with the Pennsylvania Rules of Professional Conduct and the Philadelphia market for legal services.

### II.  QUALIFICATIONS

I am a partner at the law firm of Fox Rothschild LLP ("Fox Rothschild"). I have been at Fox Rothschild since 1974 as a member of its Litigation Department. I am currently Co-Chair of Fox Rothschild. For five years prior to becoming Co-Chair, I was the Managing Partner of the Philadelphia office. I have been a member of the management group at the Firm since 1985. I was the founding member of Fox Rothschild's Professional Responsibility Committee (in 1988) and served as Chair of the Committee for eight years.

As part of the management of my Firm over the past twenty-five years, I have participated in the review and analysis of the hourly rates that we charge for our lawyers. This review is completed at least once a year and involves a review and analysis of the markets in which we participate to



Fox Rothschild LLP
ATTORNEYS AT LAW

ensure that we set competitive rates and that the rates we charge are consistent with the Rules of Professional Conduct (or the predecessor, Code of Professional Responsibility).

The process of setting hourly billable rates encompasses a number of steps. Initially, the Firm obtains public data of national, regional and local law firms' hourly billing rates. In addition, Firm management often speaks with consultants with expertise in this area to ensure the Firm's rates are within the range of its competitors in the market. Further, the management team, which comprises leaders from each of our offices, discuss the hourly billing rates in each of our markets (currently, we have sixteen offices in eight states and the District of Columbia). We try to establish rates that are fair and competitive.

I have had an active litigation practice for over thirty-six (36) years. The majority of my practice involves commercial litigation matters, in which I represent plaintiffs and defendants. I have also been active for many years representing lawyers and law firms in a myriad of issues involving professional responsibility and legal ethics, including the defense of legal malpractice claims. I have also been involved in dealing with fee disputes between and among lawyers and their clients. In 1998, I was selected to be a Fellow of the American College of Trial Lawyers.

In the Firm's litigation practice, we have handled matters in the area of consumer law. Our Firm has represented large financial institutions which have been sued for violations of the Fair Credit Reporting Act ("FCRA"), the Consumer Credit Protection Act ("CCPA") and the Fair Debt Collection Protections Act ("FDCPA"). We have defended some of the parties sued by clients of Francis & Mailman.

For over twenty-five years, I have been active in the area of legal ethics and the interpretation and application of the Pennsylvania Rules of Professional Conduct (and its predecessor, Code of Professional Responsibility). I have been a member of the Philadelphia Bar Association's Professional Responsibility Committee and Professional Guidance Committee. In 1983 and 1984, I served as Chair of the Professional Responsibility Committee. In 1987 and 1988, I served as Chair of the Professional Guidance Committee. I have also served as a member of a Hearing Committee for the Disciplinary Board of the Supreme Court of Pennsylvania for six years. For a portion of that time, I chaired the Hearing Committee. From approximately 1988 to 1995, I have also served as one of two appointed lawyers (non-judicial) liaisons to the Judicial Ethics Committee of the Pennsylvania Conference of State Trial Judges.

I have, for many years, served on the Legal Ethics and Professional Responsibility Committee of the Pennsylvania Bar Association. For the past five years, I have taught legal ethics and professional responsibility at the University of Pennsylvania Law School.



**Fox Rothschild** LLP
ATTORNEYS AT LAW

In 1995, I served as Chancellor of the Philadelphia Bar Association. I have been a member of the House of Delegates of the American Bar Association and the Pennsylvania Bar Association for many years. I participated in the debates surrounding the enactment of the Model Rules of Professional Conduct and many of the Amendments.

I have spoken and written on issues of trial practice and legal ethics over many years in many different forums. I have counseled hundreds of lawyers on issues of legal ethics and professional responsibility.

## III.    DOCUMENTS REVIEWED

I have reviewed the following documents as part of my analysis:

1.    Francis & Mailman Firm Biography.

2.    Francis & Mailman Client Fee Agreement.

3.    ALM Legal Intelligencer, "2010 Billing Survey Report: Billing Rates and Practices – A Study of Billing Rates and Billing Practices of Attorneys in Small and Midsize Firms."[1]

4.    *National Law Journal* Billing Survey 2010.

5.    Hildebrandt Baker Robbins, *Peer Monitor Index*, Third Quarter Executive Report, October 30, 2010.

6.    Karen Sloan, "Demand for Legal Services Declined During Third Quarter," *New York Law Journal*, November 4, 2010.

7.    *Legal Intelligencer*, Survey: "Legal Industry Settling Into New Normal According to Am Law 200 Firm Leaders, Recession's Stopgaps Becoming Way of Life," December 2, 2010.

8.    Karen Sloan, "Billing Blues," *National Law Journal*, December 6, 2010.

9.    Judge Fullam's Memorandum and Order in *Cortez v. Trans Union, LLC* dated September 13, 2007.

---

[1]    Extracted from the National Law Journal's Survey of Law Firm Economics.



Fox Rothschild LLP
ATTORNEYS AT LAW

James Francis, Esquire
March 18, 2011
Page 4

10. Judge Tucker's Order in *Mincey v. Trans Union, LLC* dated April 19, 2006.

11. September 24, 2008 hearing transcript regarding attorney's fees before Judge DuBois in *Mann v. Verizon Wireless*.

12. Judge Pratter's Memorandum and Order in *Serrano v. Sterling Testing Systems, Inc.* dated May 7, 2010.

13. Judge Savage's Memorandum and Opinion in *Dixon-Rollins v. Experian Information Solutions* dated September 23, 2010.

14. Declaration of David M. Perry, Esquire dated October 8, 2008.

15. Declaration of David A. Searles, Esquire in *Serrano v. Sterling Testing Systems, Inc.* dated December 3, 2009.

16. Certification of Michael D. Donovan, Esquire in *Little v. Kia Motors America, Inc.* dated May 24, 2010.

17. Declaration of Patrick J. Gibbons, Esquire dated April 27, 2010.

18. Declaration of Michael B. Hayes, Esquire dated October 22, 2008.

19. Updated Laffey Matrix.

20. Community Legal Services Range of Hourly Rates.

21. *"Big Law's $1,000 Plus an Hour Club"*, The Wall Street Journal, February 23, 2011.



Fox Rothschild LLP
ATTORNEYS AT LAW

## IV.   DISCUSSION

### A.   The Firm's Accomplishments

Francis & Mailman is one of the leading law firms representing clients in consumer-related litigation in both individual and class action suits. When the firm was founded in 1998, few firms were actively litigating cases under the CCPA. In addition, Francis & Mailman was one of the first firms to have a significant legal practice concentrating in federal fair credit reporting, fair debt collection and consumer class actions. Over the past twelve years, Francis & Mailman has become a well-known and highly regarded firm in the area of consumer law. The firm and its clients have been the subject of numerous published legal decisions, many of which have been groundbreaking in the area of consumer law. Further, the firm has obtained what they believe to be the two highest verdicts in an FCRA case in the Third Circuit. The firm has secured substantial and favorable verdicts and has made significant contributions to public policy. The firm set legal precedent and clarified legal issues, including:  (i) the proper standard for the investigation of a consumer dispute by credit reporting agencies and furnishers of information; (ii) the standard for proving willfulness under the FCRA; (iii) the accuracy standard for credit reports; (iv) the types of information permitted to be included in credit reports; (iv) the types of cognizable actual damages available in an FCRA action; (v) the consumer's burden of proof in an FCRA action; and, (vi) proper jury charges.

Through Francis & Mailman's jury verdicts and class settlements, the Firm has established the "market value" for class and individual cases under the FCRA and the FDCPA. I have been informed that there were no reported plaintiff FCRA verdicts prior to the Firm's victories. Moreover, Francis & Mailman has helped establish the standards for obtaining class certification in an FCRA and an FDCPA case. To date, the firm has been certified as counsel in over twenty-five cases throughout the country.

Francis & Mailman is one of the few firms which has successfully tried to verdict a consumer class action case, and in two instances, obtained a class-wide verdict. The firm served as co-counsel with two other prominent class-action firms, Feldman, Shepherd, Wohlgelernter, Tanner, Weinstock & Dodig LLP and Donovan Searles, LLC and obtained two favorable verdicts in the *KIA Motors* breach of warranty actions before the Court of Common Pleas of Philadelphia County and the Superior Court of New Jersey – Union County.



Fox Rothschild LLP
ATTORNEYS AT LAW

The attorneys at Francis & Mailman are very active and well known in the legal community. They share their expertise at local and national conferences. Attorneys at the firm have been asked to speak on FCRA and FDCPA topics at the National Association of Consumer Advocates, an association comprised of attorneys representing consumer's interests. In addition, attorneys at the firm have lectured at the Practicing Law Institute's Annual Consumer Financial Services Institute and the Debt Buyer's Association. Attorneys at the firm have been highlighted in local magazines for their accomplishments. Further, attorneys at the firm have published articles and appeared on television programs discussing developments in consumer law.

B.    Methodology for Determining Rates

There are two complimentary approaches for determining reasonable hourly rates.

The first approach is to consider the rates for comparably skilled practitioners in the relevant market. To that end, I have reviewed the hourly billing rates of lawyers who do class action work. As stated in his certification in the *KIA Motors* litigation, Michael Donovan, a principal at the law firm of Donovan Searles, LLC with twenty-eight years of experience, charged $600 per hour for his services in *Little v. Kia Motors America, Inc.* David A. Searles, a principal at the same firm, charged $650 per hour for his services in *Serrano v. Sterling Testing Systems, Inc.* While Messrs. Donovan and Searles have been practicing law for more years than the senior lawyers at Francis & Mailman, those rates do provide relevant information for lawyers in the same competitive area.

I also reviewed the 2010 National Law Journal Billing Survey where Philadelphia law firms provided billing rates. The firms were Blank Rome, Cozen O'Connor, Duane Morris, Fox Rothschild, Pepper Hamilton, Saul Ewing, Marshall, Dennehey, Warner, Coleman & Googin, and Montgomery McCracken Walker & Rhoads. The hourly billing rate range for partners with the highest billing rate was $625 to $880, while the hourly billing rate range for partners with the lowest billing rate was $145 to $440. For associates, the highest hourly billing rate range was $320 to $585, while the lowest hourly billing rate was $130 to $250.

In addition, the hourly rates of lawyers listed in the Updated Laffey Matrix was a source I consulted.[2] For the period of June 2010 to May 2011, the hourly billing rates identified were: (i) $709 for an attorney with twenty or more years of experience; (ii) $589 for an attorney with

---

[2]    The Laffey Matrix is reflective of market rates in the Baltimore/Washington area. See www.laffeymatrix.com. In my experience, the rates in the Baltimore/Washington area are comparable to the Philadelphia Market.



Fox Rothschild LLP
ATTORNEYS AT LAW

eleven to nineteen years of experience; (iii) $522 for an attorney with eight to ten years of experience; (iv) $361 for an attorney with four to seven years of experience; (v) $294 for an attorney with one to three years of experience; and (vi) $161 for a paralegal or law clerk.

In 2007 and 2010, Judges Fullam and Savage of the United States District Court for the Eastern District of Pennsylvania referenced the Community Legal Services of Philadelphia ("CLS") Range of Hourly Rates Schedule in the *Dixon-Rollins v. Experian Information Solutions* and *Cortez v. Trans Union, LLC* decisions.[3] The range of hourly billing rates were stated as follows: (i) $325-$410 for an attorney with more than twenty-five years of experience; (ii) $290-$330 for an attorney with twenty-one to twenty-five years of experience; (iii) $275-$315 for an attorney with sixteen to twenty years of experience; (iv) $240-$300 for an attorney with eleven to fifteen years of experience; (v) $200-$230 for an attorney with six to ten years of experience; (vi) $160-$200 for an attorney with two to five years of experience; and (vii) $150-$170 for recent law school graduates with less than two years of experience.

A **second approach** to determine a reasonable hourly rate would look at the relevant factors set forth in Rule 1.5(a) of the Rules of Professional Conduct.

While the Pennsylvania Rules of Professional Conduct do not specifically address the reasonableness of a specific hourly rate, they do address the considerations for assessing "the propriety of a fee" in Rule 1.5. In my opinion, some of those considerations can provide a useful analytical checklist when trying to determine a reasonable hourly rate.

The factors set forth in Rule 1.5(a) are:

1. Whether the fee is contingent or fixed;

2. The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly;

3. The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

4. The fee customarily charged in the locality for similar legal services;

5. The amount involved and results obtained;

---

[3] Although the schedule provides legal market rates in the Philadelphia area, it is not dispositive, in my view, because of the non-profit/pro bono nature of CLS, compared to the economic issues, which face a private firm.



Fox Rothschild LLP
ATTORNEYS AT LAW

James Francis, Esquire
March 18, 2011
Page 8

      6.     The time limitations imposed by the client or by the circumstances;

      7.     The nature and length of professional relationship with the client; and

      8.     The experience, reputation and ability of the lawyer or lawyers performing those services.

Factor Number 4 ("The fee customarily charged in the locality for similar legal services") has already been addressed. This is a comparative review of rates charged by other lawyers in the market.

Factor Number 1 ["whether the fee is contingent on fixed"] suggests that higher rates may be justified when fees are contingent. The Francis & Mailman firm handles most of its cases on a contingent fee basis. As a result, the firm bears all the risk of the cost of litigation until resolution. In some instances, the firm may not receive payment of its fees for several years. Further, most of the defendants are large companies with substantial financial resources and lawyers equipped to defend the actions. Many of the lawsuits address novel areas of law. In order to obtain favorable outcomes, the attorneys at Francis & Mailman spend numerous hours conducting research, conducting discovery, and crafting innovative legal arguments to overcome attempts to have their clients' cases dismissed before trial. The firm's investment of time and resources prevent it from litigating numerous matters at the same time.

Factor Number 2 ["The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal services properly"], also supports the notion that a higher rate would be justified for lawyers at Francis & Mailman, who have distinguished themselves in their area of expertise. Finally, Factor Number 8 ["The expertise, reputation and ability of the lawyer or lawyers performing those services"], likewise provides another reason to justify increasing rates recommended for the lawyers at Francis & Mailman.

The table below displays Francis & Mailman's hourly billing rates used for the past four years through the present and dates of admission to the Bar.



Fox Rothschild LLP
ATTORNEYS AT LAW

| Attorney/Paralegal | Hourly Billing Rate | Date of Admission |
|---|---|---|
| James A. Francis | $390 | 1996 |
| Mark D. Mailman | $390 | 1996 |
| Geoffrey H. Baskerville | $315 | 1992 |
| John Soumilas | $315 | 1999 |
| Gregory J. Gorski | $295 | 2003 |
| Erin A. Novak | $275 | 2005 |
| Danielle Spang | $145 | |
| Experienced paralegal | $145 | |
| Inexperience paralegal | $130 | |

In consideration of the attorneys' years of experience, successful verdicts and recognition in the legal community, the level of current hourly billing rates is, in my opinion, below the market. An increase in the firm's hourly billing rates is justified. The firm has not raised its hourly billing rates in the last four years. Applying an average yearly increase of between 4% - 9% over this period justifies a significant increase for Francis & Mailman.

## V.    CONCLUSION

In accordance with the foregoing analysis, and based upon my review of the prevailing market hourly billing rates, it is my opinion, within a reasonable degree of professional certainty, that the following range of hourly billing rates at Francis & Mailman are consistent with the hourly billing rates charged in the Philadelphia market and within the considerations outlined in the Rules of Professional Conduct. The level of hourly billing rates within the range will depend on the complexity of the matter, the duration of the dispute and the result obtained.

| Attorney/Paralegal | Range of hourly billing rates |
|---|---|
| James Francis | $450-$525 |
| Mark D. Mailman | $450-$525 |
| Geoffrey H. Baskerville | $395-$425 |
| John Soumilas | $395-$425 |
| Gregory J. Gorski | $300-$350 |
| Erin A. Novak | $290-$325 |
| Danielle Spang | $150-$175 |
| Experienced paralegal | $150 |
| Inexperience paralegal | $125 |



Fox Rothschild LLP
ATTORNEYS AT LAW

James Francis, Esquire
March 18, 2011
Page 10

If I am provided with additional information, I reserve the right to supplement or amend my opinion.

Very truly yours,

Abraham C. Reich

ACR:cah