# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**GREGORY THOMAS BERRY, *et al,***

**Plaintiffs**

**v.**

**CASE NO. 3:11CV754**
**(Judge James R. Spencer)**

**LEXISNEXIS RISK & INFORMATION ANALYTICS GROUP, INC., *et al***

**Defendants**

**DECLARATION OF LEONARD A. BENNETT IN SUPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS**

I, Leonard A. Bennett, hereby declare the following:

1. My name is Leonard A. Bennett. I am over 21 years of age, of sound mind, capable of executing this Declaration, and have personal knowledge of the facts stated herein, and they are all true and correct.

2. I am one of the attorneys working on behalf of the Plaintiffs and the putative Class in the above-styled litigation, and I am an attorney and principal of the law firm of Consumer Litigation Associates, P.C., a seven-attorney law firm with offices in Hampton Roads and Alexandria, Virginia. My primary office is at 763 J. Clyde Morris Boulevard, Suite 1-A, Newport News, Virginia 23601. I submit this Declaration in support of Plaintiff's Motion for Class Certification.

3. I have worked hard to attain a strong reputation for integrity and excellence while also pursuing other difficult cases that have produced excellent results for numerous individuals and class members.

4. I have been invited to and did testify before the United States House Financial

Services Committee on multiple occasions. I have also been invited to and did serve on a Federal Trade Commission Round Table and Governor Kaine's Virginia *Protecting Consumer Privacy* Working Group all within the consumer law field. I am on the Board of Directors of the National Association of Consumer Advocates, on the Partners Council of the National Consumer Law Center, and am a member of the Public Justice Foundation. I have been named as a multi-year Super Lawyer and a 2009 Virginia Leader in the Law.

5. Since 1994, I have been and presently am a member in good standing of the Bar of the highest court of the Commonwealth of Virginia, where I regularly practice law. Additionally, since 1995, I have been and presently am a member in good standing of the Bar of the highest court of the State of North Carolina. I have also been admitted to practice before and am presently admitted to numerous other high courts.[1]

6. I have also been admitted *pro hac vice* in United States District Courts across the country including Alabama, California, Louisiana, Florida, Rhode Island, Hawaii, New Hampshire, Connecticut, Ohio, South Carolina, Pennsylvania, Arizona, Massachusetts, Tennessee, Georgia, Wyoming, Texas, Washington and Maryland. I have never been denied admission *pro hac vice.*

7. Since 1996, my practice has been limited to consumer protection litigation. While my experience representing consumers has come within several areas, my most developed area of expertise is in plaintiffs litigation under the Federal Consumer Credit Protection Act, 15 U.S.C.§1601, *et seq.*, and in particular the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.*, the

---

[1] United States Supreme Court; United States Court of Appeals for the Fourth Circuit, Third Circuit, Ninth Circuit, Sixth Circuit, and Eleventh Circuit; United States District Court for the Eastern District of Virginia, Western District of Virginia, Eastern District of North Carolina, Middle District of North Carolina, Western District of North Carolina, District of Wisconsin, Eastern District of Michigan, Northern District of Illinois, Northern District of Ohio, and Western District of Tennessee.

Equal Credit Opportunity Act, 15 U.S.C. §1691, *et seq.*, and the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.*

8. Since 2001, I have been asked to and did speak at numerous seminars and events in the area of Consumer Credit Protection litigation.[2]

---

[2] Virginia Trial Lawyers Association, *Advocacy Seminar* – October, 2011; National Association of Consumer Advocates, *Fair Credit Reporting Act National Conference* – Memphis, TN, May 2011 and Washington, D.C., November 2013; Stafford Publications CLE, National Webinar, April 2011 – *"FCRA and FACTA Class Actions: Leveraging New Developments in Certification, Damages and Preemption.";* National Consumer Law Center, National Consumer Rights Conference, Boston, Speaker for Multiple Sessions, November, 2010; Virginia State Bar, Telephone and Webinar Course, Virginia, 2009; *"What's Going On Here? Surging Consumer Litigation – Including Class Actions – in State and Federal Court."*; National Association of Consumer Advocates, *Fair Credit Reporting Act National Conference*, Chicago, IL, May 2009; National Consumer Law Center, National Consumer Rights Conference, Philadelphia, Speaker for Multiple Sessions, November 2009; National Consumer Law Center, National Consumer Rights Conference, Portland, OR, Speaker for Multiple Sessions, November 2008; Washington State Bar, Consumer Law CLE, Speaker, September 2008; Washington State Bar, Consumer Law CLE, Speaker, July 2007; House Financial Services Committee, June 2007; National Consumer Law Center, National Consumer Rights Conference, Washington, D.C., Speaker for Multiple Sessions, November 2007; National Association of Consumer Advocates, *Fair Credit Reporting Act National Conference*; Denver, Colorado, May 2007, *Multiple Panels*; U.S. Army JAG School, Charlottesville, Virginia, Consumer Law Course Instructor, May 2007; Georgia State Bar, Consumer Law CLE, Speaker, March 2007; Contributing Author, *Fair Credit Reporting Act, Sixth Edition*, National Consumer Law Center, 2006; National Consumer Law Center, National Consumer Rights Conference, Miami, FL, Speaker for Multiple Sessions, November 2006; Texas State Bar, Consumer Law CLE, Speaker, October 2006 F*ederal Claims in Auto fraud Litigation;* Santa Clara University Law School, Course, March 2006; *Fair Credit Reporting Act*; Widener University Law School, Course, March 2006 *Fair Credit Reporting Act*; United States Navy, Navy Legal Services, Norfolk, Virginia, April 2006 *Auto Fraud*; Missouri State Bar CLE, Oklahoma City, Oklahoma,; *Identity Theft*; National Consumer Law Center, National Consumer Rights Conference, Boston, Mass, *Multiple panels*; National Association of Consumer Advocates, *Fair Credit Reporting Act National Conference*, New Orleans, Louisiana (May 2005), *Multiple Panels*; United States Navy, Naval Justice School (JAG Training), Newport, Rhode Island, *Consumer Law;* American Bar Association, Telephone Seminar; *Changing Faces of Consumer Law,* National Consumer Law Center, National Consumer Rights Conference, Boston, Mass; F*air Credit Reporting Act Experts Panel*; and *ABCs of the Fair Credit Reporting Act*; National Association of Consumer Advocates, *Fair Credit Reporting Act National Conference*, Chicago, Illinois; *Multiple Panels* ; Oklahoma State Bar CLE, Oklahoma City, Oklahoma, *Identity Theft*; Virginia State Bar, Telephone Seminar, *Identity Theft*; United States Navy, Naval Justice School (JAG Training), Newport, Rhode Island, *Consumer Law* ; United States Navy, Navy Legal Services, Norfolk, Virginia, *Auto Fraud*; Virginia State Bar, Richmond and Fairfax, Virginia, *Consumer Protection Law*; Michigan State Bar, Consuer Law Section, Ann Arbor, Michigan; *Keynote Speaker.*

9. I have substantial experience in complex litigation, including class action cases, prosecuted under the Consumer Credit Protection Statutes, including the Fair Credit Reporting Act, the Equal Credit Opportunity Act, and the Fair Debt Collection Practices Act.

*10.* I have litigated dozens of class action cases based on consumer protection claims. in the past decade. In each of the class cases where I have represented Plaintiffs in a consumer credit case, the Court found me to be adequate class counsel. In each of these, I served in a lead or executive committee counsel role. Just a few of the larger of these cases include (1) *Pitt v. K-Mart Corp, 3:11CV697;* (2) *Ryals v. HireRight Solutions, Inc., et al, 3:09cv625;* (3) *White v. Experian, 8:05-cv-01070;* (4) *Teagle v. LexisNexis Screening Solutions, Inc.* (formerly "Choicepoint"); (5) *Williams v. LexisNexis Risk Management, 3;06cv241;* (6) *Beverly v. Wal-Mart Stores, Inc., 3:07cv469.* I am also one of the lead counsel in the present case, *Berry v. LexisNexis Risk & Information Analytical Group.*

11. Additionally, with respect to the Fair Credit Reporting Act specifically, I have litigated the following class cases to a successful conclusion: *Black v. Winn–Dixie Stores, Inc.*, No. 3:09cv502 (M.D. Fla.); *Cappetta v. GC Servs. LP*, No. 3:08cv288-JRS (E.D. Va.); *Henderson v. Verifications Inc.*, No. 3:11cv514 (E.D. Va.); *Harris v. U.S. Physical Therapy, Inc.*, No. 2:10cv1508 (D. NV.); Domonoske v. Bank of America, N.A., No. 5:08cv66 (W.D. Va.); Conley, et al. v. First Tennessee Bank, N.A., No. 1:10cv1247 (E.D. Va. Aug. 18, 2011); Makson v. Portfolio Recovery Assoc., Inc., No. 3:07cv982-HEH (E.D. Va.); *Reed v. Icon Fitness, Inc., et al.*, No. 3:08cv547 (E.D. Va.); *Gladden v. Navy Federal Credit Union*, No. 3:08cv304 (E.D.Va.); *Smith v. Talecris Biotherapeutics, Inc.*, No. 1:09cv153 (M.D.N.C. July 7, 2010); *Daily v. NCO Financial*, No. 3:09cv31-JAG (E.D. Va.); *Jose Hernandez v. Equifax Information Services, LLC, et al.*, No. 2:06cv3924 (C.D. Cal.) consolidated with *White, et al. v. Experian Information*

*Solutions, Inc., et al.*, No. 8:05cv1070 (C.D. Cal.); *Conley v. First Tennessee Bank, N.A.*, No. 1:10cv1247 (E.D. Va.); *Lengrand v. Wellpoint*, No. 3:11cv333 (E.D. Va.); *Linares v. First Equity Card Corp.*, No. 3:05cv103 (E.D. Va.); *Martin v. United Auto Credit, et al.*, No. 3:05cv143 (E.D. Va.); *Silva v. Haynes Furniture*, No. 4:04cv82 (E.D. Va.); *Wilder v. Triad Financial Corp.*, No 3:03cv863 (E.D. Va.); *Mayfield v. Memberstrust Credit Union*, No. 3:07cv506 (E.D. Va.).

12. I am also involved in the following cases filed as a class action that are currently pending and either awaiting class certification or are awaiting final approval of the class settlement: *Soutter v. Equifax Information Services, LLC*, No. 3:10cv107 (still in litigation); *Henderson, et al. v. Backgroundchecks.com*, No. 3:13cv29 (E.D. Va.) (still in litigation); *Bell v. U.S. Express, Inc.*, No. 1:11cv181 (E.D. Tenn.) (awaiting settlement approval); *Henderson v. Corelogic, Inc. et al.*, No. 3:12cv97 (E.D. Va.) (still in litigation); *Thomas et al v. Wittstadt Title & Escrow Company, LLC*, No. 3:12cv450 (E.D. Va.) (class preliminarily approved and awaiting final approval; *Goodrow, et al. v. Friedman & MacFadyen, P.A., et al.*, No. 3:11cv20 (E.D. Va.) (awaiting settlement approval).

13. My law partner, Matthew J. Erausquin, is also working on behalf of the Class in the above-styled litigation. Mr. Erausquin is a trial attorney with more than 10 years of experience. He has served in a critical role leading the discovery teams in many of the national class actions in which I have litigated. He is licensed to practice law in Virginia and California and is admitted to practice in multiple federal district courts.

14. In addition to my leadership roles in various class actions, I was the primary author of the comprehensive treatise "*Fair Credit Reporting*" published by National Consumer Law Center and used by judges and advocates nationally.

15. The other counsel representing the Plaintiffs are also highly experienced in class

action litigation, particularly in matters involving claims under the FCRA. [3]

16. The process that led to the Settlement was at all times adversarial and contentious, and the parties' settlement discussions have been supervised by several mediators, including Judge Lauck.

17. Over the course of the litigation of these three cases, the Parties have met face-to-face for mediation conferences at least nine times in Richmond, Newport News, New York, Philadelphia, Houston, Oakland, and Fort Lauderdale. The first face-to-face settlement negotiation took place in 2009 in Newport News in connection with another action, *Graham v. LexisNexis Risk & Information Analytics Group, Inc.* The Parties met again in Philadelphia and New York, solely for purposes of discussing an injunctive relief settlement. No monetary relief at all was discussed at these meetings, with Plaintiffs' Counsel instead providing a detailed analysis of the changes in LexisNexis's business practices that they believed were necessary to settle these claims.

18. These discussions, which concluded without a resolution, laid the foundation for the successful prosecution of the Plaintiffs' claims in this action, which was filed in November 2011. Briefing and arguments regarding LexisNexis' Rule 12(c) motion in *Adams* also substantially informed the parties' positions in *Berry*. The Court's resultant decision denying the Defendant's motion also provided guidance to the parties along the way. The Parties conducted settlement talks in the *Berry* case in 2012, with an initial phone conference with Judge Lauck and another face-to-face meeting, this time in Houston, to discuss settlement. The Parties then agreed to mediate the case with the assistance of Randall Wulff, chosen because of his experience mediating complex cases, and especially because of his FCRA expertise. (For

---

[3] Plaintiffs' other counsel, Caddell & Chapman, Francis & Mailman, and Dale Pittman have also submitted their separate declarations setting forth their extensive experience and success in class actions and complex litigation under the FCRA.

example, Mr. Wulff was chosen to mediate the hundreds of 9/11 claims in New York City, and did so over a multi-year period. His skill as a mediator is unparalleled). After substantive presentations of both sides' positions regarding the practice changes sought by the Plaintiffs, no settlement was reached initially. The Parties did agree, however, to reserve three additional mediation dates with Mr. Wulff and to retain Judge Dohnal to further assist with the mediation process.

19. Through additional telephone conversations, the Parties began to craft the parameters of an injunctive relief settlement. LexisNexis presented a proposed restructuring of the "Accurint for Collections" product, which would prospectively change the way LexisNexis does business with debt collectors, providing to consumers certain rights and information similar to those that the FCRA mandates with regard to communications meeting its definition of "consumer reports." Beginning with these proposed business changes, the Parties again mediated with Mr. Wulff in Oakland, California on July 30, and August 21–22. This final session again consisted of substantive presentations and exchange of documents setting forth the Parties' litigation positions and ended with the Parties' agreement to the general outline of the Settlement presented here.

20. Even once the broad outlines of the injunctive relief had been agreed, Plaintiffs' Counsel continued to offer suggested improvements to LexisNexis' proposed business changes. On September 18, 2012, the Parties met face-to-face in Houston and on October 5, 2012, they again met in Fort Lauderdale to further refine the proposed settlement and discuss the changes necessary for appropriate implementation of the injunctive relief. The Fort Lauderdale meeting including a presentation of the actual Internet portal that LexisNexis' customers would use with the Contact & Locate and Collections Decisioning products, as well as proposed outputs that users would receive for each product.

21. While the mediations were ongoing, the Parties continued to conduct discovery

and litigate the case, aggressively pursuing a dual-track approach until the final mediation sessions with Mr. Wulff approached final resolution. Plaintiffs' Counsel needed to remain involved in the process to ensure that the final products created by LexisNexis adequately protected consumers and met the Settlement's agreed-upon parameters.

22. Throughout the course of these discussions, meetings, and litigation, Judge Lauck directly supervised the settlement process by conducting multiple telephonic conferences to monitor the status of the negotiations. With a settlement proposal in place, the Parties reported in detail to Judge Lauck, who then set up a process for the presentation and vetting of the settlement. In January 2013, the Parties attended a settlement conference with Judge Lauck, where they provided Judge Lauck with a substantial record of the litigation, the claims, and the settlement process up to that point. At the 3.5 hour conference, each side gave a substantive presentation on the proposed Settlement, and Judge Lauck asked pointed questions regarding the details of the Settlement.

23. While Plaintiffs believe strongly in their case, they also appreciate the litigation risk presented by LexisNexis's defenses. Defendants were prepared to contest, among other things, class certification, FCRA coverage for Accurint reports, and willfulness. Regarding class certification, given the outcomes in *Adams* and *Graham*, Plaintiffs were always mindful that this case could end up without class wide relief.

24. Defendants' positions, particularly with regard to willfulness, were always front-and-center during the Parties' mediation sessions. LexisNexis openly shared draft motions and mediation statements setting out its arguments, permitting Plaintiffs an unfiltered view of what they would face should settlement negotiations falter.

25. While Plaintiffs believe that LexisNexis's interpretation of the FCRA is objectively unreasonable and that LexisNexis knew or should have known that its Accurint reports fell

within the FCRA, LexisNexis had substantial counterarguments to willfulness, and Plaintiffs could not be certain of the outcome of a summary judgment motion on the issue of willfulness.

26. As part of the negotiation process, Defendants also shared with Plaintiffs a motion to dismiss for lack of subject-matter jurisdiction that they intended to file should settlement discussions break down. Plaintiffs were also aware of this Court's decision in the *Fiscella v. Intelius* matter in which the Court found that a generalized name and address only report similar to several products offered by LexisNexis did not constitute a "consumer report" regarding the named Plaintiff, as contemplated by the FCRA.

27. Considering the strengths and weaknesses of Plaintiffs' claims and the substantive defenses, Plaintiffs concluded that settlement was appropriate to secure substantial relief for the Class while avoiding the risk of a defense victory. As shown by their persistence in filing three cases litigating the FCRA's application to Accurint over a multi-year period, Plaintiffs' Counsel was persistent in staying the course and achieving the best possible result for the class including, if necessary, a trial on the merits. But Plaintiff's Counsel also appreciates the risk, cost and delay associated with continued litigation and the advantages of immediate relief.

28. From the outset, Counsel's work in this litigation was primarily focused on securing injunctive relief. When the parties met in Philadelphia and New York to discuss a possible settlement shortly before the Berry case was filed, no monetary relief was discussed at all. Instead, the parties solely discussed injunctive relief. Similarly, once Berry was filed, injunctive relief remained the focus of the litigation. While, given that the case was litigated as a unified whole, it would not have been practical to keep separate time records for time spent on monetary vs. injunctive relief, I estimate that approximately four-fifths of our efforts were devoted to pursuing injunctive relief and one fifth to pursing damages. As the injunctive relief involved the restructuring of LexisNexis's core business practices, it was significantly more complicated to design and negotiate.

29. For the Rule 23(b)(3) Settlement Class, with this amount for fees and expenses taken from the fund, each of the approximately 31,000 Class Members is likely to receive around $300.

30. The Mail Notice informed Class Members of the estimated $300 recovery, and the feedback from the class in the form of lack of opt-outs and objections speaks volumes. This is not a "coupon" settlement or one that provides a free month of subscription to a service. These class members are receiving an amount that is towards the middle of the $100 to $1,000 range that Congress contemplated, without needing to prove their damages or standing.

31. Further, injunctive relief as a form of recovery in class action settlements brought pursuant to the Fair Credit Reporting Act is not a new concept. Consumer Litigation Associates, P.C. has been involved in numerous past class cases in which injunctive relief was a condition of settlement. As examples of the same, in *Black v. Winn–Dixie Stores, Inc.*, No. 3:09cv502 (M.D. Fla.) the court approved an injunctive relief class that provided for no monetary damages but required Winn-Dixie to implement new procedures and systems to comply with the disclosures required by 15 U.S.C. §1681b(b)(2)(A).

32. Additionally, I was also counsel for *Jose Hernandez v. Equifax Information Services, LLC, et al.*, No. 2:06cv3924 (C.D. Cal.), which was consolidated with *White, et al. v. Experian Information Solutions, Inc., et al.*, No. 8:05cv1070 (C.D. Cal.). The Court approved injunctive relief in which the 3 large national credit reporting agencies were required to spend literally millions of dollars to institute new credit reporting procedures relating to the reporting of debts included in bankruptcies following their discharge. Indeed, even the objectors in the *White* matter have not challenged this aspect of the settlement which remains approved and intact.

33. In the *Ryals* class action filed in this Court and approved by Judge Gibney, HireRight agreed to implement specific changes and continue to implement improvements to its products and practices in order to comply with the Fair Credit Reporting Act. The Court

approved this injunctive relief as part of the final settlement.

34. The *Conley* class action settlement filed in this Court and approved by Judge Ellis required First Tennessee Bank, N.A. to reexamine all class members' credit inquiries to provide further information and explanation for the credit inquiry.

35. Consumer Litigation Associates, P.C. compiled a total amount of time expended in this matter. Our total lodestar for all work performed as of November 22, 2013 is described below. This chart summarizes the number of hours spent on tasks in this case and the hourly rate billed by each timekeeper of Consumer Litigation Associates, P.C. Based on this summary, the total lodestar as of the date of this Declaration is $746,981.25. Based on my past experience, our firm will spend a significant additional amount of time in administering the settlement, responding to class member inquiries, and assisting the settlement administrator with disbursement issues. In the past, we have found that this additional time usually ends up comprising about 10% of the total lodestar in the case.

36. Consumer Litigation Associates, P.C. also tracked expenses incurred in this litigation. We directly paid expenses for filings, depositions, printing and copying, travel, meals, postage and shipping, computerized research, long-distance telephone charges, expert witness fees, mediation fees, and other expenses reasonably incurred in litigating this action on behalf of the Class. These expenses were tracked on a contemporaneous basis, as is our normal practice, and none have been reimbursed. Based on these records, Consumer Litigation Associates, P.C. has incurred reasonable expenses of litigation totaling $ 37,000.00, which have not otherwise been reimbursed.

37. Our total lodestar as of the date of this Declaration is as follows:

| Individual | Title | Years Experience | Hourly Rate | Total Hours | Total Lodestar |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| Leonard A. Bennett | Partner | 19 | $575 | 533.65 | $306,848.75 |
| Matthew J. Erausquin | Partner | 11 | $450 | 489.30 | $220,185.00 |
| Susan M. Rotkis | Associate | 17 | $425 | 373.75 | $158,843.75 |
| Janelle Mason Mikac | Associate | 2 | $325 | 27.15 | $8,823.75 |
| Casey Nash | Associate | 1 | $325 | 22.40 | $7,280.00 |
| Donna Winters | Paralegal | 34 | $200 | 105.60 | $21,120.00 |
| Vicki Ward | Paralegal | 27 | $200 | 119.40 | $23,880.00 |

38. Consumer Litigation Associates, P.C.'s current class action rates, which were used for purposes of calculating the lodestar here, are based on prevailing fees for national class-action work.

39. The time spent on this matter kept Consumer Litigation Associates, P.C. from taking on other work. Counsel accepted this case on a contingent fee basis, taking on all the risk that Plaintiffs would lose a vital motion or issue and end up with nothing.

40. Based upon my experience with other class action matters and given my Firm's lead role in this litigation, I believe that the time expended by Consumer Litigation Associates, P.C. in connection with this litigation, when compared to the result achieved for the Class, is reasonable in amount and was necessary to ensure the successful relief obtained on behalf of the Class.

41. To evidence their support for the Settlement, Plaintiffs have herewith filed declarations attesting to the same. Specifically, this Court now has before it the Declarations of Class Representatives Berry, Millen, Hernandez, Godfrey, Saeed and Otten. Plaintiffs have diligently attempted to contact all Class Representatives for purposes of obtaining a Declaration, but have not been able to reach Plaintiff Darbonne who has moved out of state. Since the prevailing law is that unanimous support of Class Representatives is not required to garner

approval, the absence of Darbonne is no bar to final approval. Darbonne does not oppose the Settlement, she is simply unavailable despite Counsel's efforts to contact her.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct.

DATED: November 22, 2013.

Leonard A. Bennett