**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| **GREGORY THOMAS BERRY,** *et al.*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Case No. 3:11CV754** |
| | § | |
| **LEXISNEXIS RISK & INFORMATION** | § | |
| **ANALYTICS GROUP, INC.,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | **(Judge James R. Spencer)** |

**PLAINTIFFS' RESPONSES TO**
**<u>OBJECTIONS TO CLASS ACTION SETTLEMENT</u>**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION AND BACKGROUND ..................................................................... 1

II.    THE COURT SHOULD OVERRULE THE OBJECTIONS TO THE
SETTLEMENT ................................................................................................................ 2

    A.    The Aaron and Schulman Objectors Ignore the Indivisible Nature of the
Relief Provided to the Homogenous Rule 23(b)(2) Settlement Class ................. 2

        1.    The Rule 23(b)(2) Settlement Class Does Not Involve Monetary
Damages .................................................................................................. 6

        2.    The Rule 23(b)(2) Settlement Class Is Properly a Non-Opt-Out
Class ...................................................................................................... 10

        3.    This Court Has Authority to Order the Relief that the Parties
Actually Agreed to in the Proposed Settlement. .................................. 12

    B.    A Class Action Waiver May Be An Aspect of Negotiated Relief in the
Rule (b)(2) Context .......................................................................................... 18

    C.    The Published Notice Plan Easily Satisfies Due Process for the Rule
23(b)(2) Settlement Class ................................................................................. 21

    D.    The Named Plaintiffs and Class Counsel Have Adequately Represented
the Rights of Absent Class Members ................................................................ 26

        1.    Since all Class Members benefit from the injunctive relief, the fact
that some claims may ripen in the future is not a bar to certification ...... 27

        2.    There is no need for subclasses pre- and post-*Adams* ............................ 32

        3.    The Service Awards Do Not Render the Named Plaintiffs
Inadequate Representatives of the Classes. .......................................... 33

        4.    Adequacy is met even though the Named Plaintiffs are also
members of the Rule 23(b)(3) Class ..................................................... 36

        5.    The So-Called "Expansion" of the Class Does Not Stand in the
Way of Final Approval ......................................................................... 38

    E.    Class Counsel Is More Than Adequate, And Objectors Have Not Shown
Otherwise ......................................................................................................... 42

        1.    Aaron's subjective evaluation of the Settlement is insufficient to
even raise the issue of inadequacy ........................................................ 42

        2.    Comments regarding issues in other cases are nothing more than a
smear campaign by objectors who have shown themselves to be of
questionable motive .............................................................................. 45

        3.    The approval of attorneys' fees is no indication of inadequacy. ............. 46

        4.    The fact that Class Counsel opposed other settlements has no
bearing on their adequacy here. ............................................................ 48

## TABLE OF CONTENTS

**Page**

F.      The Other Objections Similarly Should Be Overruled ........................................ 50

III.    CONCLUSION .................................................................................................................52

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acosta v. Trans Union, LLC,*
  243 F.R.D. 377 (C.D. Cal. 2007) ...............................................................47, 48, 49

*Adams, et al. v. LexisNexis Risk & Information Analytics Group, Inc., et al.,*
  No. 1:08-cv-04708-RMB-KMW (D.N.J. 2008) ............................................4, 5, 32

*Adkins v. Labor Ready, Inc.,*
  303 F.3d 496 (4th Cir. 2002) .................................................................................18

*Allison v. Citgo Petrol. Corp.,*
  151 F.3d 402 (5th Cir. 1998) ........................................................................4, 8, 9

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997).......................................................................12, 28, 29, 32

*American Express Co. v. Italian Colors Restaurant,*
  133 S. Ct. 2304 (2013)...............................................................................18, 20

*Angela R. v. Clinton,*
  999 F.2d 320 (8th Cir. 1993) .........................................................................14, 15

*Arnold v. United Artists Theatre Circuit, Inc.,*
  158 F.R.D. 439 (N.D. Cal. 1994)..............................................................................9

*Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.,*
  211 F.R.D. 457 (S.D. Fla. 2002)........................................................................9, 12

*AT&T Mobility v. Concepcion,*
  131 S. Ct. 1740 (2011).................................................................................18, 20

*Black v. Rhone-Poulenc, Inc.,*
  173 F.R.D. 156 (S.D.W. Va. 1996).........................................................................42

*Blessing v. Sirius XM Radio Inc.,*
  507 F. App'x 1 (2d Cir. 2012) ...............................................................................46

*Bristol Vill., Inc. v. Louisiana-Pacific Corp.,*
  916 F. Supp. 2d 357 (W.D.N.Y. 2013)....................................................................37

*Brooklyn Savs. Bank v. O'Neil,*
  324 U.S. 697 (1945)..................................................................................................6

iii

*Brown v. Ticor Title Ins. Co.*,
   982 F.2d 386 (9th Cir. 1992), *cert. dismissed as improvidently granted*, 511 U.S. 117
   (1994) ...................................................................................................................11

*Cappetta v. GC Servs. LP*,
   No. 3:08cv288-JRS (E.D. Va. April 27, 2011) .......................................................33

*Clayton v. Knight Transp.*,
   No. 1:11-cv-00735-SAB, 2013 U.S. Dist. LEXIS 156647 (E.D. Cal. Oct. 30, 2013) ...........44

*Colo. Cross-Disability Coal. v. Taco Bell Corp.*,
   184 F.R.D. 354 (D. Colo. 1999) ...........................................................................9

*Comm'r of Internal Revenue v. Miller*,
   914 F.2d 586 (4th Cir. 1990) ................................................................................6

*Conley v. First Tenn. Bank*,
   No. 1:10CV1247-TSE (E.D. Va. Aug. 18, 2011) ..................................................33

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) .............................................................................34

*Crawford v. Honig*,
   37 F.3d 485 (9th Cir. 1994) ...........................................................19, 22, 26, 27

*Curiale v. Lenox Grp., Inc.*,
   No. 07-1432, 2008 U.S. Dist. LEXIS 92851 (E.D. Pa. Nov. 14, 2008) ...........................15, 16

*D.D. ex rel. V.D. v. New York City Bd. of Educ.*,
   No. CV–03–2489 (DGT), 2004 U.S. Dist. LEXIS 5189 (E.D.N.Y. Mar. 30, 2004),
   *vacated in part on other grounds*, 465 F.3d 503 (2006).........................................29

*Dajour B. ex rel. L.S. v. City of New York*,
   No. 00 CIV. 2044(JGK), 2001 U.S. Dist. LEXIS 15661 (S.D.N.Y. Oct. 3, 2001) ...............29

*Dean v. Am. Sec. Ins. Co.*,
   559 F.2d 1036 (5th Cir. 1977) ..............................................................................6

*DeBoer v. Mellon Mortg. Co.*,
   64 F.3d 1171 (8th Cir. 1995) ...............................................................................33

*Deem v. Ames True Temper, Inc.*,
   No. 6:10-cv-01339, 2013 U.S. Dist. LEXIS 72981 (S.D. W. Va. May 23, 2013) ...............38

*Delaney v. Marsh*,
   No. 7:08-cv-00465, 2010 U.S. Dist. LEXIS 28229 (W.D. Va. Mar. 25, 2010) ...................14

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)..............................................................................28, 31, 41

*DirecTV, Inc. v. Gendrachi*,
    No. 03-1970 (JBS), 2005 U.S. Dist. LEXIS 2001 (D.N.J. Feb. 14, 2005) ...............................6

*Dixon v. Bowen*,
    673 F. Supp. 123 (S.D.N.Y. 1987)........................................................................28

*Domonoske v. Bank of Am., N.A.*,
    790 F. Supp. 2d 466 (W.D. Va. 2011) ....................................................................33

*Domonoske v. Bank of America N.A.*,
    705 F. Supp. 2d 515 (W.D. Va. 2010) ...........................................................16, 17, 39

*Dunn v. Carey*,
    808 F.2d 555 (7th Cir. 1986) ............................................................................14

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974).................................................................................21, 25

*Felix v. Northstar Location Servs.*,
    *290 F.R.D. 397 (W.D.N.Y. 2013)* ........................................................................19

*Felix v. Northstar Location Servs.*,
    No. 11-CV-00166 (JJM), 2013 U.S. Dist. LEXIS 74717 (W.D.N.Y. May 28, 2013).......18, 19

*Fresco v. Auto. Directions, Inc.*,
    No. 03-CIV-61063-MARTINEZ-SIMONTON, 2009 U.S. Dist. LEXIS 125233 (S.D.
    Fla. Jan. 16, 2009)....................................................................................9, 20

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
    204 F.3d 149 (4th Cir. 2000) (*en banc*) .................................................................40

*Graham, et al. v. LexisNexis Risk & Information Analytics Group, Inc., et al.*,
    No. 3:09-cv-00655-JRS (E.D. Va. 2009)..............................................................4, 5

*Gunnells v. Healthplan Servs., Inc.*,
    348 F.3d 417 (4th Cir. 2003) .........................................................................29, 30

*Hawecker v. Sorensen*,
    No. 1:10-cv-00085 OWW JLT, 2011 U.S. Dist. LEXIS 3018 (E.D. Cal. Jan. 12,
    2011) ....................................................................................................22

*Hecht v. United Collection Bureau, Inc.*,
    691 F.3d 218 (2d Cir. 2012)...............................................................................24

*Henry v. Gross*,
803 F.2d 757 (2d Cir. 1986)..................................................................................28

*Howe v. Townsend (In re Pharm. Indus. Average Wholesale Price Litig.)*,
588 F.3d 24 (1st Cir. 2009)..............................................................................38, 39

*In re Bluetooth Headset Prods. Liability Litig.*,
654 F.3d 935 (9th Cir. 2011) ...............................................................................45

*In re Dry Max Pampers Litigation*,
724 F.3d 713 (6th Cir. 2013) ...........................................................26, 27, 34, 38

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)....................................................................................38

*In re Ins. Brokerage Antitrust Litig.*,
86 F.R.D. 654, No. 04–5184 (CCC), 2013 U.S. Dist. LEXIS 108042 (D.N.J. Aug. 1,
2013) .......................................................................................................................30

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991) ..................................................................................1

*In re Lorazepam & Clorazepate Antitrust Litig.*,
351 U.S. App. D.C. 223, 289 F.3d 98 (D.C. Cir. 2002) ........................................41

*In re Microsoft Corp. Antitrust Litig.*,
214 F.R.D. 371 (D. Md. 2003)...............................................................................40

*In re Motor Fuel Temp. Sales Practices Litig.*,
__ F.R.D. __, No. MDL No. 1840, 2013 U.S. Dist. LEXIS 50667 (D. Kan. Apr. 5,
2013) .......................................................................................................................37

*In re Motor Fuel Temperature Sales Practices Litig.*,
279 F.R.D. 598 (D. Kan. 2012)..............................................................................25

*In re Pet Food Prods. Liab. Litig.*,
629 F.3d 333 (3d Cir. 2010)...................................................................................31

*In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)...................................................................................46

*In re Real Estate Title & Settlement Sers. Antitrust Litig.*,
869 F.2d 760 (3d Cir. 1989)..................................................................12, 16, 24

*In re Titanium Dioxide Antitrust Litig.*,
No. RDB–10–0318, 2013 U.S. Dist. LEXIS 130288 (D. Md. Sept. 12, 2013) ......38

*In re Trans Union Corp. Privacy Litig.*,
  No. 00-cv-4729 (N.D. Ill.) ...................................................................44

*In re Trans Union Corp. Privacy Litig.*,
  No. 1:00cv4729 (N.D. Ill. Sept. 17, 2008).............................................44

*In re Tyson Foods Inc.*,
  No. RDB–08–1982, 2010 U.S. Dist. LEXIS 48518 (D. Md. May 11, 2010).........................38

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ...............................................................28

*Jermyn v. Best Buy Stores, L.P.*,
  276 F.R.D. 167 (S.D.N.Y. 2011) ..........................................................37

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
  702 F.3d 364 (7th Cir. 2012) ........................................................7, 8, 9

*Karnette v. Wolpoff & Abramson*,
  2007 U.S. Dist. LEXIS 20794 (E.D. Va. Mar. 23, 2007) ....................................9, 15

*Kelly v. Am. Standard, Inc.*,
  640 F.2d 974 (9th Cir. 1981) .................................................................6

*Klingensmith v. Max & Erma's Rests., Inc.*,
  No. 07-0318, 2007 U.S. Dist. LEXIS 81029 (W.D. Pa. Oct. 23, 2007) ................................16

*Larson v. AT&T Mobility LLC*,
  687 F.3d 109 (3d Cir. 2012)................................................................25

*Lehocky v. Tidel Techs., Inc.*,
  220 F.R.D. 491 (S.D. Tex. 2004)..........................................................31

*Lengrand v. Wellpoint*,
  No. 3:11Cv333-HEH (E.D. Va. Nov. 13, 2012)...................................................33

*Lerner v. Fleet Bank, N.A.*,
  318 F.3d 113 (2d Cir. 2003)................................................................41

*Local Number 93 v. City of Cleveland*,
  478 U.S. 501 (1986).................................................................. passim

*Manchouck v. Mondelez Int'l Inc.*,
  No. C 13-02148 (WHA), 2013 U.S. Dist. LEXIS 80132 (N.D. Cal. June 3, 2013) ...............39

*Mandujano v. Basic Vegetable Prods., Inc.*,
  541 F.2d 832 (9th Cir. 1976) ...............................................................25

*Marilley v. Bonham*,
  No. C-11-02418-DMR, 2012 U.S. Dist. LEXIS 33678 (N.D. Cal. Mar. 13, 2012) ...............22

*McKenzie v. City of Chic.*,
  175 F.R.D. 280 (N.D. Ill. 1997)............................................................................................29

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)..................................................................................21, 23, 24, 25

*Murray v. Auslander*,
  244 F.3d 807 (11th Cir. 2001) .......................................................................................9, 27

*Murray v. GMAC Mortgage Corp.*,
  434 F.3d 948 (7th Cir. 2006) ........................................................................................27, 34

*New Directions Treatment Servs. v. City of Reading*,
  490 F.3d 293 (3d Cir. 2007)..............................................................................................31

*Olvera-Morales v. Int'l Labor Mgmt. Corp.*,
  246 F.R.D. 250 (M.D.N.C. 2007) .......................................................................................9

*Palamara v. Kings Family Rests.*,
  No. 07-317, 2008 U.S. Dist. LEXIS 33087, at *3–4 (W.D. Pa. Apr. 22, 2008).....................16

*Pashby v. Cansler*,
  279 F.R.D. 347 (E.D.N.C. 2011) .......................................................................................28

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)....................................................................................................11, 24

*Radcliffe v. Experian Information Solutions*,
  715 F.3d 1157 (9th Cir. 2013) .................................................................................35, 36, 44

*Raymond v. Rowland*,
  220 F.R.D. 173 (D. Conn. 2004)........................................................................................28

*Reed Elsevier Inc. v. Muchnick*,
  559 U.S. 154 (2010)..........................................................................................................18

*Rhodes v. E.I. Du Pont de Nemours & Co.*,
  657 F. Supp. 2d 751 (S.D. W. Va. 2009)........................................................................40, 41

*Rowles v. Chase Home Fin., LLC*,
  No. 9:10-cv-01756-MBS, 2012 U.S. Dist. LEXIS 3264 (D.S.C. Jan. 10, 2012) ...................34

*Russell v. United States*,
  2013 U.S. Dist. LEXIS 31113 (N.D. Cal. Mar. 5, 2013)........................................................38

*Salovaara v. Jackson Nat'l Life Ins. Co.*,
    246 F.3d 289 (3d Cir. 2001)...................................................................................43

*Singleton v. Domino's Pizza, LLC*,
    No. DKC 11-1823, 2013 U.S. Dist. LEXIS 142528 (D. Md. Oct. 2, 2013)......................30, 38

*Smith v. Levine Leichtman Capital Partners, Inc.*,
    No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672 (N.D. Cal. Nov. 15, 2012)...............40

*Smyth v. Rivero*,
    282 F.3d 268 (4th Cir. 2002) .................................................................................13

*Snapp v. Unlimited Concepts, Inc.*,
    208 F.3d 928 (11th Cir. 2000), *cert. denied*, 532 U.S. 975, 121 S. Ct. 1609 (2001)................6

*Snowden v. Checkpoint Check Cashing*,
    290 F.3d 631 (4th Cir. 2002) .................................................................................18

*Stinson v. City of New York*,
    282 F.R.D. 360 (S.D.N.Y. 2012) (applying the *Jermyn* reasoning in the context of a
    42 U.S.C. § 1983 claim)........................................................................................37

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)..............................................................................................20

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3rd Cir. 2011) .................................................................................14

*Swift & Co. v. United States*,
    276 U.S. 311 (1928)..............................................................................................13

*Swift v. Direct Buy, Inc.*,
    No. 2:11-CV-401-TLS, 2013 U.S. Dist. LEXIS 152618 (N.D. Ind. Oct. 24, 2013) ..............44

*Temp. Servs., Inc. v. Am. Int'l Group, Inc.*,
    No. 3:08-cv-00271-JFA, 2012 U.S. Dist. LEXIS 131201 (D.S.C. Sept. 14, 2012) ...............38

*United States Equal Emp't Opportunity Comm'n v. Cook Cnty. Dept. of Corr.*,
    No. 84 C 10886, 1987 U.S. Dist. LEXIS 4205 (N.D. Ill. May 19, 1987)................................6

*United States v. Armour & Co.*,
    402 U.S. 673 (1971)..............................................................................................13

*United States v. ITT Cont'l Baking Co.*,
    420 U.S. 223 (1975)..............................................................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ................................................................................... passim

*Wal-Mart Stores, Inc. v. Visa USA, Inc.*,
    396 F.3d 96 ..............................................................................................................11

*Washington v. CSC Credit Sers., Inc.*,
    199 F.3d 263 (5th Cir. 2000) ................................................................9, 16, 17

**STATUTES**

15 U.S.C. §1681b..............................................................................................................3

15 U.S.C. § 1681o............................................................................................................11

**OTHER AUTHORITIES**

FED. R. CIV. P. 23 ....................................................................................6, 10, 22

FED. R. CIV. P. 23(a)(4)....................................................................................27, 29

FED. R. CIV. P. 23(b)(1)....................................................................................11, 24

FED. R. CIV. P. 23(b)(2) ................................................................................ *passim*

FED. R. CIV. P. 23(b)(3)................................................................................. *passim*

FED. R. CIV. P. 23(c)(2)....................................................................................10

FED. R. CIV. P. 23(c)(2)(A) ............................................................................22

FED. R. CIV. P. 23(c)(2)(B)..............................................................................25

## I.    INTRODUCTION AND BACKGROUND.

Plaintiffs respectfully request that this Court grant final approval to this historic and transformative settlement. The relief that Plaintiffs have obtained as a result of this litigation and the arm's-length, good-faith context in which the settlement was reached more than satisfies the standard for approval under relevant Fourth Circuit law. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). As set forth below, the handful of objections filed provide no basis for this Court to deny final approval of this settlement.[1]

In determining whether the Proposed Settlement should be finally approved, the issue for the Court is not whether the settlement achieves a complete victory for the Class, as Objectors seem to assume without analysis, nor is it, as Objectors also appear to suggest, whether some absent class member can imagine a hypothetical better outcome regardless of whether it is realistic based on the merits of the case. The Parties have submitted other briefs that demonstrate that the Proposed Settlement is "fair, reasonable, and adequate." (*See* Plaintiffs' Memorandum in Support of Joint Motion for Final Approval of Class Action Settlement ("Plts.' Final App. Brief") (demonstrating that the Proposed Settlement satisfies the *Jiffy Lube* standard) and Defendants' Memorandum in Further Support of the Parties' Joint Motion for Final

---

[1] The Court's preliminarily approved Settlement drew only eight objections, from Class Members JoAnn Nix, Adam Schulman, Megan Aaron, Jeanne Giles, Patricia Osborne, Shauna McClung, David Brown, and professional objector Edward Cochran. Of those eight, only Aaron and Schulman lodge specific, substantive challenges to the Rule 23(b)(2) Settlement terms (Ms. Nix objects to the (b)(3) terms) but none are sufficient grounds for the Court to deny final approval of the Settlement. The Settlement remains an excellent result for Class Members, notwithstanding the subjective beliefs of the Objectors.

Infamous professional objector Edward Cochran has also filed objections on behalf of who he claims are 7,289 individuals. (*See* Ex. 5, attached hereto.) Mr. Cochran's arguments parrot those of Schulman and Aaron, and he even incorporates "the objections, arguments, and authorities" cited in the Schulman brief into his objections by reference. (*Id.* ¶ 11.) Thus, where the Parties direct argument and analysis to points made by Aaron and Schulman, they also respond to Cochran's arguments with that same discussion.

Approval of the Proposed Settlement ("Defendants' Reply Brief") (describing the weaknesses in Class Plaintiffs' claims and the benefits of the Proposed Settlement).)  In this brief, Plaintiffs demonstrate that none of the objections effectively rebut the Parties' showing that the Proposed Settlement is fair, reasonable, and adequate.

## II.   THE COURT SHOULD OVERRULE THE OBJECTIONS TO THE SETTLEMENT.

### A.   The Aaron and Schulman Objectors Ignore the Indivisible Nature of the Relief Provided to the Homogeneous Rule 23(b)(2) Settlement Class.

Class certification is appropriate under Rule 23(b)(2) "when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'"  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548–49 (2011).  The Supreme Court has explained that "[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted – *the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them*."  *Dukes*, 131 S. Ct. at 2557 (emphasis added).  By contrast, where each individual class member would be entitled to a different injunction, or to a different declaration, or to a different, *individualized* award of monetary damages, a class under Rule 23(b)(2) cannot be certified.  *See id.*

The Proposed Settlement provides for substantial and meaningful changes to the Defendants' business practices that are responsive to the claims asserted in the Complaint, and that resolve the issues that are disputed in the litigation in a manner favorable to the Class. Significantly, the same changes in business practices will benefit each member of the Rule 23(b)(2) Class—the Proposed Settlement does not include a monetary damages element, let alone damages or any other relief requiring any sort of individualized determination.  As noted in greater detail in the Parties' other submissions in further support of the Parties' Joint Motion for

Final Approval of the Proposed Settlement, the Proposed Settlement would require Defendants to overhaul their currently existing *Accurint® for Collections* suite of products for the Receivable Management Market[2] to create (a) a new Collections Decisioning suite of products and services with a compliance program designed to provide reasonable procedures to assure that data are used for permissible purposes under 15 U.S.C. §1681b; (b) a new Contact & Locate suite of products and services intended to be used by the Receivables Management Market for the limited purpose of finding and locating debtors or locating assets securing the debt for the purpose of repossession; and (c) a new "Consumer Access Program" to permit an individual to obtain a free copy of a Contact & Locate Comprehensive Report regarding that individual once a year and to submit comments regarding the accuracy of any phone number or address.  (*See* Dkt. No. 63-1 at 22–29.)

Each Class Member receives the same relief.  No individualized determinations are provided for or are necessary.  Indeed, there would be no means by which individual Class Members could opt to exclude themselves from the benefits of the settlement relief.  Once the overhaul required by the Settlement is implemented, information relating to all Class Members will be accessed only consistent with the requirements of the Settlement.  In other words, the currently existing *Accurint® for Collections* suite of products will cease to exist, which means the benefits of the Settlement would extend without exception to every Class Member (all the

---

[2] "Receivable Management Market" is defined in the Settlement Agreement as credit originators (such as financial services organizations) and any individual, partnership, corporation, organization or other legal entity engaged in the collection or attempted collection of an outstanding or past due consumer credit obligation which (a) used or had access to Accurint® for Collections prior to the Effective Date or (b) becomes a customer or user after the Effective Date and but for the Injunctive Relief would have been marketed, sold or given access to Accurint® for Collections.  (Settlement Agreement, Ex. A to Caddell Decl., attached as Ex. 1 to Plaintiffs' Memorandum in Support of Motion for Final Approval of Class Action Settlement, filed concurrently herewith ("Settlement Agmt.") ¶ 2.29.)

information in the database) equally—even to those who might otherwise have opted out if this settlement was governed by Rule 23(b)(3) as argued by the Objectors.  This is an indivisible package of relief that benefits all Class Members equally and so is appropriately governed by Rule 23(b)(2).

A hallmark characteristic of Rule 23(b)(2) classes is precisely this sort of homogenous quality to class members' interests in achieving injunctive relief.  "Actions for class-wide injunctive or declaratory relief are intended for (b)(2) certification precisely because they involve uniform group remedies." *Allison v. Citgo Petrol. Corp.*, 151 F.3d 402, 414 (5th Cir. 1998).  The "uniform group remed[y]" provided for in the preliminarily approved Proposed Settlement will thus accomplish the Class's goal in bringing this case in the first place, without any risk of litigation failure, as occurred in previous challenges to this product.  *See Adams, et al. v. LexisNexis Risk & Information Analytics Group, Inc., et al.*, No. 1:08-cv-04708-RMB-KMW (D.N.J. 2008) (asserting same essential claim as this case but dismissed with no class relief) and *Graham, et al. v. LexisNexis Risk & Information Analytics Group, Inc., et al.*, No. 3:09-cv-00655-JRS (E.D. Va. 2009) (same).

The Proposed Settlement's exclusive focus on uniform conduct-change rather than individualized damages was no accident.  To begin with, the members of the Rule 23(b)(2) Settlement Class never sought any sort of actual or individualized damages claims.  Class Counsel recognized that the overwhelming majority of the persons who were the subject of Accurint reports sold to debt collectors likely did not suffer actual damages; and that at the very least the fact of actual damage could not be established on a class-wide basis.[3]  As a result, the

---

[3] In any event, the Proposed Settlement does *not* require the Rule 23(b)(2) class Members to release any claims they have for actual damages, including the statutory right to attorneys' fees if successful.  (Settlement Agmt. ¶ 4.5.1.)  Class Members have preserved those claims.

4

Rule 23(b)(2) Settlement Class directed their claims against a practice that affected each of them equally but in most cases led to no actual damages.  As noted in the Motion for Preliminary Approval, from the beginning the Class's goal was to change the Defendants' going-forward conduct, as is often the case in Rule 23(b)(2) class settlements.  (Declaration of Professor Linda Mullenix, attached as Ex. 1 hereto ("Prof. Mullenix Decl."), ¶¶ 47–48.)

The Proposed Settlement accomplishes this goal.  In determining to enter into the Settlement, Class Counsel was conscious that this is at least the third time that a putative class action had challenged the Defendants' practices with respect to the Accurint® product, and in each previous challenge the claims were dismissed without the class-wide resolution that Plaintiffs sought.  (*See* Defendants' Reply Br. at 19–22; *Adams,* No. 1:08-cv-04708 (D.N.J. 2008); *Graham,* No. 3:09-cv-00655-JRS (E.D. Va. 2009).)

Notwithstanding the indivisible relief at issue in this case and the substantial benefits obtained by each and every Class Member, the Objectors claim that the Rule 23(b)(2) Settlement Class is improper and should not be certified for three principal reasons.  They argue that (i) Rule 23(b)(2) may not be used where monetary relief is sought, or at least not where monetary claims "predominate" or are more than just "incidental"; (ii) it violates due process to extinguish claims for monetary relief without notice and an opportunity to opt out; and (iii) injunctive relief is unavailable under the FCRA and therefore the parties cannot agree in this case to a settlement of their FCRA claims that involves a change (even the wholesale changes provided for here) in Defendants' business practices.  (*See* Dkt. No. 72 at 10–19; Dkt. No. 71 at 6–23.)  None of these objections have any merit.

### 1. The Rule 23(b)(2) Settlement Class does not involve monetary damages.

#### a. *The Rule 23(b)(2) Settlement Class is for injunctive relief only.*

Objectors Aaron and Schulman argue that the Rule 23(b)(2) Settlement Class improperly seeks non-incidental individualized damages that can be sought only by a Rule23(b)(3) class and not by a Rule 23(b)(2) class.  For example, the Objectors argue that, "[b]y its terms, Rule 23(b)(2) does not apply to class actions seeking monetary relief" (Dkt. No. 72 at 11), and "any time a class action seeks monetary relief on the basis of individualized aggregated claims, as opposed to a unitary group claim, [] Rule 23 must be read to demand a [Rule] 23(b)(3) certification."  (Dkt. No. 71 at 7–8.)  But these objections are based on a fundamental misreading of the Proposed Settlement—the Rule 23(b)(2) Settlement Class seeks no damages at all, or any other monetary relief.  (*See supra*, Section II.A.1.)  As a result, these Objectors' lengthy exposition of the law as it relates to settlements that include *both* injunctive and monetary relief is simply inapposite.

Again, the Proposed Settlement's focus on direct conduct-based relief represents a substantial victory for the Class, achieving directly and with certainty the change in Defendants' conduct that could be obtained only indirectly and far, far less certainly (and only after a long litigation that entailed substantial risks of likely failure) through the application of statutory damages.  It is well established that one of the purposes of statutory liquidated damage provisions is to deter future violations.  *See, e.g.*, *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 935 n.13 (11th Cir. 2000), *cert. denied*, 532 U.S. 975, 121 S. Ct. 1609 (2001); *Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697, 709–10 (1945); *Dean v. Am. Sec. Ins. Co.*, 559 F.2d 1036, 1039–40 (5th Cir. 1977); *United States Equal Emp't Opportunity Comm'n v. Cook Cnty. Dept. of Corr.*, No. 84 C 10886, 1987 U.S. Dist. LEXIS 4205, at *6 (N.D. Ill. May 19, 1987); *Kelly v.*

*Am. Standard, Inc.*, 640 F.2d 974, 979 (9th Cir. 1981); *Comm'r of Internal Revenue v. Miller*, 914 F.2d 586, 591 (4th Cir. 1990); *DirecTV, Inc. v. Gendrachi*, No. 03-1970 (JBS), 2005 U.S. Dist. LEXIS 2001, at *11 (D.N.J. Feb. 14, 2005).   The Proposed Settlement delivers on this litigation goal.

    This is precisely the sort of case that the Supreme Court held in *Dukes* to be well-suited to treatment under Rule 23(b)(2):

> Classes certified under (b)(1) and (b)(2) share the most traditional justifications for class treatment – that individual adjudications would be impossible or unworkable, as in a (b)(1) class, or that *the relief sought must perforce affect the entire class at once, as in a (b)(2) class.   For that reason these are also mandatory classes*: The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action.

131 S. Ct. at 2558 (emphasis added).  The relevant inquiry in *Dukes* was whether or not the relief must be *individualized*.  *Id.* at 2557.  "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."  *Id.*  That is precisely the situation that is currently in front of the Court.  The Objectors nowhere address *Dukes'* repeated and explicit focus on that individualization.  *Compare id.* (noting Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.  Similarly, it does not authorize class certification when each class member would be entitled to an **individualized** award of monetary damages") (italics in original, bold emphasis added) *with* Dkt. No. 72 at 10 (arguing that "Rule 23(b)(2) may not be used where monetary relief is sought") *and* Dkt. No. 71 at 6 ("Monetary claims cannot be discharged in a mandatory 23(b)(2) class.").

    As to claims for past damages, the *Dukes* court focused on the practical implications of dealing with the sort of *individualized* inquiry that is required to deal with *individualized* claims. *Dukes* instructs that monetary damages are not incidental to the injunctive relief (or that they

predominate) if "each class member would be entitled to an individualized award of monetary damages," *Dukes*, 131 S. Ct. at 2557, such that the award is "based on evidence specific to particular class members." *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 370 (7th Cir. 2012). Conversely, monetary relief is "incidental" if "*the calculation of monetary relief will be mechanical, formulaic*, a task not for a trier of fact but for a computer program, so that there is no need for notice and the concerns expressed in the [*Dukes v.*]*Wal-Mart* opinion are thus not engaged." *Id.* at 372 (emphasis added). The Objectors fail to point to any sort of individualized claims or individualized damages calculations that are at issue in this case. In fact, there are none.

> **b.** **Claims for statutory damages and the release of such claims is incidental and properly part of a Rule 23(b)(2) class.**

The fact that the Complaint in this action sought statutory damages on behalf of an "Impermissible Use" class, or that members of the Rule 23(b)(2) Settlement Class have agreed to release any claims for statutory damages, does not alter the analysis. First, *the Proposed Settlement does not release Class Members' individual claims for actual damages*.[4] As to the

---

[4] As Professor Mullenix correctly noted, "the *Berry* release of statutory damage claims is identical to the release that the federal court approved in the *Disabled Americans* settlement class." (Prof. Mullenix Decl. ¶ 45.) Such claims are properly released in a Rule 23(b)(2) class settlement:

> . . . as the decisions cited make plain, it is permissible for class settlement releases to bar all related damage claims. Nonetheless, the Release here does not have such a wide ranging effect, because it does not bar claims for actual damages at all. Rather, the release is strictly limited to federal and state accessibility law claims for injunctive relief and statutory damages. . . . By statutory damages, the parties mean only to bar class members from claiming minimum or liquidated damages under statutes that require no proof for recovery. In short, to the extent some states have accessibility laws authorizing private suits for actual damages, the Release does not bar these claims.

(*Id.* (quoting *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 472 (S.D. Fla. 2002).)

statutory damages release, the proper focus is on the actual relief obtained, not on hypothetical and unproven allegations in a pleading. In any event, courts have repeatedly held that statutory damages are incidental and do not render certification under Rule 23(b)(2) inappropriate where the class also seeks (or, in the case of a settlement, obtains) injunctive relief. Thus, for example, in *Allison*, the Fifth Circuit held that:

> [I]ncidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established. That is, the recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief. Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

151 F.3d at 415 (citations omitted); *see also Johnson*, 702 F.3d at 372 ("*Wal-Mart* left intact the authority to provide purely incidental monetary relief in a (b)(2) class action"); *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001); *Ass'n for Disabled Ams.*, 211 F.R.D. at 459; *Karnette v. Wolpoff & Abramson*, 2007 U.S. Dist. LEXIS 20794, at *34 (E.D. Va. Mar. 23, 2007); *Olvera-Morales v. Int'l Labor Mgmt. Corp.*, 246 F.R.D. 250, 258-59 (M.D.N.C. 2007); *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 450–51, 461–62 (N.D. Cal. 1994); *Colo. Cross-Disability Coal. v. Taco Bell Corp.*, 184 F.R.D. 354, 361–62 (D. Colo. 1999); *Fresco v. Auto. Directions, Inc.*, No. 03-CIV-61063-MARTINEZ-SIMONTON, 2009 U.S. Dist. LEXIS 125233, at *11–12 (S.D. Fla. Jan. 16, 2009).

> Put another way, "If . . . the award of monetary relief will just be a matter of laying each class member's pension-related employment records alongside the text of the reformed plan and computing the employee's entitlement by subtracting the benefit already credited it to him from the benefit to which the reformed plan document entitles him, the monetary relief will truly be merely

'incidental' to the declaratory and (if necessary) injunctive relief . . ." *Johnson*, 702 F.3d at 371.

*Johnson* illustrates that monetary damages are incidental if their award is automatic or formulaic. (*Id.*)  Similarly, the Fifth Circuit has explained that monetary damages are incidental if they do not require separate adjudication.  *Washington*, 199 F.3d at 269 ("Additionally, because the money damages in this case do not flow from the declaratory relief but require separate adjudication, they predominate…") (using "predominate" and "not incidental" interchangeably)). Here, of course, the Rule 23(b)(2) Settlement involves no monetary relief whatsoever.  But even if the Court were to consider the statutory damages sought in the original Complaint or the content of the statutory damages release, the result is the same—even if Plaintiffs were somehow to prevail in this action, such statutory damages would be "just a matter of laying each class member's" membership in the class against the uniform, non-individualized statutory amount awarded.  Such a settlement is properly governed by Rule 23(b)(2), and treatment under that rule is not made inappropriate by these merely "incidental" damages.

## 2.     The Rule 23(b)(2) Settlement Class is properly a non-opt-out class.

A Rule 23(b)(2) class is a "mandatory" class for which Rule 23 "provides no opportunity for . . . class members to opt-out."  *Dukes*, 131 S. Ct. at 2558; *see also* FED. R. CIV. P. 23(c)(2) & Notes of Advisory Committee on 2003 amendments ("There is no right to request exclusion from a . . . (b)(2) class.").  The Aaron and Schulman objections do not seriously dispute this black-letter law; their argument that opt-out rights should be afforded here is instead based on their incorrect conclusion that the Settlement for the Rule 23(b)(2) Class implicates monetary claims for which opt-out rights and actual notice are required.  As Professor Mullenix observed:

> Because the (b)(2) class members have not forfeited any right to pursue individual damage claims, the reservation of this right functions as a *de facto* opt-out protection.  Requiring the settlement to include a specific opt-out

> provision under these circumstances would serve no additional purpose and would elevate form over function.

(Prof. Mullenix Decl. ¶ 37 (emphasis in original).)  Indeed, as noted above, providing an opt-out right would not only elevate form over function, but also would strip the Rule 23(b)(2) relief of any real effect given the indivisible nature of the relief; a Class Member would receive the benefits of the class relief even if he or she opted out.  As a practical matter, allowing opt-outs from the Proposed Settlement would have made settlement impossible.  Defendants could hardly be persuaded to spend millions of dollars changing their practices as part of a settlement if consumers benefitted by such changes could disavow their obligations under the settlement but at the same time continue to claim that the Court-approved business practices violate the FCRA. *See, e.g., Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 106 (2d Cir. 2005 ("[p]racitcally speaking, 'class action settlements simply will not occur if the parties cannot set definitive limits on defendants' liability.'")

The Objectors' mischaracterization of the Proposed Settlement leads them to incorrectly rely on *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) and *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386 (9th Cir. 1992), *cert. dismissed as improvidently granted,* 511 U.S. 117 (1994). Neither case is relevant to the purely injunctive relief class at issue here.  In *Shutts*, the Supreme Court made explicitly clear that its holding applied to class actions concerning claims "wholly or predominantly for money judgments" and "intimate[d] no view concerning other types of class actions, such as those seeking equitable relief." *Shutts*, 472 U.S. at 812 n.3.

The Objectors make the same error in their reliance on *Brown*, a case involving a class certified under Rule 23(b)(1) and addressing the question of whether the doctrine of *res judicata* should bar class members' subsequent claims for *past* damages.  That case has no bearing here because the proposed release has no effect upon class members' claims for historical actual

11

damages—each Class Member remains free to bring such a claim under 15 U.S.C. § 1681o. (Settlement Agmt. ¶ 4.5.1.)

There is no reason to depart from the general practice by providing opt-out rights in Rule 23(b)(2) class action settlements, because to do so here would make no legal or practical sense. From the outset, the primary focus in this litigation has been the expansion of consumer rights in personal and financial information in databanks. As such, the consumer protection issues underlying this litigation are similar to the civil rights cases that courts traditionally have resolved pursuant to Rule 23(b)(2). *See Wal-Mart Stores Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011) (explaining, in employment discrimination, "[t]he Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."); *Amchem*, 521 U.S. at 614 (citing Advisory Committee on Civil Rules Notes); *Ass'n for Disabled Ams, Inc.*, 211 F.R.D. at 465.

### 3. The Court has authority to order the relief that the Parties actually agreed to in the proposed Settlement.

The Aaron and Schulman objections further assert that because the FCRA does not permit private parties to seek injunctive relief, a Rule 23(b)(2) *settlement* class cannot be certified in FCRA cases. (Dkt. No. 72 at 13–14; Dkt. No. 71 at 11–15.) These Objectors are wrong. Whether the FCRA permits private plaintiffs to seek injunctive relief over a defendant's objection is of no import to the Court's authority to enter the relief provided in the Settlement Agreement.

The Objectors' error is in assuming that the authority of a court to approve a settlement derives from the underlying statute, rather than from the parties' agreement. In fact, it is firmly established that "it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all. More importantly, it is the agreement of the parties, rather than the

force of the law upon which the complaint was originally based, that creates the obligations embodied in a consent decree." *Local Number 93 v. City of Cleveland*, 478 U.S. 501, 522 (1986).

The Parties have engaged in extensive, arm's-length negotiations to reach an agreement that would resolve Plaintiffs' claims and provide relief to Class Members.  (*See* Dkt. No. 63 at 10–13 (listing key details of protracted negotiations).)  The proposed order reflects the terms of the Parties' agreement and orders relief that is provided for by these terms.  The limitation on injunctive relief under the FCRA does not foreclose the Court's authority to enter the requested order approving the Proposed Settlement. Several reasons support this conclusion.

*First*, the request is truly one for a consent decree, not injunctive relief.  The proposed order that the parties submitted to the Court along with the Proposed Settlement is titled "Injunctive Relief Order," however it is effectively a consent decree.  (Dkt. No. 63-1.)  The title of this order should not conclusively determine what it actually is—a consent order.  (*See* Second Declaration of Professor Neil Richards, attached as Ex. 2 hereto, ("Prof. Richards Decl.") ¶¶ 14-15 (explaining that consent decrees, like the injunctive relief here, are a "superior form of relief to protect consumers than damages actions or lengthy, expensive, uncertain trial outcomes").)

Though the two are often conflated, a consent decree is different from an injunction entered after litigation on the merits:

> To be sure, consent decrees bear some of the earmarks of judgments entered after litigation.  At the same time, because their terms are arrived at through mutual agreement of the parties, consent decrees also closely resemble contracts.  More accurately, then, as we have previously recognized, consent decrees have attributes both of contracts and of judicial decrees, a dual character that has resulted in different treatment for different purposes.

*Local Number 93*, 478 U.S. at 519 (citations and internal citations omitted).  *See also Swift & Co. v. United States*, 276 U.S. 311, 327 (1928) (stating further differences between an injunction

13

and a consent decree); *Smyth v. Rivero*, 282 F.3d 268, 280 (4th Cir. 2002) (noting that consent decrees, "hybrids" between contracts and judicial decrees, may have injunctive provisions).

Unlike an injunction entered as relief for a plaintiff, "the voluntary nature of a consent decree is its most fundamental characteristic." *Local Number 93,* 478 U.S. at 521–22; *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971) ("Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation."); *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236 n.10 (1975) ("[Consent decrees] are arrived at by negotiation between the parties and often admit no violation of law[;] they are motivated by threatened or pending litigation and must be approved by the court[.]"); *Delaney v. Marsh*, No. 7:08-cv-00465, 2010 U.S. Dist. LEXIS 28229, at *18 (W.D. Va. Mar. 25, 2010) ("A consent decree requires the substantive terms of the parties' agreement concerning the matter in controversy and the judge's endorsement of the order or decree rendering its terms enforceable by the court.") (internal citations omitted).

Notably, the Supreme Court has emphasized that the authority of a court to enter a consent order does not derive from relief provided by the underlying statute, but, rather, the parties' agreement.

> Indeed, it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all. More importantly, *it is the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that creates the obligations embodied in a consent decree.*

*Local Number 93*, 478 U.S. at 522 (internal citations omitted, emphasis added). "Consent decrees are contracts. *Their force comes from the agreement of the parties, not from the statute on which the complaint was based.*" *Dunn v. Carey*, 808 F.2d 555, 559 (7th Cir. 1986) (emphasis

14

added); *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 317 (3rd Cir. 2011) (holding that district court "could reasonably approve a mutually agreed-upon stipulation enjoining conduct within the Court's jurisdiction regardless of whether the plaintiffs could have received identical relief in a contested suit by satisfying each of the aforementioned requirements at trial"); *Angela R. v. Clinton*, 999 F.2d 320 (8th Cir. 1993).

*Second*, courts have the power to enter consent decrees that go beyond the relief that could be provided after a trial on the merits.  For example, in *Local Number 93*, the Court considered whether Title VII of the Civil Rights Act precluded the entry of a consent decree that provided relief to firefighters who may not have been actual victims of the City's alleged discriminatory practices.  478 U.S. at 504.  In relevant part, Title VII stated that "*[no] order of the court shall require* the admission or reinstatement of an individual . . . if such individual was refused admission . . . or was refused employment . . . for any reason other than discrimination on account of race[.]"  *Id*. at 514 (citing 42 U.S.C. § 2000e-5(g)) (emphasis in original).  Local Number 93 intervened at the district court and later appealed entry of the consent decree to the Sixth Circuit.  The Sixth Circuit upheld the consent decree, reasoning that, "even if . . . Title VII limits relief to those who have been actual victims of discrimination, the fact that this case involves a consent decree and not an injunction" puts this case on a different footing from those denying injunctive relief under Title VII.  *Id*. at 513.  The Supreme Court affirmed:

> [W]hatever the limitations Congress placed in [Title VII] on the power of federal courts to impose obligations . . . to remedy violations of [the statute], ***these simply do not apply when the obligations are created by a consent decree***.

*Id*. at 522–23 (emphasis added); *see also  Angela R.*, 999 F.2d at 324 (affirming ability of court to approve settlement that afforded broader relief than the court could have awarded after trial, finding that statutory limitations  "go to the merits of plaintiffs' claims, not to the district court's jurisdiction . . . to approve the proposed settlement and to enter a consent decree resolving the

claims"); *Karnette v. Wolpoff & Abramson*, No. 3:06cv44, 2007 U.S. Dist. LEXIS 20794 at \*34 (E.D. Va. Mar. 23, 2007) (certifying Rule 23(b)(2) class in FDCPA action despite objections that FDCPA does not provide for injunctive relief); *Curiale v. Lenox Grp., Inc.*, No. 07-1432, 2008 U.S. Dist. LEXIS 92851, at \*23–24 (E.D. Pa. Nov. 14, 2008) (holding, despite statutory amendment that removed an individual's private right of action, that "it is of no consequence that FACTA, as amended, no longer recognizes the claims underlying Plaintiff's Complaint.  The Settlement Agreement is a contract that exists independently from the Complaint.").

Perhaps not surprisingly given this black-letter law, the entry of consent orders containing injunctive relief is common as part of the settlement of the FCRA claims.  *See, e.g.*, *Klingensmith v. Max & Erma's Rests., Inc.*, No. 07-0318, 2007 U.S. Dist. LEXIS 81029, at \*4–5, \*21 (W.D. Pa. Oct. 23, 2007) (approving entry of consent decree containing both injunctive and monetary relief as part of settlement of FCRA claims); *Palamara v. Kings Family Rests.*, No. 07-317, 2008 U.S. Dist. LEXIS 33087, at \*3–4 (W.D. Pa. Apr. 22, 2008) (approving entry of consent decree requiring defendant to comply with FCRA and distribute food vouchers to class members and to charity as part of settlement of FCRA claims); *Curiale*, 2008 U.S. Dist. LEXIS 92851, at \*4, \*27–28 (same).

The fact that a defendant in a private-party suit could resist injunctive relief does not mean that where such party does not resist, the Court is without power to fashion such relief in a settlement.  Neither *Washington v. CSC Credit Servs., Inc.*, 199 F.3d 263 (5th Cir. 2000), nor *Domonoske v. Bank of America N.A.*, 705 F. Supp. 2d 515 (W.D. Va. 2010), two cases relied on heavily by Objectors, are to the contrary.  In *Washington*, the Fifth Circuit addressed plaintiffs' attempt to certify a class seeking injunctive relief under the FCRA.  The defendants opposed certification, arguing that the putative class could not be certified "because the FCRA does not

allow them to obtain injunctive relief."  199 F.3d at 265.  Importantly, *Washington* did not involve a *settlement* class where the conduct-based relief at issue was the product of the parties' agreement rather than the court's authority under the statute; the Fifth Circuit considered only whether plaintiffs' *contested* motion for class certification under Rule 23(b)(2) should be granted for purposes of the continuing litigation.  As a result, *Washington* is simply irrelevant to the issues being considered here.

Similarly, the court in *Domonoske* was confronted with the parties' attempt to use the authority of a court, rather than their own agreement vis-à-vis each other, to govern future conduct of individuals not part of the class and thus not a party to the agreement.  The parties in *Domonoske* asked the Court to approve a Rule 23(b)(3) class settlement that included conduct-based relief.  705 F. Supp. 2d at 515.  Significantly, however, that conduct-based relief was intended to bind the defendants' relationship with non-class members, rather than class members, by awarding declaratory relief that would deem the bank's future conduct with respect to non-parties to the litigation that conformed with the order to be in compliance with the FCRA.  *Id. at 518.*  As the *Domonoske* court recounted, "[w]hen the court [at oral argument] asked the Bank's counsel if the order seeks to bind only the current class members, the Bank responded '*no . . . [the order] only touches the conduct of the Bank with respect to people outside of the defined class period.*"  *Id.* (emphasis in original).  The court characterized as "dubious" the parties' attempt to categorize such relief as being part of a consent order, holding that, "[i]rrespective of how the order is titled, however, it is fundamentally flawed as written because it purports to declare the rights of non-class members," a provision that "from a due process perspective, . . . would not be worth the paper it would be written on and cannot bear the court's imprimatur."  *Id.* at 518–19.

Here, by contrast, the only people who would be bound by the Parties' Settlement Agreement and the Proposed Settlement are parties to it—the Defendants and the Class Members.  "[I]t is the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that creates the obligations embodied in [this] consent decree." *Local Number 93*, 478 U.S. at 522; *see also Reed Elsevier Inc. v. Muchnick*, 559 U.S. 154, 161-62 (2010) (refusing to find statutory limitations jurisdictional unless clearly labeled as such). Since it is the Parties' agreement that supports the Court's authority to enter the requested relief, the law permits the Court to do so in this case.

**B.    A Class Action Waiver May Be An Aspect of Negotiated Relief in the Rule (b)(2) Context.**

Class action waivers are enforceable.  *See, e.g., Am. Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013); *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740 (2011); *Snowden v. Checkpoint Check Cashing*, 290 F.3d 631, 638-39 (4th Cir. 2002); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002).  Objector Schulman acknowledges this now well-established rule,[5] but nonetheless asserts that the class action waiver that the parties negotiated and agreed to include in the Proposed Settlement is unenforceable because (i) the rights of absent class members cannot be released as part of a Rule 23(b)(2) settlement and (ii) the class action waiver violates the First Amendment as  a "prior restraint" against speech.  (Dkt No. 71 at 25-26.)  This objection is based on a misapplication of the law.

*First*, in support of this objection Schulman cites to cases in which a court found the proposed injunctive relief illusory or otherwise non-existent, and thus the class action waiver was not balanced by concomitant settlement benefits.  Thus, for example, Schulman relies heavily on

---

[5] "Certainly, freedom of contract permits a class-action waiver:  freely bargaining parties can choose to accept benefits in exchange for waiving rights, notwithstanding unconscionability doctrine."  (Dkt. No. 71 at 25.)

*Felix v. Northstar Location Servs.*, No. 11-CV-00166 (JJM), 2013 U.S. Dist. LEXIS 74717, at

*33–34 (W.D.N.Y. May 28, 2013); (Dkt. No. 71 at 23).  In *Felix*, the court objected to the class

action waiver because "settling class members generally cannot validly release other class

members' claims that they themselves do not possess, for no consideration . . . . Here, the class

representatives seek to advance their own interests by sacrificing the rights of the majority of

Class Members, who stand to gain nothing of substantial value from the proposed settlement."

*Felix v. Northstar Location Servs.*, 290 F.R.D. 397, 409 (W.D.N.Y. 2013) (internal citations

omitted).

The instant settlement is of course radically different, as the Named Plaintiffs are not

trying to release any claims "that they themselves do not possess."  Moreover, the Proposed

Settlement involves substantial and meaningful injunctive relief to all Class Members, who each

have a concrete risk of future injury given their presence in the Accurint database.  By contrast,

the injunctive relief in *Felix* entailed the general requirement that the defendant comply with the

relevant statute.  The *Felix* court noted that such relief would not benefit all or, indeed, any

members of the settlement class because the members were victims of a completed harm and did

not have an ongoing risk of future injury.  *Id.*  Unlike *Felix*, the injunctive relief in the Proposed

Settlement benefits the relevant class members.  The class action waiver was thus bought with

meaningful, specific, and concrete conduct-based remedies from the Defendants.

Similarly, in *Crawford*, 201 F.3d at 877, a case also cited by Schulman, the Seventh

Circuit reversed the order approving the settlement because, like the court in *Felix*, it believed

that the relief contemplated by the proposed settlement provided no meaningful relief to the

class.  *Crawford* involved an obviously deficient Fair Debt Collection Practices Act settlement

that paid the class representative $500 in damages, a $1,500 incentive award, his counsel

$78,000 in attorneys' fees, a $5,500 "donation" to Northwestern University's Legal Clinic, and a general promise from Equifax to never again use the form letters that were the subject of the suit (although it was disputed that Equifax had already stopped the practice).  201 F.3d at 880, 882. The conduct-based relief in *Crawford* consisted almost exclusively of a promise to never again use a certain type of form letter, although the defendant was not required to do anything in particular other than comply with the statute; the Proposed Settlement requires Defendants to make specific, substantial, and enforceable changes to their business practices.  Because of this fact, the class action waiver here is enforceable as a bargained-for concession, one that was exchanged for substantially beneficial provisions conferred onto the entire class.  *See, e.g.*, *Fresco v. Auto. Directions, Inc.*, No. 03-CIV-61063, 2009 U.S. Dist. LEXIS 125233, at *22 (S.D. Fla. Jan. 16, 2009) (approving class action settlement including waiver of right to pursue further class actions under a federal statute); (Prof. Mullenix Decl. ¶¶ 51–54).

*Second*, Schulman's basic objection seems to be not that the class action waiver is unenforceable because unconscionable (he does not try to make any showing of unconscionability here, which would be impossible given the participation of experienced Class Counsel and three mediators), but that the Class Representatives and Class Counsel should not be able to bind absent class members.  But the fact that absent class members are bound by a settlement negotiated by class representatives and Class Counsel once the court approves it is the very essence of the class action procedural device.  Where a settlement is approved as fair, reasonable, and adequate, absent class members *are* bound.  Thus, Schulman's class action waiver objection rises or falls (it falls) with the other objections, and does not provide any independent reason to reject the Proposed Settlement.

As for Schulman's First Amendment argument, it cannot survive the Supreme Court's now well-established rulings regarding class action waivers in the arbitration context.  *See, e.g.*, *Am. Express*, 133 S. Ct. at 2304; *Concepcion*, 131 S. Ct. at 1740; *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010).   If class action waivers violated the First Amendment, then they could not be saved by anything the Federal Arbitration Act might provide.   It is likely for this reason that Schulman fails to cite any cases supporting this constitutional argument that purportedly arises out of the Parties' voluntary and vigorously negotiated written agreement.[6]  No First Amendment issue exists here.

As Professor Mullenix has explained, the class action waiver serves the fundamental purposes of class litigation to achieve judicial efficiency and economy.  (Prof. Mullenix Decl. ¶ 54.)  It preserves the rights of class members to pursue subsequent individual litigation for actual damages and attorneys' fees—claims that are simply unsuited for class litigation in any event.  As a result, the goals of judicial efficiency and economy are served by the settling class's agreement, in settling one class, to agree to avoid the potentially *in terrorem* effect of fruitless and inevitably unsuccessful class litigation in the future based on the same claims and theories.  (*Id.*)

### C.   The Published Notice Plan Easily Satisfies Due Process for the Rule 23(b)(2) Settlement Class.

Schulman argues that the publication notice that the Parties provided to Rule 23(b)(2) Settlement Class Members fails to meet the due process requirements set forth in *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) and *Eisen v. Carlisle & Jacquelin*, 417

---

[6] The cases that Schulman does cite are simply inapposite.  (*See*  Dkt. No. 71 at 24 (citing *Avis Rent A Car Sys. v. Aguilar*, 529 U.S. 1138 (2000) (holding that injunction against racial epithets did not violate First Amendment) and *NAACP v. Button*, 371 U.S. 415 (1963) (holding that litigation is a form of protected expression and may not be prohibited by a state absent a compelling interest)).)

U.S. 156 (1974).   (Dkt. No. 71 at 39, 40-41.)   In Schulman's view, because Defendants supposedly have the names and addresses of all Rule 23(b)(2) Settlement Class Members, nothing short of personal, direct-mail notice would suffice in this case.   To adopt Schulman's position, however, is to ignore the very caselaw he cites in his Objection as well as the settled principles set forth in Rule 23.

Although barely mentioned in Schulman's discussion, the portions of Rule 23 governing class notice are the appropriate starting point for the Court's analysis of the sort of notice that satisfies due process.   As the Rule states, "the court *may* direct appropriate notice" to classes— like this one—certified under Rule 23(b)(2).[7] FED. R. CIV. P. 23(c)(2)(A).   Notice to the Rule 23(b)(2) Class here is therefore not required at all—the Court has discretion to order it.   *Marilley v. Bonham*, No. C-11-02418-DMR, 2012 U.S. Dist. LEXIS 33678, at *23 (N.D. Cal. Mar. 13, 2012) ("While the court may exercise its discretion to 'direct appropriate notice to the class,' the court is not required to do so in cases certified solely under Rule 23(b)(2)."); *see also Hawecker v. Sorensen*, No. 1:10-cv-00085 OWW JLT, 2011 U.S. Dist. LEXIS 3018, at *27-28 (E.D. Cal. Jan. 12, 2011) ("A court has discretion to require notice and the opportunity to opt-out of Rule 23(b)(2) cases.").[8]

Understanding the far-reaching implications of the injunctive relief in this case, the Parties volunteered a sweeping, nationwide notice plan designed to provide Rule 23(b)(2) Class Members with the appropriate notice to satisfy due process.   Put another way, the Parties did not

---

[7] Schulman also bases his notice arguments in part on his faulty presumption that monetary claims predominate over the injunctive relief. (Dkt. No. 71 at 41.)

[8] Furthermore, the Ninth Circuit has concluded that adequate representation is sufficient protection in the Rule 23(b)(2) context, making notice unnecessary. *Crawford v. Honig*, 37 F.3d 485, 487 n.2 (9th Cir. 1994) ("In a Rule 23(b)(2) class action for equitable relief, the due process rights of absent class members generally are satisfied by adequate representation alone.").

wait for the Court to tell them that notice would be required under Rule 23(c)(2)(A)—they demanded it of themselves.

To do so, the Parties worked with Kinsella Media, a nationally recognized expert in creating and executing class-action-notice programs, to design a notice program that would meet the due process requirements for the Rule 23(b)(2) Class. (Dkt. No. 63-3 ¶¶ 2–3, 6–8, 15–16.)  In creating the Notice Plan, Kinsella relied upon typical sources used by the advertising industry to determine the best means by which to reach the most Class Members. (*Id.* ¶ 17.)  It developed profiles of the demographics and media habits of Class Members, and "researched the most appropriate media vehicles that would be best for this case." (*Id.* ¶ 18-19.)  Based on the media-consumption habits of Class Members, Kinsella recommended—and the Court approved—a mix of print and online media as the best plan for providing notice. (*Id.* ¶ 19.)  Kinsella selected consumer magazines, a national newspaper supplement, newspapers in United States territories, and Internet advertising because of "their ability to provide national coverage cost effectively." (*Id.* ¶ 20.)  The media were then measured against the target audience to evaluate their strength and efficiency, to establish the estimated reach of the media program and the frequency of exposure to Class Members. (*Id.* ¶ 22.)  All told, Kinsella estimates that the Rule 23(b)(2) Notice would be seen an average of two times by 75% of adults 18 years and older, roughly 173,845,000 consumers.  (*Id.* ¶¶ 21–23.)  Such an undertaking well surpasses *Mullane*'s threshold of notice being more than "a mere gesture" to satisfy due process—the Parties have clearly shown their desire to actually inform Class Members of the Settlement.  *Mullane*, 339 U.S. at 315.  Indeed, Plaintiffs submit that the Rule 23(b)(2) Class Members were given *far greater* notice than due process requires of a Rule 23(b)(2) class.

Schulman attacks the Court-approved notice plan here as somehow failing to meet the "full rigors" of due process because it is something less than direct notice by mail. (Dkt. No. 71 at 42.) This suggestion greatly overstates the process that is due members of classes certified under Rule 23(b)(2), whether monetary claims are at stake or not. It is well-settled that "[t]he standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005)). As the cases to which Schulman cites explain, to meet the due process requirements of notice, the parties must provide (where required, in the Rule 23(b)(2) context) "the best practicable [notice], 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Shutts*, 472 U.S. at 812 (1985) (citing *Mullane*, 339 U.S. at 314-15). The notice utilized must be more than "a mere gesture" to class members, it "must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315. The Notice Plan here unquestionably meets this standard.

Schulman's cited authority fails to support the conclusion that the notice plan here failed to protect the due process rights of the Rule 23(b)(2) Class Members. *In re Real Estate Title & Settlement Sers. Antitrust Litig.*, 869 F.2d 760 (3d Cir. 1989), for example, was not a strict Rule 23(b)(2) case, but rather a "hybrid" class certified under Rule 23(b)(1) and (b)(2), and "involved the foreclosure of substantial damage claims, as well as the grant of injunctive relief." *Id.* at 768. The court's analysis focused on this hybrid arrangement and the *substantial* damages at stake, and finally noted that it "need not reach the issue, left open by *Shutts*, *see* 472 U.S. at 811 n.3, whether an absent plaintiff can be bound to the judgment in a hybrid (damage and injunctive)

class action if it was not afforded the opportunity to opt out." *Id.* at 768–69.  That was because the case turned on whether two Arizona school districts, absent class members in a class action, could be "be *enjoined* from relitigation if the member does not have minimum contacts with the forum." *Id.* at 769 (emphasis in original). The case therefore hardly stands for Schulman's point that "at the very least *whenever any monetary claims* are released as part of a (b)(2) class, the stringent due process standards of *Mullane* and *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) apply."  (Dkt. No. 71 at 41.)

Similarly, Schulman cites to *Larson v. AT&T Mobility LLC*, 687 F.3d 109 (3d Cir. 2012), for the position that "the full rigors of due process" deem "the publication only notice here is unacceptable when the contact information is housed within the defendants' records."  (Dkt. No. 71 at 42.)  But that case is again off-point because it was also a Rule 23(b)(3) settlement, where Rule 23(c)(2)(B) *requires* "individual notice to all members who can be identified through reasonable effort."  *Larson*, 687 F.3d at 123-24; *see* FED. R. CIV. P. 23(c)(2)(B).  In light of the requirement of individual notice for the *Larson* class, it is understandable that the court there would force the defendant that possessed the class members' contact information to use it to send notice.[9]  In fact, Schulman cites no case holding that individual notice is required in the Rule 23(b)(2) context.  The standard for notice in this case is less stringent, and Schulman has failed in his effort to show that the stricter requirement of individual notice applies.

---

[9] *In re Motor Fuel Temperature Sales Practices Litig.*, 279 F.R.D. 598 (D. Kan. 2012), is another case discussing notice to a Rule 23(b)(3) class, not 23(b)(2), but that case approved notice through publication, the very means to which Schulman objects here. *See* 279 F.R.D. at 618 (approving notice plan, explaining that "[i]n addition to the print and radio notices, the Court will post the notice on its 'Motor Fuel Temperature Sales Practices Litigation' website"). Schulman also cites *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832 (9th Cir. 1976), for his point that the notice plan must take a form and manner "that does not systematically leave an identifiable group without notice." (Dkt. No. 71 at 42.)  That case involved an obviously faulty notice program, which the court criticized because of the migratory nature of the many seasonal farm workers making up the class. *Mandujano*, 541 F.2d at 835 n.5. No such isssues exist here.

25

### D.     The Named Plaintiffs and Class Counsel Have Adequately Represented the Rights of Absent Class Members.

Throughout the course of their objections, and particularly in the sections of their submissions relating to intra-class conflicts and adequacy of representation, the Objectors repeatedly cite to Rule 23(b)(2) cases in which the entire class, or certain identifiable segments within the class, receive no or minimal actual relief.  Thus, for example, in *Crawford*, 201 F.3d 877,[10] a case relied on heavily by the Objectors, the defendant agrees generally to stop using a particular form letter, with no particularized undertaking as to the form letter it would use in the future.  (*See supra*, at 19, for a detailed discussion of the *Crawford* case.)  If anything, by comparison with the Proposed Settlement, the rejected settlement in *Crawford* shows why the Settlement here is so valuable to consumers and warrants approval.

*In re Dry Max Pampers Litigation*, 724 F.3d 713 (6th Cir. 2013), is another case on which the Objectors repeatedly try to rely.[11]  That Rule 23(b)(2) settlement—reached before plaintiffs responded to defendant's motion to dismiss, took a single deposition, or served a single formal discovery request—paid class counsel a fee of $2.73 million, the class representatives $1,000 per affected child, reinstated a refund program that had been available to class members throughout a large portion of the class period, and provided labeling changes and generalized information on Proctor & Gamble's website regarding treatment of diaper rash.  724 F.3d at 715–16.  The court's analysis focused on a comparison of the relief provided against the fee award to determine whether the fee award amounted to preferential treatment.  *Id.* at 718.  The court concluded that the settlement showed preferential treatment, noting that the refund program was essentially a nullity because it required consumers to present receipts or UPC codes from potentially years-old Pampers boxes that no one likely still possessed.  *Id.* at 718–19.  The court

---

[10] (*See* Dkt. No. 71 at 14–15, 23, 26, 35, 41 and Dkt. No. 72 at 2, 23–25, 27–31.)
[11] (*See* Dkt. No. 71 at 3, 5, 9, 23, 31-32 and Dkt. No. 72 at 22, 29, 31.)

also noted that neither party provided any data—despite having this deficiency pointed out by objectors—as to the number of consumers who had actually obtained refunds. *Id.* As to the label change and generalized information posted on Proctor & Gamble's website, the court found them to be of little value to consumers.  In sum, the court concluded that the relief to class members was illusory, and that the settlement benefitted class counsel vastly more than class members. *Id.* at 721.

Finally, *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006) is another case that involves a similarly flawed settlement.  There, the settlement was to pay the named plaintiff $3,000, and class members less than $1, with money remaining in the $950,000 fund to be paid to charity and plaintiff's counsel.  434 F.3d at 952.  The court concluded, based on a balancing of the potential risk in litigating, a deal that paid class members less than $1 looked "like a sellout." *Id.* (relying on *Crawford*, among others, for its discussion).  As Plaintiffs' expert, Neil Richards has twice noted in this case, the privacy protections provided to consumers via the Proposed Settlement can easily be valued in the billions of dollars.  (Dkt. No. 61-4 ¶¶ 38–43; Prof. Richards Decl. ¶¶ 8–9.)  Further, members of the Rule 23(b)(2) Class will retain their right to sue Defendants in an individual lawsuit for money damages.  As with *Crawford*, this case is likewise worlds away from the settlement the court rejected in *Murray*.

The Objectors repeatedly try to compare this case to the cases described above—in fact, however, in light of the nature of the relief provided in the Proposed Settlement here, there is simply no comparison.

> **1.    Since all Class Members benefit from the injunctive relief, the fact that some claims may ripen in the future is not a bar to certification.**

Both Schulman and Aaron argue that intra-class conflicts defeat adequacy of representation under Rule 23(a)(4).  (Dkt. No. 71 at 28; Dkt. No. 72 at 29.)  This is so, they

assert, because the Rule 23(b)(2) Class includes not only individuals whose reports were sold by LexisNexis, but also those whose reports have not yet been sold (Dkt. No. 71 at 29; Dkt. No. 72 at 29).  According to the Objectors, the Court supposedly cannot certify a class of "past and future claimants"  (Dkt. No. 72 at 29).  The Objectors are incorrect.

The Objectors' attempt to argue against these facts by pointing to the inclusion of both past and future claimants is in fundamental tension with the very nature of Rule 23(b)(2) injunctive relief—there will always be future claimants in an injunctive relief class because that is the nature of injunctive relief. It deters *future* conduct.  Thus, it is well established that "[t]here is no *per se* prohibition against certifying a single class including both presently injured and future claimants."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 269 (2d Cir. 2006) (distinguishing *Amchem* and finding no conflict between class members who already had been assessed a tax penalty and future-risk class members not yet penalized) (citing MCLAUGHLIN ON CLASS ACTIONS: LAW AND PRACTICE § 4.02).

Courts have long-recognized this reality, certifying classes that contain current and future claimants both before and after *Amchem*.  *See Isby v. Bayh*, 75 F.3d 1191, 1194 (7th Cir. 1996) (affirming certification of Rule 23(b)(2) class of those "who, as of May 4, 1992, and thereafter in the future, are confined or will be confined in the Maximum Control Complex in Westville, Indiana");  *Henry v. Gross*, 803 F.2d 757, 762–63 (2d Cir. 1986) (affirming judgment in which court certified class consisting of individuals who "receive or will receive public assistance payments through the New York City Human Resources Administration or any successor entity"); *Dixon v. Bowen*, 673 F. Supp. 123, 127 (S.D.N.Y. 1987) ("Inclusion in the class of those who apply for benefits after the entry of the preliminary injunction order protects applicants who would otherwise have to wait for defendant's illegal application of the severity

28

regulation to occur before they seek a post-hoc remedy."); *see also Pashby v. Cansler*, 279 F.R.D. 347, 353–54 (E.D.N.C. 2011) (certifying Rule 23(b)(2) litigated class consisting of Medicaid recipients injured by the implementation of a Medicaid policy as well as future Medicaid recipients who would also be affected under the same policy); *Raymond v. Rowland*, 220 F.R.D. 173, 180–81 (D. Conn. 2004) (certifying class including current and future government-benefit recipients); *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, No. CV–03–2489 (DGT), 2004 U.S. Dist. LEXIS 5189, at *83 (E.D.N.Y. Mar. 30, 2004), *vacated in part on other grounds*, 465 F.3d 503 (2006) (including within certified class "[a]ll present and future New York City preschool children"); *Dajour B. ex rel. L.S. v. City of New York*, No. 00 CIV. 2044(JGK), 2001 U.S. Dist. LEXIS 15661, at *36 (S.D.N.Y. Oct. 3, 2001) (certifying class, over defendant's opposition, that included future claimants); *McKenzie v. City of Chicago*, 175 F.R.D. 280, 290 (N.D. Ill. 1997) ("A class including members who are likely to suffer some harm in the future can be certified under Rule 23(b)(2) where the only relief sought is declaratory and injunctive."). Schulman and Aaron provide no reason why the Court should abandon this established law and refuse to finally certify this Rule 23(b)(2) Class.

This common-sense treatment of future class members is also consistent with the text of Rule 23(a)(4). Rule 23(a)(4) requires that the named representative(s) "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Adequate representation requires that the named plaintiffs "be part of the same class and possess the same interest and suffer the same injury as the class members." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003) (quotations omitted). A conflict that defeats adequacy is more than "merely

speculative or hypothetical." *Id.* at 430.  Rather, the conflict "must be fundamental.  It must go to the heart of the litigation." *Id.* at 431 (citing 6 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 18:14 (4th ed. 2002)).  The sort of conflicts that prevent meeting the adequacy prong for certification are those in which the named representatives leverage themselves into a better settlement by purporting to represent absent class members who have better claims than they do. *Id.*

Here, there is no conflict within the Rule 23(b)(2) Settlement Class.  The Named Plaintiffs are members of the Classes they seek to represent, and face the same risk of injury as every other member of the Rule 23(b)(2) Class.  The interests of all class members are aligned— they all desire the same thing, that is, for LexisNexis to change its conduct with regard to Accurint reports it sells to debt collectors.  (Dkt. No. 1 ¶¶ 1, 27–28, 30–32, 35.)  That change in conduct would provide all Class Members with the vast bevy of FCRA rights as if Accurint reports were covered by the FCRA, including notice when reports are sold under certain circumstances, the ability to learn the information LexisNexis is reporting about them, and the right to dispute inaccurate information, among many others.  (*See id.* ¶¶ 27–32.)  The injunctive relief imposed by the Rule 23(b)(2) Settlement accomplishes these goals, providing valuable, genuine relief for the claims under which Plaintiffs originally filed this lawsuit.  (Dkt. No. 63 at 13–16 (explaining specifics of injunctive relief).)

The Named Plaintiffs and Rule 23(b)(2) Class Members were, or in the future stand to be, the subject of Accurint reports sold to debt collectors, further showing their alignment of interests in seeking improved regulation and transparency in such reporting.  *See Singleton v. Domino's Pizza, LLC*, No. DKC 11-1823, 2013 U.S. Dist. LEXIS 142528, at *18 (D. Md. Oct. 2, 2013) (granting final approval to settlement and concluding adequacy met because "the Named

Plaintiffs share an interest with class members in establishing Domino's policies during the relevant period"); *In re Ins. Brokerage Antitrust Litig.*, 86 F.R.D. 654, No. 04–5184 (CCC), 2013 U.S. Dist. LEXIS 108042, at *87–88 (D.N.J. Aug. 1, 2013) ("In order to find an 'antagonism between [named] plaintiffs' objectives and the objectives of the [class],' there would need to be a 'legally cognizable conflict of interest' between the two groups.") (alterations in original); *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 502 (S.D. Tex. 2004) ("A sufficient alignment of interests exists when 'all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class.'"); *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007) ("Conflicts of interest are rare in Rule 23(b)(2) class actions seeking only declaratory and injunctive relief.").

Even if the Objectors could find some way in which the interests of the named representatives *differed* from some group of absent class members, courts recognize that every identifiable potential conflict does not render certification invalid—the key is that the conflict, if one even exists, must be *fundamental. Denney v. Deutsche Bank AG*, 443 F.3d 253, 269 (2d Cir. 2006); *see In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 347 (3d Cir. 2010) ("The fact that the settlement fund allocates a larger percentage of the settlement to class members with [more valuable claims] does not demonstrate a conflict between groups. Instead, the different allocations reflect the relative value of the different claims.").  Although Schulman and Aaron raise the issue of supposed intra-class conflicts, neither identify exactly *how* their supposed conflict "goes to the heart of the litigation."  (*See* Dkt. No. 71 at 27–29; Dkt. No. 72 at 29–31.)

This failure is easily explained.  In every way that matters, the Named Plaintiffs have the same interests as absent class members, and no conflict exists.

## 2.      There is no need for subclasses pre- and post-*Adams*.

Aaron and Schulman both argue that subclasses are required for the Court to approve the Proposed Settlement, with Aaron specifically asserting that there must be separate representation for pre- and post-*Adams* subclasses because they "have qualitatively different claims," with the post-*Adams* class having a stronger case for FCRA willfulness.  (Dkt. No. 71 at 29; Dkt. No. 72 at 30.)  Aside from the fact that this claim completely ignores that the difficulties in proving willfulness existed both before and after *Adams*, and that claims from both time periods share the same fundamental weaknesses,[12] subclassing here is inappropriate because the entire Class obtains the identical injunctive relief, and that relief satisfies the claims for which this lawsuit was originally brought.  The interests of the Named Plaintiffs and Class Members therefore align perfectly, eliminating any possible conflict that would destroy adequacy.

Regardless of the outcome of *Adams*, Named Plaintiffs are not fatally conflicted because the injunctive relief provides equal relief to Class Members both before and after *Adams*.  Thus, contrary to Aaron and Schulman's suggestions and unlike the settlement that the Supreme Court rejected in *Amchem*, this one does not unfairly disadvantage one portion of the Class.  *See Amchem*, 521 U.S. at 626 ("In significant respects, the interests of those within the single class are not aligned.  Most saliently, for the currently injured, the critical goal is generous immediate payments.  That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future.").

The Named Plaintiffs and Class Members here have similar interests that are likewise aligned, as Plaintiffs filed this case to enforce their FCRA rights with respect to Accurint reports sold to debt collectors, and to show that LexisNexis' violations of the FCRA were willful with respect to Accurint reports.  (Dkt. No. 1 ¶¶ 1, 27–34, 79, 88, 92.)  Since their interests are

---

[12] (*See* Defendants' Reply Brief, at 19–23.)

appropriately aligned with those of Class Members before and after *Adams*, the Named Plaintiffs are adequate representatives of the Rule 23(b)(2) Class.

### 3. The service awards do not render the Named Plaintiffs inadequate representatives of the Classes.

Schulman and Aaron also assert that the requested service awards render the Named Plaintiffs inadequate, as the awards supposedly create a disincentive for them to champion the relief for absent Class Members.[13]  (Dkt. No. 71 at 35–36; Dkt. No. 72 at 31–32.)  Once again, the Objectors' argument is premised on the incorrect and insupportable notion that the Rule 23(b)(2) Settlement is worthless to consumers.  (Dkt. No. 71 at 35; Dkt. No. 72 at 31.)  As set forth above, nothing could be further from the truth, given that the named plaintiffs obtained a settlement worth, *at minimum*, an estimated $160 million.  (Dkt. No. 63-6 ¶ 43.)  This is an enormously valuable settlement, particularly in light of the weakness in Plaintiffs' claims. Persuading a defendant like LexisNexis to overhaul its reporting processes to comply with a law it has steadfastly claimed is inapplicable, and the accompanying benefit it provides consumers going forward, is an outstanding result for the Class.  Such stellar results favor a conclusion that adequacy is met.  *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1175 (8th Cir. 1995) ("The adequacy of class representation . . . is ultimately determined by the settlement itself.") (alteration in original, quotations omitted).

The Court also should reject Aaron's objection that Plaintiffs' Counsel's application for modest $5,000 service awards on behalf of the Class Representatives creates a conflict of interest.  (Dkt. 72 at 3–4, 21–22.)  Service awards in the range requested here are common in this Circuit.  *See Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 477 (W.D. Va. 2011) (holding that a "$5,000 incentive award for each class representative is reasonable"); *Cappetta v.*

---

[13] Notably, neither Schulman nor Aaron challenges the propriety of the awards themselves nor their amounts.

*GC Servs. LP*, No. 3:08cv288-JRS (E.D. Va. April 27, 2011) (holding that named plaintiffs were entitled to a $5,000 incentive award for "invaluable contributions in furtherance of [the] litigation"); *Conley v. First Tenn. Bank*, No. 1:10CV1247-TSE (E.D. Va. Aug. 18, 2011) (approving $5,000 incentive award); *Lengrand v. Wellpoint*, No. 3:11Cv333-HEH (E.D. Va. Nov. 13, 2012) (approving incentive award of $5,000). Indeed, far larger awards have been approved. *See e.g., Rowles v. Chase Home Fin., LLC*, No. 9:10-cv-01756-MBS, 2012 U.S. Dist. LEXIS 3264 (D.S.C. Jan. 10, 2012) (approving awards to two class representatives of $10,000 and $25,000).

As described in their Declarations, the Class Representatives here undertook significant responsibilities and expenditures of time on behalf of the Class. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."). Because of their efforts, millions of consumers who never had to personally file lawsuits will now receive important privacy protections as well as, in the case of the approximately 31,000 Rule 23(b)(3) Class members, significant monetary relief.

Particularly in a case where, as here, the Settlement achieves valuable relief on behalf of more than one hundred million consumers, an award to compensate the Class Representatives for their time and efforts on behalf of the Class is appropriate. In the cases Aaron relies on, unlike here, the settlements at issue achieved little if any value for absent class members. *See, e.g., In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013) (finding that unnamed class members would receive "nothing but illusory injunctive relief"); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) (finding that "the failure to afford effectual relief to any other class member makes the deal look like a sellout").

Reinforcing the conclusion that the service awards here create no improper conflict, the parties did not negotiate the service awards "until after the substantive terms of the settlement had been negotiated and agreed upon during the mediation." (Settlement Agmt. ¶ 5.6.) Thus, there could be no possibility of a trade-off between the size of the service awards and the relief to absent class members. (Declaration of Professor Geoffrey Miller, attached as Ex. 1 to Plaintiffs' Memorandum in Support of Motion for Attorneys' Fees, Expenses, and Service Awards, filed concurrently herewith, ("Prof. Miller Decl.") ¶ 15(c).) Furthermore, the Settlement Agreement provides that Plaintiffs "shall make" an application for a $5,000 service award "for each Named Plaintiff." (*Id.*) The service awards are to be applied for unconditionally—regardless of whether a Class Representative supports the Settlement. (*Id.*) Thus, case does not implicate the concern highlighted by the Ninth Circuit in *Radcliffe v. Experian Information Solutions*, 715 F.3d 1157 (9th Cir. 2013).

Nor does the *Radcliffe* decision in any way compromise the adequacy of Plaintiffs' Counsel. (See Dkt. 72 at 33.) It certainly was not counsel's intention in *Radcliffe* to coerce or influence the named plaintiffs,[14] and the Ninth Circuit made no finding that it did so. Rather, the Ninth Circuit—in its role of vigilantly guarding class action settlements—found that the mere presence of language suggesting that only class representatives who "supported" the settlement would receive a service award created a conflict, irrespective of whether there was any actual injury, and returned the case to the trial court, expressly noting that a new settlement could be

---

[14] Aaron incorrectly implies that an alleged statement that a named plaintiff would "jeopardize" his service award by opposing the settlement was made by Mr. Caddell. (Dkt. 72 at 34.) In fact Mr. Caddell did not make, nor was he alleged to have made, any such statement, and the lawyer who was alleged to have made this statement does not represent the Class in this case. (Declaration of Michael Caddell, attached as Ex. 1 to Plaintiffs' Memorandum in Support of Joint Motion for Final Approval of Class Action Settlement, filed concurrently herewith ("Caddell Decl."), ¶ 31.)

considered—provided the offending language was removed—and that the court even had discretion to award fees to class counsel. *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) ("Should the district court approve such an agreement, it may then exercise its discretion in deciding whether, and to what extent, class counsel are entitled to fees under the common-fund doctrine."). In *Radcliffe*, the incentive award provision was not even inserted into the settlement agreement until two months after the settlement was reached and had already been agreed to by the settling plaintiffs. (Caddell Decl. ¶ 31.) Counsel nevertheless understand the Ninth Circuit's rule regarding conditional service awards and have implemented a "best practice" of applying for service awards for all named plaintiffs, regardless of whether they support the settlement or not. (*Id.*) As Professor Miller, who also provided an expert report in *Radcliffe* and was prepared to testify in support of counsel's ability to adequately represent the class in *Radcliffe* on remand, explains: "Nothing in *Radcliffe* gives me cause for concern about counsel's ability to provide vigorous, diligent, and unconflicted representation to all class members in the present litigation." (Prof. Miller Decl. ¶ 39(d).)

### 4. Adequacy is met even though some Named Plaintiffs are also members of the Rule 23(b)(3) Class.

Aaron and Schulman also claim adequacy is ruined by the fact that the Named Plaintiffs are members of both Settlement Classes. (Dkt. No. 71 at 35–36; Dkt. No. 72 at 31–32.) This assertion is simply untrue. In fact, Named Plaintiffs Berry, Darbonne, Millen, Hernandez, Godfrey, and Saeed are each members of the Rule 23(b)(2) Settlement Class, and Hernandez and Godfrey are *not* members of the Rule 23(b)(3) Settlement Class. (*See* Dkt. No. 1 ¶¶ 55, 63.) In addition, this objection is yet another example of the continuing refusal by the objectors to acknowledge that the Rule 23(b)(2) Settlement Class receives significant conduct-based relief in this settlement and retain the ability to sue Defendants for actual damages. (*Id.*)

The Rule 23(b)(3) Settlement Class, consisting of individuals who contacted LexisNexis directly and sought FCRA rights and protections—requesting a copy of their Accurint consumer file or disputing inaccurate information in an Accurint report—was crafted after Plaintiffs' investigation and settlement discussions revealed the likelihood that these consumers suffered pecuniary harm because they were impacted enough to contact LexisNexis and request or dispute information in their Accurint file.   (Dkt. No. 63 at 16–17.)   These claims were assessed a monetary value because they were underpinned by consumers taking actual action to contact LexisNexis to assert FCRA rights, whereas the claims tied to the injunctive relief given to the Rule 23(b)(2) Class are largely procedural in nature.  (*Id.* at 13.)  And, since individuals who are once the subject of a report sold to debt collectors are likely to be the subject of similar, future reports, the Parties agreed that the proposed injunctive relief is the appropriate means to provide true, genuine relief to the Rule 23(b)(2) Settlement Class immediately and into the future.  (*See id.* at 13–14.)   Any monetary claims that individuals in the Rule 23(b)(2) Settlement Class possess are merely incidental to the vast injunctive relief that they will receive, making certification under Rule 23(b)(2) for that Class the appropriate procedure under *Dukes*.

Other courts to consider the interaction of injunctive-only and monetary relief classes after *Dukes* have agreed that the decision countenances an arrangement like that structured here. *See In re Motor Fuel Temp. Sales Practices Litig.*, __ F.R.D. __, No. MDL No. 1840, 2013 U.S. Dist. LEXIS 50667, at *101–02 (D. Kan. Apr. 5, 2013) (acknowledging *Dukes* and certifying a 23(b)(2) class solely for injunctive relief and a 23(b)(3) class limited to liability); *Bristol Vill., Inc. v. Louisiana-Pacific Corp.*, 916 F. Supp. 2d 357, 370 (W.D.N.Y. 2013) ("*Dukes* does not preclude certifying a class under Rule 23(b)(2) and certifying *separately* a class under Rule 23(b)(3) for non-trivial monetary damages.") (emphasis in original); *Jermyn v. Best Buy Stores,*

*L.P.*, 276 F.R.D. 167, 173–74 (S.D.N.Y. 2011) (explaining that *Dukes* held only that class

certification under Rule 23(b)(2) of classes seeking both injunctive and monetary relief, "where

the monetary component was more than merely 'incidental' to the injunctive relief," was

"inconsistent with the history and structure of the rule," but did not prohibit certifying an

injunctive relief class under Rule 23(b)(2) and separately certifying a monetary damages class

under Rule 23(b)(3)); *Stinson v. City of New York*, 282 F.R.D. 360, 381 (S.D.N.Y. 2012)

(applying the *Jermyn* reasoning in the context of a 42 U.S.C. § 1983 claim).  Plaintiffs have

followed precisely this blueprint, making the certification of separate Rule 23(b)(2) and (b)(3)

classes entirely appropriate.[15]

>    **5.    The so-called "expansion" of the Class does not stand in the way of
>          final approval.**

Objectors also try to make something of the fact that the definition of the Rule 23(b)(2)

Settlement Class differs from the "Impermissible Use" uncertified putative class defined in the

Complaint, arguing that this change represented some sort of impermissible "expansion."  (*See*

Dkt. No. 72 at 22, 38-41; Dkt. No. 71 at 26–29.)  In fact, such "expansions", as Objectors put it,

are common where the requirements for class certification are otherwise met.  *See, e.g.*, *Howe v.*

*Townsend (In re Pharm. Indus. Average Wholesale Price Litig.)*, 588 F.3d 24, 40–41 (1st Cir.

2009) (affirming approval of expanded settlement class because the defendant "bargained for

'total peace' to resolve all remaining claims against it in the class settlement, the district court

---

[15] The Sixth Circuit *In re Dry Max* court also commented regarding incentive awards that "[o]ur court has never approved the practice of incentive payments to class representatives, though in fairness we have not disapproved the practice either." *Id.* at 722. Courts within the Fourth Circuit, however, regularly approve service awards to class-action named plaintiffs. *See, e.g.*, *Singleton*, 2013 U.S. Dist. LEXIS 142528, at *59-60; *In re Titanium Dioxide Antitrust Litig.*, No. RDB–10–0318, 2013 U.S. Dist. LEXIS 130288, at *20 n.9 (D. Md. Sept. 12, 2013); *Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339, 2013 U.S. Dist. LEXIS 72981, at *17-18 (S.D. W. Va. May 23, 2013); *Temp. Servs., Inc. v. Am. Int'l Group, Inc.*, No. 3:08-cv-00271-JFA, 2012 U.S. Dist. LEXIS 131201, at *16-17 (D.S.C. Sept. 14, 2012); *In re Tyson Foods Inc.*, No. RDB–08–1982, 2010 U.S. Dist. LEXIS 48518, at *14 (D. Md. May 11, 2010).

approved the expansion to include residents in nine states that were previously excluded and the district court appropriately explained its reasons for doing so.); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 791-792 (3d Cir. 1995) (approving expanded class); *Russell v. United States*, 2013 U.S. Dist. LEXIS 31113 (N.D. Cal. Mar. 5, 2013) (preliminarily approving settlement of an expanded version of the class previously certified).

The definition of the Rule 23(b)(2) Settlement Class makes perfect sense, and is closely tied to the Plaintiffs' reasons for bringing this suit in the first place. The Rule 23(b)(2) Settlement Class is comprised of the very individuals who benefit from the Proposed Settlement. *See, e.g.*, *Howe*, 588 F.3d at 40–41 (affirming re-definition of the class where "[t]he court originally excluded residents in these nine states because the defendants had objected that including residents from these states defeated the predominance requirement" but where "[i]n the settlement, however, [defendant] bargained for "total peace" to resolve all remaining claims against it"). Here, the class definition makes sense because the Rule 23(b)(2) Settlement Class includes all individuals who stand to benefit from the Defendants' major overhaul of their Accurint product. As stated elsewhere in the Parties' submissions, the Rule 23(b)(2) Settlement Class meets all the requirements for class certification, and the differences between the Rule 23(b)(2) Settlement Class and the putative class described in the Complaint has no bearing on this conclusion.

None of the cases cited by the Objectors are to the contrary. For example, the Objectors rely heavily on *Manchouck v. Mondelez Int'l Inc.*, No. C 13-02148 (WHA), 2013 U.S. Dist. LEXIS 80132 (N.D. Cal. June 3, 2013); but that document is not even a court opinion. Instead, it is a standing notice apparently provided by a District Court in the Northern District of California at the beginning of class cases, having nothing to do with any actual class definition or class

39

motion.  Similarly, Aaron cites *Domonoske*, 705 F. Supp. At 518-19, but that case represented an attempt to use a class settlement to bind *non-parties to the case*, not a change in the settlement class that otherwise satisfies the requirements for class certification.  *Id.* (referring to the settlement as "fundamentally flawed as written because it purports to declare the rights of non-class members . . . .")

*Smith v. Levine Leichtman Capital Partners, Inc.*, No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672, at *5–6 (N.D. Cal. Nov. 15, 2012), relied on by Objector Schulman, is similarly inapposite because it involves a Rule 23(b)(3) settlement class for which the court found the settlement consideration inadequate "due to the increase in class size," and because "the potential monetary recovery for individual class members [was thereby] significantly diminished."  *Id.* That court's reason for disapproving the expansion – because it diminished the per capita award to class members in a limited fund settlement – has no bearing on the indivisible injunctive relief provided here which is not affected by the number of Class Members and does not represent a zero-sum game.  Schulman also cites to *In re Microsoft Corp. Antitrust Litig.*, 214 F.R.D. 371, 376-377 (D. Md. 2003), where the court refused to permit a consumer class to be expanded to a category of business customers that had never asserted and did not assert any claims against the defendant.  Finally, Schulman simply misreads a law review article, suggesting that it argues that there is something wrong about a settlement class differing from the putative class defined in a complaint.  *See* 1 J. OF LEGAL ANALYSIS 167, 191-92.  But this is not what the article says. Instead, it simply stands for the proposition that district courts should not approve settlements that are the result of "reverse auctions," and one "yellow flag" of a reverse auction is the expansion of class definition.  The Objectors do not try to argue that the Proposed Settlement is the result of a reverse auction (such a suggestion would be absurd).

Nor does the change in class definition present any standing issues, as asserted by the Objectors. (Dkt. No. 72 at 38-40; Dkt. No. 71 at 28.) First, the Fourth Circuit "has recognized that an increased risk of injury may be an injury-in-fact." *Rhodes v. E.I. Du Pont de Nemours & Co.*, 657 F. Supp. 2d 751, 758 (S.D. W. Va. 2009); *see Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160, 164 (4th Cir. 2000) (*en banc*) ("threatened rather than actual injury can satisfy Article III standing requirements" and "[t]hreates or increased risk … constitute[] cognizable harm"). These principles were applied by the Second Circuit in *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264–66 (2d Cir. 2006). There, the court held that, "The future-risk members of the Denney [settlement] class have suffered injuries-in-fact, irrespective of whether their injuries are sufficient to sustain any cause of action." *Id*.

Second, the Objectors' standing argument relies on cases outside of the class action context, and ignores the distinction between "jurisdictional" standing and requirements to bring a cause of action under a statute. There is a difference between constitutional standing, which is always required, and statutory standing, which is not required of all members of a settlement-only class. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 107–08 (D.C. Cir. 2002) ("[u]nlike constitutional standing, this court's jurisdiction does not turn on antitrust standing"); *Denney*, 443 F.3d at 265 ("The future-risk members of the Denney class have suffered injuries-in-fact, irrespective of whether their injuries are sufficient to sustain any cause of action."); *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 130 (2d Cir. 2003) (explaining that "plaintiffs' lack of statutory standing does not divest the district court of original jurisdiction over the . . . action."); *Rhodes v. E.I. Du Pont de Nemours & Co.*, 657 F. Supp. 2d 751, 759 (S.D. W. Va. 2009) ("the weight of authority suggests that an increased risk of injury constitutes an injury-in-fact under Article III."). Therefore, Aaron and Schulman's objections that the

expanded class members' future FCRA claims have not accrued are inconsequential to whether this Court may approve the class settlement.[16]

Finally, the Objections are simply illogical.  The Proposed Settlement is designed to protect Rule 23(b)(2) Class Members against future injury based on future conduct.  By definition, the injury has not yet accrued—the point of the Proposed Settlement from the perspective of the Rule 23(b)(2) Settlement Class is to make sure it never does.

### E.    Class Counsel Is More Than Adequate, And Objectors Have Not Shown Otherwise.

Aaron also attacks the adequacy of Class Counsel, claiming that Class Counsel has bargained for a settlement that benefits it "vastly more than" Class Members.  (Dkt. No. 72 at 32.)  Aaron then attempts to support this argument with little more than its opinions regarding the adequacy of the Settlement, without regard to actual facts or governing law.  Since, at the preliminary approval stage, class counsel's adequacy is presumed absent contrary proof.  *Black v. Rhone-Poulenc, Inc.*, 173 F.R.D. 156, 162 (S.D.W. Va. 1996), Aaron must provide some evidence that Class Counsel is now inadequate.  Aaron's arguments do nothing to overturn the presumption at this stage, making denial of this objection likewise appropriate.

### 1.    Aaron's subjective evaluation of the Settlement is insufficient to even raise the issue of inadequacy.

Aaron first claims that inadequacy is shown for two reasons: (1) since the FCRA does not provide for injunctive relief, a settlement providing that relief deprives class members of due process or shows a fundamental misunderstanding of the FCRA; and (2) the lack of monetary relief to the Rule 23(b)(2) Class, combined with a class-action waiver in the release, apparently

---

[16] This also stands to reason.  If it turns out that some members of the expanded (b)(2) Settlement Class never would have had a report issued about them, then they also, by definition, have no grounds to complain about it because they have no FCRA claim.

proves a failure of adequacy in and of itself. (Dkt. No. 72 at 33.)  Neither of these points is accurate, and neither is a sound basis for the Court to conclude that adequacy is lacking.

As set forth fully above, the fact that the FCRA may not expressly provide for injunctive relief does not bar the Parties from settling for just that relief. (*See supra*, Section II.A.3.) Indeed, Class Counsel has litigated numerous FCRA class actions to settlement, and has obtained as part of those settlements injunctive relief and practice changes.  (*See* Caddell Decl. ¶¶ 28–30 (collecting FCRA cases in which Caddell & Chapman (often along with Consumer Litigation Associates) has settled FCRA class actions and obtained injunctive relief or practice changes).) Simply put, there cannot be a combination of Class Counsel that has greater breadth or depth of knowledge of FCRA-class-action litigation.  (*Id.*; Declaration of Leonard Bennett, attached as Ex. 3 to Plaintiffs' Memorandum in Support of Motion for Award of Attorneys' Fees, Costs, and Expenses, filed concurrently herewith ("Bennett Decl."), ¶¶ 7, 10–13; Declaration of James Francis, attached as Ex. 2 to Plaintiffs' Memorandum in Support of Motion for Award of Attorneys' Fees, Costs, and Expenses, filed concurrently herewith ("Francis Decl."), ¶¶ 3–4.) The fact that this Settlement includes something that can be bargained-for in settlement and courts have implemented in the past, but with which Aaron apparently disagrees, is no shadow on the adequacy of counsel that negotiated the Settlement.  To show inadequacy, far more is required.  *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 297 (3d Cir. 2001) ("Salovaara has not *shown* the existence of any improper collusion or bad faith in reaching this Agreement.") (emphasis added).

Similarly, Aaron and Schulman's criticism of the lack of monetary relief is likewise misplaced.  First, of course, this is a criticism of the fairness of the Settlement, not Counsel's adequacy.  And, as set forth above, the Settlement is an excellent result for Class Members,

providing genuine, valuable injunctive relief that provides FCRA and FCRA-like protections where previously there were none. In light of the extensive and valuable nature of this relief, the fact that there is no monetary component—particularly where the Parties repeatedly shared their litigation positions and strategies during arm's-length negotiations—is simply an element of compromise that certainly does not call for the rejection of the Proposed Settlement. *Clayton v. Knight Transp.*, No. 1:11-cv-00735-SAB, 2013 U.S. Dist. LEXIS 156647, at *13 (E.D. Cal. Oct. 30, 2013) ("The very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'") (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 623–24 (9th Cir. 1982)); *Swift v. Direct Buy, Inc.*, No. 2:11-CV-401-TLS, 2013 U.S. Dist. LEXIS 152618, at *28 (N.D. Ind. Oct. 24, 2013) ("A settlement will not be rejected solely because it does not provide a complete victory to the plaintiffs.").

Schulman's hypothesis is also belied by the real cash and monetary resource contribution required of LexisNexis due to this litigation and Settlement. Conservatively and in hard dollars, the injunctive relief has required and will demand millions to retool and reconstruct the manner in which the industry leading Accurint products are furnished and sold. Customer contracts will be renegotiated. Man hours will be and have been absorbed to reprogram the Defendants' systems. Employee training and education will continue. Objectors also ignore the obvious cash benefit of the injunctive relief. By this agreement, LexisNexis has agreed to provide consumers the full file required under the FCRA. *See* 15 U.S.C. § 1681g. If just 2% of a 100-million-person-class request the free report, at the $11.50 charge otherwise permitted by the Federal Trade Commission, the hard cash value is $23 million. Further, upon this imposition of Accurint's FCRA governance, Class Members will for the first time be able to force the remedy

of inaccurate information using the remedies to become available under the statute. *See, e.g.*, 15 U.S.C. § 1681e(b) (requiring "reasonable procedures to assure maximum possible accuracy[.]"); 15 U.S.C. § 1681i(a) (requiring a "reasonable reinvestigation" of disputed information). The ability to correct inaccurate information is indeterminable and not likely remediable by actual damage claims. However, certainly it will have a direct monetary impact for many Class Members that will dwarf even the amount of the free reports. Criticism of more common injunctive relief settlements is often well-founded, as such relief may be insubstantial and require only a minor or technical change in process. But while such defective injunctive relief may indict the advocates of such settlements, it also highlights by contrast the very unusual and significant relief obtained by these Plaintiffs and these class advocates.

> **2.**    **Comments regarding issues in other cases are nothing more than a smear campaign by objectors who have shown themselves to be of questionable motive.**

Aaron next launches a personal attack on Class Counsel, deriding Michael Caddell as supposedly inadequately representing a class in another case, *In re Trans Union Corp. Privacy Litig.*, No. 00-cv-4729 (N.D. Ill.). (Dkt. No. 72 at 33–34.) Aaron makes this bald statement without a citation to any conclusion by the *Trans Union* (or any other) court that Mr. Caddell was indeed found inadequate—because there *was no such finding*. Rather, the *Trans Union* court granted final approval to the settlement, found Class Counsel (including Mr. Caddell) adequate, overruled all objections, and finally approved the settlement more than a year and a half before Aaron's Counsel even made an appearance in that case. (Dkt. No. 83 at 6–7; *see In re Trans Union Corp. Privacy Litig.*, No. 1:00cv4729 (N.D. Ill. Sept. 17, 2008).)

Similarly, Aaron attacks Mr. Caddell based on a Ninth Circuit opinion that reversed a class action settlement due to inclusion in the settlement agreement language that conditioned incentive awards to class representatives on their support of the proposed settlement. *Radcliffe*,

715 F.3d at 1161.  Plaintiffs address the lack of applicability of *Radcliffe* above, and further reiterate the key distinguishing factor—there is not even a suggestion that the requested incentive awards for the Named Plaintiffs here are in any way conditioned on their support of the Settlement.

**3.      The approval of attorneys' fees is no indication of inadequacy.**

Schulman also argues that the attorneys' fees and service award payments to the Named Plaintiffs signal a "settlement that is inequitable as between class counsel and the class." (Dkt. No. 71 at 31 (citing *In re Bluetooth Headset Prods. Liability Litig*., 654 F.3d 935, 947 (9th Cir. 2011)).) This argument of course builds upon the myth that the Settlement is worthless to members of the Rule 23(b)(2) Class, a point more-than-amply refuted throughout this brief. And leaving aside the fact that In re Bluetooth is not binding on the Court's analysis of the propriety of Counsel's fees or the service awards, the settlement analyzed in *In re Bluetooth* was nothing like the Settlement here in terms of relief provided to the Class and the relative awards of attorneys' fees and service awards. In short, Schulman's argument again fails, and the Court should not consider it grounds for rejection of any portion of the Settlement.

*In re Bluetooth* involved a settlement that provided the class claiming hearing loss from wireless listening devices with no money for their injuries, only acoustic-safety information on defendants websites and in product packaging; $100,000 in *cy pres* awards to non-profit organizations dedicated to preventing hearing loss; up to $800,000 in attorneys' fees for class counsel; separate payment of class counsel's costs; and $12,000 in service awards for the nine class representatives. 654 F.3d at 939–40. The district court approved the settlement, and granted $850,000 in attorneys' fees and costs and $12,000 in service awards. *Id.* at 940. On appeal, after concluding that the record was insufficient to support the district court's award of attorneys' fees, costs, and service awards, *id*. at 943–45, the Ninth Circuit identified three warning signs

46

that class counsel "allowed pursuit of its own self interests and that of certain class members to infect the negotiations." *Id.* at 947. Those signs, which Schulman incorrectly claims counsel against approval here, are: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries 'the potential of enabling defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (3) "when the parties arrange for fees not awarded  revert to defendants rather than be added to the class fund." *Id.* at 947. None of these factors shows that the requested attorneys' fees here are unreasonable or excessive.

First, the injunctive relief here is not worthless to the Class as was the information on hearing loss provided in *In re Bluetooth*, making the first factor utterly inapplicable. The Rule 23(b)(2) Class obtains substantial relief, conservatively worth more than $100 million, that provides genuine benefits in the form of information privacy, transparency, and accuracy. (Prof. Richards Decl. ¶¶ 9–15.) Such relief is worlds away from the information-only settlement in *In re Bluetooth*, showing easily that Schulman's argument fails from the very start.

Second, the presence of a clear sailing agreement, in and of itself, is no indication of improper conduct. Indeed, courts have concluded that such agreements, when negotiated (as here) after the completion of settlement negotiations, "d[o] not undermine the adequacy of class counsel's representation." *In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283, 312 n.52 (3d Cir. 1998); *Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 4 (2d Cir. 2012) (approving of fees negotiated after settlement reached and that did not reduce what the

class received) (citing *Malchman v. Davis*, 761 F.2d 893, 905 & n.5 (2d Cir. 1985), *abrogated on other grounds*, *Amchem*, 521 U.S. 591).

Finally, fees not awarded for the Rule 23(b)(2) Settlement cannot revert to the Class fund because there is no class fund. The Parties negotiated comprehensive and valuable injunctive relief for the Rule 23(b)(2) Class, and there is no monetary component. It therefore makes no sense to argue that unpaid attorneys' fees, negotiated after the terms of the settlement were reached, should be provided as a monetary award where such relief is not a part of the Settlement. The Rule 23(b)(2) Settlement has none of the signs of impropriety identified in *In re Bluetooth*, making that case no authority by which to reject any part of the Settlement.

### 4. The fact that Class Counsel opposed other settlements has no bearing on their adequacy here.

Aaron also chides Class Counsel for having objected to "other class settlements based on the very same infirmities that exist in this case," asserting that such conduct furthers its arguments regarding inaccuracy. (Dkt. No. 72 at 35.) Neither instance, however, involved a settlement as strong and valuable as the one here, and Aaron has patently failed to show that anything Counsel has done in other cases should in any way impact their adequacy here. That is because Aaron cannot make such a showing.

#### a. *The Acosta v. Trans Union settlement.*

The first case, *Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007), was an FRCA and California Consumer Credit Reporting Agencies Act class action involving the way in which the three largest credit reporting agencies reported debts after consumers had them discharged in bankruptcy. 243 F.R.D. at 379–80. Class Counsel here represented plaintiffs in three related cases ("*White/Hernandez*") against the same three credit reporting agencies, making identical claims on behalf of the same putative class. *Id.* at 381. The *Acosta* plaintiffs moved for

48

preliminary approval of their proposed settlement, and Class Counsel opposed that motion on behalf of the *White/Hernandez* plaintiffs. *Id.* Aaron asserts that the shortcomings of the *Acosta* settlement that Class Counsel opposed are all present here, making Class Counsel's support of this settlement questionable.   (Dkt. No. 72 at 35–36.)   Aaron's objection displays Aaron's counsel's ignorance of both the *Acosta* settlement and class action jurisprudence. The *Acosta* settlement was a textbook "reverse auction," a term describing a defendant's reaction to being faced with multiple, similar lawsuits and sets of counsel. In that case, the defendant presented a substandard settlement to the team of opposing counsel over which defendants could assert the most influence in the settlement context. (Dkt. No. 72–2 at 2.) Nothing could be farther from the present case.

### b.     *The Papadakis v. Northwestern Mutual Life settlement.*

Aaron also asserts that Mr. Caddell's objection to a settlement in which he was a class member shows his inadequacy to act as Class Counsel here because he challenged the defendant's attempt to release claims "far beyond the claims that were actually explored and litigated."   (Dkt. No. 72 at 37.)   Aaron likewise asserts that Mr. Caddell's complaint regarding the *Papadakis* parties' "effort to broaden the complaint retrospect[ively]" further undermines his adequacy, presumably because the Settlement here expands the Settlement Class. (Id.)   Not surprisingly, Aaron cites no authority holding that—even if it were true—this practice would support a finding of inadequacy.

*Papadakis* involved the settlement of a nationwide class action consisting of two classes of insurance policy holders: (1) term policies and (2) disability policies.   (Dkt. No. 72-3 at 1.) Members of the term class would receive a share of a $92 million settlement fund, while the 1.2 million disability class members stood to receive only a letter from Northwestern explaining its policies in making dividends.   (*Id.* at 1–2.)   Mr. Caddell, a member of the disability class,

objected to the settlement in large part due to a sweeping release that, although unmentioned by Aaron, released claims against Northwestern that were unrelated to the subject matter of that lawsuit. (*Id.* at 1–2, 6.) Thus, although the disability class's claims related to the "escalating percentage of premium dividend," but the release extinguished claims relating to virtually anything, including "any and all payments" and "any and all sales, marketing, illustrations, or advertising." (*Id.* at 6–7.) The *Papadakis* release is nothing like the Rule 23(b)(2) Settlement Class release, making any comparison of the two, and any supposed conclusions to be drawn from supporting this release while opposing *Papadakis*'s, unfounded.

### F. The Other Objections Similarly Should Be Overruled.

None of the other handful of objections that have been filed should stand in the way of final approval of this historic settlement. Objectors Shauna McClung (Ex. 6 hereto) and Patricia A. Osborne (Ex. 7 hereto) also lodge objections to the Rule 23(b)(2) Settlement, each stating that the Settlement was poorly negotiated and that LexisNexis escapes with merely a "slap on the hands" for its conduct. These objections do not, however, provide specifics as to why the Court should deny final approval or reasons why the Settlement does not meet the strictures for fairness, reasonableness, or adequacy. (*See generally* Exs. 6–7.) Even assuming that these objections are sufficient challenges to the Settlement's fairness, the Parties have shown here and in their final approval briefing that the Settlement is unquestionably fair, reasonable, and adequate as to both Classes. The Court should therefore overrule these objections and grant the Settlement final approval.

Similarly, Jeanne Giles (Dkt. No. 70) and David Brown (Dkt. No. 79) make general complaints about the (b)(2) settlement, namely that the case should be brought to trial if LexisNexis has indeed violated the law, only the lawyers benefit from the Settlement, the notice

is difficult to understand, the case docket is not available free-of-charge,[17] and LexisNexis sells incorrect data without allowing consumers the ability to correct it. (Dkt. No. 70 at 1–2; Dkt. No. 79 at 15.)  Again, as the Parties have shown, this Settlement is fair reasonable, and adequate, and neither Ms. Giles nor Mr. Brown raise points that show otherwise. Indeed, as explained previously the Settlement provides just the relief Mr. Brown requests, as the practice changes will allow consumers to dispute and correct information in the Collections Decisioning product (as required by the FCRA), and will also allow consumers the ability to provide explanation regarding information that may be inaccurate in the Contact & Locate product. The Settlement therefore addresses precisely the points Mr. Brown raises, and corrects them. These objections provide no basis for denying final approval of the Settlement.

Finally, JoAnne Nix objects to the Rule 23(b)(3) Settlement, complaining of multiple calls from debt collectors who confuse her with a stranger. (Ex. 3.) She wishes that information linking her to the stranger consumer be corrected in LexisNexis's database. (*Id.* at 1–2.) The Settlement cures this problem, as it provides Class Members like Ms. Nix the ability to address information linking them to a stranger with the 100-word statement applied to the Contact & Locate product. This is a unique right, as it permits consumers to correct information that belongs to another person—an ability that the FCRA does not provide. In addition, because she is a member of the Rule 23(b)(3) Class, Ms. Nix will receive a cash payment of approximately $300 for her inconvenience without having to submit a claim form or prove that she was harmed. As shown when applied to consumers like Ms. Nix, the fairness, reasonableness, and adequacy of the Settlement is apparent.

---

[17] Class Counsel is not aware of Ms. Giles contacting them seeking assistance with the notice or case documents (some of which were available on the Settlement websites).

### III.    CONCLUSION.

The objectors have failed to make the requisite showing that the Court should reverse its decision on preliminary approval. The Settlement is more than fair, reasonable, and adequate, and the objectors' protestations only support that conclusion. They point to nothing specific showing that a denial of final approval is appropriate. Accordingly, the Court should overrule these objections and grant final approval.

November 22, 2013

Respectfully submitted,

       /s/ Leonard A. Bennett
Leonard A. Bennett
Matthew J. Erausquin
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J Clyde Morris Blvd., Suite 1A
Newport News VA 23601

Michael A. Caddell
Cynthia B. Chapman
Craig C. Marchiando
**CADDELL & CHAPMAN**
1331 Lamar St.
Suite 1070
Houston TX 77010

James A. Francis
David A. Searles
John J. Soumilas
**FRANCIS & MAILMAN PC**
Land Title Building
100 S. Broad Street, 19th Floor
Philadelphia PA 19110

Dale W. Pittman
**THE LAW OFFICE OF DALE W. PITTMAN, P.C.**
112-A W. Tabb St.
Petersburg, VA  23803-3212

*Attorneys for Plaintiffs Gregory Thomas Berry, Summer Darbonne, Rickey Millen, Shamoon Saeed, Arthur B. Hernandez, Erika A. Godfrey and Timothy Otten*

**CERTIFICATE OF SERVICE**

I certify that on the 22nd day of November, 2013, I electronically filed the foregoing Plaintiffs' Responses to Objections to Class Action Settlement with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to CM/ECF participants, and I hereby certify that I will mail by United States Postal Service the document to the non-CM/ECF participants:

James Francis McCabe
MORRISON & FOERSTER LLP
425 Market Street
San Francisco CA 94105-2482
(415) 268-7011
jmccabe@mofo.com

Ronald Irvin Raether , Jr.
FARUKI IRELAND & COX PLL
500 Courthouse Plaza SW
10 N Ludlow Street
Dayton OH 45402
(937) 227-3733
rraether@ficlaw.com

David Neal Anthony
TROUTMAN SANDERS LLP
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond VA 23219
(804) 697-5410
david.anthony@troutmansanders.com

***Attorneys for Defendants***

Charles B. Molster, III
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington DC 20006
(202) 282-5000 (phone)
(202) 282-5100 (fax)
cmolster@winston.com

***Attorney for Objector, Megan Christina Aaron, et al.***

I further certify that on November 25, 2013, I caused the Plaintiffs' Responses to Objections to Class Action Settlement to be mailed by United States First Class Mail to the following individuals:

Adam E. Schulman
Center for Class Action Fairness
1718 M. Street NW #236
Washington DC 20036

David Brown
1717 Market Street
Tacoma WA 98402

Jeanne Giles
260 Gooseberry Drive
Reno NV 89523

JoAnn Nix
151 Gaddis Road NW
Cartersville GA 30120-4612

Edward W. Cochran
20030 Marchmont Rd.
Shaker Heights OH 44122

                                                             /s/ Leonard A. Bennett
                                                            Leonard A. Bennett