

**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

GREGORY THOMAS BERRY, et al.
     Plaintiffs,

v.

LEXISNEXIS   RISK   &   INFORMATION
ANALYTICS GROUP, INC., et al.
     Defendants.

Case No: 3:11-cv-00754 JRS

Judge James R. Spencer

---

## SUPPLEMENTAL OBJECTION OF ADAM SCHULMAN TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

---

Adam E. Schulman
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW #236
Washington, DC 20036
Phone: (610) 457-0856
Email: shuyande24@gmail.com

*Pro Se*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ I

TABLE OF AUTHORITIES.................................................................. II

INTRODUCTION ..................................................................................1

I.    In large part, the testimony of Professors Geoffrey P. Miller and Linda Mullenix is inadmissible...............................................................1

II.    The Court must exercise independent judgment on fees under Rule 23(h) and may not defer to the settling parties.................................................4

III.    Assuming the Court in its discretion applies the lodestar method, a $5.33 million fee award is excessive and unjustified on the record..........................9

    A.    The requested hourly rates are not reasonable for certain attorneys, nor is the blended rate of $501/hr reasonable *en toto*. ........................11

    B.    The submissions of class counsel are inadequate to support the reasonableness of the hours expended. ...............................................16

    C.    A multiplier greater than one is inappropriate. ....................................20

CONCLUSION........................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Aguilar v. Int'l Longshoremanen's Union Local #10*, 966 F.2d 443 (9th Cir. 1992)...................... 2

*Bicking v. Mitchell Rubenstein & Assocs P.C.*, 2012 U.S. Dist. LEXIS 40966 (E.D. Va. Mar. 21, 2012)................................................................................................................................. 12

*Broyles v. Director*, 974 F.2d 508 (4th Cir. 1992)........................................................................ 20

*Bruno v. Quten Research Inst., LLC*, No. SACV 11-00173 DOC(Ex), 2013 U.S. Dist. LEXIS 35066 (C.D. Cal. Mar. 13, 2013)............................................................................................ 15

*C & O Motors Inc. v. GMC.*, No. 2:05-0835, 2007 U.S. Dist. LEXIS 54388 (S.D. W. Va. Jul. 25, 2007)............................................................................................................................... 4

*Catapult Communs. Corp. v. Foster,*No 06 C 6112, 2010 U.S. Dist. LEXIS 14786 (N.D. Ill. Feb. 19, 2010)............................................................................................................................ 3

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)..................................................... 9

*Cotton v. City of Eureka*, 889 F. Supp. 2d. 1154 (N.D. Cal. 2012) ............................................. 13

*DeLoach v. Phillip Morris Cos.*, No. 00-cv-01235, 2003 U.S. Dist. LEXIS 23240 (M.D.N.C. Dec. 19, 2003) ................................................................................................................... 6

*Dixon-Rollins v. Experian Info. Solutions, Inc.*, No. 09-0646, 2010 U.S. Dist. LEXIS 100013 (E.D. Pa. Sept. 23, 2010). ............................................................................................. 21-22

*Doe v. Chao*, 435 F.3d 492 (4th Cir. 2006) ............................................................................... 10

*Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466 (W.D. Va. 2011)................................. 9, 12

*Drazin v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 832 F. Supp. 2d. 432 (D.N.J. 2011) ..... 19

*EEOC v. Freeman*, No. 09-cv-2573, 2013 U.S. Dist LEXIS 112368 (D. Md. Aug. 9, 2013) .... 3-4

*Equal Access Educ. v. Merten*, 325 F. Supp. 2d 655 (E.D. Va. 2004) ........................................... 2

*Estate of Sowell v. United States*, 198 F.3d 169 (5th Cir. 1999). ................................................... 2

*Felix v. Northstar Location Servs.*, 290 F.R.D. 397 (W.D.N.Y. 2013) ........................................ 20

*Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08-cv-1992 AJB (MDD), 2013 U.S. Dist. LEXIS 14105 (S.D. Cal. Feb. 1, 2013)......................................................................................... 15

*Gonzalez v. S. Wine & Spirts of Am., Inc.*, No. 11-cv-5849, 2012 U.S. Dist. LEXIS 46401 (C.D. Cal. Mar. 29, 2012).......................................................................................................... 21

*Good Shepher Manor Found., Inc. v. City of Momence*, 323 F.3d 557 (7th Cir. 2003)................. 1

*Grendel's Den v. Larkin,* 749 F.2d 945 (1st Cir. 1984) .................................................... 19

*Grissom v. Mills Corp.,* 549 F.3d 313 (4th Cir. 2008)...................................... 4, 11-12, 14

*Grove v. Principal Mut. Life Ins. Co.,* 200 F.R.D. 434 (S.D. Iowa 2001) ........................ 7

*Guidry v. Clare,* 442 F. Supp. 2d 282 (E.D. Va. 2006) ................................................. 16

*Hensley v. Eckerhart,* 461 U.S. 424 (1983) .......................................................... 10, 17

*Hargrove v. Ryla Teleservs., Inc.,* 2013 U.S. Dist. LEXIS 63902 (E.D. Va. Apr. 12, 2013)....... 12

*Hubbard v. Donahoe,* __F. Supp. 2d.___, 2013 WL 3943495, 2013 U.S. Dist. LEXIS 107096
   (D.D.C. Jul. 31, 2013) .......................................................................... 17

*In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935 (9th Cir. 2011)........................ 5, 7, 10

*In re Bluetooth Headset Prods. Liab. Litig.,* No. 07-ML-1822 DSF (Ex), 2012 U.S. Dist. LEXIS
   168324 (C.D. Cal. Jul. 31, 2012)................................................................ 15

*In re Citigroup Inc. Secs. Litig.,* 07 Civ. 9901, 2013 U.S. Dist. LEXIS 108115 (S.D.N.Y. Aug. 1,
   2013)............................................................................................. 19

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg Litig.,* 418 F.3d 277
   (3d Cir. 2005) ................................................................................ 5, 6

*In re Continental Illinois Sec. Litig.,* 962 F.2d 566 (7th Cir. 1992) ............................... 8

*In re Dry Max Pampers Litig.,* 724 F.3d. 713 (6th Cir. 2013).................................... 5, 6-7

*In re GMC Engine Interchange Litig.,* 594 F.2d 1106 (7th Cir. 1979)............................... 8

*In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig,* 55 F.3d 768 (3d Cir. 1995) .............. 5, 8

*In re Infospace, Inc. Secs. Litig.,* 330 F. Supp. 2d. 1203 (W.D. Wash. 2004)............... 19

*In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988 (9th Cir. 2010) ................. 16

*In re Stericycle, Inc.,* 2013 U.S. Dist. LEXIS 147718 (N.D. Ill. Oct. 11, 2013) ........... 20

*Johnson v. City of Aiken,* 278 F.3d 333 (4th Cir. 2002) .................................... 18

*Jones v. Dominion Res. Servs.,* 601 F. Supp. 2d 756 (S.D W. Va. 2009)................... 9, 15

*Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999) ...................................... 3

*Koontz v. Wells Fargo N.A.,* No. 10-cv-00864, 2013 U.S. Dist. LEXIS 45509 (S.D. W. Va. Mar.
   29, 2013)..................................................................................... 12, 16

*Landwehr v. AOL Inc.,* 2013 U.S. Dist. LEXIS 64456 (E.D. Va. May 1, 2013)........ 14, 16, 17, 19

*Lane v. Wells Fargo Bank, N.A.,* No. C 12-04026 WHA, 2013 U.S. Dist. LEXIS 87669 (N.D.
   Cal. Jun. 21, 2013 ............................................................................... 19

*Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973)......................................................................................................... 16

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007)........... 3

*Lux v. Judd*, 868 F. Supp. 2d 519 (E.D. Va. 2012)................................................. 13, 20

*Morse v. Republican Party*, 972 F. Supp. 355 (W.D. Va. 1997)....................................... 18

*Newport News Shipbuilding & Dry Dock Co. v. Holiday.*, 591 F.3d 219 (4th Cir. 2009) ........... 16

*Nguyen v. BMW of N. Am. LLC*, No. C. 10-02257 SI, 2012 U.S. Dist. LEXIS 56018 (N.D. Cal. Apr. 20, 2012)........................................................................................................ 15

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005). ............................................ 2

*Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988).............. 19

*Pabst v. Genesco Inc.*, No. C 11-01592 SI, 2012 U.S. Dist. LEXIS 129389 (N.D. Cal. Sept. 11, 2012)........................................................................................................... 13

*Perdue v. Kenny A.*, 559 U.S. 542 (2010 .....................................................20-22

*Peterson v. City of Plymouth*, 60 F.3d 469 (8th Cir. 1995) .......................................... 2

*Plyler v. Evatt*, 902 F.2d 273 (4th Cir. 1990) ..................................................... 11

*Reynolds v. Benefit Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002).................................. 16-17

*Richardson v. L'Oreal USA, Inc.*, __F. Supp. 2d__, 2013 U.S. Dist. LEXIS 158599, 2013 WL 5941486 (D.D.C. Nov. 6, 2013) ............................................................... 1, 7, 8

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235 (4th Cir. 2009)........................... 11

*Rum Creek Coal Sales v. Caperton*, 31 F.3d 169 (4th Cir. 1994). ................................ 4

*Signature Flight Support Corporation v. Landow Aviation L.P.*, 730 F. Supp. 2d 513 (E.D. Va. 2010)..................................................................................... 17, 18, 20

*Singleton v. Domino's Pizza, LLC*, No. DKC 11-1823, 2013 U.S. Dist. LEXIS 142528 (D. Md. Oct. 2, 2013) .......................................................................... 9, 13

*Snap-Drape, Inc. v. Commissioner*, 98 F.3d 194 (5th Cir. 1996)............................... 1-2

*Sobel v. Hertz.*, No. 3:06-cv-00545, 2011 U.S. Dist. LEXIS 68984 (D. Nev. Jun. 27, 2011). 10-11

*Sobie Creek Invs., LLC. v. United States*, 81 Fed. Cl. 358 (Ct. Fed. Cl. 2008) ................ 2

*Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003) ..........................................5, 8-10

*Stonebrae, L.P. v. Toll Bros.*, No. C-08-0221 EMC, 2011 U.S. Dist. LEXIS 39832 (N.D. Cal. Apr. 7, 2011)....................................................................... 13

*Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844 (5th Cir. 1998) ............................................. 5

*Stumpf v. PYOD, LLC*, 2013 U.S. Dist. LEXIS 152093 (N.D. Ill. Oct. 23, 2013) ................. 17-18

*Teague v. Bakker*, 35 F.3d 978 (4th Cir. 1994)............................................................................... 1

*Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir. 1983) ............................................................. 15

*Vought v. Bank of Am.*, 901 F. Supp. 2d 1071 (C.D. Ill. 2012) ..................................................

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ....................................... 8

*Walker v. Dovetails, Inc.*, 2010 U.S. Dist. LEXIS 141635 (E.D. Va. Mar. 21, 2012) ................. 12

*Weeks v. Kellogg Co.*, No. 09-cv-8102, 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011)................................................................................................................................... 21

*Weinberger v. Great N. Nekoosa Corp.*, 801 F. Supp. 804 (D. Me. 1992)................................ 17

*Winston & Strawn LLP v. FDIC*, 894 F. Supp. 2d 115 (D.D.C. 2012). ....................................... 21

*Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2013 U.S. Dist. LEXIS 151180 (N.D. Cal. Oct., 21, 2013 ...................................................................................................................... 13, 19-20

*Won Kim v. United States Bank, N.A.*, No. 1:12-cv-986 2013 U.S. Dist. LEXIS 107424 (E.D. Va. Jul. 29, 2013) ....................................................................................................... 12, 14

*Yohay v. Alexandria Employees Credit Union, Inc.*, 827 F.2d 967 (4th Cir. 1987) ..................... 10

*Yu Zhang v. GC Servs. LP*, 537 F. Supp. 2d 805 (E.D. Va. 2008) ............................................ 16

## Rules and Statutes

15 U.S.C §§ 1681 *et seq*..............................................................................10, 12-13, 21-22

42 U.S.C § 1988............................................................................................................. 21

Fed. R. Civ. P. 23(b)(2)................................................................................................... 2

Fed. R. Civ. P. 23(h) .............................................................................................. 9, 16, 21

## Other Authorities

Advisory Committee Notes on 2003 Amendments to Rule 23 ......................................... 4

Brickman, Lester, LAWYER BARONS (2011)...................................................................... 6

Burdge, Ronald L., *United States Consumer Law Attorney Fee Survey Report, 2010-2011*, *available at* http://www.nclc.org/images/pdf/litigation/fee-survey-report-2010-2011.pdf..... 14

Hanna, Janan & Rachel M. Zahorsky, *What America's Lawyers Earn*, 97 A.B.A.J. 35 (Mar. 2011) ......................................................................................................................... 3, 13

Leslie, Christopher R., *The Significance of Silence: Collective Action Problems and Class Action*

*Settlements*, 59 FLA. L. REV. 71 (2007) ........................................................................ 8

Miller, Geoffrey P., *Rethinking Certification and Notice in Opt-Out Class Actions*, 74 UMKC L.
Rev. 637 (2006) ........................................................................................................... 7

Silver, Charles, *Due Process and the Lodestar Method*, 74 TUL. L. REV. 1809 (2000) ................. 6

www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf
lawyer/lit2013spring/?lm=1367275927000&pg=11#pg11 ...................................................... 14

# INTRODUCTION

In accordance with the Court's scheduling order of October, 11, 2013 (Dkt. 81), I file this Supplemental Objection to Plaintiffs' Motion for Attorneys' Fees.

For each of the reasons detailed in my initial Objection ("Obj.") (Dkt. 71), however, the issue of fees is currently moot. The settlement class as proposed cannot be certified, nor can the settlement be approved as fair, reasonable and adequate. I reaffirm each of the arguments I advanced in my earlier Objection and refer the Court to the most recent, comprehensive exposition of many of those principles: *Richardson v. L'Oreal USA, Inc.*, __F. Supp. 2d__, 2013 WL 5941486 (D.D.C. Nov. 6, 2013) (Bates, J.) (denying (b)(2) certification and final approval of a settlement because of, *inter alia*, the settlement's waiver of the right to bring future class actions for damages, improper intraclass conflicts in a (b)(2) class, and a disproportionate allocation of settlement proceeds to class counsel and the named representatives). For the most part, the terms of this settlement only amplify the failings of the *Richardson* proposal, compounding the *Richardson* problems with new issues of insufficient notice and waiver of unripe future claims.

I write not to rehash previous briefing, but to register specific objection to the fee award sought for the consummation of the (b)(2) settlement, if the Court reaches the question of fees.

## I.   In large part, the testimony of Professors Geoffrey P. Miller and Linda Mullenix is inadmissible.

Preliminarily, I object to any reliance on the inadmissible legal conclusions contained in the expert reports of Professor Geoffrey P. Miller ("Miller Decl.") (Dkt. 103-1) and Professor Linda Mullenix ("Mullenix Decl.") (Dkt. 104-1). Expert reports may not opine on ultimate issues of law. *E.g.*, *Teague v. Bakker*, 35 F.3d 978, 993 n.21 (4th Cir. 1994) ("Expert testimony as to the proper interpretation of applicable domestic law is inadmissible."); *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (affirming exclusion of law professor's testimony that city's actions violated the Fair Housing Amendments Act); *Snap-*

1

*Drape, Inc. v. Commissioner*, 98 F.3d 194, 198 (5th Cir. 1996); *Equal Access Educ. v. Merten*, 325 F. Supp. 2d 655, 662 n.12 (E.D. Va. 2004) (collecting cases). Yet that is what Miller and Mullenix attempt to do at length in their declarations. Mullenix opines on the certifiability of the (b)(2) class in contending that the waiver of statutory damages claims and class action damages claims are legally congruent with (b)(2). Mullenix Decl. ¶¶42-54. Mullenix also purports to instruct the Court on the law of "hybrid" class actions, a doctrine that has never been accepted by the Fourth Circuit and in any event has *zero* relevance to the settlement as structured here. *Id.* at ¶36. On each of these issues, Mullenix is absolutely wrong, but what makes the testimony inadmissible is its attempt to "usurp[]" "the role of the trial judge" in determining "the applicable law." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (internal quotation omitted).

Miller opines that the hourly rates are "appropriate and reasonable," that the multiplier is "within the range of reason and appropriate," concluding that the sum fee award "is within the range of reason." Miller Decl. ¶¶34, 40, 49. Experts should not be testifying about ultimate judgments of "reasonableness" that are reserved for the Court. *E.g., Estate of Sowell v. United States*, 198 F.3d 169, 171-172 (5th Cir. 1999) ("'acting reasonably' was, for all practical purposes, the only issue for the jury in this case to decide"); *Aguilar v. Int'l Longshoremen's Union Local # 10*, 966 F.2d 443, 447 (9th Cir. 1992) ("Here, the reasonableness and foreseeability of the casual workers' reliance were matters of law for the court's determination. As such, they were inappropriate subjects for expert testimony."); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (abuse of discretion to admit testimony of expert who opined on the reasonableness of officers' conduct under Fourth Amendment standards). Excluding legal opinions "holds just as true when the finder of fact is the court, if not more so; the court is well equipped to instruct itself on the law." *Stobie Creek Invs., LLC v. United States*, 81 Fed. Cl. 358, 361 (Ct. Fed. Cl. 2008), *aff'd* 608 F.3d 1366 (Fed. Cir. 2010).

Mullenix and Miller undertake the methodology of an attorney advocate, "judg[ing]...awards in similar cases" and measuring "existing precedents" (Miller Decl. ¶49,

2

Mullenix Decl. at 11) Arguing the case law is the job of a party's counsel, and should not be submitted under the guise of expert opinion. In *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, the court admonished against using an expert's report to make legal pronouncements regarding the merits of plaintiffs' case: "an expert is not supposed to be doing the work of counsel; an expert must 'bring to the jury more than the lawyers can offer in argument.' The [expert's] statements … are fodder for a legal brief, not an expert's report." 525 F. Supp. 2d 558, 654 (S.D.N.Y. 2007) (quoting *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)).

Further, Miller's opinions on the reasonableness of fees should be excluded as unreliable and without proper foundation. "For [the witness] to opine on the reasonableness of the fees as an expert, he must base his opinion on data and apply reliable methods to that data. It is not enough to know the total hours spent on a case and, generally, the work performed in that case. To know whether the time spent on those matters is a reasonable amount, the expert must know the subject matter of the bills and the time spent on each matter. Thus, [the witness] could not form a reliable opinion based on the information he had." *Catapult Communs. Corp. v. Foster*, No. 06 C 6112, 2010 U.S. Dist. LEXIS 14786, at *10 (N.D. Ill. Feb. 19, 2010). Miller was not provided with the necessary billing information to opine on the subject of reasonableness. *See* Miller Decl. Appendix B. Nor, for that matter, were objectors or this Court. *See infra* § III.B.

Moreover, Miller's conclusion that the hourly rates are reasonable is without a relevant factual foundation. *See* Miller Decl. at 13-17. Admissible testimony "both rests on a reliable foundation and is relevant to the task at hand." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)). But Miller solely considers rates from New York City, renowned as one of the most expensive legal markets in the country. Janan Hanna & Rachel M. Zahorsky, *What America's Lawyers Earn*, 97 A.B.A.J. 35 (Mar. 2011) (finding the NY metro market to have the nation's third-highest average compensation). Surveying only S.D.N.Y cases evinces a selectivity bias. *See, e.g., EEOC v. Freeman*, No. 09-cv-2573, 2013 U.S. Dist. LEXIS 112368, at *27-*30 (D. Md.

3

Aug. 9, 2013) (working from "cherry-picked" database renders expert opinion inadmissible); *C & O Motors Inc. v. GMC*, No. 2:05-0835, 2007 U.S. Dist. LEXIS 54388, at *17 (S.D. W. Va. July 25, 2007) (relying on a single exceptional year to determine lost profits does not comport with *Daubert*). Miller's dataset is not relevant to ascertaining a lodestar in this instant case, except insofar as it reveals class counsel's desire to anchor its compensation at the top echelon of the national legal market instead of in the relevant community.

New York City is not "the community in which the court sits" (*Grissom v. Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008)), nor is any attorney in the litigation based in New York City, let alone one necessary to perform work that could not be undertaken by local attorneys. *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994). Plaintiffs offer no justification for the proposition that this court should depart from the rates of Richmond, Virginia—the relevant community—and instead base a lodestar award on one of the nation's most expensive legal markets. Although Miller's other proffered testimony is flawed and unpersuasive in its own right, the foundation of his opinion on rates is so lacking that it must immediately be excluded as irrelevant.

Accordingly, because plaintiffs have not complied with the permissible scope of expert testimony, such testimony should be excluded.

## II.   The Court must exercise independent judgment on fees under Rule 23(h) and may not defer to the settling parties.

"Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class action process," Advisory Committee Notes on 2003 Amendments to Rule 23. As a fiduciary for the class, the Court maintains a duty of keen oversight of all settlement proceedings. Obj. at 5. "The court's review of the attorneys' fees component of a settlement agreement is thus an essential part of its role as guardian of the interests of class

4

members. To properly fulfill its Rule 23(e)[1] duty, the district court must not cursorily approve the attorney's fees provision of a class settlement or delegate that duty to the parties." *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998) (constructive common fund); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ("*GM Trucks*"), 55 F.3d 768, 819-20 (3d Cir. 1995) (requiring "a thorough judicial review of fee applications . . . in all class action settlements" because "'a defendant is interested only in disposing of the total claim asserted against it'" and "'the allocation between the class payment and the attorneys' fees is of little or no interest to the defense'") (constructive common fund). Federal case law, in *Strong, GM Trucks,* and subsequent decisions,[2] has eschewed the unduly formalistic approach that the Plaintiffs advance here. Mem. in Support of Fees ("Fee Mem.") (Dkt. 103) at 9 (arguing that the fees will be paid by LexisNexis and will not reduce the recovery available to the class) (citing Miller Decl. ¶ 21).

    As described in my initial Objection (Obj. at 34), allocation issues cannot be waived away simply by structuring the settlement as a constructive common fund rather than as a traditional common fund. *See Pampers*, 724 F.3d at 717-18; *Bluetooth*, 654 F.3d at 943; *Richardson*, 2013 WL 5941486, at *13. "That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief does not detract from the need carefully to scrutinize the fee award." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003). For, either way, "the economic reality is that a settling defendant is concerned only with its total liability." *Pampers*, 724 F.3d at 717 (internal quotation omitted). The only apparent way to effectively divorce class relief from fees is to reach an accord on class relief while simultaneously agreeing to litigate the issue of fees. *See In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Litig.*, 418 F.3d 277, 308 (3d Cir. 2005). That, of

---

[1] There is now also a duty under Rule 23(h).

[2] *E.g., In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011); *In re Dry Max Pampers Litig.* ("*Pampers*"), 724 F.3d 713 (6th Cir. 2013).

course, did not occur here. In other words, as long as the defendant willingly foots both bills before a judicial determination, there is no way to avoid the "truism that there is no such thing as a free lunch." *Staton*, 327 F.3d at 964.

Plaintiffs' argument goes to show why *Bluetooth* was correctly decided, that the class is worse off when fees are entirely segregated from class relief. As class counsel undoubtedly hopes is the case here, a court generally has less motivation to scrutinize a fee award when the kicker combined with the clear sailing agreement means that any reversion will only go to the defendant that had already agreed to pay that amount. Charles Silver, *Due Process and the Lodestar Method*, 74 TUL. L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack"); Lester Brickman, LAWYER BARONS 522-25 (2011) (same; further arguing that reversionary kicker should be considered *per se* unethical). A kicker discourages thorough review, but the Court should properly discharge its responsibilities nevertheless.

The clear-sailing is the superglue that holds the constructive common fund together, and from the perspective of class counsel takes the last likely obstacle, an objection from defendants, off the table. *See* Obj. 34; *DeLoach v. Phillip Morris Cos.*, No. 00-CV-01235, 2003 U.S. Dist. LEXIS 23240, at *15-*16 (M.D.N.C. Dec. 19, 2003) (observing that clear sailing agreements are a hallmark of constructive common funds). Plaintiffs retort that "LexisNexis had every incentive to bargain aggressively on attorneys' fees, because the Parties did not discuss the amount of attorneys' fees until after the terms of the Settlement had been agreed." Fee Mem. at 19.  But, crucially, the class relief was not yet signed, sealed, delivered to and approved by the court. *See In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mort. Litig.*, 418 F.3d 277, 308 (3d Cir. 2005). Temporally separate negotiation doesn't warrant abdication of the Court's oversight role. *Pampers,* 724 F.3d 713 (6th Cir. 2013) (not only were fee negotiations separate,

mediator proposed fee agreement on a take it or leave it basis)[3]; *Richardson*, 2013 WL 5941486, at \*13 (D.D.C. Nov. 6, 2013) ("Negotiations regarding the terms of the settlement and the fee award appear to have been properly segregated—though that does not necessarily cure any allocation problems.").[4]Nor is it accurate for the plaintiffs to infer support and "positive" reaction to the fee request from the absence of objections. Fee Mem 20-21. In the prior words of plaintiffs' own expert, a inference of even consent from failing to object—let alone overwhelming support— "boggles credibility." Geoffrey P. Miller, *Rethinking Certification and Notice in Opt-Out Class Actions*, 74 UMKC L. Rev. 637, 642 (2006).

Any given class action settlement, no matter how much it betrays the interests of the class, will produce only a small percentage of objectors. The predominating response will always be apathy, because objectors—unless they can obtain *pro bono* counsel—must expend significant resources on an enterprise that will create little direct benefit for themselves. *See Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1093 (C.D. Ill. 2012) (citing, *inter alia*, a 1996 Federal Judicial Center survey that found between 42% and 64% of settlements engendered no filings by objectors).  Silence is simply *not* consent or endorsement. *Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 447 (S.D. Iowa 2001) (*citing GMC Pick-Up*, 55 F.3d at 789.). "Silence may be a function of ignorance about the settlement terms or may reflect an insufficient amount

---

[3] *See Pampers*, No. 10-cv-301 (S.D. Ohio.), Dkt. 10-1, ¶¶17-19.

[4] More generally, the settling parties are rational economic actors: even when the negotiations over fees are severed, the parties know in advance that those negotiations are coming, that the defendants have a reservation price based on their internal valuation of the litigation, and that every dollar negotiated for the class reduces the amount the defendants are willing to pay class counsel. Because these future fee negotiations are not an unexpected surprise, the overhang of the future fee negotiations necessarily infects the earlier settlement negotiations. This is invariably at the expense of the class when there is a separate fund for fees, because both class counsel and the defendants have an incentive to leave extra "space" for that future negotiation in a bifurcated negotiation that the parties do not need to have when it is simply negotiating for a single pot of money to go into a common fund. *Cf. Bluetooth*, 654 F.3d at 948-49 (neither presence of neutral mediator nor separation of fee negotiations from other settlement negotiations demonstrates that a settlement is fair).

Schulman Supplemental Objection
Case No. 3:11-cv-00754 JRS

of time to object. But most likely, silence is a rational response to any proposed settlement even if that settlement is inadequate. For individual class members, objecting does not appear to be cost-beneficial. Objecting entails costs, and the stakes for individual class members are often low." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007).

Without *pro bono* counsel and without the incentive of a fee award proportionate to success, filing an objection is economically irrational for any individual. "[A] combination of observations about the practical realities of class actions has led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *GM Trucks*, 55 F.3d at 812 (*citing In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217–18 (5th Cir. 1981)); *accord Richardson*, 2013 WL 5941486, at *14 ("low objection rate" "proves little"). "Acquiescence to a bad deal is something quite different than affirmative support." *In re GMC Engine Interchange Litig.*, 594 F.2d 1106, 1137 (7th Cir. 1979) (reversing approval of settlement).[5]

Where those who do object, do so "vigorously," "comprehensive[ly]" and with "sophisticat[ion]," a small quantity of objections should not be thought to favor settlement or a fee award. *GM Trucks*, 55 F.3d at 813; *Richardson*, 2013 WL 5941486, at *14. "One good objector may be worth many frivolous objectors . . ." *Richardson*, 2013 WL 5941486, at *14.

Even when there are <u>ZERO</u> objections, "[r]ubber-stamp approval" is "improper." *Staton*, 327 F.3d at 970. A court must assiduously discharge its duty to class members. But more than

---

[5] Even if the parties hadn't deterred fee objections through the constructive common fund structure, and even if even proper notice been given to class members, it would have been a fool's errand to await many objections. *See e.g., In re Continental Illinois Sec. Litigation*, 962 F.2d 566, 573 (7th Cir. 1992) ("No class member objected either--but why should he have? His gain from a reduction, even a large reduction, in the fees awarded the lawyers would be minuscule"); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) ("Class members have no real incentive to mount a challenge that would result in only a minuscule pro rata gain from a fee reduction.").

that, it should be cognizant of its duty to the public at large. It has been long recognized that "[f]or the sake of their own integrity, the integrity of the legal profession, and the integrity of Rule 23, it is important that courts should avoid awarding 'windfall fess' and that they should likewise avoid every appearance of having done so." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974); *see also Singleton v. Domino's Pizza, LLC*, No. DKC 11-1823, 2013 U.S. Dist. LEXIS 142528, at \*48-\*49 (D. Md. Oct. 2, 2013). Otherwise, courts risk reifying the lamentable proverb that "[a] lawsuit is a fruit tree planted in a lawyer's garden." *Grinnell*, 495 F.2d at 469 (quotation omitted).

### III.   Assuming the Court in its discretion applies the lodestar method, a $5.33 million fee award is excessive and unjustified on the record.

Although federal law permits this court to award 23(h) fees using either the lodestar method or the percentage of recovery ("PoR") method, the PoR method is almost always preferable. *See Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 475 (W.D. Va. 2011) ("The percentage method better aligns the interests of class counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys."); *accord* Obj. 31-32 n.16. "In contrast, when the lodestar method is applied, class counsel has an incentive to "overlitigate" or draw out cases in an effort to increase the number of hours used to calculate their fees." *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 759 (S.D. W. Va. 2009).

Thus, the settlement is best viewed as a constructive common fund of $5.5 million, 100% of which is expropriated by class counsel and the named representatives. The entire injunctive package, encompassing both the concessions by the defendant and the concessions by class members, cannot be accurately ascertained,[6] and thus cannot be included in the fund valuation.

---

[6] I apologize to Professor Richards for not realizing that he had filed a declaration, attesting to the value of the injunctive relief. However, Richards' candid efforts to quantity the benefit of the injunctive relief fall short. Richards' First Decl. (Dkt. 63-6) ¶43. Richards offers a figure of $160

9

*Staton*, 327 F.3d at 974. But realistically, if the court has already decided to approve the fairness of the settlement, then it would likely not construe the settlement as a quantifiable constructive common fund of $5.5 million. Thus, if reaching the question of fees, I presume that the Court will utilize the lodestar method.

Still it is vital to note that even under the lodestar method, courts must give "primary consideration to the amount of damages awarded as compared to the amount sought." *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006) (citation omitted). "Indeed, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Id.* (citation omitted); *see also Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983); *Bluetooth*, 654 F.3d at 942 (foremost consideration in adjusting the lodestar is the benefit obtained for the class); *but see Yohay v. Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 974 (4th Cir. 1987). Where a plaintiff's primary goal is damages—as must be so under the FCRA—and a plaintiffs' counsel does not achieve this goal "it is unlikely that [he] may recover significant attorney fees." *Doe*, 435 F.3d at 506.

This doctrine helps to avoid the inequitable result of "Class Counsel...request[ing] for itself an uncontested cash award based on lodestar, rather than the value of the class recovery, with only a modest discount from the claimed lodestar amount. In other words, the class is being asked to 'settle,' yet Class Counsel has applied for fees as if it had won the case outright." *Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH-RAM, 2011 WL 2559565, 2011 U.S. Dist. LEXIS

---

million as the value saved every year ($8 x 20 million reports). This number is balderdash. There is no evidence that unique consumers were buying even .1% of those 20 million reports on themselves. The $2.2 billion figure is even more problematic. First, preventing legal injury that would occasion $100-$1000 statutory damages is not the same as giving every class member $100-$1000. But fundamentally, Richards does not even attempt to value the downside of the bargain, a seven-year prospective release of FCRA liability for both "collect once, use twice" data acquisition practices and other "Post Settlement Products." *See* Settlement § 4.5.4. Whether class members come out ahead or behind cannot be currently determined. Among other things, no one can predict what products Lexis will devise that will be immune from FCRA liability.

10

68984, at *44 (D. Nev. Jun. 27, 2011). For two obvious reasons, the request here is yet more outlandish. First, class counsel request a multiplier on their lodestar of what they assert to be 1.99, but what is in reality much more than that. Second, I'm doubtful that there has ever been a larger variance between the amount obtained for the (b)(2) class (**$0**) and the amount in controversy (**tens or hundreds of billions of dollars in statutory damages alone**). *See* Obj. at 15-18 (describing the complaint's requests for damages); Defendant's Mem. in Support of Final Approval (Dkt. 99) at 6 (describing requests of hundreds of billions of dollars).

Before even considering the reasonable rates or hours, a large percentage reduction from the lodestar is necessary to calibrate class counsel's "settlement" with that of the class.

**A.    The requested hourly rates are not reasonable for certain attorneys, nor is the blended rate of $501/hr reasonable *en toto*.**

Plaintiffs propose a lodestar figure of $3,349,379.95, calculated by multiplying 6,681.8 hours at an average rate of over $501/hr. Two issues stand out: (1) certain attorneys on class counsel's team are seeking excessive rates; and (2) the blended rate of class counsel as a whole is not reasonable.

"[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate." *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990). The Fourth Circuit holds that an "affidavit, standing alone, is not sufficient evidence of the prevailing market rates." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 246 (4th Cir. 2009). Yet that is what exists here. One attorney from each of the four co-lead counsel firms avers as to the reasonableness of the rates requested by attorneys in his respective firm. *See respectively* Declaration of Michael A. Caddell ("Caddell Decl.") (Dkt. 101-1); Declaration of James A. Francis ("Francis Decl.") (Dkt. 103-2); Declaration of Leonard A. Bennett ("Bennett Decl.") (Dkt. 103-3); Declaration of Dale W. Pittman ("Pittman Decl.") (Dkt. 103-4). Again, the outside declaration of Professor Miller is of no aid because New York data does comply with the rule of *Grissom*, that "[t]he community in which the court sits is the first place to look to in evaluating prevailing market rate." 549 F.3d at 321.

11

While "affidavits have some utility," that utility is limited by the fact that "they are, after all, prepared by individuals with an understandable interest in propping up local market rates." *Koontz v. Wells Fargo N.A.*, No. 10-cv-00864, 2013 U.S. Dist. LEXIS 45509, at *45 n.2 (S.D. W. Va. Mar. 29, 2013) . Thus, it is advisable for the court to examine comparable rates in geographically and legally similar litigation, and, when available, in surveys or other compiled data. Examining cases from the Richmond division and other district courts in the Fourth Circuit, one can tell immediately that some of the rates requested are overblown. Mr. Caddell requests $875, Ms. Chapman requests $675, and Mr. Searles (whose experience (in years) is not revealed in the Francis Decl.) requests $650. I have not found a case approving such hourly rates in the Richmond division or in the entire Fourth Circuit for that matter. *See Walker v. Dovetails, Inc.*, 2010 U.S. Dist. LEXIS 141635, *10 (E.D. Va. Nov. 30, 2010) ("[T]he Court recommends the rates of $60 per hour for paralegal services, $250 per hour for Ms. Suyes' legal services, and $350 per hour for Mr. Schreiber's legal services."); *Bicking v. Mitchell Rubenstein & Assocs., P.C.*, No. 3:11CV78-HEH, 2012 U.S. Dist. LEXIS 40966, at *3-*4 (E.D. Va. Mar. 21, 2012) (FDCPA class settlement) (attorneys at $425-$450 and paralegals at $125); *Hargrove v. Ryla Teleservs., Inc.*, 2013 U.S. Dist. LEXIS 63902, at *22 (E.D. Va. Apr. 12, 2013) (reducing $600/hr request to $350/hr); *Won Kim v. United States Bank*, N.A., No. 1:12-cv-986, 2013 U.S. Dist. LEXIS 107424 (E.D. Va. Jul. 29, 2013) (reducing rate from $500 requested to $380 for an 18 year practitioner in Alexandria); *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 476 (W.D. Va. 2011) (FCRA class settlement) (affirming crosscheck rates ranging from $250 to $450); *Koontz*, 2013 U.S. Dist. LEXIS 45509, at *57-*58 (awarding $375/hr, not the $425/hr requested, to a "preeminent consumer law attorney who has devoted his [more than thirty year] career to this highly specialized area of public interest law" and noting that the "top end of the market rate" for local counsel in a recent class action suit was $500). In an FCRA class action in Maryland, *Singleton v. Domino's Pizza, LLC*, the court found attorney rates of $250.00 to $550.00 per hour to be "somewhat high for this district," but "within a reasonable range for firms

12

with national class action practices." 2013 U.S. Dist. LEXIS 142528, at *53 n.12 (D. Md. Oct. 2, 2013).

Strikingly, one of the most preeminent First Amendment attorneys in the country, James Bopp Jr., garnered an hourly rate of just $575 last year. *Lux v. Judd*, 868 F. Supp. 2d 519, 530 (E.D. Va. 2012). Yet Searles, Chapman, and especially Caddell seek well in excess of that amount. Even in the apex of expensive legal landscapes, California,[7] attorneys with similar or greater national renown have had similar rates rejected. *See, e.g., Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2013 U.S. Dist. LEXIS 151180, at *16 (N.D. Cal. Oct. 21, 2013) (lowering senior partners' rate to $550/hr); *Pabst v. Genesco Inc.*, No. C 11-01592 SI, 2012 U.S. Dist. LEXIS 129389, at *6 (N.D. Cal. Sept. 11, 2012) (rejecting $900/hour for nationally prominent class-action attorney Joe R. Whatley); *Stonebrae, L.P. v. Toll Bros.*, No. C-08-0221 EMC, 2011 U.S. Dist. LEXIS 39832, at *50 (N.D. Cal. Apr. 7, 2011) (rejecting rates between $675/hour and $950/hour); *see also Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1161 (N.D. Cal. 2012) (overruling objection to magistrate's decision to lower rate from $700/hr requested to $525/hr).

Although Mr. Bennett's and Mr. Erausquin's base rates are lower at $575 and $450 respectively, they are equally concerning for a different reason. While the other three lead attorneys submit cases supporting their claims rates, Mr. Bennett does not for the attorneys in his firm. Two years ago, he asserted that "My attorney billing rates are between $300/hr and $450/hr." *Domonoske v. Bank of Am.*, No. 08-cv-00066, Declaration of Leonard A. Bennett (Dkt. 136-2) ¶11. On lodestar crosscheck, the court ratified those rates. *Domonoske*, 790 F. Supp. 2d at 466, but here two years later Mr. Bennett is asking for an unwarranted 28% inflation over the two year period. *See Grissom*, 549 F.3d at 323 (holding inflation of 29% over a two year period to be unjustified. Rather, "[t]he change in hourly rates from 2008 to 2013 accounted for an

---

[7] Hanna & Zahorsky, *What America's Lawyers Earn*, 97 A.B.A.J. 35 (Mar. 2011) (finding the California legal market to have the highest average compensation).

Schulman Supplemental Objection
Case No. 3:11-cv-00754 JRS

increase of between approximately 9% and 16%, depending on the attorney's experience." *Won Kim*, 2013 U.S. Dist. LEXIS 107424, at *11 (examining the Laffey Matrix). Accordingly, the rates of Consumer Litigation Associates' attorneys should be reduced to pare back the overinflation.

Because the affidavits of class counsel are insufficient to instruct the Court in determining reasonable rates, I refer the Court to two secondary sources that courts in this Circuit have looked to. First is the United States Consumer Law Attorney Fee Survey Report. *See* Ronald L. Burdge, *United States Consumer Law Attorney Fee Survey Report*, 2010-2011, *available at* http://www.nclc.org/images/pdf/litigation/fee-survey-report-2010-2011.pdf (cited by, *inter alia, Koontz*, 2013 U.S. Dist. LEXIS 45509, at *45 n.2). Virginia, included in the Atlantic Region, displays an hourly rate of $421 for attorneys with Mr. Caddell's experience ($351 if looking to the Texas Region), $390 for those with Ms. Chapman's experience (or $287 if looking to the Texas Region), $373 for attorneys with Mr. Bennett's experience, $338 for those with Mr. Marchiando's experience ($312 if looking to the Texas region), and $329 for those with Mr. Erausquin's experience. All of these attorneys seek significant deviations upward from the customary rate for consumer work in the Atlantic region.

Second, there is the Laffey Matrix, *available at* www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf. The Laffey Matrix suggests rates of $505 for Mr. Caddell and Ms. Chapman, $445 for Mr. Bennett and Mr. Erausquin, and $355 for Mr. Marchiando. "While the Laffey Matrix is not binding on this Court, courts in this District have recognized that, if anything, the reasonable rates in this District are lower than those in Washington, D.C. as contained in the Laffey Matrix." *Landwehr v. AOL Inc.*, 2013 U.S. Dist. LEXIS 64456, at *6 (E.D. Va. May 1, 2013) (making an across-the-board 10% reduction for excessive rates). Again, each recommendation by the Laffey Matrix is significantly lower than the rate sought by respective counsel.

14

Individually, the rates are distended enough, but the problem is magnified by a blended rate of all attorneys of $501/hr, a rate which exceeds what one court found to be the $500 "top end of the market rate" in class action litigation. *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 766 (S.D. W. Va. 2009). $501/hr surpasses the going blended rate in this Circuit and even that in California. *Bruno v. Quten Research Inst., LLC*, No. SACV 11-00173 DOC(Ex), 2013 U.S. Dist. LEXIS 35066, at *9 (C.D. Cal. Mar. 13, 2013) (class counsel's blended rate was $366.87/hr); *Nguyen v. BMW of N. Am. LLC*, No. C 10-02257 SI, 2012 U.S. Dist. LEXIS 56018 , at *9 (N.D. Cal. Apr. 20, 2012) (finding reasonable blended rate to be $470/hr); *see also Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08-cv-1992 AJB (MDD), 2013 U.S. Dist. LEXIS 14105, at *33-*34 (S.D. Cal. Feb. 1, 2013) (finding blended rate of $447/hr to be "in line with that of the community" when compared to peers in Los Angeles, Silicon Valley, San Francisco, and San Diego).

One hopes that this was not a case of "[a] Michelangelo...charg[ing] Sistine Chapel rates for painting a farmer's barn." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983). But judging from the blended rate —as we must given the lack of detailed billing records—it appears probable that chief class counsel were engaging in relatively menial tasks that should have been delegated to young attorneys or paralegals. Any "excuse" that lead counsel "had [no] lower level attorneys to assist them" is not "convincing." *In re Bluetooth Headset Prods. Liab. Litig.*, 07-ML-1822 DSF (Ex), 2012 U.S. Dist. LEXIS 168324, at *8 (C.D. Cal. Jul. 31, 2012). "Had the Court known that neither firm had the proper staffing available, it likely would not have found them to be appropriate as class counsel. Certainly no reasonable paying client would find this to be justification for billing a partner rate for paralegal or secretarial work." *Id.* So although the plaintiffs claim to have "assigned work to associate and paralegal personnel where possible and prudent to keep costs low," the data doesn't appear to bolster that contention. Fee Mem. 9.

In sum, the fees exceed the bounds of reasonableness and class counsel's sole reliance on affidavits does not suffice to support their requested rates.

15

**B.    The submissions of class counsel are inadequate to support the reasonableness of the hours expended.**

"When applying for a fee, an attorney has the burden to establish the reasonableness of his hourly rate with specific evidence. There is no logical reason not to apply that principle to the hours aspect of the lodestar analysis." *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 230 n.12 (4th Cir. 2009) (internal citation omitted). Indeed, "proper documentation is the key to ascertaining the number of hours reasonably spent on legal tasks." *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006) "[T]he fee request should, at a minimum, (1) provide dates work was performed, (2) a reasonable, specific description of the work, and (3) time expended on the work." *Koontz*, 2013 U.S. Dist. LEXIS 45509, at *30-*31 (quoting *Central Cab Company, Inc., v. Cline*, 972 F. Supp. 370, 374 (S.D. W. Va. 1997)); *accord Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 166 (3d Cir. 1973).

This minimum is necessary so the court can discharge its obligation to "exclude any hours that are 'excessive, redundant, or otherwise unnecessary,' and therefore not reasonably expended on the litigation. *Landwehr*, 2013 U.S. Dist. LEXIS 64456, at *4 (ultimately quoting *Hensley*, 461 U.S. at 434). *See also Yu Zhang v. GC Servs., LP*, 537 F. Supp. 2d 805, 812-15 (E.D. Va. 2008) (scrutinizing timesheets of Mssrs. Bennett and Erausquin and making reductions for duplicative hours, excessive hours, inadequate detailed descriptions of tasks). Rule 23(h) fortifies this requirement, by requiring that class members have notice of and an opportunity to object to all the fee motion papers. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994-95 (9th Cir. 2010). It is not sufficient that class members are able to make "generalized arguments about the size of the total fee"; the notice must enable them to determine which attorneys seek what fees for what work. *Id.* at 991. Before the implementation of Rule 23(h) in 2003, it would have been improper to "paralyze objectors" by *in camera* submission of fee applications. *Reynolds v. Benefit Nat'l Bank*, 288 F.3d 277, 286 (7th Cir. 2002).

The only charts provided by class counsel are the barest of bones. *See* Bennett Decl. ¶37,

16

Francis Decl. ¶19, Caddell Decl. ¶55. Each chart lists the name of the attorney, their title, their requested rate, their total hours worked, and the total lodestar per attorney.[8] There is no categorical breakdown, not even a vague one of what type of tasks were being performed, by firm or by attorney. This is unacceptable when class counsel is seeking a base lodestar award.

If the documentation of hours is inadequate, the court may reduce the award accordingly. *Hensley*, 461 U.S. at 433; *Landwehr*, 2013 U.S. Dist. LEXIS 64456, at *12-*13 (following *Hensley*, making 30% blanket reduction); *Signature Flight Support Corp. v. Landow Aviation L.P.*, 730 F. Supp. 2d 513, 524 (E.D. Va. 2010) (same, 20% reduction); *Weinberger v. Great N. Nekoosa Corp.*, 801 F. Supp. 804, 816-24 (D. Me. 1992) (deducting 78% of class counsel's hours as inadequately documented, excessive, duplicative or otherwise unreasonable). And there is good reason for skepticism; "[t]he obvious lack of any market restraints on the amount of time spent [should] cause[] the Court to be skeptical of counsel's claim that the number of hours is reasonable." *Hubbard v. Donahoe*, __F. Supp. 2d___, 2013 WL 3943495, 2013 U.S. Dist. LEXIS 107096, at *25 (D.D.C. Jul. 31, 2013) (internal quotation omitted).

At the very least, reductions are warranted to account for the following unanswered questions:

1. Plaintiffs assert that only 20% of their time expended was devoted to obtaining (b)(3) class relief. Fee Mem. 13. Is this estimation accurate? Or was this percentage contrived for the reverse engineering purpose of keeping the multiplier under 2? *Cf. Stumpf v. PYOD, LLC*, 2013 U.S. Dist. LEXIS 152093, at *14 (N.D. Ill. Oct. 23, 2013) ("[T]he suggested multiplier of 1.86 appears to be the result of mathematical happenstance, not a reflection of the probability of success at the inception of the case.") Perhaps a review of actual billing records would allow some disentangling of time spent on the (b)(3) class as opposed to the (b)(2)

---

[8] The Bennett and Caddell charts, but not the Francis chart, also provide the seniority by years experience, of each attorney.

17

class. Notwithstanding class counsel's self-serving attestation, there are two independent settlements proposed here. In the absence of non-speculative evidence, the presumption should be that 50% of class counsel's time is attributable to each. It seems difficult to believe that injunctive relief was always the focus of the litigation. Bennett Decl. 28; Caddell Decl. 51, given that the complaint is crystal clear in seeking solely monetary relief, not injunctive relief. But regardless, it is necessary for the judge to wade into the billing to do this, just as a judge must wade in to " subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Grissom*, 549 F.3d at 321 (internal quotation omitted). Although the (b)(3) settlement is not equivalent to an unsuccessful claim *per se*, the same principle applies. *See Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002) (an "award should reimburse the plaintiff for work "expended in pursuit of" the success achieved.") (quoting *Hensley*, 461 U.S. at 435).The hours devoted to the (b)(3) class did not benefit the (b)(2) class and are thus non-compensable.

**2.** Were high-rate attorneys spending an "excessive amount of time performing common tasks - such as drafting a complaint and reviewing documents - that are typically performed by a junior attorney at a lower hourly rate?" *Signature Flight Support Corp.*, 730 F. Supp. 2d at 522 (E.D. Va. 2010). For example, "document production and review ... should have been performed by a junior attorney, which would have lowered its fee requests significantly." *Id.* at 523; *Morse v. Republican Party*, 972 F. Supp. 355, 366 (W.D. Va. 1997) (eliminating time for clerical and other non-compensable tasks). Given the bloated blended rate, the answer to this question appears to be in the affirmative.

**3.** Are any hours being charged for work that occurred before the filing of the Berry action? Caddell Decl. 33 (discussing representation of plaintiffs in *Graham* case); Mem. in support of Preliminary Approval (Dkt. 63) at 7-9 (discussing Francis &Mailman's work on the *Adams* case), 9-10 (discussing Consumer Litigation Associates, Caddell & Chapman and Dale Pittman's work on the *Graham* action). Bennett Decl. ¶28 implies that class counsel are counting those pre-*Berry* hours. That would not be appropriate. *See Landwehr*, 2013 U.S. Dist. LEXIS 64456, at *9-

18

*12 (refusing to include hours "duplicating work" from an earlier lawsuit); *In re Infospace, Inc. Secs. Litig.*, 330 F. Supp. 2d 1203, 1214 (W.D. Wash. 2004). Duplicative "effort does not come close to justifying a nearly $1.3 million fee award," let alone a $5.3 million fee. *Id.* at *13. The *Adams* and *Graham* actions were settled on an individual basis, and it is likely that the attorneys' obtained some compensation for them in those settlements. Regardless of whether they did obtain compensation, the class did not, and those hours should not be charged to the class now.

<u>4.</u> Conversely, how many hours were unreasonably expended after settlement was reached? *See In re Citigroup Inc Secs. Litig.*, 07 Civ. 9901, 2013 U.S. Dist. LEXIS 108115, at *59-*64 (S.D.N.Y. Aug. 1, 2013).

<u>5.</u> Was there duplication resulting from the staffing of 4 independent and high-priced firms as class counsel? It does not "confer a benefit on the class" to incur litigation costs from duplicative parallel cases. *Drazin v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 832 F. Supp. 2d 432, 443 (D.N.J. 2011), *aff'd* 2013 U.S. App. LEXIS 11830 (3d Cir. 2013). But that is precisely what the *Adams* and *Graham* litigation were. Then, the situation doesn't necessarily improve when all the lawyers coalesce on a single case. *See e.g., Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988) ("Redundant hours generally occur where more than one attorney represents a client."); *Grendel's Den v. Larkin*, 749 F.2d 945, 953 (1st Cir. 1984) ("We see no justification for the presence of two top echelon attorneys at each proceeding."); *Lane v. Wells Fargo Bank, N.A.*, No. C 12-04026 WHA, 2013 U.S. Dist. LEXIS 87669, at *43 (N.D. Cal. June 21, 2013) ("it is disturbing that counsel proposes to employ four law firms and thus multiply the lodestar, all at the expense of the class. At our recent hearing, six counsel were present for plaintiffs. One firm is usually best for the class because it eliminates the inefficiency in keeping a multiplicity of law firms up to speed."); *Wolph*, 2013 U.S. Dist. LEXIS 151180 (N.D. Cal. Oct. 21, 2013) (three firms participated on all parts of the litigation) (reducing hours by 62%). As Judge Shadur pithily stated recently,

> [A]lthough it was not this Court that coined the aphorism that 'A camel is a horse

19

designed by a committee'... [it] reflects a sense forged during this Court's many years in the practice of law (including class action practice on both sides of the "v." sign) and more years of evaluating applications for fee awards in class actions (a task that too often reveals an excess of lawyers seeking to share the wealth).

*In re Stericycle, Inc.*, 2013 U.S. Dist. LEXIS 147718, at *3 (N.D. Ill. Oct. 11, 2013) (Shadur, J.).

**6.** Did class counsel exercise sound "billing judgment"? *Signature Flight Support Corp.*, 730 F. Supp. 2d at 522. Or would the underlying timesheets reveal excessive time spent on tasks? *See Broyles v. Director*, 974 F.2d 508, 510 (4th Cir. 1992) ("An attorney, who claims considerable experience in the field ... and charges an hourly fee commensurate with his experience, should be able to [operate] without the expenditure of excess time."); *Lux v. Judd*, 868 F. Supp. 2d 519, 533 (E.D. Va. 2012) (10% reduction for overbilling).

"If plaintiffs and their attorneys are acting like they have something to hide from the absent class members, perhaps it's because they do." *Felix v. Northstar Location Servs.*, 290 F.R.D. 397, 408 (W.D.N.Y. 2013).

**C.    A multiplier greater than one is inappropriate.**

Plaintiffs profess to be seeking a multiplier of 1.99. Fee Mem. 13. In actuality, with the proper reasonable rates and hours in place, the multiplier to get to $5.33 million is much higher than that. Both the plaintiffs and Professor Miller spill much ink compiling tens of cases awarding large multipliers. Fee Mem. at 16-17; Miller Decl. ¶37. Nonetheless, all 11 cases cited by the plaintiffs, and 24 of the 27 cases cited by Miller, predate the Supreme Court's watershed decision in *Perdue v. Kenny A.*, 559 U.S. 542, 554 (2010). None of the three cases that postdate *Kenny A* pause to discuss the decision; rather, they all follow now-superseded case law that permits large multipliers.

*Kenny A.* expounds on several vital principles to consider when a multiplier is requested. *First*, it establishes a "strong presumption that the lodestar is sufficient" without an enhancement multiplier. *Id.* at 546. *Second,* it allocates "the burden of proving that an enhancement is necessary [to] the fee applicant." *Id.* at 553. *Third* and most significantly, it holds that a lodestar

20

enhancement for performance is justified only in "rare and exceptional" circumstances where "specific evidence" demonstrates that an unenhanced "lodestar fee would not have been adequate to attract competent counsel." *Id.* at 554. The factual history of this case—that multiple lead counsel were engaged in parallel litigation—demonstrates just the opposite, that no enhancement would have been necessary to attract competent counsel. As such, the requisite showing that the case was unattractive is nigh impossible, and plaintiffs don't even attempt to argue otherwise. Rather, they maintain their entitlement to a multiplier solely on the basis of exceptional results. Fee Mem. 14-16. But achieving great results is the type of "considerations[] concerning the quality of a prevailing party's counsel's representation normally...reflected in the reasonable hourly rate." 559 U.S. at 551. Plaintiff's inability to argue that the case is unattractive is conclusive of the matter, since *Kenny A.* demands those seeking the "rare" and "exceptional" performance-based multiplier to advance "specific evidence that the lodestar fee would not have been adequate to attract competent counsel" *Id.* at 554.

      *Kenny A.*'s limitation on enhancements was made in the context of interpreting 42 U.S.C. § 1988's language of "reasonable" fee awards, but has equal application to "reasonable" fee awards in class actions made under Fed. R. Civ. P. 23(h), or "reasonable" fees awarded to a prevailing party under the FCRA. *See, e.g., Gonzalez v. S. Wine & Spirits of Am., Inc.*, No. 11-cv-5849, 2012 U.S. Dist. LEXIS 46401, at *12-*16 (C.D. Cal. Mar. 29, 2012) (citing *Perdue* and denying enhancement multiplier of 1.5); *Weeks v. Kellogg Co.*, No. 09-cv-8102, 2011 U.S. Dist. LEXIS 155472, at *129-*135 & n.157 (C.D. Cal. Nov. 23, 2011) (citing *Perdue* and finding "little basis for an application of a multiplier" when calculating lodestar cross-check); *Winston & Strawn LLP v. FDIC*, 894 F. Supp. 2d 115, 130 (D.D.C. 2012) (rejecting argument attempting to confine *Kenny A* to federal statutory fee shifting awards);.*Dixon-Rollins v. Experian Info. Solutions, Inc.*, No. 09-0646, 2010 U.S. Dist. LEXIS 100013, at *17-*18 (E.D. Pa. Sept. 23, 2010) (applying *Perdue* to FCRA fee shifting) ("A quality multiplier is applied only in very rare circumstances . . . Although Francis & Mailman provided competent services and secured a large

21

award for their client, their work was not so superior to justify a quality multiplier.")

*Kenny A.* makes apparent that a multiplier is not appropriate here.

## CONCLUSION

If the Court decides to reach the question of fees, and elects to use the lodestar approach, class counsel's hours and rates should be substantially reduced. No multiplier should be applied. In any event, the Court should strike or disregard portions of the proffered testimony of Professors Miller and Mullenix.

Dated:  November 25, 2013

Respectfully submitted,

Adam E. Schulman (DC Bar No. 1001606)
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (610) 457-0856
Email: shuyande24@gmail.com

*Pro se*

22

## CERTIFICATE OF SERVICE

I certify that I caused to be sent also through FedEx Overnight Mail, a copy of the foregoing supplemental objection to the Clerk of Court at the following address:

Clerk of Court
U.S. District Court for the Eastern District of Virginia
701 East Broad Street
Richmond, VA 23219

And a courtesy copy to the Court at the following address:

Honorable James R. Spencer
U.S. District Court for the Eastern District of Virginia
701 East Broad Street
Richmond, VA 23219

I further certify that I have caused to be sent by USPS or electronic mail, the document to the following attorneys of record:

Dale W. Pittman
The Law Office of Dale W. Pittman, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803-3212
dale@pittmanlawoffice.com

Leonard A. Bennett
Matthew Erausquin
Susan M. Rotkis
Janelle Mason Mikac
Consumer Litigation Associates P.C.
12515 Warwick Boulevard, Suite 100
Newport News, VA 23606
lenbennett@cox.net
matt@clalegal.com
srotkis@clalegal.com
janelle@clalegal.com

James A. Francis
Mark D. Mailman
John Soumilas
David A. Searles
Erin A. Novak
Francis & Mailman
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
enovak@consumerlawfirm.com
dsearles@consumerlawfirm.com

Michael A. Caddell
Cynthia B. Chapman
Craig C. Marchiando
Caddell & Chapman
1331 Lamar, Suite 1070
Houston, TX 77010
mac@caddellchapman.com
ccm@caddellchapman.com
cbc@caddellchapman.com

23

David N. Anthony
TROUTMAN & SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
david.anthony@troutmansanders.com

James Francis McCabe
MORRISON & FOERSTER LLP
425 Market Street
San Francisco CA 94105-2482
jmccabe@mofo.com

Ronald Irvin Raether , Jr.
FARUKI IRELAND & COX PLL
500 Courthouse Plaza SW
10 N Ludlow Street
Dayton OH 45402
rraether@ficlaw.com

Charles Bennett Molster, III
Winston & Strawn LLP
1700 K St. NW
Washington, DC 20006
cmolster@winston.com

Kimball Richard Anderson
Winston & Strawn LLP (IL-NA)
35 W. Wacker Dr.
Chicago, IL 60601-9703
kanderson@winston.com

Samuel Issacharoff
40 Washington Square South
411J
New York, NY 10012
samuel.issacharoff@nyu.edu

William Paul Ferranti
Winston & Strawn LLP (IL-NA)
35 W. Wacker Dr.
Chicago, IL 60601-9703
bferranti@winston.com

David Brown
1717 Market Street
Tacoma, WA 98402

Jeanne Giles
260 Gooseberry Drive
Reno, NV 89523

I declare under penalty of perjury that the foregoing is true and correct.

Adam E. Schulman

Dated: November 25, 2013