UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

GREGORY THOMAS BERRY, *et al.*

               Plaintiffs,

                                                Civil Action No. 3:11cv754

v.

LEXISNEXIS RISK & INFORMATION
ANALYTICS GROUP, INC., *et al.*

               Defendants.

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

    COME NOW the Plaintiffs, Gregory Thomas Berry, Summer Darbonne, Rickey Millen, Shamoon Saeed, Arthur B. Hernandez, Erika A. Godfrey and Timothy Otten ("Plaintiffs"), individually and on behalf of all others similarly situated and for their Reply In Support of Their Motion for Attorneys' Fees, Expenses, and Service Awards they state as follows:

**INTRODUCTION**

    On November 22, 2013, Plaintiffs' filed their Motion for Attorneys' Fees, Expenses, and Service Awards (Docket No. 102). In response, *pro se* objector, Adam Schulman, filed a Supplemental Objection of Adam Schulman to Plaintiffs' Motion for Attorneys' Fees (Docket No. 109). Notably, Mr. Schulman is the only person to oppose to Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards, including the Defendant in this case, and does so only as to Plaintiffs' request for fees with respect to the Injunctive Relief settlement. It is important to note at the outset that Mr. Schulman does not oppose the Service Awards to the Plaintiffs, nor the costs sought by Plaintiffs' in their Motion. It is also important to observe that neither Mr. Shulman nor any other class member has a financial stake in the attorneys fee

decision as (a.) it was negotiated separately and after settlement on other terms and (b.) is paid solely by the Defendant. As an unbroken line of decisions have found, the presumptive measure of a fair fee is what a party would voluntarily pay for such services on the market. In this case, the Court has just such a measure as LexisNexis has agreed to pay a reasonable attorneys fee, which it consents to be that requested herein.

## ARGUMENT

**I.  The Testimony of Professors Geoffrey Miller and Linda Mullenix Is Admissible**

Despite citing repeatedly to Professor Mullenix in his brief objecting to the class settlement, Mr. Schulman now asks the Court to disregard much of her declaration intended to correct Mr. Schulman's own misrepresentations of what he claims are her opinions and conclusions. *See* Schulman Supp. Obj. to Pls.' Mtn. for Attys' Fees 1–4. Professor Mullenix's declaration became necessary entirely because of Mr. Schulman's mischaracterization of her work and writings. Nonetheless, when Professor Mullenix forcefully responded to Mr. Schulman's assertions that Mr. Shulman "misinterpreted [her] thesis, quoted [her] out-of-context, and plucked selective sentences to support his argument, with which [she does] not agree". Miller Decl. ¶ 35 (Docket No. 104.1). However, rather than address any of Professor Mullenix's statements, Mr. Shulman simply argues that her declaration should be disregarded and audaciously claims that Professor Mullenix "is absolutely wrong". Schulman Supp. Obj. to Pls.' Mtn. for Attys' Fees 2.

Mr. Schulman further argues that Professors Miller and Mullinex's declarations claiming that the hourly rates and multipliers are within the range of reason are not appropriate. Mr. Schulman then cites the following cases, allegedly providing support for his contention that experts cannot testify on the reasonableness of hourly rates or a total fee award: *Estate of Sowell*

*v. United States*, 198 F.3d 169, 171–72 (5th Cir. 1999); *Aguilar v. Int'l Longshoremen's Union Local # 10*, 966 F.2d 443, 447 (9th Cir. 1992); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995). However, none of these cases stand for the proposition that an expert (or even another attorney) cannot provide a declaration supporting that an hourly rate or total amount of fees is within the range of reason. In fact, in each of the cases Mr. Schulman cites, the expert testimony at issue was attempting to answer an ultimate issue of law in the case, such as (1) what a reasonable fiduciary would do when confronted with facts identical to those in the case, *see Estate of Sowell v. United States*, 198 F.3d at 171–72; (2) the reasonableness and foreseeability of the casual workers' reliance on representations made in an employment contract, which formed the ultimate basis of the breach of contract claim, *see Aguilar*, 966 F.2d at 447; and (3) whether police officers acted reasonably in believing they had probable cause to arrest the plaintiff, *see Peterson v. City of Plymouth*, 60 F.3d at 475; (4). Whether the Plaintiffs' fee request, including Class Counsel's hourly rates, are within the range of reason is not an underlying issue of law in which expert opinions cannot be used to corroborate the relevant expertise, skill, and experience of the attorneys and even the market in which evaluation is to occur.

      Moreover, in order to carry their burden on the customary fees factor that the Court must evaluate under the *Johnson* factors, Plaintiffs may present the Court with evidence of "the prevailing rates in the relevant market". *Porter v. Elk Remodeling, Inc.*, No.1:09cv446, 2010 WL 3395660, at *5 (E.D. Va. Aug. 27, 2010) (citing *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990). This is in addition to the attorneys' own affidavits. *Id.* The Fourth Circuit has held that declarations or affidavits of other attorneys familiar with the skills of the fee applicants and the type of work in the relevant community satisfy this requirement for adequate evidence. *See*

*Porter*, No. 1:09cv446, 2010 WL 3395660, at *5. Similarly, the Fourth Circuit has held that the prevailing market rate can be established using "affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the market". *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987).

The difficulty in a specialized case as this one – a large national class action brought against well-funded Defendants themselves defended by specialized national counsel – is that the "relevant market" is not simply one geographically defined or proximate to the courthouse. The success of the case depended upon a large team of experienced litigators having both FCRA and class action experience., and as the declarations filed by the attorneys in the case evidence, there really are not any other attorneys in the nation with the necessary combination of FCRA and complex litigation experience. *See Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988) ("The community in which the court sits is the appropriate starting point for selecting the proper rate. *See Donnell v. United States,* 682 F.2d 240, 251 (D.C.Cir.1982). Nevertheless, "[t]he complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally." *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760, 768 (7th Cir.1982). In *Chrapliwy,* the court identified two questions to be asked in determining whether an exception to the general rule should be granted: are services of like quality truly available in the locality where the services are rendered; and did the party choosing the attorney from elsewhere act reasonably in making that choice? 670 F.2d at 769."). Judge Payne has similarly explained,

> The fundamental difficulty presented by Boczar's opposition is that she seeks to define the relevant market too narrowly: as "the litigation of a tort case with low special damages and no experts." Def. Opp. at 11. This is a cramped interpretation of the concept of "similar services." It may well be true that "what has been will

> be again, what has been done will be done again;"[7] however it would be far too demanding to require the fee applicant to produce evidence of fee awards in substantially identical cases or to restrict the relevant market to cases that present the same facts or questions of law. Boczar has cited no authority which takes such a narrow view of similar services. Nor could the Court locate such authority

*McAfee v. Boczar*, 906 F. Supp. 2d 484, 495-96 (E.D. Va. 2012).

The declarations of Professors Miller and Mullinex provide exactly that type of support necessary to consider the specialized and unusual issues regarding the fees in this case. While these declarations are intended to provide evidence that Class Counsel's hours, billing rates, and overall fee request are comparable to fee requests and billing rates in other class actions, and thus reasonable, they are by no means intended to replace the Court's evaluation of the reasonableness of Plaintiffs' fee request.

## II. The Requested Award of Fees and Costs Are Reasonable

### A. The Requested Hourly Rates Are Reasonable

Contrary to Mr. Schulman's assertion, Plaintiffs' counsel's hourly rates are reasonable and well within the prevailing market rate for similarly experienced attorneys in this District, including in Richmond, Virginia. Despite the fact that Mr. Schulman has been unable to locate them, there are several cases in this district and division that have held hourly rates similar to or higher than that rates that Plaintiffs' counsel are seeking as reasonable. *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 265 (E.D. Va. 2009) (J. O'Grady approving lodestar cross-check of percentage fee award for partner-lever attorneys with hourly rates ranging from $440-$825 per hour); *Bralley v. Carey*, 2011 U.S. Dist. LEXIS 107015, *6, *11 (E.D. Va. 2011) (Norfolk) (finding the hourly rate of $425 for Mr. Pittman in small individual FDCPA case in Norfolk was reasonable); *Lux v. Judd*, 868 F. Supp. 2d 519, 531-32 (E.D. Va. 2012) (Hourly rates of $575 for prevailing plaintiff's lead counsel and $400 for plaintiff's local counsel were reasonable in part because the requested rates were comparable to market rates in the community); *McAfee v.*

*Boczar*, 906 F. Supp. 2d 484, 496 (E.D. Va. 2012) (Judge Payne held that rate of $585 per hour for experienced lead counsel, and $365 per hour for a senior associate were reasonable); *Randle v. H&P Capital, Inc.*, 3:09CV608, 2010 WL 2944907, *8 (E.D. Va. July 21, 2010) ("The record here establishes that the prevailing market rate for lawyers of comparable skill, experience, and reputation performing similar services in the Richmond area falls between $300 and $600 per hour."); *Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, 730 F. Supp. 2d 513, 527 (E.D. Va. 2010) *aff'd sub nom. Signature Flight Support Cor. v. Landow Aviation Ltd. P'ship*, 442 F. App'x 776 (4th Cir. 2011) (approving hourly rates of $609 per hour as reasonable); *Smith v. EVB*, 3:09cv554, 2010 U.S. Dist. LEXIS 135562, *6 (E.D. Va. Dec. 22, 2010) ("average hourly rate for federal litigation attorneys practicing in the Eastern District of Virginia's Richmond Division ranges from $300 per hour to at least $600 per hour."); *SunTrust Mortgage, Inc. v. AIG United Guar. Corp.*, 933 F. Supp. 2d 762, 774 (E.D. Va. 2013) (awarding an hourly rate of $695 per hour as reasonable); *W.A.K. ex rel. Karo v. Wachovia Bank, N.A.*, 3:09CV575-HEH, 2010 WL 3074393, *4-5 (E.D. Va. Aug. 5, 2010) (finding attorney rates of $595 as reasonable and "consistent with the prevailing rate in the Richmond area.").

Beyond the Plaintiffs' own experts and these Eastern District of Virginia decisions, the Plaintiffs' counsel's rates are confirmed by recent declarations made under oath and publically filed in other Eastern District cases. *See* Declaration of Craig C. Reilly, *Vienna Metro, LLC v. Pulte Home Corporation*, Case No. 1:10cv502 (E.D.Va. June 6, 2011) (Exhibit "A"); Declaration of Robert A. Angle, *Signature Flight Support Corporation v. Landow Aviation LLP*, Case. No. 1:08cv995 (E.D.Va. April 1, 2010) (Exhibit "B") ("I have become and remain familiar with the prevailing market rates for attorneys who practice in the Eastern District of Virginia, including attorneys in the Northern Virginia and Washington, D.C., area, as well as the

prevailing market rates for attorneys who practice complex litigation matters such as those at issue in this action. In my role as the head of one of the litigation practice teams in Richmond, I review the billable rates of other litigators within the Richmond office and am aware of the billable rates of the attorneys in our Northern Virginia and Washington, D.C., offices.") Both of these respected experts performed substantial surveys of Eastern District of Virginia litigators.[1] These surveyed firms are at least as prominent and accomplished as the attorneys Plaintiffs faced in this action. In fact, even Troutman Sanders rates were considered therein.[2] These declarations – even though between two and three years old – corroborate each other, the opinions of Plaintiff's experts and the decisions cited herein. Mr. Reilly found rates as follows:

**2011 Range of Hourly Rates in Northern Virginia**

| Paralegal | 1-3 | 4-7 | 8-10 | 11-19 | 20+ |
|---|---|---|---|---|---|
| $130 – 350 | $250 – 435 | $350 – 600 | $465 – 640 | $520 – 770 | $505 – 820 |

Mr. Angle offered his opinion as to hourly rates consistent with that of the Plaintiff's and the evidence and decisions herein. But he also cited the Price Waterhouse survey, which found for Northern Virginia and Washington attorneys:

| Equity Partners | Group | | |
|---|---|---|---|
| | *1st Quartile* | *Median* | *3rd Quartile* |
| High | $791 | $645 | $560 |
| Middle | 644 | 565 | 516 |
| Low | 560 | 478 | 450 |
| Average | 655 | 559 | 526 |

---

[1] Though the Declarants in these instances were testifying in Alexandria Division cases,
[2] As the Court is already aware, though Defendant's lead counsel in Virginia maintains his office
[2] As the Court is already aware, though Defendant's lead counsel in Virginia maintains his office in Richmond, Mr. Anthony is similarly accomplished nationally. He co-chairs Troutman Sanders national Financial Services practice group and he and other attorneys he supervises have faced off against Virginia-based Consumer Litigation Associates, P.C. out of the District in similar complex litigation matters.

| | | | |
|---|---|---|---|
| ***Avg. by Yrs. Exp.*** | | | |
| 10 Years or Less | ** | ** | ** |
| 11 - 15 Years | 600 | 580 | 478 |
| 16 - 20 Years | 647 | 603 | 559 |
| 21 - 25 Years | 638 | 540 | 522 |
| 26 - 30 Years | 637 | 553 | 533 |
| 31 - 35 Years | 684 | 585 | 527 |
| > 35 Years | 689 | 625 | 564 |
| **Non-Equity** | | | |
| High | $601 | $560 | $533 |
| Middle | 556 | 484 | 454 |
| Low | 523 | 450 | 408 |
| Average | 561 | 491 | 457 |
| ***Avg. by Yrs. Exp.*** | | | |
| 10 Years or Less | $529 | $446 | $433 |
| 11 - 15 Years | 575 | 490 | 463 |
| 16 - 20 Years | 603 | 518 | 473 |
| > 20 Years | 560 | 515 | 472 |
| **All Partner** | | | |
| High | $791 | $648 | $560 |

*Id*. at 16. And he cited the National Journal rate survey, which found rates even higher:

| Firm | Location | Partner Billing Rate High | Partner Billing Rate Low | Associate Billing Rate High | Associate Billing Rate Low |
|---|---|---|---|---|---|
| Arent Fox | Washington | $755 | $420 | $485 | $260 |
| Dickstein Shapiro | Washington | $950 | $500 | $515 | $265 |
| Greenberg Traurig LLP | International | $850 | $345 | $575 | $200 |
| Hogan & Hartson LLP | Washington | $990 | $385 | $550 | $150 |
| Patton Boggs | Washington | $990 | $400 | $540 | $200 |
| Sutherland Asbill & Brennan LLP | Atlanta, GA and Washington | $800 | $420 | $480 | $220 |
| Venable | Washington | $975 | $420 | $450 | $275 |
| | **Average** | **$901** | **$353** | **$514** | **$224** |

*Id*. at 20. Even with a reasonable adjustment for geography (across the Potomac), these rates are still higher than those sought by Plaintiffs' counsel. As Mr. Angle explained, "The results of these National Law Journal surveys are consistent with and support the billable rates reported by

PWC, discussed above, and the billable rates charged by my own firm [Troutman Sanders] during the relevant time period." *Id*.

And to the extent that this Court finds that Plaintiffs' counsel's rate exceed the prevailing rates in the Richmond area—a point that the Plaintiffs do not contest—this Court has the discretion to apply their out-of town and national practice rates because of the nature of this case: "[I]n an exceptional multiparty case such as this, where dozens of non-local counsel from all parts of the country are involved, public policy and administrative concerns call for the district court to be given the necessary flexibility to impose a national hourly rate when an adequate factual basis for calculating the rate exists. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232-34 (2d Cir. 1987). Several courts across the country have found that such a "national hourly rate" is appropriate in cases. *Hadix v. Johnson,* 65 F.3d 532, 535 (6th Cir. 1995); *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760, 768–69 (7th Cir.1982)); *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.,* 50 F.3d 253, 259–60 (3d Cir.1995); *Casey v. City of Cabool, Mo.,* 12 F.3d 799, 805 (8th Cir. 1993); *Nat'l Wildlife Fed'n v. Hanson,* 859 F.2d 313, 317 (4th Cir. 1988); *Maceira v. Pagan,* 698 F.2d 38, 40 (1st Cir. 1983); *Donnell v. United States,* 682 F.2d 240, 252 (D.C.Cir. 1982). Under this well established case law, the Court has the discretion to award Plaintiffs' counsel's fee based on the hourly rate that is reasonable in their home district and division and this is a case that warrants use of that discretion. This case involved several complex FCRA issues that required the association of the top consumer protection firms in order to properly and successfully prosecute this case. These consumer advocates should not be penalized simply because they prosecuted their case in Richmond, Virginia, and any holding that that effect would greatly prejudice Virginia consumers and their ability to take advantage of such experienced counsel's representation in future actions. *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983) ("if

the client needs to go to a different city to find that specialist, he will expect to pay the rate prevailing in that city. In such a case, there is no basis for concluding that the specialist's ordinary rate is unreasonably high . . . If the courts (without cause) award fees at less than that rate, they will tend to prevent those in smaller communities from obtaining the experienced legal counsel they may need, contrary to the policy behind awards of attorneys' fees to prevailing parties.") (internal citations omitted). *See also Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1972); *Newman v. Piggie Park Enterprises Inc.,* 390 U.S. 400, 402; *Copeland v. Marshall*, 641 F.2d 880, 890 (D.C. Cir. 1980).

Additionally, several of Mr. Schulman's objections to Plaintiffs' counsel's hourly rates are simply irrelevant. For example, Mr. Schulman's reliance on the *Grissom* case to attack what he considers to be an unreasonable inflation of Mr. Bennett's and Mr. Erausquin's hourly rate is also misguided. Much of the fee reduction in the *Grissom* case was due to a lack of documentation submitted in support of the motion for attorneys' fees. *Autopartsource, LLC v. Bruton*, 3:13CV54-HEH, 2013 WL 3766524 (E.D. Va. July 16, 2013) "In part, it was the lack of . . . documentation that resulted in a rate reduction in *Grissom,* so the analysis in that case does not apply with equal force here."). There is no such lack of documentation in this case. Plaintiffs' counsel has submitted affidavits from each of the partners of the law firms that are requesting fees in this case, as well as two declarations from experts in class action fee awards (see discussion above for the admissibility of these documents). Plaintiffs' counsel also outlined significant research in support of their fee request in their original fee motion. (Docket 103).

Similarly, Mr. Schulman's reliance on the Laffey Mattrix is both unpersuasive and unhelpful. This Court is not bound by the Laffey Matrix. *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009). Additionally, the Fourth Circuit and

district courts in this district and division have held that the Laffey Matrix is not indicative of the prevailing market rates in the Eastern District of Virginia. *McAfee v. Boczar*, 906 F. Supp. 2d 484, 493 (E.D. Va. 2012) ("Laffey Matrix is largely irrelevant to this action because the relevant market is Richmond, Virginia."); *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994); *Arze-Perez v. East Coast Global, Inc.*, 2011 U.S. Dist. LEXIS 151444 (E.D. Va. Dec. 14, 2011); *Grissom v. Mills Corp.*, 549 F.3d 313, 323 (4th Cir. 2008); *Project Vote/Voting for Am. v. Long*, 887 F. Supp. 2d 704, 712 (E.D. Va. 2012) ("Further, Project Vote's evidence in the form of the Laffey Matrix is insufficient as a reliable indicator of reasonable rates for a case proceeding outside of Washington, D.C.").

**B.    The Valuation of Injunctive Relief Should Be Included**

A threshold requirement to being awarded attorneys' fees is that Plaintiffs must be a prevailing party. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* The Plaintiffs' in this case are prevailing parties. They have obtained both monetary relief as well as injunctive relief for two classes of consumers.

Despite this, Mr. Schulman asks this Court to completely disregard the value of the injunctive relief from the evaluation of whether Class Counsel's requested fees are reasonable, claiming, "The entire injunctive package, encompassing both the concessions by the defendant and the concessions by class members, cannot be accurately ascertained, and thus cannot be included in the fund valuation." Schulman Supp. Obj. to Pls.' Mtn. for Attys' Fees 9 (internal footnote omitted). In making this argument, Mr. Schulman devotes a mere footnote to his dismissal of the fact that he committed an egregious error in claiming there was no attempt to

value the injunctive relief to the class members. In fact, Professor Neil M. Richards, esteemed Professor of Law at Washington University School of Law in St. Louis, Missouri and internationally regarded expert in the field of information privacy law, estimated the monetary value of the injunctive relief to the class by one method to be approximately $160 million annually, Richards Decl. ¶ 43, Ex. F to Mem. in Supp. of Joint Mtn. for Preliminary Approval of Proposed Settlement (Docket No. 63.6), by another method of estimation to be around $2.2 billion, *id.*, and even at "a nominal (and *unreasonably* low) amount of $1 per consumer, the value of the settlement to consumers is still in the range of *at least tens of millions of dollars per year*". *Id.* (emphasis added). The purpose of Mr. Richards's estimation, as he states in his declaration, was "to show that even for rights such as these that might be difficult to quantify, it is clear that the economic value of the Proposed Settlement to consumers is substantial beyond question". *Id.* Any one of these valuations satisfy Mr. Schulman's own argument that to justify Class Counsel's $5.5 million fee award, "to reach the appropriate ratio, the class benefit would have to be valued at $16.5 million". Obj. of Adam Schulman to (B)(2) Class Settlement 31–32 (Docket No. 71).

Nevertheless, Mr. Schulman now seeks to ignore Mr. Richards's valuation because, frankly, to not do so would render Mr. Schulman's argument as to the reasonableness of fees in comparison to the value of settlement moot. Despite this, and rather than addressing the fact that his own argument supports the award of $5.5 million in attorney fees and costs in this case, Mr. Schulman instead seeks to dismiss Mr. Richards entire valuation—in a footnote. Perhaps more egregious than his footnoted dismissal of an established expert's valuation of the proposed injunctive relief to the class, is Mr. Schulman's own self-interested and completely unsubstantiated $0 valuation of the injunctive relief. *See* Schulman Supp. Obj. to Pls.' Mtn. for

Attys' Fees 11. As a new attorney with only three years of experience and undergraduate degrees in Philosophy and Chinese[3], Mr. Schulman is neither a damages or economic valuation expert, nor is he even a practicing attorney within the area of the Fair Credit Reporting Act. The reality is that the only evidence of injunctive relief valuation on the record is that of Mr. Richards, and Mr. Schulman cannot simply ignore this valuation in order to avoid addressing the fallacy in his own argument.

### C. Plaintiffs' Multiplier is Appropriate

As with the rest of his Objection, Mr. Schulman's argument that a multiplier greater than one is belied by the sources that he claims support his position. Mr. Schulman relies solely on a "watershed" Supreme Court decision—*Purdue v. Kenny A.*, 599 U.S. 542, 544 (2010)—and claims that none of the Plaintiffs' counsel's citations in support of the requested multiplier discuss this decision and instead follow now-superseded case law that permits large multipliers. Schulman Supp. Objections, 20. As he did with Professor Mullinex's thesis, Mr. Schulman misinterpreted the *Purdue* case, quoted it out of context, plucked selective sentences to support his argument, and misrepresented the holding of the case to this Court.

Contrary to Mr. Schulman's assertion, the *Kenny A.* case did not place any new or additional limitations on multipliers to fee awards, nor was it the "watershed" case that Mr. Schulman represents it as. "We have stated in previous cases that such an increase is permitted in extraordinary circumstances, and we reaffirm that rule." In fact, at least one Justice believed that the issue presented to the Court was so straightforward that it didn't warrant a long decision. *Id.* at n.1 ("Justice Breyer would have us answer this question "Yes" and then end the opinion.") And the Court specifically rejected "any contention that a fee determined by the lodestar method

---

[3] *See* Adam Schulman, Linked-In Profile, http://www.linkedin.com/pub/adam-schulman/29/6bb/411.

may not be enhanced in any situation. The lodestar method was never intended to be conclusive in all circumstances." *Id.* at 553. The only reason that the Supreme Court overturned the multiplied fee award in the *Kenny A.* case was because the District Court did not provide the proper justification for a 75% multiplier that it applied to the fee award, stating "as far as the court's opinion reveals, this figure appears to have been essentially arbitrary." *Id.* at 557. *See also Jackson v. Estelle's Place, LLC*, 391 Fed. Appx. 239, 244 (4th Cir. Va. 2010). And contrary to Mr. Schulman's contentions, Plaintiffs' counsel has adequately shown that a multiplier is justified in this case as required by the *Kenny A.* case.

      Mr. Schulman raises two primary objections to Plaintiff's sought fee multiplier, both of which are conclusion and unsupported by any evidence. First, Mr. Schulman asserts that "with the proper reasonable rates and hours in place, the multiplier to get to $5.33 million is much higher than that." Supp. Objection of Adam Schulman to Pls.' Mot. for Attys' Fees 20. Unfortunately, Mr. Schulman does not "spill much ink" determining what he thinks the actual multiplier is that Plaintiffs' counsel is seeking, so Plaintiffs' Counsel can only respond by stating that the fees they are seeking are reasonable for reasons stated above and in their Memorandum in Support of their Motion for Attorneys' Fees, Expenses, and Service Awards.

      Mr. Schulman also states that a fee multiplier is not warranted because the lodestar fee for the case is adequate enough to attract competent counsel to litigate it. This is simply untrue. Mr. Schulman asserts that "multiple lead counsel were engaged in parallel litigation", Supp. Objection of Adam Schulman to Pls.' Mot. for Attys' Fees 21, but that simply isn't the case. Instead, this case is the culmination of five years of active and contentious litigation against LexisNexis by the same legal team. The inability of Plaintiffs' legal team—composed of the top consumer attorneys in the country—to obtain the relief sought in the first two cases, which

pleaded the same claims against the same defendant, makes this case a more unattractive one to other attorneys because would require a huge investment of time and resources and only have a minimal probability of success. Despite their previous efforts, Plaintiffs' counsel continued to fight LexisNexis and hold it accountable under the FCRA and have now obtained significant relief for the class members, as discussed at length in Plaintiffs' Memorandums in Support of their Motion for Preliminary Approval of the Class Action Settlement, Motion for Final Approval of the Class Action settlement, and, and their Motion for Attorneys' Fees (Docket Nos. 63, 99, and 103, respectively).

This settlement was the result of several years' worth of hard work and great financial risk by Plaintiffs' counsel. Plaintiffs' counsel spent approximately 6,811.8 hours over the course of five years and advanced $41,702.95 in expenses for the case. All of these facts boil down to one simple fact—this is exactly the sort of case in which a fee multiplier is appropriate and justified. *See* Prof. Miller Decl. ¶ 36 ("[I]t is obvious that a multiplier is required if counsel are to have adequate incentives to bring litigation of this sort.").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court overrule Mr. Schulman's Supplemental Objection of Adam Schulman to Plaintiffs' Motion for Attorneys' Fees, grant Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards, and award Plaintiffs any further relief that this Court deems just and proper.

Respectfully submitted,
**PLAINTIFFS**

/s/
Leonard A. Bennett, VSB No. 37523

Susan M. Rotkis, VSB No. 40693
CONSUMER LITIGATION
ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
Tel: (757) 930-3660
Fax: (757) 930-3662
lenbennett@clalegal.com
srotkis@clalegal.com

Matthew J. Erausquin, VSB No. 65434
Janelle Mason Mikac, VSB No. 82389
CONSUMER LITIGATION
ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel: (703) 273-7770
Fax: (888) 892-3512
matt@clalegal.com
janelle@clalegal.com

Michael A. Caddell
CADDELL & CHAPMAN
1331 Lamar, Suite 1070
Houston, TX 77010

James A. Francis
FRANCIS & MAILMAN
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110

Dale W. Pittman, VSB No. 15673
THE LAW OFFICE OF DALE W.
PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803-3212
Tel: (804) 861-6000
Fax: (804) 861-3368
dale@pittmanlawoffice.com

*Counsel for Plaintiffs Gregory Thomas Berry, Summer Darbonne, Rickey Millen, Shamoon Saeed, Arthur B. Hernandez, Erika A. Godfrey and Timothy Otten*

**CERTIFICATE OF SERVICE**

       I hereby certify that on the 10th day of December, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David N. Anthony
*Counsel for the Defendants*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Tel:    804-697-5410
Fax:   804-698-5118
david.anthony@troutmansanders.com

James F. McCabe
*Counsel for the Defendants*
MORRISON & FOERSTER LLP
426 Market Street
San Francisco, CA 94105-2482
Tel:    415-268-7011
Fax:   415-268-7522
jmccabe@mofo.com

Ronald I. Raether, Jr.
*Counsel for the Defendants*
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH 45402
Tel:    937-227-3733
Fax:   937-227-3717
rraether@ficlaw.com

Kimball Richard Anderson
William Paul Ferranti
*Attorneys for Megan Christina Aaron*
Winston & Strawn LLP (IL-NA)
35 W Wacker Dr
Chicago, IL 60601-9703
Tel:    (312) 558-5858
Fax:   (312) 558-5700
kanderson@winston.com
bferranti@winston.com

Samuel Issacharoff
*Attorney for Megan Christina Aaron*
40 Washington Square South
411J
New York, NY 10012
Tel:    (212) 998-6580
Fax:   (212) 995-4590
samuel.issacharoff@nyu.edu

Charles Bennett Molster, III
*Attorney for Megan Christina Aaron*
Winston & Strawn LLP
1700 K St NW
Washington, DC 20006
(202) 282-5000
cmolster@winston.com

                                 /s/
                Leonard A. Bennett, VSB No. 37523
               CONSUMER LITIGATION
               ASSOCIATES, P.C.
               763 J. Clyde Morris Boulevard, Suite 1-A
               Newport News, Virginia 23601
               Tel:    (757) 930-3660

Fax:	(757) 930-3662
lenbennett@clalegal.com