**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| SIGNATURE FLIGHT SUPPORT | ) | |
| CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:08cv995 (JCC) |
| | ) | |
| LANDOW AVIATION L.P., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>DECLARATION OF ROBERT A. ANGLE</u>

I, Robert A. Angle, declare and state as follows:

1. I am licensed to practice law in the Commonwealth of Virginia and am a member of the Virginia State Bar (VSB No. 37691). I am a partner at the law firm Troutman Sanders LLP ("Troutman Sanders"). My principal areas of practice are complex commercial litigation and intellectual property litigation.

2. Counsel for Signature Flight Support Corporation ("Signature"), Nixon Peabody LLP ("Nixon Peabody"), has asked me to express an opinion regarding the reasonableness of the attorneys' fees and related costs and expenses incurred by Signature in this action.

<u>Qualifications</u>

3. I received my Bachelor of Arts from the University of Virginia in 1991 and my Juris Doctor from the University of Virginia School of Law in 1994. I passed the Virginia Bar Examination in 1994 and was licensed to practice in the Commonwealth of Virginia in 1995. From August 1994 through August 1995, I served

as a law clerk to the Honorable James C. Cacheris, then the Chief Judge of the United States District Court for the Eastern District of Virginia.  Following my clerkship with Judge Cacheris, I joined the Richmond office of the law firm Mays & Valentine, LLP, which subsequently merged with Troutman Sanders.  I have practiced law with Troutman Sanders (and its predecessor) continuously since September 1995.  I became a partner with Troutman Sanders in 2001.

4.      I am admitted to practice before the Supreme Court of Virginia and have appeared in the Supreme Court of Virginia and the circuit and general district courts throughout the Commonwealth of Virginia.  I am also admitted to practice before the United States Court of Appeals for the Federal Circuit, the United States Court of Appeals for the Fourth Circuit, the United States District Court for the Eastern District of Virginia, the United States District Court for the Western District of Virginia, and the United States Bankruptcy Court for the Eastern District of Virginia.  In addition, I have appeared or been admitted *pro hac vice* by the United States Court of Appeals for the Eighth Circuit, the United States District Court for the District of Iowa, the United States District Court for the District of Maryland, the United States District Court for the District of Idaho, the United States District Court for the District of Delaware, and the Trademark Trial and Appeal Board of the United States Patent and Trademark Office.

5.      I am an *ex officio* member of the Board of Governors for the Intellectual Property Law Section of the Virginia State Bar, and the Secretary for the governing council of the Intellectual Property and Information Technology Law Section of the Virginia Bar Association.  I am also a member of the Litigation Section of both the Virginia State Bar and the Virginia Bar Association.  I have been listed in *Virginia*

*Business Magazine's* "Legal Elite" for Civil Litigation (2005-08) and Intellectual Property (2009); recognized in *Super Lawyers - Corporate Counsel Editio*n for Intellectual Property Litigation (January 2010), and *Virginia Super Lawyers* for Intellectual Property Litigation (2009); recognized as "Leaders in their field" for Intellectual Property: Southern Virginia by *Chambers USA* (2009 Edition); and named in *Best Lawyers in America* (2010).

6.     I regularly represent parties in complex commercial litigation and intellectual property litigation in the Alexandria, Richmond and Norfolk Divisions of the United States District Court for the Eastern District of Virginia (the "Eastern District of Virginia"). I also speak and write on topics relating to litigation in the Eastern District of Virginia. I am a regular panelist on Virginia CLE's bi-annual conference on litigating cases in the Eastern District of Virginia. *See* "The Rocket Docket 2008: Trying Cases in the Eastern District of Virginia," Virginia CLE (December 2008); "The Rocket Docket 2006: Trying Cases in the Eastern District of Virginia," Virginia CLE (December 2006). I help edit and publish a blog, located at www.virginiaiplaw.com, which focuses on intellectual property issues in Virginia and frequently includes articles on cases in the Eastern District of Virginia. I have co-authored several articles relating to the litigation of intellectual property matters in the Eastern District of Virginia, including *Litigating Patent Infringement Cases in the Rocket Docket of the Eastern District of Virginia*, which is to be published in the next issue of the Intellectual Property & Technology Law Journal, and similar articles on the same topic. *See Litigating Patent Infringement Cases in the Rocket Docket of the Eastern District of Virginia*, Mealey's Litigation Report: Intellectual Property (December 1, 2006); *Litigating Patent Infringement Cases in the*

*Eastern District of Virginia*, IP Law 360 (October 23, 2006); *Beware the Rocket Docket: Litigating IP Disputes in the Eastern District of Virginia*, Atlantic Coast In-House Magazine (October 2004); *Traps for the Unwary: Litigating Intellectual Property Cases In The Rocket Docket*, Mealey's Litigation Report: Intellectual Property (April 2003).

7.     I have served previously as an expert witness on the reasonableness of attorneys' fees and offered an opinion that was accepted and relied upon by the United States District Court for the Western District of Virginia (Charlottesville Division).  *See Silver Spring Splint Co. v. Digisplint, Inc.*, 567 F. Supp.2d 847 (W.D. Va. 2008).  I have also litigated issues relating to the recovery of reasonable attorneys' fees and costs in this Court.  *See Corinthian Mortg. Corp. v. ChoicePoint Precision Mktg., LLC*, Civil Action No. 1:07cv832-JCC, 2009 U.S. Dist. LEXIS 723 (E.D. Va. 2009).  In addition, I have co-authored an article relating to attorneys' fees issues.  *See Preserving Your Client's Claim for Attorneys' Fees: Recognizing When a Simple Claim for Attorneys' Fees Is Not So Simple*, VBA News Journal (October/November 2005).

8.     Through my years of practicing law in the Commonwealth of Virginia, I have become and remain familiar with the prevailing market rates for attorneys who practice in the Eastern District of Virginia, including attorneys in the Northern Virginia and Washington, D.C., area, as well as the prevailing market rates for attorneys who practice complex litigation matters such as those at issue in this action.  In my role as the head of one of the litigation practice teams in Richmond, I review the billable rates of other litigators within the Richmond office and am aware of the billable rates of the attorneys in our Northern Virginia and Washington, D.C., offices.  In

addition, I participate in preparing budgets and proposals for clients and potential clients, which often involves reviewing our billable rates and understanding the billable rates charged by comparable firms for similar services.

<u>Opinion As To Reasonableness Of Attorneys' Fees And Expenses</u>

9.     Attached hereto as Exhibit 1 is a list of the pleadings filed with the Court and the Orders and Memorandum Opinions issued by the Court in this action that I have reviewed and considered.  As evidenced by the length of this list, the parties filed numerous motions and other pleadings in this matter.[1]  I believe that the motions and pleadings filed by Signature were filed in good faith and with a substantial basis for the positions taken by Signature in such motions and pleadings.  Although Signature did not prevail in all of its motions or its oppositions to motions filed by Landow, I believe that the motions and pleadings filed by Signature were reasonable in light of Signature's positions and/or the actions of Landow, and that these motions and pleadings contributed to Signature's overall success in this matter.

10.     I have also reviewed to the extent necessary to understand the magnitude of the action the parties' written discovery and objections and responses, the joint discovery plan, the notices of depositions, and other discovery related pleadings.  It appears that the parties took nineteen depositions, some of which were for more than the seven hour limit dictated by Fed. R. Civ. P. 30(d), and each of which Signature's counsel

---

[1]    Counsel for Signature has informed me that Signature is not seeking to recover its attorneys' fees with respect to (a) motions and pleadings relating to its claim for tortious interference with business expectancy (Count III); (b) motions and pleadings relating to Michael A. Hodges, its expert witness on damages; and (c) Signature's motion for reconsideration [Docket No. 203] and related pleadings, so I have not reviewed or considered those motions and pleadings.

either defended or took.  Counsel for Signature has advised me as follows with respect to document collection, review and production in this case:

        a.     Signature produced approximately 43,000 pages of documents, after collecting and reviewing several times that number of documents. Using an outside vendor, Signature collected these documents and electronically stored information ("ESI") from Signature's servers and hard drives in response to Landow's document requests.  To expedite the collection, review and production of this information, as required for litigation in the Eastern District of Virginia, Signature's counsel used a team of associates over the course of several weeks to be able to produce documents to Landow in a timely manner.

        b.     Landow produced approximately 113,000 pages of documents and ESI to Signature, as well as 7,000 Excel spreadsheets in native format.  To expedite the review of information, Signature again used a team of associates over the course of several weeks to identify and organize relevant documents for use in the litigation.

I also have reviewed briefly (to get an idea of their substance and complexity) the expert reports of Robert Showalter, Benjamin King, Ph.D., Richard Ryan and Eric Smith.  I believe that Signature's discovery efforts and related tasks were reasonable in light of Signature's positions and/or the actions of Landow.

        11.     I have reviewed the itemized invoices for legal services and expenses rendered by Nixon Peabody to Signature.  *See* Exhibit 6 to the Declaration of Louis E. Dolan, Jr. ("Dolan Decl.___"), which is attached as Exhibit A to the

Memorandum of Points and Authorities in Support of Motion for Attorneys' Fees and Related Costs of Signature Flight Support Corporation (filed contemporaneously herewith). I understand that the originals of these invoices reflected a discount totaling $55,000 provided by Nixon Peabody to Signature during the course of the litigation. I have been advised that Nixon Peabody has deducted an additional $205,102.50 in attorneys' fees relating to tasks that may not have contributed to Signature's overall success in this matter and/or that might be deemed unwarranted.[2] Furthermore, Signature has reduced the total attorneys' fees it seeks to recover by an additional five percent (5%), thus deducting another $82,664.00 from its attorneys' fees petition. This additional deduction is intended to account for and eliminate any attorneys' fees that might be deemed redundant, excessive or unreasonable for any reason. After making all of the foregoing deductions, I understand that Signature seeks my opinion regarding the reasonableness of the $1,570,616.00 in attorneys' fees it incurred through December 2009.

12. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169 (4th Cir. 1994). The party seeking attorneys' fees bears the burden of "establish[ing] the reasonableness of a requested rate." *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990).

---

[2] These specific deductions are discussed more particularly in the Memorandum of Points and Authorities in Support of Motion for Attorneys' Fees and Related Costs of Signature Flight Support Corporation, and are not considered or addressed herein.

13. To determine the variables for this calculation, the reasonable hourly rate and the number of hours reasonably spent, the Fourth Circuit requires that the Court consider the factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), although there is no strict manner in which these factors are to be considered and applied. *See E.E.O.C. v. Service News Co.*, 898 F.2d 958, 965 (4th Cir. 1990); *Superior Form Builders v. Dan Chase Taxidermy Supply Co., Inc.*, 881 F. Supp. 1021, 1024 (E.D. Va. 1994), *aff'd*, 74 F.3d 488 (4th Cir. 1996). The *Johnson* factors are as follows:

    (1)    the time and labor required;

    (2)    the novelty and difficulty of the questions;

    (3)    the skill requisite to perform the legal service properly;

    (4)    the preclusion of other employment by the attorney due to the acceptance of the case;

    (5)    the customary fee;

    (6)    whether the fee is fixed or contingent;

    (7)    time limitations imposed by the client or the circumstances;

    (8)    the amount involved and the results obtained;

    (9)    the experience, reputation, and ability of the attorneys;

    (10)    the "undesirability" of the case;

    (11)    the nature and length of the professional relationship with the client; and

    (12)    awards in similar cases.

*Johnson*, 488 F.2d at 717-19.

14. Based on my review of this case, I believe that *Johnson* factors 1, 2, 3, 5, 7, 8 and 9 are most relevant for determining the reasonableness of Signature's attorneys' fees and expenses in this action. I have therefore addressed those factors.

15. <u>Time and labor required (Factor 1).</u> I have reviewed the invoices prepared by Nixon Peabody. In my opinion, the time spent as reflected in those invoices was both necessary and reasonable. This was an important and vigorously contested case for both parties, resulting in aggressive motions practice (more than 20 contested motions), the engagement of multiple expert witnesses, the collection and production of over 150,000 pages of documents, and the deposition of nineteen witnesses (some beyond the seven hour limit dictated by Fed. R. Civ. P. 30(d)). Moreover, the parties were required to prepare for trial twice. The first trial was discontinued after the first day of trial so that the parties could pursue settlement discussions. When those discussions failed to result in a settlement, the trial was rescheduled and the parties had to prepare for trial again. The trial required a total of eight trial days, which is a long period of time for a bench trial in this Court and further supports the complexity of the issues presented at trial. The parties filed extensive proposed findings of fact and conclusions of law before the trial and were granted leave to revise and refile their proposed findings of fact and conclusion of law post-trial to incorporate and address the evidence as presented at trial. With the Court's entry of judgment in favor of Signature on March 17, 2010, the Court's docketing system recorded more than 270 prior docket filings over a period of eighteen months -- another fact which tends to support the conclusion that this matter was both complex and hotly contested. In light of these facts, it is my opinion that Nixon Peabody devoted a reasonable amount of time and labor to this matter.

16.      I have reviewed the invoices also with an eye toward whether staffing at the levels reflected on the invoice was necessary and reasonable.  In my opinion, Nixon Peabody made efficient use of its resources and pushed work, such as legal research, document review and organization, etc., down to attorneys and litigation assistants billing at lower rates than the partners working on the case.  Indeed, the majority of the work (more than 80%) was performed by one partner, Mr. Dolan, one junior associate, Mr. West, and one paralegal, Ms. Murphy.  I further believe that, to the extent that the invoices reflect some duplication in the drafting and/or review of various papers or information (beyond that already addressed by the deductions discussed in paragraph 11, above), the duplication was reasonable and necessary for the efficient handling of a case of this complexity so that all members of the litigation team were informed and could make intelligent and coordinated judgments in undertaking the prosecution of the case.  This was especially necessary given the magnitude of the litigation and the usual fast pace at which litigation proceeds in the Eastern District of Virginia.

17.      The novelty and difficulty of the questions (Factor 2).  This action essentially involved contract claims, although the contracts at issue were somewhat complicated and the evidence relating to the parties' construction and performance of those contracts was both extensive and conflicting.  While I do not find that the legal issues in the case were unusually complex, I observe that the parties each employed multiple expert witnesses, took nineteen depositions (some for more than one day) and required eight days of trial before the Court sitting without a jury.  In addition, I note that the parties submitted very long, detailed proposed findings of fact and conclusions of law

that incorporated the evidence adduced at trial, and that the Court took several months to resolve this matter and issue an extensive, sixty-six page Memorandum Opinion ruling on the various issues in the case. All of these factors support the conclusion that this matter involved a level of difficulty and complexity above the usual commercial case.

18. <u>Skill requisite to properly perform the legal services and the experience, reputation and ability of the attorneys (Factors 3 and 9).</u> In my opinion, the prosecution of this action required skilled litigation counsel able to handle complex civil litigation on the fast track that is the norm in the Eastern District of Virginia. Counsel not only had to be familiar with the Federal Rules of Civil Procedure and Federal Rules of Evidence, but also the Local Rules, procedures, and customs of this Court. Plaintiff's counsel also had to be able to staff the case adequately to research and respond to numerous motions, often on the expedited basis required in the Eastern District of Virginia. Moreover, Plaintiff's counsel also faced a very experienced and skilled adversary, Allen V. Farber, with the resources of a large, well-respected law firm, Drinker Biddle & Reath LLP ("Drinker Biddle"). As discussed below and elsewhere in this declaration, Landow and its counsel mounted a very vigorous defense and pressed Signature and its counsel at every turn. In my opinion, Signature acted reasonably in retaining Nixon Peabody and attorneys of the level of skill, experience, reputation and ability of Messrs. Dolan and West to represent it in a case of this magnitude and complexity.

19. Louis E. Dolan, Jr., and David West were the principal attorneys representing Signature in this matter. Mr. Dolan, a partner with Nixon Peabody, was admitted to practice in Virginia in 1992. He has significant trial experience in complex

litigation cases, including complex contractual disputes, trade secret and intellectual property disputes, and real estate, construction, partnership, affordable housing, and syndication-related litigation.  Mr. Dolan is admitted to practice in the United States Courts for the Eastern and Western Districts of Virginia and the District of Columbia; the United States Court of Appeals for the District of Columbia and Fourth Circuit; the District of Columbia Superior Court; Supreme Court of Virginia and Virginia trial courts; and the United States Bankruptcy Courts for the Eastern and Western Districts of Virginia.  Mr. Dolan has substantial experience litigating matters in this Court and enjoys an excellent reputation at the Bar for his ability and professionalism.  A curriculum vitae for Mr. Dolan is attached as Exhibit 2 to his Declaration.

20.     Mr. West earned his juris doctor (*cum laude*) from the American University, Washington College of Law.  Mr. West was admitted to practice law and joined Nixon Peabody in 2008.  Mr. West is a member of the Commercial Litigation group at Nixon Peabody and assists clients on matters relating to complex contracts, real estate, and other business disputes.  As the junior attorney working on this matter, Mr. West was assigned tasks and responsibilities commensurate with his legal experience.

21.     Given the facts discussed above, it is my opinion that Messrs. Dolan and West, and the other attorneys and professionals at Nixon Peabody, had the skill, experience, reputation and ability to provide the level of quality representation warranted by a case of this magnitude and complexity.

22.     <u>Customary fees (Factor 5)</u>.  The reasonableness of rates charged is guided by the prevailing market rates in the market in which the court sits for similar

services by attorneys of reasonably comparable skill, experience and reputation. *Trimper v. City of Norfolk*, 58 F.3d 68, 76 (4th Cir. 1995), *cert. denied,* 516 U.S. 997 (1995). The Court should determine whether the requested rates are consistent with the prevailing market rate in the relevant community. *See Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990). "This determination is fact intensive and is best guided by what attorneys earn from paying clients for similar services in similar circumstances." *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (citation omitted). "While evidence of fees paid to attorneys of comparable skill in similar circumstances is relevant, so too is the rate actually charged by the petitioning attorneys when it is shown that they have collected those rates in the past from the client." *Id.* (citing *Gusman v. Unisys Corp.*, 986 F.2d 1146 (7th Cir. 1993) (recognizing that attorney's actual billing rate provides a "starting point" for purposes of establishing a prevailing market rate)).

23.     In my opinion, the relevant community for purposes of determining the prevailing market rate includes Northern Virginia, where the case was litigated, and Washington D.C., where the attorneys for both parties are located. *See, e.g.*, *Rum Coal Sales*, 31 F.3d at 179 (relevant market was not limited to Charleston, West Virginia); *Rutherford Controls Int'l Corp. v. Alarm Controls*, 2009 U.S. Dist. LEXIS 107230 (E.D. Va. 2009) (finding rates charged by attorneys from large, Washington, D.C., law firm for litigation in Richmond were "not unreasonable in view of their levels of experience and in light of commensurate fees charged in Northern Virginia and this immediate area for such qualified representation"). In view of the complexity of this matter and significance of the dispute to the parties, Signature was reasonable in choosing Nixon Peabody to represent it in this matter. Nixon Peabody has represented

Signature in other matters in the past and, thus, was familiar with Signature's business and personnel even before the dispute with Landow arose. Moreover, Mr. Dolan frequently represents parties in complex commercial disputes in the Eastern District of Virginia, and works in Nixon Peabody's Washington, D.C., office, which is convenient to the Court's Alexandria Division courthouse.

24.     In addition, I believe that the parties, through their actions, have implicitly defined, by their respective choice of legal counsel in this matter, the relevant measure of "reasonable attorneys' fees" allowed under the governing Ground Sublease Agreement (§ 19.1(n)). Signature selected the Nixon Peabody law firm, and Landow selected the Drinker Biddle law firm. Both firms are among the 100 largest law firms in the world, with more than 650 attorneys with multiple offices located around the globe. Having both chosen such large and prestigious law firms, the parties have tacitly endorsed the reasonableness of the rates charged by such firms, which tend to be higher than the rates charged by smaller law firms.

25.     The actual billable rates charged by Nixon Peabody in this matter provide a "starting point" for purposes of establishing a prevailing market rate. Here, Signature's attorneys have advised me that the rates charged for the attorneys and other professionals in this matter are the same rates that Nixon Peabody has charged to Signature in the past for other types of work, and the same rates that were charged by Nixon Peabody to similarly situated clients of the firm for similar work. Attached as Exhibit 1 to Mr. Dolan's Declaration is a rate chart showing the rates charged by Nixon Peabody for the attorneys and other professionals who worked on this matter. The most relevant rates are those of Messrs. Dolan and West, and Ms. Murphy, who performed the

vast majority (more than 80%) of the work in this matter. Mr. Dolan's billable rate was $475/hour in 2006, $520/hour in 2007, $590/hour in 2008, and $605/hour in 2009; Mr. West's billable rate was $270/hour in 2008 and $290/hour in 2009; and Ms. Murphy's billable rate was $175/hour in 2008 and $185/hour in 2009.

26.     In my opinion, the hourly rates charged by Signature's attorneys and other professionals fall within the range of prevailing market rates for large law firms in the Northern Virginia and Washington, D.C., area. For example, in the case of my own firm, which is a law firm of approximately 650 attorneys with multiple offices located around the globe, the hourly rates of the attorneys and other professionals in our Northern Virginia (Tysons Corner) and Washington, D.C., offices are consistent with the hourly rates charged by Nixon Peabody in this matter. For example, in our Tysons Corner office, the billable rates for our partners in 2009 range from $475/hour to $575/hour; the billable rates for associates range from $225/hour to $350/hour; and the billable rates for paralegals range from $165/hour to $220/hour.[3] Similarly, in our Washington, D.C., office, the billable rates for our partners in 2009 range from $425/hour to $750/hour; the billable rates for associates range from $235/hour to $425/hour; and the billable rates for paralegals range from $190/hour to $210/hour. The billable rates in 2008 were slightly lower than in 2009: In Tysons Corner, the billable rates for partners ranged from $410/hour to $525/hour; the billable rates for associates range from $210/hour to $290/hour; and the billable rates for paralegals range from $140/hour to $200/hour. In Washington, D.C., the billable rates for partners ranged from $395/hour to

---

[3]     We have only seven partners, nine associates and four paralegals in our Tysons Corner office, so the range of rates for the attorneys and other professionals in that office is not representative of the range of rates for the firm as a whole.

$670/hour; the billable rates for associates range from $235/hour to $360/hour; and the billable rates for paralegals range from $130/hour to $185/hour.

27.     In setting our billable rates each year, Troutman Sanders subscribes to a report prepared by PriceWaterhouseCoopers ("PWC") that provides billable rate information obtained from surveys PWC conducts each year. These reports contain survey information obtained, on a confidential basis, from comparable large law firms with offices in Tysons Corner and Washington, D.C. For the 2009 report on billing rates for the largest firms in Northern Virginia, which included 21 survey respondents, PWC reported the following information about billable rates for partners in Northern Virginia as of January 1, 2009:

| | Group | | |
|---|---|---|---|
| **Equity Partners** | *1st Quartile* | *Median* | *3rd Quartile* |
| High | $791 | $645 | $560 |
| Middle | 644 | 565 | 516 |
| Low | 560 | 478 | 450 |
| Average | 655 | 559 | 526 |
| ***Avg. by Yrs. Exp.*** | | | |
| 10 Years or Less | ** | ** | ** |
| 11 - 15 Years | 600 | 580 | 478 |
| 16 - 20 Years | 647 | 603 | 559 |
| 21 - 25 Years | 638 | 540 | 522 |
| 26 - 30 Years | 637 | 553 | 533 |
| 31 - 35 Years | 684 | 585 | 527 |
| > 35 Years | 689 | 625 | 564 |
| **Non-Equity** | | | |
| High | $601 | $560 | $533 |
| Middle | 556 | 484 | 454 |
| Low | 523 | 450 | 408 |
| Average | 561 | 491 | 457 |
| ***Avg. by Yrs. Exp.*** | | | |
| 10 Years or Less | $529 | $446 | $433 |
| 11 - 15 Years | 575 | 490 | 463 |
| 16 - 20 Years | 603 | 518 | 473 |
| > 20 Years | 560 | 515 | 472 |
| **All Partner** | | | |
| High | $791 | $648 | $560 |

Case 3:11-cv-00754-JRS Document 276-12 Filed 12/10/12 Page 17 of 32 PageID# 2286

| | | | |
|---|---|---|---|
| Middle | 614 | 537 | 490 |
| Low | 538 | 450 | 408 |
| Average | 635 | 541 | 495 |

*** omitted due to insufficient data*

This same report provided the following information associate and paralegal billable rates as of January 1, 2009:

| | ***Group*** | | |
|---|---|---|---|
| **Associates: Class of** | ***1st Quartile*** | ***Median*** | ***3rd Quartile*** |
| 2008 | $297 | $284 | $269 |
| 2007 | 315 | 293 | 255 |
| 2006 | 372 | 315 | 296 |
| 2005 | 373 | 335 | 292 |
| 2004 | 438 | 355 | 305 |
| 2003 | 465 | 395 | 354 |
| 2002 | 496 | 433 | 385 |
| 2001 | ** | 490 | ** |
| Prior | 516 | 468 | 396 |
| **Paralegals** | | | |
| High | $270 | $255 | $200 |
| Middle | 227 | 200 | 188 |
| Low | 203 | 150 | 118 |
| Average | 226 | 196 | 184 |

*** omitted due to insufficient data*

Similarly, for the 2009 report on billing rates for large firms with a Washington, D.C., office (as a non-principal office), which included 24 survey respondents, PWC reported the following information about billable rates for partners in Washington, D.C., as of January 1, 2009:

| | ***Group*** | | |
|---|---|---|---|
| **Equity Partners** | ***1st Quartile*** | ***Median*** | ***3rd Quartile*** |
| High | $951 | $900 | $835 |
| Middle | 750 | 695 | 655 |
| Low | 664 | 585 | 539 |
| Average | 773 | 703 | 667 |
| ***Avg. by Yrs. Exp.*** | | | |
| 10 Years or Less | ** | ** | ** |
| 11 – 15 Years | 692 | 642 | 591 |
| 16 – 20 Years | 746 | 662 | 634 |
| 21 – 25 Years | 771 | 698 | 647 |

| | | | |
|---|---|---|---|
| 26 – 30 Years | 798 | 707 | 667 |
| 31 – 35 Years | 836 | 736 | 680 |
| > 35 Years | 859 | 775 | 701 |
| **Non-Equity Partners** | | | |
| High | $835 | $805 | $720 |
| Middle | 625 | 575 | 560 |
| Low | 550 | 525 | 460 |
| Average | 657 | 603 | 571 |
| ***Avg. by Yrs. Exp.*** | | | |
| 10 Years or Less | $574 | $553 | $509 |
| 11 -15 Years | 615 | 571 | 527 |
| 16 – 20 Years | 738 | 613 | 562 |
| > 20 Years | 700 | 637 | 614 |
| **All Partner** | | | |
| High | $951 | $903 | $848 |
| Middle | 750 | 668 | 623 |
| Low | 609 | 543 | 460 |
| Average | 769 | 682 | 622 |

** omitted due to insufficient data

This same report provided the following information associate and paralegal billable rates as of January 1, 2009:

| | *Group* | | |
|---|---|---|---|
| **Associates: Class of** | *1st Quartile* | *Median* | *3rd Quartile* |
| 2008 | $326 | $299 | $290 |
| 2007 | 400 | 360 | 311 |
| 2006 | 442 | 399 | 336 |
| 2005 | 484 | 438 | 372 |
| 2004 | 521 | 455 | 398 |
| 2003 | 548 | 495 | 421 |
| 2002 | 578 | 520 | 453 |
| 2001 | 602 | 525 | 478 |
| Prior | 612 | 541 | 508 |
| **Paralegals** | | | |
| High | $278 | $260 | $248 |
| Middle | 210 | 208 | 195 |
| Low | 168 | 160 | 148 |
| Average | 223 | 208 | 200 |

These PWC reports, and the surveys upon which they are based, provide reliable information about the billable rates charged by attorneys in large law firms with offices in Northern Virginia and Washington, D.C.  Like other firms that subscribe to these PWC

reports, Troutman Sanders relies upon these reports, to some degree, in making determinations regarding the billable rates that Troutman Sanders charges its clients.

28.     Much like the confidential surveys conducted by PWC, the *National Law Journal* conducts an annual billable rate survey and publishes an annual report based upon the information that responding firms provide.  Because this survey is not confidential, some firms do not respond or provide all of the information requested. Nevertheless, the following seven large national law firms with offices in Washington, D.C., which are comparable to Nixon Peabody (and Drinker Biddle), responded to the *National Law Journal* survey by providing the following information about their billable rates for 2009:

| Firm | Location | Partner Billing Rate High | Partner Billing Rate Low | Associate Billing Rate High | Associate Billing Rate Low |
|---|---|---|---|---|---|
| Arent Fox | Washington | $755 | $420 | $485 | $260 |
| Dickstein Shapiro | Washington | $950 | $500 | $515 | $265 |
| Greenberg Traurig LLP | International | $850 | $345 | $575 | $200 |
| Hogan & Hartson LLP | Washington | $990 | $385 | $550 | $150 |
| Patton Boggs | Washington | $990 | $400 | $540 | $200 |
| Sutherland Asbill & Brennan LLP | Atlanta, GA and Washington | $800 | $420 | $480 | $220 |
| Venable | Washington | $975 | $420 | $450 | $275 |
| | **Average** | **$901** | **$353** | **$514** | **$224** |

Likewise, the following five large national law firms, which are comparable to Nixon Peabody (and Drinker Biddle), with offices in Washington, D.C., responded to the

*National Law Journal* survey by providing the following information about their billable

rates for 2008:

| Firm | Location | Partner Billing Rate High | Partner Billing Rate Low | Associate Billing Rate High | Associate Billing Rate Low |
|------|----------|---------------------------|--------------------------|-----------------------------|----------------------------|
| Arent Fox | Washington | $710 | $410 | $465 | $260 |
| Dickstein Shapiro | Washington | $895 | $475 | $475 | $250 |
| Patton Boggs | Washington | $990 | $360 | $535 | $244 |
| Steptoe & Johnson | Washington | $895 | $350 | $685 | $210 |
| Venable | Washington | $950 | $380 | $425 | $250 |
| | **Average** | **$888** | **$395** | **$517** | **$243** |

The results of these *National Law Journal* surveys are consistent with and support the

billable rates reported by PWC, discussed above, and the billable rates charged by my

own firm during the relevant time period.

        29.      With respect to the reasonableness of billable hourly rates charged

by Nixon Peabody in this matter, I have considered the PWC reports and *National Law*

*Journal* surveys discussed above, the billable rates charged by my own firm as discussed

above, and my experience as outlined above in this declaration. Based on the foregoing,

it is my opinion that:

        i.      the hourly rates charged during the relevant period for an

attorney, like Mr. Dolan, a partner with Nixon Peabody, with eighteen years of

experience with complex commercial litigation and significant experience representing

clients in the Eastern District of Virginia, were reasonable, well within the prevailing

market range in Northern Virginia and Washington, D.C., and in line with rates charged

by comparable law firms in the Northern Virginia and Washington, D.C., area for the services of an attorney of comparable experience and expertise.

   ii. the hourly rates charged during the relevant period for Mr. West, an associate with experience in complex commercial litigation, were reasonable, within the prevailing market range in Northern Virginia and Washington, D.C., and in line with rates charged by comparable law firms in the Northern Virginia and Washington, D.C., area for the services of an attorney of comparable experience and expertise.

   iii. the hourly rates charged during the relevant period for Ms. Murphy, a paralegal with more than seven years of experience with complex commercial litigation matters, were reasonable, within the prevailing market range in Northern Virginia and Washington, D.C., and in line with rates charged by comparable law firms in the Northern Virginia and Washington, D.C., area for the services of a paralegal of comparable experience and expertise.

   30. I have also reviewed the rates of the other attorneys, paralegals and litigation assistants reflected on Nixon Peabody's invoices. Signature seeks compensation for these attorneys and other professionals in the range of $445/hour to $605/hour for partners, $290/hour to $365/hour for associates, and $135/hour to $225/hour for paralegals, law clerks, legal assistants, and litigation technology managers. In my opinion, the hourly rates charged for these attorneys and other professionals were reasonable, within the prevailing market range in Northern Virginia and Washington, D.C., and in line with rates charged by comparable law firms in the Northern Virginia

and Washington, D.C., area for the services of attorneys and legal assistants of comparable experience and expertise.

31. <u>Time limitations imposed by the client or the circumstances</u> <u>(Factor 7)</u>. Although the circumstances of this case did not themselves impose unusual time limitations, all actions in the Eastern District of Virginia proceed with commendable speed and relatively inflexible deadlines. Counsel must be prepared to move swiftly and adhere to the Court's strict schedule, as extensions are rarely granted. Counsel must conduct their cases accordingly, which often means proceeding on multiple fronts simultaneously. In this case, for example, counsel engaged in substantial discovery while, at the same time, filing and responding to multiple substantive and procedural motions. Likewise, between the pretrial conference on March 19, 2009, and initial trial date of June 16, 2009, the parties each filed motions for partial summary judgment, motions to exclude expert witnesses, other motions *in limine*, supplemental pretrial filings, and extensive proposed findings of fact and conclusions of law, while, at the same time, preparing for trial. Finally, following the stay after the first day of trial, the parties engaged in settlement discussions, filed additional motions, and prepared for the resumption of the trial. This schedule, while not unusual for this Court, required a litigation team of sufficient numbers, skill and experience to accomplish many tasks, simultaneously, in a very short time.

32. <u>Amount involved and the results obtained (Factor 8)</u>. This was a significant case for both Signature and Landow. The central issue in this case was whether, under the contracts between the parties, Landow could hold itself out as a fixed base operator ("FBO") and compete with Signature to provide FBO services at

Washington Dulles International Airport ("Dulles"), or whether Signature has the exclusive right to provide such FBO services. In its Complaint (and later in its Amended Complaint), Signature asserted claims for declaratory judgment, breach of contract, and tortious interference with business expectancy, and sought damages as well as equitable relief, including an accounting, disgorgement of profits, and injunctive relief. While Signature sought to recover damages from Landow, I understand that the declaratory relief and injunctive relief were the most important remedies sought by Signature. Without declaratory and injunctive relief, Signature would be unable to prevent Landow from continuing to hold itself out as an FBO and compete with Signature for FBO customers, which would be significantly detrimental to Signature's continuing business at Dulles. Likewise, I understand that the case was very significant to Landow as well -- perhaps even a "bet the company" case. As the Court's March 17, 2010, Memorandum Opinion discusses, Landow spent too much money constructing the Dulles Jet Center and was attempting to recoup that money by providing FBO services. I understand that if Landow was prohibited from providing FBO services, it would be unable to recover the money invested in constructing the Dulles Jet Center and may have difficulty operating profitably (or at all) in the future. Thus, obtaining the declaratory and injunctive relief sought by Signature was determinative of success in this matter.

33.     In addition to succeeding on its primary claims against Landow, Signature also succeeded in defeating Landow's counterclaims. In particular, Signature was able to defeat Landow's claims for declaratory judgment relating to (a) Landow's ability to sell fuel, (b) Signature ability to park planes on the Dulles Jet Center ramp, and (c) the placement and width of the "taxilane" serving the Dulles Jet Center. If Landow

had succeeded on any of these claims, it would have had a severe and adverse impact upon Signature's business. Given the significance of Landow's counterclaims, Signature acted reasonably in mounting a vigorous opposition to these claims and scored a significant victory in defeating these counterclaims.

34. The significance of the issues to both sides in this action are manifested by the vigor with which both parties pursued this case, as evidenced by the number of motions, the amount of discovery taken, and the resources devoted to this dispute. In my opinion, therefore, the tangible and intangible stakes justified the level of effort expended by Signature and its counsel in this case.

35. The degree of success is an important factor in determining the reasonableness of attorneys' fees. *E.g., Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Run Creek Coal Sales Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994). Virginia Rule of Professional Conduct 1:5(a)(4) lists "results obtained" as a factor to be considered in determining the reasonableness of a fee. Here, Signature and its counsel prevailed at trial and obtained the declaratory and injunctive relief they sought. This result is a significant victory for Signature and a significant defeat for Landow. As discussed above, the critical issue in this case is the resolution of Landow's ability to provide FBO services at Dulles. The Court's decision gives Signature complete victory on that issue, declaring that the Signature has the exclusive right to provide FBO services under the parties' contracts, and enjoining Landow from continuing to offer FBO services at Dulles, thus depriving Landow of revenues of approximately $1 million a year. While Signature did not prevail on all of the motions and pleadings it filed, I believe that its motions and

pleadings[4] helped to educate the Court about the issues in this case and ultimately contributed to Signature's success at trial. Moreover, although Signature was unable to prove the damages it incurred as a result of Landow's misconduct, this is overshadowed by the declaratory and injunctive relief obtained by Signature and by the fact that Signature will have the ability to recover its reasonable attorneys' fees and costs under the contract between the parties.

36. I have also reviewed the costs and expenses incurred by Signature in this litigation. After deducting $2,545.17 in costs and expenses that might be redundant, unnecessary, or unrelated to Signature's overall success in this matter, Signature seeks the recovery of costs and expenses totaling $204,350.19, which includes $81,765.37 in costs advanced by Nixon Peabody and $122,584.82 in costs incurred directly by Signature. *See* Dolan Decl., Exhibits 8 and 9. These costs and expenses are related to: Signature's electronic discovery vendor fees ($48,073.44); expert witness fees paid to Robert Showalter ($27,253.45); fees charged by the private mediator used by the parties prior to litigation ($14,262.50); travel expenses for Signature employees incurred in attending depositions, hearings and other meetings relating to the litigation ($32,995.43); hotel accommodations for trial ($24,375.66); court reporter fees ($7,772.28); electronic legal research ($6,084.38); copier and copying service related charges ($23,459.43); and other routine travel and administrative fees. In my opinion, these costs and expenses were necessary, consistent with the types of costs and expenses incurred in litigation of this complexity and magnitude, and well within the reasonable range for such costs and expenses.

---

[4] Other than those motions and pleadings previously deducted from the fee petition by Signature, as discussed in paragraph 11, above.

37.     Based on the foregoing, I state my opinion as follows:

      i.     the legal services rendered by counsel for Signature were reasonable and necessary for the competent, diligent and effective representation of Signature;

      ii.     the hourly rates charged by counsel for Signature for their legal services are reasonable;

      iii.     Signature's legal fees in the amount of $1,570,616.00 are reasonable; and

      iv.     the costs and expenses incurred by Signature and its counsel in the amount of $204,350.19 are reasonable.

38.     I am being compensated in the amount of $550 an hour for the time devoted to enable me to express my opinion and to prepare this Declaration.  My compensation is not contingent in any way on the outcome of Signature's application for attorneys' fees and related costs and expenses or upon the content of this affidavit.  With the exception of my engagement in this matter, I have no business or financial relationship with Signature's counsel.  I have never represented Signature in my practice of law.  Other attorneys in my law firm previously represented Signature in other legal matters; that representation ended more than four years ago and Troutman Sanders has no ongoing relationship with Signature.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on March 31, 2010.

Robert A. Angle

# EXHIBIT 1
## TO DECLARATION
## OF ROBERT A. ANGLE

| DATE | PLEADINGS AND ORDERS |
|------|----------------------|
| 09/15/2008 | Complaint |
| 10/17/2008 | Motion to Dismiss Count III of Complaint by Landow |
| 10/17/2008 | Memorandum in Support re Motion to Dismiss Count III of the Complaint |
| 10/31/2008 | Memorandum in Opposition re Motion to Dismiss Count III of the Complaint by Signature |
| 11/05/2008 | Reply to Response to Motion re Motion to Dismiss Count III of the Complaint by Landow |
| 11/10/2008 | Answer to Counterclaim re Answer to Complaint |
| 11/17/2008 | Memorandum Opinion Granting Defendant's Motion to Dismiss Count III of the Complaint |
| 11/17/2008 | Court Order Dismissing Count III of Plaintiff's Complaint |
| 11/24/2008 | Protective Order |
| 12/01/2008 | Motion for Preliminary Injunction by Signature |
| 12/01/2008 | Memorandum in Support re Motion for Preliminary Injunction |
| 12/02/2008 | Amended Complaint |
| 12/03/2008 | Court Order Approving Rule 16(b) Scheduling Order |
| 12/15/2008 | Motion to Strike the Declarations of John G. Farmer and Michael Bennett by Landow |
| 12/15/2008 | Memorandum in Support re Motion to Strike Declarations |
| 12/15/2008 | Memorandum in Opposition re Motion for Preliminary Injunction |
| 12/19/2008 | Reply to Response to Motion re Motion for Preliminary Injunction |
| 12/22/2008 | Motion to Dismiss Count III of the Amended Complaint |
| 12/22/2008 | Memorandum in Support re Motion to Dismiss Count III of the Amended Complaint |
| 12/22/2008 | Answer to Complaint |
| 12/30/2008 | Memorandum in Opposition re Motion to Strike Declarations |
| 01/06/2009 | Response in Opposition re Motion to Dismiss Count III of the Amended Complaint |
| 01/07/2009 | Reply to Response to Motion re Motion to Strike |
| 01/08/2009 | Reply to Response to Motion re Motion to Dismiss Count III of the Amended Complaint |

| DATE | PLEADINGS AND ORDERS |
|------|----------------------|
| 01/13/2009 | Memorandum Opinion Denying Defendant's Motion to Strike |
| 01/13/2009 | Court Order Denying Defendant's Motion to Strike Declarations |
| 01/13/2009 | Memorandum Opinion Denying Defendant's Motion to Strike the Declarations |
| 01/13/2009 | Court Order Denying Defendant's Motion to Dismiss Count III of the Amended Complaint |
| 01/14/2009 | Court Memorandum Opinion re: Plaintiff's Motion for a Preliminary Injunction |
| 01/14/2009 | Court Order Denying Plaintiff's Motion for Preliminary Injunction |
| 01/15/2009 | Defendant's Answer to Complaint |
| 02/10/2009 | Motion to Compel Discovery and for Related Attorney's Fees and Costs as Sanctions |
| 02/10/2009 | Memorandum in Support re Motion to Compel Discovery and for Related Attorney's Fees and Costs as Sanctions |
| 02/19/2009 | Memorandum in Opposition re Motion to Compel Discovery and for Related Attorney's Fees and Costs as Sanctions by Signature |
| 02/19/2009 | Motion to Compel the Production of Documents by Signature |
| 02/19/2009 | Memorandum in Support re Motion to Compel the Production of Documents |
| 02/20/2009 | Court Order Granting In Part and Denying In Part Defendant's Motion to Compel |
| 02/23/2009 | Motion for Leave to File an Amended Counterclaim by Landow |
| 02/23/2009 | Memorandum in Support re Motion for Leave to File an Amended Counterclaim |
| 02/27/2009 | Motion to Strike Designation of Expert Witness by Landow |
| 02/27/2009 | Memorandum in Support re Motion to Strike Designation of Expert Witness |
| 03/04/2009 | Memorandum in Opposition re Motion for Leave to File an Amended Counterclaim by Signature |
| 03/04/2009 | Memorandum in Opposition re Motion to Strike Designation of Expert Witness by Signature |
| 03/05/2009 | Reply to Response to Motion re Motion to Strike Designation of Expert Witness by Landow |
| 03/05/2009 | Reply to Response to Motion re Motion for Leave to File an Amended Counterclaim |
| 03/06/2009 | Motion to Compel the Production of Documents by Signature |
| 03/06/2009 | Memorandum of Points and Authorities to Motion to Compel |

| DATE | PLEADINGS AND ORDERS |
|------|----------------------|
|  | Documents |
| 03/11/2009 | Memorandum in Opposition re Motion to Compel the Production of Documents |
| 03/13/2009 | Court Order Granting Motion for Leave to File an Amended Counterclaim. |
| 03/13/2009 | Amended Counterclaim |
| 03/13/2009 | Motion to Compel Production of Documents by Landow |
| 03/13/2009 | Memorandum in Support re Motion to Compel Production of Documents |
| 03/18/2009 | Rule 26 Disclosure by Signature |
| 03/18/2009 | Stipulation of Uncontested Facts by Signature and Landow |
| 03/18/2009 | Memorandum in Opposition re Motion to Compel Production of Documents |
| 03/19/2009 | Reply to Response to Motion re Motion to Compel Production of Documents |
| 03/20/2009 | Answer to Counterclaim |
| 03/20/2009 | Court Order Granting Defendant's Motion to Compel |
| 04/02/2009 | Objection to Rule 26 Disclosure by Signature |
| 04/03/2009 | Objections to Trial Exhibits Exhibit List by Signature |
| 04/13/2009 | Motion for Summary Judgment on Count III of the Amended Complaint |
| 04/13/2009 | Memorandum in Support re Motion for Summary Judgment on Count III of the Amended Complaint |
| 04/27/2009 | Opposition to Motion for Summary Judgment on Count III of the Amended Complaint |
| 04/30/2009 | Reply to Response to Motion re Motion for Summary Judgment on Count III of the Amended Complaint |
| 05/08/2009 | Motion to Strike Designation of Eric T. Smith as an Expert Witness and Preclude Testimony by Signature |
| 05/08/2009 | Memorandum in Support re Motion to Strike Designation |
| 05/13/2009 | Memorandum in Opposition re Motion to Strike Designation |
| 05/13/2009 | Reply to Response to Motion re Motion to Strike Designation |
| 05/14/2009 | Court Order Denying Plaintiff's Motion to Strike Designation |
| 05/21/2009 | Motion for Partial Summary Judgment as to Count II of the Amended Counterclaim by Signature |
| 05/21/2009 | Memorandum in Support re Motion for Partial Summary Judgment |

| DATE | PLEADINGS AND ORDERS |
|------|----------------------|
| | as to Count II of the Amended Counterclaim |
| 05/21/2009 | Motion in Limine to Strike the Designation of Richard Ryan as an Expert Witness and Preclude Testimony by Signature |
| 05/21/2009 | Memorandum in Support re Motion in Limine to Strike Designation |
| 05/27/2009 | Memorandum in Opposition re Motion in Limine to Strike Designation of Richard Ryan |
| 05/28/2009 | Reply to Response to Motion re Motion in Limine to Strike the Designation of Richard Ryan as an Expert Witness and Preclude Testimony |
| 06/01/2009 | Order Denying Motion in Limine to Exclude the Report and Testimony of Michael A. Hodges and Motion in Limine to Strike the Designation of Richard Ryan |
| 06/02/2009 | Memorandum in Opposition re Motion for Partial Summary Judgment as to Count II of the Amended Counterclaim |
| 06/04/2009 | Reply to Response to Motion re Motion for Partial Summary Judgment as to Count II of the Amended Counterclaim |
| 06/05/2009 | Motion in Limine to Exclude Certain Proposed Trial Exhibits and Testimony of Certain Witnesses Not Timely Disclosed by Signature |
| 06/05/2009 | Memorandum in Support re Motion in Limine to Exclude Certain Proposed Trail Exhibits and Testimony of Certain Witnesses Not Timely Disclosed |
| 06/09/2009 | Proposed Findings of Fact by Landow |
| 06/09/2009 | Opposition to Motion in Limine to Exclude Certain Proposed Trial Exhibits and Testimony of Certain Witnesses Not Timely Disclosed |
| 06/11/2009 | Reply to Response to Motion re Motion in Limine to Exclude Certain Proposed Trial Exhibits and Testimony of Certain Witnesses Not Timely Disclosed |
| 06/12/2009 | Memorandum Opinion Denying In Part and Granting in Part Defendant's Motion in Limine |
| 06/12/2009 | Court Order Granting Defendant's Motion for Summary Judgment on Count III of the Amended Complaint |
| 06/12/2009 | Court Order Denying Plaintiff's Motion in Limine |
| 06/13/2009 | Motion to Exclude Parole Evidence and to Narrow the Issues for Trial by Signature |
| 06/13/2009 | Memorandum in Support re Motion to Exclude Parole Evidence and to Narrow the Issues for Trial |
| 06/14/2009 | Proposed Findings of Fact by Signature |
| 06/14/2009 | Motion for Reconsideration re Memorandum & Opinion and to Vacate, Revise, Modify, and Clarify the Memorandum Opinion by |

| DATE | PLEADINGS AND ORDERS |
|------|----------------------|
|  | Landow |
| 06/14/2009 | Memorandum in Support re Motion for Reconsideration re Memorandum & Opinion to Vacate, Revise, Modify, and Clarify the Memorandum Opinion |
| 06/15/2009 | Court Order Granting In Part Summary Judgment on Count III of the Amended Complaint, Clarifying the Court's June 12, 2009 Memorandum Opinion, Denying Defendant's Motion for Reconsideration. And Denying Plaintiff's Motion to Exclude Parole Evidence and Narrow the Issues for Trial |
| 07/22/2009 | Stipulation of Dismissal of Count II of the Amended Counterclaim by Landow |
| 08/04/2009 | Court Memorandum Opinion Finding that Plaintiff may not offer the testimony of Steven Lee |
| 09/09/2009 | Memorandum of Law Regarding Inadmissibility of Defendant's Trial Exhibit No. 114 |
| 09/09/2009 | Memorandum of Law in Support of the Admissibility of Defendant/ Counterclaim Plaintiff's Exhibit 114 |
| 09/10/2009 | Supplemental Motion re Supplemental Filing Regarding the Inadmissibility of Defendant's Trial Exhibit 114 |
| 10/20/2009 | Notice by Landow re Order on Motion for Miscellaneous Relief of Filing of Post-Trial Proposed Findings of Fact and Conclusions of Law |
| 10/20/2009 | Proposed Findings of Fact by Signature |
| 03/17/2010 | Memorandum Opinion |
| 03/17/2010 | Judgment Order |

#1932939