**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **GREGORY THOMAS BERRY,** *et al.*, | : |
| **Plaintiffs,** | : |
| v. | : Civil Action No. 3:11CV754-JRS |
| **LEXISNEXIS RISK & INFORMATION ANALYTICS GROUP, INC.,** *et al.*, | : |
| | : |
| **Defendants.** | |

## INJUNCTIVE RELIEF ORDER

On [_____], 2014, the Court entered its Order granting the Motion for Final Approval of Class Action Settlement and Entry of Final Judgment and Order (Docket No. 100). Pursuant to that Order and Section 4.3.1 of the Settlement Agreement and Release, dated March 15, 2013 (the "Settlement Agreement"), the Court enters this Injunctive Relief Order and hereby orders that Defendants comply with the following:

1. For purposes of this Injunctive Relief Order, the Court adopts and incorporates the definitions and meanings of the defined terms set forth in the Settlement Agreement. The terms of this Injunctive Relief Order are intended to reflect the Injunctive Relief provisions in the Settlement Agreement and shall not be construed to impose any obligations or requirements in addition to those set forth in the Settlement Agreement.

2. CREATION OF TWO NEW SUITES OF PRODUCTS AND SERVICES FOR RECEIVABLE MANAGEMENT MARKET

2.1 Defendants will overhaul their currently existing Accurint® for Collections suites of products and services for the Receivable Management Market and split Accurint® for Collections into two newly developed suites of products and services, each containing different sets of information for different uses, where one suite of products and services ("Collections Decisioning") will be treated by Defendants as falling within the FCRA's "consumer report" definition and the other suite of products and services ("Contact & Locate") will not be treated as falling within the FCRA's "consumer report" definition. To the extent a Defendant offers or markets products or services to the Receivable Management Market, the Defendant will market Collections Decisioning and Contact & Locate to the Receivable Management Market and endeavor to provide the Receivable Management Market access to "consumer report" suite of products and Contact & Locate in accordance with the timeframe outlined in the Implementation Period, as defined in Section 5.

2.2 New Collections Decisioning Suite of Products and Services

2.2.1 A new Collections Decisioning suite of products and services will be created for the Receivable Management Market.

2.2.2 Customers who have completed the credentialing process and are granted access to the Collections Decisioning product and services will be permitted to use the information only for a permissible purpose under 15 U.S.C. § 1681b, including, but not limited to, for the extension of credit as a result of an application from a consumer, review or collection of a consumer's account, or to review a consumer's credit account to determine whether the

consumer continues to meet the terms of the account. To the extent a Defendant offers or markets a Collection Decisioning product or service to the Receivable Management Market, the Defendant will have a compliance program designed to provide reasonable procedures to assure that Collections Decisioning products and services are used for permissible purposes under 15 U.S.C. § 1681b, and for obtaining from the report recipient a certification of permissible use and that the information will be used for only purposes permitted by the FCRA.

2.2.3 When a user enters into the Collections Decisioning suite of products or services for the first time in each user session, a message will be displayed to the user with text substantially similar to the following:

*"You are entering the LexisNexis Collections Decisioning FCRA offerings provided by LexisNexis Risk Bureau LLC, a consumer reporting agency. The LexisNexis Collections Decisioning offerings are designed to be compliant with the Fair Credit Reporting Act, 15 U.S.C. Sec. 1681, et seq. ("FCRA"), and may only be accessed for permissible purposes in compliance with the FCRA and in accordance with your agreement and certifications."*

2.2.4 When a user enters into the Collections Decisioning suite of products or services for the first time in each user session, any Defendant that offers or markets products or services to the Receivable Management Market will require the user to certify a permissible purpose under 15 U.S.C. § 1681b, and that the information will be used only for purposes permitted by the FCRA.

2.2.5 The Defendants will acknowledge Collections Decisioning products and services as meeting the FCRA's definition of a "consumer report."

2.2.6 To the extent applicable, the Defendant will put customers through a credentialing process consistent with § 1681e(a) to determine whether the customer may be granted access to the Collections Decisioning product or service.

2.2.7 Customers' contractual commitments and certifications will be consistent with the regulatory framework governing the Collections Decisioning product or service.

    2.3    <u>New Contact & Locate Suite of Products and Services</u>

2.3.1 A new Contact & Locate suite of products and services will be created for the purpose of assisting the Receivable Management Market to locate debtors and to locate assets securing the debt for the purpose of repossession. From the date of this Order until the Sunset Date, the Contact & Locate suite of products and services will not involve the provision of "consumer reports" as that term is defined under the FCRA and FCRA State Equivalents. Defendants may only display data in the Contact & Locate suite of products and services as defined herein and for the uses identified herein.

2.3.2 Available Data: The Contact & Locate suite of products and services shall include only:

    a)    information that does not contain "seven characteristic" information; or

b) information that does not bear on any eligibility determination for credit, insurance, employment or any other purpose in connection with which a consumer report may be used under the FCRA; or

c) information, the use of which bears a reasonable relationship to the location of a debtor or to the location of assets securing the debt for purpose of repossession, even if such information may arguably bear on an eligibility determination under the FCRA; or

d) information that includes any combination of the above.

2.3.3 Limitation on Use: The Contact & Locate suite of products and services is intended to be used by the Receivable Management Market for the limited purpose of finding and locating debtors or locating assets securing the debt for the purpose of repossession.

2.3.4 When a user enters into the Contact & Locate suite of products and services for the first time in each user session, a message will be displayed to the user with text substantially similar to the following:

*"Accurint® Contact & Locate is provided by LexisNexis Risk Solutions FL Inc. Accurint® Contact & Locate is not provided by 'consumer reporting agencies,' as that term is defined in the Fair Credit Reporting Act (15 U.S.C. § 1681, et seq.) ("FCRA") and does not constitute a "consumer report," as that term is defined in the FCRA. Accurint® Contact & Locate may not be used in whole or in part as a factor in determining eligibility for credit, insurance, or employment or for any*

*other eligibility purpose that would qualify it as a consumer report under the FCRA."*

  2.3.5 Customers' contractual commitments and certifications will be consistent with non-FCRA characterization and treatment of the Contact & Locate suite of products and services.

  2.4 <u>Consumer Access Program for the Contact & Locate</u>

  2.4.1 The Parties agree that the Contact & Locate suite of products and services do not constitute "consumer reports" as that term is defined under the FCRA and so will not be subject to the FCRA's requirements relating to disputes, access, accuracy or otherwise. Nonetheless, a Consumer Access Program for the Contact & Locate suite of products and services detailed below in this section will be created.

  2.4.2 The Consumer Access Program will include procedures that permit an individual to obtain a free copy of a Contact & Locate Comprehensive Report regarding the individual once a year. The procedures may include a process requiring the individual to furnish proper identification to the Defendant that is sufficient to verify the individual's identity and assure that the individual making the request is the same individual identified in the requested Contact & Locate Comprehensive Report. The Defendant will publish information regarding how consumers can contact the Defendant to obtain their free report. In addition, in its cover letter transmitting to consumers information responsive to a request made under 15 U.S.C. 1681g(a), the Defendant shall include the following language: "An affiliate of [Consumer Reporting Agency] provides debt collectors with 'contact and locate' information about consumers. That information is not a 'consumer report' under the FCRA and is not enclosed in

6

this mailing. For more information about this 'contact and locate' information, or to request a copy of such report about you, please visit [website] or call [number]."

      2.4.3 The Consumer Access Program will include procedures that permit an individual to submit a statement of up to 100 words regarding any phone number or address displayed in the Contact & Locate suite of products and services and that is being used to contact the individual related to a consumer credit obligation subject to collection. The procedures may include a process requiring the individual to furnish proper identification to the Defendant that is sufficient to verify the individual's identity, to prevent fraud or other abuse.

      2.4.4 To the extent a Defendant offers or markets products or services to the Receivable Management Market, the Defendant will make all comments available via a link on the main page and search forms where the phone number or address may be displayed in the Contact & Locate suite of products and services. The link will be to a web page that enables the user to search on the phone number or address and to locate and view comments related to the phone number or address searched.

         a) The Defendant will only be required to report statements that relate to the accuracy of the phone number or address. Accuracy includes not only whether the number or address relates to the consumer but also whether the telephone number or address belongs to a person who has some relationship to the debt being collected. The Defendant shall not be obligated to publish consumer statements that do not bear on accuracy of the phone number or address, such as statements criticizing the Defendant or its customers, or the validity of the debt.

7

    b)  To the extent applicable, the Defendant will publish information regarding how consumers can contact Defendant to submit a statement.

  3.  <u>CUSTOMER EDUCATION REGARDING NEW PRODUCTS AND SERVICES FOR RECEIVABLE MANAGEMENT MARKET</u>

    3.1  To the extent a Defendant offers or markets Collections Decisioning and Contact & Locate suite of products or services to the Receivable Management Market, the Defendant will provide, free of charge, educational seminars and materials to customers regarding their use of and responsibilities relating to Collections Decisioning and Contact & Locate.

  4.  <u>EMPLOYEE TRAINING REGARDING NEW PRODUCTS AND SERVICES FOR RECEIVABLE MANAGEMENT MARKET</u>

    4.1  To the extent a Defendant offers or markets Collections Decisioning and Contact & Locate suite of products or services to the Receivable Management Market, the Defendant will require its employees who work on or with Collections Decisioning or Contact & Locate to participate in training regarding the requirements of the Injunctive Relief.

  5.  <u>TIMETABLE FOR IMPLEMENTATION OF INJUNCTIVE RELIEF</u>

    5.1  To the extent a Defendant offers or markets products or services to the Receivable Management Market, the Defendant shall make reasonable and good faith efforts to implement the Injunctive Relief contemplated herein within the timeframe detailed below and referred to herein as the "Implementation Period":

      5.1.1  Release of the initial versions of Collections Decisioning and Contact & Locate online by December 31, 2013.  Nothing in the Injunctive Relief Order shall be

interpreted to prohibit or otherwise restrict Defendants' right to modify the initial versions of Collections Decisioning and Contact & Locate online or to develop new products that otherwise meet the requirements of this Injunctive Relief Order.

       5.1.2   To the extent applicable, the Defendant will market Collections Decisioning and Contact & Locate to all new online Receivable Management Market customers with compatible use cases and employ reasonable procedures to provide new online Receivable Management Market customers access to Collections Decisioning and Contact & Locate as of December 31, 2013.

       5.1.3   To the extent applicable, the Defendant will initiate the migration of existing online Receivable Management Market customers to Collections Decisioning and Contact & Locate beginning on or before December 31, 2013.  The Defendant will use reasonable and good faith efforts to migrate existing online customers as soon as practicable, but will complete the migration by December 31, 2015.

       5.1.4   To the extent applicable, the Defendant will initiate the migration of all other Receivable Management Market customers to Collections Decisioning and Contact & Locate beginning on or before December 31, 2013.  The Defendant will use reasonable and good faith efforts to migrate all other existing Receivable Management Market customers as soon as practicable, but will complete the migration by June 30, 2016.

       5.1.5   The Consumer Access Program will be implemented by December 31, 2013.

5.2    Notwithstanding this provision, if a Defendant is unable to comply with any of these deadlines, the Defendant shall receive a reasonable extension of time sufficient to permit completion of the task upon submission of an application to the Court showing good cause for the extension.

5.3    During the Implementation Period, Defendants may continue to permit access to the full suite of Accurint® Reports to a Receivable Management Market customer that has not yet migrated to Collections Decisioning and Contact & Locate.

6.    SUNSET PROVISION

The obligations of Sections 2-4 of this Injunctive Relief Order will expire the earlier of seven years from the Effective Date or June 30, 2020 ("Sunset Date").

7.    DISPUTE RESOLUTION PROCESS

7.1    If any Rule 23(b)(2) or (b)(3) Class Member has a claim or dispute regarding any Defendant's compliance with this Injunctive Relief Order, then such Class Member first must submit, *pro se* or through counsel, his or her dispute directly to the Defendants before taking any other action.  Upon receipt of such a dispute, the relevant Defendant will investigate the dispute and respond to the Class Member within thirty days.  The Defendant's response must state the results of the Defendant's investigation of the allegation of non-compliance with the Injunctive Relief Order and any action taken or to be taken to address the Class Member's dispute; or, if additional information is required for the Defendant to complete its investigation, the Defendant's response must identify the specific additional information that is required.  Upon the Class Member's submission of all of the additional information required (as set forth in the Defendant's response), the Defendant will have thirty

days to complete its investigation of the Class Member's dispute regarding the allegation of non-compliance with the Settlement Agreement and to provide a response containing the results of its investigation and any action taken or to be taken to address the dispute.

7.2 If, after the dispute resolution process described above has been completed, the Class Member wants to seek additional remedies, then he or she may submit his or her dispute regarding the allegation of non-compliance with the Injunctive Relief Order to the Court (pursuant to the Court's retention of exclusive jurisdiction under Section 10) under the caption for this Litigation. The Class Member's submission to the Court must include copies of all correspondence between the Class Member and the Defendant regarding the dispute prior to the submission. The Court shall have exclusive and sole jurisdiction to resolve the dispute.

8. Any action by Defendants determined in good faith to be reasonably necessary to comply with any federal, state, or local law, enactment, regulation, or judicial ruling shall not constitute a violation of this Injunctive Relief Order. In the event that any obligation that Defendants have agreed to undertake in this Injunctive Relief Order becomes inconsistent with any future federal, state, or local law, enactment, regulation, or judicial ruling or if the Rule 23(b)(2) Settlement Class (or any subset) agree to impose less stringent requirements on any competitor of Defendants, then Defendants shall be released from performing such obligation after notice to the Court and Class Counsel. Any objection to such change in procedure shall be made to the Court within ten (10) days of such notice.

9. Nothing in this Injunctive Relief Order shall waive any basis that may be available for Defendants to assert that a practice or procedure does not cause data or a product to

meet the definition of a "consumer report" within the meaning of the FCRA or any FCRA State Equivalent.

10. The Court reserves continuing and exclusive jurisdiction over the parties with respect to all matters relating to this Injunctive Relief Order, including its administration, interpretation, effectuation, and enforcement of its provisions pursuant to the dispute resolution process in Section 8.3 of the Settlement Agreement. None of the parties, including any Rule 23(b)(2) Settlement Class Member, shall be entitled to the recovery of attorney's fees, costs or other expenses in connection with any efforts to monitor compliance with this Injunctive Relief Order.

**IT IS SO ORDERED.**

DATED: [_____], 2014

_____
HONORABLE JAMES R. SPENCER
UNITED STATES DISTRICT JUDGE