UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

GREGORY THOMAS BERRY *et al.*,

                    Plaintiffs,

    v.

LEXISNEXIS RISK & INFORMATION
ANALYTICS GROUP, INC. *et al.*,

                  Defendants.

Action No. 3:11-CV-754

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Joint Motion for Final Approval of Class Action Settlement  ("Motion for Final Approval") (ECF No. 100) filed by Plaintiffs and Defendants (collectively, "Parties"), a Motion for Attorneys' Fees, Expenses, and Service Awards ("Motion for Attorneys' Fees") (ECF No. 102) filed by Plaintiffs, and a Consent Motion to File Amended Complaint ("Motion to Amend") (ECF No. 114) filed jointly by the Parties. For the reasons that follow, the Motion for Final Approval will be GRANTED, the Motion for Attorneys' Fees will be GRANTED, and the Motion to Amend will be DENIED as moot.

## I.    BACKGROUND

### A.  FACTUAL AND PROCEDURAL HISTORY

The Motion for Final Approval is the culmination of years of litigation and negotiations between the Parties. The Parties seek final approval of their joint class action settlement agreement ("Settlement Agreement") (ECF No. 101-2) and dismissal of this lawsuit.

Plaintiffs allege that LexisNexis Risk Solutions FL Inc.,[1] LexisNexis Risk Data Management Inc.,[2] and Reed Elsevier Inc. ("Defendants") violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, by selling certain Accurint® brand reports to debt collectors

---

[1] Formerly known as LexisNexis Risk & Analytics Group, Inc.
[2] Formerly known as Seisint, Inc.

without treating the reports as "consumer reports" within the meaning of the FCRA.[3] Defendants have consistently and explicitly taken the position that the Accurint® reports are not "consumer reports" under the FCRA, and as a result, have not attempted to afford customers rights with respect to the Accurint® reports that the FCRA requires with respect to "consumer reports."

The Parties engaged in a series of mediation conferences with the aid of three mediators (United States Magistrate Judge M. Hannah Lauck, the Honorable Dennis Dohnal (Ret.), and Randall Wulff). This lawsuit initially contemplated three classes of people affected by the Defendants' alleged violations of the FCRA: (1) the Impermissible Use Class, which included every person listed in the Accurint® reports; (2) the File Request Class, which included every person who requested a copy of their file from the Defendants; and (3) the Dispute Class, which included every person who filed a dispute regarding the information reported with the Defendants. After mediation, the Parties moved the Court for preliminary certification of two classes for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23. The first proposed class is the Rule 23(b)(2) Settlement Class, which is made up of the Impermissible Use Class.  The second proposed class is a Rule 23(b)(3) Settlement Class, which is made up of the File Request and Dispute Classes. The Court granted preliminary certification and approval on April 29, 2013.

The Court appointed Kinsella Media, LLC as the administrator for the Rule 23(b)(2) Settlement Class. Although the Parties state notice of the Rule 23(b)(2) Settlement Class members may not have been mandatory, an extensive and substantial notice plan was negotiated as part of the class settlement. The Rule 23(b)(2) Notice Plan circulated information about the settlement to class members by five different methods:

---

[3] This same claim was raised in two prior lawsuits—*Adams, et al. v. LexisNexis Risk & Information Analytics Group, Inc., et al.*, No. 08-4708 (D. N.J.) and *Graham, et al. v. LexisNexis Risk & Information Analytics Group, Inc., et al.*, No. 3:09-655-JRS (E.D. Va.). Both of these cases were dismissed prior to decisions on any of the significant issues between the parties. The parties did however conduct discovery in both cases prior to initiating the instant suit.

- The Rule 23(b)(2) Publication Notice was published in various national newspaper supplements and consumer magazines (including *Parade*, *Better Homes and Gardens*, *National Geographic*, *Parents*, People, and *People en Español*). The Publication Notice provides information on how to object to the proposed settlement and directs Rule 23(b)(2) Settlement Class Members to the Class Settlement Website.

- The Rule 23(b)(2) Class Settlement Website contained the following information (1) a brief description of the parties and the claims, (2) a summary of the settlement terms, (3) disclosures regarding Class Counsel and their right to seek separate representation, (4) a summary of Rule 23(b)(2) Class Members' rights and options (including how to object to the proposed settlement), (5) the date, time, and location of the hearing on final approval. The website will be created and maintained by the Settlement Administrator and will also provide the Settlement Agreement, the Rule 23(b)(2) Internet Notice (in English and Spanish), and the Preliminary Approval Order.

- Banner Advertisements were placed on selected websites (Facebook and 24/7 Network). These advertisements directed Rule 23(b)(2) Settlement Class members to the Class Settlement Website.

- Search keywords and phrases relating to the lawsuit were purchased on major search engines.

- A toll-free telephone number was established to provide Rule 23(b)(2) Settlement Class Members with access to recorded information regarding the settlement and live operators who will be able to respond to inquiries regarding the settlement.

The Paid Media Program reached approximately 75.1% of potential class members, as estimated by Kinsella Media. The website and toll-free phone number established for the Rule 23(b)(2) class received 199,867 unique visits and 3,084 calls, respectively.

The Court appointed Rust Consulting as the administrator for the Rule 23(b)(3) Settlement Class. The Rule 23(b)(3) Settlement Class Members were notified about the settlement by direct mail to each member of the class. The Rule 23(b)(3) Settlement Class Members were identified by the Defendants using commercially reasonable procedures to search their archive logs to identify each person who requested a copy of an Accurint® Report or initiated or submitted a dispute or other inquiry regarding the content of an Accurint® Report between October 1, 2006 and April 29, 2013. The Mail Notice explained that the Rule 23(b)(3) Settlement Class Members have the option of opting out of the class, and if the Member does not do so within sixty days, he or she will be receive their portion of the Settlement Fund and will be bound by the Settlement Agreement. The Mail Notice also indicated that Class

Members could stay in the Settlement Class and object to the Settlement Agreement. The Mail Notice directed the recipient to a telephone number and a website for more information.

Rust Consulting created and maintained a Rule 23(b)(3) Class Settlement Website, on which information such as the Settlement Agreement, the Mail Notice, and the Preliminary Approval Order were posted. The website also outlined procedures for opting out of or objecting to the settlement, a description of the Settlement Fund, a section for frequently asked questions, and procedural information regarding the status of the Court approval process. A toll-free telephone number was also established to provide Rule 23(b)(3) Settlement Class Members with access to recorded information regarding the settlement and live operators who were able to respond to inquiries regarding the Settlement Agreement. The website and toll-free phone number established for the Rule 23(b)(3) class received 6,261 unique visits and 2,211 calls, respectively.

For both the Rule 23(b)(2) Class and the Rule 23(b)(3) Class, the Parties submitted Class Action Fairness Act (CAFA) Notification, pursuant to 28 U.S.C. § 1815(b), to provide state and federal officials with notice of the proposed Settlement Agreement and an opportunity to object.

On Tuesday, December 10, 2013, the Parties and several objectors were heard by the Court at a Final Fairness Hearing to determine the legality and propriety of the Settlement Agreement. Prior to the Final Fairness Hearing, nine interested parties, (collectively, "Objectors"), filed objections to the Rule 23(b)(2) Settlement Agreement, either with the Court or with the Parties. Seven of these parties are individual class members representing themselves *pro se*. Two of these parties seek to represent the interest of a large number of class members: the Aaron Objectors are a group of some twenty thousand class members represented by Watts Guerra LLC;[4] the Cochran Objectors include of more than seven thousand Rule 23(b)(2) class members purportedly represented by Attorney Edward Cochran.

//

---

[4] The first named objector of this group is Megan Christina Aaron.

**B. SETTLEMENT AGREEMENT SUMMARY**

The Parties have agreed to provide injunctive relief to the Rule 23(b)(2) Settlement Class pursuant to an Injunctive Relief Order (ECF No. 126-1). The Parties have agreed to a monetary settlement benefiting the Rule 23(b)(3) Settlement Class Members. The terms of the agreements are discussed more fully below.

### 1. *Rule 23(b)(2) Settlement Class*

The Parties move the Court to certify a Rule 23(b)(2) Settlement Class, which is composed of all persons about whom information resided in the Accurint® Database from November 14, 2006 to the present (the Impermissible Use Class). Approximately 200 million people fall within the Rule 23(b)(2) class definition. The Parties have determined that the violations alleged by the Impermissible Use Class are largely procedural in nature and any claim for statutory damages by this Class was incidental to its interest in compelling changes to the Defendants' data practices. The Parties have therefore agreed to injunctive relief for the Rule 23(b)(2) Settlement Class under which the Defendants will implement a substantial, nationwide program that addresses the issues raised in the Complaint by the Impermissible Use Class and will result in a significant shift from the currently accepted industry practices. The Injunctive Relief will cause Defendants to become the industry leader among data aggregation companies in the protection of customer information provided to debt collectors.

### a. Settlement Terms

Pursuant to the Settlement Agreement, the Defendants will overhaul their currently existing *Accurint® for Collections* ("AFC") suite of products for the Receivables Management Market, which they currently do not treat as "consumer reports" as defined by the FCRA.[5] The Defendants will split AFC into two newly developed suites of products and services. The first suite, called "Collections Decisioning," falls within the FCRA definition of a "consumer report"

---

[5] Upon the final approval of the settlement in this case, the Parties will ask the Court to enter the Injunctive Relief Order, attached to the Settlement Agreement as Exhibit A. This will ensure the enforceability of the changes agreed to in the settlement agreement.

and will be treated as such. The second suite, called "Contact & Locate," will not be treated as falling within the "consumer report" definition under the FCRA because the Parties agree it does not fall within the FCRA definition.

The Collections Decisioning suite will be created for the Receivables Management Marke. It will be available only to customers who have completed a credentialing process and customers will be permitted to use the information only for a permissible purpose under 15 U.S.C. § 1681b, including, but not limited to, for extension of credit, review or collection of a customer's account, or to review a consumer's credit account to determine whether the consumer continues to meet the terms of the account. The Defendants will also have a compliance program designed to provide reasonable procedures to assure the Collections Decisioning products and services are used for permissible purposes under § 1681b. When a user enters into the Collections Decisioning suite for the first time in each user session, a message will be displayed, indicating the reports fall under the FCRA.[6] The user will also be required to certify a permissible purpose under § 1681b and that the information will be used only for purposes permitted by the FCRA. The Defendants acknowledge that the Collections Decisioning products and services meet the FCRA definition of a "consumer report." Accordingly, the Defendants will put customers through a credentialing process consistent with § 1681e(a) and the customers' contractual commitments and certifications will be consistent with the regulatory framework governing the Collections Decisioning product or service.

The Contact & Locate suite of products and services will be created to assist the Receivable Management Market to locate debtors and to locate assets securing debt for the purpose of repossession. The Contact & Locate suite of products and services will not involve the

---

[6] The message displayed will be substantially similar to the following:

> You are entering the LexisNexis Collection Decisioning FCRA offerings provided by LexisNexis Risk Bureau LLC, a consumer reporting agency. The LexisNexis Collections Decisioning offerings are designed to be compliant with the Fair Credit Reporting Act, 15 U.S.C. Sec. 1681, *et seq.* ("FCRA"), and may only be accessed for permissible purposes in compliance with the FCRA and in accordance with your agreement and certifications.

Settlement Agreement § 4.3.1.1.3.

provision of "consumer reports" under the FCRA. The data available will include only: (1) information that does not contain "seven characteristic" information; (2) information that does not bear on any eligibility determination for credit, insurance, employment, or any other purpose in connection with which a consumer report may be used under the FCRA; (3) information bearing a relationship to the location of a debtor or the location of assets securing debt for the purpose of repossession, even if such information may arguably bear on an eligibility determination under the FCRA; and (4) information that includes any combination of the first three types of information. Use of the Contact & Locate suite of products is intended only for the limited purpose of finding and locating debtors or locating assets securing debt for purposes of repossession. When a user enters the Contact & Locate suite of products and services for the first time during each user session, a message will indicate Contact & Locate is not provided by consumer reporting agencies as defined in the FCRA and may not be used in determining eligibility for credit, insurance, or employment, or for any other eligibility purpose that would qualify as a consumer report under the FCRA.[7] The customers' contractual commitments and certifications will be consistent with the non-FCRA characterization and treatment of the Contact & Locate suit of products and services. The Parties agree that the contemplated design for the new Contact & Locate suite meets the limitations on data defined above.

In spite of the fact the Parties agree that the Contact & Locate suite of products and services do not constitute "consumer reports" as defined under the FCRA, a "Consumer Access Program" for the Contact & Locate suite will be created. The Consumer Access Program will

---

[7] The message displayed will be substantially similar to the following:

> Accurint® Contact & Locate is provided by LexisNexis Risk Solutions FL Inc. Accurint® Contact & Locate is not provided by "consumer reporting agencies," as that term is defined in the Fair Credit Reporting Act (15 U.S.C. § 1681, *et seq.*) (FCRA) and does not constitute a "consumer report," as that term is defined in the FCRA. Accurint® Contact & Locate may not be used in whole or in part as a factor in determining eligibility for credit, insurance, or employment or for any other eligibility purpose that would qualify as a consumer report under the FCRA.

Settlement Agreement § 4.3.1.2.4.

include procedures that permit an individual to obtain a free copy of a Contact & Locate Comprehensive Report regarding the individual once per year. Additionally, a cover letter accompanying consumer's information responsive to a request made under the FCRA, § 1681g(a), will include the following language: "An affiliate of [Consumer Reporting Agency] provides debt collectors with 'contact and locate' information about consumers. That information is not a 'consumer report' under the FCRA and is not enclosed in this mailing. For more information about this 'contact and locate' information, or to request a copy of such report about you, please visit [website] or call [number]." The Consumer Access Program will further include procedures that permit an individual to submit a statement of up to 100 words regarding any phone number or address displayed in the Contact & Locate suite. All such comments will be made available via a link on the main page and search forms where the phone number or addresses may be displayed in the Contact & Locate Suite. In addition, the Defendants will provide customer educational seminars and materials, free of charge, regarding their use of and responsibilities relating to Collections Decisioning and Contact & Locate. The Defendants will also provide training for employees who work on or with Collection Decisioning and Contact & Locate regarding the requirements of the Injunctive Relief.

The Settlement Agreement sets the following timeline for the Defendants to implement the Injunctive Relief:

- Release of the initial versions of Collection Decisioning and Contact & Locate by December 31, 2013.

- Defendants will market Collections and Contact & Locate to all new online Receivable Management Market customers and provide new online access to Collections Descisioning and Contact & Locate by December 31, 2013.

- Defendants will initiate the migration of existing *online* Receivable Management Market customers to Collections Decisioning and Contact & Locate beginning on or before December 31, 2013 and will use reasonable and good faith to complete migration as soon as practicable, but will complete the migration by December 31, 2015.

- Defendants will initiate the migration of *all other* existing Receivable Management Market customers to Collections Decisioning and Contact & Locate beginning on or

before December 31, 2013 and will use reasonable and good faith to complete migration as soon as practicable, but will complete the migration by June 30, 2016.

- Consumer Access Program will be implemented by December 31, 2013.

The Settlement Agreement provides that if the Defendants are unable to comply with any of the deadlines, they will receive a reasonable extension of time sufficient to permit completion of the task upon submission of an application to the Court showing good cause for the extension. The Settlement Agreement also provides that during the implementation period, Defendants may continue to permit access to the full suite of Accurint® Reports to Receivable Management Market customers that have not yet migrated to Collections Decisioning and Contact & Locate. Under the Sunset Provision of the Settlement Agreement, the obligation of the Injunctive Relief will expire the earlier of seven years from the Effective Date (the date on which the Court's Final Judgment is finalized—meaning the period for review of the judgment has expired) or June 30, 2020.

### b.  Releases

The Rule 23(b)(2) Settlement Class members do not have the right to opt out of the Settlement Agreement. Accordingly, under the proposed settlement, the Rule 23(b)(2) class does not release or discharge the right to file an individual lawsuit under § 1681$o$ or the FCRA State Equivalents for actual damages sustained. The class members do, however, waive the right to bring claims as a class and waive any willful noncompliance remedies against the Defendants. The Rule 23(b)(2) Settlement Class also waives any and all rights and benefits afforded by California Civil Code § 1542 and any other applicable federal or state law relating to limitations on release.

### c.  Attorney Fees and Service Awards

Plaintiffs and their counsel ask the Court to approve the attorneys' fees and Class Representation Service Awards ("Service Awards") negotiated by the Parties and permitted in

the Settlement Agreement. The Parties assert these subjects were addressed in mediation only after the Parties had reached an agreement as to the recovery for each class.

Plaintiffs' counsel will seek an award for attorneys' fees and expenses for their representation of the Rule 23(b)(2) Settlement Class in obtaining relief. The request is based in large part on the value of the relief to consumers and the dynamic shift that it represents in the industry and the fact that the injunction affords far better substantive rights than the Court or a jury could compel following a complete victory on all of Plaintiff's claims. The Settlement Agreement approves an award for attorneys' fees, costs, and other expenses in an amount up to $5.5 million in the aggregate. The amount will be paid entirely by LexisNexis. The Defendants have agreed to pay this amount and the Plaintiffs' counsel have agreed not to seek a higher amount.

The Parties also agreed the named Plaintiffs may ask the Court for an award for their service as class representatives in the amount of $5,000. This amount will also be paid by the Defendants.

### 2. Rule 23(b)(3) Settlement Class

The Parties also move the Court to finally certify a Rule 23(b)(3) Settlement Class, which is composed of all persons who, from October 1, 2006 through April 29, 2013, requested a copy of an Accurint® Report (File Request Class) or submitted a dispute or other inquiry regarding an Accurint® Report (Dispute Class). Approximately 31,000 people fall within the Rule 23(b)(3) class definition. The Parties propose a monetary settlement be paid to the members of the Rule 23(b)(3) Settlement Class.

### a. Settlement Terms

Under the Settlement Agreement, the Defendants will create a common fund of $13.5 million to be distributed *pro rata* to the approximately 31,000 members[8] of the Rule 23(b)(3) Settlement Class. This equates to approximately $435 per person in the class before attorneys'

---

[8] The Settlement Agreement deems the estimated number of Rule 23(b)(3) Settlement Class Members (31,000) a material term of the settlement.

fees. If the full amount of attorneys' fees authorized by the Settlement Agreement is requested and awarded by the Court, the amount paid per person will be approximately $300. The Settlement Agreement directs that the Defendants will deposit the Settlement Fund into an Escrow Account within thirty days after the Effective Date. The Escrow Account will be managed by an Escrow Agent.

The payment schedule is as follows:

- Within 45 days of after the Effective Date, the Escrow Agent shall disburse the amount of Court approved award of attorney's fees and costs.

- Any Service Award approved by the Court shall be paid within the later of (1) 45 days after the Effective Date; or (2) 14 days after receipt by the Escrow Agent of each Named Plaintiff's completed W-9 form.

- The amount remaining shall be distributed in equal shares to each member of the Rule 23(b)(3) Settlement Class, but in no case shall any member receive more than $400.

- The Escrow Agent shall make one attempt to deliver any payment returned as undeliverable within 45 days of the initial mailing.

- Any checks not cashed within 90 days of delivery revert back to the Escrow Account.

- The Escrow Agent shall provide an accounting of the Escrow Account 150 days after the Effective Date.

- Within 14 days following the accounting, any remaining funds shall be used to reimburse Defendants for the monies paid for the Rule 23(b)(2) and Rule 23(b)(3) Notice Plans.

- The remaining funds shall be paid to a non-profit entity or entities submitted jointly by the Parties and approved by the Court as a *cy pres* award for the purpose of supporting research activities relating to the privacy or security of personal information; provided, however, that such grants must stipulate that the grant amounts may not be used in furtherance of litigation.

### b. Releases

Unless the Rule 23(b)(3) Settlement Class members opt out of the settlement, they release the Defendants from all claims resulting from, arising out of, or in any way connected to the covered conduct of the suit. The payment the members receive as part of this settlement is compensation for any such claims. This release is effective even if the Rule 23(b)(3) Settlement Class Member did not receive actual notice of the settlement prior to the hearing for final

approval of the settlement in this litigation. The Rule 23(b)(3) Settlement Class Members also waive California Civil Code § 1542 and/or any other applicable federal or state law relating to limitations on releases.

Upon the Effective Date, no default by any person in the performance of any covenant or obligation under the Settlement Agreement will affect the dismissal of the litigation; provided, however that all other legal and equitable remedies for violation of a court order or breach of the Settlement Agreement remain available to all Parties. For those Rule 23(b)(3) Settlement Class Members who opt out, Class Counsel will refer the opt-outs to the applicable state bar association or other referral organization for appropriate counsel. This is necessary because Class Counsel agree that the proposed settlement is fair, reasonable, and in the best interest of the Rule 23(b)(3) Settlement Class Members.

### c. Attorney Fees and Service Awards

Plaintiffs' counsel will seek an award for attorneys' fees and expenses for their representation of the Rule 23(b)(3) Settlement Class in obtaining relief. The Settlement Agreement approves payment to counsel of up to 30% of the Settlement Fund to be paid out of the Settlement Fund. Plaintiffs' counsel, however, seek only 25% of the Settlement Fund for fees and expenses.

The Settlement Agreement also allows the Named Plaintiffs to apply to the Court for Court approval of a Service Award of $5,000 each. The Defendants do not oppose such an award for each Named Plaintiff. The Service Awards constitute the sole consideration for the individuals acting as Named Plaintiffs, and will be made separately from any attorney's fees.

### 3.  Other Provisions of the Settlement Agreement

Aside from the Class Settlements detailed above, the Settlement Agreement includes a number of other provisions. Section 7 of the Settlement Agreement details a number of circumstances under which the "Defendants have the right to terminate th[e] Settlement Agreement, declare it null and void, and have no further obligations under" it. Most of the

circumstances relate to the Court's disapproval of provisions of the proposed settlement. Several provisions, however, are worth noting individually.[9] One provision provides that the Defendants may terminate the Settlement Agreement if 2% or more of the members of the Rule 23(b)(3) Settlement Class opt out of the proposed settlement. Settlement Agreement § 7(g). The Defendants may also terminate the Settlement agreement if the Defendant's insurers refuse or otherwise fail to fund the full Rule 23(b)(2) Settlement Class Attorneys' Fees, Settlement Fund, or the costs for the Notice Plans. Settlement Agreement § 7(m). The Plaintiffs may also terminate the Settlement Agreement as to the Rule 23(b)(3) Settlement Class in the event that the total number of Rule 23(b)(3) Settlement Class Members exceeds 34,000 unless the

---

[9] A full list of the conditions upon which the Defendants may terminate the Settlement Agreement follows:

a) the Parties fail to obtain and maintain preliminary approval of the proposed settlement of the Rule 23(b)(2) Settlement Class Claims;

b) the Parties fail to obtain and maintain preliminary approval of the proposed settlement of the Rule 23(b)(3) Settlement Class Claims;

c) any court requires a notice program in addition to or in any form other than as specifically set forth in Sections 4.2 and 5.2 and attached Exhibits B-E;

d) any court requires Defendants, or any of them, to comply with obligations or requirements that are greater than or materially different from the Injunctive Relief;

e) any court orders the Defendants to pay, in the aggregate, attorneys' fees, costs, and other expenses in connection with the Litigation, in excess of $5.5 million in connection with the settlement of the Rule 23(b)(2) Settlement Class;

f) any court orders the Defendants to pay, in the aggregate and inclusive of attorneys' fees, costs, and other expenses, in connection with the Litigation, in excess of $13.5 million in connection with the settlement of the Rule 23(b)(3) Settlement Class;

g) two percent (2%) or more of the members of the Rule 23(b)(3) Settlement Class opts out of the proposed settlement;

h) the Court fails to enter a Final Judgment and Order consistent with the provisions in Section 6;

i) the Court fails to enter the Injunctive Relief Order in the form attached as Exhibit A to this Settlement Agreement;

j) the settlement of the Rule 23(b)(2) Settlement Class Claims is not upheld on appeal, including review by the United States Supreme Court;

k) the settlement of the Rule 23(b)(3) Settlement Class Claims is not upheld on appeal, including review by the United States Supreme Court;

l) the Effective Date does not occur for any reason, including but not limited to the entry of an order by any court that would require either material modification or termination of the Settlement Agreement; or

m) the Defendants' insurer or insurers refuse to or otherwise fail to fund in full the Rule 23(b)(2) Settlement Class Attorneys' Fees, Settlement Fund or the costs for the Notice Plans as provided in Section 4.4 and Sections 5.3- 5.7, subject to the exhaustion of the self-insured retention, if the Defendants give notice of the termination of this Settlement Agreement within ten (10) days after the deadline for funding.

Settlement Agreement § 7.

Defendants agree to proportionately increase the amount of the Rule 23(b)(3) Settlement Class Settlement Fund.

Other important miscellaneous provisions include:

- The Settlement Agreement may not be offered as an admission by either party on the facts or law at issue in the case. Settlement Agreement § 8.2.

- If any Rule 23(b)(2) or (b)(3) Settlement Class Member has a claim or dispute regarding the Defendants' compliance with the terms of the Settlement, the Class Member must first submit his or her dispute directly to the Defendants before taking any other action. The Defendants will then investigate the claim within 30 days. If the claim is not then resolved, the Class Member may submit his or her dispute to this Court under the caption for this litigation. Settlement Agreement § 8.3.

- The Court retains jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement. The Court retains exclusive jurisdiction over any subsequent claim against the Defendant subject to the dispute process described in section 8.3.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that a class action may be settled only with court approval. Courts considering proposed class action settlements are required by Rule 23(e) to assess whether the settlement is in the best interests of represented class members. The Supreme Court has held that while "[s]ettlement is relevant to a class certification," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997), certification of a class for settlement purposes still requires that the provisions of Rule 23 to be met. Although "there is [a] strong initial presumption that the compromise is fair and reasonable," approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001) (internal quotation marks and citations omitted).

Rule 23(a) contains four requirements for proceeding as a class action: numerosity, commonality, typicality, and adequacy of representation. The final three requirements of Rule 23(a) "tend to merge," with commonality and typicality "serv[ing] as guideposts for determining

whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2) or (3)." *Amchem*, 521 U.S. at 614. Federal Rule of Civil Procedure 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Federal Rule of Civil Procedure 23(b)(3) requires that "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Finally, Rule 23 requires that a class action settlement be "fair, reasonable and adequate." Manual for Complex Litigation (Fourth) § 21.62 (2004) (citing Fed. R. Civ. P. 23(e)(1)(C)). Fairness is assessed by a comparison of the treatment of class members to each other and to similarly situated, non-class members; reasonableness is assessed by an analysis of the settlement's responsiveness to the class claims; adequacy is assessed by a comparison of the agreed relief to what class members may have obtained absent the class action process. *Id.* Factors to be considered in the fairness calculus include, among others: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class action litigation." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). Factors to be considered in the adequacy calculus include, among others: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and

the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.*

## III.    DISCUSSION

### A.  REQUIREMENTS OF RULE 23(A)

Plaintiffs have met the requirements of Federal Rule of Civil Procedure 23(a) and, therefore, "may sue or be sued as representative parties on behalf of all members" of the class of which they are members. Fed. R. Civ. P. 23(a). Both the Rule 23(b)(2) class and the Rule 23(b)(3) class satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation.

To assess the numerosity requirement of Rule 23(a), courts must look to the "particular circumstances of the case" to determine whether members of the class are "so numerous that joinder of all members is impracticable." *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984). However, "[n]o specified number is needed to maintain a class action." *Id.* (internal quotations and citation omitted). The Fourth Circuit has consistently found the numerosity requirement satisfied for classes with far fewer than either 200 million or 31,000 members. *Gunnells v. Healthplan Svcs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003) (finding that a class of 1400 members "easily satisfied Rule 23(a)(1)'s numerosity requirement"); *accord In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D. Md. 1997). Accordingly, the Court finds that the Rule 23(b)(2) class and the Rule 23(b)(3) class each satisfy the numerosity requirement of Rule 23(a).

To establish commonality, the party seeking certification must "demonstrate that the class members have suffered the same injury" and that their claims "depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (internal quotation marks omitted). "That common contention, moreover must be of such a nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "A common

question is one that can be resolved for each class member in a single hearing . . . . A question is not common, by contrast, if its resolution 'turns on a consideration of the individual circumstances of each class member.'" *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006).

Both the Rule 23(b)(2) class and the Rule 23(b)(3) class satisfy the commonality requirement. As to the Rule 23(b)(2) class, the class members have suffered the same injury, based on Defendants' collection and possession of class members information without treatment required by the FCRA; their claims depend on a common contention—namely, that Defendants' collection of information is subject to the FCRA. As to the Rule 23(b)(3) class, the class members have suffered the same injury, based on Defendants' treatment and sale of class members' information without treatment required by the FCRA; their claims depend on a common contention—namely, that Defendants' treatment and sale of information is subject to the FCRA. Because each of these common contentions could be resolved as to both the Rule 23(b)(2) class members and the Rule 23(b)(3) class members, the commonality requirement is met.

The Fourth Circuit has explained that an assessment of typicality requires "a comparison of the plaintiffs' claims or defenses with those of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006). The Named Plaintiffs are members of both the Rule 23(b)(2) class and the Rule 23(b)(3) class. The Named Plaintiffs "possess the same interest" in FCRA protections "and suffer[ed] the same injury as the [absent] class members" from each of the respective classes. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982). Accordingly, the requirement of typicality has been met.

If the proposed settlement is intended to preclude further litigation by absent persons, due process requires that their interests be adequately represented. *In re Jiffy Lube*, 927 F.2d at 158 (citing *Manual for Complex Litigation 2d*, § 23.14 at 166 (1985)). Here, the Named Plaintiffs' and class members' claims stem from the same operative facts and give rise to the same entitlement to relief. Accordingly, the claims are sufficiently "interrelated that the interest

of the class members will be fairly and adequately protected in their absence." *Id.* at 157 n.13. Objectors to the Settlement Agreement argue that the different relief offered to members of the two different classes evinces a lack of adequate representation of the Rule 23(b)(2) class. However, the Court finds this argument unpersuasive because it fails to appreciate the value of the Rule 23(b)(2) injunctive relief and the challenges that Rule 23(b)(2) class members—those who are not also eligible for Rule 23(b)(3) relief—would have in bringing claims against Defendants. Accordingly, the Court finds that the requirement of adequate representation has been met.

### B. CERTIFICATION REQUIREMENTS OF RULE 23(B)

To be maintained, a class action must fall within one of the three types of action enumerated in Rule 23(b). Classes falling in each of these categories must meet distinct requirements in order to be properly certified. Plaintiffs seek certification of a class pursuant to Rule 23(b)(2) and a class pursuant to Rule 23(b)(3). Both of these classes will be properly certified for the reasons that follow.

#### 1. Rule 23(b)(2) Settlement Class

A class may be certified pursuant to Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted--the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 131 S. Ct. at 2557 (quoting Nagareda, 84 N. Y. U. L. Rev., at 132). In interpreting the requirements of Rule 23(b)(2), the Fourth Circuit has held that certification is appropriate where final injunctive relief is sought and will settle "the legality of the behavior with respect to the class as a whole." *Thorn*, 445 F.3d at 329 (4th Cir. 2006) (quoting Rule 23(b)(2) 1966 advisory committee's note).

The Court finds that certification of the Rule 23(b)(2) class in this case is appropriate because the injunctive relief sought is indivisible and applicable to all members of the Rule 23(b)(2) class. The Parties have negotiated meaningful, valuable injunctive relief that will accrue to all members of the Rule 23(b)(2) class. Because the Rule 23(b)(2) class will obtain "an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute." *Dukes*, 131 S. Ct. at 2558. In other words, certification is appropriate pursuant to Rule 23(b)(2), and the requirements of Rule 23(b)(3) are inapplicable. *Id.* ("The procedural protections attending the (b)(3) class--predominance, superiority, mandatory notice, and the right to opt out--are missing from (b)(2) not because the Rule considers them unnecessary, but because it considers them unnecessary *to a (b)(2) class*.").

Objectors vigorously oppose certification of the Rule 23(b)(2) class in this case; however, the Court finds these objections to be unpersuasive and, accordingly, overrules them. Specifically, objectors first argue that monetary claims predominate the Rule 23(b)(2) class claims and, therefore, the Settlement Agreement's lack of opt-out rights precludes final certification. Second, they argue that the Rule 23(b)(2) class, which seeks only injunctive relief, may not be certified because the FCRA does not provide a private right of action for injunctive relief.

The objectors' first argument is based primarily on dicta from recent Supreme Court precedent on Rule 23(b)(2). In *Dukes*, the Supreme Court noted the "serious possibility" that due process requires notice and opt-out rights for a Rule 23(b)(2) class, even "where the monetary claims do not predominate." 131 S. Ct. at 2559. However, the Court also explicitly declined to consider whether Rule 23(b)(2) entirely precludes claims for monetary damages and, instead, held only that "claims for *individualized* relief (like the backpay at issue [in *Dukes*]) do not satisfy" Rule 23(b)(2). *Id.* at 2557.

The objectors' first argument is unpersuasive for at least two reasons. First, for the same reasons that common questions of law predominate over the Rule 23(b)(3) class claims, the statutory damages at issue in this case are not individualized within the meaning of *Dukes*. The "the qualitatively overarching issue[s]" in this case relate to Defendants' conduct, which was uniform with respect to each of the class members.[10] *Stillmock v. Weis Markets, Inc.,* 385 F. App'x 267, 273 (4th Cir. 2010). For this reason, the appropriate amount of statutory damages would also be uniform as to each of the class members, and is not "individualized" because it is the product of rote calculation. *See Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012) ("*Wal-Mart* left intact the authority to provide purely incidental monetary relief in a (b)(2) class action."). Second, the objectors fail to distinguish or account for the regular use of general release waivers in class action settlements. *See Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 471 n.10 (S.D. Fla. 2002) (collecting cases). Notably, the Settlement Agreement preserves Rule 23(b)(2) class members' rights to bring claims for actual damages, thereby preserving their due process rights. The only claims released are non-individualized statutory damages claims that will be addressed by the injunctive relief provided by the Settlement Agreement.

The objectors' second argument is similarly unpersuasive. While the objectors correctly note that the FCRA does not provide individuals with a right to bring non-monetary claims, in the settlement context, "it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all." *Local Number 93 v. City of Cleveland*, 478 U.S. 501, 522 (1986). Courts in this district and elsewhere have found that the lack of a private right of action does not preclude certification of a Rule 23(b)(2) class or inclusion of injunctive relief in a negotiated settlement. *See, e.g.*, *Palamara v. Kings Family Rests.*, No. 07- 317, 2008 U.S. Dist.

---

[10] The objectors' reliance on *Adams, et al. v. LexisNexis Risk & Information Analytics Group, Inc., et al.*, No. 08-4708 (D. N.J.), to divide the Rule 23(b)(2) class into differently positioned groups is unpersuasive. While Plaintiffs and the objectors argue that the *Adams* court held Accurint® reports to be subject to the FCRA, the Court appears to have disavowed such a holding. (*See* ECF No. 106-1, Ex. A ("I think there has been some misinterpretation of what my [motion for judgment on the pleadings] ruling was.").)

LEXIS 33087, at *3–4 (W.D. Pa. Apr. 22, 2008) (approving entry of consent decree requiring defendant to comply with FCRA and distribute food vouchers to class members and to charity as part of settlement of FCRA claims); *Karnette v. Wolpoff & Abramson*, No. 3:06cv44, 2007 U.S. Dist. LEXIS 20794, at *34 (E.D. Va. Mar. 23, 2007) (certifying Rule 23(b)(2) class in FDCPA action despite objections that FDCPA does not provide for injunctive relief).

The Court finds that the requirements for certification of a class pursuant to Rule 23(b)(2) have been met. Accordingly, the Rule 23(b)(2) class is appropriately certified.

### 2.  Rule 23(b)(3) Settlement Class

Class certification pursuant to Rule 23(b)(3) requires satisfaction of the predominance and superiority criteria. See Fed. R. Civ. P. 23(b)(3) ("[T]he court [must find] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623.  Superiority "requires that a class action be superior to other methods for the fair and efficient adjudication of the controversy."  *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147 (4th Cir. 2001).  As described by the Supreme Court, Rule 23(b)(3) allows for class action treatment that "is not clearly called for," but "may nevertheless be convenient and desirable." *Amchem Prods., Inc.*, 521 U.S. at 615.

The Court finds that common questions of law and fact predominate over questions affecting individual members of the Rule 23(b)(3) class. These common questions include whether Accurint® reports are consumer reports as defined by the FCRA and whether Defendants' conduct was willful. Even the determination of appropriate statutory damages constitutes a common question under these circumstances, because "the qualitatively overarching issue[s]" are the Defendants' willfulness and the applicability of the FCRA to

Defendants' Accurint® reports. *Stillmock,* 385 F. App'x at 273. Because "the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner, the individual statutory damages issues are insufficient to defeat class certification under Rule 23(b)(3)." *Id.*; *accord Ealy v. Pinkerton Gov't Servs.,* 514 Fed. Appx. 299, 305 (4th Cir. 2013).

Similarly, the Court finds that a class action is the superior method for "fair and efficient adjudication of the controversy" as maintained by the Rule 23(b)(3) class. *Lienhart,* 255 F.3d at 147. Factors pertinent to an assessment of superiority include (i) the strength of the individual class members' interest in controlling separate actions, (ii) the extent and nature of parallel, existing litigation, (iii) the desirability or undesirability of concentrating the litigation in the single forum, and (iv) the likely difficulties in managing the class action. *See* Fed. R. Civ. P. 23(b)(3). None of these factors weighs against certification of the Rule 23(b)(3) class. The individual class members have a little interest in maintaining separate actions because of the low individual recoveries available and the high cost of litigation; the Court has no knowledge of parallel litigation; concentration of this litigation is not undesirable; and the class action has not proven to be difficult to manage.

The Court finds that the predominance and superiority requirements for certification of a class pursuant to Rule 23(b)(3) have been met. Accordingly, the Rule 23(b)(3) class is appropriately certified.

### C. SETTLEMENT AGREEMENT FAIRNESS, REASONABLENESS, AND ADEQUACY

The Court finds that the Settlement Agreement is fair, reasonable, and adequate. In overruling objections to the contrary, the Court notes that three highly skilled mediators have been involved in the negotiation of the Proposed Settlement Agreement: United States District Court Judge M. Hannah Lauck (then, a Federal Magistrate Judge), Federal Magistrate Judge Dennis W. Dohnal, and Randall Wulff. More importantly, the factors enumerated in *In re Jiffy Lube*, 927 F.2d 155, weigh in favor of approval.

In considering the fairness of a proposed settlement agreement, courts in the Fourth Circuit must consider "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class action litigation." *In re Jiffy Lube*, 927 F.2d 159. This is the third class action suit filed by Plaintiff's counsel against Defendants raising claims related the FCRA and Defendants' Accurint® reports. Extensive discovery was conducted in each of the three lawsuits, but the preceding suits settled prior to any substantive court determination. These factors alone could be enough to demonstrate the fairness of the Settlement Agreement—the Parties reached an agreement through arm's-length negotiations by highly experienced counsel after full discovery was completed.

Factors to be considered in the adequacy calculus include, among others, the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, the anticipated duration and expense of additional litigation, and the degree of opposition to the settlement. *Id.* Only one person objected to the Rule 23(b)(3) settlement and only eighteen individuals opted out. These figures are minimal and do not preclude settlement. *See, e.g., Pettway v. Am. Cast Iron Pipe Co.*, 72 F.2d 315 (11th Cir. 1983) (approving settlement where five percent of class objected). With regard to the Rule 23(b)(2) class, the objectors collectively represent more than twenty-thousand individuals; however, this figure is minimal in light of the facts that (1) the class includes some 200 thousand members and (2) measures were taken to provide notice of settlement and the opportunity to object. See *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ("[A] settlement can be fair notwithstanding a large number of class members who oppose it."). Further, the fact that three prior lawsuits were brought and settled is indicative of the fact that the duration and expense of additional litigation in the absence of a settlement would be significant. Again, these factors alone could be enough to demonstrate the adequacy of the Settlement Agreement.

However, the fact that most clearly demonstrates the fairness, reasonableness, and adequacy of the Settlement Agreement is the relative strength of each Party's legal claim or defense. *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). Despite settlement of the prior lawsuits, the ultimate merit of Plaintiff's claims is far from certain. Consumers can recover statutory damages under the FCRA only if they can establish that a defendant willfully violated the law's provisions. The Supreme Court has drawn on qualified immunity jurisprudence to hold that defendants cannot willfully violate the FCRA unless its requirements are "clearly established." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 (2007). Where the statutory text and relevant agency and court guidance allow for more than one reasonable interpretation, a defendant that acts consistently with one of those interpretations cannot be held liable as a willful violator. *Id.* at 70 n.20. In this case, all of Plaintiffs' claims are predicated on Accurint® reports being deemed "consumer reports" within the meaning of the FCRA. However, the FTC in 2008 voted unanimously that Accurint® for Collection reports do not fall within the FCRA and do not involve credit reports. Official FTC Opinion Letter to Commenter Rotenberg, *In re Reed Elsevier Inc. and Seisant Inc.*, File No. 0523094, Docket No. C-4226 (Fed. Trade Comm'n July 29, 2008). Absent some authority to the contrary, the merit of Plaintiffs' claims—and, necessarily, the absent class members' theoretical future claims—is speculative at best. For this reason, the benefit of substantial relief without the risk of litigation demonstrates the adequacy of the Settlement Agreement.

The Court finds that the Settlement Agreement presents a fair, reasonable, and adequate bargain between Defendants and all members of both the Rule 23(b)(2) class and the Rule 23(b)(3) class.

### D.  MOTION FOR ATTORNEYS' FEES

With regard to attorneys' fees for the Rule 23(b)(3) settlement, the Court finds that an award of twenty-five percent of the Rule 23(b)(3) settlement fund is an appropriate award for the benefit secured for the 23(b)(3) Class. Where there is a common fund, the percentage

method of awarding attorneys' fees is favored by the Supreme Court, the Fourth Circuit, and district courts within this Circuit. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *Deem v. Ames True Temper, Inc.*, No. 6:10-CV-01339, 2013 WL 2285972, at *4 (S.D. W. Va. May 23, 2013) (noting that "[d]istrict courts within the Fourth Circuit have consistently endorsed the percentage method," and collecting cases supporting this conclusion).

With regard to attorneys' fees for the Rule 23(b)(2) settlement, the Court finds that a lodestar of $3,349,379.95 and a multiplier of 1.99 are applicable and, in light of the fact that counsel allocated approximately 80% of their time to crafting injunctive relief for the Rule 23(b)(2) class, an award of $5,333,188.21 is appropriate. *See Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 243–44 (4th Cir. 2009). Specifically, the Court finds that (1) Plaintiffs' counsel expended large amounts of time and labor, demonstrated skill commensurate with their reputations, and achieved an excellent result in this large and complex action; (2) Plaintiffs negotiated a Settlement Agreement that provides substantial benefits for over 200 million consumers; and (3) the Settlement Agreement forces Defendants to comply with the FCRA and increases consumer privacy protection measures. Finally, the Court notes that a multiplier of 1.99 is similar to those applied in similar cases. *See, e.g., In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007).

Finally, the Court finds that an incentive award of $5,000 each is an appropriate award for the Named Plaintiffs' service as Class Representatives. The Named Plaintiffs acted for the benefit of the class, reviewed documents provided to them by their Counsel, and discussed with their Counsel aspects of the case, discovery issues, and settlement negotiations. Further, Defendants do not oppose the award. As such, service awards in the amount of $5,000 each are appropriate. *See Cappetta v. GC Servs. LP*, Civil Action No. 3:08-CV-288 (E.D. Va. April 27, 2011) (granting $5,000 service awards); *see also Henderson v. Verifications Inc.*, Civil Action No. 3:11-CV-514 (E.D. Va. Mar. 13, 2013).

### E. MOTION TO AMEND

Subsequent to the Final Fairness Hearing held on December 10, 2013, the Parties filed a Consent Motion for Leave to File Amended Class Complaint. In an apparent effort to address Objectors' concerns that the Complaint failed to seek injunctive relief, the proposed Amended Class Complaint alleged that injunctive relief was appropriate pursuant to the Court's inherent equitable power. *See Califano v. Yamasaki*, 442 U.S. 682, 705 (1979); *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946). Because the Court has found approval of the Settlement Agreement appropriate under the existing Complaint, the Motion to Amend will be DENIED as moot.

## IV.  CONCLUSION

For the foregoing reasons, the Motion for Final Approval will be GRANTED, the Motion for Attorneys' Fees will be GRANTED, and the Motion to Amend will be DENIED as moot.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this ___5th___ day of September 2014.